1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA        .    Criminal No. 1:20mj114
                                .
        vs.                     .    Alexandria, Virginia
                                .    March 20, 2020
ZACKARY ELLIS SANDERS,          .    2:16 p.m.
                                .
                Defendant.      .
                                .
. . . . . . . . . .             .

TRANSCRIPT OF INITIAL APPEARANCE, PRELIMINARY HEARING,
AND DETENTION HEARING
BEFORE THE HONORABLE JOHN F. ANDERSON
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE GOVERNMENT:              WILLIAM G. CLAYMAN, AUSA
                                 United States Attorney's Office
                                 2100 Jamieson Avenue
                                 Alexandria, VA 22314


FOR THE DEFENDANT:               STEVEN J. MC COOL, ESQ.
                                 McCool Law PLLC
                                 1776 K Street, N.W., Suite 200
                                 Washington, D.C. 20006


TRANSCRIBER:                     ANNELIESE J. THOMSON, RDR, CRR
                                 U.S. District Court, Third Floor
                                 401 Courthouse Square
                                 Alexandria, VA 22314
                                 (703)299-8595




                  (Pages 1 - 25)




(Proceedings recorded by electronic sound recording, transcript
 produced by computerized transcription.)

2

1                            I N D E X

2
                     DIRECT   CROSS   REDIRECT   RECROSS
3
WITNESS ON BEHALF OF
4  THE GOVERNMENT:

5  SA Jeremy Obie              6        8

6

7  WITNESS ON BEHALF OF
   THE DEFENDANT:
8
   Dr. Risa Edwards Sanders    18       19        21
9

10

11
                         EXHIBITS
12
                         MARKED        RECEIVED
13
GOVERNMENT'S:
14
   No. 1                                    8
15

16

17

18

19

20

21

22

23

24

25

3

P R O C E E D I N G S

1

2          THE CLERK:  United States of America v. Zackary

3    Sanders, Case No. 20mj114.

4          MR. CLAYMAN:  Good afternoon, Your Honor.  Bill

5    Clayman for the United States.

6          THE COURT:  Thank you, Mr. Clayman.

7                    (Defendant present.)

8          MR. MC COOL:  Good afternoon, Your Honor.  My name is

9    Steven McCool.  I represent Zackary Sanders, who is now present

10   before the Court.

11         THE COURT:  Thank you, Mr. McCool.

12         Okay.  Mr. Sanders, let me explain to you why you've

13   been -- stand, please, sir.  Let me explain to you why you've

14   been arrested and brought into court here and what we're going

15   to be doing this afternoon.  A criminal complaint and arrest

16   warrant was issued this week charging you with certain

17   offenses.  The government is going to explain to you what those

18   offenses are and what the penalties are if you're found guilty

19   of those charges.

20         You've got counsel who's made an appearance for you,

21   which is one thing that I typically have to make sure is taken

22   care of.  After we've, we've been informed of the charge or

23   charges that have been brought against you, we're going to talk

24   about setting this matter down for a further hearing as to

25   whether there is probable cause for the charge that's been

4

1   brought against you if necessary, and then we'll talk about

2   whether you're going to be remaining in custody pending the

3   trial of the case.

4           At this time, counsel for the government will inform

5   you of the charge that's been brought against you and the

6   penalty you'll face if found guilty of that charge.

7           MR. CLAYMAN:  Your Honor, the defendant has been

8   charged by criminal complaint with one count of production of

9   child pornography, in violation of 18 U.S.C., section 2251(a)

10   and (e).  If convicted, he faces a mandatory minimum sentence

11   of 15 years and a maximum sentence of 30 years; a $250,000

12   fine; a mandatory minimum term of supervised release of at

13   least five years and a maximum term of life; a mandatory $100

14   special assessment; and up to an additional $55,000 in special

15   assessments.

16           THE COURT:  Okay.  That's a serious charge.  Is the

17   government seeking detention in this matter?

18           MR. CLAYMAN:  We are, Your Honor.

19           THE COURT:  Okay.  Thank you.  All right.

20           All right.  So that's the charge that's been brought

21   against you, as you've heard.  It is a very serious one.  The

22   government is seeking detention in this case.

23           Have you-all discussed a possible time for a

24   preliminary hearing and detention hearing?

25           MR. MC COOL:  We have, and, Your Honor, I'm prepared

5

1  to go today both on probable cause and on detention, and just

2  given the, the health risks that are out there, I'd urge the

3  government to move forward today, even if it has to be later

4  today.  I mean, we've had notice of these charges for just a

5  couple hours and are ready to go, and I'd like to do so now if

6  possible.

7           THE COURT:  Okay.  Is the agent here?  It's a

8  presumption case, right?

9           MR. MC COOL:  Yes.

10           MR. CLAYMAN:  Yes, Your Honor.

11           THE COURT:  So, okay.

12           MR. CLAYMAN:  The agent is present.

13           THE COURT:  Okay.  Why don't we go ahead and have the

14  agent come in, have him sworn in.  He can have the affidavit

15  that is filed in support of the criminal complaint admitted,

16  and then subject to any cross-examination that's necessary,

17  okay?  I mean, I've reviewed the affidavit that was filed in

18  support of the criminal complaint, so --

19           MR. MC COOL:  I understand, Your Honor.

20           THE COURT:  -- we can proceed that way, if that's

21  acceptable.

22           MR. CLAYMAN:  Yes, Your Honor.

23           THE COURT:  Okay.  Thank you.

24           MR. MC COOL:  May my client be seated, sir?

25           THE COURT:  Yes.  I'm sorry, you may be seated now.

```
Obie - Direct                                               6
```

1    Thank you.

2           MR. CLAYMAN:  Your Honor, the United States would

3    call Special Agent Jeremy Obie.

4           THE COURT:  Thank you.

5           SA JEREMY OBIE, GOVERNMENT'S WITNESS, SWORN

6                    DIRECT EXAMINATION

7    BY MR. CLAYMAN:

8    Q.   Can you please state your name and spell it for the

9    record.

10   A.   Jeremy Obie, J-e-r-e-m-y O-b-i-e.

11   Q.   How are you employed?

12   A.   As a special agent with the FBI.

13   Q.   And how long have you been employed in that position?

14   A.   Since March of 2016.

15   Q.   Are you the primary agent or one of the agents assigned to

16   the matter in court today, the United States versus Zackary

17   Sanders?

18   A.   Yes, sir.

19   Q.   In the course of your duties, did you have an opportunity

20   to encounter Zackary Sanders?

21   A.   Yes, sir.

22   Q.   And do you see Mr. Sanders in the courtroom today?

23   A.   Yes, sir.

24   Q.   Would you please identify him by what he's wearing and

25   where he's sitting?

Obie - Direct                                                              7

1    A.   He is sitting by the defense counsel, wearing a black

2    T-shirt with multi-colored squares.

3             MR. CLAYMAN:  Your Honor, may the record reflect that

4    the witness has identified the defendant?

5             THE COURT:  Yes.  Mr. Sanders has been identified.

6    BY MR. CLAYMAN:

7    Q.   Did you prepare an affidavit in support of a criminal

8    complaint in this matter?

9    A.   Yes, sir.

10   Q.   With the assistance of the court security officer, I'll

11   pass up the affidavit, which I provided a copy to defense

12   counsel.

13             Do you recognize this?

14   A.   Yes, sir.

15   Q.   What is it?

16   A.   It is the criminal complaint and affidavit that I wrote

17   up.

18   Q.   And is that your signature on the last page?

19   A.   Yes, sir.

20   Q.   Is the information contained in the affidavit a true and

21   accurate reflection of the facts as known at the time the

22   affidavit was executed?

23   A.   Yes, sir.

24   Q.   And do you have any corrections or clarifications that you

25   would like to make to it at this time?

```
Obie - Cross                                                    8
```

1    A.    No, sir.

2    Q.    And for the purpose of today's hearing, do you incorporate

3    and adopt the facts as set forth in the affidavit as part of

4    your testimony?

5    A.    I do.

6              MR. CLAYMAN:  At this time, Your Honor, the

7    government would move to admit the criminal complaint affidavit

8    into the record.

9              THE COURT:  Any objection?

10             MR. MC COOL:  No, sir.

11             THE COURT:  I'll admit that as Government's Exhibit

12   No. 1.

13             (Government's Exhibit No. 1 was received in

14   evidence.)

15             MR. CLAYMAN:  Nothing further as to probable cause,

16   Your Honor.

17             THE COURT:  Thank you.  Okay.

18             MR. MC COOL:  May I proceed, Your Honor?

19             THE COURT:  Yes, please.

20             MR. MC COOL:  Thank you, Your Honor.

21                      CROSS-EXAMINATION

22   BY MR. MC COOL:

23   Q.    Good afternoon, Agent.  Sir, do you have the copy of the

24   affidavit in front of you?

25   A.    Yes, sir.

Obie - Cross                                                        9

1    Q.   Can I direct your attention, if I could, to paragraph 5?

2    And can you read that to yourself, and when you've finished,

3    could you look up, please?

4          Now, that paragraph 5, you correctly defined the term

5    "minor" as defined under the U.S. Code as someone under the age

6    of 18, correct?

7    A.   Correct.

8    Q.   And this case purportedly involves video depictions of a

9    14-year-old; is that right?

10   A.   Correct.

11   Q.   Okay.  Can -- let me direct your attention first to

12   paragraph 9.  Could you read that to yourself, sir?

13         In paragraph 9, you wrote that a certain IP address

14   was used to access a website that you affirmed to be known as a

15   website that was used to advertise child pornography; is that

16   correct?

17   A.   Correct.

18   Q.   Have you viewed that website?

19   A.   Yes, sir.

20   Q.   Okay.  Isn't it true that at the, at the opening page of

21   that website, that it says that you must be 18 or over to

22   access the website?

23   A.   I believe so, yes, sir.

24   Q.   Okay.  And it also says that that website will be -- is

25   monitored; isn't it true?

Obie - Cross                                                        10

1   A.   Which -- so you're --

2   Q.   So the, the website that you're referring to here, one

3   that's purportedly advertised as child pornography, it's your

4   testimony, as you just stated, that on the opening page, it

5   says clearly that you must be 18 or over to access that

6   website, correct?

7   A.   The dark web website?

8   Q.   The one that you referred to in paragraph 9.  I'm not

9   asking you to read paragraph 9.  I'm asking you, having read

10  that, to focus on my question.  It was your testimony a moment

11  ago that you actually went and observed that website, correct?

12  A.   I have observed that website, yes, sir.

13  Q.   Okay.  And you also testified that in observing that

14  website, it stated clearly therein that you had to be 18 or

15  over to access the website; isn't that true?

16  A.   They want you to be, but you don't have to be.

17  Q.   I understand that, but that warning is posted, correct?

18  A.   Yes.

19  Q.   All right.  And it also posted on the website that that

20  website is monitored, correct?  Do you recall seeing that?

21  A.   I don't recall at the moment.

22  Q.   Okay.  Can I direct your attention to paragraph 19?  Can

23  you read that to yourself, and when you've finished, could you

24  please look up so that I know that you've finished?

25            THE COURT:  Do you want him to read the whole

Obie - Cross                                                      11

1   paragraph?  I mean, it's two pages long.

2             MR. MC COOL:  It is, Your Honor.

3             THE COURT:  Is there any particulatr part of it that

4   you need to be aware of?

5             MR. MC COOL:  Sure.

6             THE COURT:  This is a transcript of a, you know, chat

7   apparently.

8             MR. MC COOL:  It is, Your Honor, and I apologize.  I

9   thought that just given that it was a chat, that it would be --

10  I can focus in, if I may.

11  Q.   Page 9, if you could look where Minor, Minor 1 purportedly

12  states, "I've never been shaved"; is that correct?

13  A.   Yes, sir.

14  Q.   And there are references throughout the affidavit of this

15  person that purportedly is a 14-year-old had pubic hair; is

16  that correct?

17  A.   Correct.

18  Q.   All right.  Is there anywhere in the affidavit showing

19  that you or anyone else at the FBI reviewed a government-issued

20  ID or a passport or anything like that that determined whether

21  or not this individual who purportedly is 14 was actually under

22  the age of 18?

23  A.   We have not viewed any material as such.

24            MR. MC COOL:  All right.  Nothing further on probable

25  cause, Your Honor.

Obie - Cross                                                      12

         1          THE COURT:  Okay.

         2          MR. MC COOL:  I move to -- I move -- it's my position

         3  that there is no probable cause here.

         4          THE COURT:  Well, and what would be the basis for

         5  that given the affidavit in support of the criminal complaint

         6  in which this chat said that the person they're discussing says

         7  that that person is 14 years or under?

         8          MR. MC COOL:  Well --

         9          THE COURT:  Isn't that probable cause?

        10          MR. MC COOL:  It's our view that it isn't, Your

        11  Honor, because it simply --

        12          THE COURT:  All right.  Well, it's, it's my

        13  determination.

        14          MR. MC COOL:  -- it could be an instance of

        15  role-playing.

        16          Yes, sir.  And, I'm sorry, I didn't want to talk over

        17  Your Honor.

        18          THE COURT:  Well, I mean, there is the person who has

        19  been communicating, saying that they're 14.

        20          A VOICE:  May I --

        21          MR. MC COOL:  No, you cannot.

        22          THE COURT:  No, you can't.

        23          MR. MC COOL:  That's true, Your Honor.  That's in the

        24  affidavit, but --

        25          THE COURT:  Okay.

```
Obie - Cross                                                        13
```

 1          MR. MC COOL:  -- it's our position that the code

 2   requires more.

 3          It requires that the person actually be under the age

 4   of 18, and this at most shows role play is, is our position.

 5          THE COURT:  Okay.

 6          MR. MC COOL:  It does not make out probable cause to

 7   make out a violation of the statute --

 8          THE COURT:  Okay.

 9          MR. MC COOL:  -- as charged.

10          THE COURT:  All right.  You can step down.  I don't

11   need to hear any more from you.

12                        (Witness excused.)

13          THE COURT:  Any other argument on probable cause?

14          MR. MC COOL:  No.  That's what I have, Your Honor.

15          THE COURT:  Sir, stand.  Sir, I've reviewed the

16   affidavit that's been filed in support of a criminal complaint.

17   It's clear based on the affidavit -- and this is not proving a

18   case beyond a reasonable doubt.  It's whether there is at least

19   probable cause for the charge that's been brought against you.

20   There certainly is probable cause on the charge that's been

21   brought against you, so the case is going to be proceeding as

22   charged, based on the information that's contained in the

23   affidavit concerning your conduct and communications with this

24   individual and everything else that's in the affidavit.

25          So do you make any argument on detention?

14

1           MR. MC COOL:  Yes.  May I?

2           THE COURT:  Okay.  Yes.

3           MR. CLAYMAN:  Thank you, Your Honor.  May I proceed?

4           THE COURT:  Please.

5           MR. MC COOL:  Thank you, sir.  Your Honor, under

6   3142, as, as the Court well knows, a person shall be released

7   unless it is found that he is a danger to the community or

8   likely to flee, and that detention will only be ordered in

9   those cases where there are no combination of conditions of

10  release that would reasonably assure the safety of the

11  community or my client's appearance.

12          And the Supreme Court in *Salerno* has made clear

13  that --

14          THE COURT:  Isn't this a presumption case?

15          MR. MC COOL:  It is, Your Honor, and I --

16          THE COURT:  Well, then it's your duty to overcome

17  that presumption by giving me evidence before I even get to

18  that part of the analysis, all right?

19          MR. MC COOL:  That's right.  It does fall under

20  3142(e), Your Honor.  We recognize that, and it is a

21  presumption case.  And still, you know, courts have found that

22  it's not a heavy burden to meet, and looking at the 3142

23  factors, we submit that there is evidence to rebut the

24  presumption.

25          The nature of the charges, Your Honor, they're

15

1    clearly disturbing and upsetting.  They are just that, charges

2    at this point.

3          While Your Honor has, has not accepted our probable

4    cause argument, I think in terms of, of recognizing or looking

5    at the nature and circumstances of the case, that it is one

6    that raises some concern whether or not the government will be

7    able to make its burden of proof at trial, and that it's not

8    simply just role-playing here.

9          My client's history and characteristics favor a

10   release.  He was born and raised in Virginia.  He graduated

11   from high school here in 2013.  He graduated from the New York

12   University with a degree in drama.  He's had no history of

13   violence, no history of drug or alcohol use.  I think the

14   evidence would show that he's a victim of intense bullying as

15   he was growing up.

16         He lives with his parents, Dr. Jay Sanders and

17   Dr. Risa Sanders.  Both are here in, in court, are willing to

18   serve as third-party custodians.

19         Your Honor, any -- he has no criminal history at all.

20   Any danger to the community can be mitigated, we would submit,

21   through the travel restrictions, avoiding contact with alleged

22   victims, reporting regularly to pretrial, and curfew,

23   electronic monitoring.  Any of those conditions would work,

24   Your Honor.

25         I think also, if I may, Your Honor, particularly in

16

1    these times, if I could through the -- may I pass up exhibits

2    I'd like to refer to --

3                    THE COURT:  Sure.

4                    MR. MC COOL:  -- in the next part of my argument?

5                    Oh, Your Honor, you know what?  I think what I've

6    done is I've sent a bunch of copies of the first exhibit and

7    not -- or the fourth exhibit and not all of them.  If I may

8    readjust here?

9                    THE COURT:  Okay.

10                   MR. MC COOL:  Let me see that whole stack.  Thanks, I

11   appreciate it.

12                   Sorry, Your Honor.  And then Your Honor has multiple

13   copies of Exhibit 4.  Here you go.

14                   I think we need -- here you go.  Here you go.  That's

15   No. 1 for His Honor and for counsel.

16                   THE COURT:  I've got 1, 2, 3, and 4.

17                   MR. MC COOL:  Yes, sir.  Thank you so much.  I

18   appreciate your patience.

19                   Your Honor, what I have before the Court are a number

20   of reports and articles that are -- that speak to the

21   coronavirus and how it's surging not only just across our

22   country but particularly in the, in the prison populations, and

23   Virginia alone has reported 114 cases, as stated in these, in

24   these articles.

25                   And Exhibit 4 speaks about our criminal system

1  holding the number of people we do and how susceptible our

2  inmate population is to the coronavirus.

3            And my point is this, Your Honor, is that given the

4  circumstances of this case, given the lack of criminal history,

5  given the fact that his parents can serve as third-party

6  custodians --

7            THE COURT:  I don't have any evidence in front of me

8  about his parents being suitable third-party custodians.

9            MR. MC COOL:  They're here in court.  They're

10  prepared --

11            THE COURT:  You know, it's your burden to have the

12  evidence in front of me.

13            MR. MC COOL:  May I, may I call a witness, Your

14  Honor?

15            THE COURT:  Very well.  Has, has Pretrial Services

16  had a chance to interview them?

17            MR. MC COOL:  Your Honor, I just was told to get --

18  be down here at two.

19            THE COURT:  Okay.  You're the one who wants to go

20  forward this afternoon.

21            MR. MC COOL:  Yes.  And may I, may I, may I present

22  my evidence?  May I call the --

23            THE COURT:  Please.

24            MR. MC COOL:  Yeah.

25            THE COURT:  I'll make a determination.

```
Sanders - Direct                                                    18
```

1        DR. RISA EDWARDS SANDERS, DEFENDANT'S WITNESS, SWORN

2                        DIRECT EXAMINATION

3   BY MR. MC COOL:

4   Q.   Good afternoon, ma'am.

5   A.   Hello.

6   Q.   Could you please state your full name and spell your name

7   for the court reporter, please.

8   A.   Risa, R-i-s-a, Edwards Sanders.

9   Q.   All right.  And what is your profession, ma'am?

10  A.   I'm a licensed clinical psychologist.

11  Q.   And do you live in, in Virginia?

12  A.   Yes, I do.

13  Q.   All right.  And is that a residential home, without

14  stating your address?

15  A.   Yes, it is.

16  Q.   All right.  And do you recognize Zackary Sanders here?

17  A.   Yes, I do.

18  Q.   Could you tell His Honor who -- what's your relationship

19  to Zackary Sanders?

20  A.   I'm Zack's mom.

21  Q.   Okay.  And who lives at your home?

22  A.   My husband and I and Zack.

23  Q.   Okay.  And do you -- and does anyone else live there?

24  A.   No.

25  Q.   All right.  Anyone under the age of 18 visit your home?

Sanders - Cross                                                      19

1    A.    No.

2    Q.    All right.  Would you, would you be willing to act as a

3    third-party custodian for, for your son?

4    A.    Yes, I would.

5    Q.    All right.  Would you be willing to have him

6    electronically monitored at your home?

7    A.    Yes, I would.

8    Q.    And would you, would you take steps to assure the Court

9    that your son did not have access to the internet while he's at

10   his home?

11   A.    Yes, I will.

12            MR. MC COOL:  All right.  That's all I have on

13   direct, Your Honor.

14            THE COURT:  Very well.  Cross-examine her.

15                      CROSS-EXAMINATION

16   BY MR. CLAYMAN:

17   Q.    Good afternoon.

18   A.    Hello.

19   Q.    How long has Zackary Sanders lived with you?

20   A.    Well, almost all of his life other than when he went to

21   college.

22   Q.    And most recently, how long has he lived with you?

23   A.    I think it's been maybe two years.

24   Q.    So in, in November of 2019, he was living with you; is

25   that right?

Sanders - Cross                                                      20

1    A.    I have, I have to think about that.  I know that he

2    graduated from college in May of 2017, so probably, yes.

3    Q.    And if you had to guess --

4              THE COURT:  We're talking about the time period of

5    October and November of 2019 to the present.  So this is last

6    year.

7              THE WITNESS:  I think so.  Yes, Your Honor.

8              THE COURT:  Well --

9              THE WITNESS:  Yes.

10             THE COURT:  I'm sorry.

11             THE WITNESS:  Sorry.

12             THE COURT:  It hasn't been that long.  Has he been

13   living with you for the past six months?

14             THE WITNESS:  Yes.

15             THE COURT:  Well, why, why is there any hesitation

16   when we ask October 2019 to the present?

17             THE WITNESS:  I'm just a --

18             THE COURT:  You seem to be confused.

19             THE WITNESS:  No.  I'm just trying to remember when

20   he graduated from college and then moved back to this area.  So

21   I'm just trying to do the math in my head.  I'm sorry, I'm just

22   a little nervous.

23             THE COURT:  Okay.

24   BY MR. CLAYMAN:

25   Q.    And if you had to guess, approximately how many electronic

Sanders - Redirect                                                    21

1    devices capable of accessing the internet do you have in your

2    home?

3    A.    Counting all my husband's and mine?

4    Q.    Yes.

5    A.    I have three; my husband has two; and, and Zack has a

6    Smartphone.

7              MR. CLAYMAN:  Okay.  Nothing further.

8              THE WITNESS:  Six.  Sorry.

9              MR. CLAYMAN:  Nothing further, Your Honor.

10             THE COURT:  Okay.

11             MR. MC COOL:  Briefly, Your Honor?  May I redirect?

12             THE COURT:  Sure.

13             MR. MC COOL:  Thank you.

14                      REDIRECT EXAMINATION

15   BY MR. MC COOL:

16   Q.   Dr. Sanders, would you be willing to assure the Court that

17   you would secure any devices that would allow your son to

18   have -- gain access to the internet if he was released into

19   your custody?

20   A.    Absolutely.  I mean, my devices are not accessible to

21   anyone anyway because I am in a profession that requires HIPAA

22   compliance, so no one goes near my devices, and same for my

23   husband.  I don't see where that would be a challenge at all to

24   secure those devices.

25             THE COURT:  Okay.

Sanders - Redirect                                                    22

1              MR. MC COOL:  Thank you, Your Honor.  That's all I --
2    that's all I have.
3              THE COURT:  Okay.  You may step down.  You may step
4    down.  Thank you.
5              THE WITNESS:  Thank you.
6                        (Witness excused.)
7              THE COURT:  Okay.  Any other offers of evidence or
8    argument you want to make on the issue of detention?
9              MR. MC COOL:  No, Your Honor.  I would just proffer
10   that if, if Dr. Jay Sanders was, was called as a witness, that
11   he would testify similar to his wife, and if Your Honor would
12   accept that proffer --
13             THE COURT:  Okay.
14             MR. MC COOL:  -- then I will forgo calling him as a
15   witness.
16             THE COURT:  All right.  So help me understand now
17   that we know a little bit more about his parents and that he
18   was living in that house with his parents, how we can be
19   assured that he wouldn't continue the same conduct that he was
20   doing while he was living in the house with his parents.
21             MR. MC COOL:  Well, I think, Your Honor, through
22   Pretrial Services and through other, you know, mechanisms of
23   securing devices, I mean, the, the FBI has seized most of the
24   electronics that were in the house.  Those that remain are,
25   are -- belong to the, Dr. Jay Sanders and Dr. Risa Sanders, and

23

1     they would secure those devices.

2            He wouldn't have any access to the internet.  He

3     could be on electronic monitoring.  He could remain in the home

4     all day.  He wouldn't be out in the community, and it would

5     assure his appearance in court, and it would alleviate any

6     danger that he may have to the community.

7            THE COURT:  Okay.  Sir, would you please stand?

8            Sir, you've been charged with a very serious offense,

9     one in which is disturbing in its nature and scope.  Having

10    found that there is probable cause for the charged offense, not

11    just on that one instance but references to other similar type

12    messages and communications that you've been having for an

13    extended period of time, I don't find that there's any single

14    condition or combination of conditions that I would reasonably

15    be assured that the safety of the community could be taken care

16    of.

17           I don't think you've overcome the presumption.  The

18    mere fact that, you know, you have an education and that you

19    have parents that you were living with in which you were able

20    to conduct this conduct in your home under their supervision at

21    the time certainly doesn't overcome the presumption in my mind.

22           So I'm going to require you to remain in custody

23    pending further proceedings in this matter, okay?  Thank you.

24           Thank you, counsel.

25           MR. MC COOL:  Your Honor, may I be -- may I address

1   the Court, please?

2              THE COURT:  Sure.

3              MR. MC COOL:  Not to relitigate anything, just to

4   seek guidance.  Your Honor, my client has, has contacts, and

5   I'm not sure if he's allowed to take these with him, and he

6   also has -- takes a prescription for severe migraines, and how

7   do -- can -- could Your Honor order that he be allowed to take

8   the contacts with him so that he can see?

9              THE COURT:  Does he have these contacts in right now?

10             THE DEFENDANT:  They're disposable, one a day.  So I

11   put (inaudible) in every day.  And for my migraine condition, I

12   can't wear glasses, because if there's pressure on these

13   things, I get a (inaudible).

14             MR. MC COOL:  I have a box.  It's open but it has

15   sealed contacts in, in them, Your Honor.

16             THE COURT:  Well --

17             MR. MC COOL:  I'm not sure about the prescription

18   medication.

19             A VOICE:  That's a matter that they can take up with

20   Alexandria Jail, but we're not allowed to accept anything.

21             THE COURT:  Yeah.

22             MR. MC COOL:  Okay.  That's fine.

23             THE COURT:  I mean, you'll have to deal with that at

24   ADC.

25             MR. MC COOL:  Yes, Your Honor.  I just --

25

1          THE COURT:  Okay?  Yeah.

2          MR. MC COOL:  I'm sorry to bother the Court with it.

3          THE COURT:  No, that's, that's -- I'm sorry, I wish I

4    could help more, but --

5          MR. MC COOL:  Yes, sir.

6          THE COURT:  -- they're the ones who are going to be

7    supervising him.

8          MR. MC COOL:  All right.

9          THE COURT:  Okay?

10          MR. MC COOL:  I appreciate being heard.

11          THE COURT:  Thank you.

12          MR. MC COOL:  Thank you.

13          THE COURT:  All right.

14          MR. MC COOL:  Your Honor, may I be excused?

15          THE COURT:  Yes, please.

16          MR. MC COOL:  Thank you, sir.

17          THE COURT:  Thank you.

18                    (Which were all the proceedings

19                     had at this time.)

20               CERTIFICATE OF THE TRANSCRIBER

21      I certify that the foregoing is a correct transcript from

22    the official electronic sound recording of the proceedings in

23    the above-entitled matter.

24

25                              _____
                                        /s/
                                Anneliese J. Thomson