**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ZACKARY ELLIS SANDERS,<br><br>Defendant. | Case No. 1:20-cr-00143<br>The Honorable Judge Ellis<br>Hearing: July 31, 2020 |

**<u>MOTION TO COMPEL DISCOVERY</u>**

Zackary Ellis Sanders, by and through undersigned counsel and pursuant to Federal Rule of Criminal Procedure 16(d)(2)(A) and the Fifth and Sixth Amendments to the Constitution of the United States, respectfully moves this Court for an order compelling the Government to disclose certain discovery. That discovery is critical to the preparation of Mr. Sanders's defense, including his motion to suppress all fruits of the search warrant executed at his home and for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

Mr. Sanders seeks the intervention of the Court at this stage because Mr. Sanders's motion to suppress and for a *Franks* hearing is meritorious and likely to result in the suppression of illegally obtained evidence against him. In order to litigate the motion effectively, however, the Government must provide Mr. Sanders with the discovery to which he is entitled. The Government's Affidavit in Support of the Search Warrant ("Affidavit") in this case rests *entirely* [redacted]

[REDACTED]. The limited discovery the Government has provided to date, however, demonstrates that the affiant, FBI Special Agent [REDACTED] ("the affiant" or "Special Agent [REDACTED]"), knew or should have known that he was misleading the Magistrate when he [REDACTED], as he knew that the [REDACTED] did not have evidence that [REDACTED]. Special Agent [REDACTED] also misled the Magistrate when he swore [REDACTED] [REDACTED], when he knew or should have known that the opposite was true.[1]

Undersigned counsel has submitted detailed discovery requests to the Government regarding the above. The Government, however, notwithstanding its obligations under Rule 16(a) and *Brady v. Maryland*, 373 U.S. 83 (1963), has refused to provide Mr. Sanders with meaningful discovery regarding the FBI's and Special Agent [REDACTED]'s understanding of the [REDACTED] [REDACTED]. This discovery is critical to Mr. Sanders's motion for suppression and a *Franks* hearing.

Mr. Sanders thus asks the Court to order the Government to provide certain discrete categories of discovery, as detailed below.[2] Mr. Sanders's requested discovery is necessary for him to challenge the search warrant the Government obtained in this case in violation of Mr. Sanders's Fourth Amendment rights. The outstanding materials relate to the two areas where Special Agent [REDACTED] knowingly or recklessly misled the issuing Magistrate on matters

---

[1] The limited discovery the Government has produced strongly supports Mr. Sanders's interpretation of the evidence. In addition, undersigned counsel has consulted with, and retained, multiple technical experts who concur with the defense's position that Special Agent [REDACTED]'s [REDACTED] was materially misleading on multiple issues. *See, e.g.*, Declaration from Dr. Matthew Miller at 4-5, attached as Ex. 1.

[2] Mr. Sanders reserves the right to request and obtain additional discovery beyond the categories addressed in this Motion.

fundamental to the probable cause determination [redacted] where there is no evidence to support that conclusory statement; and (2) whether, contrary to Special Agent [redacted] knew that the [redacted],[3] had used a particular investigative method, sometimes referred to as an exploit and "Network Investigative Technique,"[4] to [redacted] in order to [redacted] to the FBI regarding the IP address allegedly belonging to Mr. Sanders (as well as many other IP addresses).

---

[3] If the [redacted] is not the [redacted], it is another [redacted] that provided such information to the [redacted].

[4] "Network Investigative Technique" (NIT) is the term the FBI generally uses to refer to this investigative method (which is used in conjunction with an "exploit"), *see* Ex. 1 at 4-5, while the [redacted] generally refers to it as [redacted] or [redacted] Privacy advocates refer to this investigative method as malware. Regardless of what term is used to describe this investigative method, law enforcement uses it to [redacted]. *See* Ex. 1 at 4-5. A warrant is required when the Government uses an NIT. In *United States v. Darby*, 190 F. Supp. 3d 520, 530 (E.D. Va. 2016), for example, the Fourth Circuit held that the government's use of an NIT was a Fourth Amendment search and seizure. *Aff'd*, 721 F. App'x 304 (4th Cir. 2018). The Fourth Circuit reasoned that the use of the NIT, which resulted in "code placed on Defendant's computer," "caused Defendant's computer to transmit certain information without the authority or knowledge of Defendant. In this manner the government seized the contents of Defendant's computer." *Id.* at 530.

## BACKGROUND

### A. The Investigation and Search Warrant.

The FBI's investigation underlying this case began [redacted] and that represents Special Agent [redacted]'s central allegation in support of probable cause. The [redacted] wrote an [redacted][5] noting the following:

> [redacted]

[redacted], attached as Ex. 2.

What was likely some weeks after providing the [redacted]—and for reasons that the Government has refused to disclose[6]—the [redacted]. More particularly, [redacted]

[5] The portion of the [redacted] that the Government has provided to the defense—which constitutes [redacted]. Regardless of whether the [redacted] was part of the initial [redacted], the defense has not yet received the entirety of the [redacted].

[6] Common sense dictates that the [redacted] did not generate its [redacted] spontaneously; in other words, that there was intervening correspondence from the FBI to the [redacted] seeking further details about the [redacted]'s allegations. The Government has refused to provide this correspondence (or any other explanation for why the [redacted]), thereby necessitating this motion to compel.

[redacted].

The Government has inconsistently characterized its understanding of the [redacted]. On [redacted], for example, Special Agent [redacted]

[7] [redacted].

[8] [redacted]

[redacted].[9]

On [redacted], Special Agent [redacted]:

> [redacted].

[redacted].

[9] For example, the affidavit in support of the search warrant describing the Playpen website in *United States v. Matish*, 193 F. Supp. 3d 585 (E.D. Va. 2016) (ECF No. 18-2 at 14-15), alleged that the Playpen website was (1) dedicated to child pornography and (2) had a name suggestive of child pornography, and that the home page (3) had "two images depicting partially clothed prepubescent females with their legs spread apart" visible prior to registering an account and logging in, (4) prohibited re-posting material from other websites, and (5) referenced compressing large files for distribution, which were five factors from which it would have been reasonable to infer, from the face of the website, that it was dedicated to child pornography and that someone who visited that website therefore intended to access child pornography. [redacted]. [redacted].

[redacted]. *Cf.* *United States v. Bosyk,* 933 F.3d 319, 322 (4th Cir. 2019) (in affidavit in support of search warrant, FBI described message with hyperlink that defendant was alleged to have viewed and clicked on with numerous thumbnail images depicting man sexually molesting female toddler, which was unmistakably child pornography), *cert. denied*, 140 S. Ct. 1124 (2020).

On the issue of how the [redacted], Special Agent [redacted]:

> [redacted].

*Id.* The [redacted]

[redacted].

[redacted].

Following Mr. Sanders's arrest and initial appearance, the Government moved for his detention. On April 1, 2020, as part of litigating the detention issue, the Government represented to the Court only that the Internet user had "*accessed a website* that *advertises* child pornography," 1:20-MJ-114 ECF No. 15 at 2, and [redacted] Special Agent [redacted].

The Government's conflicting representations regarding the evidence of the Internet user's activity are summarized in the following chart:

| | [redacted] | [redacted] | **April 1, 2020** |
|---|---|---|---|
| **Source** | [redacted] | [redacted] | Government Pleading |
| **Author** | [redacted] | [redacted] | US Attorney's Office |
| **Description of the Tip** | [redacted] | [redacted] | "The defendant came to the government's attention after an investigation conducted by the Federal Bureau of Investigation . . . and other law enforcement entities revealed that **an individual accessed a website that advertises child pornography** using an IP address associated with the |

| | | | defendant's residence in McLean, Virginia." 1:20-MJ-114 ECF No. 15 at 2. |
|---|---|---|---|

**B. The Defense's Discovery Requests.**

Notwithstanding the long delays in this prosecution due to COVID-19,[10] the defense has diligently sought discovery from the Government throughout under both Rule 16(a) and *Brady v. Maryland*, 373 U.S. 83 (1963). On April 27, 2020, the defense agreed to an especially restrictive protective order governing all discovery in any format. The protective order prevents the defense from providing materials even to Mr. Sanders. *See* 1:20-MJ-114 ECF No. 28 at 1. Following the Court's entry of the protective order, the Government produced the [REDACTED] [REDACTED] in this case.[11]

From the time it first reviewed [REDACTED], the defense repeatedly has informed the Government of its belief that the search warrant in this case was invalid and has requested

[10] Over Mr. Sanders's objection, the Government was given an additional nine weeks longer than mandated under the Speedy Trial Act to indict him. *See* 1:20-MJ-114 ECF No. 24 at 2. In the 115 days since Mr. Sanders was arrested and ordered detained at the beginning of COVID-19's rapid spread throughout the United States and in Virginia in particular, he has been held under difficult conditions. The Alexandria Detention Center suspended all in-person visits with family and attorneys alike so Mr. Sanders has had no in-person contact with the outside world in nearly four months. *See* Rebecca Burnett, *Alexandria Adult Detention Center is closed to visitors, volunteers*, LOCAL DVM (March 17, 2020), https://www.localdvm.com/health/coronavirus/alexandria-adult-detention-center-is-closed-to-visitors-volunteers/ (last visited July 6, 2020) (describing Alexandria Detention Center's suspension of social visitation and inmate programming); *see also Sheriff's Office Restricts Access, Modifies Protocols in Response to COVID-19*, CITY OF ALEXANDRIA, VIRGINIA (June 22, 2020). For the first multiple weeks of his detention, he was held in the "'intake' section of the facility," which was not intended to house prisoners for days, let alone weeks, at a time, and where the lights remained on 24 hours a day. *See* 1:20-MJ-114 ECF No. 24 at 1. Because Mr. Sanders has underlying medical conditions that make him particularly vulnerable to COVID-19, the past nearly four months have been especially distressing because of his fear of what will happen to him if he is infected. *See* 1:20-MJ-114 ECF No. 13 at 12-14.

[11] On May 15, 2020, the Government also produced the [REDACTED] that Special Agent [REDACTED].

additional discovery essential to corroborating its position. In light of Special Agent [REDACTED]'s material misrepresentations in [REDACTED], *inter alia*, the defense has made specific discovery requests of the Government related to what Special Agent [REDACTED] knew prior to submitting [REDACTED]—but did not disclose to the Magistrate—regarding (1) the lack of actual evidence underlying [REDACTED]; and (2) how the [REDACTED] [REDACTED] [REDACTED].[12] In response, on July 2, 2020, the Government produced only two single-page [REDACTED], which are the [REDACTED] [REDACTED] and [REDACTED]. Notwithstanding the unusually robust Protective Order to which the defense consented in this case, *see* 1:20-MJ-114 ECF No. 28, the Government has refused to provide any additional information in two critical areas, *to wit*: (1) the Government's contemporaneous understanding of what the Internet user did and did not access; and (2) the Government's contemporaneous understanding of the [REDACTED] [REDACTED]. Accordingly, the defense respectfully submits this motion to compel.

[12] The defense has sought the requested items on numerous occasions yet has received only five documents relevant to these requests. On May 8, 2020, the defense sent a letter to the Government requesting that the Government provide relevant documents and information pertaining to the [REDACTED]. Since that date, the defense has sent at least nine emails and three additional letters, all requesting relevant material that is critical to the preparation of Mr. Sanders's suppression and *Franks* motion. The defense also has made numerous attempts to speak to the Government by telephone. The defense has made clear to the Government that while the [REDACTED] was facially deficient even if the statements [REDACTED] [REDACTED], were true—which they were not—when the [REDACTED] is corrected to reflect the true facts, the matter is not close—and thus that the good faith exception under *United States v. Leon*, 468 U.S. 897 (1984), will not apply. *See also United States v. Gary*, 528 F.3d 324, 329 (4th Cir. 2008) (noting that *Leon* good faith exception does not apply where, *inter alia*, probable cause is based on false statements in affidavit that were knowingly or recklessly made or where affidavit does not provide substantial basis for probable cause).

## ARGUMENT

Despite the fact that the Government had an extra *nine weeks* to indict Mr. Sanders, and that the defense repeatedly has requested discovery regarding the [REDACTED] and how it was obtained, the Government is withholding critical discovery material to the preparation of Mr. Sanders's motion to suppress and for a *Franks* hearing. This Court should compel the Government to produce two categories of material pursuant to Rule 16(d)(2)(A) and the Fifth and Sixth Amendments to the Constitution of the United States: (1) material regarding the FBI's knowledge of what the Internet user did and did not access; and (2) material regarding the [REDACTED] [REDACTED] [REDACTED]. *See* Ex. 1 at 4-5.

### I. THE GOVERNMENT IS WITHHOLDING CRITICAL DISCOVERY.

Since Mr. Sanders was arrested and detained on March 20, 2020, 115 days ago, the defense has received extremely limited discovery in response to its requests related to the Affidavit. There is clearly significant, highly relevant material that the Government is withholding from Mr. Sanders.[13]

---

[13] The five documents responsive to the discovery requests are [REDACTED] [REDACTED] [REDACTED]. On July 2, 2020, the defense received [REDACTED]; however, only [REDACTED] of the [REDACTED] documents pertained to events prior to the FBI seeking and executing the search warrant, of which [REDACTED] had already been provided, and the remaining [REDACTED] [REDACTED] were related to the *execution of* the search warrant, not the *application for* the search warrant. As the Government was aware from the defense's prior requests, information responsive to the *application for* the search warrant is vital for effective litigation of the suppression and *Franks* issues.

*A. The Government is withholding discovery that would corroborate that Paragraph is materially false or misleading.*

Based on the handful of documents the Government has produced thus far, it is clear the Government is continuing to withhold further documentation regarding the . of the . But neither of the documents that the Government has produced from the —contain the . The only document that contains the is the . Furthermore, neither the nor the . Finally, neither the nor the . Thus, the defense has not yet received the entirety of the .

There are doubtlessly emails, letters, documents, photographs, and/or other tangible evidence exchanged between the , and reports documenting the same. Notably, the Government has not denied the existence of such documents. That the government is withholding significant discovery from the defense regarding the is clear from

[redacted] without first further corresponding with the [redacted] to clarify what the [redacted] knew and what the [redacted] meant as it applied to this particular case. Indeed, to the extent the [redacted]—Special Agent [redacted] would have known that there was no probable cause for the warrant to issue. *See, e.g.*, *supra*, Background, Part A. It is accordingly impossible to believe that Special Agent [redacted] simply read the [redacted] without attempting to determine what the [redacted] actually meant. To the extent Special Agent [redacted] in fact attempted no corroboration of the [redacted] however, that fact alone would be critical to the litigation of Mr. Sanders's motion to suppress and for a *Franks* hearing.

The [redacted], but it is unclear if the [redacted] was part of [redacted]. If the FBI did receive the [redacted], it presumably also received additional information at the same time, including (but not limited to) the [redacted]. None of this information is included in the [redacted].

The [redacted]

[redacted], there must have been further communication between the FBI and the [redacted].

B. *The Government is withholding discovery that would corroborate that Paragraph [redacted] is materially false or misleading.*

Because Special Agent [redacted] knew or should have known that—[redacted]—[redacted] an investigative technique known as an NIT, malware, [redacted] in this case to [redacted],[14] there should be additional documentation to corroborate the [redacted]'s activity. Nonetheless, the Government has refused to provide any documentation related to [redacted] at issue in this case. It is well-documented that the [redacted], and it appears this was a situation where the US, in effect, outsourced to the [redacted] that would be illegal under US law and then feigned ignorance of that process in seeking its warrant.

Because the tip originated from [redacted], it is even more likely that [redacted] at issue here. The [redacted]

[14] *See supra* n.4. Indeed, in two prior cases in the Eastern District of Virginia, FBI agents have stated under oath in affidavits in support of search warrants that an NIT was the only method of which they were aware to [redacted]. *See, e.g.*, *United States v. Matish*, 193 F. Supp. 3d 585 (E.D. Va. 2016) (ECF No. 18-2 at 24-25, 29); *see also Darby*, 190 F. Supp. 3d 520 (ECF No. 23-1 at 27-28).



. *See* Ex. 3. According to the [15]

Mr. Sanders needs, and the Government has refused to provide, the documents that would corroborate that this was the case here. The communications between the FBI and the about the are directly relevant to what activity the Internet user allegedly engaged in and what the FBI knew, or should have known, about what the did to obtain that information.

## II. THE REQUESTED ITEMS MUST BE DISCLOSED PURSUANT TO RULE 16

The requested items are discoverable under Rule 16(a)(1)(E) because: (1) Mr. Sanders has requested them (indeed, numerous times), (2) the items are in the Government's possession, custody, or control, and (3) the items are material to the preparation of Mr. Sanders's defense.

Rule 16(a)(1)(E) provides:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense . . . .

15



The first two requirements (a request by the defense and the Government's possession, custody, or control of one or more responsive documents) appear uncontested here: The defense repeatedly has requested the documents, *see supra* n.12, and the Government has not denied possessing them, *see also, e.g.*, *supra* Argument, Part I

The third requirement also is satisfied: The requested items are material to the motion to suppress and for a *Franks* hearing because they will help show that the single most important fact justifying the issuance of the warrant, *and indeed the only incriminating fact contained in* [REDACTED], which was Special Agent [REDACTED]'s [REDACTED] [REDACTED], was false. *See United States v. Wilford*, 961 F. Supp. 2d 740, 756 (D. Md. 2013), *on reconsideration in part* (Nov. 27, 2013) (holding that "information material to the Motion to Suppress, although sought in connection with a pretrial proceeding, might alter the 'quantum of proof' in [defendant's] favor if the suppression motion were successful" and is therefore discoverable under Rule 16. *Aff'd*, 689 F. App'x 727 (4th Cir. 2017). This material also likely will demonstrate that the [REDACTED] [REDACTED] illegal under US law and that the FBI knew or should have known that, and that Special Agent [REDACTED]'s statements [REDACTED] [REDACTED] therefore were falsely made.

Thus, "there is a strong indication" that these items will "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal" at a *Franks* hearing and therefore "the pretrial disclosure of the disputed evidence would . . . enable[]" Mr. Sanders to "significantly to alter the quantum of proof in his favor" by supporting suppression of the evidence against him the government is seeking to use at trial *United States v. Caro*, 597 F.3d 608, 621 (4th Cir. 2010). Individually and

taken together, responses to the defense's requests for discovery would: show that the central allegation supporting probable cause was either mischaracterized or falsified by Special Agent [REDACTED]; reveal the extent of the lack of independent investigative work performed by the FBI to corroborate the [REDACTED]; reveal the lack of corroboration provided by the [REDACTED] to support the central allegation supporting probable cause; allow impeachment of Special Agent [REDACTED]; aid defense expert(s) in preparing a declaration and preparing to testify; and corroborate the testimony of the defense expert(s).[16]

There is a world of difference for the purposes of determining probable cause between whether the Internet user simply [REDACTED], as the requested items will help prove, or whether the Internet user [REDACTED]. *See supra*, n.7. Thus, the differences between the [REDACTED], and the Government's Response, 1:20-MJ-114 ECF No. 15 at 2, and the bases for them and how that information was obtained, are material to the issuance of the warrant. The requested items also would allow the defense to assess other potential pretrial issues that the lack of discovery thus far has prevented the defense from being able adequately to assess.[17]

Under such circumstances, Rule 16 provides that the Government must disclose what is requested; the Government does not have discretion. Furthermore, the Government is under a

---

[16] For example, defense expert(s) will opine that [REDACTED]—which can be called an NIT, [REDACTED], or malware—was most likely used here, *see* Ex. 1 at 4-5, contrary to what Special Agent [REDACTED]. (Affidavit, ¶ 25).

[17] For example, it appears the [REDACTED] violated US law in its [REDACTED] and, if that were done with US acquiescence, that could give rise to other reasons for suppression under Rule 41, including "when there is evidence of intentional and deliberate disregard of a provision in the Rule." *Darby*, 190 F. Supp. 3d 520 at 535.

"continuing duty to disclose," which includes a duty promptly to make disclosures. Rule 16(c) ("A party who discovers additional evidence or material before or during trial must *promptly* disclose its existence to the other party or the court if: (1) the evidence or material is subject to discovery or inspection under this rule; and (2) the other party previously requested, or the court ordered, its production") (emphasis added).

## III. THE REQUESTED ITEMS ALSO MUST BE PRODUCED UNDER *BRADY V. MARYLAND*.

Separate and apart from Rule 16, the Fifth Amendment imposes a constitutional obligation on the Government to disclose to the defendant all "evidence . . . material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *United States v. Abdallah*, 911 F.3d 201, 217 (4th Cir. 2018) (similar). Prosecutors have a constitutional "duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). Because investigating officers, including FBI agents, are "part of the prosecution, . . . the taint on the trial is no less if they, rather than the prosecutor, were guilty of nondisclosure." *See, e.g.*, *Barbee v. Warden*, 331 F.2d 842, 846 (4th Cir. 1964).[18]

A prosecutor's *Brady* disclosure obligation is not limited to information of which a prosecutor has actual knowledge: A prosecutor has a non-delegable "duty to learn of" *Brady* information, *Kyles*, 514 U.S. at 437, because "the prosecutor's role transcends that of an

[18] Although a lack of "materiality" may be a defense post-conviction to suppression of *Brady* information, a determination of materiality pretrial is not appropriate. *See United States v. Carter*, 313 F. Supp. 2d 921, 925 (E.D. Wis. Apr. 12, 2004) ("[I]n the pre-trial context, the court should require disclosure of favorable evidence under *Brady* and *Giglio* without attempting to analyze its 'materiality' at trial."). As a result, prosecutors should "resolv[e] doubtful questions in favor of disclosure." *Cone v. Bell*, 556 U.S. 449, 470 n.15 (2009) (citations omitted). Here, where the requested items are material to suppression, they must be considered material to the outcome at trial. *See Wilford*, 961 F. Supp. 2d 740 at 756.

adversary." *United States v. Bagley*, 473 U.S. 667, 675 n.6 (1985). Instead, the prosecutor "is the representative not of an ordinary party to a controversy, but of a sovereignty . . . whose interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935). The prosecutor's duty to learn therefore encompasses the duty to speak to members of the prosecution team, including FBI special agents, and the ████ if it is part of the prosecution team, to become aware of and to disclose previously undocumented favorable information. To assist the Government in complying with its duty, the defense supplied specific *Brady* requests to direct the Government's attention to particular categories of exculpatory information. *See, e.g.*, *supra* n.12.

Here, in refusing to provide any further discovery regarding the *Franks* issue, the Government is not acting consistently with its obligation "to assist the defense in making its case," but instead is acting strategically to limit the scope of disclosure or to delay the timing of disclosure, which is in violation of its duty to "transcend" its role as an adversary. *Bagley*, 473 U.S. at 675 n.6. Due process requires that Mr. Sanders have access to evidence that would tend to show that ████████ contained knowingly and recklessly false statements such that the warrant is invalid and the *Leon* good faith exception does not apply.

## IV. WITHOUT THE REQUESTED ITEMS, THE DEFENSE CANNOT PROVIDE EFFECTIVE ASSISTANCE OF COUNSEL.

It long has been recognized that the Sixth Amendment right to counsel is the right to effective assistance of counsel. *See, e.g.*, *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). Unless the accused receives effective assistance of counsel, "a serious risk of injustice infects the trial itself." *Cuyler v. Sullivan*, 446 U.S. 335, 343 (1980). While the accused usually bears the burden of proving a violation of his right to counsel, there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effectiveness in a particular case is

unjustified." *United States v. Cornic*, 466 U.S. 648, 658 (1984).  Failure to effectively move to suppress evidence obtained based on a knowingly or recklessly false affidavit should be one such circumstance where it is abundantly obvious that the defense's performance falls "below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

## CONCLUSION

As discussed, the requested discovery is material to the preparation of Mr. Sanders's defense because, without it, counsel for Mr. Sanders will be unable effectively to challenge the illegality of the search warrant and otherwise to present Mr. Sanders's defense.  Accordingly, for the reasons stated above and for any other reasons appearing to the Court, Mr. Sanders respectfully requests that this Court order the Government to disclose the information and tangible evidence pertaining to the two categories he has sought, subject to conditions or protections that the Court may deem appropriate to address any legitimate confidentiality interests on the part of the Government.

Respectfully submitted,

*/s/ Jonathan Jeffress*

Jonathan Jeffress (#42884)
Emily Voshell (#92997)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C.  20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: evoshell@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

*Counsel for Defendant Zackary Ellis Sanders*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of July, 2020, the foregoing was served electronically on the counsel of record through the U.S. District Court for the Eastern District of Virginia Electronic Document Filing System (ECF) and the document is available on the ECF system.

*/s/ Emily Voshell*
Emily Voshell