Public Version

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

UNITED STATES OF AMERICA,

                       Plaintiff,

     v.

ZACKARY ELLIS SANDERS,

                       Defendant.

Case No. 1:20-cr-00143
The Honorable Judge Ellis
Hearing: July 31, 2020

## REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO COMPEL DISCOVERY

Zackary Ellis Sanders, by and through undersigned counsel, respectfully submits this Reply to the Government's Opposition to his Motion to Compel Discovery ("Opposition").

Based on the Government's Opposition, three things are now clear:  (1) that ███████ ████████████████████████████████████████████████████████████████ ███████████████████████ misleading to the Magistrate as to the existence of probable cause because the evidence ████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████ (3) that the Government has ███████ ████████████ in its possession, custody, or control demonstrating the foregoing, but refuses to produce them.  The Government has not denied that ████████, as worded, was misleading on the crucial issue of probable cause; that ████████████████████████████████████ ████████████████████████████████████ was likely false; or that there are

additional communications on these issues between the FBI and ███████ that the Government is withholding from the defense.[1]

The Government's characterization of Mr. Sanders's request for these materials as a "fishing expedition"—a phrase that appears seven times in its Opposition, *see* Gov't Opp'n at 2, 4 and 9—is both inflammatory and incorrect.  The ████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████ That much is obvious both from the limited discovery the Government has produced to date, as well as the fact that the Government is now taking the legally untenable position that evidence of ████████████ ██████████████████████████████████████ is tantamount for probable cause purposes to evidence of ████████████████████████████████ ███████████████████████████████████ ████████████████████████████████ ██████████████████████████ *See, e.g.,* Gov't Opp'n at 11 (describing the fundamental differences between these two activities as "slightly different," "flimsy," and "semantic and ultimately meaningless").

As the Government is aware—and as the caselaw establishes beyond question—merely ██████████████████████████████████████████

---

[1] ██████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████ ████████████████████████

██████ are not remotely the same for probable cause purposes.  Indeed, the Government has not cited a single case—not one—finding probable cause on the sparse facts present here.  To the contrary, the fundamental difference between the true state of the evidence in this case and ██ ████████████████████████████████████████████████████████████████ *is dispositive* to the existence of probable cause, or lack thereof.   *See, e.g.*, *United States v. Falso*, 544 F.3d 110, 120-21 (2d Cir. 2008) (finding no probable cause for possession of child pornography when it was alleged that defendant "appear[ed]" to have "gained access or attempted to gain access" to the non-member cpfreedom.com website and that even if one inferred that the defendant had accessed cpfreedom.com, there was no specific allegation that the defendant "accessed, viewed or downloaded child pornography"); *see also, e.g. United States v. Doyle*, 650 F.3d 460, 472 (4th Cir. 2011) (finding no probable cause for possession of child pornography based on evidence of child molestation and claim from child victim that defendant showed the victim pictures of nude children); *cf. United States v. Bosyk*, 933 F.3d 319, 322 (4th Cir. 2019) (finding probable cause where FBI described message with hyperlink with numerous thumbnail images depicting man sexually molesting female toddler, which was unmistakably child pornography, and records subpoenaed from a file sharing site showed the defendant had viewed and clicked on that hyperlink to download child pornography), *cert. denied*, 140 S. Ct. 1124 (2020); *United States v. Richardson*, 607 F.3d 357 (4th Cir. 2010) (finding probable cause where investigation linked defendant's email accounts, which he used to distribute child pornography, to the address where the warrant was executed); *United States v. Bynum*, 604 F.3d 161 (4th Cir. 2010) (finding probable cause where someone with a particular screen name at address where warrant was executed had uploaded suspected child pornography to the Internet); *United States v. Goodwin*, 854 F.2d 33 (4th Cir. 1988) (finding probable cause for anticipatory search warrant when

defendant ordered child pornography and investigation verified that materials would be delivered to address where warrant was executed); *United States v. Bailey*, 272 F. Supp. 2d 822, 824 (D. Neb. 2003) (finding probable cause where someone using a particular e-mail address knowingly subscribed to a specialized Internet site that distributed child pornography); *United States v. Shields*, No. 4:CR-01-0384, 2004 WL 832937, at *7 (M.D. Pa. Apr. 14, 2004), *aff'd*, 458 F.3d 269 (3d Cir. 2006) (finding probable cause where it was clear that the defendant voluntarily subscribed to and joined two websites whose purpose was to share child pornography); *United States v. Froman*, 355 F.3d 882, 890–91 (5th Cir. 2004) (finding probable cause where the defendant paid to join a group called Candyman where the sole purpose was to receive and distribute child pornography, the defendant registered screennames that reflected an interest in child pornography, and the defendant did not cancel his paid subscription to the group); *United States v. Hutto*, 84 F. App'x 6, 8 (10th Cir. 2003) (finding probable cause where the defendant paid to join a group where images of child pornography were available to all members).

That fact that courts have consistently required much more than ██████████████ ████████████████████████████ ██████████ ████████████ to justify the issuance of a search warrant is precisely why █████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████. And though the issue of whether the Special Agent knowingly or recklessly misled the Magistrate Judge is a state of mind inquiry, the Government has steadfastly refused to disclose █████████████████████ ███████████████████████████████████████████████████████████

---

[2] ███████████████████████████████████████████
███████████████████████████████████████████████



███████████. The specific ██████████ the defense is seeking go directly to ████████████████████████████████████████████████████████; indeed, the Government appears to be withholding those █████████ *precisely because* they will provide the defense with direct evidence of the Special Agent's state of mind. The Court should order the Government to produce these materials.

## DISCUSSION

I.   **THE GOVERNMENT MISSTATES THE APPLICABLE LEGAL STANDARD FOR A MOTION TO COMPEL AND MISCHARACTERIZES THE NATURE OF MR. SANDERS'S DISCOVERY REQUESTS.**

### A.  The Government's Formulation of the Legal Standard for Compelling Discovery in Support of a Motion for a *Franks* Hearing is Incorrect.

The Government misstates the legal standard a defendant must satisfy to show he is entitled to further relevant discovery in support of his *Franks* motion.  The Government asserts paradoxically that Mr. Sanders is not allowed to obtain the communications that support his nascent *Franks* motion because he has not yet succeeded on that motion.  *See, e.g.,* Gov't Opp'n at 12 ("Because the defendant has not satisfied the heavy burden for a *Franks* hearing to take place, his motion to compel discovery to support a *Franks* challenge should be denied").  That is a tautological argument that would allow the Government to conceal forever evidence that the Special Agent misled the Magistrate, when the Government knows full well that the defense has no other way of obtaining further information on this issue.[3]

---

[3] While the Government has informed Mr. Sanders that ██████████████████████ ███████████, this is of no help to Mr. Sanders, because such evidence relates to what the FBI seized during the *execution* of the search warrant, and not what the FBI knew prior to *applying* for the search warrant.  Furthermore, reviewing ██████████████ would not provide insight into ███████████████████████████████████.

Rule 16's materiality standard—which the government concedes as applying to discovery in support of Mr. Sanders's pretrial motions, *see* Gov't Opp'n at 9 n.6—does not mirror the standard for obtaining a *Franks* hearing.  Instead, under Rule 16, Mr. Sanders must show three things:  that he (1) requested discovery (2) in the Government's possession, custody, or control that is (3) material to his defense.  Fed. R. Crim. P. 16(a)(1)(E).  To establish materiality, Mr. Sanders must show that the disclosure of these communications would enable him to "significantly alter the quantum of proof in his favor."  *United States v. Caro*, 597 F.3d 608, 621 (4th Cir. 2010); *United States v. White*, No. 15-6193, 2016 WL 2989567, at *2 (D. Md. May 24, 2016) (same); *United States v. McLamb*, 220 F. Supp. 3d 663, 674 (E.D. Va. 2016), *aff'd*, 880 F.3d 685 (4th Cir. 2018) (same).

All three of Rule 16's requirements are met here.  Mr. Sanders has requested two highly specific categories of ███████████████████████ and—importantly—the Government has not denied that such ███████████ exist.  The ███████████ are plainly material because they will further demonstrate that the Special Agent knew that ███████ ████████████████████████████████████ ████████████████████████ Similarly, the ███████████ will further demonstrate that the Special Agent knew ███████ ████████████████████████████████████ ██████████████████████, was likely false.  Because the

---

███████████████████████████████
███████████████████████████████
████████████████████████████████
████████████████████████████████
██████████████████████████████████
████████████████████.

production of such ████████████ will lead to suppression under the Fourth Amendment, it is undeniable that these ████████████ would allow Mr. Sanders to "significantly alter the quantum of proof in his favor," as success on his motion to suppress would significantly alter the proof available to the Government at trial.  *Caro*, 597 F.3d 608 at 621; *see, e.g., United States v. Wilford*, 961 F. Supp. 2d 740, 756 (D. Md. 2013), *on reconsideration in part* (Nov. 27, 2013) (holding that "information material to the Motion to Suppress, although sought in connection with a pretrial proceeding, might alter the 'quantum of proof' in [defendant's] favor if the suppression motion were successful" and is therefore discoverable under Rule 16), *aff'd*, 689 F. App'x 727 (4th Cir. 2017); *see also United States v. Cranston*, 453 F.2d 123, 126 (4th Cir. 1971) (explaining that a defendant can use Rule 16 "to secure pre-trial information on identification procedures undertaken by Government in advance of trial as a basis for a motion to suppress").

### B.  The Government is continuing to withhold the ████████████ material to Mr. Sanders's defense.

The Government in its Opposition characterizes the discovery it has provided thus far as "extensive and comprehensive."  Gov't Opp'n at 4.  The Government's single-minded focus on the *quantity* of discovery—of whatever import—misses the point and misleads about the information that the Government continues to withhold from the defense.  As Mr. Sanders explained in his Motion to Compel, he had received only five documents responsive to *any* of his prior requests for discovery—████████████████████████████

████████████████████████████████████

████████████.  On July 27, 2020, just several hours before the Government filed its Opposition, Mr. Sanders received a one-page document that was also responsive, but all it shows is that the

████████████████████████████████████.

According to the Government, ████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████. Presumably, the FBI would have

tried to find out ███████████████████████████████████████████████

████████████████████████.

    The Government is withholding additional ████████████████████████

████████████████████████████████████████. The three single-page

documents ████████████ that the defense has received so far ██████████████████████

████████████: there has to have been additional ████████████████████████████

that accurately reflects what material ██████████████████████████████

████████████████████, which the Government continues to withhold.

### C. Assuming *Arguendo* the Government's Legal Standard for a Motion to Compel is Correct the Evidence Here Easily Satisfies That Standard.

    Even if the Government were correct in conflating the legal standard governing a motion to compel with the legal standard for a *Franks* hearing—as the Government incorrectly does throughout its Opposition, *see*, *e.g.*, Gov't Opp'n at 8, 9—Mr. Sanders still easily satisfies that standard.

    *1.*  *The Special Agent knew that* ████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████████.

    The Government claims that ████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████. While the Special Agent may have

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████ .

      The Special Agent's own contemporaneous statements (as well as Government's

counsel's subsequent statements) underscore ████████████████████████████ . As

noted in Mr. Sanders's Motion to Compel, the Special Agent ████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████ . The Special Agent's ████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████ ' █████████████████████ .

_____

[4] █████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████████████████

The Government responds that its dueling characterizations ████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████. Though that is

technically correct, it misses the point entirely.  While merely ███████████████

may be a necessary precursor to *subsequently* ████████████████████████

████████████████████████████████████████████████████

██████, both common sense and the caselaw (*see* string cite, *supra* at 3-4) dictate that there is

indeed a "world of difference" between those two activities for probable cause purposes: one is

legal and the other is not; one reflects the evidence necessary for probable cause and the other

does not.

The Government also responds that the Special Agent's ███████████████████

████████████████████████████████████████████. The

Government's argument is both incorrect factually and, again, besides the point.  While the

Special Agent ███████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████. Tellingly, nowhere in its Opposition

does the Government ever represent that it believed then (or believes now) that ████████████

████████████████████████████████████████████

██████. That is precisely why the Government's argument that ██████████████████

██████████████████████████ is both legally and factually incorrect.

_____

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████.

Under no interpretation of the *Franks* caselaw may an affiant include a tip—whether from a confidential informant or another law enforcement agency or from any other source—he knows is misleading on its face and then "omit" information in the affiant's possession regarding why that tip inaccurately describes the evidence. *See Franks v. Delaware*, 438 U.S. 154, 156 (1978) (finding an omission is material if it is "necessary to the [neutral and disinterested magistrate's] finding of probable cause"); *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990) ("*Franks* protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate"); *United States v. Wharton*, 840 F.3d 163, 168–69 (4th Cir. 2016) (finding "a law enforcement officer's reckless omission of facts from his affidavit, which undermined the reliability of a confidential informant, were material"); *Miller v. Prince George's Cty., MD*, 475 F.3d 621, 629 (4th Cir. 2007) ("selectively include[ing] information bolstering probable cause, while omitting information that did not . . . can mislead a magistrate by reporting less than the total story, thereby manipulating the inferences a magistrate will draw"); *United States v. Taylor*, 935 F.3d 1279, 1302-03 (11th Cir. 2019) ("If the officials who sought the warrant are culpable for misleading the magistrate, the fault lies with them.  And the object of suppression would be to deter law enforcement from misleading magistrates in the future, not to prevent warrants like this one from issuing"); *United States v. McLamb*, 880 F.3d 685, 690 (4th Cir. 2018) ("In *Leon*, the Supreme Court explained the limits of the good faith exception:  'Suppression . . . remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth.'").

██████████████████████████████████

██████████████████████████████████

██████████████████████████. A brick-and-mortar analogy of a storefront helps one understand that a person could walk to the front of a store, not be able to see inside, and then simply walk away—██████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

██████ ███

When people "browse" the Internet, they do not always know what they are looking for: in fact, the very phrase "browsing the Internet" can "imply a sense of aimlessness, with the user just wasting time on the Internet."[6] ██████████████████████████████████████

███████████████████████████████████████ Thus, ████████████████████████████████████████████

██████████████████████████████████ cannot be probative of whether a person intended to even try to look at child pornography. ██████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████.

_____

[5] ██████████████████████████████████████████
██████████████████████████████████████████
██████.
[6] *Browsing*, Technopedia, https://techopedia.com/definition/797/browsing (last accessed Jul. 29, 2020).

If the Special Agent ███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████ there is no possibility that a neutral and

detached magistrate would have issued the requested warrant.  *See, e.g.*, *Colkley*, 899 F.2d at 300

(information is material under *Franks* where "its inclusion in the affidavit would defeat probable

cause").  Accordingly, the defense has easily made "the preliminary showing necessary for a

*Franks* hearing," Gov't Opp'n at 8, that the Government posits—incorrectly—as the legal

standard governing this motion to compel.

       2.  *The Special Agent* ████████████████████████████
          ███████████████████████████████████████
          ██████████████████████████████████.

Mr. Sanders has also satisfied the government's "substantial preliminary showing"

standard with respect to the potential falsity of ████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████ ████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████.

---

[7] ████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
█████████████████████████████████████████████.

███████████████████, the FBI itself has said time and again that ██████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████████████.

In the Eastern District of Virginia, FBI Special Agent Douglas Macfarlane swore two

Affidavits for search warrants to deploy an NIT on a target website to seize the true IP addresses

of people who logged into the website by entering a username and password.  He stated:

> Due to the unique nature of the Tor network and the method by which the network protects that anonymity of its users by routing communications through multiple other computers or 'nodes,' . . . **other investigative procedures that are usually employed in criminal investigations of this type have been tried and failed or reasonably appear to be unlikely to succeed if they are tried**. . . . Under the NIT authorized by this warrant, the TARGET WEBSITE . . . would augment that content [that websites send to visitors in the normal course of operation] with additional computer instructions . . . designed to cause the user's 'activating' computer to transmit certain information to a computer controlled by or known to the government. . . . **to the extent that use of the NIT can be characterized as a seizure** of an electronic communication or electronic information, . . . such a seizure is reasonably necessary, because **without this seizure, there would be no other way, to my knowledge, to view the information and to use It to further the investigation**.

*United States v. Matish*, 193 F. Supp. 3d 585 (E.D. Va. 2016) (ECF No. 18-2 at 24-25, 29); *see*

*also United States v. Darby*, 190 F. Supp. 3d 520 (E.D. Va. 2016) (ECF No. 23-2 at 27-28, 32)

(exact same).

14

FBI agents have testified to the same in court.  As FBI Special Agent Steven Smith previously testified:

> In the case of a Tor hidden service, once we seize that website, we don't know the true IP address of the users, so we're not able to trace back who those users are.  We only would be able to see, at most, the last node in the connection. That would be the IP address available to us. And we would not be able to trace back to the originating IP address. . . . **We have to have a method in which we can proactively, once we seize the website, attempt to ascertain the user's true IP address** and **we typically do this through network investigative technique** . . . **to cause the user's computer to communicate with an FBI-controlled computer outside the Tor network**.

*United States v. Cottom*, No. 8:13CR108, 2013 WL 6567553 (D. Neb. Dec. 12, 2013) (ECF No. 257 at 21).

FBI Special Agent Daniel Alfin, who was the case agent for the national Playpen investigation in multiple jurisdictions, previously testified that it was "correct" that when Internet users "access[ed] the site using the Tor Browser . . . **you're required to send some kind of additional exploit to get code to execute on their computer . . . because of a feature in Tor . . . to prevent someone from learning the Tor Browser user's true IP address**." *United States v. Wheeler*, No. 1:15-CR-390 (N.D. Ga. Aug. 21, 2017).  He later testified:

> So the Playpen website was a child pornography website that existed within the Tor network running as a Tor hidden service. . . **because it's running as a Tor hidden service**, even though we now have control of the website, **we still don't know who the users are. People can still access the website but we can't see their real IP address**. So that's what the NIT does. . . [W]hen you access the internet through Tor, your real IP address is invisible to the destination. **So what the NIT does is it forces the computer to communicate outside of the Tor network over the regulator internet. So when that happens, we can see the defendant's real IP address.**

*United States v. Stamper*, Case No. 1:15cr109 (S.D. Ohio Mar. 9, 2018) (ECF No. 94 at 69, 75-76).

What FBI Agents have previously stated under oath ████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████  █

It does not hold that because ████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███  . This is misleading for the reasons Mr. Sanders set forth in his Motion to Compel and is

undercut by the Government's own ████████  .

The Special Agent ████████████████████████████████████

██████████████████  ████  █████████████████████████████

---

[8] The Government dismisses, without any legal or logical basis, █████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
█████████████████████████████████████████████████████
████████████████████████████████████████████████████████, and
the defense is not aware of any instance where the Government objected to Dr. Miller's
expertise.

[9] ████████████████████████████████████████████████████
█████████████████████████████████████████████████████
███████████████████

████████████████████████████████████████.  The defense now submits ███████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████.

    The discovery the Government has provided to date shows ████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

              ████████████████████████████████████████████

█████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████. To the extent ████████████ engaged in activity in violation of US law. *See, e.g.*, 18 U.S. Code § 1030 (prohibiting the intentional accessing of and obtaining information from a computer without authorization). To the extent the FBI was working with ████████████ ████████████, the FBI needed to obtain a warrant before ████████████ ████████████

████ *United States v. Darby*, 190 F. Supp. 3d 520, 530 (E.D. Va. 2016), *aff'd*, 721 F. App'x 304 (4th Cir. 2018) (deployment of a NIT that obtains data from a person's computer is a search and seizure under the Fourth Amendment).

Given intelligence-sharing agreements between ████████████ ████████████ ████████████ ████████████ ████████████ is not just prohibited by the Fourth Amendment; *it is precisely why the Framers enacted the Fourth Amendment in the first place.* *Riley v. California*, 573 U.S. 373, 403 (2014) (the Fourth Amendment was meant to protect against "the reviled 'general warrants' and 'writs of

---

[10] ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████████████ ████

assistance' of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity").

Mr. Sanders needs, and the Government has refused to provide, the ███████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████ .

### D.  The Defense's Discovery Requests Are Highly Specific and Neither Oppressive Nor Burdensome.

The Government complains throughout its Opposition that the defense's discovery requests are "wide-ranging" and "largely unspecified."  Gov't Opp'n at 2; *see also id.* at 6 (characterizing defense requests as "wide-ranging"); and 8 (characterizing requests as "broad").  That is nonsense.  Contrary to the Government's arguments, the defense's requests are simple and the material is easily located by the Government.  Specifically, what certainly exists and what the Government must be ordered to produce are ████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

███████████████████████ .

It is clear that the above ██████████ exist for at least the three following reasons: ██████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████.

    If there truly are no such ████████████, then the Government can simply say so—

which, notably, it declined to do in its Opposition.

## II.   THE RELEVANT CASELAW DEMONSTRATES THAT THE DEFENSE IS ENTITLED TO THE REQUESTED ██████████████.

    The Government in its Opposition largely ignores Fourth Circuit law and instead relies

on four District Court cases from outside the Circuit to support its claim that Mr. Sanders cannot

receive discovery helpful to a motion to suppress or for a *Franks* hearing until after he has

already obtained a *Franks* hearing.  None of these four cases support the Government's position.

First, *United States v. Garrison*, 147 F. Supp. 3d 1173, 1183 (D. Colo. 2015), is of no help to the

Government because, unlike the defendant in that case, Mr. Sanders is not engaging in a "blind

fishing expedition among documents possessed by the Government on the chance that something

[favorable to the defense] might turn up."  The three single-page documents ████████████ that

the Government has provided to date undercut the Government's claim that Mr. Sanders is

merely hoping that additional ██████████████████████ would be material

to his defense.  Mr. Sanders's requests for concrete and particularized communications, which

the limited amount of discovery the Government has shared to date shows exists and that the

Government is continuing to withhold, are not speculative.  Instead, Mr. Sanders has "offer[ed] a

specific, articulable basis for believing that the Government possesses particular evidence or information, not otherwise available to the defendant, that would support a claim that a warrant affiant intentionally or recklessly misstated or omitted material information in the relevant warrant application(s)."  *Id.* at 1183.

Second, *United States v. Messalas*, No. 17-CR-339 (RRM), 2020 WL 1666162, at *10 (E.D.N.Y. Apr. 4, 2020), is not helpful to the Government because, in that case, the defendant's motion to compel discovery was denied "to the extent it [wa]s not rooted in supporting his *Franks* challenge."  Unlike in *Messalas*, here, the requested communications will directly support his *Franks* challenge.  Furthermore, Mr. Sanders has made specific, particularized requests for ██████████ that go directly to the Special Agent's "state of mind" on issues "necessary to the probable cause . . . finding[]," which is exactly the subjective analysis that *Franks* requires a Court to conduct when deciding whether an affiant's knowingly or recklessly misleading statements rendered a warrant invalid.  *Id.* at *11, n.6.

Third, *United States v. Roybal*, 46 F. Supp. 3d 1127 (D.N.M. 2014), supports Mr. Sanders's Motion to Compel.  In that case, the Court noted "the materiality standard is not a heavy burden" and the Government needs to "disclose rule 16 material . . . if it enables the defendant significantly to alter the quantum of proof in his favor."  *Id.* at 1146.  Mr. Sanders has shown why he has met this burden.  Thus, Mr. Sanders is not seeking to "misuse . . . a veracity hearing for the purposes of discovery."  *Id.* at 1162 (quoting *Franks*, 438 U.S. at 170).

Finally, *United States v. Harding*, 273 F. Supp. 2d 411, 430 (S.D.N.Y. 2003), stands for the proposition that a defendant is not entitled to "wide-ranging discovery to canvass for evidence" absent a showing of materiality.  That is not what Mr. Sanders is doing here, and he has met his burden of showing materiality.

While focusing on out of Circuit authority, the Government ignores other persuasive precedent.  In *United States v. Wallace*, No. CRIM.A. 2:11-00109, 2011 WL 3321472, at *3 (S.D.W. Va. Aug. 2, 2011), the Court ordered the Government to disclose to the defense the identity of a government witness's identity and contact information even though it was "questionable whether the source w[ould] have any information determinative of the outcome of the motion to suppress," because "the court recognize[d] that the source may be helpful to the defense."  Thus, in that case, the defense did not need to show that it would prevail on the motion to suppress before the Government was required to disclose information that could be helpful to the defense's motion to suppress.  Neither does Mr. Sanders in order to obtain the discovery to which he is entitled, given that he has already made the requisite showing.

**IV.    THE ████████████ ARE FAVORABLE UNDER *BRADY V. MARYLAND*.**

Mr. Sanders has clearly explained (1) what discovery material is missing and (2) why it is favorable to his suppression motion.  He is not "fish[ing] for information" or speculating, as the Government claims, in a clear attempt to evade its *Brady* obligations.  Gov't Opp'n at 18.  The defense is not attempting to use *Brady* as an open-ended discovery tool—rather, the defense has identified information that is favorable to Mr. Sanders's *Franks* and suppression motions and has moved to compel the Government to produce it.  The Fifth Amendment and, indeed, the Government's own policies require no less.  *See United States v. McLamb*, 220 F. Supp. 3d 663, 674 (E.D. Va. 2016), *aff'd*, 880 F.3d 685 (4th Cir. 2018) (the Fifth Amendment "requires that, upon request, the government disclose favorable evidence that is material to guilt or punishment of the accused."); *see also* United States Attorney's Manual Policy Regarding Disclosure of Exculpatory and Impeachment Information, § 9-5.001.C.2 (requiring disclosure of information that "might have a significant bearing on the admissibility of prosecution evidence").

The Government's reliance on *Caro*, 597 F.3d at 619, is inapposite.  There, the defendant failed to show how the requested discovery material would be favorable to him.  Here, Mr. Sanders has clearly established how it would be.  Similarly, the Government's reliance on *United States v. Ducore,* 309 F. Supp. 3d 436 (E.D. Va. 2018), is misplaced.  The defendant in *Ducore* requested a broad swath of information—phone numbers and names of passengers on a plane where the incident in question occurred—that the defense could then use to investigate, which *might* reveal favorable information.  This Court found that the request was not a *Brady* request but, rather, a discovery request, because the favorability of the requested material was too speculative.  This is not that case here. Mr. Sanders has clearly identified why what he has requested and why it is favorable to his defense.[12]

### V.    WITHOUT THE ███████████████ MR. SANDERS CANNOT EFFECTIVELY PREPARE A DEFENSE OR CONFRONT THE WITNESSES AGAINST HIM.

The Sixth Amendment guarantees Mr. Sanders the rights to present a defense to confront the witnesses against him.  *See, e.g.*, *Washington v. Texas*, 388 U.S. 14, 19 (1967) ("the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's . . . is a fundamental element of due process of law"); *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("Whether rooted directly in the Due Process Clause . . . or in the Compulsory Process or Confrontation clauses of the Sixth Amendment. . .  the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense") (quotation marks omitted).

---

[12] As noted in the Motion to Compel at n. 18, lack of "materiality," may be a post-trial defense to *Brady* suppression.  But pretrial, prosecutors should "resolv[e] doubtful questions in favor of disclosure."  *Cone v. Bell*, 556 U.S. 449, 470 n.15 (2009) (citations omitted).  That is what *Brady* requires, what the U.S. Attorney's Manual instructs, and what is required here.

Without the requested material that the Government continues to withhold from him, Mr. Sanders and undersigned counsel is unable to do so effectively.  By withholding the requested material from Mr. Sanders, the Government is preventing him from impeaching Special Agent ███ with ████████████████ that would reveal his state of mind about ████████████ ██████████████████, which would show that he knowingly or recklessly misled the Magistrate.

## CONCLUSION

In both his Motion to Compel and this Reply, Mr. Sanders has shown the requested discovery is material to the preparation of Mr. Sanders's defense because, without it, counsel for Mr. Sanders will be unable effectively to challenge the illegality of the search warrant and prevent the Government from presenting significant evidence in its case-in-chief.  Accordingly, for the reasons stated above and in the Motion to Compel, and for any other reasons appearing to the Court, Mr. Sanders respectfully requests that this Court order the Government to provide

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████.

Respectfully submitted,

*/s/ Jonathan Jeffress*

Jonathan Jeffress (#42884)
Emily Voshell (#92997)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C.  20005
Telephone: (202) 683-6150

Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: evoshell@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

*Counsel for Defendant Zackary Ellis Sanders*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 30th day of July, 2020, the foregoing was served

electronically on the counsel of record through the U.S. District Court for the Eastern District of

Virginia Electronic Document Filing System (ECF) and the document is available on the ECF

system.

<u>*/s/ Emily Voshell*</u>
Emily Voshell