# Exhibit 1

SEALED TRANSCRIPT

```
 1                   UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
 2                      ALEXANDRIA DIVISION

 3   UNITED STATES OF AMERICA,     )    Corrected Transcript
                                   )    (Corrections made to page 21,
 4        v.                       )    line 10, and page 28, line
                                   )    10)
 5   ZACKARY ELLIS SANDERS,        )
                                   )
 6            Defendant.           )    Criminal No. 20-143
     _____  )
 7

 8                                      Alexandria, Virginia

 9                                      September 11, 2020

10
                                       SEALED TRANSCRIPT
11

12                 TRANSCRIPT OF MOTION HEARING
              BEFORE THE HONORABLE T. S. ELLIS
13               UNITED STATES DISTRICT JUDGE

14            APPEARANCES:

15     For the Government:     WILLIAM CLAYMAN, AUSA
                               U.S. Attorney's Office
16                             2100 Jamieson Avenue
                               Alexandria, Virginia  22314
17
       For the Defendant:      JONATHAN STUART JEFFRESS, ESQ.
18                             JADE CHONG-SMITH ON BEHALF, ESQ.
                               KaiserDillon PLLC
19                             1099 14th Street NW
                               8th Floor West
20                             Washington, DC 20005

21

22     Court Reporter:     PATRICIA A. KANESHIRO-MILLER, RMR, CRR
                           United States District Court
23                         Eastern District of Virginia
                           401 Courthouse Square
24                         Ninth Floor
                           Alexandria, Virginia  22314
25
       Proceedings reported by stenotype shorthand.
```

SEALED TRANSCRIPT

2

1        Transcript produced by computer-aided transcription.

3

```
 1                    P R O C E E D I N G S

 2                       (10:48 a.m.)

 3            THE COURT:  All right.  You may call the next matter,

 4      please.

 5            THE DEPUTY CLERK:  The Court calls Criminal Case

 6      United States of America versus Zachary Ellis Sanders, Case

 7      Number 2020-CR-143.

 8            May I have appearances please, first for the

 9      government.

10            MR. CLAYMAN:  Good morning, Your Honor.  Bill Clayman

11      and Maya Song for the United States.

12            THE COURT:  All right.  Good morning to both of you.

13            And for the defendant?

14            MR. JEFFRESS:  Good morning, Your Honor.  Jon

15      Jeffress and Jade Chong-Smith on behalf of the defendant.

16            THE COURT:  Good morning to both of you.

17            Who will argue today on behalf of the defendant?

18            MR. JEFFRESS:  I will.

19            THE COURT:  All right.  First of all, I have already

20      resolved the motion for reconsideration.  I don't need to

21      hear anything, don't want to hear anything about that.  I

22      have no doubt, Mr. Jeffress, that you think I've missed it

23      again, and that's all right.  That's what your job is.

24      You'll have an opportunity to persuade other judges that I

25      have made an error.  If you succeed, you will not be the
```

4

1    first to succeed in that regard.

2           MR. JEFFRESS:  Thank you.

3           THE COURT:  Secondly, I don't need or want to hear

4    anything about -- I think the government spent half a

5    paragraph or a page on whether or not the reaction to my

6    striking the first brief and their then filing hundreds of

7    pages was improper, insolent, or whatever the government was

8    suggesting.  I don't want to hear anything about that.

9           Let me just say this:  In the future, whether it is

10   the government or the defendant, if you need additional

11   pages, you request it.  You don't file the additional pages

12   and ask for it.  That's what I call the BFA:  brute force and

13   awkwardness.  You ask permission first.  In any event, all

14   that's gone.  I'm not interested in that anymore.  I'm

15   interested in the merits of the various motions to suppress.

16   Over a hundred pages have been filed, and I have been

17   reviewing all of that.  I want to hear your arguments today.

18   I'm going to give you each 30 minutes of pretty much, I

19   think, unfettered time to tell me anything you want to tell

20   me to make sure I don't miss anything.

21          All right.  Mr. Jeffress, you may begin, sir.

22          MR. JEFFRESS:  Thank you, Your Honor.

23          And I do appreciate it, Your Honor.  I know we have

24   given Your Honor a lot to consider.

25          I want to start with actually the second motion to

5

1      suppress that we filed, which is the motion to suppress

2      addressing the -- what we believe has been the misleading

3      nature of paragraph 23 of the affidavit.  And under this

4      motion, Your Honor, we are also requesting a *Franks* hearing,

5      as the process is a two-step process.  We believe that we've

6      more than established our burden to a *Franks* hearing, and I

7      would like to explain to Your Honor why.  I do believe, Your

8      Honor, motion to suppress number two is -- is open and shut

9      in terms -- in terms of whether we get a *Franks* hearing.  And

10     that is because of the extremely misleading nature of

11     paragraph 23.

12             This warrant is very unusual in my experience.  The

13     affidavit.  I'm sorry.  The entire case, the entire case for

14     probable cause is essentially turning on one sentence of one

15     paragraph.  There is no other paragraph that even -- or

16     sentence in the affidavit that even purports to link the IP

17     address that is linked to Mr. Sanders to any form of criminal

18     activity.  Everything else is certainly -- is about the

19     officer's background and experience, his expertise, other

20     things that are not case-specific and that do not relate to

21     this internet user's activity.  So paragraph 23 -- and the

22     government would agree -- is the crux of the affidavit.  It

23     is the only paragraph that makes any allegation of any

24     criminal activity or even suspicious activity by the IP user

25     -- by the IP address that has eventually been linked to

1      Mr. Sanders.

2          And, you know, what I would like to do, if I can hand

3      this up just so we can all follow together --

4          THE COURT:  I have it in mind.  I have seen it more

5      than once, as you might imagine.

6          MR. JEFFRESS:  Okay.  So, Your Honor, paragraph 23,

7      as Your Honor knows, states that, "In August 2019, a foreign

8      law enforcement agency known to the FBI and with a history of

9      providing reliable, accurate information in the past,

10     notified the FBI that the FLA determined that on May 23,

11     2019 a user of IP address" such-and-such, quote, "accessed

12     online child sexual abuse and exploitation material via a

13     website that the FLA named and described as the target

14     website."  Okay.

15         So that right there, that sort of vague language is

16     the only allegation in the entire affidavit linking this IP

17     address to any form of criminal activity.  And the question I

18     think -- the initial question is what did this suggest to the

19     magistrate.  What does it mean?  And what it told the

20     magistrate -- and I think what the Court has accepted that

21     this implies or strongly suggests or even states -- is that

22     this IP address is linked to criminal activity; that this IP

23     address was used to view or download child pornography, that

24     that's what the foreign law enforcement agency was telling

25     the FBI.

7

1          Now, that, Your Honor, is not true.  The special

2     agent well knew, when he repeated the FLA's tip in paragraph

3     23, that the FLA did not have evidence of the IP user viewing

4     or downloading child pornography.  He knew that the FLA had

5     evidence only that the IP user had visited this particular

6     website one time for one second.  That's it.

7          Now, the Court has repeatedly -- and I think based on

8     some of the arguments the government has made here -- come

9     to -- both in the memorandum opinion denying our initial

10    motion to compel and then on this reconsideration opinion --

11    has come to the same mistaken conclusion that the magistrate

12    came to surely, which is that no, what this is saying is that

13    IP address linked to Mr. Sanders viewed and downloaded child

14    pornography.  That's what it's saying.  And that's a very

15    reasonable interpretation of 23 -- or 23.

16         What we know from many other sources -- now, the

17    government, I will say, in litigating the motion to compel

18    and in imposing these motions to suppress, have never told

19    this Court what the special agent's understanding of that

20    paragraph was.  They have never said it.  That is an

21    extremely unusual position for us to be in.  They have never

22    answered the million dollar question in this case, which is

23    what did the special agent think of that when he got that tip

24    and what was the agent thinking when he repeated that tip in

25    this affidavit.  The government has refused very

SEALED TRANSCRIPT

8

1    conspicuously to ever actually directly answer that question

2    to the Court.  And that litigation strategy should tell this

3    Court a lot about what is going on here.

4         The government has access to this agent whenever they

5    want.  Surely, the government has spoken to the agent about

6    what he understood this to mean.  But the government has

7    never directly said, hey, the agent thought that that meant

8    Mr. Sanders -- the IP address associated with Mr. Sanders

9    viewed and downloaded child pornography.  And they haven't

10   said that because it is not true.  That is not what the agent

11   thought.  Now, that's why we moved to compel.

12        The government refused to tell us what was the

13   agent's understanding.  Just say, we have talked to the

14   agent, the agent thought that meant he viewed or downloaded

15   child pornography.  They've never said that.  They've refused

16   to say that in this litigation.

17        THE COURT REPORTER:  Mr. Jeffress, slow down, please.

18   Repeat the last sentence.

19        MR. JEFFRESS:  That's why we moved to compel to try

20   to see if there was evidence -- e-mails, reports, other

21   things -- that would have shown what the agent's state of

22   mind was and would have showed that the agent either

23   understood -- or we believe he understood -- was that all

24   this meant was that the agent -- I'm sorry -- that

25   Mr. Sanders, the IP address linked to Mr. Sanders went to

SEALED TRANSCRIPT
9

1    this website one time for one second, or whether he thought

2    what this clearly implies and what the Court has said this

3    clearly states, which is that it means that he viewed or

4    downloaded child pornography.

5         Those are very different cases for probable cause, as

6    I'm sure the Court appreciates.  Viewing -- going to a

7    website that has a mix of illegal and legal content and

8    doesn't have anything on the home page of the website that is

9    illegal one time for one second is a very different case for

10   probable cause than having evidence that someone actually

11   went onto the website, registered for the website, logged

12   into the website, and viewed or downloaded child pornography.

13   That is night and day in terms of the probable cause

14   analysis.  The government suggests -- paragraph 23 suggests

15   they had the latter, when in fact all they had is one time

16   for one second.

17        Now, how do we know -- the Court said it is just rank

18   speculation on our part that the agent actually knew that it

19   was just the one time for one second.  I have to respectfully

20   disagree with the Court, and let me explain why.

21        First, there are the other paragraphs of the

22   affidavit itself.  If you go to affidavit paragraph 6, which

23   is at the beginning of the affidavit -- the Court's

24   indulgence -- that paragraph states -- and this is in the

25   first paragraph under "Background of the investigation and

1    probable cause," that is the title of this section.  And what

2    that paragraph states is:  "There is probable cause to

3    believe that a user of the internet account at the subject

4    premises," which means Mr. Sanders' parents -- I'm sorry --

5    they left, Your Honor, but they were here -- at their home.

6    "There is probable cause to believe that a user of the

7    internet account at the subject premises accessed the target

8    website as further described herein."  That's it.  "Accessed

9    the target website."  Now, what he means -- I think there is

10   some confusion about what the word "access" means.  What he

11   means there, the truthful and accurate definition of "access"

12   in that paragraph is visited, visited the website.  That's

13   what is described here.

14          Then we turn to page 15 of the affidavit, which

15   summarizes the evidence related -- quote -- this is the

16   quote -- the title of this section -- "Evidence related to

17   identification of the target that accessed the website."

18   Once again, that "accessed the target website."  They're not

19   saying he accessed child pornography.  They're not saying the

20   target viewed child pornography.  They're just saying that

21   accessed the target website, and what he meant there was

22   visited the target website because that is all the evidence

23   we have.

24          We then turn to paragraph 29 -- and this, Your Honor,

25   I think is the clincher.  This is when I knew a hundred

1    percent that we were right that all they had was visiting the

2    website; that he knew that all they had was visiting this

3    website one time for one second.  And what 29 states is,

4    "Accordingly" -- this is the paragraph -- this is the one

5    that they have summarized all of the evidence.  He marshals

6    it, and he summarizes it, and it's his entire case for

7    probable cause.  That is what 29 is.

8         I know the Court has probably seen millions of these

9    affidavits in its -- in its experience.  I have seen probably

10   a far lower number, but this is like the wind-up-paragraph.

11   Right?  This is the one where you describe everything you

12   got.  And you say, Judge, here is our case for probable

13   cause.

14        What 29 says is, "Accordingly, based on my training

15   and experience" -- this is the penultimate paragraph of this

16   section -- "based on my training and experience and the

17   information articulated herein, because accessing the target

18   website required numerous affirmative steps by a user --

19   including downloading TOR software, accessing the TOR

20   network, finding the web access for the target website and

21   then connecting to the target website via TOR, those four

22   things.  Because those affirmative steps were taken by the

23   user, "it is extremely unlikely that any user could simply

24   stumble upon the target website without understanding its

25   purpose and content."

SEALED TRANSCRIPT

12

1        So that is a case for probable cause based on a

2    truthful and accurate recitation of what the government's

3    evidence was, which that they had a tip that he went to the

4    website one time for one second.

5        And then third, the conclusion of that section, "For

6    all the reasons described herein, I submit that there is

7    probable cause to believe that any user who accessed the

8    target website" -- again -- "has, at a minimum, knowingly

9    accessed the target website with intent to view" -- "intent

10   to view" -- child pornography, or attempted to do so."

11       So the version of 23 -- what those paragraphs make

12   sure, make very clear, is that the interpretation of

13   paragraph 23 that the government has pressed to this Court

14   and that the magistrate surely accepted and that this Court

15   has accepted twice in its two opinions denying our motion to

16   compel -- that the -- 23, the FLA was describing the web --

17   the user's activity on the site, that the FLA was suggesting,

18   hey, this person was viewing or downloading child pornography

19   on the site, we have evidence of that.  That is wrong.  We

20   know that is wrong because the agents never repeated it.

21       There is no possibility -- in my experience, there is

22   no possibility that an experienced FBI agent who has

23   evidence, who thinks there is evidence of someone actually

24   viewing or downloading child pornography is going to

25   summarize his case for probable cause as simply going to this

SEALED TRANSCRIPT

13

1    website, which is what he did in 29 and 30.  Why on God's

2    green earth -- if you're an FBI agent and you have evidence

3    and you believe that you have evidence of an IP user viewing

4    or downloading child pornography, why in God's green earth

5    are you going to rely on the simple fact that he visited the

6    website?

7           Now, the government has said, well, in part --

8    they've mentioned many different things.  The government I

9    think refuses to be pinned down in this case.  It is very

10   frustrating and I think it is actually very difficult for

11   this record because they refused to say what happened here,

12   what the agent actually understood.  What they seem to be

13   sort of saying now is, oh, well, that's him walking it back,

14   that's him saying, actually, 23 is not true and all we have

15   is this.  They say that on pages -- they make this argument

16   in their opposition.

17          That's not -- you can't unring the bell in that way.

18   You cannot put out there, there is evidence of this IP user

19   viewing or downloading child pornography and then later say

20   our evidence is that he visited the website.  That doesn't

21   walk it back.  That doesn't correct it.  You can't unring the

22   bell that way.  Once you put that out there and the

23   magistrate has checked that little box off mentally in the

24   probable cause analysis, look, there is evidence of him

25   viewing or downloading child pornography, I don't have to

SEALED TRANSCRIPT
14

 1   think any more on this.  That avoids much harder and truthful

 2   cases they should have made and they did not make in this

 3   affidavit, which was to say, going to this website one time

 4   for one second is enough for probable cause.  That's the case

 5   they needed to make.  That's the honest case.  That's the

 6   case that would have been consistent with their obligations,

 7   and that's a case that would not have triggered a *Franks*

 8   hearing.  Now, it would have triggered a very different

 9   motion which was that's not probable cause, but it would not

10   trigger a *Franks* hearing.  What you cannot do is repeat the

11   FLA's tip, which of course suggests that the person viewed or

12   downloaded child pornography, as the Court has accepted

13   twice, and then just walk away from that, and then say, okay,

14   well, we put that out there, we're not going to qualify it,

15   we're not going to go back and clarify it, we're not going to

16   do anything.  You can't do that.  Once you put that out

17   there, you're responsible -- you're responsible for the truth

18   of that information and you're responsible for the impression

19   that that leaves on a magistrate or a judge.  That is their

20   obligation.  And anything less does give us a *Franks* hearing,

21   Judge.  That agent knew that there was no evidence of

22   downloading child pornography, there was no evidence of any

23   activity on the website, that it was just visiting the

24   website.

25            Now, how else do we do this?  His own internal report

15

1    submitted three months -- submitted in January, which is I

2    think a month -- or several weeks before the affidavit was

3    filed, and that's already in evidence -- and what that says

4    is, in his own internal report, "In August 2019, the FBI

5    received information from a foreign law enforcement agency

6    known to the FBI and with a history of providing reliable,

7    accurate information in the past, that FLA" -- again --

8    "advised a user who accessed ████████ using IP address"

9    such-and-such on May 23, 2019 at" -- 2:00 -- "02:06:48."

10   That is an accurate statement of the evidence.  They had the

11   IP user going to that website on one day for one second.  It

12   is stated right here in this internal report.  It says the

13   same thing that he basically repeated in 29.  It is the same

14   thing that he repeated in 30.  It is the same thing that's in

15   6.  It's the same thing that is in the title of that section.

16   But it is fundamentally different for probable cause purposes

17   from what is in 23, which is that there is evidence of this

18   user viewing or downloading child pornography.

19        Your Honor, I -- you know, even though we have not

20   succeeded on our motion to compel and not been able to get

21   any further information on this, it is clear from the

22   affidavit itself, it is clear from the 1057, that the agent

23   knew that all he had was the internet user going there for

24   one minute for one second.  That's it.  That's all the

25   evidence they had.

SEALED TRANSCRIPT

16

1        In fact, the government, in Mr. Sanders' bond

2   hearing, repeated that understanding of the evidence.  The

3   government said, when they were asking for Mr. Sanders'

4   detention, that the evidence showed that the IP address

5   linked to Mr. Sanders accessed the website.  That's it.

6        You don't need -- if you have evidence of someone

7   actually clicking on a link to child pornography, downloading

8   child pornography, joining a website that has, you know, a

9   child pornography group or something like that -- if you have

10  any evidence of actual criminal activity, you don't rely on

11  the fact the person went to the website one time.  You would

12  never do that.  No prosecutor would do that.  No FBI agent

13  would do that.  And that shows, Your Honor -- the course of

14  conduct throughout this shows that they knew that they didn't

15  have the downloading or viewing of child pornography, which

16  is what 23 suggested, and that's why 23 is misleading.  It

17  just couldn't be more clear from this.

18       You know, the agent said -- I have counted five

19  different times in the affidavit alone where he said that the

20  internet user just visited the website.  Only one time, in

21  paragraph 23, did they ever suggest anything more, and that's

22  when they repeat the FLA tip, which clearly suggests the

23  internet user viewed or downloaded child pornography.

24       So, you know -- I mean -- you know, if you

25  take -- the government has made the case here, well, if you

17

```
1    correct 23, and, you know, if it is just about going to a
2    website one time for one second, we still have probable
3    cause.  Okay.  We can have that fight.  But that is not the
4    fight that was had here.  That is not what was told to the
5    magistrate.  That is not what the magistrate believed, and it
6    is not what this Court has said.  The Court has twice said
7    that our -- our -- that all -- that this agent had much more
8    than just going to the website.  This Court has said that the
9    agent had him doing these things on the website, using --
10   viewing online exploitation material on the website.  With
11   all respect, I understand why the Court was led to that
12   conclusion.  Respectfully, that is wrong.  They just didn't
13   have that.  Although 23 suggested it, they didn't have that
14   evidence.  And that is the fundamental problem here.  The
15   whole affidavit is built on a misrepresentation.  Now, if
16   there is some good faith argument the government has about
17   why that happened, then that's fine, and that should be at
18   the Franks hearing.
19         There is no question we have made a substantial
20   preliminary showing of why we get a Franks hearing and that
21   this affidavit is misleading.
22         Your Honor, you know . . .
23         (Pause)
24         I suppose -- you know, again, the agent has submitted
25   a declaration to this Court.  In addition to submitting an
```

SEALED TRANSCRIPT

18

1    affidavit, the government had him submit a declaration, sworn

2    declaration to this Court.  But that declaration does not say

3    that he understood that the FLA had evidence of Mr. Sanders

4    viewing or downloading child pornography.  The declaration

5    doesn't say that.  Surely, the government has discussed this

6    matter with him.  So why are we not getting a statement, some

7    representation about what the agent understood?  The answer

8    to that question is the agent understood that 23 was not

9    correct.  He understood that 23 was misleading.  That's why

10   he didn't repeat it himself in all those other paragraphs.  I

11   can't say, hey, on this date, you know, my informant who has

12   this long history of reliability, on this day, he said he saw

13   Mr. Smith buy cocaine and he saw him take it, give him money,

14   buy cocaine, and then just leave that there, even though you

15   know it's misleading.  I don't think we need to look hard at

16   the caselaw to know you just can't do that.  If you know that

17   is an accurate misstatement of the evidence, especially on an

18   issue that is important, as in paragraph 23, which is the

19   whole crux of the affidavit, the whole case for probable

20   cause, you need to make sure that that magistrate understands

21   that that actually is not -- if we don't do that, if we can't

22   enforce that rule, then this whole process is -- we're going

23   to lose, we lose the reliability, which is the critical thing

24   of this entire process.  If we can't make sure that when they

25   repeat the most important part of the probable cause case

 1    that is not an accurate recitation, then that's a true danger

 2    to the system.

 3            Your Honor, with that, I think I want to move on to

 4    the second motion I want to discuss, which is there is just

 5    no probable cause, period, here, even with -- whatever they

 6    say in paragraph 23 means -- paragraph 23 is vague.  I think

 7    everyone can recognize that usually you have a much more

 8    concrete tip than that, than just, oh, he accessed online

 9    exploitation material.  But even if we're assuming that that

10    was not misleading, I still -- probable cause -- we have a

11    separate motion, motion number one, on that.  And I want to

12    address that.  I don't know if the Court wants me to make it

13    now or --

14            THE COURT:  You have about 11 minutes left.

15            MR. JEFFRESS:  Okay.  Your Honor, on that issue, the

16    Court would have to break new ground to affirm probable cause

17    here even accepting whatever 23 meant.  This is difficult at

18    this point because, you know, 23 meant -- what 23 meant to

19    the agent is clear to me, which is that it meant he visited

20    the website one time.  If the question is whether visiting a

21    website with child pornography one time for one second gives

22    the government -- even on the TOR -- provides the government

23    probable cause, that is open and shut, too.  There is no case

24    coming remotely close to upholding a probable cause

25    determination based on a user's visit one time for one

1       second, which is all the evidence they had here.  No cases.

2              Now, they try and say *Bosyk* -- that's the lead case

3       in the Fourth Circuit, I think, on these issues --

4       B-O-S-Y-K -- Bosyk is a case where the court sort of came

5       close to that.  That is not true.  They're reading that --

6       they have *Bosyk* in their brief -- I don't -- I respectfully

7       very much disagree with that interpretation in this case.

8       There was much more in *Bosyk* linking this -- linking the user

9       there to criminal activity.  I mean, specifically they had

10      him going there with -- where there was a link that was

11      clearly child pornography, going to this website at the same

12      time that that was posted.  And so the idea that he clicked

13      on that link -- they actually had the guy clicking on the

14      link in *Bosyk*.  The facts are just far more incriminating to

15      establish probable cause than visiting the website one time

16      for one second.  There is no case in the United States where

17      visiting any website one time for one second has been found

18      to establish probable cause or even a substantial basis for

19      probable cause, which would be the test under *Leon*, right.

20      There is no case.

21             In *Bosyk* -- you know, here the website is named ███

22      ██.  There is not -- although you might wonder what that is,

23      it is not an obviously -- it is not obviously a website that

24      would have child pornography.  And in fact, this website very

25      clearly had some illegal content but some legal content too.

1    It was a mix.  It was not dedicated to child pornography the

2    way they portrayed it here.  To get to any child pornography,

3    you actually have to have registered, and you also have to

4    have gone deep into the website, none of which they said they

5    had any evidence of in this case, that the affidavit had.  In

6    fact, they didn't have any evidence of that.  In *Bosyk,* the

7    website was named -- it was -- the person went to the link in

8    the preteen hard-core section, which is an obviously graphic

9    title which, you know, conveyed the graphic content that was

10   in there.  Now, the same day that 20 video thumbnail images

11   of child pornography were, quote, placed there, Mr. *Bosyk*

12   *visited the link to those videos.  So unlike in Bosyk, the*

13   *site the internet user -- unlike in Bosyk,* here the site had

14   both legal and illegal content.  Unlike in *Bosyk,* the

15   affidavit in support of the search warrant failed to provide

16   any information about the content that Mr. Sanders -- the IP

17   address linked to Mr. Sanders allegedly looked at.  It didn't

18   say just, you know, online child exploitation material.  It

19   doesn't say anything about specific images, specific content,

20   anything like that, because the reality is they didn't have

21   that.  All they had was him going to that website for a

22   single time for a single second.  So if we -- we very much

23   disagree with their interpretation of *Bosyk,* where there was

24   much more.

25       The Court here, in order to find probable cause,

SEALED TRANSCRIPT

22

1    would really have to break new ground.  It would have to say,

2    going to a website that has a mix of legal and illegal

3    content just one time for one second is enough to search the

4    entire family's home.  They searched the entire family's

5    home.  They searched 27 different electronic devices that

6    they were able to find in that home.  You know, it was an

7    exhaustive search.  It is not what the Fourth Amendment

8    requires.  It requires much more for probable cause than this

9    to search a family home, which is -- and all the devices in

10    it -- which the Supreme Court made clear in *Riley v.*

11    *California* and other cases where the Fourth Amendment's

12    protections are at their highest.

13          So, you know, even if you -- we don't take the

14    truthful case, which is that all they had was going one time

15    and we take the case that there was a sort of vague

16    accusation that he actually went on the website and he

17    accessed online child exploitation material, which there is

18    no evidence of, but even if we accept that as true, there is

19    still not enough here.  That allegation is far too vague.

20    You have a tip that came from a foreign law enforcement

21    agency, which I think the government would agree that there

22    is zero corroboration of, in terms of the criminal activity

23    or the suspicious activity that that tip is alleging, there

24    is zero corroboration, they did nothing else.  They took that

25    and put it in 23 and they put together a bunch of filler,

SEALED TRANSCRIPT

1    okay.  And -- you know, that's what this affidavit is.  And

2    there is just no case where a tip this vague where it doesn't

3    provide any kind of concrete or specific reason to think that

4    this internet user engaged in criminal activity.  So even if

5    you accept the tip that, you know, there was online

6    exploitation material, which doesn't even say exactly what it

7    was or that it was illegal, that's not enough.  That's just

8    not enough under any case, not just in the Fourth Circuit,

9    but in the United States.  The Fourth Amendment definitely

10   requires more than what is there.

11          The Court's indulgence.

12              (Pause)

13          MR. JEFFRESS:  Thank you.

14          If I can reserve that remaining time for any

15   rebuttal --

16          THE COURT:  There isn't any.

17          MR. JEFFRESS:  Thank you.

18          THE COURT:  All right.  Let me hear from the

19   government.  You're limited, as well, to 30 minutes.

20          MR. CLAYMAN:  Thank you, Your Honor.

21          Let's start with the probable cause arguments.  The

22   defendant's assertion this tip was generalized and vague and

23   therefore unreliable is an argument that's simply not

24   correct.  As Your Honor knows from having reviewed the tip

25   and the affidavit, the tip came from a well-respected foreign

24

1    law enforcement agency with a history of providing reliable

2    information, including this very type of information about an

3    IP address accessing content on child pornography sites on

4    TOR.  More substantively, Your Honor, the tip provides

5    specific information about a specific crime.  It describes a

6    specific IP address that was later tied to the defendant that

7    was used on a specific date to access online child sexual

8    abuse material on a specific site on TOR that law enforcement

9    knew to be dedicated to child pornography.  That information,

10   when viewed alongside the other atmospheric information in

11   the affidavit about TOR, about this website in particular,

12   but also about its services generally, about the type of

13   child pornography that was posted on the website, and about

14   the type of people who view child pornography online, all of

15   that information taken together provides probable cause to

16   believe that on a specific date someone in the defendant's

17   home accessed a specific hidden service dedicated to child

18   pornography and that this individual likely accessed that

19   site with the intent to view the content on it, which is

20   child pornography.  And that is a crime under

21   18 U.S.C. 2252 (a)(4)(B).  Accessing a site like ███████

22   with the intent to view the content on that site, regardless

23   of whether or not you view it, is a crime.

24          And Your Honor, I think the defendant's claim that

25   this tip is a reference to the home page is entirely

1     unsupported by the facts here.  The tip uses the term "online

2     child sexual abuse and exploitation material."  Contrary to

3     what the defendant suggests, these terms have meaning, these

4     words mean something.  And I think the most common sense and

5     logical reading of this tip is the same one that Your Honor

6     reached, which is that the target IP was accessing some sort

7     of content on this website that is dedicated to child

8     pornography.  Admittedly, we don't know precisely what the

9     content is, but we have never claimed to know exactly what it

10    is, or exactly the definition of child pornography under the

11    United States Code.  We also never claimed that the tip

12    alleges that he downloaded that content.  All the tip says is

13    that he accessed content on this site and that we know that

14    this site is dedicated to child pornography.

15          What we have also explained in the affidavit, Your

16    Honor, is that this is a site that is not easy to find.  You

17    can't just stumble upon it if you were conducting a Google

18    search on the open internet.  We have also established in the

19    affidavit, Your Honor, that based on FBI investigation,

20    people who access these sort of sites on TOR dedicated to

21    child pornography rarely do so just once.

22          I think, Your Honor, all of this taken together

23    provides ample probable cause to believe that someone,

24    whoever was using the target IP address on this date and

25    time, knowingly accessed this site with the intent to view

1      what is on it, which is child pornography, and that is a

2      crime.  We have established probable cause to believe that

3      crime occurred here.

4           Your Honor, I think the caselaw supports these

5      conclusions.  Just to address the *Bosyk* case, in that case,

6      all the affidavit alleged was that an IP address, on a single

7      date and time, accessed an open internet file-sharing website

8      that is otherwise lawful, but they accessed a page on it that

9      happened to be hosting encrypted child pornography files that

10     someone can only download if they had a password for it.

11     There was no allegation that this individual actually

12     downloaded this child pornography.  But Judge Nachmanoff,

13     Judge Brinkema, and the Fourth Circuit all concluded that it

14     was reasonable to infer that this individual found the link

15     on a TOR site dedicated to child pornography; and that

16     because this individual was on that kind of site, he knew

17     what he was looking at was likely someone to be viewing child

18     pornography online.

19           I think, more importantly, Your Honor, what *Bosyk*

20     tells us is that in order to establish probable cause, an

21     affidavit doesn't need to rule out every possible innocent

22     explanation for the conduct described.  All it needs to do is

23     provide a fair probability that the more incriminating

24     version of events occurred.  So here the affidavit doesn't

25     need to rule out every possible way the target IP address

1   accessed whatever this material is on █████; but rather,

2   just needed to establish the fair probability that the user

3   of the IP knew what the site was and accessed the material on

4   it intentionally.

5        As I mentioned before, Your Honor, the FLA's tip,

6   combined with all the other information in the affidavit,

7   plainly tells us that this individual likely knew what the

8   site was and likely knew what he was going to be accessing by

9   going onto the site.

10       Turning now to the *Franks* arguments, Your Honor, with

11  respect to paragraph 23, this issue has been thoroughly and

12  repeatedly briefed.  Your Honor has already reviewed the tip

13  and the information in paragraph 23 and concluded that the

14  affidavit accurately recites the tip based on a plain reading

15  of what the tip documents are.  Since the outset, the

16  defendant has taken the view that the tip must mean something

17  other than what it plainly states.  But to date, he hasn't

18  provided any actual proof of what that is beyond his own

19  speculation, reading the tip and speculating what the affiant

20  must have thought about this tip.

21       Without a far more substantial showing, Your Honor,

22  the defendant cannot sustain his burden under *Franks* to

23  obtain a *Franks* hearing; in particular, because his

24  allegations are centered on omissions, which actually require

25  a heightened standard than if they were centered on some sort

28

1       of falsehood in the affidavit.

2               Regarding paragraph 25, Your Honor, this issue has

3       also been thoroughly briefed with the same outcome.  Your

4       Honor has reviewed the paragraph, reviewed the tip, and

5       concluded that the affidavit accurately recites the tip.

6               And the defendant once again, Your Honor, has come up

7       with a theory about how the tip is misleading or a flat-out

8       lie, but if you look at all the briefing in this case, Your

9       Honor, which includes I think up to this point probably

10      10-plus filings on this issue and related issues, the

11      defendant has yet to submit a single declaration from a

12      single expert who has agreed with him that it would have been

13      impossible for the FLA to obtain this information that's in

14      the tip.  He is the only person making that accusation

15      because all the experts know, the FBI knew, that it would

16      have been possible for the FLA to have obtained this target

17      IP address without searching the computer.

18              And so again, Your Honor, I don't think that provides

19      any basis for us to conclude that the tip must have been a

20      lie, that the FBI must have known it was a lie, and without

21      that sort of showing, Your Honor, the defendant can't sustain

22      his burden to prove that there is any falsehood or any sort

23      of material intentional omission in the affidavit.  So we

24      think the motion for a *Franks* hearing on paragraph 25 should

25      be denied, as well.

SEALED TRANSCRIPT

29

1        I would like to then just address the sort of at

2   large motion for a *Franks* hearing based on various

3   allegations about the affidavit.  In particular, with respect

4   to the target website, the defendant has suggested that the

5   website wasn't dedicated to the advertisement and

6   distribution of child pornography.  But to date, he does not

7   appear to have an actual basis to make that claim.  As far as

8   I can tell, he has singled out a single detail from the FBI's

9   description on the website, which states that it was

10  dedicated to 18 (twinks and under) and focused on that detail

11  solely, while ignoring all of the other significant

12  information in the affidavit and the investigation the FBI

13  has done into the website to conclude that it is, in fact,

14  dedicated to child pornography.  And those details include

15  descriptions of subforums which are titled "Toddlers,

16  Preteen, and Teens.)  Notably, there is no adult subforum.

17  It also describes the content that was posted on this

18  website, which is explicitly child pornography, and finally

19  describes where this website could have been found on TOR,

20  which is on direct research of sites that list multiple sites

21  that you can access child pornography on the TOR network.

22        The last issue I would like to address, Your Honor,

23  is the arguments regarding whether the defendant's IP address

24  could have accidently stumbled upon this website through a

25  search engine.  With respect to that issue, Your Honor, I

30

1     think the defendant is responding to something that is not

2     actually in the affidavit.  The affidavit doesn't claim that

3     there is absolutely no way someone could search the TOR

4     network to find TOR hidden services.  All the affidavit says

5     is that hidden services are not indexed to the same degree at

6     all as websites are in the open internet, meaning that it is

7     not as easy to search for hidden services on TOR than it

8     would be to go to Google and search for open internet

9     websites.

10         The defendant's expert doesn't appear to disagree

11     with that.  He just suggests that, well, no, you can actually

12     search for hidden services.  So, Your Honor, if you look at

13     what the declaration states, I think that even if we included

14     that information, it would only bolster our probable cause

15     analysis here.  Because what the declarant says is that, hey,

16     I'm a computer expert, I found a search engine on TOR that

17     searches hidden services, I conducted a search for the

18     Department of Justice, which yielded five responses.  Just

19     this morning I conducted an open internet search for the

20     Department of Justice, and it yielded over a billion

21     responses.  And that is exactly what the affidavit is trying

22     to convey; that hidden services aren't indexed to the same

23     degree as open internet websites, meaning that is simply not

24     as easy to Google and stumble upon hidden services on the

25     open internet.

=31=

1          For that reason, Your Honor, I don't think any of the

2    other alleged omissions or potential falsehoods the defendant

3    has identified in his other motion are at all material, so we

4    would ask that you deny that motion, as well.

5          Unless Your Honor has any specific questions about

6    probable cause or the *Franks* argument, we would otherwise

7    rest on the briefing in this matter.

8          THE COURT:  All right.  Thank you.

9          MR. JEFFRESS:  Your Honor, could I --

10         THE COURT:  Well, your time is up, but I will give

11   you a few more minutes.  Do you need more than two minutes or

12   so?

13         MR. JEFFRESS:  No.  Thank you.

14         THE COURT:  Go ahead.

15         MR. JEFFRESS:  Your Honor, I think that that was more

16   notable for what they didn't say than what they did.  Once

17   again, the government is not saying, has never told this

18   Court, that the agent -- what the agent's understanding of

19   what paragraph 23 was, whether he thought that to be

20   accurate, and that is because they don't even know.

21         Secondly, they didn't answer any of the questions

22   that we raised during our argument.  Why would the agent

23   summarize this whole case for probable cause in paragraphs 29

24   and 30 of the affidavit as just based on Mr. Sanders having

25   visited the website if they had much more incriminating

1    evidence of Mr. Sanders viewing or downloading child

2    pornography, which is what they suggested in paragraph 23.

3    There is no agent in the history of FBI agents who would do

4    that.  And that is because he knew the suggestion in 23 was

5    false and he know that the real -- that the real case was

6    that all the FLA had was going to that website for one

7    second.  So, you know, he can come here and explain that.

8         But whether we have made a substantial preliminary

9    showing in order to get a *Franks* hearing is very clear.  And

10   the government hasn't responded to it.  They haven't

11   responded to it here, they haven't responded to it in their

12   papers.  And they haven't responded to what the 1057 said,

13   too, which is an accurate and truthful recitation of the

14   government's evidence; that all they had was the person

15   visiting ███████ .

16        So, Your Honor, for those reasons -- also, on *Bosyk,*

17   Your Honor, we went back and looked at the government's

18   briefing on that case, and what the government said in that

19   case, in their brief, they said, "While merely joining an

20   E-group," meaning a website like this, "without evidence that

21   an individual either attempted to or did acquire illicit

22   material falls short of the Fourth Amendment requirements.  A

23   click of a URL that was advertising child pornography does

24   establish probable cause."  So in *Bosyk,* they admitted that

25   even if -- even if Mr. Sanders had registered for this

SEALED TRANSCRIPT

33

1    website, which there is no evidence he did at that time, if

2    they said -- even if they had him registering for it, that

3    would not be enough.  Okay.  That's what they said in *Bosyk*

4    to Judge Brinkema, but the fact that the guy went and clicked

5    on something, clicked on specific content of child

6    pornography, that's enough.

7            THE COURT:  All right.

8            MR. JEFFRESS:  They don't have either of those

9    things, Your Honor.

10           Thank you, Your Honor.

11           THE COURT:  That was a new point.  Do you want to say

12   anything about it?  I think it is in the briefs, but you may

13   take 30 seconds or so to respond.

14           MR. CLAYMAN:  Your Honor, I think this issue has been

15   adequately briefed, and we will rest on our papers.

16           THE COURT:  All right.  I will take the matters under

17   advisement and resolve them as soon as practicable.

18           This hearing was held under seal because of the

19   importance of keeping confidential the government's

20   investigatory procedures.  However, I give the parties the

21   opportunity, if they wish, to file motions to remove the

22   seal, and I will be happy to consider those.  I think as much

23   as possible in this or any case should be out of seal and in

24   the public view.

25           All right.  I thank counsel.

SEALED TRANSCRIPT

34

1          MR. JEFFRESS:  Your Honor, we have to apparently get

2     an order, because it is under seal, in order for us to get a

3     transcript.  The Court may need an order.  So we can either

4     submit something -- I don't know if the Court can do that

5     now.

6          THE COURT:  No, you don't need an order.  If you are

7     counsel for a party, you can get a transcript under seal if

8     you pay for it, and you must treat it as under seal.

9          MR. JEFFRESS:  Of course.

10         THE COURT:  All right?  Anything further today?

11         MR. JEFFRESS:  No, Your Honor.

12         MR. CLAYMAN:  No, Your Honor.

13         THE COURT:  I thank counsel for your arguments and

14    your cooperation.

15          The Court stands in recess until 1:00.

16          (Proceedings concluded at 11:34 a.m.)

17

18

19

20

21

22

23

24

25

SEALED TRANSCRIPT

35

```
 1               CERTIFICATE OF OFFICIAL COURT REPORTER

 2

 3          I, Patricia A. Kaneshiro-Miller, certify that the

 4     foregoing is a correct transcript from the record of

 5     proceedings in the above-entitled matter.

 6

 7

 8     /s/ Patricia A. Kaneshiro-Miller        September 18, 2020
       -----------------------------------     --------------------
 9     PATRICIA A. KANESHIRO-MILLER                     DATE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```