**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>ZACKARY ELLIS SANDERS,<br><br>　　　　　　　　　　Defendant. | Case No. 1:20-cr-00143<br>Honorable T.S. Ellis, III<br><br>Pretrial conference: Jan. 15, 2021<br>Trial: Feb. 9, 2021 |

## **MR. ZACKARY ELLIS SANDERS'S PROPOSED *VOIR DIRE***

　　　Mr. Zackary Ellis Sanders, by and through counsel, respectfully submits a written questionnaire to be completed by jurors in advance of oral *voir dire*, as a pre-screening tool to be used in addition to the questions this Court intends to ask prospective jurors. A proposed Prospective Juror Questionnaire is attached for the Court's consideration.

　　　Given the sensitive nature of the allegations in this case and the ongoing COVID-19 pandemic, the defense requests that the Court conduct *voir dire* in a manner that protects each individual's privacy and health and is therefore most likely to elicit honest answers. Under the present circumstances, the use of an initial written juror questionnaire is required for at least two reasons: 1) it will increase juror disclosure and candor, which will improve the quantity and quality of information available; and 2) it will allow jury selection to be done more safely by i) pre-screening and disqualifying in advance jurors who cannot be impartial, ii) reducing potential jurors' exposure to other members of the *voir dire* panel, iii) reducing questioning at the bench where people may not be able to social distance, and iv) speeding up the oral *voir dire* process.

## **BACKGROUND**

This case involves allegations that online communications of a sexual nature were exchanged between individuals of the same sex, that online communications of a sexual nature involved Bondage, Discipline/Domination, Submission/Sadism, Masochism ("BDSM"), and that the online communications included the transmission and receipt of child pornography.

Because the evidence the Government will adduce at trial will suggest that Mr. Sanders has a sexual interest in men and in BDSM, potential jurors' attitudes towards and experiences with sex and people are who are lesbian, gay, bisexual, transgender, or queer (LGBTQ) are important areas for the defense to explore in *voir dire*. Prospective jurors may harbor anti-gay bias, or other experiences and attitudes may preclude them from being fair and impartial given the nature of the allegations in this case.

Anti-gay bias, sex, BDSM, child sexual abuse, and child pornography are all undeniably sensitive topics that jurors are likely to feel hesitant discussing honestly in front of others. While jurors who answer "yes" to particular *voir dire* questions can typically approach the bench for questioning in further depth, these are not typical times. Given the ongoing COVID-19 pandemic, jurors may be hesitant to answer yes, given that they would then be required to approach the bench and speak in closer proximity to counsel.

Because jury selection will take place less than eight weeks from now, during a public health crisis unprecedented in modern times, *voir dire* needs to be conducted in a manner that will maintain the integrity of the process while preserving the health and safety of prospective jurors (and all other participants in these proceedings).

## ARGUMENT

Mr. Sanders has a constitutional right to be tried by a fair and impartial jury. U.S. Const. amend. VI. A *voir dire* process that does not adequately assess whether prospective jurors have biases that will impact their decisions violates Mr. Sanders's Due Process and Sixth Amendment rights. *Ham v. South Carolina*, 409 U.S. 524, 527 (1973); *Ristaino v. Ross*, 424 U.S. 589, 595 (1976); *Smith v. Phillips*, 455 U.S. 209, 217 (1982).

"[W]hen prejudice threatens the fairness of the process or the result [of a trial], . . . an inquiry is required to eliminate that prejudice." *United States v. Barber*, 80 F.3d 964, 968 (4th Cir. 1996). Accordingly, a court must allow specific *voir dire* questioning when "there is a reasonable possibility that a particular prejudice might . . . influence[] the jury." *Rosales-Lopez v. United States*, 451 U.S. 182, 191 (1981). A court abuses its discretion when "*voir dire* does not provide a reasonable assurance that prejudice would be discovered if present." *United States v. Lancaster*, 96 F.3d 734, 740 (4th Cir. 1996) (quotation marks and citations omitted).

In this case, "taking into account the totality of the circumstances," a specialized written juror questionnaire is required to expose potential jurors' biases for at least two reasons. *United States v. Barber*, 80 F.3d 964, 968 (4th Cir. 1996).[1] First, it will increase juror disclosure and candor and therefore allow for more accurate information overall. Second, it will allow jury selection to be conducted more safely by i) prescreening impartial jurors in advance, ii) reducing the number of people exposed to one another and the length of time people will be exposed, iii)

---

[1] The American Bar Association's Standards for Criminal Justice endorses questionnaires as a means of producing a neutral jury. Standards for Criminal Justice Standards 15-2.2, 15-2.4 (3d ed. 1996). Standard 15-2.2 (Juror questionnaires) notes that "[i]n appropriate cases, the court, with the assistance of counsel, should prepare a specialized questionnaire addressing particular issues that may arise."

reducing questioning at the bench, and iv) reducing the overall length of time required for *voir dire*.

## I. An initial jury questionnaire will increase juror disclosure and candor.

As this Court is well aware, the Court has a constitutional obligation to ensure that Mr. Sanders's rights to a fair trial and impartial jury are not impeded by the failure to question prospective jurors about salient biases and prejudices. This rule originates from two Supreme Court cases, *Ham* and *Ross*, *see supra* at 2. In *Ham*, the Supreme Court held that a trial court's refusal to question potential jurors about racial prejudice was unconstitutional. *Ham*, 409 U.S. at 527. In *Ristaino*, the Court affirmed this holding and stated that questioning of jurors about racial bias had been required in *Ham* because "[r]acial issues . . . were inextricably bound up with the conduct of the trial." *Ristaino*, 424 U.S. at 597.

The rule set forth in *Ham* and *Ristaino* applies here: Mr. Sanders is entitled to inquire into the experiences and attitudes of prospective jurors concerning sex, homonegativity or anti-gay biases, child sexual abuse, and child pornography—all of which are private and potentially awkward or painful subjects to discuss in open court.

*A. Mr. Sanders is entitled to question potential jurors about sexual orientation bias.*

Because sexual orientation is so entwined with the issues at trial and will certainly be brought to the attention of the jury, the Due Process Clause and the Sixth Amendment entitle Mr. Sanders to specific questioning about attitudes towards sex and sexual orientation.

"Given the long history of cultural disapprobation and prior legal condemnation of same-sex relationships, the risk that jurors might harbor latent prejudices on the basis of sexual orientation is not trivial." *Berthiaume v. Smith*, 875 F.3d 1354, 1359 (11th Cir. 2017) (citation omitted); *see generally* Lambda Legal, *Protected and Served? A National Survey Exploring*

4

*Discrimination by Police, Prisons and Schools Against LGBT People and People Living with HIV in the United States* (2014), available from https://www.lambdalegal.org/protected-and-served. The Supreme Court has noted that "[f]or much of the 20th century . . . homosexuality was treated as an illness," that from 1952 to 1973 the American Psychiatric Association classified homosexuality "as a mental disorder," and only "in more recent years have psychiatrists and others recognized that sexual orientation is both a normal expression of human sexuality and immutable." *Obergefell v. Hodges*, 576 U.S. 644, 661 (2015).

Reported decisions and *voir dire* transcripts reveal that many prospective jurors continue to express moral disapproval of people who are LGBTQ. Giovanna Shay, *In the Box: Voir Dire on LGBT Issues in Changing Times*, 37 Harv. J. L. & Gender 407, 412 (2014) (citing statements evidencing sexual orientation bias, made by prospective jurors during voir dire). When asked about sexual orientation during *voir dire*, many prospective jurors make statements "rang[ing] from assertions of moral or religious beliefs that homosexuality is wrong . . . to outright animus." *Id.* at 412.

Because "there is a reasonable possibility that sexual orientation bias might . . . influence[] the jury," Mr. Sanders is entitled to "determine whether any of the jurors might harbor prejudices against [him] based on his sexual orientation." *Berthiaume*, 875 F.3d at 1359 (quotation marks and citations omitted).

B. *Mr. Sanders is entitled to question potential jurors about experiences and attitudes related to sex, child sexual abuse, and child pornography that would prevent them from rendering a fair and impartial verdict.*

The allegations pertaining to the production and receipt of child pornography in this case could evoke reactions from some prospective jurors that "may be visceral and intense given that victimization of children is perceived as detestable and immoral and that sex offenders are

5

perceived as predatory, socially incompetent, or homosexual." R. J. Cramer, *Jury selection in child sex abuse trials: a case analysis*, 18 J. Child Sex. Abus. 190, 190 (2009). Thus, reactions to the allegations in this case "may be based on stereotypes of offenders or on personal victimization and both raise the concern of potential juror pretrial bias." *Id.* at 190. In order to inquire about jurors' biases and prejudices, Mr. Sanders will need to examine their experiences with and attitudes towards sex, child sexual abuse, and child pornography.

 C. *An initial written juror questionnaire will allow jurors to be honest and forthcoming about sensitive topics relevant to this case.*

"The jury selection process may, in some circumstances, . . . touch on deeply personal matters." *Press-Enter. Co. v. Superior Court of California, Riverside Cty.*, 464 U.S. 501, 511 (1984). In some circumstances, jurors may refrain from coming forward publicly with sensitive information, despite their oath, because of the embarrassing or painful nature of certain topics. The defense must understand prospective jurors' attitudes and experiences in such sensitive areas, however, because of their potential to produce prejudice or prejudgment that could justify a cause challenge or to exercise peremptory challenges.

Because prospective jurors are likely to feel embarrassed or unwilling to answer candidly questions about sex, anti-gay bias, child sexual abuse, and child pornography in front of others, a written jury questionnaire will provide jurors with a sense of privacy and comfort. Given that a written questionnaire lends a sense of anonymity, jurors will be more likely to disclose additional and more detailed information, particularly regarding sensitive topics. Jurors who answer yes to questions in Part II of the proposed initial questionnaire could then be individually sequestered for *voir dire* on such subjects without being unnecessarily embarrassed discussing personal topics. The initial questionnaire, combined with individual *voir dire*, would reasonably protect juror privacy.

Based on the way the Government has charged Mr. Sanders and the allegations it has made, a sense of privacy and anonymity is important here because, unfortunately, a significant portion of prospective jurors are likely to have experienced child sexual abuse (including online child sexual abuse) or know someone close to them who has.  According to the CDC, "1 in 4 girls and 1 in 13 boys experience child sexual abuse at some point in childhood."  Centers for Disease Control and Prevention, *Violence Prevention: Child Sexual Abuse*, CDC, https://www.cdc.gov/violenceprevention/childabuseandneglect/childsexualabuse.html (last accessed Dec. 18, 2020).  National statistics from the Bureau of Justice Statistics report that 67% of all victims of sexual assault reported to law enforcement were under the age of 18.  Office of Justice Programs, *Sexual Assault of Young Children as Reported to Law Enforcement*, Bureau of Justice Statistics (July 1, 2000), https://www.bjs.gov/index.cfm?ty=pbdetail&iid=1147 (last accessed Dec. 18, 2020).  Thus, a significant proportion of jurors in the panel can be expected to have personal knowledge of or experience with child sexual abuse.

The Internet and the expansion of digital technology have increased the likelihood of people experiencing, or knowing victims of, online child sexual abuse and exploitation.  In 2019 alone, the National Center for Missing and Exploited Children received reports of 69.2 million images, videos, and other content related to child sexual exploitation.  Nicholas Kristof, *The Children of Pornhub,* New York Times (Dec. 4, 2020), https://www.nytimes.com/2020/12/04/opinion/sunday/pornhub-rape-trafficking.html (last accessed Dec. 18, 2020).  In just a three-month period this year, Facebook removed 12.4 million images related to child nudity and child sexual exploitation.  *Child Nudity and Sexual Exploitation of Children*, Facebook (Nov. 2020), https://transparency.facebook.com/community-standards-enforcement#child-nudity-and-sexual-exploitation (last accessed Dec. 18, 2020). In a

six-month period last year, Twitter took action against more than 264,000 accounts for their involvement in child sexual exploitation. *Rules Enforcement – Latest Data: Accounts Actioned*, Twitter (Aug. 19, 2020), https://transparency.twitter.com/en/reports/rules-enforcement.html#2019-jul-dec (last accessed Dec. 14, 2020).

Given the prevalence of child sexual abuse online and offline, prospective jurors are likely to have experienced, or know someone close to them who has, such abuse, or have other experiences or attitudes that are likely to undermine their impartiality, given the nature of the allegations in this case. The best way to allow these potential jurors to disclose their attitudes and experiences is through an initial specialized questionnaire.

**II.     An initial juror questionnaire will allow *voir dire* to be conducted in a way that better protects the health and safety of prospective jurors and all those involved in courtroom proceedings.**

An initial juror questionnaire will allow jury selection to be done more safely during the COVID-19 pandemic by i) pre-screening and disqualifying jurors in advance, ii) reducing potential jurors' exposure to other members of the *voir dire* panel, iii) reducing questioning at the bench, and iv) speeding up the oral *voir dire* process conducted by the Court.

The public health crisis posed by COVID-19 will not be resolved eight weeks from now. The number of deaths in the U.S. from COVID-19 surpassed 300,000 on December 14, 2020. Amy Harmon, *The number of people with the virus who died in the U.S. passes 300,000*, New York Times (Dec. 14, 2020), https://www.nytimes.com/2020/12/14/us/covid-us-deaths.html (last accessed Dec. 18, 2020). As of the morning of December 18, 2020, there had been "at least 296,093 cases and 4,553 deaths in Virginia" from COVID-19. *Virginia Coronavirus Map and Case Count,* New York Times (Dec. 18, 2020), https://www.nytimes.com/interactive/2020/us/virginia-coronavirus-cases.html (last accessed

8

Dec. 18, 2020). The virus's death toll is only expected to increase dramatically in the coming weeks: indeed, "for the next 60 to 90 days," the U.S. will probably have "more deaths per day than we had at 9/11 or we had at Pearl Habor." John Haltiwanger, *The US is likely to have more daily COVID-19 death than 9/11 for the next 60 to 90 days, DCD director warns*, Business Insider (Dec. 10, 2020), https://www.businessinsider.com/us-more-covid-19-deaths-911-90-days-cdc-director-2020-12 (last accessed Dec. 18, 2020). In Alexandria County alone, there are 36.6 cases per 100,000 people. The D.C. government has announced that anywhere where the seven-day average of daily new cases is 10 or more per 100,000 people is considered "high-risk." *DC Health Release List of High-Risk States*, Government of the District of Columbia (July 27, 2020), https://coronavirus.dc.gov/release/dc-health-releases-list-high-risk-states (last accessed Dec. 18, 2020). To help curb the spread of this deadly virus, the Centers for Disease Control and Prevention (CDC) recommends people maintain social distance of "6 feet between [themselves] and people who don't live in [their] household." *How to Protect Yourself & Others*, CDC (Nov. 27, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last accessed Dec. 18, 2020).

  An initial specialized questionnaire would increase the efficiency, and therefore the safety, of the *voir dire* process. First, the parties will be able to identify jurors who could potentially be pre-screened and disqualified in advance of oral *voir dire*. Second, the use of the questionnaire will reduce the amount of time that potential jurors will spend in proximity to one another. Jurors will not need to assemble in the courtroom itself in order to answer the questions contained in the questionnaire. While completing the questionnaire, jurors will be able to more easily socially distance. Third, through the use of the questionnaire and by sequestering certain potential jurors for individual *voir dire*, the questionnaire will eliminate or reduce the need for

potential jurors to approach the bench for further questioning. This will overcome the issue where potential jurors may want to avoid answering "yes" to certain *voir dire* questions to avoid having to approach the bench to discuss their answers in close proximity to others. Reducing the amount of time potential jurors spend approaching the bench will be beneficial, as it is unclear whether prospective jurors and counsel will be able to stay 6 feet apart at the bench. Finally, all of these increased efficiencies will reduce the overall time required to conduct *voir dire*.

> **III.    If this Court does not allow an initial, specialized juror questionnaire, it should ask the proposed *voir dire* questions five at a time to protect juror privacy and to promote disclosure and candor.**

While an initial written juror questionnaire will best promote honesty and increase disclosure by providing jurors a private and safe way to recount their experiences and attitudes, if this Court does not allow the use of such a questionnaire, the defense suggests that the Court ask the proposed questions five at a time, and then instruct the potential jurors to raise their hands at the end if their answer to any one of the five questions is "yes." Then, counsel could conduct individualized *voir dire*. There is no substitute, however, for an initial written questionnaire: only such a questionnaire will allow the defense to be able to adequately evaluate jurors' attitudes and ability to decide this case fairly and impartially.

## CONCLUSION

For all of the foregoing reasons, Mr. Sanders respectfully requests that the Court incorporate the attached specialized, initial questionnaire into *voir dire*, conduct *voir dire* in a way that best promotes disclosure, candor, and the health of prospective jurors, and allows for sequestered, individual *voir dire* for jurors who answer yes to particularly sensitive or potentially painful or embarrassing questions.

Dated: December 18, 2020.

Respectfully submitted,

/s/_____

Jonathan Jeffress (#42884)
Emily Voshell (#92997)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C.  20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: evoshell@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

*Counsel for Defendant Zackary Ellis Sanders*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of December 2020, the foregoing was served electronically on the counsel of record through the U.S. District Court for the Eastern District of Virginia Electronic Document Filing System (ECF) and the document is available on the ECF system.

*/s/ Emily Voshell*
Emily Voshell

**Prospective Juror Questionnaire**

This questionnaire has been approved by the Court and is to be filled out by each prospective juror in this case. This information is designed solely to save time and assist the Court and the parties in selecting jurors for trial. This information will not be used for any other purpose except to select a jury.

You are given more privacy by answering questions in this questionnaire. You are under oath and are required to answer the questions truthfully. The information provided is exclusively for selection of jurors. Your answers must be complete and accurate.

You are not to discuss your answers with anyone while completing this questionnaire, including your fellow potential jurors. It is important that your answers are yours and yours alone.

These questions are not meant to invade your privacy, but to help select a fair and impartial jury in this case. There may be some questions that touch on matters you consider personal, private, or otherwise sensitive. To select a fair and impartial jury, however, it is important that the Court and the lawyers have your complete and truthful answers to these kinds of questions.

Do not leave any questions blank. If you do not understand the question or do not know the answer, please write that response in the space provided.

## PART I

Name:

[Standard demographic information]

## PART II

1. Is it important to you to regularly attend religious services at your place of worship?

2. Are your religious beliefs important in guiding your daily decisions?

3. Do you think that employers should be able to refuse to hire someone because of the person's sexual orientation or gender identity? If yes, please explain.

4. Are you uncomfortable with same-sex couples raising children together? If yes, please explain.

5. Would you feel uncomfortable if you had to work closely with someone who was lesbian, gay, bisexual, or transgender? If yes, please explain.

6. Do you have any close friends who are lesbian, gay, bisexual, or transgender?

7. Do you believe that homosexuality is mainly a personal choice? If yes, please explain.

8. Do you have children? If yes, please state their age and gender.

9. You will hear testimony about Bondage, Discipline/Domination, Submission/Sadism, Masochism ("BDSM"). BDSM includes some practices that if performed in nonconsensual contexts would be undesirable or illegal, such as binding, gagging, restraint, whipping, and flogging. Do you have any distaste for BDSM, or would you have a bias or prejudice against a person who enjoys and participates in BDSM? If yes, please explain.

10. Do you have any distaste for or think that people who have sexual kinks or fetishes are more likely to commit crimes? If yes, please explain.

11. Do you think that teenagers or adolescents are more likely than adults to be honest?

12. Have you or has anyone close to you accused someone of sexual assault, molestation, rape, or any other sexual offense?

13. Have you or has anyone close to you ever experienced child sexual abuse or exploitation or been a victim of child pornography offenses?

14. Have you or has anyone close to you belonged to, worked for, or donated time or money to an organization that provides services to children who have experienced sexual abuse; that investigates child sexual abuse or child pornography; or that assists victims of crimes?

15. Do you think that someone facing multiple criminal charges probably did something wrong?

16. Do you think that someone facing multiple criminal charges involving children probably did something wrong?

17. Have you or has anyone close to you ever worked in law enforcement or assisted law enforcement (*e.g.*, as a witness, or by reporting a crime)?

18. Would you have trouble crediting testimony or evidence that is contradicted by the testimony of a police officer or FBI agent?

19. Do you think that adults should not be able to own adult pornography? If yes, please explain.

20. Do you think that watching adult pornography is morally wrong or distasteful, or would you have a bias or prejudice against someone who consumes adult pornography? If yes, please explain.

21. Do you think that the practice of sexting (sending and/or receiving nude or sexually explicit photos via a mobile device) is morally wrong or distasteful, or would you have a bias or prejudice against someone who engages in sexting with another adult? If yes, please explain.

22. Do you believe that high schoolers commonly sext?

23. Do you associate homosexuality with child pornography or any other crime? If yes, please explain.

24. Do you think that people who use privacy-protective technologies, such as encrypted methods of communication or the Tor browser, probably have something to hide? If yes, please explain.

25. Have you ever used mobile messaging applications such as Snap Chat, Instagram, Telegram or Kik?

26. This case involves BDSM and individuals who are alleged to be minors. Would this subject matter prevent you from fairly judging the evidence in this case?

27. During this case you may be asked to view images and videos that the prosecutor contends are examples of child pornography. Would you be unable to objectively view and evaluate such evidence or would looking at such evidence make it difficult for you to be fair and impartial?

28. Do you think that a defendant is more likely to be guilty if they don't take the stand and tell their side of the story?

29. Do you think that a defendant should have to prove their innocence?

30. In the past two weeks, have you travelled internationally, been exposed to someone who has tested positive for COVID-19, experienced symptoms of COVID-19 or flu (such as a fever, body aches or chills, coughing, or difficulty breathing), or tested positive for COVID-19?

31. Are you experiencing any problems that would make it difficult for you to concentrate on this case?

32. Do you have any private reasons that you think would prevent you from being fair and impartial in this case?

**I declare under the penalty of perjury that I have given true and correct answers to the preceding questions.**

Juror's Signature: _____ Date: _____