IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:20-CR-143 |
| v. | ) | |
| | ) | Honorable T.S. Ellis, III |
| ZACKARY ELLIS SANDERS, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL

The United States of America, by and through its attorneys, G. Zachary Terwilliger, United States Attorney for the Eastern District of Virginia, William G. Clayman, Special Assistant United States Attorney (LT), and Jay V. Prabhu, Assistant United States Attorney, files this response in opposition to the defendant's motion.  Dkt. No. 137 ("Mot.").  For the reasons stated below, his motion should be denied.  Further, given the Court's familiarity with the facts and the defendant's arguments, a hearing on his motion is not necessary.

## INTRODUCTION

In February 2020, Special Agent ("SA") Christopher Ford of the Federal Bureau of Investigation ("FBI") applied for a warrant to search the defendant's home based on a tip from a reliable foreign law enforcement agency ("FLA").  The tip is straight-forward: an Internet Protocol address later tied to the defendant's home (the "Target IP") was used to access online child sexual abuse material on a known hidden service dedicated to child sexual abuse material (the "Target Website") on The Onion Router ("Tor") network.  The government has provided the defendant with the FLA's tip, the affidavit in support of the warrant ("Affidavit"), and SA Ford's reports.

Since receiving discovery, the defendant has insisted, without evidence, that the tip is false, that SA Ford knew this, and that he is entitled to fish for materials in the government's files that might substantiate his suspicion.  After having his request to do so denied and denied again, he now seeks a third bite at the apple, repackaging his failed discovery motions with references to the government's notice under Federal Rule of Evidence 414, *Giglio*, and material he found online.  But, at base, his claims are the same as before: he does not think the Target IP accessed the Target Website (or perhaps only accessed its homepage) and believes he is entitled to access to the government's files to find support for this unfounded claim.  The problem for the defendant is that the Court has already ruled that the FBI properly relied on the tip, that the Affidavit accurately conveys the tip, and that it is pure speculation that SA Ford knew the tip was false.  To the extent the defendant has provided relevant, new information to consider—which he has not—nothing in his latest filings shows that the Court erred or that he is entitled to review any additional information under any applicable discovery standard.  Instead, he is again relying on hopeful speculation that the Affidavit is false as a basis to engage in a groundless fishing expedition for evidence that would support that very claim.  This backwards approach to discovery, wherein the mere suspicion about a presumptively true statement in the Affidavit entitles him to access to all materials related to that statement in the hopes of finding something impeaching it, is inconsistent with the rules of discovery and controlling precedent.  Accordingly, his motion should be denied.

## BACKGROUND

The facts of this case are well-documented.  Dkt. No. 43 at 3–5; Dkt. No. 97 at 3–7.  In August 2019, the FLA notified the FBI that the Target IP was used in May 2019 to access online child sexual abuse and exploitation material, the majority of which was only accessible to individuals with a username and password and which depicted a specific type of content.  Dkt. No.

86, Ex. 1.  The FBI determined that the Target IP was registered to the defendant's mother at their home in McLean, Virginia.  Dkt. No. 86, Ex. 4 at 2.  As part of the tip, the FLA also provided a letter stating that the data had been obtained through a lawful investigation, Dkt. No. 86, Ex. 2, and a report identifying the Target Website and describing it as a website dedicated to specific child pornography in exactly the same language used in the FLA's first letter, Dkt. No. 86, Ex.3.

Based on this tip, SA Ford applied for a warrant to search the defendant's home.  In paragraph 23 of the Affidavit, SA Ford averred that a reliable FLA notified the FBI that, "on May 23, 2019, a user of the [Target IP] accessed online child sexual abuse and exploitation material via a website that the FLA named and described as the [Target Website]."  Dkt. No. 86, Ex. 5 at ¶ 23.  Magistrate Judge John F. Anderson authorized the warrant, and law enforcement executed it in February 2020.  During the search, law enforcement seized electronic devices from the defendant and his bedroom.  An examination of these devices uncovered online chats in which the defendant persuaded minors to produce and send him images and videos of themselves engaging in degrading and sexually explicit conduct.  The examination also uncovered additional files depicting minors engaged in sexually explicit conduct stored on various electronic devices.  On June 24, 2020, a federal grand jury returned a 12-count indictment charging the defendant with production, receipt, and possession of child pornography.  Dkt. No. 29.  The government has produced comprehensive discovery, including the FLA's documents, the Affidavit, and SA Ford's reports.

## I.     The Defendant's First Motion to Compel and Supplemental Briefing

On July 13, 2020, three days after his arraignment, the defendant filed a motion to compel pursuant to Federal Rule of Criminal Procedure 16, *Brady*, and the Sixth Amendment, arguing that he was entitled to all materials related to whether the Target IP "accessed online child exploitation

material via a website," as described in paragraph 23 of the Affidavit.[1]  Dkt. No. 38 at 2–3, 12–14.  Seizing on a semantic difference in SA Ford's descriptions of the tip in the Affidavit and in a report, the defendant hypothesized that the Target IP only accessed the homepage of the Target Website and not any child sexual abuse material.  *Id.* at 16–17.  He also claimed that paragraph 23 did not accurately convey the tip and that the Target Website was not dedicated to child pornography.  *Id.* at 6.  Accordingly, the defendant argued, he was entitled to search the government's files to find support for his belief that the Affidavit was misleading.

After holding a hearing on July 31, 2020, the Court gave the parties ten days to file supplemental briefs.  In his supplemental brief, the defendant reiterated his claim that paragraph 23 did not correctly convey the FLA's tip and that, based on a meaningless difference in SA Ford's descriptions of the tip, the government knew the tip was false and the Target IP only accessed the homepage of the Target Website "for a single second."  Dkt. No. 48 at 8–13.  The defendant then sought leave to respond to the government's supplemental brief.  Dkt. No. 60.  In his response, he again argued that paragraph 23 overstated the tip.  Dkt. No. 65 at 2–3.

In an August 21, 2020, Memorandum Opinion, the Court denied the defendant's motion and found that paragraph 23 of the Affidavit accurately conveyed the FLA's tip.  Dkt. No. 73 at 9–10.  The Opinion states that "[t]here is no evidence—either in documents generated by the FLA or by the FBI—that Special Agent Ford thought defendant merely visited [the Target Website's] homepage and did not view child sexual abuse and exploitation material," and that the "defendant's repeated incantation that the government misrepresented the FLA's tip does not make it so where,

---

[1] The defendant also sought material related to the FLA's investigation.  Dkt. No. 38 at 3.  While he continues to insist without evidence that the FLA used a network investigative technique that interfered with his computer, *see* Dkt. No. 140 at 6, he is not seeking discovery related to this speculative claim in his renewed motion to reconsider his motion to compel.  Accordingly, that claim will not be addressed here.

4

as here, every description of the FLA's tip is consistent." *Id.* at 11.  The Opinion concludes that the defendant was simply seeking "to engage in a fishing expedition for evidence that would support [his] speculative theories that the search warrant affidavit contains intentional misrepresentations material to a finding of probable cause." *Id.* at 13.

## II.    The Defendant's Motion for Reconsideration and Motions to Suppress

On August 20, 2020, the Court extended the deadline to file pretrial motions in this matter from August 20, 2020, to August 27, 2020.  Dkt. No. 72.  On August 27, 2020, the defendant filed an over-80-page motion seeking various forms of relief.  Dkt. No. 79.  After the Court struck this motion for exceeding the permitted page limit, Dkt. No. 80, he refiled it as four motions to suppress and a motion to reconsider his motion to compel, Dkt. Nos. 81, 83, 85, 88, & 90.  In his motion to reconsider, the defendant claimed that the Court's denial of his original motion fundamentally misunderstood his argument—that SA Ford knew the tip and Affidavit were misleading—and that the Opinion erred in describing the FLA's documents and in finding that the Affidavit correctly conveyed the tip.  Dkt. No. 89 at 6–9.  Likewise, in a motion to suppress, he again claimed that paragraph 23 of the Affidavit was misleading, and the warrant was thus invalid, because it did not correctly describe the tip and because SA Ford knew the tip was false and misleading.  Dkt. No. 86 at 20–29.

The Court denied all five motions.  Dkt. Nos. 107 & 113.  In an Order denying his motion to reconsider, the Court found that the defendant failed to establish a basis for reconsideration. Dkt. No. 107 at 3–4.  The Order notes that the Court did not misunderstand his core argument, which it describes as "pure speculation" and entirely unsupported by the evidence, and confirms that the FLA's tip consists of the three documents identified above and that paragraph 23 accurately stated the tip.  *Id.* at 5–6.  The Court also found that, even if he had met the requirements

for reconsideration, his arguments regarding paragraph 23 fail on the merits. *Id.* at 8–9. The Order explains that his "conclusory allegation about Special Agent Ford's thought process at the time he wrote his affidavit" is "rank speculation." *Id.* at 9. "There is simply no evidence," the Order states, "to suggest that Special Agent Ford knew the language of the tip was materially misleading at the time he wrote his affidavit. Indeed, there is no persuasive reason to conclude that it was materially misleading, or indeed misleading at all." *Id.*

Similarly, in a Memorandum Opinion denying the defendant's motion to suppress based on paragraph 23, the Court dismissed his claim that the paragraph is misleading and confirmed that it "simply repeats, essentially verbatim," the tip. Dkt. No. 113 at 12. The Opinion rejects the defendant's "unwarranted conclusion" that the tip only establishes that the Target IP visited the Target Website's homepage for one second, explaining that the tip "clearly invites and warrants the reasonable inference that the IP address user was purposeful in his efforts to reach the [Target Website] and its illegal content," and that the timestamp in the tip "far more likely" reflects when the Target IP accessed the Target Website and not how much time the user spent accessing child sexual abuse material. *Id.* at 13, 13 n.10. "Given the involved set of steps necessary to access the [Target Website]" on Tor, the Opinion finds that "the Magistrate Judge clearly had a substantial basis to conclude that there was a fair probability of finding contraband—child pornography—at the target residence," and denies the defendant's request for a *Franks* hearing. *Id.*

## III. The Defendant's Instant Motion to Compel and Supplement to his Motion

Fifteen days in advance of the previously-scheduled November 17, 2020, trial, the government disclosed to the defendant that it may seek to introduce certain evidence at trial related to his other child molestation offenses consistent with Federal Rule of Evidence 414. Dkt. No. 127. On November 9, 2020, the Court continued the trial until February 9, 2021, at the defendant's

request.  Dkt. No. 131.  Well in advance of the new trial, and consistent with the well-established rule "that the prosecution is entitled to prove its case by evidence of its own choice," *Old Chief v. United States*, 519 U.S. 172, 186–87 (1997), the government withdrew its prior Rule 414 notice and filed an amended notice, disclosing to the defendant that the government may seek to introduce at trial evidence that he engaged in additional child molestation offenses based on statements he made to law enforcement during the search of his home.  Dkt. No. 133.  The amended notice also discloses that the government does not intend to introduce evidence at trial of the defendant's activity on the Target Website based on the FLA's tip under Rule 414.  *Id.* at 3.

On November 27, 2020, three months after the pretrial motions deadline in this case, the defendant filed the instant motion to compel pursuant to *Brady*, *Giglio*, and Federal Rule of Criminal Procedure 16.  In it, he argues that he is entitled to essentially the same material he sought in his first motion to compel and his motion to reconsider, namely: (1) material beyond the discovery already provided showing that the Target IP accessed child sexual abuse material on the Target Website, as described in paragraph 23 of the Affidavit; (2) a screenshot of the homepage of the Target Website; and (3) material that captures SA Ford's "state of mind" as it relates to paragraph 23.  Mot. at 13–17.  The defendant asserts that, within these materials, he will find confirmation of his belief that the tip is misleading and that SA Ford knew this.  Over a week later, on December 5, 2020, the defendant filed a "supplement" to his motion, reiterating his claim and attaching to it assorted documents he found online.  Dkt. No. 140 ("Supp.").  Prior to filing this response, undersigned counsel obtained and provided the defendant with additional screenshots of the Target Website as it appeared on January 16, 2019, including a screenshot of its homepage.[2]

---

[2] The screenshot of the homepage is not Rule 16, *Giglio*, or *Brady* material.  The Affidavit does not describe the homepage and the defendant's insistence that the tip is referring to it is "pure speculation."  Dkt. No. 107 at 5.  But even if this atextual reading of the tip is correct, "the fact

Accordingly, the only outstanding issue is whether the defendant is entitled to additional material regarding paragraph 23 of the Affidavit and SA Ford's "state of mind" with respect to that information.

## ARGUMENT

"Generally, criminal defendants do not have a constitutional right to discovery absent a statute, rule of criminal procedure, or some other entitlement." *United States v. Palacios*, 677 F.3d 234, 246 (4th Cir. 2012) (internal citations omitted). The government is aware of its Rule 16, *Brady*, *Giglio*, and other discovery obligations and has complied with and will continue to comply with both the letter and spirit of those obligations.

In his latest motion, however, the defendant simply repackages his failed motion to compel in an effort to have the Court again reconsider his request for more information that it has determined is immaterial. It is, in other words, a renewed motion to reconsider his motion to compel. Indeed, while framed as two new requests—one for additional material related to the Target IP accessing child sexual abuse material on the Target Website and the other for additional material that reflects SA Ford's "state of mind" with respect to this information, Mot. at 13–18—

---

that the FLA informed the FBI that defendant's IP address accessed [the Target Website] clearly invites and warrants the reasonable inference that the IP address user was purposeful in his effort to reach the [Target Website] and its illegal content." Dkt. No. 113 at 13. To be sure, the "Announcements" page on the site, accessible to both registered and unregistered users directly from the homepage, makes clear that the site advertises and is dedicated to illegal content. Dkt. No. 84, Exs. 9 & 10. But the homepage, the screenshot of which was taken before the date the tip reported the Target IP accessed the Target Website, is immaterial because the steps the user took to navigate to the Target Website provided probable cause to believe that he did so "to access the website and its illegal content." Dkt. No. 113 at 9–10. This, in turn, provided "a substantial basis to conclude that there was a fair probability of finding contraband—child pornography—at the target residence." *Id.* Thus, while the defendant has repeatedly argued that the warrant is invalid because "neither the name of the site nor the landing page indicated that the website contained any illegal contact at all," and he only accessed the homepage—*see* Dkt. Nos. 38 at 5, 17; 48 at 2, 10; 58 at 9; 84 at 18, 21; 86 at 7—the content on the homepage has no bearing on the Court's probable cause finding or the validity of any statements in the Affidavit.

the defendant is seeking the same category of discovery he sought before: material in the government's possession substantiating his wishful belief that, contrary to the tip and paragraph 23 of the Affidavit, the Target IP did not access child sexual abuse material on the Target Website.[3] The Court has repeatedly rejected this theory, explaining that the Affidavit "clearly communicates the same information contained in the FLA's tip" that the Target IP accessed child sexual abuse material on the Target Website, that there is no evidence SA Ford thought the Target IP "merely visited" the site's homepage, and that the defendant's "repeated incantation that the government misrepresented the FLA's tip does not make it so[.]" Dkt. No. 73 at 10–11.[4] Nothing in his latest filings is sufficient to support his request for the Court to revisit this issue yet again.

Even assuming *arguendo* that the defendant has met the requirements for this Court to reconsider his motion to compel—which he has not—his motion fails on the merits. He is once again engaged in "hopeful speculation," Dkt. No. 73 at 13, imagining ways in which the reliable tip and SA Ford's description of it might be misleading, repeating those suspicions as fact while referencing a patchwork of irrelevant documents, and then asserting a right to search the government's files for actual corroboration. This sort of conjecture "is insufficient to support a motion to compel under Rule 16," and fails to provide any "non-conclusory arguments as to why the requested discovery would be helpful to the defense" under *Brady* and *Giglio*. Dkt. No. 73 at 9, 13. This is particularly so given that navigating to the Target Website's homepage—one of the

---

[3] The defendant does not explain nor does the government know what kind of additional material he believes would reflect SA Ford's "state of mind." He has already received SA Ford's reports, the Affidavit, and the tip.

[4] *See also* Dkt. No. 107 at 6 ("[T]there is 'no meaningful difference between the [FLA's] tip and the Search Warrant Affidavit's language.'" (quoting Dkt. No. 73)); Dkt. No. 113 at 12 ("Paragraph 23 contains no material misrepresentations or omissions, intentional or otherwise. Rather, the paragraph simply repeats, essentially verbatim, the tip from [the FLA].").

defendant's theories of what the tip might mean—still "clearly invites and warrants the reasonable inference that the IP address user was purposeful in his efforts to reach the [Target Website] and its illegal content."  Dkt. No. 113 at 13.  In other words, even if his atextual reading of the tip is correct, the tip would still provide probable cause to search his home and he would not be entitled to a *Franks* hearing.  *Id.*  Accordingly, his motion for material that he falsely asserts might invalidate SA Ford's Affidavit or the Court's probable cause finding should be denied.

## I.     The Defendant Has Not Provided a Sufficient Basis to Renew his Motion to Reconsider his Failed Motion to Compel

When, as here, a defendant moves to have a court reconsider a failed motion to compel, reconsideration cannot be granted if the defendant is simply asking the Court "rethink what the Court ha[s] already thought through[.]"  *United States v. Dickerson*, 971 F. Supp. 1023, 1024 (E.D. Va. 1997) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)).  Instead, such a motion "can be successful in only three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice."  *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007); *see also United States v. Young*, 260 F. Supp. 3d 530, 555 (E.D. Va. 2017) (noting that, in the context of motions to reconsider in criminal cases, "courts are guided by analogy to the standards established by the civil rules.").  To support a motion for reconsideration based on new evidence, "the movant is obliged to show not only that . . . evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered or produced such evidence at the hearing."  *Dickerson*, 971 F. Supp. at 1024 (quoting *Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989)).

Here, the Court has considered and rejected the defendant's discovery request and arguments regarding paragraph 23 of the Affidavit and SA Ford's understanding of it on multiple

occasions.  Dkt. No. 73 at 10–11; Dkt. No. 107 at 6; Dkt. No. 113 at 12.  Seeking to avoid that result again, the defendant has included allegedly new information in his motion and supplement. Specifically, he points to the government's amended Rule 414 notice and documents he found through keyword searches online to assert that it is now "beyond question" that the government possesses evidence to substantiate the claims in his failed discovery and suppression motions. Mot. at 1–3, 13–14, 22; *see also* Supp.  But neither the withdrawn Rule 414 notice nor the current Rule 414 notice make reference to information beyond what was contained in the tip.  Indeed, they do not even identify the Target Website or reference the FLA.  In any event, the government does not intend to introduce evidence at trial of the defendant's activity on the Target Website based on the FLA's tip under Rule 414, rendering his speculative theories about the validity of the Affidavit wholly irrelevant.  *See* Dkt. No. 133.  It is undisputed that the government "is entitled to fashion its own case" and present evidence in the manner of its choosing.  *United States v. Basham*, 789 F.3d 358, 386 (4th Cir. 2015) (citing *Old Chief*, 519 U.S. at 189).  The defendant's speculative claim that the amended Rule 414 notice is designed to conceal *Brady* material as opposed to, for example, streamline testimony in the interest of judicial economy, is not new evidence that justifies reconsideration of his motion to compel.  It is rank speculation.

The assorted documents the defendant has compiled in his motion and supplement similarly fail to warrant reconsideration of his request to compel discovery related to paragraph 23.  The defendant suggests that only one of these documents—what appears to be notes from a March 2020 meeting held by a regional police department (not the FLA) abroad—was perhaps unavailable when he filed his motion in July 2020 because "it is a PDF document, not an HTML document," and might not have been indexed by Google.  Mot. at 14 n.6; *id.*, Ex. 4.  He otherwise offers no explanation or evidence as to why the documents attached to his motion and supplement

were not included in his prior motion to compel and additional filings or produced at any prior hearing.  Without some showing that these other documents were "newly discovered" *and* could not have been discovered or produced "with reasonable diligence" previously, the defendant cannot obtain reconsideration of his motion to compel.  *See Dickerson*, 971 F. Supp. at 1024.

## II.     The Defendant Is Not Entitled to the Requested Material Under Rule 16

Even if the defendant has met the requirements for this Court to reevaluate the merits of his renewed motion to reconsider based on his internet research, he has again failed to establish that the requested information is material under Federal Rule of Criminal Procedure 16.  Mot. at 18–20.  Under Fed. R. Crim. P. 16(a)(1)(E), a defendant has a right to inspect an item "if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant."  With respect to the materiality prong, the defendant bears the burden of proving that the information sought "would . . . actually help[] prove his defense."  *United States v. Caro*, 597 F.3d 608, 621 (4th Cir. 2010) (internal citations omitted). A defendant can satisfy this burden by showing that "there is a strong indication that [the disputed evidence] will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal."  *Id.* (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)).  That is, the defendant must provide "some indication that the pretrial disclosure of the disputed evidence would . . . enable[] the defendant significantly to alter the quantum of proof in his favor."  *Id.* (quoting *United States v. Ross*, 511 F.2d 757, 763 (5th Cir. 1975), *cert. denied* 423 U.S. 836)).

To satisfy the materiality requirement, a defendant cannot rely on "general description[s] or "conclusory allegations" and instead "must present facts which would tend to show that the

Government is in possession of information helpful to the defense." *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990). Indeed, "ordering production by the government without any preliminary showing of materiality is inconsistent with Rule 16." *Id.* Doing so would allow a defendant "to carry out an impermissible 'fishing expedition,'" in which he does not know what evidence he is looking for until he finds it. *United States v. McLamb*, 220 F. Supp. 3d 663, 676 (E.D. Va. 2016) (denying motion to compel where defendant's requests were based on "mere speculation" of materiality); *see also United States v. Maranzino*, 860 F.2d 981, 985–86 (10th Cir. 1988) (explaining that "Rule 16 does not authorize a blanket request to see the prosecution's file" or a "fishing expedition" by the defense) (citing *Jencks v. United States*, 353 U.S. 657, 667 (1957)); *United States v. Delacruz*, No. Case 14 Cr. 815 (KBF), 2015 WL 2211943, at *1 (S.D.N.Y. May 12, 2015) ("Rule 16 does not entitle a criminal defendant to a broad and blind fishing expedition among [items] possessed by the Government on the chance that something impeaching might turn up." (internal citations and quotation marks omitted)).

Here, as he did before, the defendant argues that the requested information regarding paragraph 23 of the Affidavit is material under Rule 16 because it might confirm his belief that SA Ford "made obviously reckless or knowingly false statements" in the Affidavit and provide grounds to impeach him and the Affidavit. Mot. at 18–20. The "obviously" false statements he identifies are the same statements the Court has consistently deemed to be accurate and supported by the evidence.[5] *See* Dkt. Nos. 73, 107, 113. In an effort to get the Court to reconsider its conclusion, the defendant attaches a host of exhibits to his filings, none of which suggest, let alone prove "beyond question," that the FLA's tip was unreliable, that the Target IP did not access child

---

[5] The defendant claims the requested information might undermine paragraphs 23 and 25 of the Affidavit, as well as the Affidavit's description of the Target Website and how and why and individual would navigate to the Target Website on Tor. Mot. at 19–20.

sexual abuse material or the Target Website as reported, or that SA Ford shared or should have shared his unfounded suspicions about the tip. Mot. at 22. These exhibits consist of: (1) documents that appear to be from various foreign organizations or individuals, none of which are from the FLA or provide any meaningful insight into the FLA's investigation, *see* Mot., Ex. 4, Supp., Exs. 1–3, 8; and (2) older documents that appear to be from law enforcement in the United States, none of which are related to this case or corroborate his speculative claims that the FBI knew the tip was unreliable or collaborated with the FLA to search his computer, *see* Supp. Exs. 4–7, 9–10.

With respect to the first category of documents—random documents found on the internet that appear to be from outside the United States—the government's understanding of the sources of this information is limited to what the defendant proffers in his filings. He provides no reason to think that SA Ford or the FBI should have been aware of them or should afford any weight to the information contained in them. None of them appear to be from the FLA or any similar organization involved in international criminal investigations and none of them make more than a passing reference to what appears to be the FLA's investigation. And to the extent they might refer to the FLA's investigation and contain reliable information, none of them actually address or cast doubt on the tip the FLA provided to the FBI. If anything, these materials, if taken at face value, appear to confirm that the FLA's investigation that generated the tip was solely focused on child pornography hidden services on Tor and that this investigation "demonstrate[d] a welcome improvement in the quality of intelligence distributed to [the FLA's] partner agencies." Supp., Ex. 1 at 11. The statements contained in the documents thus confirm that the FLA's tip was about the Target IP accessing child sexual abuse material on a Tor hidden service dedicated to that content (as opposed to accessing it on a mobile messaging application, as the defendant suggests), and belie his suggestion that the FLA mistakenly provided a document identifying the Target Website

14

as the hidden service on which the Target IP accessed child sexual abuse material in its tip related to the defendant.[6]  *See* Mot. at 7 n.3, 13–14; Supp. at 4 n.3.

The other category of exhibits—documents that appear to be from the United States related to other investigations—also fails to establish the materiality of the information the defendant requests under Rule 16.  None of these documents are related to this investigation.  Supp. at 3, 5–6 (citing Exs. 4–7, 9–10).  Instead, the defendant appears to argue, as he did previously regarding the FBI's use of a network investigative technique, that because law enforcement did something in a prior investigation, they necessarily did the same thing here.  But despite the defendant's months of digging for information, he has found no evidence, let alone a suggestion, that the United States was involved in the FLA's investigation beyond what was accurately stated in the Affidavit.  All he has managed to cobble together are press releases and documents related to other, older investigations, in which both the United States and foreign agencies acknowledged some collaboration.  That the United States successfully worked with foreign law enforcement agencies in the past to take down websites dedicated to child pornography provides no support for his current speculation regarding the origins of the FLA's tip in this case.[7]

---

[6] Conversely, none of the alleged "quality" concerns the defendant highlights actually address the tip.  Supp. at 4–5 (citing Exs. 1–3).  Indeed, the "accuracy" concerns in Exhibit 2 appear to be related to a regional foreign law enforcement agency's data and have nothing to do with the FLA's tip or investigation.  Supp., Ex. 2 at 2.  Relatedly, the defendant's suggestion that the tip's reference to child sexual abuse material might cover legal content in the United States is simply misplaced.  *See* Supp. at 3 (citing Ex. 8).  Images of clothed children or children who are not explicitly posed in a sexual manner can still depict children engaged in sexually explicit conduct under 18 U.S.C. § 2256(2).  *See, e.g.*, *United States v. Knox*, 32 F.3d 733, 748–52 (3d Cir. 1994).  And while the tip does not specifically describe the material the Target IP accessed—a fact the government has noted from the outset—it makes clear that the Target Website hosted undeniably illegal material, which provides context and support for the reasonable inference that the Target IP's user navigated to the Target Website on Tor with the intent to access that material.

[7] Additionally, contrary to the defendant's suggestion, *see* Supp. at 3 (citing Ex. 10), the government has never claimed that there are no legitimate uses of Tor.  Rather, the government

Put simply, the defendant has failed to present any facts or evidence in his motion and supplement to suggest that the government is in possession of information helpful to his defense with respect to paragraph 23 of the Affidavit.  He has already received the FLA's tip, the Affidavit, and SA Ford's reports.  His continued belief that the Affidavit did not establish probable cause to search his home does not entitle him to fish through the government's files to substantiate his unsupported assertion that the tip is somehow false or misleading.  Accordingly, his motion to compel pursuant to Rule 16 should be denied.

## III.   The Defendant Is Not Entitled to the Requested Material Under *Brady* or *Giglio*

The defendant also frames his motion as a request for *Brady* and *Giglio* materials related to paragraph 23 of the Affidavit.  *See* Mot. at 10–17   "In *Brady*, the Supreme Court announced that the Due Process Clause requires the government to disclose 'evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment.'"  *Caro*, 597 F.3d at 619 (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).  Evidence that can be used to impeach a government witness "falls within the *Brady* rule."  *United States v. Bagley*, 473 U.S. 667, 676 (1985) (citing *Giglio v. United States*, 405 U. 150, 154 (1972)).  Favorable evidence is material if there exists a reasonable probability "that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Id.* at 682.  A "reasonable probability," exists if there "is a probability sufficient to undermine confidence in the outcome" of a case.  *Caro*, 597 F.3d at 619 (quoting *Bagley*, 473 U.S. at 682).  "*Brady* requests," however, "cannot be used as discovery devices to obtain evidence the defendant believes would be helpful."  *United States v. Ducore*, 309 F. Supp. 3d 436, 440 (E.D. Va.) (internal citations and quotation marks omitted).

---

has argued that an internet user accessing child sexual abuse material on the Target Website on Tor, as the tip states, provides probable cause to search the user's home based on the reasonable inference that they accessed that material intentionally.

Accordingly, when a defendant "can only speculate as to what the requested information might reveal, he cannot satisfy *Brady*'s requirement of showing that the requested evidence would be favorable to the accused." *Caro*, 597 F.3d at 619 (internal citation and quotation marks omitted); *see also United States v. Agurs*, 427 U.S. 97, 109–10 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."); *United States v. Horvwalt*, 64 F.3d 660 (Table), at *2 (4th Cir. 1995) ("[W]e recognize that [defendant] must first make at least a preliminary showing that these documents contain exculpatory or impeaching information in order to compel production under *Brady* or *Giglio*.").

Applying the above principles here, the defendant's motion should be denied. The government has complied with and will continue to comply with its obligations under *Brady* and *Giglio*. To date, the defendant has received extensive discovery from the government. Critically, he has the FLA's tip, the Affidavit, and SA Ford's reports. That he hopes the government has some additional, unspecified material in its possession contradicting these documents does not make it so, and his repeated requests for information that will support his baseless theories does not mean he has "identified information favorable" to his defense in the government's possession. Dkt. No. 137 at 21. Indeed, he has not identified with any specificity what material he is seeking. He has simply identified a statement in the Affidavit that he wishes was false, asserted without any relevant evidence that the government must be withholding information showing it is false, and asked the Court to compel the government to produce all material related to that statement in the hopes of finding some document that proves it to be false. In other words, he is only guessing as to what other material exists, and this guesswork is based on his wishful thinking and a handful of irrelevant documents he found online. For the reasons outlined above, his suspicions about the tip

17

and the Affidavit fail to meet the threshold *Brady* requirement that a defendant provide more than mere speculation as to what favorable evidence the requested information might reveal. *Caro*, 597 F.3d at 619. Since he has "not put forward any non-conclusory arguments as to why the requested discovery would be helpful to the defense," Dkt. No. 73 at 13, his motion should be denied.

## IV.  The Court Does Not Need to Conduct an *In Camera* Review

The defendant alternatively asks the Court to conduct an *in camera* inspection of any information that falls within his request for discovery related to paragraph 23 of the Affidavit to determine if it includes *Brady* material. Dkt. No. 137 at 20–21 (citing *United States v. Abdallah*, 911 F.3d 201 (4th Cir. 2018)). The Fourth Circuit has explained that in order to trigger an *in camera* review of alleged *Brady* material, a defendant must make a plausible showing that exculpatory material exists and "must identify the requested confidential material [in the government's possession] with some degree of specificity." *Abdallah*, 911 F.3d at 217–18 (internal quotations and citations omitted). In *Abdallah*, the court ordered an *in camera* review because the defendant "identifie[d] specific evidence that could plausibly be favorable to his defense," namely, a specific "email exchange among the law enforcement officers attending Defendant's interrogation, which culminated in the final interrogation report" with substantial inconsistencies. *Id.*; *see also United States v. King*, 628 F.3d 693, 703 (4th Cir. 2011) (discussing *in camera* inspection of grand jury transcript of key witness); *United States v. Trevino*, 89 F.3d 187, 192–93 (4th Cir. 1996) (questioning *in camera* inspection of presentence investigations reports of specific members of conspiracy who testified against defendant); *Love v. Johnson*, 57 F.3d 1305, 1313–15 (4th Cir. 1995) (discussing *in camera* inspection of victim's file maintained by department of social services in rape case). This specificity requirement "ensures that the government's *Brady* obligations do not become unduly burdensome and that the defendant does

not conscript the court for a groundless fishing expedition." *Abdallah*, 911 F.3d at 218 (internal quotations and citations omitted); *see also United States v. Zolin*, 491 U.S. 554, (1989) ("There is no reason to permit opponents of the privilege to engage in groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents.").

Here, the defendant has made no showing—let alone a plausible one—that his discovery request would uncover exculpatory information.  He has provided no facts or evidence to show that the government is in possession of material establishing that the Target IP never accessed child sexual abuse material on the Target Website contrary to the tip.  All he has done is speculate. But even if he had made this threshold showing, his motion fails to identify with any degree of specificity what he seeks.  He has not identified a specific transcript or file.  Instead, and as noted above, he has simply identified a statement in the Affidavit that he wishes was false and has asked the Court to compel the production of all material related to that statement—including, without explanation, unspecified material that would reflect SA Ford's "state of mind"—in the hopes of finding something that proves the tip, the Affidavit, and SA Ford's reports to be false.  This request is insufficiently specific to warrant an *in camera* review under controlling precedent, and the defendant's efforts to now conscript the Court to assist in his ongoing fishing expedition for evidence to support his failed challenges to the warrant should be denied.

//

//

//

//

//

//

**CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court deny the defendant's renewed motion to reconsider is motion to compel discovery.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:  _____/s/_____
William G. Clayman
Special Assistant United States Attorney (LT)
Jay V. Prabhu
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3700
Fax: 703-299-3981
Email: William.G.Clayman@usdoj.gov

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 18, 2020, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which automatically generated a Notice of Electronic

Filing to the parties of record.

By:     /s/
        William G. Clayman
        Special Assistant United States Attorney (LT)
        United States Attorney's Office
        Eastern District of Virginia
        2100 Jamieson Avenue
        Alexandria, Virginia 22314
        (703) 299-3700
        Email: william.g.clayman@usdoj.gov