# Exhibit 7



1099 14TH ST. NW
8TH FLOOR WEST
WASHINGTON, DC 20005
(202) 640-2850
WWW.KAISERDILLON.COM

June 22, 2020

**VIA ELECTRONIC MAIL**

Mr. Jay Prabhu
Mr. William G. Clayman
Assistant United States Attorneys
United States Attorney's Office for the Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
Jay.Prabhu@usdoj.gov
William.G.Clayman@usdoj.gov

    Re: *United States v. Zackary Ellis Sanders*, 1:20-mj-00114

Dear Jay and Bill,

  I appreciate the return call from Bill on Friday and the clarification regarding the discovery materials the government has already produced (which consist of the search warrant affidavit and an FD-1057). This letter is to follow up to the 16 discovery requests made on May 8, 2020, and to request additional discovery required if this case moves forward. If you plan to indict Mr. Sanders notwithstanding the fatal flaws in the search warrant, we ask that you provide prompt responses to his requests for discovery so that the defense can make use of such material in preparing to file a motion to suppress and a motion for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

  The 16 previous discovery requests pertained to the search warrant. In our June 8, 2020 letter, we explained why we believe the search warrant violated Mr. Sanders's Fourth Amendment rights. Even if the tip as described in paragraph 23 of the affidavit in support of the search warrant is a verbatim recitation of the tip provided by the foreign law enforcement agency ("FLA")—as Bill mentioned on Friday—not only is the affidavit still facially deficient, it also contains knowingly or recklessly false statements and material omissions that were essential to the Court's probable cause determination. As a result, the good faith exception to the warrant requirement does not apply in this case.

  The government's own pleading suggests that the tip was characterized in a misleading fashion. The government has previously described the tip from the FLA in a way that differs in a critical respect from what Special Agent Ford suggested in the affidavit. On April 1, 2020, the

government told the Court that Mr. Sanders "came to the government's attention after an investigation conducted by the Federal Bureau of Investigation ("FBI") and other law enforcement entities revealed that an individual *accessed a website* that *advertises* child pornography using an IP address associated with the defendant's residence."  Government's Response in Opposition to Defendant's Motion for Revocation of Detention Order at 2 (emphasis added).  The government did not assert that the investigation had revealed that the Internet user had actually accessed child pornography itself, notwithstanding the affidavit's contrary suggestion.  The government's description of the tip in its own pleading closely matches that of the FD-1057 that Special Agent Ford completed prior to the affidavit in support of the search warrant.  The government's description suggests that the defense's understanding of the tip as set forth in the letter sent on June 8, 2020—that the FLA tip meant that Mr. Sanders merely accessed the website, as opposed to any illegal content—is correct.

The government has not yet provided responses to the requests made on May 8, 2020.[1] These 16 requests, as well as the additional requests we now make, are directly related to the illegality of the search warrant and are therefore material to the preparation of Mr. Sanders's defense—including his investigation of facts relevant to filing a motion to suppress and a motion for a *Franks* hearing.

## I. The 16 prior requests are for information material to the preparation of Mr. Sanders's defense, and the government must disclose it.

The government is required to respond to Mr. Sanders's prior discovery requests because such responses, including any supporting documents, photographs, or other tangible items, are material to the preparation of Mr. Sanders's defense, including his ability to challenge the validity of the search warrant obtained in this case.  Fed. R. Crim. Pro. 16(a) "requires the government to permit inspection of certain records, if those records are in the government's custody and the item is material to preparing the defense."  *United States v. Salad*, No. 2:11CR34, 2012 WL 5894387, at *1 (E.D. Va. Nov. 23, 2012).  The requested information is "material" because "there is a strong indication" that the responses, as well as any supporting documents or photographs, will "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal" at a *Franks* hearing on the falsity of statements from Special Agent Ford.  *United States v. Caro*, 597 F.3d 608, 621 (4th Cir. 2010).

Here, for example, the responses to the 16 discovery requests are material because, individually and taken together, they would:  show that the central allegation supporting probable cause was either mischaracterized or falsified by Special Agent Ford; reveal the extent of the lack of independent police work performed by the FBI to corroborate the tip from the Foreign Law Enforcement Agency (FLA); reveal the lack of corroboration provided by the FLA to support the central allegation supporting probable cause; allow impeachment of Special Agent

---

[1] In an email on May 27, 2020, Bill cancelled a planned telephone call and informed us that the government is refusing to provide any further discovery in this matter pre-indictment.  Nowhere does Rule 16 state that the right to discovery only vests after indictment, especially where, as here, the defendant has already been in custody on the government's motion for many months (since March 19, 2020).

Ford; aid Dr. Miller in preparing a declaration and preparing to testify; and corroborate what Dr. Miller would testify to.[2]

Under such circumstances, Rule 16 provides that the government must disclose what is requested; the government does not have discretion. Furthermore, the government is under a "continuing duty to disclose," which includes a duty to promptly make disclosures. Fed. R. Crim. Pro. 16(c). Additionally, discovery prior to indictment facilitates investigation and is essential to pre-indictment plea bargaining.

**II.     Mr. Sanders makes additional discovery requests that the government is required to respond to.**

In the event this case will move forward, we make the following additional discovery requests, pursuant to Rule 16 and *Brady v. Maryland*, 373 U.S. 83 (1963), on Mr. Sanders's behalf. These requests include information and tangible evidence material to the preparation of his defense, including the filing of a motion to suppress and a motion for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

To prepare to file a motion to suppress and a motion for a *Franks* hearing, we request:

*Information about the tip from the FLA*

A. The precise wording of the tip provided by the FLA and any documents, photographs, or other tangible evidence that composed and/or accompanied the tip;
B. The specific images or videos and any other content that the Internet user with IP address ▮▮▮▮▮▮▮▮▮ (Internet user) was alleged to have accessed on May 23, 2019;
C. The hashes of the specific content that the Internet user was alleged to have accessed on May 23, 2019;
D. All information, including but not limited to photographs and documents, that the FLA alleged that the Internet user accessed a website that advertised child pornography and did not allege that the Internet user in fact accessed child pornography;
E. All information as to what date(s) the FLA alleged that the Internet user visited the target website, other than May 23, 2019;
F. All information that the FLA did not allege that the Internet user accessed any specific pages or content, other than the homepage of the target website;
G. All information, including but not limited to photographs and documents, that there was no allegation from the FLA that the Internet user ever registered an account on the target website;
H. All information, including but not limited to photographs and documents, that there was no allegation from the FLA that the Internet user ever logged in to the target website on May 23, 2019, or any other date;

---

[2] For those reasons, we believe that responses to the 16 prior requests, in addition to being material to the preparation of Mr. Sanders's defense, will contain exculpatory information that the government is also required to disclose under *Brady v. Maryland*, 373 U.S. 83 (1963).

| | |
|---|---|
| I. | All information, including but not limited to photographs and documents, that there was no allegation from the FLA that the Internet user ever uploaded or downloaded any content to or from the target website on May 23, 2019, or any other date; |
| J. | All information that the Internet user was not alleged to have visited the other website described in paragraph 28 of the affidavit in support of the search warrant; |
| K. | All information and supporting documentation tending to show that there was no allegation regarding, and the FLA was not aware of, any personally identifiable information of the Internet user, such as an email address, contact information, address information, or credit card information; |
| L. | All information, including but not limited to photographs and documents, as to whether the tip from the FLA was provided in English or whether the FBI translated the tip from the FLA; |

*Information about the FLA's reliability*

| | |
|---|---|
| M. | All information, including but not limited to photographs, documents and prior tips from the FLA that the FBI was able to corroborate, that formed the basis for Special Agent Ford's assertion in paragraph 23 of the affidavit in support of the search warrant that the FLA had a history of providing reliable, accurate information in the past; |
| N. | All information and supporting documentation that the FLA provided tips in the past that turned out to be baseless, false, misleading, or incorrect; |
| O. | All information and supporting documentation that the FLA previously provided the FBI with individual IP addresses that the FBI was unable to connect to illegal activity; |
| P. | Information regarding the number of IP addresses that the FLA provided to the FBI prior to February 10, 2020, and how many of those IP addresses were ones that the FBI was unable to corroborate, prior to February 10, 2020, as being used to engage in illegal activity; |
| Q. | All information, photographs, documents reflecting prior IP Addresses provided by the FLA to the FBI that the FBI did not investigate and why such decision(s) was/were made; |
| R. | All information and supporting documentation that the FBI previously decided not to pursue past tips from the FLA and why such decision(s) was/were made; |
| S. | All information and documentation to show that the FLA employed a Network Investigative Technique(s) in previous cases where they provided tips to the FBI; |

*Information about the target website and its server*

| | |
|---|---|
| T. | Access to a copy of the server of the target website in order for our expert to test it; |
| U. | Copies of the bulletin board software, bulletin board logs, and server logs of the target website server that was seized; |
| V. | All information, including but not limited to photographs and documents, tending to show that the target website was not exclusively dedicated to child pornography; |
| W. | All information, including but not limited to photographs and documents, showing that the target website did not have a name that was suggestive of child pornography; |
| X. | All information, including but not limited to photographs and documents, showing that the homepage of the target website did not have any images or videos of child pornography; |

Y. All information, including but not limited to photographs and documents, showing that child pornography was only accessible via the target website after a user registered and logged in;

Z. All information, including but not limited to photographs and documents, showing what content was visible on the page of the target website immediately after a user registered and logged in;

AA. Screenshots of any and all pages of the target website and its content, including but not limited to what a user would have seen immediately upon accessing any of the sections and forums for posting as detailed in the affidavit in support of the search in paragraph 18.

BB. The list of registered users of the target website;

### *Information about the Network Investigative Technique(s)*

CC. The source code and binary code of the Network Investigative Technique(s) employed by the FLA and/or the FBI against the target website and/or the Internet user;

DD. All information, including supporting documents, that reveal the exploit, what vulnerability it was leveraging, what was actually deployed, what page(s) of the target website it accessed, and what date(s) and time(s) it was deployed on;

EE. The packet capture or two-way data stream employed in investigating the target website;

FF. Access to a copy of the server with the Network Investigative Technique(s) as deployed in order for our expert to test it;

### *Information about the FBI's efforts to corroborate the FLA tip*

GG. All photographs, documents, and other information tending to show efforts on or prior to February 10, 2020, that the FBI took that failed to corroborate the tip from the FLA, including all information tending to show that the FBI was unable to corroborate the tip from the FLA on or prior to February 10, 2020;

HH. All information, including but not limited to photographs and documents, that formed the basis of the government's assertion to the court on April 1, 2020, that "[t]he defendant came to the government's attention after an investigation conducted by the Federal Bureau of Investigation . . . and other law enforcement entities revealed that an individual accessed a website that advertises child pornography using an IP address associated with the defendant's residence in McLean, Virginia;"[3]

II. All information, including but not limited to photographs and documents, that the FBI was unable to determine, prior to February 10, 2020, that the Internet user ever registered an account on the target website;

JJ. All information, including but not limited to photographs and documents, that the FBI was unable to determine, prior to February 10, 2020, that the Internet user ever logged in to the target website;

KK. All information, including but not limited to photographs and documents, that the FBI was unable to determine, prior to February 10, 2020, that the Internet user had visited the target website on any date other than May 23, 2019;

---

[3] Government's Response in Opposition to Defendant's Motion for Revocation of Detention Order at 2.

LL.  All information, including but not limited to photographs and documents, that the FBI generally, and Special Agent Ford specifically, were unable to determine, prior to February 10, 2020, what particular content the Internet user allegedly accessed on May 23, 2019;

MM.  All information, including but not limited to photographs and documents, reflecting efforts that Special Agent Ford, Special Agent Obie, and the FBI, generally, took prior to February 10, 2020, to confirm that the content the Internet user allegedly accessed met the definition of child pornography under U.S. law;

NN.  All information, including but not limited to photographs and documents, that the FBI was unable, prior to February 10, 2020, to determine that the Internet user ever uploaded or downloaded any content to or from the target website;

OO.  All information that the FBI was unable to determine, prior to February 10, 2020, that the Internet user visited the other website described in paragraph 28 of the affidavit in support of the search warrant;

PP.  All information as to whether a user was required to register and login to the other website described in paragraph 28 of the affidavit in support of the search warrant to access its content;

QQ.  All information, including but not limited to documents and photographs, tending to show that the Internet user could not have accessed the target website using a Tor-based search engine;

RR.  All information about efforts, prior to February 10, 2020, that the FBI took to determine how the 16-or-56 character web address was conveyed to or encountered by the Internet user on May 23, 2019;

SS.  All information and documentation to show how the FBI obtained the time stamp of 02:06:48 UTC and what that time stamp reflected;

TT.  The subpoena submitted to Cox Communications;

UU.  The documents and photographs submitted by Cox Communications in response to the subpoena;

VV.  All information and supporting documentation tending to show that prior to February 10, 2020, the FBI failed to subpoena or otherwise obtain information from Cox Communications showing whether the Internet user went on Tor, whether the Internet user frequently used Tor, and whether the address had an open WIFI network that other people could browse;

WW.  All information that the FBI was unable to determine, prior to February 10, 2020, whether the Internet network at the Sanders's home in May 2019 was an open network or a password-protected network;

XX.  All efforts the FBI took prior to February 10, 2020, to determine that the Internet user displayed or possessed characteristics of individuals with a sexual interest in children or visual depictions of children, as described in paragraph 38 to 44 of the affidavit in support of the search warrant;

YY.  All information that, prior to February 10, 2020, there were no documents, photographs, other tangible evidence, or information to show that the Internet user displayed or possessed characteristics of individuals with a sexual interest in children or visual depictions of children, as described in paragraph 38 to 44 of the affidavit in support of the search warrant;

- ZZ. All information and documentation reflecting that Zackary Sanders did not have a criminal history prior to February 10, 2020;
- AAA. All information as to why Zackary Sanders, as opposed to the other residents of the Sanders's household, was the primary focus of the FBI's investigation from the beginning of the FBI's execution of the search warrant;

*Information about Special Agent Ford's knowledge and experience*

- BBB. All information that Special Agent Ford knew, or should have known, that the facts alleged in the FD-1057 form were insufficient to support a finding of probable cause;
- CCC. All information, including but not limited to photographs and documents, tending to show that Special Agent Ford knew or should have known that Hurtcore can be used to describe adult pornography;
- DDD. All information, including documents and photographs, tending to show that Special Agent Ford knew, or should have known, that search engine crawlers do not have login credentials and cannot access or determine the substance of content that is only accessible via registration and login;
- EEE. All documents, photographs, and information relied upon by Special Agent Ford, or any other members of the FBI, to determine that a member of the Sanders's household was a licensed clinical psychologist;
- FFF. All documents, photographs, and information relied upon by Special Agent Ford, Special Agent Obie, and any other members of the FBI to determine that the Sanders's home was for sale prior to February 10, 2020;
- GGG. All information and documentation tending to show that Special Agent Ford knew or should have known the meaning of the term "twink;"
- HHH. All information and documentation tending to show that Special Agent Ford knew or should have known that the FLA employed a Network Investigative Technique(s) in this or previous cases where they provided tips to the FBI;
- III. All information and documents regarding any training that Special Agent Ford received on Tor;
- JJJ. All information, photographs, and documents tending to show that Special Agent Ford knew, or should have known, that the Tor Project is a 501(c)(3) nonprofit;
- KKK. All information, photographs, and documents tending to show that Special Agent Ford knew, or should have known, that the steps required to download and use a Tor browser are the same regardless of whether someone is accessing legal or illegal content;
- LLL. All information, photographs, and documents tending to show that Special Agent Ford copied language in the affidavit in support of a search warrant from an affidavit in another case;
- MMM. All information, photographs, and documents tending to show that the FAQ section of the Tor Project website in February 2020 did not match Special Agent Ford's description of it as alleged in the affidavit in support of the search warrant;
- NNN. All information, photographs, and documents tending to show that Special Agent Ford knew, or should have known, that a Tor browser does not save Internet browsing activity.

***

Thank you. Please do not hesitate to contact me with additional questions.

Sincerely,

Jonathan Jeffress

*Counsel for Zackary Ellis Sanders*