# Exhibit 8



1099 14TH ST. NW
8TH FLOOR WEST
WASHINGTON, DC 20005
(202) 640-2850
WWW.KAISERDILLON.COM

July 7, 2020

**VIA ELECTRONIC MAIL**

Mr. Jay Prabhu
Mr. William G. Clayman
Assistant United States Attorneys
United States Attorney's Office for the Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
Jay.Prabhu@usdoj.gov
William.G.Clayman@usdoj.gov

Re: *United States v. Zackary Ellis Sanders*, 1:20-cr-143

Dear Jay and Bill,

As you know, our law firm represents Zackary Sanders in case 1:20-mj-00114. Thank you for providing the discovery letter earlier today and making a CD of previously-provided discovery available for pick up. This letter is to follow up to our previous discovery requests—made on May 8, 2020, and June 22, 2020—as well as our repeated efforts through email and phone calls to obtain items material to the preparation of Mr. Sanders's defense, including, most urgently, preparing to file a motion to suppress and a motion for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

As you know, we believe the search warrant was invalid and, to effectively challenge the warrant, we need additional information about what the foreign law enforcement agency (FLA) knew about the activity of the IP address and what the FBI knew about what the FLA said and did. Our previous discovery requests pertained exclusively to information that the FBI knew or should have known prior to executing the search warrant on February 12, 2020, and such requests had nothing to do with evidence obtained during the execution of the invalid warrant.

The letter we sent you on June 8, 2020, detailed through ten pages and five exhibits why the search warrant in this case violated Mr. Sanders's Fourth Amendment rights. We explained why Special Agent Ford's affidavit contained numerous false statements that were directly relevant to the Court's probable cause determination. We noted that while the affidavit was facially deficient even if those statements had been true—which they were not—when the affidavit is corrected to reflect the true facts, the matter is not close and the good faith exception therefore does not apply.



Finally, as you are aware from previous correspondence, we believe a malware attack, also known as a Network Investigative Technique, was used by the FLA in this case. According to the discovery that you provided last week, we now know that the ▮▮▮▮ ▮▮▮▮ is the FLA that gave the tip on which the application for the search warrant relied in this case.

Now that we know that the tip originated from ▮▮, it is even clearer that a malware attack was used to identify the IP address in this case. In a report made to the ▮▮ ▮▮, the ▮▮ publicly acknowledged that ▮▮ interferes with computers overseas even when such activities may be unlawful in ▮▮.[1] The ▮▮ refers to these operations against a target's computer or network as "▮▮," which include "▮▮ ▮▮ ▮▮."[2] Both ▮▮ operations constitute malware attacks. In the absence of you providing the two warrants related to ▮▮'s investigation of this case, ▮▮ ▮▮, and a detailed technical explanation demonstrating that no malware attacked was used, our understanding will continue to be that ▮▮ used a malware attack to identify the IP address in this case. We have an expert that will testify to that, and nothing we have received proves otherwise. Furthermore, FBI agents have previously stated under oath that there is no other way to identify an IP address under the sort of circumstances alleged in this case.

Based on our review of what you provided last week, we received 55 documents, 2 audio files, and hundreds of photographs from the execution of the search warrant. Though we appreciate receipt of the material obtained as a result of *the execution* of the search warrant, we still have yet to receive much of the critical material responsive to the *application for* the search warrant. As you know from our prior discovery requests, that material is vital for litigation of the suppression and *Franks* issues here. Separate from the 55 documents that relate to the execution of the warrant, you provided only 7 documents that pertain to what the FBI knew or did prior to seeking and executing the search warrant, of which 3 had already been provided (the FD-1057 that opened the investigation, the affidavit in support of the search warrant, and the search warrant itself). Of those 7, only two documents relate to the tip from the FLA, which is at the center of the application for the search warrant.

Our understanding is that the discovery you have provided to date is all the discovery you are going to provide in response to our May 8, 2020 and June 22, 2020, discovery letters. If that understanding is incorrect, please provide all of the information we requested in our May 8, 2020 and June 22, 2020 letters by close of business on July 8, 2020. If you do not, we intend to file a motion to compel because we have not received adequate responses to our prior requests and the government is withholding items material to Mr. Sanders's defense.

Specifically, based on the affidavit in support of the search warrant and the two documents from the FLA that we received last week, it is clear that what you have provided to

---

[1] ▮▮

[2] *Id.* at ▮▮

date cannot be the extent of items in the government's possession that relate to the tip from the FLA, the FLA's reliability (or lack thereof), the target website and its server, the Network Investigative Technique(s), the FBI's efforts to corroborate the FLA tip (or lack thereof), or Special Agent Ford's knowledge and experience. It is obvious there is much more that is being withheld from Mr. Sanders.

The two relevant documents you provided last week from the FLA (█████████), show that there must have been more of a back and forth between the FBI and █████████ than exists in the documents that we received. Those two documents are █████████ ("Intel log") and █████████ ("█████ Letter"). The information contained in the Intel Log and the █████ Letter is vague to the point of being meaningless. We find it very unlikely that Special Agent Ford would simply cut and paste language from these two documents from the FLA into a sworn affidavit (which it is clear he did) without further correspondence with the FLA clarifying what the FLA knew and what the FLA meant.

Further, it is clear that we have not received, and the government is continuing to withhold, the further documentation the FLA provided, at the very least. Paragraph 24 in the affidavit in support of the search warrant specifically notes that the "FLA . . . provided further documentation naming the website as the TARGET WEBSITE, which the FLA referred to by its actual name." While the FD-1057 that Special Agent Ford completed in January 2020 to document the opening of the FBI's investigation notes the name of the target website is "█████," neither the Intel log nor the █████ letter provide the name of the target website. Furthermore, neither the Intel log nor the █████ letter provide the description of the target website as detailed in paragraphs 15 to 21 of the affidavit in support of the search warrant.

Additionally, the Intel log suggests we are missing further documentation. The Intel log was written by █████████ at the █████████ in █████. It is unclear if the Intel log is the initial tip from August 2019 that was referenced in paragraph 23 of the affidavit in support of the search warrant, because it is undated and is not addressed to anyone specifically or the FBI generally. Furthermore, you have not provided any cover letter or email or additional accompanying documents, photographs, or other tangible evidence related to the Intel log. If the FBI did receive this Intel log in August 2019, presumably it also would have received additional information, such as the name of the target website, a more detailed description of the target website, and whether the Internet user ever registered an account, logged in, or accessed any specific illegal content. None of this information is included in the Intel log.

The █████ letter also suggests that there has been additional correspondence between the FBI and the █████ that we have not yet received. The █████ letter was written from █████████ at the █████████, to J. Brooke Donahue, Supervisory Special Agent at the FBI, on Sept. 16, 2019. Given that the author of the █████ letter is different from the author of the Intel log; that the █████ letter, unlike the Intel log, is addressed to a specific person at the FBI; and the █████ letter contains additional information from the Intel log, there must have been further back and forth that led to the follow up █████ letter. The █████ letter notes that the █████ has provided data on multiple IP addresses to the FBI. We need information as it relates to the reliability of the FLA, including other cases prior to February 10, 2020, where the FLA previously provided the FBI with IP addresses (for example, information

about how many of those IP addresses the FBI was unable to connect to illegal activity and how many of those IP addresses the FBI investigated and was able to corroborate as engaging in illegal activity). Furthermore, the ▮ letter references two warrants, ▮▮▮, issued pursuant to the ▮▮▮, and a claim from ▮▮▮ that at no time was any computer or device interfered with in the United States and that ▮ did not access, search, or seize any data from any computer in the United States. We need to know what prompted ▮ to send this ▮ letter to the FBI, and how the FBI followed up to corroborate information from the FLA. For example, presumably the FBI would have wanted to see the two warrants as well as further technical details showing that no data on a US computer was obtained by ▮ in violation of US law.

We also believe that there must have been other emails, letters, documents, photographs, or other tangible evidence that composed and/or accompanied the Intel log and ▮ letter, or that were previously or later sent from ▮▮▮ to the FBI or other US law enforcement agency, as well as US law enforcement responses back to ▮. It is well-documented that ▮ and US governments work together to investigate allegations of child pornography, and it appears this may have been a joint US-▮ investigation where the US outsourced to ▮ investigative techniques that would be illegal under US law. We need all correspondence between the US and ▮, as reflected in previous discovery requests and re-iterated today, because it goes directly to what activity the person using the IP address at issue allegedly engaged in and what the FBI knew or should have known about what the UK did.

What ▮ knew about the activity of the IP address and what the FBI knew or should have known goes to the crux of probable cause. From what we have received so far, there is no allegation that the website was exclusively dedicated to child pornography, no allegation that the Internet user actually registered an account or logged in, and no specific description of any content the Internet user allegedly accessed. We also have not received any information regarding efforts the FBI undertook to corroborate the tip from ▮▮▮ or follow up regarding how ▮▮▮ identified the IP address information or determined what content, if any, the Internet user accessed and whether that content was illegal under US law. If we do not receive this material by close of business on July 8, 2020, we intend to move to compel this information to be able to make use of it in preparing to file a motion to suppress and a motion for a *Franks* hearing.

We would be happy to schedule a time to discuss this matter further in advance of Mr. Sanders' arraignment on Friday, July 10, 2020. Thank you in advance for your courtesy.

Sincerely,

Jonathan Jeffress

Emily Voshell

Jade Chong-Smith, *pro hac vice application forthcoming*

KaiserDillon PLLC
1099 14th Street NW, 8th Floor – West
Washington, D.C. 20005
(202) 640-4430

5