### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

UNITED STATES OF AMERICA,

                    Plaintiff,

    v.

ZACKARY ELLIS SANDERS,

                    Defendant.

Case No. 1:20-cr-00143
The Honorable Judge Ellis

Pretrial Conference: Jan. 15, 2020
Trial: Feb. 9, 2021

### MR. ZACKARY ELLIS SANDERS'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR ORDER TO SHOW CAUSE AND TO SEAL

Mr. Zackary Ellis Sanders, by and through counsel, respectfully submits this Opposition to the Government's Motion for an Order to Show Cause and to Seal ("Motion") (ECF No. 170). The Court should deny the Government's Motion because it concerns publicly available information obtained through independent defense investigation that is not covered by the Protective Order (ECF No. 28).

All of the information that the Government claims is subject to the protective order was already publicly available online in news reports, ███████████ government publications, and ████████████████████ publications. Indeed, although the Government asks the Court both to seal documents[1] and impose sanctions, it does not even attempt to explain how the

---

[1] Despite disagreeing with the Government's position, the defense agreed to move to seal exhibits with ECF Nos. 135-4, 138-1, 138-2, 138-3, 138-8, and 138-11 before the Government filed the Motion. At the time that the exhibits were filed on November 27, 2020, and December 5, 2020, the defense explained that it did not believe the protective order applied to the exhibits because they were publicly available documents, and the Government did not object. On December 18, 2020, the very same day the Government requested that the defense move to seal the exhibits, the defense did so. ECF No. 171.

defense's use and disclosure of the already publicly available information violates the Protective Order.  Instead, the Government simply claims that the publicly available documents at issue "█ ████████████████████████████████."  ECF No. 173 at 1.  That conclusory assertion is plainly insufficient and is contradicted by the fact that the information is already public.

The information and documents that are the subject of the Government's Motion were already publicly available and were obtained through independent defense investigation of the facts underlying Mr. Sanders's case.  Given that the information and documents were not provided by the Government in discovery, they are not subject to the Protective Order, and, therefore, there is no basis for an Order to Show Cause or the Government's request that this Court order the defense to seal ██████████████████████████████████ ████████████████.

## FACTUAL BACKGROUND

The Protective Order entered on April 27, 2020, which governs "all discovery material . . . and information contained therein . . . produced by the government in discovery."  ECF No. 28 at 1.  Since that time, Mr. Sanders has diligently moved to file under seal information subject to the protective order, and where he did not, he explained why he did not believe that information was subject to the protective order.  *See, e.g.,* ECF Nos. 36, 46, 52, 61, 76, 87, 103, 134, 136, 139.

On November 27, 2020, Mr. Sanders filed a Motion to Compel the Government to Produce Material, or, in the Alternative, to Submit Material for *In Camera* Inspection, where Mr. Sanders explained how the Government had continued to conceal *Brady* material crucial to his defense, including a screenshot of the target website's homepage.  ECF No. 135.  In the accompanying Motion to Seal, the defense asked the Court to seal only portions of Exhibits 1

and 2, which the defense had diligently redacted.  ECF No. 134 at 1.  Mr. Sanders explained that

"Exhibits 3 and 4 should not be sealed: exhibit 3 is correspondence between the defense and

Government that does not mention material subject to the protective order, and exhibit 4 is a

publicly available report."  ECF No. 134 at 2.  Exhibit 4 was a report published by ███████

██████████████ in ████████████.  ECF No. 135-4.  It was not provided in discovery,

it was obtained through independent defense investigation, and it was publicly available on the

Internet.  At the time, the Government did not object to Mr. Sanders publicly filing exhibits 3

and 4.

On December 5, 2020, Mr. Sanders filed a Supplement (ECF No. 138) to the Motion to

Compel (ECF No. 135), to which he attached 12 exhibits in support.  In the accompanying

Motion to Seal, Mr. Sanders once again asked the Court to seal the portions of the exhibits that

Mr. Sanders believed were subject to the protective order, and diligently redacted them.  ECF

No. 139.  Mr. Sanders also explained that "Exhibits 1 through 10 should not be sealed: these

exhibits are publicly available documents that the defense uncovered through independent

investigation."  *Id.* at 2.  Again, at the time, the Government did not object.  On December 8,

2020, the Court granted the Motion to Seal.  ECF No. 141.  Among the exhibits filed publicly

were:



- Exhibit 1: A ████████████ government report regarding ████████████████

  ██████████████████████████████████.  ECF No. 138-1.  The document

  provides ███████████████████████████████████████

  ██████████████████████████████████.  This document was not provided in

  discovery and was publicly available on the Internet.

- Exhibit 2: A report published by ███████████████████████. ECF No. 138-2. The document provides ███████████████████████████████████ ████████████████ This document was not provided in discovery and was publicly available on the Internet.

- Exhibit 3: A document published by ███████████████████████████ ███████████████████████████████, which was published on the website of a ███████████████████████. ECF No. 138-3. The document provides ████████████████████████████████████████████████████ This document was not provided in discovery and was publicly available on the Internet.

- Exhibit 8: A ████████ report about the Internet and online child sexual abuse published by ████████████████████████████████. ECF No. 138-8. This document was not provided in discovery and was publicly available on the Internet.

- Exhibit 11: A December 3rd letter from the defense to the Government that the defense had already redacted and moved to file portions of under seal, which requested *Brady* material from the Government. ECF No. 138-11.

On December 14, 2020, Mr. Sanders filed ████████████████████████ ████████████████████████████████████████████████████████████ that were relevant to his defense. The records requested were:

- All records relating to ████████████████ from January 2019 to the present. ████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████ ████████████████ includes international law enforcement partners, including the Federal Bureau of Investigation (FBI). It has

been widely reported that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and the FBI work together to investigate cybercrime.

- Administrative staff manuals and instructions to staff regarding ▮▮▮▮▮▮▮▮ from January 2019 to the present.

- Records relating to Internet Protocol (IP) addresses provided by ▮▮▮▮▮ ▮▮▮▮▮▮ to the Federal Bureau of Investigation (FBI) as part of Project Habitance, from January 2019 to the present.

- Records relating to the FBI's investigation of the hidden service ▮▮▮▮ from January 2019 to the present.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮. In support of his ▮▮▮ request, Mr. Sanders cited publicly available information obtained through independent defense investigation: a report published by ▮▮▮ ▮▮▮▮▮ in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮,[2] an online ▮▮ job posting mentioning Project Habitance,[3] news articles regarding FBI and ▮▮ cooperation and the website ▮▮▮▮,[4] a Department of Justice press release regarding ▮▮ assistance

---

[2] ECF No. 135-4.

[3] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[4] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

investigating cybercrimes,[5] and ████ social media post regarding collaboration between the

████ and FBI to investigate cybercrimes.[6]  No documents provided by the Government in

discovery were cited in support of Mr. Sanders's ████ request.

On Friday, December 18, 2020, in preparing to respond to Mr. Sanders's Motion to

Compel (ECF Nos. 135, 138), the Government shared for the first time its concerns with ECF

Nos. 135-4, 138-1, 138-2, 138-3, 138-8, 138-11 and the ████, and asked the defense to

move to seal the exhibits and the ████.  Despite disagreeing with the Government's

position, the defense responded that Mr. Sanders would file a motion to seal the exhibits

identified by the Government.  Because Mr. Sanders's motions *in limine* were due by 5:00 pm

that day, the defense told the Government that it would provide a more fulsome explanation of

Mr. Sanders's position no later than December 21, 2020 (the next business day).  Although one

of the documents in question had been on the public docket for almost a month, the Government

chose not to engage in further discussions with the defense and instead filed the instant Motion



[5] Department of Justice Office of Public Affairs, ████

████

[6] ████

that same day.  ECF No. 170.  After filing motions *in limine*, Mr. Sanders moved to seal ECF

Nos. 135-4, 138-1, 138-2, 138-3, 138-8, 138-11.  ECF No. 171.

**ARGUMENT**

The information that the Government asks the Court to seal is not covered by the

Protective Order.  The Protective Order by its own terms covers "discovery material . . .

produced by the government."  ECF No. 28.  Neither the ███████████████████ nor the

exhibits identified in the Motion contain unredacted discovery material.  Reading the Protective

Order as applicable to any publicly available document that references information also

contained in discovery is overly broad, unworkable, and would violate Mr. Sanders's right to

effective assistance of counsel by precluding defense investigation.



Although the ████uit may contain "███████████████████

███████████████████," ECF No. 173 at 5, it does not disclose any connection

between the FLA, the investigation, or the Target Website and this case.  Instead, the ███████

simply seeks records from the Federal Bureau of Investigation (the "FBI") regarding a publicly

disclosed operation being conducted by one of its ███████████████████████

██████.[7]  In submitting these requests, Mr. Sanders identified and relied on public government

reports, a press release, a social media post, a job posting, and multiple news articles.  *See supra*

---

[7] *See, e.g., South Korean National and Hundreds of Others Charged Worldwide in the Takedown of the Largest Darknet Child Pornography Website, Which was Funded by Bitcoin,* Department of Justice (Oct. 16, 2019), https://www.justice.gov/opa/pr/south-korean-national-and-hundreds-others-charged-worldwide-takedown-largest-darknet-child (international investigation led by US law enforcement ███████████████████); *Russian National Charged with Decade-Long Series of Hacking and Bank Fraud Offenses Resulting in Tens of Millions in Losses and Second Russian National Charged with Involvement in Deployment of 'Bugat' Malware*, Department of Justice (Dec. 5, 2019), https://www.justice.gov/opa/pr/russian-national-charged-decade-long-series-hacking-and-bank-fraud-offenses-resulting-tens (announcement by Department of Justice ███████████████████).

7

5-6. The Government asks the Court to apply the Protective Order to these public sources simply because they contain information *related* to discovery provided in this case.  To do so would not only give the Protective Order far wider application than was contemplated by Mr. Sanders when he agreed to it, but impose restrictions beyond what is found in the Protective Order's text.  More concerning still, if the Court decided the Protective Order restricted Mr. Sanders's ability to use information identified from "other sources"—public websites in this case — would likely violate Mr. Sanders's rights under the First Amendment to the United States Constitution.  *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 21 (1984) (in order to comport with the First Amendment, protective orders may not "restrict dissemination if the information is obtained from other sources").  It cannot be that just because a fact is contained in discovery provided by the Government, Mr. Sanders and his counsel are barred from using that fact, even when identified from other sources.  If this were the case, any mention of Mr. Sanders, the FBI's involvement, the use of Tor and the Internet, and the names of Mr. Sanders's parents would fall under the Protective Order, given that those are pieces of information mentioned in discovery.

Furthermore, the Government appears to advocate the untenable position that publicly known information, namely the existence of a publicly discussed ▮▮▮▮ operation, the cooperative relationship between ▮▮▮▮▮ and the FBI, and the name of a hurtcore website are extremely sensitive when shared by Mr. Sanders, but not when shared by others.[8]  If the Court were to accept the Government's position, it would effectively prevent Mr. Sanders and the defense from engaging in independent investigation of the facts underlying his case, including speaking to Government witnesses or requesting records on Mr. Sanders's behalf.  This would place an

---

[8] Mr. Sanders's ▮▮▮▮▮▮ does not disclose that the ▮▮▮▮▮▮▮▮▮▮▮ did in fact share information with the FBI regarding ▮▮▮▮▮▮▮ .

extreme burden on defense counsel's ability to discharge their duties under the Sixth Amendment and under the Rules of Professional Responsibility. Such a burden would be particularly concerning in this case given the Government's repeated failures to provide Mr. Sanders with evidence to which he is entitled under *Brady v. Maryland*, 373 U.S. 83 (1963*). See* ECF Nos. 37, 48, 51, 75, 79, 88, 135, 137, 138, 140. In fact, the same day the instant Motion was filed, the Government disclosed two exculpatory screenshots it had suppressed for 224 days despite both its obligation to produce them and the defense's repeated requests.

Similarly, the Government identified five exhibits that were not produced in discovery and claims that they too are subject to the Protective Order.[9, 10] Of these five exhibits, four were publicly available documents that the defense located through independent investigation. The fifth document is a letter from the defense to the Government citing these publicly available documents and redacting the location and identity of the FLA, its investigation, and the Target Website. ECF No. 138-11. The Government asserts—without explanation—that the information contained in these exhibits "████████████████████████████████████████████████████████████████████." ECF No. 173 at 6. Even if true, that would not make these publicly available documents subject to the Protective Order. The Government never provides an explanation for how—because it cannot—documents located on public websites and identified through independent investigation are subject to the same restrictions as documents provided to the Mr. Sanders in discovery. The

---

[9] Mr. Sanders has already moved to seal these exhibits, ECF No. 171, and the Court has sealed them, ECF No. 172.

[10] Mr. Sanders also notes that the Government has sought to unseal significant amounts of discovery in this case when it suited its purposes. *See* ECF Nos. 144-2 at 3-4 (requesting that portions of tip provided by ███ be publicly filed), 144-3 at 2 (requesting that portions of communication from ███ be publicly filed).

defense is sensitive to the Government's concern regarding potential disruption to ongoing investigations (although in this case, the target website was shut down in ▇▇▇▇▇); however, that concern does not make the Protective Order applicable to publicly available documents not produced in discovery.  Further, given that much of what the Government seeks to keep secret has already been shared by the FLA and other ▇▇▇▇▇▇▇ government entities, it is not clear how it being publicly filed here would impact such investigations or the FBI's relationships with those entities.

Finally, the Government itself has taken inconsistent positions regarding what information falls under the Protective Order.  For example, the Government asks the Court to seal several exhibits in its Motion because they contain the location and identity of the FLA.  However, the Government did not ask the Court to seal other exhibits that revealed ▇▇▇▇▇ ▇▇▇▇▇.  For example, ECF No. 135-5 describes coordination between U.S. law enforcement and the ▇▇ to investigate child exploitation.  ECF No. 135-5; *see also* ECF No. 135-6 (document showing that U.S. law enforcement and ▇▇ seized the server of a Tor Onion Service website that profited from the sexual exploitation of children).  That the Government is cannot be consistent in applying its self-styled standard underscores that its proposed application of the Protective Order is unworkable.

Wherefore, Mr. Sanders respectfully asks the Court to deny the Government's Motion.

Respectfully submitted,

/s/_____

Jonathan Jeffress (#42884)
Emily Voshell (#92997)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC

10

1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C.  20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: evoshell@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

*Counsel for Defendant Zackary Ellis Sanders*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of December 2020, the foregoing was served electronically on the counsel of record through the U.S. District Court for the Eastern District of Virginia Electronic Document Filing System (ECF) and the document is available on the ECF system.

*/s/ Jonathan Jeffress*
Jonathan Jeffress