IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>  v.<br><br>ZACKARY ELLIS SANDERS,<br><br>        Defendant. | Case No. 1:20-cr-00143<br>Honorable T.S. Ellis, III<br><br>Pretrial conference: April 9, 2021<br>Trial: April 26, 2021 |

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE AND LIMIT CERTAIN ARGUMENTS, LINES OF QUESTIONING, AND EVIDENCE AT TRIAL**

  Mr. Zackary Ellis Sanders, by and through counsel, respectfully submits this Opposition to the Government's Motion in Limine to Exclude and Limit Certain Arguments, Lines of Questioning, and Evidence at Trial (ECF No. 163).

  The Government's Motion is improper and should be denied because it interferes with Mr. Sanders's "fundamental constitutional right to a fair opportunity to present a defense." *Crane v. Kentucky*, 476 U.S. 683, 687 (1986) (citing *California v. Trombetta*, 467 U.S. 479, 485 (1984)).

  The relief the Government seeks in its Motion would interfere with Mr. Sanders's right to present a defense in at least two significant ways. First, the Government's Motion—which is based on conjecture, not on any actual statements by Mr. Sanders about his trial theory or what he intends to argue at trial—is clearly designed to force Mr. Sanders to disclose his defense strategy and preview his arguments with the Government. Forcing Mr. Sanders to tell the Government his trial strategy in advance of trial would interfere with his fundamental right to

present a defense. Further, neither the Federal Rules of Evidence nor the Constitution require Mr. Sanders to share his defense with the Government. *See In re Grand Jury Subpoena*, 870 F.3d 312, 316 (4th Cir. 2017) ("Opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances"). This Court should not permit the Government to use its Motion as a tool to force Mr. Sanders to reveal his defense theory and should deny the Government's Motion.

Second, the Government's Motion seeks to restrict unduly Mr. Sanders's presentation of his case. The vague and overbroad categories of evidence that the Government seeks to exclude and limit are relevant to Mr. Sanders's intent, state of mind, and motive; are not unduly prejudicial; and should be permitted because they make it less probable that Mr. Sanders's primary purpose in engaging in online activity was to create visual depictions of minors engaging in sexually explicit conduct. *United States v. Palomino-Coronado*, 805 F.3d 127, 130 (4th Cir. 2015). To allow the Government to exclude wholesale entire lines of relevant argument and cross-examination would violate Mr. Sanders's right to present a defense and right to a fair trial.

**ARGUMENT**

I. **THE GOVERNMENT'S MOTION SHOULD BE DENIED BECAUSE IT IS AN ATTEMPT TO FORCE MR. SANDERS TO REVEAL HIS TRIAL THEORY.**

The Government seeks to exclude seven overbroad and vague categories of evidence:

(1) the purported minors' "voluntary participation in the offense conduct referenced in Counts 1 through 11;"

(2) the purported minors' "alleged sexual behavior or sexual predisposition;"

(3) "any mistake-of-age defense with respect to [Counts 1-5];"

  (4) the "investigation conducted by the foreign law enforcement agency that led to the search of [the Sanders' family] home;"

  (5) specific instance character evidence regarding the defendant;

  (6) Mr. Sanders's "health;" or

  (7) "the potential penalty or punishment the defendant will face if convicted."

Gov't's Mot. In Limine, Dec. 18, 2020 (ECF No. 163).

  Mr. Sanders has not affirmatively moved to introduce any evidence that matches the above categories, or otherwise represented on the record that he intends to introduce such evidence. Therefore, the Government's Motion is nothing more than a broad fishing expedition for Mr. Sanders's defense theory. By purposely choosing broad categories and vague language, the Government seeks to elicit a response from Mr. Sanders regarding his trial strategy, before the Government has even disclosed its witness or exhibit list, concluded discovery, or presented its case-in-chief. Furthermore, the Government is attempting to preclude testimony and questioning as irrelevant or prejudicial before any foundation has been laid and any testimony has been presented. Because the Government's Motion is baseless, and clearly designed to force Mr. Sanders to reveal his defense theory prior to trial, it should be denied.

**II. THE MOTION SHOULD BE DENIED BECAUSE THE GOVERNMENT SEEKS TO LIMIT IMPERMISSIBLY MR. SANDERS'S RIGHT TO PRESENT A DEFENSE.**

  Even if the Government's Motion were proper, the Government should not be permitted to exclude the following categories of evidence because they are proper lines of argument and cross-examination and to restrict them would unduly interfere with Mr. Sanders's right to present a defense:

  (1) the purported minors' "voluntary participation in the offense conduct referenced in Counts 1 through 11;"

3

(2) the purported minors' "alleged sexual behavior or sexual predisposition;"

(3) "any mistake-of-age defense with respect to [Counts 1-5];"

(4) the "investigation conducted by the foreign law enforcement agency that led to the search of [the Sanders' family] home;"

(5) Mr. Sanders's "health;" and

(6) "the potential penalty or punishment the defendant will face if convicted."

Gov't's Mot. In Limine, Dec. 18, 2020 (ECF No. 163).

### A. Evidence of voluntariness is highly probative.

First, the Government seeks to exclude the purported minors' "alleged voluntary participation in Counts 1 through 11." ECF No. 163 at 2. Given that there are no allegations of any sexual act or sexual contact between Mr. Sanders and any of the alleged minors, or any allegations that Mr. Sanders recorded any photos or videos himself, it is unclear what the Government means by "voluntary participation." The Court should deny the Government's Motion as to evidence of voluntariness on this ground alone.

It appears that the Government is attempting to recycle an argument it would make in a typical production case, where a defendant was alleged to have had sex or some other sexual contact with a minor and photographed or videotaped the minor. All of the cases that the Government cites are inapplicable here because they involve that typical production scenario: sexual contact between the defendant and complainant and the defendant personally taking photos or videos of the complainant. ECF No. 163 at 5-6; *United States v. Sibley*, 681 F. App'x 457, 458 (6th Cir. 2017) (Defendant was alleged to have had sex with the minor victim, prostituted the minor victim, and taken photographs of the minor victim in sexually explicit positions); *United States v. Timothy Michael Wells,* Case No. 2:15-cr-87-ABJ, ECF No. 1 (D.

4

Wy. May 20, 2015) (Defendant was alleged to have had sexual contact with his minor stepdaughter and planted a camera to film her nude in the bathroom); *Ortiz-Graulau v. United States*, 756 F.3d 12, 14–15 (1st Cir. 2014) (Defendant was alleged to have had sex with and taken photos of a fourteen-year-old girl who he lived with); *United States v. Malloy*, 568 F.3d 166 (4th Cir. 2009) (Defendant was alleged to have had sex with the minor victim while his friend videotaped it and was alleged to have videotaped his friend having sex with the minor victim); *Gilmour v. Rogerson*, 117 F.3d 368, 369–70 (8th Cir. 1997) (Defendant was a professional photographer who took photos of the minor victim and her boyfriend having sex and the minor victim and a deliveryman having sex, then refused to provide the photographs to the minor victim until she had sex with the Defendant, which she then did); *United States v. St.*, 531 F.3d 703, 706 (8th Cir. 2008) (Defendant was alleged to have engaged in sexual activity with his minor child and taken photos of the minor child in sexual explicit poses and engaging in sexual acts with the defendant); *United States v. Abad*, 350 F.3d 793, 796 (8th Cir. 2003) (Defendant had "web-cam" sex with a minor victim before meeting her in-person and using his digital camera "to take video clips of the girl masturbating and performing oral sex" on him); *United States v. McCauley,* Case No. 1:18-cr-330-TSE, ECF No. 42 at 3-4 (E.D. Va. Jan. 25, 2019) (Defendant had sex with 13-year-old girl and video recorded himself having sex with her).

  None of the cases that the Government cites contain similar allegations to this case: This is a sexting case, where the alleged minors purportedly initiated online conversations with an Internet user, recorded any photos or videos themselves when they were alone, and then later sent such photos or videos to the Internet user. There is no allegation that Mr. Sanders even engaged in "web-cam" sex with any of the alleged minors. Thus, the cases the Government cites are not persuasive here.

Further, the statute provides that the accused must "employ[], use[], persuade[], induce[], entice[], or coerce[]" a minor to engage in sexually explicit conduct in order to be guilty of violating the statute. 18 U.S.C. § 2251(a). Thus, the Government needs to prove beyond a reasonable doubt that Mr. Sanders actually did "employ[], use[], persuade[], induce[], entice[], or coerce[]" a minor to engage in sexually explicit activity for the purpose of producing a visual depiction of such conduct; to the extent a minor did so on their own, voluntarily, without being "employ[d], use[d], persuade[d], induce[d], entice[d], or coerce[d]" by Mr. Sanders, that negates an element of production and requires an acquittal.

Furthermore, the Government needs to prove beyond a reasonable doubt that Mr. Sanders "employ[d], use[d], persuade[d], induce[d], entice[d], or coerce[d]" a minor to engage in sexually explicit conduct *for "the purpose"* of producing any visual depiction of such conduct. 18 U.S.C. § 2251(a) (emphasis added). There is nothing ambiguous about the meaning of the definite article "the." Whether producing a visual depiction of sexually explicit conduct was *the* primary purpose of Mr. Sanders engaging in online discussions—or whether there was some other primary purpose and the visual depiction was merely incidental to that other purpose—is a key issue the jury will need to resolve.

As the Fourth Circuit has noted, "§ 2251(a) contains a specific intent element: the government [i]s required to prove that production of a visual depiction was a purpose of engaging in the sexually explicit conduct." *Palomino-Coronado*, 805 F.3d at 130. Thus, "[e]vidence regarding the nature of the defendant's relationship" with the purported minors "may bear on the defendant's purpose" for interacting online. *United States v. McCauley,* Case No. 1:18-cr-330-TSE, ECF No. 77 at 7 (E.D. Va. Jan. 25, 2019). Because evidence of the

defendant's relationship with the purported minors may be relevant, any blanket ruling that would prohibit any arguments or cross-examination on voluntariness is overbroad and improper.

The character of interactions between Mr. Sanders and the purported minors—*i.e.,* the voluntariness—is probative of Mr. Sanders's intent, state of mind, and motive. Just as in other cases where a defendant was permitted to introduce evidence relevant to his purpose, such as whether sexual activity was "to consummate their amorous feelings for one another," Mr. Sanders should similarly "be able to present otherwise admissible evidence that makes []his claim more likely than not so." *Id.* at 7.

### B. The Government's request to exclude "sexual history, conduct, or predisposition" evidence is vague, superfluous, or an effort to exclude relevant evidence.

Second, the Government seeks to exclude "any argument, questioning, or evidence regarding the sexual history, conduct, or predisposition of MINOR VICTIMS 1, 2, 3, 4, 5, and 6, whether before or after the time of the offense here." ECF No. 163 at 7. It is unclear what the Government means by "the sexual history, conduct, or predisposition," and the Motion should be denied on that ground. To the extent to which the Government seeks simply to have this Court enforce Federal Rule of Evidence 412, the Government's Motion is superfluous. Further, to the extent to which any questioning or argument touch on the complainants' interactions with Mr. Sanders (rather than with other people), that questioning and argument is plainly relevant to Mr. Sanders's state of mind, which is relevant to a charge of violating § 2251(a).

### C. This Court must read a mistake-of-age defense into the statute to save it from being constitutionally infirm.

Third, the Government seeks to exclude "any mistake of age defense with respect to the completed offenses charged in Counts 1 through 5."[1] ECF No. 163 at 2. However, in these circumstances, where all production and receipt purportedly took place online, and the landscape of online interaction has been fundamentally transformed since 18 U.S.C. § 2251 was amended and the Fourth Circuit ruled in *United States v. Malloy*, 568 F.3d 166 (4th Cir. 2009), a reasonable mistake-of-age defense is constitutionally required.

Evidence concerning Mr. Sanders's mistaken belief about a minor's age is relevant to the specific intent element of production of child pornography: if Mr. Sanders was mistaken about a minor's age, it makes it far more likely than not that his purpose in interacting with others online was not to produce a visual depiction. Because all production and receipt took place online, the risk of reasonable mistake of age is high. Failure to allow a reasonable mistake of age defense would render 18 U.S.C. § 2251 unconstitutionally overbroad in these circumstances.

### 1. *Malloy* is not applicable to the circumstances of this case, where all interaction took place online and the defendant is not alleged to have recorded any photos or videos himself.

This Court should not extend *Malloy*, 568 F.3d 166, a case decided based on different facts, in different circumstances, to those here. To do so would render 18 U.S.C. § 2251(a) constitutionally infirm. In *Malloy*, the defendant's friend brought a 14-year-old girl to the defendant's home. *United States v. Malloy*, Case No. 8:06-cr-00574-DKC, ECF No. 82 at 2 (S.D. Md. July 15, 2011). Upon seeing the girl, the defendant noted that she looked young,

---

[1] Mr. Sanders cannot be precluded from introducing mistake-of-age evidence with respect to offenses charged in Counts 6 through 12, because such evidence is relevant to the specific intent elements of receipt and possession of child pornography.

asked her how old she was, and was told that she was 19 years old and a student at Bowie State University. *Id.* at 2. The defendant and his friend then used a Sony camcorder to videotape one another having sex with the 14-year-old girl. *Id.* at 2.

In declining to extend a mistake-of-age defense in *Malloy*, the Court reasoned that Congress, in amending 18 U.S.C. § 2251(a) and § 2252 in 1977, had deleted the word "knowingly" from § 2251(a), while retaining the word "knowingly" in § 2252. *Malloy*, 568 F.3d at 172 (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 77, n.5 (1994)). In doing so, Congress intended that § 2251(a) should "reflect[] the reality that producers are more conveniently able to ascertain the age of performers," including because a producer generally interacts with a performer in person. *Id*. at 172 (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 77, n.5 (1994). In such circumstances, where all interaction and sexual activity takes place in person, it makes sense to "dr[a]w an analogy between § 2251(a) and traditional statutory rape offenses," because 1) "the perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim's age," and 2) the "opportunity for reasonable mistake as to age is extremely low in cases where the defendant comes into direct contact with the victim and she is available for questioning." *Id*. at 172 (quoting *X-Citement Video, Inc.* at 72 n.2).

When, as here, no interaction and no sexual activity took place in person, it does not make sense to compare § 2251(a) to statutory rape or to impose strict liability with respect to a person's age. When interaction takes place online, where there is no opportunity to confront the individual personally and there is no reliable way to ask for documentary evidence, the risk of reasonable mistake of age is extremely high. Here, because all the purported interactions between the alleged minors and the Internet user in this case occurred online, the Internet user

9

did not have "the superior ability of a producer to ascertain the age of the subject—through visual contact, documentary verification, direct questioning, [or] reputational information." *Malloy*, 568 F.3d at 176.  As a result, the Court's reasoning in *Malloy* does not apply here.

> 2. **Congress could not have anticipated that the statute would have applied in these circumstances.**

"Concern with the growth of *commercial* child pornography led Congress to pass the Protection of Children Against Sexual Exploitation Act of 1977 (18 U.S.C.A. §§ 2251 et seq.)" (emphasis added).  99 A.L.R. Fed. 643 (Originally published in 1990).  As Congress later made clear when it again amended the statute in 1984, § 2251 was meant to address the fact that "child pornography has developed in to a highly organized, multi-million-dollar industry which operations on a nationwide scale," that "thousands of children including large numbers of runaway and homeless youth are exploited in the production and distribution of pornographic materials;" and that "the use of children as subjects of pornography materials is harmful to . . . the individual child and to society."  PL 98–292 (HR 3635), PL 98–292, May 21, 1984, 98 Stat 204.  The statute has not been amended since 2008, before *Malloy* was decided.  Protect Our Children Act of 2008, PL 110–401, October 13, 2008, 122 Stat 4229.  This statute was clearly aimed at people in the pornography industry who produce pornography for profit.  That does not apply to Mr. Sanders. There is no allegation that he ever shared or distributed any photos or videos.

When Congress amended § 2251(a) and § 2252 in 1977 and deleted the word "knowingly" from § 2251(a) while retaining it in § 2252, it could not possibly have anticipated the development of the Internet, the proliferation of minicomputers in the form of portable smart phones, and the way people would instantaneously communicate online and share photos despite being hundreds of miles away from one another.

10

Today, 81% of Americans report going online every day, and almost half of people aged 18 to 29 report being online "almost constantly." Andrew Perrin and Madhu Kumar, *About three-in-ten U.S. adults say they are 'almost constantly'* online, Pew Research Center (July 25, 2019), https://www.pewresearch.org/fact-tank/2019/07/25/americans-going-online-almost-constantly/ (last accessed Jan. 8, 2021). Almost everyone has a cell phone, and some people have more than one: there are at least "396 million cell phone service accounts in the United States—for a Nation of 326 million people." *Carpenter v. United States*, 138 S. Ct. 2206, 2211 (2018). The Supreme Court has acknowledged that "[t]he term 'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers." *Riley v. California*, 573 U.S. 373, 393 (2014). Eighty-five percent of photos are taken on smartphones. Caroline Cakebread, *People will take 1.2 trillion digital photos this year—thanks to smartphones*, Business Insider (Aug. 31, 2017), https://www.businessinsider.com/12-trillion-photos-to-be-taken-in-2017-thanks-to-smartphones-chart-2017-8 (last accessed Jan. 8, 2021). Seven years ago, "[e]ven the most basic phones that s[old] for less than $20 [could] hold photographs, picture messages, text messages, Internet browsing history, a calendar, a thousand-entry phone book, and so on." *Riley*, 573 U.S. at 394. Cellphone computing power has only continued to increase since then: "Today's smartphones are faster than the mid-'80s Cray-2 Supercomputer, faster than the computer onboard the Orion spaceship NASA is currently testing to go to Mars and—perhaps most significantly—faster than the laptops most of us are carrying around." Swalé Nunez, *Your phone is now more powerful than your PC,* Samsung (Aug. 7,

11

2020), https://insights.samsung.com/2020/08/07/your-phone-is-now-more-powerful-than-your-pc-2/ (last accessed Jan. 8, 2021).

Congress could not have anticipated that the Internet and mobile phones would allow people to easily capture and share digital photos, that people would engage in sexting, or that the Government would then charge people who engaged in mere sexting, as opposed to in-person production, under § 2251(a). Nor could the Fourth Circuit in 2009, at the time *Malloy* was decided. At that time, the first iPhone had only recently been released;[2] mobile dating had not yet surged in popularity;[3] and popular mobile messaging apps like Kik Messenger and Telegram had not yet been created.[4] The year after *Malloy* was decided "was the year that so many of us began to . . . trade our phones—made for calls and the occasional text or email—for that single computer now in our pocket. It was also the year the biggest apps currently lining our homescreens began to arrive." Joanna Stern, *First, the Smartphone Changed. Then, Over a*

---

[2] Kif Leswing, *The iPhone decade: How Apple's phone created and destroyed industries and changed the world,* CNBC (Dec. 16, 2019), https://www.cnbc.com/2019/12/16/apples-iphone-created-industries-and-changed-the-world-this-decade.html (last accessed Jan. 8, 2021) ("The iPhone was first released in 2007, *but at the dawn of the decade it was still a relatively niche product*, confined to one wireless carrier and targeted at the early technology adopter. *Now it's a much bigger deal* — in the first calendar quarter of 2010, Apple sold 8.7 million iPhones. In the first quarter of 2018, Apple sold 47 million iPhones. Apple sold *at least 1.4 billion iPhones during the decade*, according to its official sales figures, and probably closer to 1.6 billion after this year's estimates are added") (emphases added).

[3] *See, e.g., Online Dating Application,* Wikipedia, https://en.wikipedia.org/wiki/Online_dating_application (last accessed Jan. 8, 2021) ("The launch of Tinder in 2012 led to a growth of online dating applications, both by new providers and by traditional online dating services that expanded into the mobile app market. . . 60% of U.S. adults agree that online dating is a good way to meet people and 66% say they have gone on a real date with someone they met through an application").

[4] *See, e.g., Kik Messenger*, Wikipedia, https://en.wikipedia.org/wiki/Kik_Messenger (last accessed Jan. 8, 2021) (Kik Messenger launched in 2010); *Telegram FAQ,* Telegram, https://telegram.org/faq#q-how-old-is-telegram (last accessed Jan. 8, 2021) (Telegram launched in 2013).

*Decade, It Changed Us*, Wall Street Journal (Dec. 17, 2019), https://www.wsj.com/articles/first-the-smartphone-changed-then-over-a-decade-it-changed-us-11576618873 (last accessed Jan. 8, 2021).

Under these very different circumstances—where all of the alleged production took place online and where the defendant is not alleged to have recorded any photos or videos himself—which neither the *Malloy* Court nor the 1977 Congress could ever have predicted, a reasonable mistake of age defense has to be "judicially engrafted for the statute to avoid reaching too broadly and chilling a substantial amount of protected speech." *Malloy*, 568 F.3d at 172; *see also United States v. Johnson*, 376 F.3d 689, 693 (7th Cir. 2004) ("we take Congress's criminalization of an attempt to manufacture child pornography to mean that a defendant must have the specific intent to produce a sexually explicit visual depiction *of a minor* . . . the government must demonstrate *that the defendant believed that the intended performer was a minor*") (emphases added).

> D. **The investigation conducted by the foreign law enforcement agency that led to the search of the Sanders' family home is impeachment material of Special Agents Ford and Obie should they testify at trial.**

Fourth, the Government seeks to exclude any evidence, arguments, or questions regarding the "investigation conducted by the foreign law enforcement agency [(FLA)] that led to the search of the defendant's home," ECF No. 163 at 2-3, but that would prevent Mr. Sanders

13

from impeaching certain FBI agents should they testify at trial.[5] Such exclusion would deny Mr. Sanders his constitutional confrontation rights and his right to present a defense. Should Special Agents Ford and Obie testify at trial, Mr. Sanders has the right to question them on issues of credibility and bias, including by confronting the Special Agents with information that directly contradicts their prior sworn statements.

Both Special Agent Ford and Special Agent Obie have previously stated that the target website that the Internet user allegedly visited on only one occasion, for one second, "advertised child pornography," when screenshots that the Government suppressed for 224 days reveal that the homepage—the first and potentially only page a user would visit—displayed only legal content and was not suggestive of any kind of illegal content. Special Agent Ford stated under oath that the website "advertise[d]" child pornography. Affidavit ¶ 15. Special Agent Obie stated under oath that "the FBI received information that on or about May 23, 2019, an individual connected to the internet through a specific [IP] address and *accessed a website* that is known to law enforcement to *advertise child pornography*." ECF No. 4 ¶ 9. However, both of their statements about the website advertising child pornography are contradicted by screenshots that prove that any illegal content was only viewable after a user registered an account, logged

---

[5] The Government previously noticed its intent to introduce testimony from Special Agent Ford "that [Mr. Sanders] accessed a hidden service on [Tor] with the intent to view child pornography." Original Notice (ECF No. 127) at 3. The Original Notice further stated "that the [FBI] executed a search warrant to search [Mr. Sanders's] residence in February 2020 based on information that someone using an IP address associated with [Mr. Sanders's] residence accessed child exploitation material on a Tor hidden service dedicated to child pornography in May 2019." *Id.* at 3. After Mr. Sanders requested trial discovery (ECF No. 135, Ex. 2) that followed from the Government's Notice, the Government abruptly withdraw its Original Notice and substituted an Amended Notice (ECF No. 133), which deleted any discussion of the Target Website and Sepcial Agent Ford's intended testimony. *See* ECF Nos. 135, 138, 174.

14

in, and took additional affirmative steps—which this Internet user was not alleged to have done—and that the website's homepage did not advertise child pornography.

Because the Government continues to hide relevant evidence, how Special Agent Ford and Special Agent Obie even linked the Internet user to any specific website remains a mystery. There is no document—at least none that the Government has ever provided or has said exists—connecting the Internet user's IP address to any such website. Outstanding discovery will show that the FLA never made any connection between the Internet user and the target website, and that the two Special Agents either guessed or assumed that the FLA was referring to a specific site. The Court has not yet ruled on Mr. Sanders's Motion to Compel the Government to Produce Material, or, in the Alternative, to Submit Material for *In Camera* Inspection (ECF Nos. 135, 138, 174). For the reasons stated in ECF Nos. 135, 138, and 174, the Government should be ordered to produce such material to Mr. Sanders. Once produced, Mr. Sanders should be able to confront the Special Agents with that material at trial. *See* ECF Nos. 135, 138, and 174.

Even if the Internet user visited the target website on May 23, 2019, the Special Agents must have known there was no evidence that the Internet user ever went beyond the homepage (the first and potentially only page any user will visit) or took any further steps required to actually view or download illegal content. *See* Special Agent Ford's 1057 (ECF No. 45, Ex. 1) at 2 (stating that the Internet user had "accessed [the target website]," not that the Internet user had viewed child pornography or taken any other action on [the target website]); Affidavit ¶ 6 (describing the basis for probable cause as the Internet user merely "acce*ss[ing] the TARGET WEBSITE*" (emphasis added)); *id.* ¶ 29 (same); *id.* ¶ 30 (summarizing the basis for probable cause as "any user who *accessed the TARGET WEBSITE* has . . . knowingly *accessed the TARGET WEBSITE with intent to view child pornography*" (emphasis added)); Special Agent

15

Obie's Affidavit (ECF No. 4 ¶ 9) (stating that the Internet user had "accessed a website," not that the Internet user had viewed child pornography on the website). The Government continues to withhold additional material that would reveal the Special Agents' state of mind at the time their Affidavits were submitted that Mr. Sanders should be able to confront the Special Agents with at trial. *See* ECF Nos. 135, 138, and 174.

### E. Evidence of a defendant's physical or mental health is relevant to whether the defendant lacks the necessary *mens rea*.

The Government seeks to exclude "any evidence . . . regarding the defendant's current physical or mental health, including, without limitation, current diseases, traumas, illnesses, attacks, and medical or psychological conditions." ECF No. 163 at 12. As the Government has previously acknowledged, however, "a defense showing that his physical or mental health somehow prevented him from forming the requisite *mens rea*" is relevant. *United States v. Kristopher Lee Dallmann et al.*, Case No 1:19-cr-00253-TSE, ECF No. 272 at 7 (E.D. Va. June 5, 2020). While Mr. Sanders is not permitted only to appeal to the sympathies of the jury, to extent such evidence is relevant to whether he lacked the necessary *mens rea*, it should not be excluded.

### F. Evidence of the potential penalty or punishment is highly probative under these circumstances.

Finally, the Government seeks to exclude any mention of "the potential penalty or punishment [Mr. Sanders] will face if convicted." ECF No. 163 at 3. Mr. Sanders is not requesting a jury instruction on the potential penalty, but the exclusion of any mention of the potential penalty at all is overly restrictive. Further, Mr. Sanders's understanding of the potential penalty is relevant for the jury's assessment of his specific intent with regards to the production

16

of child pornography. Because the government's exclusion request is overly restrictive, vague, and interferes with Mr. Sanders's right to present a defense, it should be denied.

## CONCLUSION

Because it would interfere with his right to present a defense and a right to a fair trial, Mr. Sanders respectfully requests that this Court deny the Government's request to exclude seven vague and overbroad categories of evidence.

                                                        Respectfully submitted,
                                                           /s/
                                                  Jonathan Jeffress (#42884)
                                                  Emily Voshell (#92997)
                                                  Jade Chong-Smith (admitted *pro hac vice*)
                                                  KaiserDillon PLLC
                                                  1099 Fourteenth St., N.W.; 8th Floor—West
                                                  Washington, D.C. 20005
                                                  Telephone: (202) 683-6150
                                                  Facsimile: (202) 280-1034
                                                  Email: jjeffress@kaiserdillon.com
                                                  Email: evoshell@kaiserdillon.com
                                                  Email: jchong-smith@kaiserdillon.com

                                                  *Counsel for Defendant Zackary Ellis Sanders*

**CERTIFICATE OF SERVICE**

    I hereby certify that on January 8, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to counsel of record.

*/s/ Emily Voshell*
Emily Voshell