IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                Plaintiff,<br><br>        v.<br><br>ZACKARY ELLIS SANDERS,<br><br>                                Defendant. | Case No. 1:20-cr-00143<br>Honorable T.S. Ellis, III<br><br>Pretrial conference: April 9, 2021<br>Trial: April 26, 2021 |

**DEFENDANT'S REPLY TO THE GOVERNMENT'S
RESPONSE TO DEFENDANT'S PROPOSED *VOIR DIRE***

Mr. Zackary Ellis Sanders, by and through counsel, respectfully submits this Reply to the Government's Response to Defendant's Proposal for *Voir Dire* (ECF No. 197). The Government fails to show why Mr. Sanders's proposal for *voir dire* is not required, including why it is not necessary to: 1) increase juror disclosure and candor, which will improve the quantity and quality of information available; and 2) allow jury selection to be done more safely by i) pre-screening and disqualifying in advance jurors who cannot be impartial, ii) reducing potential jurors' exposure to other members of the *voir dire* panel, iii) reducing questioning at the bench where people may not be able to social distance, and iv) speeding up the oral *voir dire* process.

First, the Government asserts, in a conclusory manner, that there "is nothing extraordinary in the nature of this matter that requires a different procedure" than the Court's standard practice for *voir dire*. ECF No. 197 at 1. The Government does not and cannot provide any authority for the requirement that a matter be "extraordinary" in order for a written questionnaire to be used. And the Government ignores the American Bar Association's

endorsement of written questionnaires as a means of producing a neutral jury.  ABA Criminal Justice Standards on Trial by Jury 15-2.2, 15-2.4 (3d ed. 1996), available from https://www.americanbar.org/groups/criminal_justice/publications/criminal_justice_section_archive/crimjust_standards_jurytrial_blk/; *see also* ECF No. 157 at 3 n.1 ("Standard 15-2.2 (Juror questionnaires) notes that '[i]n appropriate cases, the court, with the assistance of counsel, should prepare a specialized questionnaire addressing particular issues that may arise'" (quoting ABA Criminal Justice Standards on Trial by Jury 15-2.2 (3d ed. 1996)).

Where, as here, a written questionnaire is required to protect Mr. Sanders's constitutional rights under the Fifth and Sixth Amendments, it must be included as part of *voir dire*.  *Ham v. South Carolina*, 409 U.S. 524, 527 (1973); *Ristaino v. Ross*, 424 U.S. 589, 595 (1976); *Smith v. Phillips*, 455 U.S. 209, 217 (1982).  Because this case involves allegations that online communications of a sensitive nature were exchanged between individuals of the same sex, that the online communications of a sexual nature involved Bondage, Discipline/Domination, Submission/Sadism, Masochism ("BDSM") between individuals of the same sex, and that the online communications included the transmission and receipt of child pornography, an initial, specialized written juror questionnaire, or, in the alternative, asking the defense's proposed *voir dire* questions five at a time, is appropriate and necessary to protect juror privacy and thereby promote disclosure and candor.  ABA Criminal Justice Standards on Trial by Jury 15-2.4(e) (3d. ed. 1996) ("Jurors should be examined outside the presence of other jurors on sensitive matters or prior exposure to potentially prejudicial material").  While the Government correctly acknowledges that "homosexual contact," which presumably refers to physical or sexual contact, "is not an issue in the case," the Government does not dispute that the evidence that it will adduce at trial will suggest that Mr. Sanders has a sexual interest in men and BDSM.  Issues of

homosexuality, BDSM, child sexual abuse, and child pornography are all private and potentially awkward or painful subjects that are appropriate for *voir dire* because they are "inextricably bound up with the conduct of the trial." *Ristaino*, 424 U.S. at 597.

Second, the Government makes baseless objections to particular questions. Instead of the questions that Mr. Sanders proposes to uncover latent prejudices or implicit biases against people who are lesbian, gay, or bisexual (1-7, 23), the Government proposes that prospective jurors be asked only "whether they have any bias for or against homosexuals." ECF No. 197 at 2. Aside from being vague to the point of being meaningless and phrased in a way that people would be unlikely to respond candidly (as it would suggest they were either homophobic or suggest their sexual orientation), this question is inadequate because it is "broadly framed and not calculated to reveal latent prejudice." *Berthiaume v. Smith*, 875 F.3d 1354, 1359 (11th Cir. 2017). In a case where race was inextricably bound up in the issues at trial, prospective jurors could not simply be asked, for example, "whether they have any bias for or against" Black people; instead, the defense would be entitled to ask specific questions that could expose latent prejudice and implicit bias towards Black people. So too here. Mr. Sanders is entitled to specific *voir dire* questioning to expose latent prejudices and implicit biases towards people who are lesbian, gay, or bisexual.

The Government claims that questions about prospective jurors' attitudes towards BDSM (9-10, 26) are either "inappropriate" or "unnecessary" because "BDSM is not illegal." ECF No. 197 at 1-2. The standard for whether a *voir dire* question or line of inquiry is appropriate or necessary is not whether it asks prospective jurors about conduct that is illegal. *See Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991) ("Voir dire examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges").

3

For example, while it is not illegal to be gay or Black, it is appropriate to ask prospective jurors questions that would expose their attitudes towards people who are gay or Black where relevant to the case. Here, jurors' attitudes and experiences towards sex and kink, including BDSM, could preclude them from being fair and impartial given the allegations in this case.

The Government objects to a number of the defense's proposed questions on the grounds that they do not "suggest that a juror would be unable to be impartial." ECF No. 197 at 2. The Government appears to misunderstand that the questions Mr. Sanders proposes as part of the initial, written questionnaire are not meant to be the end of *voir dire*. Instead, such questions will allow the Government and defense to make informed decisions about exercising challenges for cause and peremptory challenges and asking prospective jurors additional questions during oral *voir dire* that would allow a determination of whether the jurors could or could not be impartial, all while promoting candor, increase disclosure, and protecting jurors' privacy. Given that this is a sexting case, where "contact is not an issue," jurors' attitudes towards sexting (21, 22) are plainly relevant to whether they can be neutral and impartial. Because the Government will likely attempt to introduce evidence about Mr. Sanders's use of the Tor Browser, *see* ECF Nos. 133 and 201, and use of mobile messaging applications such as Instagram, Telegram, iMessage, and Kik, and that all of the purported sexting (transmission and receipt of conduct that the Government claims is sexually explicit) is alleged to have taken place on mobile messaging applications, ECF No. 29, jurors' familiarity with such technologies and their attitudes towards such technologies (24, 25) are plainly relevant to whether they can be fair and impartial. As the Government's only two civilian witnesses were both teenagers at the time of the alleged offenses, whether prospective jurors "think that teenagers or adolescents are more likely than adults to be honest" (11) is plainly relevant to whether jurors can be neutral and impartial.

4

Prospective jurors' involvement in sexual abuse victim organizations (14) and attitudes towards adult pornography (19, 20) are also plainly relevant to whether jurors can be fair and impartial.

The Government objects to some questions because they touch "on" topics "which the Court will specifically instruct the jurors (15, 16, 28, 29)." ECF No. 197 at 2. Whether prospective jurors "think that someone facing multiple criminal charges probably did something wrong," (15), "think that someone facing multiple criminal charges involving children probably did something wrong," (16), "think that a defendant is more likely to be guilty if they don't take the stand and tell their side of the story," (28), or "think that a defendant should have to prove their innocence" are all relevant to whether they can be fair and impartial. It is important to determine whether jurors can or cannot be impartial in advance of trial, not after all of the evidence has been presented and the Court is instructing the jury on evidence it may have pre-judged because it could not be fair and impartial.

The Government stated no objection to Mr. Sanders's proposed *voir dire* questions 12, 13, 17, 18, 27, 30, 31, or 32.

Finally, the Government fails to respond to Mr. Sanders's argument that because *voir dire* will likely be conducted during a pandemic, including at a time when not all prospective jurors will have received vaccinations for COVID-19, his proposal for *voir dire* will allow jury selection to be done more safely by i) pre-screening and disqualifying in advance jurors who cannot be impartial, ii) reducing potential jurors' exposure to other members of the *voir dire* panel, iii) reducing questioning at the bench where people may not be able to social distance, and iv) speeding up the oral *voir dire* process. As the Government acknowledges, the Clerk's Office already asks prospective jurors initial questions, and so it would be logistically simple to add the additional questions Mr. Sanders has proposed. As this Court has acknowledged, there are

5

"difficulties surrounding . . . courtroom procedures during the Covid-19 pandemic," ECF No. 196 at 4, which Mr. Sanders's proposal for *voir dire* would help mitigate.

For all of these reasons, and the reasons set for in ECF No. 157, Mr. Sanders respectfully requests that the Court incorporate his proposed initial questionnaire into *voir dire*, conduct *voir dire* in a way that best promotes disclosure, candor, and the health of prospective jurors, and allow for sequestered, individual *voir dire* for prospective jurors who answer yes to particularly sensitive or potentially painful or embarrassing questions.

>Respectfully submitted,
>/s/
>Jonathan Jeffress (#42884)
>Emily Voshell (#92997)
>Jade Chong-Smith (admitted *pro hac vice*)
>KaiserDillon PLLC
>1099 Fourteenth St., N.W.; 8th Floor—West
>Washington, D.C.  20005
>Telephone: (202) 683-6150
>Facsimile: (202) 280-1034
>Email: jjeffress@kaiserdillon.com
>Email: evoshell@kaiserdillon.com
>Email: jchong-smith@kaiserdillon.com
>
>*Counsel for Defendant Zackary Ellis Sanders*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 14, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to counsel of record.

*/s/ Emily Voshell*
Emily Voshell

.