IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>v.<br><br>ZACKARY ELLIS SANDERS,<br><br>                Defendant. | Case No. 1:20-cr-00143<br>The Honorable Judge Ellis<br><br>Pretrial Conference: Apr. 9, 2021<br>Trial: Apr. 26, 2021 |

### MR. ZACKARY ELLIS SANDERS'S MEMORANDUM IN SUPPORT OF HIS MOTION TO MODIFY PROTECTIVE ORDER

Mr. Zackary Ellis Sanders, by and through counsel, respectfully moves this Court for an order modifying the April 27, 2020 Protective Order (the "Protective Order" or "P.O.") (ECF No. 28). Under the Government's cramped interpretation of the Protective Order, the order is preventing the defense from fulfilling its ethical and Sixth Amendment obligations to provide Mr. Sanders with the effective assistance of counsel. The Protective Order should accordingly be modified.

Modification of the P.O. is particularly important under the circumstances of this case. Based on information the defense has learned from its independent investigation, the law enforcement operation that resulted in the search warrant for the Sanders' family home was a large-scale operation where the FBI used substantively identical search warrant affidavits to obtain numerous—and perhaps dozens or more—search warrants. *See also* ECF No. 228 (noting that "information provided by a foreign law enforcement agency . . . to the [FBI] . . . is part of ongoing investigations and prosecutions"). The defense has further learned from its own investigation that the purported "tip" from the Foreign Law Enforcement Agency ("FLA") that

formed the primary basis for the affidavits was meant to describe generally the activities of a large number of Internet users and not specifically—*or even accurately*—Mr. Sanders's alleged conduct and included multiple IP addresses (not just the Sanders family's IP address).

The defense should be allowed to obtain information from cases involving defendants who were the subject of substantively identical warrant applications. Due to the Government's interpretation of the P.O., however, the defense cannot begin to do so, as the Government argues that Mr. Sanders is prohibited from sharing information regarding his own case that is contained in or derived from discovery materials, including the warrant affidavit. Accordingly, good cause exists to modify the Protective Order so that Mr. Sanders may share discovery material related to the application for the search warrant here with other defense counsel. In addition, the Court should modify the P.O. so as to clarify that the Protective Order does not apply to information identified from "other sources," *i.e.*, sources other than the discovery the Government has provided Mr. Sanders in this case.

## FACTUAL BACKGROUND

In April 2020, a Protective Order was entered that governs "all discovery material . . . and information contained therein . . . produced by the Government in discovery." ECF No. 28 at 1.

Since the time the P.O. was entered, the Government has interpreted the order in a manner that prevents the defense from investigating this case. Specifically, the Government has argued that the P.O. prohibits the defense from discussing with any third party the circumstances under which the FBI obtained the search warrant for the Sanders' family home, including, but not limited to: (1) the name of the target website that Mr. Sanders supposedly visited (and which, in turn, allegedly gave rise to probable cause); (2) the identity of the law enforcement operation that resulted in the warrant; or (3) the identity of the FLA that allegedly tipped off the

FBI regarding Mr. Sanders's IP address.  ECF No. 190 at 2-3.  In addition, the Government maintains that Mr. Sanders is prohibited from sharing information that is *already publicly available* and was obtained through independent defense investigation.  ECF Nos. 173 and 190.

As applied to Mr. Sanders, the Government believes that the P.O. covers not just discovery materials, but "███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████," ECF No. 190 at 4, regardless of whether such information is already publicly available.  For the reasons explained below, the Government's interpretation of the Protective Order is clearly improper; even to the extent the Court believes it is correct, however, the P.O. should be modified, as set forth below, so as to permit the defense to investigate Mr. Sanders's case and, in turn, effectively represent him.

## PROPOSED MODIFICATION OF PROTECTIVE ORDER

To protect Mr. Sanders's Fifth and Sixth Amendment rights and ensure defense counsel's ability to comply with its ethical duty of zealous representation, Mr. Sanders proposes modifying the Protective Order to make clear that Mr. Sanders is permitted to share copies of pleadings and discovery material with:

- "other defense teams that are representing clients who have been charged as a result" of the same investigation, where "defense teams in other cases [would] be subject to this Modified Protective Order."  Proposed Order, attached as Ex. 1. at 2.

- "public interest organizations that intend to file amicus briefs or expert affidavits," where public interest organizations would be prohibited from publishing copies of such materials and would be required to refer to the site as

3

the "Target Website," the operation as the "Operation," or "Operation II," and the foreign law enforcement agency as the "Foreign Law Enforcement Agency" in all public filings. *Id.* at 2-3.

The Protective Order should also be modified to state that it does "not apply to any information or material that Mr. Sanders independently obtained from other sources," *i.e.*, outside the Government's discovery productions in this case, and that the P.O. should not "be read to impose restrictions that would force the defense to violate its ethical duties or its obligations under the Sixth Amendment." *Id*. at 3.

## **DISCUSSION**

Good cause exists to modify the Protective Order in the manner the defense proposes. Under the Government's current interpretation of the P.O., the defense is prohibited from gathering facts necessary to representing Mr. Sanders effectively, including facts about the law enforcement operation that resulted in the search warrant for the Sanders' family home. *See United States v. Workman*, 2019 WL 276843, at *1 (W.D. Va. Jan. 22, 2019) ("a protective order under Rule 16(d) should not override a defendant's right to a fair trial").[1] Furthermore, the modifications proposed by Mr. Sanders would not jeopardize "any legitimate prosecutorial need" here, *see United States v. Ramey*, 791 F.2d 317, 321 (4th Cir. 1986), as it has been approximately 18 months since the Government obtained its "tip" from the FLA and approximately 20 months since the website at the heart of the operation was shut down by law enforcement. Given the time that has elapsed, it is not plausible that the name of the website, the law enforcement operation, or the FLA at issue remain "sensitive" to a degree defense counsel cannot perform

---

[1] Mr. Sanders disputes the Government's interpretation of the protective, and, for the reasons stated in ECF No. 181 and incorporated herein, has not been in violation of the Order at any time.

4

basic due diligence regarding the operation's nature and scope.[2] In addition, Mr. Sanders seeks only to share information with other defense counsel and public interest organizations who intend to file amicus briefs or expert affidavits—not with the general public. Allowing Mr. Sanders to communicate with similarly-situated defendants who were identified as part of the same law enforcement operation, while simultaneously making the protective order applicable to those other attorneys—as District Courts permitted with respect to a similar law enforcement operation, "Operation Pacifier"—is fully consistent with the Government's legitimate prosecutorial needs here. *See, e.g., United States v. Michaud*, Case No. 15-cr-05351-RJB, ECF No. 62 (W. D. Wa. Nov. 24, 2015), attached as Ex. 2 ("*United States v. Michaud* Protective Order").

I.  **The Protective Order Should Be Modified So That Defense Counsel May Conduct a Meaningful Investigation of Mr. Sanders's Case.**

Good cause exists to modify the Protective Order so that defense counsel's ability to investigate meaningfully and mount a defense on Mr. Sanders's behalf, including to suppress illegally obtained evidence against him, is not improperly constrained. Courts in this Circuit have found that good cause exists to modify a protective order where its terms are "burdensome and time-consuming." *United States v. Walker*, 2019 WL 4412909, at *12 (E.D.N.C. Sept. 13, 2019). Here, the Protective Order is far worse than burdensome; it is preventing Mr. Sanders from mounting an effective defense.

If the Protective Order is not modified and the Government's interpretation is upheld, defense counsel will not be permitted to share discovery related to the application for the search

---

[2] Given that the FLA has publicly named and described the operation in numerous Government publications, it remains unclear how revealing the name of the operation or the FLA would jeopardize ongoing investigations or prosecutions. ECF No. 181 at 5-6.

5

warrant with counsel for individuals similarly situated to Mr. Sanders, in order to, *inter alia*, confirm the scope of the operation and the FBI's use of a template affidavit. Such communication is necessary for defense counsel to discharge their duties under the Sixth Amendment and under the Rules of Professional Responsibility. *Rompilla v. Beard*, 545 U.S. 374, 387 (2005) ("It is the duty of the lawyer to conduct a prompt investigation other circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case") (quotation marks and citation omitted); *Strickland v. Washington*, 466 U.S. 668, 691 (1984) ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary"); *Williams v. Stirling*, 914 F.3d 302, 313 (4th Cir.), *as amended* (Feb. 5, 2019), *cert. denied*, 140 S. Ct. 105 (2019) (in determining whether defense counsel were effective, "[a] reviewing court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further") (parentheticals removed); *Coles v. Peyton*, 389 F.2d 224, 226 (4th Cir. 1968) ("Counsel must conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed"); Model Rules of Prof'l Conduct R. 3.3 cmts. 1-2 (2013) ("The advocate has a duty to use legal procedure for the fullest benefit of the client's cause . . . What is required of lawyers . . . is that they inform themselves about the facts of their clients' cases and the applicable law"). Other courts have recognized that good cause exists to modify protective orders and allow defense counsel to communicate with third parties in order to mount an effective defense and allow an accused to make informed decisions. *See, e.g.,* Ex. 2 (*United States v. Michaud* Protective Order).

The proposed modifications will allow defense counsel to investigate adequately the possibility (which the defense respectfully submits is a certainty) that Mr. Sanders's Fourth

Amendment rights were violated. Modifying the Protective Order would also "level the playing field," however slightly. *In re Kolon Indus. Inc.*, 479 F. App'x 483, 485–86 (4th Cir. 2012) (affirming district court's finding of good cause to modify the protective order). The ability to compare discovery received in Mr. Sanders's case with that of other accused individuals subject to the same law enforcement operation will help the defense demonstrate that this was a large-scale operation involving many Internet users; that the Special Agent's claims in the affidavit in support of a search warrant about this particular Internet user had language essential to the Magistrate Judge's finding of probable cause that was identical to affidavits used in other cases; and—most fundamentally—that there was no evidence of this Internet user's actual activity on the purported website (including no evidence to show that the Internet user ever went beyond the harmless homepage—the first and potentially only page a user would visit). ECF Nos. 137, 140, and 174. This would allow the defense to counter further the Government's suggestion to this Court that the FLA was supplying information about just one IP address and that—contrary to Paragraph 23 of the search warrant affidavit—there was no evidence that this one Internet user engaged in specific activity on the website. *See* ECF No. 43 at 1 ("█████████ █████████████████████████████████████████████████ ███████████") (emphasis added); ECF No. 70 at 2 n.1 ("█████████████ █████████████████████████████████████████████████████████ █████████████████████████████████████████████████████") (emphasis added). All of this is particularly important where, as here, until it sought to enforce its interpretation of the P.O., the Government never acknowledged that this case was part of a much larger investigation and has repeatedly refused to provide related information it is obligated to produce. *See* ECF Nos. 37, 48, 51, 75, 79, 88, 135, 137, 138, 140, 174, 176; *but see*

7

ECF No. 173 at 2 ("█████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████") (emphasis added). Given that the discovery material in this case is relevant to other ongoing prosecutions where the same allegations were made, information in such cases is clearly relevant and material to Mr. Sanders's defense.

## II. Modifying the Protective Order Will Not Undermine the Legitimate Interests Served By the Protective Order.

In support of its Consent Motion for Entry of Protective Order, the Government informed the Court that a protective order was necessary to protect "sensitive information regarding minors and an ongoing investigation." ECF No. 27 at 1. These objectives would in no way be compromised by Mr. Sanders's proposed modifications. First, the proposed modifications would not permit the sharing of any information regarding any of the allegedly affected minors in this matter. Second, as proposed, the modifications would only allow Mr. Sanders to share information related to the application for the search warrant with defense counsel for similarly situated individuals and public interest organizations who intend to file amicus briefs or expert affidavits. These modifications are narrowly tailored to allow defense counsel to discharge their ethical duties while protecting the Government's interests.

To the extent the Government argues that Mr. Sanders's proposed modifications to the Protective Order are objectionable because they could allow others to identify the Target Website, the law enforcement operation, and the specific FLA, Mr. Sanders reiterates that the modifications would only allow for the sharing with counsel for those *who are already defendants* and who would accordingly already be aware of the same information (having been identified as part of the same investigation by the FLA). Moreover, as explained in Mr.

8

Sanders's Opposition to the Government's Motion for Order to Show Cause and to Seal, the information the Government seeks to protect is already public. ECF No. 181. The FLA itself has publicly disclosed both its operation and coordination with partners, ECF No. 140-1 at 11, which includes the Federal Bureau of Investigation, ECF No. 140 at 5-6; ECF No. 181 at 7 n.7; ECF No. 43 (explaining affidavit in support of the search warrant describes "███████ ████████████████████"). The Department of Justice has repeatedly publicized its partnership with the FLA in investigating possible online and child sexual abuse offenses. ECF No. 140 at 5. And the investigation of the Target Website by law enforcement from various countries, including the United States, has already been reported in the media. ECF No. 181 at 5-6 n.4 (media reports about the investigation of the target website including U.S. law enforcement). Even without these media reports, presumably "computer-savvy offenders" are already on notice that they "may be under investigation in the United States." ECF No. 193 at 2; *see also* ECF No. 122 at 2 (publicly disclosing that the FBI had received data from a foreign law enforcement agency regarding multiple IP addresses "associated to individual who have accessed online Child Sexual Abuse and Exploitation material," "an online bulletin board dedicated to the advertisement[3] and distribution of child pornography that operated from approximately 2016 to 2019"). Under these circumstances, the Government's conclusory assertion that disclosure would cause harm appears baseless and there is no good cause for such information to even fall under the Protective Order. *Cf. In re Terrorist Attacks on September 11, 2001*, 454 F. Supp. 2d

---

[3] The target website did not advertise child pornography. *See* ECF No. 172, Ex. 1 (Homepage) and Ex. 4 (Announcements Page) (both of which demonstrate that nowhere on the website's homepage or announcement page did it allude to, describe, or advertise child pornography or any other illegal content).

220, 222 (S.D.N.Y. 2006) (Good cause exists "when a party shows that disclosure will result in a clearly defined, specific and serious injury").

### III. Mr. Sanders Would Not Have Consented to the Protective Order.

Mr. Sanders also asks that the Court take into account the serious, life-altering consequences Mr. Sanders is facing[4] and the fact that he would not have agreed to the Protective Order if he understood that the Government would withhold crucial discovery from him—which it continues to do. ECF Nos. 137, 140, 176. Mr. Sanders consented to the Protective Order in order to speed discovery and prepare his defense. Unfortunately, the Government has refused to provide discovery, or, as with the screenshots of the Target Website it provided on December 18, 2020, 224 days after Mr. Sanders initially requested them, delayed discovery so long as to prejudice severely Mr. Sanders's defense. ECF No. 176.

Wherefore, Mr. Sanders respectfully asks the Court to grant his Motion to Modify the Protective Order.

---

[4] Production of child pornography carries a mandatory minimum of 15 years in federal prison. *United States v. McCauley*, No. 19-4318, 2020 WL 7414398, at *4 (4th Cir. Dec. 18, 2020) (emphasizing the seriousness of a mandatory minimum of fifteen years). If Mr. Sanders were to be convicted at trial or plead guilty to the lead count (the Government's current plea offer), he would be unlikely to see his 63-year-old mother or 82-year-old father again outside of prison.

Respectfully submitted,

_____/s/_____
Jonathan Jeffress (#42884)
Emily Voshell (#92997)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C.  20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: evoshell@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

*Counsel for Defendant Zackary Ellis Sanders*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of January 2021, the foregoing was served electronically on the counsel of record through the U.S. District Court for the Eastern District of Virginia Electronic Document Filing System (ECF) and the document is available on the ECF system.

*/s/ Jonathan Jeffress*
Jonathan Jeffress