# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>ZACKARY ELLIS SANDERS,<br><br>        Defendant. | Case No. 1:20-cr-00143<br>Honorable T.S. Ellis, III<br><br>Pretrial conference: Apr. 9, 2021<br>Trial: Apr. 26, 2021<br><br>**HEARING REQUESTED** |

**SUPPLEMENT TO DEFENDANT'S MOTION TO COMPEL THE GOVERNMENT TO PRODUCE MATERIAL, OR, IN THE ALTERNATIVE, TO SUBMIT MATERIAL FOR IN CAMERA INSPECTION**

    The Government yesterday provided additional reasons for why the Court should grant Mr. Sanders's Motion to Compel (ECF Nos. 137, 140, 174): even after suppressing for 224 days two exculpatory screenshots of the target website's homepage and announcements page, ECF Nos. 174-1 and 174-4, the Government continued to suppress, until yesterday, January 25, 2021, two additional exculpatory screenshots of the target website's registration and login pages. Registration Page, attached as Ex. 1; Login Page, attached as Ex. 2.  These screenshots depict additional, entirely innocuous pages an Internet user could visit on the target website—and *would have to visit* before being able to view or download any illegal content at all.

    The two screenshots the Government disclosed yesterday are significant for at least four reasons.  First, given that the Special Agent had no evidence that the Internet user ever in fact logged in to the website or viewed any specific illegal content on the website, the screenshots

demonstrate that the Internet user's one-time visit to the website[1] was far more consistent with the Internet user visiting only an innocuous portion of the website and never viewing any illegal content.[2] The screenshots accordingly help demonstrate that Paragraph 23 is misleading on the core issue underlying the Affidavit. The four withheld screenshots conclusively show that there is a difference between a user accessing any page on the website and accessing child pornography on the website. The Government's intentional conflating of these different concepts has led the Court to draw erroneous conclusions regarding the evidence. *Compare* ECF No. 73 at 10 (Court incorrectly concluding that the Special Agent's addition of "via a website" in Paragraph 23 "adds no information *because it is obvious that the FLA's original tip describes an internet user's activity on a website*") (emphasis added)) *with* ECF No. 137-1 (September 11 Hearing Transcript) at 25 (Government admitting it "do[es]n't know precisely what the content is" that the Internet user allegedly accessed and could only describe it as "some sort of content") *with* ECF No. 89-20 (July 31 Hearing Transcript) at 20 (Government incorrectly asserting that "[t]here is no difference between the user access[ing] the website versus the user access[ing] child exploitation material on the website") (emphasis added).

Second, they further demonstrate that Special Agent Ford misled the Magistrate about the nature of the website. Contrary to what the Special Agent stated in Paragraph 15 of the Affidavit

---

[1] This assumes that Government even had evidence that this Internet user ever visited ▮▮▮▮▮, which is far from clear. *See* ECF No. 137 at 13-14; ECF No. 140 at 3-4.

[2] The truth of this case—as the Government well knows and has known from the beginning—is what the Special Agent wrote in his January 17, 2020 internal report: that the FLA's tip meant, at most, that the Internet user had visited some part of the website one time (down to the second): 02:06:48. ECF No. 45-1 (FD-1057) at 2. *The Special Agent knew that was at most the sum total of the FLA's (and, in turn, the FBI's) evidence*, and he certainly knew that the evidence *did not* consist of proof that the Internet user viewing (much less downloading) child pornography. The Government has obscured that truth from this Court, however, as it knows the true facts would entitle Mr. Sanders to a *Franks* hearing and, ultimately, suppression of the evidence against him.

2

in Support of the Search Warrant ("Affidavit"), the website did not "advertise" child pornography. *See* Affidavit ¶ 15 (stating that website was "dedicated to the advertisement . . . of child pornography."). The screenshots are proof that the Special Agent knew at the time he submitted his Affidavit that—far from "advertising" child pornography—the homepage, announcements page, registration page, and login page were all innocuous and were not suggestive of any illegal content whatsoever. The additional screenshots accordingly contradict the Court's prior rulings, *see, e.g.*, ECF No. 113 at 10, 16 (Court relying exclusively on four screenshots that the Government selectively disclosed in July 2020—of content that could only be viewed once a user went past the homepage, registered an account, and logged in—to conclude incorrectly that Mr. Sanders's claim that the website had legal and illegal pages "to be baseless," "not so," and "contradicted by the screenshots of the site provided by the FBI"), and constitute further reason for why the Court should grant Mr. Sanders's Motion to Compel the Government to Produce Material, or, in the Alternative, to Submit Material for *In Camera* Inspection (ECF Nos. 137, 140, 174).

Third, the screenshots further show that it is far more likely that someone who visited the target website one time, and never returned, did not intend to view illegal content. They reveal additional innocuous information that a search engine would be able to see in generating search results, so a person could click on pages accessible to a non-registered user without having an interest in or attempting to view child pornography, contrary to what the Special Agent suggested in his Affidavit. *See, e.g.,* Affidavit ¶ 27 (suggesting that anyone who visited the target website intended to view illegal content); *id.* at ¶¶ 6, 28-30, 37-46 (suggesting that anyone who downloaded the Tor Browser and visited the target website intended to view child pornography). Someone who visited this site only once, and never returned, most likely did not

3

understand what it offered, was not interested in registering an account, or found it was not what they were looking for.

Finally, the screenshots demonstrate that the Government continues to suppress evidence that directly contradicts the Special Agent's Affidavit, its own representations to this Court, and, in turn, this Court's findings. ECF No. 137 at 6-8; ECF No. 174 at 12-18. While the Government suppressed all four of the exculpatory screenshots, Mr. Sanders languished in jail, contracted COVID-19, and was held in isolation without access to his defense team. Mr. Sanders continues to be detained while the Government withholds additional evidence that supports the suppression of all evidence against him. Given that Mr. Sanders has requested material that the Government has not denied exists and has made a plausible showing that it is material to his defense and exculpatory, the factual basis for granting his Motion to Compel is indisputable.

## BACKGROUND

This case stems from an exhaustive search of the Sanders's family home and all electronic devices within it. The warrant for the search was based on an affidavit that included an uncorroborated, vague, and conclusory tip from an FLA that an IP address "access[ed] online child sexual abuse and exploitation material" on one date, at one time, Intel Log, Ex. 2 to ECF No. 37. The FBI, apparently on its own, dressed up the tip by adding that the Internet user accessed such material "via a website" that was "dedicated to the advertisement . . . of child pornography." Affidavit ¶¶ 23, 15.

From the beginning of this case, Mr. Sanders disputed the FBI's characterization of the website as "advertising" child pornography and requested discovery that would show that an Internet user could visit entirely legal portions of the website without understanding what content

was contained further within the website after an Internet user took many additional steps. Mr. Sanders first requested such screenshots in a letter on May 8, 2020, asking the Government to provide "all material related to the layout of the target website, including, but not limited to, . . . the pages that would be available to a non-registered user." ECF No. 174-5 at 1; *see also* ECF No. 174 at 8-12, ECF No. 137 at 4-6. Until December 18, 2020, the Government refused to provide such screenshots and instead represented to the Court that Mr. Sanders's discovery requests were baseless and that his arguments about the nature of the target website and the true state of the Government's evidence about the Internet user's purported activity on the website (or lack thereof) were faulty, all while sitting on four screenshots that supported Mr. Sanders's arguments and directly contradicted the Government's position. ECF No. 174 at 12-14.

When the Government finally, on December 18, 2020, revealed that both the homepage—the first and potentially only page an Internet user would visit—and the announcements page displayed only legal content and did not advertise child pornography,[3] and were not even suggestive of any illegal content, ECF Nos. 174-1 and 174-4, it nevertheless continued to withhold two additional screenshots that demonstrated that even if a curious

---

[3] This was contrary to what the Government and this Court had said on a number of occasions in the past. *See, e.g.,* ECF No. 15 at 1 (Government representing that "an investigation . . . revealed that an individual *accessed a website that advertises child pornography*") (emphasis added); ECF No. 57 (Government representing that the target website was "known by law enforcement to *advertise* [child sexual abuse material]") (emphasis added); ECF No. 101 at 26 (Government noting that while Mr. Sanders "asserts that the Affidavit misleadingly described the Target Website as dedicated to the . . . advertisement of child pornography, . . . the only basis he appears to have for his claim is . . . a post on the site stating that it was created to host images and videos of '18 (twinks) and younger'"); ECF No. 73 at 11 (Court relying heavily on Government's assertion that "evidence showed that an individual 'accessed a website that *advertises* child pornography'" to deny Mr. Sanders's initial motion to compel) (emphasis added); ECF No. 113 at 16 (Court concluding incorrectly, without the benefit of the four innocuous screenshots, that the Special Agent's "description of the [target] website is accurate and without any materially misleading omissions").

Internet user went deeper into the website, there were still more pages that also contained only innocuous, legal content. These screenshots were responsive to Mr. Sanders's May 8, 2020 request. ECF No. 174-5 at 1; *see also* 174-6, 174-7, 174-8 (additional efforts by Mr. Sanders to obtain, *inter alia*, screenshots of the target website).

On January 22, 2021, the defense again reiterated its previous requests for additional screenshots and noted that the Government was continuing to "withhold at least a third screenshot," "the 'Register' page referenced in Paragraph 18 of Special Agent Ford's Affidavit." January 22, 2021 Discovery Letter, attached as Ex. 3.

In response to Mr. Sanders's latest request, on January 25, 2021, the Government finally disclosed screenshots of the registration page and the login page. The two additional screenshots establish that even if an Internet user went beyond the homepage to register an account, Ex. 2, or even to login, Ex. 3, both of those pages were devoid of illegal content. These screenshots are important given that the Special Agent had no actual evidence to show that the Internet user in this case, on the one-time the Internet user purportedly visited the website, ever viewed any specific content that was illegal. Accordingly, the scant evidence that the Special Agent had at the time he submitted his Affidavit was far more consistent with an Internet user viewing only (and intending to view only) innocuous content, as opposed to going much further and to the point of being able to view illegal content.

## DISCUSSION

The Government's repeated efforts to suppress information helpful to Mr. Sanders show that the Government has not taken its discovery obligations seriously and that this Court's intervention is required. Had the Government timely produced the four innocuous screenshots, when Mr. Sanders first requested them on May 8, 2020, during the litigation of Mr. Sanders's

previous motions to compel (ECF Nos. 37, 88) and motions to suppress (ECF Nos. 81, 83, 85, 90), this Court would have seen that the Special Agent materially misled the Magistrate about the nature of the website, the Internet user's purported activity, the state of the Government's evidence, and what inferences were reasonable to draw from the FLA's tip. Specifically, the Court would have understood that an Internet user could visit the target website without viewing any illegal content or even understanding that the website contained illegal content deep within it; that the Government's evidence suggested it was far more likely that the Internet user had viewed one of the innocuous pages and not any illegal content; and that the Special Agent knew that when he submitted his Affidavit, as the Special Agent himself surely had these screenshots at that time (as the FBI captured these screenshots in January 2019, more than a year before the Special Agent submitted his Affidavit). Instead, this Court was led into drawing numerous incorrect conclusions regarding the website, what an Internet user viewed, and what an Internet user intended to view. ECF No. 107 at 6 (concluding that the Court had "correctly" concluded there was "no evidence . . . that Special Agent Ford thought [the Internet user] . . . did not view child sexual abuse and exploitation material"); ECF No. 113 at 10 (concluding, based on the four screenshots the Government selectively disclosed and described in the Affidavit, that the Internet user's "purpose was to access the website *and its illegal content*") (emphasis added). Nonetheless, in disclosing the registration and login pages on January 25, 2021, the Government made the incredible claim that neither screenshot was "material or relevant to this case under any applicable discovery standard." January 25, 2021 Email, attached as Ex. 4.

   In light of the Government's repeated efforts to conceal evidence critical to Mr. Sanders's motions to suppress, it is clear that the Government has continued to fail in its duty to be candid about the true state of its evidence and the inferences that the Court should draw from it. As a

result, this Court should order the Government to produce the material it continues to withhold. Specifically, the Government continues to suppress, *inter alia*:

(1) How Special Agent Ford linked Mr. Sanders to ▓▓▓▓▓ (the "target website") in the first instance, as although the Government has purported to provide Mr. Sanders with the entire "tip," *there is no document establishing that link*;

(2) Related material demonstrating that Special Agent Ford understood when he submitted his Affidavit that there was no evidence of Mr. Sanders viewing or downloading illegal material, as Paragraph 23 of the Affidavit clearly suggested.

ECF No. 137 at 2.

Given the Government's conduct with respect to the screenshots, its well-worn claim that Mr. Sanders is simply "fishing" for additional information cannot be taken seriously. In its Opposition to Mr. Sanders's initial Motion to Compel, the Government adamantly maintained that Mr. Sanders, in seeking discovery, including a screenshot of the innocuous homepage, was only trying to "fish" for information, that Mr. Sanders's view was "unsupported," and that the target website "advertise[d] child pornography." ECF No. 43 at 1; *see also id.* at 19 ("The defendant's sole interest . . . is to fish for information . . . the defendant speculates that the government must be withholding some additional, unspecified information . . . the defendant is only guessing as to what other material exists"). Indeed, in the Government's Opposition, "speculative" appeared seven times, "conclusory" appeared eight times, and "fish" or "fishing expedition" appeared nine times, ECF No. 43, *even though the Government was referring to evidence that was in its possession all along*. The Government continued to argue that Mr. Sanders's requests were "nothing more than . . . an impermissible fishing expedition to find some hypothetical document or communication to support his otherwise unfounded theories," despite sitting on evidence that it well knew supported the defense's position. ECF No. 57 at 6; *see also* ECF No. 70 at 6 (similar). The Government dismissed Mr. Sanders's requests, including for the

8

innocuous website screenshots, as "theoretical, "premised on semantics and conjecture," and told this Court it "should not permit [Mr. Sanders] to base requests for further discovery *on the faulty premise that he is right*." ECF No. 70 at 2 (emphasis added).

## CONCLUSION

Given the Government's track record in suppressing relevant and exculpatory evidence that Mr. Sanders has repeatedly requested, representing to this Court that there was no basis for Mr. Sanders's claims when it knew well there was, and disclosing only a trickle of additional material while disclaiming any legal or ethical obligation to do so, the defense believes that this matter can be more expeditiously resolved without a hearing, but if this Court believes a hearing is required, Mr. Sanders has previously requested one.

Accordingly, this Court should order the Government to produce the requested information. Even if this Court finds that Mr. Sanders has not made the requisite materiality showing, Mr. Sanders has made a plausible showing that the information exists, and respectfully he is therefore entitled to *in camera* inspection.

Respectfully submitted,

/s/
Jonathan Jeffress (#42884)
Emily Voshell (#92997)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C. 20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: evoshell@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

*Counsel for Defendant Zackary Ellis Sanders*

9

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of January 2021, the foregoing was served electronically on the counsel of record through the U.S. District Court for the Eastern District of Virginia Electronic Document Filing System (ECF) and the document is available on the ECF system.

*/s/ Jonathan Jeffress*
Jonathan Jeffress
