IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>ZACKARY ELLIS SANDERS,<br><br>        Defendant. | Case No. 1:20-cr-00143<br>Honorable T.S. Ellis, III<br><br>Pretrial conference: Apr. 9, 2021<br>Trial: Apr. 26, 2021<br><br>**Hearing Requested** |

## DEFENDANT'S REPLY TO GOVERNMENT OPPOSITION TO MOTION TO MODIFY PROTECTIVE ORDER

  Mr. Zackary Ellis Sanders, through counsel, respectfully submits this Reply to the Government's Opposition (ECF No. 244) to his Motion to Modify the Protective Order (ECF No. 230). The Government's grounds for opposing modification of the protective order ("P.O.") are disingenuous and are not based in fact. This Court should grant Mr. Sanders's modest request to modify the P.O. so that he can investigate this case meaningfully and independently and confront the witnesses and evidence against him. This Court's failure to do so would be an abuse of discretion.

## INTRODUCTION

  The Fifth and Sixth Amendments entitle Mr. Sanders to investigate meaningfully the Government's violation of his Fourth Amendment rights, and his defense counsel are constitutionally and ethically obligated to do so. Those rights and obligations do not cease upon the denial of pretrial motions. *See, e.g., Rompilla v. Beard*, 545 U.S. 374, 387 (2005) ("It is the duty of the lawyer to conduct a prompt investigation other circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case") (quotation marks and

citation omitted); *Coles v. Peyton*, 389 F.2d 224, 226 (4th Cir. 1968) ("Counsel must conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed"); Model Rules of Prof'l Conduct R. 3.3 cmts. 1-2 (2013) ("The advocate has a duty to use legal procedure for the fullest benefit of the client's cause . . . What is required of lawyers . . . is that they inform themselves about the facts of their clients' cases and the applicable law").

Contrary to what the Government suggested in its Opposition, it is not entitled to control and limit the entire universe of facts available to Mr. Sanders, and this Court cannot permit it to do so. To date, the Government has sought to suppress any evidence that contradicts the affidavit in support of the search warrant ("Affidavit"), while selectively disclosing evidence that, only when viewed in isolation, appeared to corroborate its claims. *See* ECF Nos. 174, 241. Given that the Government continues to suppress information to which Mr. Sanders is entitled, independent investigation is particularly critical in this case. *See* ECF Nos. 137, 140, 174, 241.

First and foremost, Mr. Sanders seeks leave to exchange limited information related to the Government's basis for applying for the search warrant with other attorneys who are representing defendants who have already been charged as part of the same nationwide operation. Contrary to the Government's claims, Mr. Sanders does not seek modification of the P.O. "so that he can *widely* share sensitive material and sealed documents." ECF No. 244 at 1. To the contrary, the individuals with whom he seeks to share information are attorneys who are officers of the court in their respective jurisdictions, and who represent defendants who have *already* been charged.[1] Those attorneys would agree to be bound by the protective order. They are already aware that the information leading to the search of their clients' homes was provided

---

[1] Mr. Sanders withdraws his request to share information with public interest organizations. Mr. Sanders will re-raise that issue if and when it becomes ripe.

by the foreign law enforcement agency ("FLA"). The requested modification of the P.O. will not result in the public disclosure of discovery material or other sensitive information. Granting Mr. Sanders's request will therefore neither eviscerate the P.O. nor jeopardize ongoing investigations as the Government wrongfully claims.

Second, the information the defense seeks to share with other attorneys is limited to evidence directly refuting the Government's claim, and more importantly, this Court's previous ruling that: (1) the Magistrate Judge had an adequate and substantial basis for finding probable cause; and (2) the Affidavit contained no material misrepresentations or omissions. ECF No. 113. Although counsel respectfully disagrees that Mr. Sanders has failed to make the requisite substantial preliminary showing that Special Agent Ford made "a material false statement knowingly and intentionally, or with reckless disregard for the truth," *id.* at 1, this Court should not be seen to countenance the Government's attempt to prevent him discovering evidence needed to make that showing when measures can be put into place to assure that sensitive information remains protected. Nor should the Court preclude Mr. Sanders from unearthing information needed to prove that the FLA used a Network Investigative Technique ("NIT") to interfere with, access, search or seize data from a computer in the United States in order to obtain the Sanders family's IP address—and that the FBI knew that. The Fifth Amendment entitles Mr. Sanders to due process, which does not permit procedural hurdles meant to bar a defendant from challenging the admissibility of the evidence against him. Finally, the Sixth Amendment guarantees Mr. Sanders the right to confront the witnesses and evidence against him. The evidence he seeks to discover is the *cause* for the accusation against him, or put another way, evidence central to the legitimacy of the search warrant.

Finally, Mr. Sanders asks this Court to clarify that the P.O. does not apply to publicly available materials that were *not* provided in discovery, so that he can make use of such publicly available information in asking questions of potential witnesses, making records requests, and investigating this case. In public filings associated with this case, Mr. Sanders would nonetheless still consent to redacting the names of the target website, operation, and foreign law enforcement agency, so that a member of the general public could not identify them, because the Government considers such information to be especially sensitive but not because that information is subject to the P.O.

The Government's Opposition does not respond to the merits of Mr. Sanders's specific and modest request. The Government has only raised concerns not implicated by Mr. Sanders's actual request and made arguments irrelevant to this Court's resolution of Mr. Sanders's Motion.

## **MR. SANDERS'S ACTUAL REQUEST**

Contrary to what is suggested by the Government's Opposition, Mr. Sanders's Motion reflects a modest request to modify the P.O.: by sharing copies of discovery material and related pleadings pertaining only to the Government's application for the search warrant with other officers of the court who represent defendants who were identified as part of the same operation and were charged as a result. The April 27th Protective Order (ECF No. 28) and the Modified Protective Order (ECF No. 230-1) would apply to these attorneys and would preclude them from making publicly available any of the discovery material or pleadings. Accordingly, these modifications would allow Mr. Sanders to investigate this case but would not result in the public disclosure of the actual names of the target website, operation, or FLA.

Mr. Sanders has also requested that the P.O. be modified to make clear that it does *not* govern "information or material that Mr. Sanders independently obtained from other sources,"

such as Department of Justice press releases, published reports, and news articles that are available to any member of the public, and that it should *not* "be read to impose restrictions that would force the defense to violate its ethical duties or its obligations under the Sixth Amendment." ECF No. 230-1 at 3. Such clarification is necessary to Mr. Sanders's ability to investigate, given the Government's cramped interpretation of the P.O. as covering "any statements, documents, or exhibits that . . . explicitly identify the FLA or the website," regardless of whether such information is already publicly available. ECF No. 190 at 4. Because such an interpretation precludes Mr. Sanders from investigating this case at all—including by speaking with potential witnesses and making records requests—this Court should grant Mr. Sanders's modest request.

## **DISCUSSION**

### **I.  THERE IS GOOD CAUSE TO MODIFY THE PROTECTIVE ORDER.**

Modifying the P.O. is necessary for Mr. Sanders to effectively investigate what the tip actually meant, the FBI's basis for the search warrant, and/or the Special Agent's state of mind when he submitted the Affidavit. *See, e.g.,* ECF No. 37 (Motion to Compel) at 10; ECF No. 43 (Gov't Opp'n to Motion to Compel); ECF No. 100 (Gov't Opp'n to Renewed Motion to Compel); ECF No. 167 (Gov't Opp'n to Motion to Compel).

Knowing what he knows now, Mr. Sanders would not have consented to the P.O. At the time Mr. Sanders consented in May 2020, he had not yet received the Affidavit and had no reason to suspect that the Affidavit in his case was substantively identical to affidavits filed in other similar cases, or that the majority of the Affidavit may not have been written by Special Agent Ford, which would demonstrate the lack of particularized evidence about Mr. Sanders's interest in child pornography or activity on the target website. Nor could he have known that the

5

Government would argue, or the Court would come to rely on, rank speculation that he ever went beyond the website's nondescript homepage to view illegal content. In May 2020, Mr. Sanders could not have predicted that the Government would withhold critical discovery from him, require him to repeatedly move to compel the production of exculpatory material, or that the Government would interpret the P.O. to apply to his use of publicly available reports and news articles to investigate his case.

This Court should not maintain the current P.O, and thereby prevent Mr. Sanders from thoroughly investigating this case and demonstrating to this Court why the Government's representations, and this Court's prior rulings, were incorrect. The terms of the current P.O. are unnecessarily burdensome and therefore must be modified to permit Mr. Sanders to investigate this case. See *United States v. Walker*, 2019 WL 4412909, at *12 (E.D.N.C. Sept. 13, 2019).

**A. The protective order should be modified to assure that Mr. Sanders is afforded the fully panoply of constitutional protections to which he is entitled.**

The discovery materials Mr. Sanders seeks to share with other attorneys are very limited in number. For this Court to deny Mr. Sanders the ability to do so would be an abuse of discretion. With respect to its application for a search warrant, the Government has only disclosed three single-page documents from the FLA (ECF Nos. 86-1, 86-2, 86-3), one report authored by Special Agent Ford (ECF No. 45-1), and Special Agent Ford's Affidavit (ECF No. 86-5).[2] *See e.g.*, ECF No. 43 at 16 (describing the information the FLA provided to the FBI as "limited"); ECF No. 70 at 2 ("Over the course of a few months in 2019, the FLA provided three documents to the FBI as lead information"). Additionally, on July 27, 2020, the Government

---

[2] The Affidavit does not name the target website, operation, or FLA. At a bare minimum, Mr. Sanders should be permitted to share the Affidavit and redacted versions of the "tip" documents and report with the other attorneys given that doing so would not disclose the information that the Government claims remains sensitive.

selectively disclosed four screenshots of the target website (ECF Nos. 84-9, 84-10) that an Internet user could view only *after* visiting the innocuous homepage and taking several additional steps.

Accordingly, the Government's assertion that the information he seeks to obtain through independent investigation has already been provided to him is incorrect. Mr. Sanders is seeking information establishing that the Government relied on the same "limited" "lead information," ECF No. 43 at 16, ECF No. 70 at 2, from the FLA to craft a template affidavit that provided the basis for the search warrant in many cases, including the Affidavit in this case, as opposed to developing particularized probable cause as to each defendant.

The Government nevertheless takes the position that this Court should limit Mr. Sanders's ability to further substantiate (1) the use of an NIT by the FLA, (2) that the "tip" that was purportedly specific to Mr. Sanders was identical to the "tip" in cases involving numerous other Internet users, and (3) that the affidavits in those cases are substantively identical to the Affidavit in this case—particularly as it relates to evidence that Mr. Sanders engaged in specific activity on the website. *Compare* Affidavit ¶¶ 23, 24 (alleging that "a user of IP address . . . accessed online child sexual abuse and exploitation material via a website . . . [where] users were required to create an account (username and password) in order access the majority of the material") *with* ECF No. 43 (Gov't Opp'n) ("[A]t no point does the SW Affidavit state that the defendant had registered an account on this website, nor does it state that the defendant accessed any specific material on the site beyond the material described in the FLA's tip [in Paragraph 23]"), ECF No. 70 at 2-3 n.1 ("The tip does not state nor has the United States alleged that the defendant shared or accessed . . . specific files"). Mr. Sanders should be permitted to show that the Affidavit was intentionally written to obscure the nature of the tip and what it really meant.

7

Mr. Sanders should also be permitted to prove that the FLA had no evidence that he had viewed any illegal content, but was instead describing generally the activities of a large number of Internet users on a number of websites, and further, that the Special Agent knew that to be the case at the time he submitted his Affidavit.³ *See* ECF No. 37 at 7-8, 12-13; ECF No. 86 at 28-29. That is undoubtedly why the Special Agent wrote in his January 17, 2020 internal report that the FLA's tip meant, at most, that the Internet user had simply visited the target website, one time, at one second. ECF No. 45-1 (FD-1057) at 2. As his internal report makes clear, the Special Agent knew the FBI had no actual evidence that Mr. Sanders ever went beyond the homepage—the first and potentially only page an Internet user might visit. Notably, while the Government has apparently succeeded in convincing this Court that Mr. Sanders has engaged in "wishful speculation," ECF No. 244 at 9, in arguing that the IP address was only used to access the homepage of the Target Website, it has never claimed to have evidence that Mr. Sanders actually visited any particular page on the website, or that it undertook any investigation to corroborate its suspicion that Mr. Sanders was interested in child pornography. At best, the Government has engaged in the same form of "wishful speculation" that Mr. Sanders has been accused of indulging. ECF No. 137-1 (September 11 Hearing Transcript) at 25 (Government

---

³ Although the Court has repeatedly denied the defense the opportunity to examine this evidence, there is every reason to believe, based upon the available evidence, that the Special Agent was aware that the FLA originally provided a large number of IP addresses to the FBI, but that separate Intel Logs (*see, e.g.,* ECF No. 86-1) were generated for each individual IP address to avoid revealing the scope of the operation (the number of Internet users whose activity was generally described) and the name of the target website (substituting the name of the target website with "online child sexual abuse and exploitation material"). That would explain, *inter alia*, why the Internet user's IP address in the Intel Log (ECF No. 86-1) is a different font and font size than the rest of the text, which suggests it was copied and pasted from a list of IP addresses. ECF No. 86 at 28-29; ECF No. 86-7 (Fourth Declaration of Dr. Matthew Miller) at 8-9 ("The text [of the IP address] is in Calibri size 12 font, while the rest of the text in the Paragraph is Verdana size 11.04 font").

admitting it "do[es]n't know precisely what the content is" that the Internet user allegedly accessed and could only describe it as "some sort of content"). The Government's repeated suggestion that Mr. Sanders viewed any particular illegal content or took the necessary prerequisite steps to do so is itself rank speculation, pure and simple. *Compare* ███████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ; *see also* ECF No. 86-3 (FLA Report) (identifying five illegal images/videos that someone other than the Internet user in this case was alleged to have shared and/or accessed). While merely visiting the nondescript homepage of the target website was a necessary precursor, evidence that the defendant subsequently registered, logged in, and took several additional steps to view child pornography, is necessary—at a bare minimum—to establishing probable cause. *See* ECF No. 81 (Motion to Suppress for Lack of Probable Cause) at 10-11.[4] Indeed the Fourth Circuit recently held that

> in a case based purely on an IP address connecting with a URL, probable cause may be hard to establish absent other incriminating evidence. But that is not the case before us because such evidence exists here: whoever clicked did so on the

---

[4] The FLA's tip did not provide that the Internet user in this case had an account on *any* child sexual abuse dark website, let alone the target website. ███████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███. This Court's theory that the number of steps required to visit the target website reflects an intent to view illegal content is also unsupported in fact. *See* ECF No. 84 at 17-21; ECF No. 84-7 (Declaration of Seth Schoen) at 5-9 (Describing the steps required to download and use the Tor Browser, which are the same number of steps and are as easy to do as downloading and using another non-default browser like Firefox or Google Chrome); ECF No. 112 (Google antitrust case demonstrates why people have good reason to download and use a non-default browser, including the Tor Browser).

> same day that the link was advertised in a closed forum [on Tor] dedicated to child pornography.

*United States v. Bosyk*, 933 F.3d 319, 328 (4th Cir. 2019). In *Bosyk*, the "critical fact" was the timing—that is "the abbreviated time frame, which lessens the likelihood that Bosyk's IP address accessed the link independently of [the Tor forum posting on] Bulletin Board A[, which displayed thumbnail images of what was unambiguously child pornography and a link to a file-sharing website where such content could be downloaded]." *Id*. at 325, 330. Unlike *Bosyk*, the Government has alleged no "*critical additional fact*" that Mr. Sanders intended to click on and download specific files that were obviously child pornography. ECF No. 109 (Notice of Filing).

Denying Mr. Sanders the ability to conclusively make his case would be an abuse of discretion.

> **B. Mr. Sanders should be permitted to share limited materials with other officers of the court, who represent other individuals who were identified as part of the same investigation and have already been charged, who agree to be bound by the protective order.**

Mr. Sanders should be permitted to share the limited materials related to the application for a search warrant with officers of the court, including federal public defenders, who represent other individuals who have already been charged as a result of the same investigation. These lawyers and their clients are already aware of the law enforcement operation and information provided by the FLA. These officers of the court would also be bound by the P.O. and would not be permitted to make those materials publicly available. The Government's suggestion that there is no reason to believe that officers of the court will follow this Court's order is wholly without basis and is an argument that could be employed to justify withholding discovery material from defense counsel in every case. *See United States v. Michaud*, Case No. 15-cr-05351-RJB, ECF No. 62 (W.D. Wa. Nov. 24, 2015) (permitting attorneys representing different defendants to

communicate in a nationwide investigation involving technology to de-anonymize a large number of users), attached as ECF No. 230-2; *see also* ECF No. 244 (Gov't Opp'n) at 9-10 (Government conceding that this was a large-scale operation involving many Internet users).  In *Michaud*, modifying the protective order allowed attorneys representing clients identified under Operation Pacifier to communicate about limited information to investigate their cases when such attorneys could not otherwise be made part of the defense team.  Permitting the sharing of information under the terms of a modified protective would not jeopardize "any legitimate prosecutorial need."  *See United States v. Ramey*, 791 F.2d 317, 321 (4th Cir. 1986).

### C. The Government's concerns about the workability of the proposed changes are unfounded.

The Government claims that the P.O. should not be extended to other officers of the court because Mr. Sanders has not identified with sufficient specificity exactly who would receive materials, there would be no "practical way to determine whether these third parties [*i.e., officers of the court*] are disseminating this information to others or publicly disclosing sensitive details of the investigation," and the Government is unclear as to "what recourse the Government would have over an individual . . . who is not a party to this case."  ECF No. 244 at 8.  Even if that were true, those concerns can and have been addressed and do not render the protective order unenforceable.

First, the existing protective order applies to "attorneys of record," "investigators, paralegals, law clerks, experts, and assistants for the attorneys of record," ECF No. 28 at 1, but Mr. Sanders is not required to identify each paralegal, law clerk, expert, or assistant who comprises the defense team;  it is sufficiently clear, nonetheless, who the protective order applies to.  If the protective order were extended to the other officers of the court he identified, it would further apply to:

11

> Other defense teams [*i.e.,* attorneys of record] representing clients who have been charged as a result of the same investigation, i.e. an investigation stemming from a Foreign Law Enforcement Agency's tip to the Federal Bureau of Investigation that defendants accessed "online child sexual abuse and exploitation material, with an explicit focus on the facilitation of sharing child abuse material (images, links and videos)," and where "[u]sers were required to create an account (username and password) in order to access the majority of the material," ECF No. 122 at 2, and/or were identified as having accessed the Target Website, "an online bulletin board dedicated to the advertisement and distribution of child pornography that operated from approximately 2016 to June 2019," ECF No. 122 at 2.

ECF No. 230-1. While Mr. Sanders does not identify each attorney, it is nonetheless sufficiently clear who the protective order would apply to.

There is no reason to believe that the officers of the court who became subject to this protective order would engage in contempt of court and violate it by disseminating the materials to others or publicly disclosing the names of the website, the operation, or the foreign law enforcement agency. Just as the Government has no way of determining whether anyone who is already subject to the protective order—*i.e,* any attorneys of record, investigators, paralegals, law clerks, experts, and assistants for the attorneys of record—is disseminating this information to others or publicly disclosing sensitive details of the investigation, the assumption is not that they would or are. Equally, it cannot be that officers of the court would plan to violate a court order, sabotage their professional reputations, and open themselves up to personal repercussions for no reason.

The recourse, as in any instance where someone who is subject to the protective order is in violation, is to move for them to be "held in contempt of court, and/or . . . subject to monetary or other sanctions as deemed appropriate by this Court." ECF No. 28 at 2.

### D. The Government's claims that the modifications would cause other targets of this investigation to flee or destroy evidence are disingenuous.

The Government's claims that modifying the P.O. would "alert the targets of . . . ongoing investigations and provide them with an opportunity to destroy evidence or flee," ECF No. 244 at 5, are also unfounded. As described above, the modifications Mr. Sanders has requested would not result in the public disclosure of the names of the target website, operation, or FLA, and Mr. Sanders would continue to redact such information in public filings and exhibits to protect information that the Government considers to be sensitive but is not otherwise subject to the P.O.

Thus, given that Mr. Sanders only seeks to share material with other officers of the court, not the general public, it is clear the Government's concerns are vastly overstated. The name of the target website has already been "made public," and that public information has already "alert[ed]" "targets who accessed . . . material on the site that they may be under investigation" and "provide[d] them with an opportunity to destroy evidence or flee."[5] ECF No. 244 at 6. This

---

[5] There have already been many public reports and news articles describing the cooperation between the FLA and the U.S. government in investigating online offenses, including child pornography, ECF Nos. 135-5, 135-6, 135-7; where the FLA names and describes the operation, ECF Nos. 135-1, 135-2, 135-3; and where the target website is named as the subject of an investigation involving U.S. law enforcement, see, e.g., ■■■

13

is therefore not a case where "improperly disclosed" information would "identify individuals who have not yet been charged by the United States." *United States v. Chow,* No. CR 14-00196, 2014 WL 2093488, at *1 (N.D. Cal. May 19, 2014). Furthermore, the FLA has previously been identified as a source of and partner to the FBI's investigations. ECF No. 140 at 5; *supra* at 13 n.5. The use of already public information and the non-public disclosure of information to officers of the court would not reveal "details, sources, and methods of ongoing law enforcement investigations," including of the sensitivity of how "undercover operatives identify and communicate with suspected terrorism supporters on social media platforms and the identity of those operatives." *United States v. Jones,* No. CR2000634001PHXDWL, 2021 WL 24585, at *1 (D. Ariz. Jan. 4, 2021), *reconsideration denied,* No. CR2000634001PHXDWL, 2021 WL 229269 (D. Ariz. Jan. 22, 2021).

## CONCLUSION

Mr. Sanders has shown there is good cause for the protective to be modified. The Government has failed to show that disclosure of a limited set of information to other officers of the court would "result in a clearly defined, specific and serious injury." See *In re Terrorist Attacks on September 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006).

Accordingly, this Court should grant his request to modify the protective order.

---

████████████████████. ECF Nos. 181 at 1-6, 230 at 9 (explaining why the information is already public).

Respectfully submitted,

       */s/*
Jonathan Jeffress (#42884)
Emily Voshell (#92997)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C.  20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: evoshell@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

       */s/*
Nina J. Ginsberg (#19472)
DiMuroGinsberg, P.C.
1101 King Street, Suite 610
Alexandria, VA  22314
Telephone: (703) 684-4333
Facsimile: (703) 548-3181
Email: nginsberg@dimuro.com

*Counsel for Defendant Zackary Ellis Sanders*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of February 2021, the foregoing was served electronically on the counsel of record through the U.S. District Court for the Eastern District of Virginia Electronic Document Filing System (ECF) and the document is available on the ECF system.

/s/ *Jonathan Jeffress*
Jonathan Jeffress