# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Case No. 1:20-cr-00143<br>The Honorable Judge Ellis |
| ZACKARY ELLIS SANDERS, | Pretrial Conference: April 9, 2021<br>Trial: April 26, 2021 |
| Defendant. | **HEARING REQUESTED** |

## CORRECTED MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO CONTINUE TRIAL, AND WAIVER OF SPEEDY TRIAL RIGHTS

The defendant, Zackary Ellis Sanders, by counsel, submits this Memorandum in support of his Motion to Continue Jury Trial presently scheduled to commence on April 26, 2021, at 9:00 a.m.  Mr. Sanders agrees to a further waiver of his right to a speedy trial up to and including his new trial date.

Since this matter was last continued on January 8, 2021, the defense has made diligent and repeated efforts to review the large volume of digital evidence exclusively in the government's control.  Despite these efforts, Mr. Sanders has not been afforded an adequate opportunity to do so.  As a result, it is not possible for the defense to adequately prepare for trial, including examining the evidence that the government intends to introduce as part of its case-in-chief, identifying exculpatory and impeachment evidence and incorporating that evidence into its trial preparation, and preparing Mr. Sanders to testify, should he choose to do so.  *See* 18 U.S.C. § 3161(h)(7)(B)(ii).  Mr. Sanders requests this Court continue the trial until at least July 19, 2021 to permit him and his counsel constitutionally sufficient time to effectively review the discovery

1

and prepare for trial.[1]  Failure to grant such a continuance would result in a miscarriage of justice

and would deny Mr. Sanders the time necessary for effective preparation of the defense.  *See* 18

U.S.C. § 3161(h)(7)(B)(i), (iii).

## BACKGROUND

Mr. Sanders faces trial on a twelve-count indictment charging him with Production,

Receipt, and Possession of Child Pornography; in violation of 18 U.S.C. § 2251(a) and (e), 18

U.S.C. § 2252(a)(2) and (b)(1), and 18 U.S.C. 2252(a)(4)(B) and (b)(2).  Given the large volume

of digital evidence in this case, including hundreds of thousands of images and thousands of

pages of chat messages; the fact that a substantial majority of the digital evidence can only be

viewed at designated government facilities; and the number of alleged victims involved, this

Court previously found that the prosecution "is sufficiently complex under 18 U.S.C. §

3161(h)(7)(B)(ii) such that it [was] unreasonable to expect adequate preparation for the trial" by

February 9, 2021.  (ECF 204, p. 2).  Indeed, in its January 8th Order previously continuing the

matter, this Court highlighted the concerns surrounding adequate trial preparations:

> "This concern is particularly acute given defendant's recent Covid-19 diagnosis and the continuing Covid-19 outbreak at Alexandria Detention Center, which have introduced constraints to defendant's ability to communicate with counsel and review evidence. Accordingly, defendant would be unable to adequately prepare for trial within the current timeframe set by the Court, and the failure to grant the consent motion for a continuance in this matter would therefore result in a miscarriage of justice…"

(ECF 204, p. 2).[2]

---

[1] Defense counsel are also available for trial during the weeks of July 26, 2021, August 23, 2021 and August 30, 2021.

[2] On the same day the Court entered its Order, Chief Judge Davis entered General Order No. 2021-01 suspending all criminal jury trials in the Eastern District of Virginia through February 28, 2021 because of the public health and safety risks posed by the COVID-19 pandemic.  *See* EDVA Coronavirus Guidance (collection of COVID-19 related orders) available at: https://www.vaed.uscourts.gov/covid-19.

Counsel has made diligent and repeated efforts to review discovery that is exclusively in the government's possession, and to receive discovery in a format that allows the defense to effectively prepare for trial. Where possible, counsel has also attempted to mitigate issues presented by COVID-19-related constraints at the Alexandria Adult Detention Center ("ADC"). Regrettably, the defense remains in a similar position to when the last motion for a continuance was filed. Given the sheer volume of electronic evidence underlying the government's case, the constraints on the defendant's ability to effectively review both sanitized and contraband evidence while incarcerated, and counsel's resulting inability to properly mount a defense, a continuation of the trial in this matter remains necessary.[3]

## The Discovery Universe

There are eight electronic devices that form the basis of Counts 1 through 12: an iPhone (1B27), three laptops (1B2, 1B5, 1B6), two iPads (1B19, 1B22), and two thumb drives (1B1, 1B3). The eight devices were seized by law enforcement pursuant to the February 10, 2020 search warrant authorizing the search of the Sanders's family's home. (ECF 4, pp. 3-4). The Government's Exhibit List includes the entire forensic image or file system extractions of seven of the eight devices, which collectively, encompass millions of files. (ECF 206).[4] Thus, it

---

[3] Mr. Sanders intends to file a separate motion requiring the government to provide him with additional access to evidence that is only available to him at the U.S. Attorney's Office if the matter cannot be resolved

[4] Under a reasonable reading of the Government's Exhibit List, it appears that the government intends to introduce the entire forensic images of seven devices. *See generally* ECF 206: (Ex. 9-3) Forensic image of Sandisk Cruzer Edge Thumb Drive—1B1; (Ex. 10-3) Forensic image of HP Elite Book 755 laptop—(1B2); (Ex. 11-3) Forensic image of Lexar thumb drive—1B3; (Ex. 12-3) Forensic image of HP laptop (S/N: 5CH1262Y5Y)—1B5; (Ex.4-3) Full file system extraction of Apple iPad, Bulk—1B19; (Ex. 5-3) Full file system extraction of Apple iPad, Bulk—1B22; (Ex. 4-6) Full file system extraction of Apple iPhone, Bulk—1B27.

appears that the government intends to introduce bulk exhibits that may be viewed by the jury during their deliberations, that contain every single file extracted from the iPhone, two of the three laptops, two iPads, and two thumb drives, including every image and video.  As a result, there is literally a mountain of digital evidence that Mr. Sanders and his counsel are bound to examine if he is to be afforded a fair trial and effective assistance of counsel.

On the iPhone and two iPads alone, there are over 2,300 pages of "chat messages" which purportedly represent messages exchanged between Mr. Sanders and the alleged minor victims. These chats form the factual basis for Counts 1 through 11 of the indictment—the production and receipt charges. (ECF 4, pp. 5-13).  On March 16, 2021, the government provided an additional 515 pages of chats that were purportedly exchanged between Mr. Sanders and one of the alleged victims.  To date, Mr. Sanders has not had the ability to review the combined 2,800 pages of chat messages or discuss them with his lawyers.  Embedded within the chat messages themselves are a large number of images and videos that the alleged victims purportedly captured themselves (produced) or copied and then sent to Mr. Sanders.  Many of the images are non-contraband files.

Additionally, there are a large number of video and image files that are not saved as parts of the various chat messages.  For example, there are over 750,000 images on the iPhone alone. Images and videos on the iPhone form the basis for seven of the twelve counts.  It appears from the Government's Exhibit List that the prosecution may introduce a large number of the 750,000 images, or at a minimum, permit them to be viewed by the jury during their deliberations. Certain of these images may contain information critically important to the defense.  The defense needs Mr. Sanders's assistance and a sufficient amount of time to examine the images and separate the proverbial wheat from the chaff.

Moreover, the evidence supporting Count 12—the possession count of the indictment—is spread across five separate devices (the three laptops and two thumb drives), which between them, contain thousands of additional images and videos.  The prosecution has provided Mr. Sanders with a complete list of the file names and file paths of 407 videos and images that appear to underlie Count 12 but has not done so for Counts 1 through 11.  Nor have they indicated whether the government intends to introduce some or all of the 407 videos and images at trial to attempt to prove Count 12.

In order to prepare his defense, Mr. Sanders is also entitled to examine the metadata for each video and image that will be introduced at trial to determine, among other things, whether the person using the device(s) ever opened or viewed the videos and images, where on the devices they were stored, and whether the individuals depicted in the images were under the age of 18 at the time the images were created.  The review process has been made more difficult by the lack of sufficiently powerful computers at the U.S. Attorney's Office and by severe limitations on Mr. Sanders's access to the evidence.

The volume of digital evidence has also complicated the defense expert's ability to conduct forensic examinations of the digital devices.  One of Mr. Sanders's forensic experts was scheduled to conduct a review of the electronic evidence at an FBI facility on January 5 and 6, 2021.  The expert was unable to complete his examination because the amount of data on the iPhone prevented the data from opening on his computer.  Similarly, the Cellebrite extraction report analyzing the data extracted from the iPhone was too large to load onto his computer.  The attempt to load that data ran all of January 5, 2021, overnight, and into the morning of January 6, 2021.  His second attempt to load the data on January 6, 2021 was also unsuccessful. Mr. Sanders's expert returned to the FBI facility on January 27, 2021.  After the FBI opened the data

on their more powerful computer, he reviewed the government's extraction procedures and began gathering details about the different chat applications. Based on that review, the defense declined to file any motions *in limine* related to the forensic extraction.

On February 15, 2021, defense counsel asked the government to permit his defense team (including Mr. Sanders) to return with his forensic expert to conduct the in-depth examination required to prepare for trial, including examining each individual file supporting the government's case-in-chief. After repeated follow up requests by the defense, the government finally responded on March 18, 2021 that the earliest dates the government could make an FBI facility and government computers available were March 29-31, 2021. The government has refused Mr. Sanders's request to be present at the forensic review. The volume of evidence and the federal resources dedicated to the Capitol riot investigations are some of the reasons the government gave for the delay.

Given the constraints imposed on the defense by the COVID-19 pandemic, the limitations on Mr. Sanders's access to evidence and on the resources available to counsel and the government, a trial on April 26, 2021 would so compromise counsel's trial performance and Mr. Sanders's right to present evidence as to violate the Sixth Amendment.

A. **Mr. Sanders Has Not Been Able To Effectively Review Discovery Material**

Due to the COVID-19 outbreak at ADC, counsel was unable to review discovery material with Mr. Sanders from December 18, 2020 to January 25, 2021. During that time period, counsel was only able to speak very briefly with Mr. Sanders on a handful of occasions because calls on the attorney-client line were restricted by jail personnel and the ADC's video visitation system

was completely shut down.[5]  Moreover, the extremely restrictive Protective Order that is

currently in place (ECF 28) prohibits counsel from providing Mr. Sanders with physical copies

of any of the discovery materials. Therefore, the only method by which Mr. Sanders can review

discovery is during his video visits with his defense team, when they are able to screenshare

materials with him.  Throughout this period, Mr. Sanders was effectively cut off from his

attorneys and unable to review a single document in preparation for his impending trial.

Even after the resumption of video visitation in late January 2021, the discovery review

process has been laborious and ineffective. The government has provided counsel with

"sanitized" (*i.e.,* non-contraband) copies of over 2,300 pages of "chat messages" that are the

basis for 11 counts of the indictment, as well as an additional 515 pages of chats between Mr.

Sanders and one of the alleged minor victims.  The only way that Mr. Sanders is able to review

the 2,800 pages of chat messages is by reading them on the computer screen during video calls

with his lawyers.  On March 17, 2021, the government denied Mr. Sanders's request to have

redacted versions of the sanitized chats delivered to him at the jail and indicated that it would be

a violation of the protective order to do so.

Making matters worse, Mr. Sanders suffers from optic neuritis, a progressive eye disease

that is irreversible and is slowly destroying his vison. (Ex. 1).  His condition has significantly

worsened since he contracted COVID-19 in December 2020.  Since December, Mr. Sanders has

experienced partial vision loss and mounting pressure behind his eyes. (*Id.*).  Despite repeated

requests, including a letter from his treating physician, Mr. Sanders has not yet been permitted to

see a specialist or receive any treatment for his condition.  The pressure behind his eyes and

---

[5] The ADC's video calling system is the only method by which counsel can show and review
discovery material with Mr. Sanders.

progressive loss of vision has also interfered with his ability to read material on a computer

screen for extended periods of time.  Simply put, Mr. Sanders is ill-prepared for a trial in which

he faces a mandatory minimum of at least 15 years imprisonment and is unable to effectively

assist counsel in the preparation of his own defense.

      i.        **Mr. Sanders's Requests to Review Evidence Have Been Denied.**

Since the January 8, 2021 continuance order and the lifting of the ADC COVID-19 lock-

down in late January 2021, Mr. Sanders has only been transported to the United States

Attorney's Office one time.[6]  Before the COVID-19 lock-down, Mr. Sanders was able to review

fewer than 10,000 of the 750,000 images extracted from the iPhone, which were provided at the

U.S. Attorney's Office in different, non-searchable formats on three occasions.  The Cellebrite

report and full forensic image of the iPhone, which would allow him to search for relevant

material and view it in the actual context in which it was saved, have never been made available

to Mr. Sanders.  On at least one occasion, the computers provided at the U.S. Attorney's Office

were not powerful enough to open all of the image files or conduct a meaningful review.

On February 15, 2021, counsel sent the government a detailed request to review specific

digital evidence on all eight devices underlying the 12 counts, and requested to review portions

of that evidence with Mr. Sanders at an appropriate government facility. (Ex. 3). Counsel advised

the government that access to the material was needed to "(1) prove additional context for the

jury to understand the relationship between Mr. Sanders and the alleged minor victims, (2)

defend against the allegations that Mr. Sanders's predominant purpose was to produce a visual

depiction of sexually explicit conduct, and (3) impeach the testimony of alleged minor victims 1

---

[6] Mr. Sanders was transported to the U.S. Attorney's Office to review evidence on November 19, 2020, December 8, 2020, and February 2, 2021.

and 5 at trial [the only alleged victims the Government intends to call as witnesses].” (Ex. 2-A, p. 1). Moreover, counsel explicitly stated that “Mr. Sanders’s presence is required in order to locate and make sense of the evidence contained on the iPhone and, therefore, to prepare his defense.” (Ex. 2-A, p. 2).

Counsel followed up on her request on February 24, 2021, and again on March 9, 2021. (Ex. 3 & 3-A).  After the government indicated it would take some time to determine how to make the full Cellebrite report and forensic image of the iPhone available to Mr. Sanders, counsel offered to review specific items of contraband evidence and digital artifacts at the United States’ Attorney’s Office without Mr. Sanders present. (Ex. 2-A, p. 2).

Although arrangements have now been made for Mr. Sanders’s expert and defense team to examine the eight devices at an FBI facility on March 29-31, 2021, the government has refused to transport Mr. Sanders to that or any other FBI facility where the type of computer equipment needed to assist counsel prepare his defense is available.  Nor has the government agreed to more specifically identify the images and videos that underlie Counts 1 through 12, beyond those it has listed on the Government’s Exhibit List (ECF 206), which arguably encompass every file on seven of the eight devices, and the 407 files it has listed as underlying the possession count.  It will take counsel and the defense expert much longer than the time between now and April 26, 2021, to review the digital files, metadata and contextual information for all such files.

**ARGUMENT**

The decision to grant or deny a continuance is committed to the sound discretion of the trial court. *United States v. Gaither*, 527 F.2d 456, 457 (4th Cir. 1975). However, “while timely resolutions of disputes are important, there cannot be an ’unreasoning and arbitrary’ insistence

on expeditiousness in the face of a justifiable request for delay." *United States v. Colon*, 975 F.2d

128, 130 (4th Cir. 1992); *see also United States v. LaRouche*, 896 F.2d 815, 824 (4th Cir. 1990)

(noting that the later a motion for a continuance is made, the more likely it is made for dilatory

tactics and thus it is less likely that the district court arbitrarily denied the continuance); *In re:*

*Court Operations Under The Exigent Circumstances Created By The Outbreak Of Coronavirus*

*Disease 2019 (Covid-19): Revised Schedule For The Resumption Of Criminal Jury Trials,* Case

No. 2:20mc7, (E.D.Va.), General Order No. 2020-19, at p. 16, June 30, 2020 ("*the Court cannot*

*prioritize speed over the critical steps needed to preserve every accused defendant's right to a*

*fair trial*") (emphasis added).

Under the current unprecedented circumstances, a continuance of Mr. Sanders's trial is

necessary to preserve his right to effective assistance of counsel, which necessarily includes pre-

trial preparation.

A. **Proceeding to Trial in April Would Impair Mr. Sanders's Right to Effective**
   **Assistance of Counsel During Pretrial Preparation.**

Once the adversarial judicial process has been initiated, the Sixth Amendment guarantees

defendants the right to counsel at all critical stages of criminal proceedings. *See Montejo v.*

*Louisiana*, 556 U.S. 778, 786 (2009). Both the trial itself and the post-indictment period before

trial constitute "critical stages." *Kirby v. Illinois*, 406 U.S. 682, 688 (1972) (stating the right to

counsel attaches "at or after the time adversary judicial proceedings have been initiated against

him"). Indeed, the Supreme Court has recognized that: "the assistance of counsel cannot be

limited to participation in a trial; to deprive a person of counsel during the period prior to trial

may be more damaging than denial of counsel during the trial itself." *Maine v. Moulton*, 474

U.S. 159, 170 (1985).

Mr. Sanders's case presents unique challenges, as compared to other prosecutions impacted by the COVID-19 pandemic, because the evidence presented at trial will be almost entirely comprised of digital evidence—for example, digital forensic evidence bearing on how and when the suspect images were downloaded onto the devices, whether the suspect image files were opened, reviewed or sorted, or whether the opening, saving and/or naming of files occurred as a result of an automated program on the devices computer or an intentional act.  Moreover, it is expected that there will be significant testimony regarding the over 2,800 pages of "chat messages" extracted from various digital devices. This requires that Mr. Sanders be given adequate time to review the material with his counsel and experts.

Indeed, it is absolutely critical to the preparation of the defense that both Mr. Sanders and his counsel are have reviewed all digital evidence and its metadata, including the manner in which such evidence and its metadata will likely be used by the government in the presentation of its case. Despite counsel's diligent and repeated efforts to review material and be ready for trial, the defense team is not expected to begin its forensic review, with the assistance of an expert, of the digital devices at issue in this case until March 29th –a mere twenty-eight days before the trial is scheduled to commence. It is unreasonable to expect that an effective defense could be mounted when the defendant and his counsel are still learning the facts of the case mere weeks before the trial is scheduled to start and where the defendant does not have the means to question significant portions of the evidence, or consider whether or not he will testify.  *See United States v. Green*, E.D. Va. No. 4:20CR1, 2020 WL 5877893, at *5 (E.D. Va. Oct. 2, 2020) ("Failure to allow Defendant sufficient time to prepare for trial would "result in a miscarriage of justice[]"); *see also Rock v. Arkansas*, 483 U.S. 44, 52 (1987) ("the most important witness for the defense in many criminal cases is the defendant himself")

### B.  **Members of the Defense Team are Susceptible to COVID-19**

To-date, not a single member of Mr. Sanders's defense team has been fully vaccinated against the COVID-19 virus. In-fact, half of the defense team has yet to receive even their first dose of the vaccine.  Contrary to initial hopes, the COVID-19 pandemic has not disappeared, nor has the United States effectively controlled the virus's spread. Indeed, the U.K, South African, and Brazilian variants are rapidly spreading in the D.C. metropolitan area and the risk of contracting COVID-19 in Alexandria, Virginia is still classified as "very high."[7]

Conducting a jury trial in Mr. Sanders's case poses significant health risks to all court personnel but particularly to the unvaccinated members of Mr. Sanders's defense team who cannot prepare for trial without exposing themselves to completely avoidable risks.  It is respectfully submitted that requiring Mr. Sanders and his chosen counsel to proceed to trial subjects the parties, the Court, and other trial participants, to an unreasonable and avoidable health risk.  Moreover, Mr. Sanders remains in custody at the ADC.  He has previously waived his speedy trial rights and is prepared to reaffirm that waiver, thereby eliminating any prejudice he might otherwise suffer from continuing the trial.

### C.  **There is No Prejudice to the Government**

A continuance of the trial will not prejudice the government or harm the public.  The public interest is best served by ensuring that Mr. Sanders is afforded a fair and public trial for the reasons previously stated.  That interest is particularly heightened when an accused faces a lengthy period of incarceration and the associated collateral consequences of a felony conviction, including lifetime registration as a sex offender.

---

[7] Tracking Coronavirus in Alexandria, Va., NY TIMES (last accessed 3/20/21) available at: https://www.nytimes.com/interactive/2021/us/alexandria-virginia-covid-cases.html

There may also be witnesses, including minor victims, and potential jurors who have not been fully vaccinated.  A continuance is further in the public interest because it would avoid the need to expose unvaccinated participants in the trial to the serious health risks still posed by the pandemic or be potential spreaders of the virus.  Continuing the trial to a date until after the end of the school year may also be less stressful for the minor victims who may be preparing for and taking final examinations in April and May.  Moreover, Mr. Sanders is detained and poses no risk to any alleged minor victim or member of the public.[8]

## CONCLUSION

For all of the aforementioned reasons, Mr. Sanders respectfully requests this Court enter an Order removing the trial of this case from the Court's April 26, 2021 docket and set a new trial date not earlier than July 19, 2021 that balances the evidence-based health and safety concerns with the inherent conflicts that arise when endeavoring to preserve all of an accused defendant's constitutional rights.

---

[8] ██████████████████████████████████████████

██████████████████████████████████████████████

Respectfully submitted,

_____/s/_____
Nina J. Ginsberg (#19472)
Zachary Deulber #90669
DiMuroGinsberg, P.C.
1101 King Street, Suite 610
Alexandria, VA 22314
Telephone: (703) 684-4333
Facsimile: (703) 548-3181
Email: nginsberg@dimuro.com
Email: zdeubler@dimuro.com

_____/s/_____
Jonathan Jeffress (#42884)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C. 20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

*Counsel for Defendant Zackary Ellis Sanders*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of March 2021, the foregoing was served electronically on counsel of record through the U.S. District Court for the Eastern District of Virginia Electronic Document Filing System (ECF) and the document is available on the ECF system.

*/s/ Nina J. Ginsberg*
Nina J. Ginsberg