IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 1:20-CR-143 |
| v. | ) |
| | ) Honorable T.S. Ellis, III |
| ZACKARY ELLIS SANDERS, | ) |
| | ) Trial: July 12, 2021 |
| *Defendant.* | ) |
| | ) |

**RESPONSE TO DEFENDANT'S MOTION TO FILE REDACTED VERSIONS OF TRANSCRIPTS AND EXHIBITS ON THE PUBLIC DOCKET**

On March 23, 2021, the defendant moved to file redacted versions of various sealed filings containing sensitive information on the public docket. Dkt. No. 258. Specifically, the defendant seeks permission to file transcripts of two prior hearings and redacted exhibits attached to five of the defendant's prior motions. *Id.* The United States, by and through undersigned counsel, hereby files this response.

The government has produced highly sensitive discovery to the defendant in this case pursuant to an agreed-upon Protective Order, which applies to both the discovery material and the information contained therein. Dkt. No. 28. As the government has explained previously, the disclosure of this sensitive information would jeopardize the investigation and prosecution of additional targets and would render foreign law enforcement agencies less likely to share information regarding the results of their criminal investigations with the United States in the future. Accordingly, the Protective Order should remain in effect and the discovery material in this case should remain under seal pursuant to that order. If these documents are to be filed in redacted form on the public docket, however, the government respectfully requests that the Court adopt the redactions proposed below and in the under-seal exhibits submitted with this filing.

## BACKGROUND

On June 24, 2020, a federal grand jury in the Eastern District of Virginia returned a twelve-count indictment charging the defendant with production, receipt, and possession of child pornography. Dkt. No. 29. The charges are based on evidence obtained by the Federal Bureau of Investigation ("FBI") during the execution of a search warrant at the defendant's home. The affidavit in support of the warrant is based in part on a reliable tip from a known foreign law enforcement agency ("FLA") that an Internet Protocol ("IP") address tied to the defendant's home was used to access online child sexual abuse and exploitation material on a specific hidden service on The Onion Router ("Tor") dedicated to such content (the "Target Website").

As the government has explained in prior filings, *see* Dkt. Nos. 121, 173, 193, and 244, discovery in this case includes highly sensitive information provided by the FLA that is relevant to other ongoing investigations of targets suspected of accessing online child sexual abuse material. The public disclosure and dissemination of this information would jeopardize these other investigations by allowing the targets to learn about the details of the government's investigation and destroy evidence or flee. Additionally, the FLA requested as a condition for providing its tip to the FBI that its identity, the existence of its investigation, and the information it provided not be publicly disclosed to the greatest extent possible. Because the FLA has provided reliable information that has led to the apprehension of dangerous sex offenders and the rescue of endangered children in the United States, it is critical that other offenders not learn the details of the FLA's tip and that the United States' preserve its cooperative relationship with the FLA and other such entities.

In order to provide the defendant discovery while still recognizing these sensitivities, the government filed a motion with his express consent for the entry of a Protective Order. Dkt. No.

27. The motion explains that the discovery in this case includes sensitive information related to ongoing investigations and that the dissemination of this information could seriously jeopardize those investigations. *Id.* at 1–2. The Court then entered the Protective Order, signed by counsel for the government and defense counsel. Dkt. No. 28. The Protective Order governs all discovery material produced by the government and any information contained therein. *Id.* at 1. It instructs that any discovery material or information contained therein shall be filed under seal on the docket unless otherwise ordered by the Court and that the defense team (defined as attorneys of record, investigators, paralegals, law clerks, experts, and assistants) shall "use discovery only for the preparation and litigation of this matter," which includes pretrial, trial, and post-trial and appellate proceedings, "and for no other purpose." *Id.* at 2–3.

The Protective Order remains in effect and the discovery that the government has produced pursuant to it remains sensitive. Nevertheless, in December 2020, the defendant filed a civil complaint in another district that contained sensitive information covered by the Protective Order. After the government brought this to the Court's attention through an appropriate motion, the Court instructed the defendant to seek leave to seal his out-of-district complaint because it made "numerous logical connections between sparsely detailed information" that would allow an outside observer to deduce protected material in this case. Dkt. No. 228. Later, the defendant filed a motion to modify the Protective Order to allow him to disseminate discovery material to unidentified third parties, which the Court denied for failing to establish good cause for the proposed modifications. Dkt. No. 257. To the contrary, as the government explained in its response to the defendant's motion, good cause existed and continues to exist for maintaining the agreed-upon Protective Order because the discovery contains sensitive, non-public information relevant to other investigations in the United States. Dkt. No. 244 at 5–13.

On March 23, 2021, the defendant moved to file on the public docket various under-seal documents and filings associated with his pre-trials motions that contain sensitive information produced in discovery. Dkt. No. 258. The defendant submitted with his motion approximately 639 pages of documents with proposed redactions, filed as Exhibits A through G. *See* Dkt. No. 271, 271-1 to 271-10. Exhibits C through G are further divided into numbered sub-exhibits. *See* Dkt. No. 271-2 to 271-10.

## LEGAL STANDARD

It is generally recognized that the public has a common law right of access, but not a First Amendment right of access, to judicial documents. *Media General Operations, Inc. v. Buchanan*, 417 F.3d 424, 429 (4th Cir. 2005); *In re Washington Post Company v. Hughes*, 923 F.2d 324, 326 (4th Cir. 1991). But the Court has supervisory power over its own records and may, in its discretion, seal documents if the public's right of access is outweighed by competing interests. *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984). Such sealing is within the discretion of this Court and may be granted for "any legitimate prosecutorial need." *United States v. Ramey*, 791 F.2d 317, 321 (4th Cir. 1986); *see also, Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 65 (4th Cir. 1989).

The Fourth Circuit has explained that, "[i]f a judicial officer determines that full public access is not appropriate, she 'must consider alternatives to sealing the documents,' which may include giving the public access to some of the documents or releasing a redacted version of the documents that are the subject to the government's motion to seal." *Media General Operations*, 417 F.3d at 429 (quoting *Goetz*, 886 F.2d at 66). The Fourth Circuit's precedents also state that, "'in entering a sealing order, a 'judicial officer may explicitly adopt the facts that the government presents to justify sealing when the evidence appears creditable,'" *Media General Operations*, 417

F.3d at 429 (quoting *Goetz*, 886 F.2d at 65), so long as the ultimate "decision to seal the papers" is "made by the judicial officer," *Goetz*, 886 F.2d at 65. "Moreover, if appropriate, the government's submission and the [judicial] officer's reason for sealing the documents can be filed under seal." *Goetz*, 886 F.2d at 65; *see also In re Washington Post Co.*, 807 F.2d 383, 391 (4th Cir. 1986) ("if the court concludes that a denial of public access is warranted, the court may file its statement of the reasons for its decision under seal").

Additionally, in the context of criminal discovery, Federal Rule of Criminal Procedure 16 provides courts with broad discretion to oversee the discovery process, including by entering protective orders "for good cause [that] deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d). Rule 16 gives courts broad authority "to limit [the disclosure of discovery], condition it, or absolutely prohibit it in the interests of witness security or any other compelling reason[.]" *United States v. Roberts*, 793 F.2d 580, 587 (4th Cir. 1986), *vacated on other grounds*, 811 F.2d 257 (4th Cir. 1987). Multiple courts have found good cause to enter protective orders where discovery materials contain information related to sensitive or ongoing investigations. *See, e.g.*, *United States v. Jones*, No. CR-20-00634, 2021 WL 24585, at *1 (D. Ariz. Jan. 4, 2021) (noting that protective orders "in criminal cases are not uncommon," particularly "where discovery material reveals details, sources, and methods of ongoing law enforcement investigations"); *United States v. Chow*, No. CR 14-00196, 2014 WL 2093488, at *1 (N.D. Cal. May 19, 2014) (granting motion for entry of order to protect "sensitive materials that, if improperly disclosed, could be used to identify individuals who have not yet been charged by the United States, but whose ongoing criminal activities are still under investigation"); *United States v. Smith*, 985 F. Supp. 2d 506, 530 (S.D.N.Y. 2013) ("Thus, where public disclosure of certain materials might officially reveal the sources and methods law-enforcement officials have

used, and will continue to use, to investigate other criminal conduct related to the publicly filed charges, courts have found it appropriate to enter a protective order." (citations omitted)).

## ARGUMENT

The documents that the defendant now seeks to file on the public docket consist of either sensitive material produced in discovery or documents that reference protected information in that sensitive material. What is more, even with the defendant's proposed redactions, many of these documents still contain references to "considerable material that would allow an outside observer to deduce protected material with ease[.]" Dkt. No. 228. In other words, as was the case with his out-of-district civil complaint and his prior motion to modify the Protective Order, the defendant's current motion would vitiate the Protective Order by allowing for the dissemination of sensitive information—most critically, the name of the Target Website and the identity of the FLA and its investigation—that the defendant only learned through discovery provided to him in this case. For the reasons explained in the government's opposition to the defendant's motion to modify the Protective Order, Dkt. No. 244, and based on the Court's prior Order denying that motion, Dkt. No. 257, the government submits that good cause exists for the continued operation of the agreed-upon Protective Order, which requires that all discovery material be filed under seal in this case, Dkt. No. 28 at ¶ 5.

Indeed, while the government has moved to unseal as much information as possible in the Court's prior opinions and orders, it did so with the understanding that a Protective Order was in place to ensure that the sensitive material provided in discovery would not be made public so as to allow outside observers to deduce protected information. Courts frequently enter protective orders to govern sensitive criminal discovery for this very reason. *See supra* pp. 5–6. Discovery, after all, "is essentially a private process because the litigants and the courts assume that the sole purpose

6

of discovery is to assist trial preparation. That is why parties regularly agree, and courts often order, that discovery information will remain private." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986); *see also United States v. Kravetz*, 706 F.3d 47, 54 (1st Cir. 2013) ("With respect to experience, there is no tradition of access to criminal discovery."); *see also United States v. Smith*, 985 F. Supp. 2d 506, 519 (S.D.N.Y. 2013) (noting that protective orders governing discovery are not subject to the same scrutiny as other protective orders because "there is no right of access to discovery materials").

If, however, the transcripts and discovery material identified in the defendant's instant motion are to be filed on the public docket despite the continued operation of the Protective Order, the government respectfully requests that the Court adopt the government's proposed redactions below, which are essential to ensuring that sensitive information does not become publicly available and thereby jeopardize ongoing and future investigations.

First, the following defense exhibits with the defendant's proposed redactions can be filed without additional redactions:

| Document | Defendant's Exhibit |
|---|---|
| July 31, 2020 hearing transcript | Exhibit A and Exhibit D-13 |
| September 11, 2020 hearing transcript | Exhibit B |
| FBI 302 dated February 14, 2020 | Exhibit C-2 and Exhibit G-2 |
| Photographic log dated February 12, 2020 | Exhibit C-3 and Exhibit G-3 |
| Second Declaration of Dr. Matthew Miller | Exhibit E-5 |
| Third Declaration of Dr. Matthew Miller | Exhibit F-5 |
| Unrelated application for a search warrant | Exhibit F-10 |
| Declaration of Special Agent Christopher A. Ford | Exhibit F-12 |

Second, the following defense exhibits require additional redactions to prevent the disclosure of protected information and information that can be used to identify the Target Website or the FLA. The public disclosure of the identity of the Target Website would jeopardize ongoing and future government investigations by allowing other targets about whom the FBI has received information to destroy evidence or flee. Likewise, the public disclosure of the identity of the FLA would hinder the cooperative relationship between the FLA and the United States and would render the FLA and other such entities less likely to share information regarding the results of their criminal investigations with the United States in the future. Accordingly, if the following exhibits are to be filed on the public docket, they require at a minimum the additional redactions proposed in the associated under-seal exhibits filed with the government's response:

| Document | Defendant's Exhibit | Government's Exhibit Attached Here |
| --- | --- | --- |
| FBI FD-1057 dated January 17, 2020 | Exhibit C-4, Exhibit D-4, Exhibit E-2, and Exhibit G-4 | Exhibit 1 |
| Comparison chart | Exhibit D-6 | Exhibit 2 |
| Fourth Declaration of Dr. Matthew Miller | Exhibit D-7, Exhibit E-6, and Exhibit F-6 | Exhibit 3 |
| Declaration of Seth Schoen | Exhibit D-8 and Exhibit E-7 | Exhibit 4 |
| Declaration of Dr. Matthew Miller | Exhibit E-4 and Exhibit F-4 | Exhibit 5 |
| Declaration of Dr. Richard Clayton | Exhibit E-8 and Exhibit F-9 | Exhibit 6 |

Third, the following exhibits cannot meaningfully be made available publicly with the defendant's redactions or any additional redactions. First, the FLA's three tip documents were provided by the FLA on the condition that the government not publicly disclose those materials to the greatest extent possible. The pertinent information contained in the tip is already part of the record and the public filing of the actual documents would only serve to hinder the United States'

cooperative relationship with foreign law enforcement entities going forward. Second, the screenshots of the Target Website contain sufficient information to allow an outside observer to identify the site. Third, the additional expert declarations the defendant has identified contain numerous references to and about the FLA such that any public filing of them would allow an outside observer to deduce protected information. Fourth, the online posting attached to the defendant's filing as Exhibit D-12, when viewed alongside the publicly available information in this case, would also allow an outside observer to easily deduce protected information about the FLA. And, fifth, with respect to the search warrant materials, Magistrate Judge John F. Anderson unsealed those documents for the limited purpose of providing them to the defendant pursuant to the government's discovery obligations and the Protective Order. They otherwise remain under seal and, indeed, the affidavit in support of the warrant contains significant information about the Target Website such that its public filing would allow others to identify the site. Accordingly, the following exhibits cannot presently be made meaningfully available on the public docket even in redacted form:

| Document | Defendant's Exhibit |
|---|---|
| Affidavit in Support of an Application for a Search Warrant | Exhibit C-1, Exhibit D-3, Exhibit F-3, and Exhibit G-1 |
| FLA document | Exhibit C-5, Exhibit D-1, Exhibit E-1, Exhibit F-1, and Exhibit G-5 |
| FLA letter dated September 16, 2019 | Exhibit D-2 and Exhibit F-2 |
| Third FLA document | Exhibit D-3 |
| Screenshot of Target Website | Exhibit D-9 and Exhibit E-9 |
| Screenshots of Target Website | Exhibit D-10 and Exhibit E-10 |
| Search and Seizure Warrant | Exhibit D-11 |
| Online posting | Exhibit D-12 |
| Declaration of Matthew Ryder | Exhibit F-7 |
| Second Declaration of Matthew Ryder | Exhibit F-8 |

| Search Warrant Affidavits comparison | Exhibit F-11 |
|---|---|

## CONCLUSION

For the reasons above, the United States believes that material provided to the defendant in discovery should remain under seal pursuant to the agreed-upon Protective Order. If, however, the transcripts and exhibits identified by the defendant are to be filed on the public docket, the government respectfully requests that the Court adopt the government's above proposed redactions.

Respectfully submitted,

Raj Parekh
Acting United States Attorney

By:    /s/
William G. Clayman
Special Assistant United States Attorney (LT)
Jay V. Prabhu
Assistant United States Attorney
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: 703-299-3700
Fax: 703-299-3981
Email: william.g.clayman@usdoj.gov
Email: jay.prabhu@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which automatically generated a Notice of Electronic Filing to the parties of record.

By:  /s/
William G. Clayman
Special Assistant United States Attorney (LT)
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: 703-299-3700
Fax: 703-299-3981
Email: william.g.clayman@usdoj.gov