**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ZACKARY ELLIS SANDERS,<br><br>Defendant. | Case No. 1:20-cr-00143<br>The Honorable Judge Ellis<br><br>Motions Hearing: May 7, 2021<br>Trial: July 12, 2021<br><br>**HEARING REQUESTED** |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF
DISCOVERY ORDER AND MODIFICATION OF PROTECTIVE ORDER**

The defendant, Zackary Ellis Sanders, by counsel, moves this Honorable Court for entry of a discovery order and for modification of the protective order previously entered on April 27, 2020 (ECF No. 28). At the last hearing on April 2, 2021, the Court directed the defense and government to submit an order setting out how Mr. Sanders's review of discovery will proceed.

Because the defense and government have been unable to reach agreement regarding Mr. Sanders's review of non-contraband discovery, both a discovery order and an order modifying the existing protective order are required to maintain the existing July 12, 2021 trial date and to protect Mr. Sanders's Fifth and Sixth Amendment rights. This Court's intervention is required to ensure Mr. Sanders is able to adequately review the material that underlies the government's case-in-chief and the material that is exculpatory, as well as assist in preparing his defense. *Crane v. Kentucky*, 476 U.S. 683, 687 (1986) (citing *California v. Trombetta*, 467 U.S. 479, 485 (1984)) (recognizing that defendants have "fundamental constitutional right to a fair opportunity to present a defense."); *California v. Green*, 399 U.S. 149, 176 (1970) (J. Harlan, concurring)

(the Confrontation Clause and the Compulsory Process Clause "constitutionalize the right to a defense as we know it").

## BACKGROUND

Mr. Sanders currently stands charged with five counts of production (18 U.S.C. § 2251(a) and (e)), six counts of receipt (18 U.S.C. § 2252 (a)(2) and (b)(1)), and one count of possession of child pornography (18 U.S.C. 2252 (a)(4)(B) and (b)(2)).

**I.　There is voluminous electronic discovery, most of which Mr. Sanders has not yet been able to review due to constraints beyond the defense's control.**

There is voluminous electronic discovery in this case. There are approximately 2,150 pages of sanitized versions of chats that underlie the government's case-in-chief. Gov't Response (ECF No. 272) at 2; *see also* Gov't Exhibit List (ECF No. 206). According to the government's exhibit list, the government also intends to introduce full file system extractions and/or forensic images of seven electronic devices: two Apple iPads (1B19 and 1B22) (Exhibit Nos. 4-4 and 5-3), an Apple iPhone (1B27) (Exhibit No. 4-6), a Sandisk Cruzer Edge thumb drive (1B1) (Exhibit No. 9-3), and two HP laptops (1B2 and 1B5) (Exhibit Nos. 10-3 and 12-3), a Lexar thumb drive (1B3) (Exhibit No. 11-3). Gov't Exhibit List (ECF No. 206). In addition to the at least 2,150 pages of sanitized versions of chats that form the basis for Counts 1 through 11, the government has provided an additional approximately 515 pages of chats that were purportedly exchanged between Mr. Sanders and one of the alleged victims.

According to the defense's forensic expert, the eight devices that underlie Counts 1 through 12 constitute over 2 terabytes or 2,000 gigabytes of material.[1] At a forensic examination spanning from March 29, 2021, to April 1, 2021, the defense extracted over 2,000 pages of exculpatory reports from these eight devices, as well as filing listings and web browser history listings that Mr. Sanders needs to review. The contents of each of these listings, if printed, would easily run into the thousands of pages for each computer system. Mr. Sanders needs to review that material in order to assist in preparing his defense and deciding whether or not to testify.

To date, Mr. Sanders has only been able to review a small portion of the digital evidence in this case, due in large part because Mr. Sanders is limited to examining material during time with his attorneys. As a result, at this time, Mr. Sanders is limited to reviewing any discovery on a computer screen during video calls with his attorneys. The video/screen-sharing review process is an ineffective way to read, understand, and analyze thousands of pages of material. Mr. Sanders frequently needs to back-track to re-examine material in order to understand how it relates to other material. In addition, Mr. Sanders attorneys' have to spend legal calls discussing other issues and cannot devote the entirety of legal calls to simply watching Mr. Sanders read discovery. To date, Mr. Sanders's attorneys have not been permitted to meet with him in-person at Alexandria Adult Detention Center ("ADC").

---

[1] According to DropBox, a single TB gives you the option of storing roughly: 250,000 photos taken with a 12MP camera; 250 movies or 500 hours of HD video; or 6.5 million document pages, commonly stored as Office files, PDFs, and presentations. It is also equal to 1,300 physical filing cabinets of paper. *How much is 1TB of storage?*, DropBox, available from https://www.dropbox.com/features/cloud-storage/how-much-is-1tb (last accessed April 26, 2021). Two terabytes is twice that.

## II. Reviewing such a volume of material is very time-consuming.

At the hearing on April 2, 2021, Mr. Sanders raised these issues to the Court: Mr. Sanders's defense team explained that he had had an inadequate opportunity to review the evidence underlying the government's case-in-chief, as well as exculpatory evidence underlying his defense. As a result, the Court concluded that "[b]ecause of the extensive discovery and challenges posed by COVID-19 restrictions, defendant would be unable to prepare adequately for trial within the current timeframe set by the Court." Order (ECF No. 287) at 2. The Court granted a continuance and rescheduled trial from April 26, 2021, to July 12, 2021. *Id.* at 3.

At the hearing, the Court reasoned that Mr. Sanders is entitled to see all the evidence that the government intends to introduce at trial, and all exculpatory evidence. The Court encouraged the defense and the government to confer and find a way for Mr. Sanders to sit down and review the thousands of pages of chats the underlie the government's case-in-chief, as well as the additional thousands of pages of exculpatory material that Mr. Sanders's defense team extracted during a forensic examination of the devices.

## III. The defense proposed a plan for reviewing the non-contraband discovery that the government indicated on April 23, 2021, that it would not agree to.

Since the last hearing, the defense has worked to find a solution for Mr. Sanders to review (1) non-contraband discovery and (2) discovery with contraband mixed in. The parties have agreed that Mr. Sanders will be able to review in-person at the U.S. Attorney's Office discovery with contraband mixed in; however, this does not resolve the issue that has not yet been resolved: Mr. Sanders needs sufficient time to review thousands of pages of non-contraband discovery, and he is currently precluded from doing so except during calls with his attorneys. The government is refusing to allow Mr. Sanders to have redacted copies of sanitized versions of discovery to review while at the ADC.

On April 5, 2021, Mr. Sanders began five consecutive days of medical treatment. In the meantime, the defense began drafting a proposed discovery review plan that it hoped the defense and government could implement as soon as possible.

On April 7, 2021, the defense emailed the government a letter recapping the information presented to the Court at the April 2nd hearing and proposing a procedure for making discovery available to Mr. Sanders. April 7th Email, attached as Ex. 1; April 7th Letter, attached as Ex. 2. That letter addressed how Mr. Sanders could review (1) non-contraband discovery and (2) discovery with contraband mixed in. Ex. 2 at 2-3.

Regarding the non-contraband discovery (including thousands of pages of chats that underlie the government's case-in-chief and thousands of pages of chats and other material the defense has extracted), the defense proposed that the government agree to allow the defense "to provide Mr. Sanders with sanitized, redacted copies of the chat messages that remove the names, family members, contact information, addresses, usernames and/or passwords, and educational institutions of the alleged minor victims." *Id.* at 2. In other words, all the information that could possibly be used to identify any alleged minor victim. The defense asked that if the government thought there was "other information . . . [that] should be redacted, please let us know." *Id.* at 2. The defense explained that the proposed plan for redactions "would preserve the rights of any alleged victims to be reasonably protected from the accused and for their dignity and privacy to be treated with fairness and respect," pursuant to 18 U.S.C. §§ 3771(a)(1), (8), and "would disclose only information that Mr. Sanders *needs to know* by virtue of his participation in the instant proceeding" *as the accused*, pursuant to 18 U.S.C. §§ 3509(d)(1)(ii), (d)(4). *Id.* at 2 (emphasis added). The defense noted that "§ 3509(d)(4) expressly provides that this subsection *does not prohibit the disclosure* of the name of or other information concerning a child *to the*

*defendant*." *Id.* at 2 (emphases added). In order to assuage any concerns the government may have had about material being disseminated, the defense proposed that the material be made available to Mr. Sanders on an iPad that was disabled from connecting to the Internet, which the ADC could provide to Mr. Sanders and then collect from him to re-charge. The ADC has previously provided inmates with access to a laptop provided by defense teams that is similarly disabled from connecting to the Internet. Because of the storage capacity and battery life of an iPad, the defense believes that an iPad would be more convenient than a laptop but would serve the same function. Regarding the discovery with contraband mixed in, the defense initially proposed that Mr. Sanders be transported to the Court once a week. *Id.* at 3.

On April 12, 2021, the defense emailed the government to report that Mr. Sanders had completed the five days of medical treatment and to follow up to the April 7th proposal regarding his review of discovery. April 12th Email, attached as Ex. 3. Later that day, the government responded asking if the defense had time that week to meet with Supervisory Deputy U.S. Marshal Nazaire to look at the space the Marshals were considering using for the evidence review discussed at the April 2nd hearing. On April 14, 2021, Ms. Ginsberg and Mr. Clayman met with Supervisory U.S. Marshal Nazaire, who told them that the Marshals could make two witness interview rooms and a second grand jury room available on Mondays and Fridays, as well as for half days on Tuesdays, Wednesdays, and Thursdays when the grand jury was not meeting for a full day, and that the Marshals would be able to transport Mr. Sanders to and from the Courthouse. Mr. Clayman stated that he would need to report back regarding the government's position.

On April 16, 2021, the defense was informed that the Alexandria Sheriff's Office will begin allowing in-person attorney-client visits starting May 1, 2021, but all visits will be by

6

appointment only, in 45-minute blocks. ADC Press Release, attached as Ex. 4, at 1. These in-person visits can be scheduled on Mondays from 8:00AM to 11:45AM or from 7:00PM to 10:45PM; on Tuesdays through Fridays from 7:00PM to 10:45PM; and on Saturdays and Sundays from 8:00AM to 11:45AM, from 1:00PM to 4:45PM, or from 7:00PM to 10:45PM. *Id.* at 2. Regular weekend and evening visits will be much more difficult for the attorneys to manage, as all have family or other similar obligations. Prior to the COVID-19 pandemic, it was not unusual for an attorney to arrive at the jail and be told that attorney-client rooms were occupied and to experience waits of up to two hours to see a client. The defense anticipates that beginning on May 1, 2021, it will not be easy to schedule visits given the number of lawyers who have been unable to meet with their clients in-person for over a year and the need to meet with clients.[2] Furthermore, the visitation rules require attorneys to stay six feet away from their clients, which will make it difficult to review material on a shared screen.

On April 19, 2021, the defense followed up regarding the discovery review process. April 19th Email, attached as Ex. 5. The defense requested that the government begin the discovery review process "immediately in order to give the defense adequate time to prepare in advance of the July trial date," and that the government inform the defense once it had "made arrangements with the FBI and the Marshals to transport Mr. Sanders and can provide [a] computer that is powerful enough to review the information on the iPhone," which forms the basis of the majority of the production and receipt counts. *Id.*

On April 21, 2021, the government responded that it proposed making a room at the U.S. Attorney's Office ("USAO") available for Mr. Sanders to review evidence "up to three times,"

---

[2] The defense has not yet been able to schedule in-person visits with Mr. Sanders in May but has been able to schedule video visits for the first week of May.

beginning on May 3rd and 4th.³ April 21st Email from Government, attached as Ex. 6, at 1. The government claimed that because in-person meetings were resuming at the ADC beginning on May 1, 2021, "[t]he in-person meetings . . . will resolve the issue you said you have been having with reviewing material over videoconference." *Id.* at 1.

The defense accepted the opportunity to review evidence at the USAO but noted that this plan would not resolve the defense's "need to have Mr. Sanders review all the chats that underlie the production and receipt charges, the file listings and metadata that underlie the possession charge, and exculpatory material that the defense expert has extracted from the devices in the government's possession which exceeds 4,500 pages." April 21st Email from Defense, attached as Ex. 7. The defense shared with the government the information it had received about in-person visits at the ADC and limitations in place. *Id.* at 2. The defense noted that it had "previously requested that Mr. Sanders be permitted to review redacted, sanitized copies of discovery necessary to the preparation of his defense at the jail," which could be "accomplished by providing him with hard copies, or with an iPad with no internet connectivity that contains only non-contraband redacted, sanitized material." *Id.* at 2. The defense emphasized that providing Mr. Sanders with a way to review the thousands of pages of material outside of his calls and visits with attorneys would be "the only way" that the defense would "be able to prepare for a July trial." *Id.* at 3. The defense further noted that it had found no authority that

---

³ Mr. Sanders objects to being limited to review evidence on only three occasions, particularly in the absence of other opportunities to review material outside of time with his attorneys. That is not enough time to review thousands of pages of material as well as the contraband the government intends to introduce. 18 U.S.C. § 3509(m)(2)(B) provides that child pornography "shall be deemed to be reasonably available to the defendant if the Government provides *ample* opportunity for inspection, viewing, and examination at a Government facility." (emphasis added); *see also United States v. Knellinger*, 471 F. Supp. 2d 640, 645 (E.D. Va. 2007) (Under § 3509(m)(2)(B), "'ample opportunity' may, in some circumstances, include greater access than what the Constitution alone would require.").

8

would support the government's interpretation, shared at the April 2nd hearing, that "*anything* a minor might have said during an evidentiary chat" could be considered information that Mr. Sanders does not "have a reason to know" by virtue of his participation in this proceeding as the accused, 18 U.S.C. § 3509(d)(1), and requested that the government share such authority so that the defense could find a solution or return to Court. *Id.* at 2-3.

On April 23, 2021, the defense emailed the government and noted that it was still waiting to hear from the government regarding the discovery reviews. Later that day, the government responded that "[g]iving [Mr. Sanders] copies of the chats to review on his own would violate the Protective Order, which follows the requirements of 18 U.S.C. § 3509 and the CVRA [18 U.S.C. § 3771]." April 23rd Email from Government, attached as Ex. 8. The defense responded that it would need to file a motion to modify the protective order to allow Mr. Sanders to review redacted, sanitized copies of the chats and other non-contraband material extracted by the defense expert and requested the government's consent for the motion to be heard on May 7 even if the defense filed it on April 26, 2021. The government provided its consent.

## DISCUSSION

Courts in this Circuit have found that good cause exists to modify a protective order where its terms are "burdensome and time-consuming." *United States v. Walker*, 2019 WL 4412909, at *12 (E.D.N.C. Sept. 13, 2019). Here, the Protective Order is far worse than burdensome; it is preventing Mr. Sanders from reviewing the thousands of pages of non-contraband evidence the government intends to introduce at trial, examining the thousands of pages of exculpatory material his defense team has collected, and mounting an effective defense.

The government has claimed that the protective order (ECF No. 28) is based on 18 U.S.C. § 3509 and 18 U.S.C. § 3771 and that those laws prohibit Mr. Sanders from having copies

9

of any discovery material, even if it is redacted of identifying information relating to any alleged minors or their families.  However, neither 18 U.S.C. § 3509 nor 18 U.S.C. § 3771 prohibit a defendant from reviewing the sort of non-contraband, redacted information that Mr. Sanders's defense team is seeking to allow him to review outside of time with his attorneys, so that he can read the material himself, re-examine previous portions upon receipt of new information, and analyze it in making decisions regarding his case.

      The information that Mr. Sanders "ha[s] reason to know," 18 U.S.C. § 3509(d)(1)(A), and needs to review is the evidence that the government has already indicated it intends to introduce at trial as part of its case-in-chief or is exculpatory information that the defense has extracted from the seized devices during its forensic examination.  If the redacted information can even be considered "other information concerning a child," that is information that Mr. Sanders, "by reason of [his] participation in the proceeding, ha[s] reason to know."  18 U.S.C. § 3509(d)(1)(ii).  The defense team's proposed redactions would also protect any alleged victims' rights under 18 U.S.C. § 3771(1) and (8).

      Unlike Mr. Sanders, the government has access to the material it intends to introduce at trial, the seized devices, and data extracted from those devices at any time of day—and has since the beginning of this case.  Thus, modifying the protective would "level the playing field," however slightly.  *In re Kolon Indus. Inc.*, 479 F. App'x 483, 485–86 (4th Cir. 2012) (affirming district court's finding of good cause to modify the protective order).

      It will not be possible for Mr. Sanders to read and analyze thousands of pages of chats under the above-described conditions and with the procedures (and limitations) the Government has proposed.  Providing Mr. Sanders with redacted copies of discovery, whether in hard copy or

10

via an iPad disabled from connecting to the Internet, would comply with both the language and spirit of 18 U.S.C. § 3509 and 18 U.S.C. § 3771.

### I. 18 U.S.C. § 3509 does not preclude Mr. Sanders from having redacted copies of non-contraband discovery.

The Adam Walsh Child Protection and Safety Act of 2006, 18 U.S.C. § 3509, "does not prohibit disclosure of the name of or other information concerning a child to the defendant." 18 U.S.C. § 3509(d)(4). The Act explicitly provides that "the defendant and employees of the defendant, including the attorney for the defendant" and "employees of the Government connected with the case" "shall" only disclose "the name or any other information concerning a child" "to persons who, *by reason of their participation in the proceeding*, have *reason to know* such information." 18 U.S.C. § 3509(d)(1)(A)-(B) (emphases added). Nothing in the Act states that a defendant cannot be provided copies of non-contraband material with the names and personal identifiers redacted that contains other information he has reason to know. 18 U.S.C. § 3509(m) (restricting only the reproduction of child pornography, not non-contraband material).

### II. Modifying the protective order will not undermine legitimate prosecutorial interest served by the protective order.

Unless the government is going to close the entire courtroom during trial and put the entire case under seal, which the defense would object to,[4] the term "information concerning a child" that a defendant does *not* "have reason to know" cannot be read so broadly as to include the redacted,[5] sanitized chats that the government intends to introduce at trial, and other redacted,

---

[4] *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980) ("the Sixth Amendment guarantees the accused a right to a public trial").

[5] As the defense indicated to the government, these redactions would include the "names, family members, contact information, addresses, usernames and/or passwords, and educational institutions of the alleged minor victims." Ex. 2 at 2.

11

exculpatory information that the defense expert has extracted. The modifications proposed by Mr. Sanders would not jeopardize "any legitimate prosecutorial need" here. *United States v. Ramey*, 791 F.2d 317, 321 (4th Cir. 1986).

If the Court cannot make such a finding at this time, at the very least, the government should be ordered to show cause as to how giving information to Mr. Sanders with the names and personal identifiers of the minors redacted, would violate either 18 U.S.C. § 3509 or 18 U.S.C. § 3771, or result in a sufficiently clearly defined or serious injury. *In re Terrorist Attacks on September 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (Good cause exists "when a party shows that disclosure will result in a clearly defined, specific and serious injury"). The government should provide counsel and his Court with authority supporting its interpretation of 18 U.S.C. § 3771 and 18 U.S.C. § 3509 and its view that 18 U.S.C. § 3771 and 18 U.S.C. § 3509 can override Mr. Sanders's right to assist in his defense. *See United States v. Workman*, 2019 WL 276843, at *1 (W.D. Va. Jan. 22, 2019) ("a protective order under Rule 16(d) should not override a defendant's right to a fair trial").

### III. Mr. Sanders would not have consented to the protective order.

Mr. Sanders also asks that the Court take into account the serious, life-altering consequences he is facing[6] and the fact that he would not have agreed to the Protective Order if he understood that the Government would prevent him from reviewing crucial discovery or making his review of the voluminous discovery in this case unreasonably burdensome and time-consuming by forcing him to do so only during attorney video calls or in-person visits, at

---

[6] Production of child pornography carries a mandatory minimum of 15 years in federal prison. *United States v. McCauley*, No. 19-4318, 2020 WL 7414398, at *4 (4th Cir. Dec. 18, 2020) (emphasizing the seriousness of a mandatory minimum of fifteen years). If Mr. Sanders were to be convicted at trial or plead guilty to the lead count (the Government's current plea offer), he would be unlikely to see his 63-year-old mother or 82-year-old father again outside of prison.

significant financial cost. Mr. Sanders consented to the Protective Order in order to speed discovery and prepare his defense. Unfortunately, the government has refused to provide discovery in a way that allows Mr. Sanders to conduct a meaningful review, in a way that does not require extensive attorney resources—and for no useful purpose, as the attorneys would merely be watching Mr. Sanders silently read thousands of pages of material over many, many hours.

## **CONCLUSION**

Wherefore, for the above reasons and any other reason appearing to the Court, Mr. Sanders respectfully requests that his Motion be granted and that this Court issue the proposed discovery order and modify the protective order to ensure Mr. Sanders is able to adequately review discovery prior to the July 12, 2021 trial.

Respectfully submitted,

ZACKARY ELLIS SANDERS
By Counsel

Respectfully submitted,

_____/s/_____
Nina J. Ginsberg (#19472)
Zachary Deubler (#90669)
DiMuroGinsberg, P.C.
1101 King Street, Suite 610
Alexandria, VA  22314
Telephone: (703) 684-4333
Facsimile: (703) 548-3181
Email: nginsberg@dimuro.com
Email: zdeubler@dimuro.com

_____/s/_____
Jonathan Jeffress (#42884)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C.  20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

*Counsel for Defendant Zackary Ellis Sanders*

### CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of April 2021, the foregoing was served electronically on counsel of record through the U.S. District Court for the Eastern District of Virginia Electronic Document Filing System (ECF) and the document is available on the ECF system.

*/s/ Jonathan Jeffress*
Jonathan Jeffress