IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:20-CR-143 |
| v. ) | |
| ) | Honorable T.S. Ellis, III |
| ZACKARY ELLIS SANDERS, ) | |
| ) | Hearing: May 7, 2021 |
| *Defendant.* ) | |
| ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO THE DEFENDANT'S
MOTION TO MODIFY THE PROTECTIVE ORDER**

On April 26, 2021, the defendant filed his second motion to modify the agreed-upon Protective Order. Dkt. Nos. 302 & 303. He seeks to relax the Protective Order to permit his possession of numerous chat exchanges with various minors he sexually exploited, as well as other unspecified material from his seized electronic devices, while incarcerated at the Alexandria Detention Center ("ADC"). The United States, by and through undersigned counsel, hereby files this response in opposition to the defendant's motion.

**BACKGROUND**

On June 24, 2020, a federal grand jury in the Eastern District of Virginia returned a twelve-count indictment charging the defendant with production, receipt, and possession of child pornography. Dkt. No. 29. The charges in this case are based on, among other evidence: (1) the defendant's online chats with six minors; and (2) material depicting the sexual abuse of other children stored on electronic devices seized from his bedroom. In these six chats, the defendant instructed five minors to record and send him depictions of themselves engaging in specific sexually explicit acts, which they did, and received sexually explicit files depicting a sixth minor.

As outlined in the affidavit in support of the criminal complaint, the defendant posted online advertisements encouraging "boys" in the Virginia area who wanted to become his "slaves" and "boys" around the world "who want to be blackmailed" to message him on a mobile messaging application. Dkt. No. 4 at ¶ 14. Consistent with his postings, he frequently asked—and, at times, demanded—that the minor victims in this case provide him with personal information about themselves to use to either blackmail them or assess whether, in his view, they "truly desire[d] to become [his] sub or slave long-term, eventually being collared and owned permanently." *Id.* Thus, due to the defendant's strategy for producing child pornography, his six chats with the minor victims naturally contain significant amounts of sensitive, private information about the victims. In addition to referencing personally identifying information like the minors' names, their parents' names and addresses, and their dates of birth, several of the chats contain numerous references to and discussions of the victims' personal lives, their relationships with their friends and family, their academic lives and future plans, and even their medical history. The defendant's chat with MINOR VICTIM 5, for example, includes discussions about the minor's struggles with his sexuality and family, his sexual history, his school life and his after-school job, and even treatment he received for a serious medical issue.

Given the plainly sensitive nature of the discovery materials, the government filed a motion with the express consent of the defendant for the entry of a Protective Order on April 27, 2020. Dkt. No. 27. That same day, the Court entered the Protective Order, signed and agreed to by counsel for both parties. Dkt. No. 28. In pertinent part, the Protective Order prohibits the defense team from duplicating or providing copies of discovery materials to the defendant and other individuals not involved with this case. *Id.* at ¶ 3.

Following the entry of the Protective Order, the government produced sanitized[1] copies of the six chats—approximately 2,150 pages total (labeled US-00000053 to US-00002207 in the government's production)—to defense counsel on July 7, 2020, nearly ten months ago. These chats vary in length from several hundred pages to under fifty pages. One chat is just eleven pages long. Moreover, there are roughly eight messages per page, many of which consist of only a few words. The government also transported the defendant to a private room in the U.S. Attorney's Office on five occasions, for multiple hours on each occasion, to review with counsel the non-sanitized chats and the child sexual abuse material he possessed on his devices—that is, the child-pornography evidence that the government identified in its initial exhibit list, Dkt. No. 206, and intends to present at trial. The government did so most recently on May 3 and May 4, 2021, based on the Court's instructions to the parties at the April 2, 2021, and has offered to set up an additional meeting on a mutually convenient date.[2]

Despite the above, the defendant claims to have only reviewed a "small portion" of the six chats over the last ten months, primarily because of difficulties he claims he has had with the attorney-client videoconferencing system used by ADC during the COVID-19 pandemic. Dkt. No. 303 at 3. He does not explain why he did not review these materials during his previous meetings at the U.S. Attorney's Office in November 2020, December 2020, and February 2021.

More recently, on the afternoon of March 12, 2021, the defendant's two newly retained counsel reviewed the non-sanitized versions of the six chats and child sexual abuse material

---

[1] The term "sanitized chats" refers to copies of the chats from which the child sexual abuse material has been removed.

[2] A fuller recounting of the various ways in which the defendant, his attorneys, and his examiners have reviewed the child-pornography evidence in this case pursuant to 18 U.S.C. § 3509(m) is in the government's response to the defendant's motion to continue the trial. *See* Dkt. No. 272.

3

supporting the possession of child pornography count at the U.S. Attorney's Office. Counsel have not suggested that the amount of time they had to review this material was insufficient; nor have they asked to return to complete their review. Additionally, after the defendant made his first request for his examiners to review the forensic evidence in this case in December 2020, his examiners travelled to a Federal Bureau of Investigation ("FBI") office nine times to examine the contents of his seized devices. Defense counsel accompanied the examiners on several of these occasions. The FBI permitted the defendant's examiners and defense counsel to extract copies of non-contraband evidence they identified during these meetings to review with the defendant outside the FBI, although a reviewing FBI agent not involved with this investigation found child pornography in the material the examiner and defense counsel sought to remove on at least three occasions. According to the defendant, his examiners successfully reviewed these devices and extracted approximately 2,000 pages of allegedly exculpatory information. Dkt. No. 303 at 3. The government does not know what information is contained in the material his examiners extracted beyond the fact that some of what the examiner sought to remove from the FBI's office contained child sexual abuse material. The defendant is asking to modify the Protective Order to allow him to have copies of this unknown material at ADC as well. Dkt. No. 302-1 at 2.

On May 1, 2021, ADC resumed daily, pre-scheduled attorney-client meetings in person for several hours every day of the week, in addition to the videoconferencing meetings. *See* Dkt. No. 303-4. According to ADC, attorneys can schedule in-person meetings with inmates in 45-minutes blocks with no stated limitation on the number of blocks an attorney can request on a single day or over the course of a single week. *Id.* The defendant can therefore now review the non-contraband evidence with his counsel at ADC, including the sanitized chats and the allegedly exculpatory material the defendant's examiners extracted from his devices. *See* Dkt. No. 303 at 3,

4

8. Because ADC has resumed attorney-client meetings, the only evidence the defendant cannot review in person at ADC is the child sexual abuse material.

As noted above, the government transported the defendant to the U.S. Attorney's Office for two full days on May 3 and May 4, 2021, to review this contraband evidence with his counsel and other members of the defense team. On May 3, 2021, two of the defendant's attorneys and one of his examiners attended the review. On May 4, 2021, two of the defendant's other attorneys and another member of the defense team attended the review. At the defendant's request, the government arranged for the FBI to provide a high-powered forensic computer for the defendant, his attorneys, and the defense team to use during these reviews. On May 4, 2021, also at the defendant's request, the government provided an additional laptop for the defense team to use to review contraband evidence during the review. And while these reviews are intended to permit the defendant to review the child-pornography evidence in this case with his defense team, the government also made available at the defendant's request the full forensic extractions of the data from his two iPads and an iPhone that his examiners have already had a full opportunity to review on nine occasions.[3] Once the FBI's computer is returned to the FBI, the government can make it available for the defendant's examiners to use to conduct additional examinations of his devices if the defendant wishes. To date, he has not made any such requests.

## ARGUMENT

The defendant has moved to modify the Protective Order he previously agreed to so he can have copies of the chats with the minor victims he sexually exploited and unspecified material potentially related to these minors and others at ADC. *See* Dkt. Nos. 302-1 at 2, 303 at 9–13. He

---

[3] The extractions from the defendant's two iPads have also previously been made available for the defendant's review at the U.S. Attorney's Office.

claims that good cause exists to support his proposed modifications because he has only reviewed a small portion of the chats he received nearly ten months ago and because his defense team will try to redact all references to the minor victims' names and whatever other personal identifiers are known to them in this material. Dkt. No. 303 at 9–12. This attempt at redactions, he claims, is sufficient to protect the privacy and dignity rights guaranteed to the minor victims by statute. *Id.*

The defendant's arguments miss the point. As this Court explained when denying a motion to modify a similar order for the same reason in a child-exploitation case, the Protective Order here follows the requirements of the Crime Victims' Rights Act and 18 U.S.C. § 3509(d)(1)(A), which govern the protections owed to the minor victims sexually exploited by the defendant. *See* Order, *United States v. Hewlett*, 1:20-cr-64-TSE, Dkt. 84 (E.D. Va. Aug. 12, 2020) ("*Hewlett* Order") at 10.[4] The material the defendants seeks to possess at ADC is so replete with private and potentially embarrassing information about the minor victims that, even assuming *arguendo* the defense is aware of and successfully redacts all the victims' personal identifiers, there is no practical or safe way for him to maintain copies of this material at ADC without violating those victims' privacy and dignity rights. The defendant has been free to review and discuss this material with his counsel over videoconference and at the U.S. Attorney's Office. As of May 1, 2021, he can also do so in person at ADC. Like in *Hewlett*, the Protective Order therefore does not violate the defendant's constitutional rights or otherwise limit his ability to prepare a defense. *Id.* at 10–11. This is particularly true given the nearly unprecedented level of time, access, and resources the government has provided and continues to provide the defense to review child pornography evidence in this case. *Id.* at 10–11. Accordingly, the defendant's motion should be denied.

---

[4] The *Hewlett* Order is attached to this filing as Exhibit 1.

**I.      Good Cause Exists to Maintain the Protective Order Because the Discovery Materials Contain Private Information about the Minor Victims and Potentially Other Minors**

Federal Rule of Criminal Procedure 16 provides courts with broad discretion to oversee the criminal discovery process, including by entering protective orders "for good cause [that] deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d). As another court recently explained, courts across the country "have applied the standard for modification of protective orders in the civil context to the criminal context," and, "[i]n the civil context, there is a strong presumption against the modification of a protective order." *United States v. Maxwell*, 20-cr-330 (AJN), 2020 WL 5237334, at *1 n.2 (S.D.N.Y. Sept. 2, 2020) (internal citations and quotation marks omitted); *see also United States v. Kerik*, 07-cr-1027 (LAP), 2014 WL 12710346, at *1 (S.D.N.Y. July 23, 2014) ("[T]here is a general and strong presumption against access to documents sealed under protective order when there was reasonable reliance upon such an order and it is presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." (internal citation and quotation marks omitted)); *United States v. Morales*, 807 F.3d 717, 723 (5th Cir. 2015) (using civil "good cause" standard to evaluate modification of criminal protective order); *United States v. Wecht*, 484 F.3d 194, 211 (3rd Cir. 2007) (same). Ultimately, however, Rule 16 gives courts broad authority "to limit [the disclosure of discovery], condition it, or absolutely prohibit it in the interests of witness security or any other compelling reason[.]" *United States v. Roberts*, 793 F.2d 580, 587 (4th Cir. 1986), *vacated on other grounds*, 811 F.2d 257 (4th Cir. 1987).

The defendant cannot overcome the strong presumption against modifying the agreed-upon Protective Order because the discovery here contains sensitive information about, among other things, the minor victims he sexually exploited. Indeed, the government sought out the entry of this Protective Order specifically because it is critical to ensure that this information is kept secure.

Dkt. No. 27 at ¶ 2.  The defendant and his counsel also agreed, as part of the Protective Order, that the defense team can review this material with the defendant but cannot leave it in his custody in jail.  *See* Dkt. No. 28 at ¶ 3.  Nothing about the sensitive nature of this material has changed in the intervening twelve months.  The chats that the defendant wants to have unsupervised access to at ADC still contain innumerable references to the minor victims' personal identifiers and private details about their personal lives.  This is entirely unsurprising, since the defendant's particular method of producing child sexual abuse material involved his encouragement of the minor victims to share with him sensitive information—both in order to generate an illusion of intimacy and closeness, and to permit the defendant to use the information to pressure his minor victims if they failed to comply with his demands.  The content of the chats themselves reveal a pattern consistent with the sexual grooming of minors.  As the Fourth Circuit has recognized, "[g]rooming refers to deliberate actions taken by a defendant to expose a child to sexual material; the ultimate goal of grooming is the formation of an emotional connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual activity."  *United States v. Engle*, 676 F.3d 405, 412 (4th Cir. 2012) (quoting *United States v. Chambers*, 642 F.3d 588, 593 (7th Cir. 2011)).  Here, the defendant did just that, gradually introducing minors to his sexual interests while simultaneously asking them questions about their personal lives and families.

The privacy interests of minor victims in this sort of sensitive information is precisely what the Protective Order and 18 U.S.C. §§ 3509(d) and 3771 are designed to protect.  The Crime Victims' Rights Act provides that crime victims have a "right to be reasonably protected from the accused" and a "right to be treated with fairness and with respect for [their] dignity and privacy."  18 U.S.C. § 3771(a)(1), (8).  Child victims like the ones here are entitled to even further protections, including a right to have "all documents that disclose the name or *any other*

8

*information concerning a child*" kept "in a secure place to which no person who does not have reason to know their contents has access" and a right to have this information disclosed "only to persons who, by reason of their participation in the proceeding, have reason to know such information." 18 U.S.C. § 3509(d)(1)(A) (emphasis added).  Given the amount of personal information and anecdotes littered throughout these chats, simply redacting the victims' names and identifiers as the defendant proposes is insufficient to preserve the minors' dignity and protect their right to privacy in their identity and "any other information concerning" them.

Even assuming *arguendo* that the defense is able to redact all the minors' personal identifiers—which itself is unlikely because the defense team likely does not understand the significance of all the information the minors disclosed and the defendant repeated, and the defense team may simply miss identifiers due to spelling errors in the chats or oversight—the chats will still reveal a range of private, sensitive, and potentially embarrassing information that the minor victims shared with the defendant.  The defendant provides no support for the suggestion that a minor victim's recounting of, for example, disagreements with his family members falls outside the scope of "any other information concerning a child" that must be protected under 18 U.S.C. § 3509(d)(1)(A)(i).  To the contrary, common sense and everyday human experience readily demonstrates that personal information of this sort is exactly the information that a statute intended to protect victim privacy must naturally be read to protect.  The defendant similarly provides no explanation of how his unsupervised access to this information at ADC, potentially around inmates and others present in the facility, would ensure that the minor victims' dignity and privacy rights are being treated with respect under 18 U.S.C. § 3771(a)(8).

The defendant's motion further asks the Court to modify the Protective Order so that he can have copies of unspecified additional material at ADC that his examiners extracted from his

9

devices. Dkt. No. 301-2 at 2. The government is unaware of the exact nature of the information contained in this material, but both parties have been made aware that a reviewing FBI agent found child sexual abuse material in the examiner's extractions on multiple occasions. It stands to reason, then, that this material also relates to the minor victims or potentially other minors. It may include, for example, sanitized or otherwise legal images or videos of the minor victims that the defendant saved to his devices. The defendant's assurance that the defense will redact the minor victims' names and whatever other identifiers they are able to find is therefore wholly inadequate to ensure that the minor victims' privacy and dignity rights are protected. Put simply, given the nature of the evidence here, there is no practical or safe way to provide the defendant with copies of discovery at ADC without introducing private and personal information about the minor victims and potentially other minors into an unsupervised and unsecured setting. The Protective Order and 18 U.S.C. §§ 3509(d) and 3371 exist to prevent this sort of dissemination. Accordingly, good cause exists to maintain the Protective Order in its current form.

Two additional factors also counsel against giving the defendant unsupervised access to this material at ADC. First, after the defendant's arrest, one of the minor victims reported to the FBI that the defendant's mother contacted him through a social media website and indicated that she believed the defendant was being framed.[5] Presumably, the defendant's mother received the minor victim's name or contact information from the defendant, indicating that he does not have an issue with disclosing information about the minor victims to others. Second, the defendant recently advanced a new claim that he does not have the capacity to understand or appreciate the wrongfulness of his conduct here, *see* Dkt. No. 305 at 3, which severely undermines the defense's need for the defendant's continual review of his documented conduct and raises serious concerns

---

[5] This information was produced to the defendant on October 13, 2020, at US-00005239.

10

about what the defendant might do with this sensitive material in an unsecured setting like ADC. A defendant who lacks the ability to appreciate the harm in causing multiple minors to generate and transmit to him sexually explicit depictions of themselves likely also lacks the ability to carefully identify and diligently safeguard those minor victims' manifest privacy interests in the sensitive material he seeks to possess at ADC. Accordingly, the defendant's motion to modify the Protective Order should be denied.

## II. The Defendant Provides No Plausible Explanation as to How the Protective Order is Limiting his Defense

The defendant also argues that the agreed-upon Protective Order should be modified because it has prevented him from reviewing the chats and other unspecified non-contraband evidence and has therefore prevented him from "mounting an effective defense." Dkt. No. 303 at 9. As this Court explained in *Hewlett*, however, restrictions like those imposed by the Protective Order here do not violate a defendant's constitutional right to prepare a defense. *Hewlett* Order at 10–11. The defendant in *Hewlett* argued that a provision of a protective order prohibiting counsel from leaving discovery with him violated his Sixth Amendment rights in light of the ADC's restrictions on in-person meetings during the COVID-19 pandemic. *Id.* at 9–10. In denying his motion, the Court explained that ADC's restrictions imposed no greater an impediment to the defendant's review of discovery than if defense counsel was able to meet with the defendant in person at ADC. *Id.* at 10. In fact, the Court concluded, courts in the Fourth Circuit and elsewhere have found good reason to uphold far more restrictive protective orders. *Id.* at 11 (citing cases).

Here, the defendant has had substantially more access to the discovery material than the defendants in *Hewlett* and the cases identified by the Court. The material he claims not to have reviewed was provided to him ten months ago. As outlined above, he has been transported to the U.S. Attorney's Office on several occasions for multiple hours each time to review both this

11

evidence and the government's contraband evidence with his counsel. Most recently, the government provided the defendant with a high-powered forensic computer to use during additional evidence reviews at the U.S. Attorney's Office to ensure that he and his defense team can use these meetings to adequately review whatever contraband or non-contraband the defendant wishes, including the non-sanitized chats that make up the bulk of the evidence in this case. The government has simultaneously made the contraband evidence available to the defense counsel whenever requested and has arranged for the defendant's forensic examiners to examine his seized devices on nine separate occasions at the FBI. In this respect, the defendant's focus on the amount of data on his devices, *see* Dkt. Nos. 302-1 at 1 & 303 at 3, is a red herring. His examiners have already reviewed all this data and extracted what the defense team determined to be exculpatory. The defendant has had the opportunity to do the same, most recently on May 3 and May 4, 2021. He can now review that material with his counsel at ADC. Should his examiners need additional time to review his devices at the FBI's office, he can make that request. To date, he has not. Accordingly, the government has far exceeded its obligation to make the child-pornography evidence "reasonably available" to the defense under 18 U.S.C. § 3509(m), and the defendant cannot plausibly claim that the Protective Order has hampered his ability to review the evidence against him or prepare his defense in any meaningful way.

Moreover, unlike in *Hewlett*, the defendant can meet with defense counsel in person at ADC and review non-contraband evidence. ADC is holding in-person meetings every day of the week for multiple hours each day and attorneys can schedule meetings in advance in 45-minute blocks with no stated limitation on the number of blocks an attorney can reserve at a time. *See* Dkt. No. 303-4. And while the defendant somehow already determined that these meetings at ADC will be insufficient, his concerns are entirely speculative. *See* Dkt. No. 303 at 6–7. Just as

the defendant has done in his prior evidence reviews at the U.S. Attorney's Office, where the defense team was required to follow COVID-19-related social-distancing and safety protocols, the various members of his defense team can, if they choose, alternate meeting with the defendant at ADC during the day, at night, and on weekends to review the non-contraband evidence in this case.

In light of the above, there is no plausible claim that the Protective Order is limiting the defendant's ability to prepare a defense. The defendant has received a nearly unprecedented amount of time, access, and resources to review the contraband and non-contraband evidence in this case. Should this matter proceed to trial in July, he will have had access to the chats he has reportedly been unable to review for over a year and will have had several months to meet with defense counsel in person at ADC to review them. And as the trial approaches, the government will continue to work with the defendant to ensure that his counsel and examiners have access to the evidence in this case at an appropriate government facility in the event they wish to review it again. Accordingly, the defendant's motion to modify the Protective Order and jeopardize the privacy and dignity rights of the minor victims in this case should be denied.

//
//
//
//
//
//
//
//

## **CONCLUSION**

For the reasons above, the government respectfully requests that the Court deny the defendant's second motion to modify the Protective Order. Dkt. No. 302.

Respectfully submitted,

Raj Parekh
Acting United States Attorney

By:       /s/
William G. Clayman
Special Assistant United States Attorney (LT)
Jay V. Prabhu
Seth M. Schlessinger
Assistant United States Attorney
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: 703-299-3700
Fax: 703-299-3981
Email: william.g.clayman@usdoj.gov
Email: jay.prabhu@usdoj.gov

**CERTIFICATE OF SERVICE**

    I hereby certify that on May 4, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which automatically generated a Notice of Electronic Filing to the parties of record.

        By:    /s/
           William G. Clayman
           Special Assistant United States Attorney (LT)
           U.S. Attorney's Office
           2100 Jamieson Avenue
           Alexandria, Virginia 22314
           Tel: 703-299-3700
           Fax: 703-299-3981
           Email: william.g.clayman@usdoj.gov