# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 20-CR-64 |
| ) | |
| ) | |
| KEVIN HEWLETT ) | |

### ORDER

Defendant Kevin Hewlett, a pretrial detainee at the Alexandria Detention Center ("ADC"), is facing trial on an indictment charging him with production and distribution of child pornography. After defendant contacted and attempted to contact the minor victim in this case, as well as other witnesses, two orders issued limiting defendant's access to the telephone and to mail at ADC. Additionally, a protective order issued which precludes defendant from reviewing discovery materials outside of the presence of his counsel. Defendant, represented by counsel, now challenges those orders as unconstitutional and as violating his First and Sixth Amendment Rights. Defendant first seeks to revoke the orders limiting his telephone and mail access at ADC (the "First Motion"). Defendant also seeks to modify the current protective order so that he may review discovery material outside of the presence of his counsel (the "Second Motion"). The government opposes defendant's motions and argues that the restrictions placed on defendant are necessary in light of defendant's repeated efforts to contact the alleged minor victim and other witnesses in violation of existing Court orders.

The matter is thus fully briefed and ripe for disposition. Oral argument is dispensed with as the facts and legal contentions are adequately set forth in the existing record and oral argument would not aid the decisional process. For the reasons stated below, defendant's motions must be denied.

### I.

A recounting of defendant's conduct during pretrial detention and the procedural history of this case provides important context for resolution of defendant's motions.

1

On November 20, 2019, defendant was charged by criminal complaint with distribution of child pornography. *See* Criminal Complaint (Dkt. 1). In the affidavit supporting the criminal complaint, the government alleges that defendant engaged in sexual contact with a minor girl ("Minor Girl 1")[1] and that a cell phone, retrieved pursuant to a warrant issued by a Loudoun County Circuit Court Magistrate, contains a video of defendant and Minor Girl 1 having sexual intercourse. *See* Affidavit in Support of a Criminal Complaint (Dkt. 2). Defendant was arrested and had his initial appearance on November 22, 2019. *See* Minute Entry (Dkt. 9). At the conclusion of his initial appearance, defendant was detained and then was transferred to the ADC. *See* Temporary Detention Order (Dkt. 10).

The government reports that, on November 25, 2019, Minor Girl 1's relative contacted law enforcement and reported that a telephone number used by inmates at ADC had been attempting to contact Minor Girl 1. *See* Opp'n at 2. The government subpoenaed defendant's jail call records and confirmed that defendant had attempted to contact Minor Girl 1. *See id.* Upon their review of defendant's jail call records, law enforcement agents also determined that defendant had placed multiple phone calls to another minor girl – hereinafter, Minor Girl 2[2] – and that, during those calls, Minor Girl 2 told defendant, "I really love you." *Id.*

On November 26, 2019, defendant appeared before Magistrate Judge Theresa Carroll Buchanan for a detention hearing. *See* Minute Entry (Dkt. 11). Judge Buchanan denied defendant's motion for bond with conditions and ordered defendant detained pending trial. *See id.* Additionally, when the government informed Judge Buchanan of defendant's attempts to contact Minor Girl 1, Judge Buchanan issued an order that "defendant is not allowed to access a phone

---

[1] The parties refer to the minor as "Minor Girl 1." The affidavit, however, refers to her as "Minor-2."

[2] The government notes that, since November 2019, Minor Girl 2 has reached adulthood.

2

while in jail, nor is he permitted to send mail." Order, dated November 26, 2019 (Dkt. 12) ("November 26, 2019 Order"). After the November 26, 2019 Order issued, defendant was still able to: (i) meet in person with friends and family; (ii) meet in person with his counsel; and (iii) send mail to and receive mail from his counsel.[3]

Thereafter, law enforcement officers interviewed Minor Girl 2 who stated that in October or November 2019, while she was still a minor, defendant had sexual intercourse with her. *See* Opp'n at 2-3. Law enforcement officers then seized Minor Girl 2's phone which contained text messages dated December 2, 2019 which stated:

> Kevin Says He Loves & Misses You. He Can't Call or Write Just Yet. So Just Get a PO Box Or Something. You Should Get A Calla About Some Things He Told People To Give You. Stay Strong For Him . . . He Dreams of You Every night.

Opp'n at 3. The government reports that the woman who sent the text message said that "she sent the text at the behest of an inmate who was a friend of her boyfriend (also an inmate at ADC)." *Id.*

On January 15, 2020, the parties jointly moved for the entry of a protective order. *See* Motion for Protective Order (Dkt. 21). The next day, Judge Buchanan entered the proposed protective order. *See* Protective Order (Dkt. 22). The Protective Order precludes the unauthorized dissemination of information disclosed in discovery about the minor victim in this case as well as other minors about whom the government learned sensitive information. *See* Protective Order at 1. Although defendant may review discovery materials with his counsel, the Protective Order requires that discovery materials not be "left with or given to the Defendant outside the presence and supervision of another member of the Defense Team." *Id.* ¶ 12.

The government reports that, between January and February 2020, defendant repeatedly provided Minor Girl 1's contact information to other inmates residing at ADC. *See* Opp'n at 4. The

---

[3] As defendant notes in his First Motion, defendant is still permitted to send and receive legal mail. Presumably, this is mail to and from defendant's counsel.

3

government argues that, "[i]n each case, the Defendant provided the information to facilitate contact with Minor Girl 1 in contravention of this Court's order." *Id.* The government asserts that during these contacts with Minor Girl 1, defendant:

- Tried to convince Minor Girl 1 to come visit him;
- Told Minor Girl 1 to get a Voice Over IP or "VOIP" phone number so that they could "work it out that way"; and
- Directed Minor Girl 1 to make sure that none of her electronic devices were taken, presumably by law enforcement.

*See id.* at 4. The government also reports that defendant used the children of other inmates to attempt to contact Minor Girl 1, warning those persons not to refer to defendant directly, and directing them to get pictures with Minor Girl 1's horses. *See id.* at 4-5. In one instance, defendant spoke directly with the inmate's daughter on the phone. *See id.* at 5.

On March 5, 2020, a federal grand jury returned a two-count Indictment charging defendant with (1) production of child pornography in violation of 18 U.S.C. §§ 2251(a) and 2251(e), and (2) distribution of child pornography in violation of §§ 2252(a)(2) and 2252(b)(1). On March 13, 2020, an arraignment was held before Judge Brinkema. *See* Minute Entry (Dkt. 30). Shortly before the arraignment, the government learned that ADC would be implementing visitation restrictions to slow the spread of COVID-19. *See* Opp'n at 5. In light of those restrictions, the government orally moved to modify the restrictions placed on defendant in the November 26, 2019 Order. Judge Brinkema granted this oral motion and issued an order that: (i) defendant may have access to a telephone while detained, but that any telephone numbers accessed by defendant must be agreed to by the government and defense counsel; and (ii) defendant may not have contact with any minors or potential witnesses, nor may he direct or induce others to do so on his behalf. *See* Order, dated March 13, 2020 (Dkt. 32) ("March 13, 2020 Order").

Consistent with the March 13, 2020 Order, defendant counsel provided the government with a list of six individuals which defendant sought approval to call. *See* Opp'n at 5. The government

4

granted approval for defendant to communicate with all six individuals. *See id.* Although defendant was aware that he was precluded from contacting persons not on the approved list, ADC personnel discovered that defendant was already using the telephone before ADC personnel were able implement the March 13, 2020 Order. *Id.* at 6. The government asserts that ADC employees believe that defendant regularly uses other inmates' telephone access numbers to make telephone calls in violation of the November 26, 2019 and March 13, 2020 Orders.

The government also reports that, on May 2, 2020, Minor Girl 2 received a message on social media from someone unknown to her, stating that "Chase" missed her and loved her. *Id.* Minor Girl 2 told law enforcement that "Chase" was a name used by defendant in his communications with Minor Girl 2. Additionally, the person who sent the message on social media said that she was asked to pass the message along from someone detained at ADC. *Id.* This communication shows that defendant was in violation of the March 13, 2020 Order, because he used a third party to contact a witness.

## II.

On June 5, 2020, defendant filed his First Motion seeking to revoke the restrictions put in place by the November 26, 2019 and March 13, 2020 Orders (collective, the "Orders"). Defendant first argues that the telephone and mail restrictions in the Orders violate his First and Sixth Amendment rights. Defendant cites to no authority in support of his First Motion. Nor does defendant explain *how* the restrictions contained in the Orders violate his rights. They do not, as settled authority makes clear that neither Order violates defendant's rights.

To begin with, the Supreme Court, in *Bell v. Wolfish*, 441 U.S. 520 (1979), addressed generally the standard for evaluating restrictions on pretrial detention. Specifically, the Supreme Court held that, "[i]n evaluating the constitutionality of conditions or restrictions of pretrial detention . . . the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell*, 441 U.S. at 535. In *Bell*, the Supreme Court further noted that the fact that "such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during

5

confinement" does not convert those restrictions into "punishment." *Id.* In making the assessment whether a condition amounts to punishment, a district court must examine: (i) whether there is a "valid, rational connection" between the restrictions and the government interest put forward to justify it; (ii) whether there are alternative means of exercising the right that remains open; (iii) the impact of the requested accommodation on the facility; and (iv) the "absence of ready alternatives." *Turner v. Safly*, 482 U.S. 78, 89-90 (1987). Here, the Orders are rationally related to the government's interest in precluding defendant from contacting the alleged minor victim and other witnesses in the case.

In this regard, the current record reflects that defendant has violated and attempted to circumvent the Orders restricting defendant from against contacting the minor victim, Minor Girl 1, as well as other witnesses in the case. Indeed, defendant here has repeatedly attempted to contact the alleged victim, Minor Girl 1, as well as other witnesses in violation of Court orders. Moreover, the Crime Victims' Rights Act provides that victims have a "right to be reasonably protected from the accused." 18 U.S.C. § 3771(a)(1). Nor is there any doubt that the restrictions imposed by the challenged Orders are reasonably related to (i) protecting the alleged victim from defendant; (ii) preventing defendant from contacting witnesses or other minors involved in this case; and (iii) preventing violations of the Protective Order's prohibition on contact with Minor Girl 1 and other minors. Notwithstanding the Orders, defendant has made efforts, using third parties, to attempt to violate the restrictions imposed by the November 26, 2019 Order, the Protective Order, and the March 13, 2020 Order and to maintain contact with Minor Girl 1 and Minor Girl 2.

As the government correctly notes, the restrictions originally imposed as part of the November 26, 2019 Order prohibited any telephone calls or mail but permitted in-person visits for counsel and for friends and family to visit defendant. Nonetheless, in December 2019, defendant used a third party to text Minor Girl 2 and, in January and February 2020, defendant used other inmates, to facilitate contact with Minor Girl 1. The restrictions imposed on defendant were thus necessary to protect the alleged victim from contact by defendant and to prevent defendant from contacting other witnesses.

6

Additionally, alternative means of communication remained open, because defendant could have visitors at ADC and is permitted to send and receive legal mail. Finally, defendant has not presented a "ready alternative." *Turner*, 482 U.S. at 89-90. Nor do any such alternatives appear currently available, given defendant's repeated violations of these Orders and the Protective Order and the need to prevent contact with Minor Girl 1 or Minor Girl 2. Thus, the November 26, 2019 Order is not an unconstitutional punishment under the *Bell* and *Turner* framework.

When ADC responded to the COVID-19 pandemic by ceasing to permit in-person visitors, the government recognized that the previously available alternative means of communicating with people, namely in-person meetings, no longer existed. Accordingly, the government requested a modification of the November 26, 2019 Order to permit defendant to communicate with approved persons by telephone. Judge Brinkema granted that request in the March 13, 2020 Order and the defendant was permitted to submit the names and telephone numbers of persons with whom he wished to communicate. Notably, the government has approved all of the names and contact numbers submitted by defendant.[4] After the entry of the March 13, 2020 Order, the restrictions on defendant were eased and modified to ensure that alternative means of communication remained open to defendant. Accordingly, the March 13, 2020 Order is not unconstitutional under the *Bell* and *Turner* framework and defendant's motion must be denied.

Defendant's First Motion provides no description or explanation of how his First and Sixth Amendment rights were violated by the imposition of the restrictions in the November 26, 2019 and March 13, 2020 Orders, cites to no case law in support of his motion, and provides no alternative restrictions that would address his concerns. With respect to defendant's alleged Sixth Amendment violation, defendant presumably means to assert an interference to his right to counsel. Yet, as defendant concedes the November 26, 2019 Order does not prevent defendant from sending or

---

[4] Importantly, the March 13, 2020 Order does not limit the number of names that defendant may submit for approval nor does it limit defense counsel in the exercise of her duties.

7

receiving legal mail to and from his attorney. Additionally, as defendant admits in his Second Motion, defendant is not only able to meet with his attorney via videoconferencing, but defense counsel is able to share counsel's computer screen with defendant, thus permitting defendant to view discovery materials and confer with his counsel concerning the discovery materials. Second Motion at 1. Therefore, the challenged Orders permit defendant to: (i) meet with his attorney via videoconferencing; (ii) review discovery with his attorney; (iii) send and receive legal mail; and (iv) call his attorney. It follows that the challenged Orders do not violate Defendant's Sixth Amendment rights. Indeed, on this record, it is also clear that the restrictions imposed by the challenged Orders are rationally related to the government's legitimate purpose of protecting the alleged victim and other potential witnesses.

Defendant also alleges that his First Amendment rights have been violated – again without explanation or citation to authority. Courts have uniformly held, however, that "prisoners have no per se constitutional right to use a telephone." *United States v. Footman*, 215 F.3d 145, 155 (1st Cir.2000); *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir.1994) (holding that "an inmate has no right to unlimited telephone use"); *Martinez v. Mesa County Sheriff*, 69 F.3d 548, 1995 WL 640302 (10th Cir.1995) (holding that an inmate "has no constitutional right to make personal telephone calls"). More specifically, restrictions requiring preapproval of persons to whom calls may be placed, like those in place here, have routinely sustained as reasonable by federal courts. *See Pope v. Hightower*, 101 F.3d 1382, 1384–85 (11th Cir.1996) (pre-approved calling list of no more than 10 persons); *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir.1994) (pre-approved calling list of no more than 30 persons); *Benzel v. Grammer*, 869 F.2d 1105, 1108 (8th Cir.1989) (pre-approved calling list of no more than three persons for inmates in disciplinary segregation); *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir.1986) (pretrial detainee's access to telephone subject to reasonable restrictions in the interest of security).[5] Here, defendant is not prohibited from contacting family and friends, but must have those

---

[5] While in the cases cited *supra* there are discussions of limits on the number of persons who may be on an approved call list, no such limitation applies here.

8

names and telephone numbers pre-approved by the government. Furthermore, defendant does not allege that the government has refused to approve any of the names that he has submitted. Accordingly, on this record, the Court can find no First Amendment violation and the restrictions in place are rationally related to the government's legitimate purpose of protecting the alleged victim.

In sum, defendant's conclusory allegations of First and Sixth Amendment violations, without explanation or citation to authority, fail. Under the framework established in *Bell* and *Turner*, the restrictions imposed in the November 26, 2019 and March 13, 2020 Orders do not amount to a punishment of defendant. Specifically, the restrictions are necessary to protect Minor Girl 1 and Minor Girl 2 from contact by defendant and to ensure that the Protective Order is followed, and no other less restrictive alternatives are available – nor are any suggested by defendant. Moreover, the restrictions imposed by the November 26, 2019 and March 13, 2020 Orders permit defendant to maintain contact with friends and family through (i) in-person visits under the November 26, 2019 Order and through (ii) approved telephone contacts under the March 13, 2020 Order after ADC prohibited in-person visits due to the COVID-19 pandemic. The record reveals no restrictions on access to counsel under the November 26, 2019 or March 13, 2020 Orders that would infringe on defendant's Sixth Amendment rights. Finally, defendant has no First Amendment right to unrestricted telephone access and the nature of restrictions imposed in the Orders challenged here are clearly necessary to protect the minor victim, other witnesses, and their families and have routinely been upheld by courts. *See, e.g., Pope*, 101 F.3d at 1384–85. Accordingly, defendant's First Motion must be denied.

### III.

In defendant's Second Motion, defendant seeks modification of the Protective Order to which he and the government agreed. Specifically, the Protective Order to which defendant agreed requires that discovery materials not be "left with or given to the Defendant outside the presence and supervision of another member of the Defense Team." Protective Order ¶ 12. Defendant argues that, in light of the restrictions imposed on in-person meetings at ADC because of the COVID-19 pandemic,

9

the Protection Order's requirement is more onerous, because defendant must meet with and review discovery with his counsel via videoconferencing, and therefore violates his Sixth Amendment rights. Defendant is incorrect.

To begin with, it is important to note that the challenged provision of the Protective Order was originally agreed to by defendant. The Protective Order follows the requirements of the Crime Victims' Rights Act which provides that alleged victims have a right to be "reasonably protected from the accused." 18 U.S.C. § 3771(a)(1). Moreover, alleged child victims are entitled to the protection that "all documents that disclose the name or any other information concerning a child" be secured in a place where "no person who does not have reason to know their content has access." 18 U.S.C. § 3509(d)(1)(A).

Although neither party discusses the volume of discovery or the percentage of discovery that contains sensitive information, the government generally asserts that "much of the discovery in this case is sensitive." Opp'n at 10. That most of the discovery in a child pornography case would contain sensitive material related either to the images at issue or information related to the minors involved is not surprising. It thus appears that defendant's suggestion that sensitive information be redacted is impractical, as it would result in swaths of wholly or partially redacted evidence. Moreover, it is unclear how ADC's new restrictions impose more of an impediment to defendant's review of discovery than the Protective Order to which defendant originally agreed. As contemplated when the Protective Order was originally entered, defense counsel would need to travel to ADC to meet with defendant in person to review discovery. Now, defendant may review discovery with counsel through a shared computer screen. This process is fully consistent with defendant's Sixth Amendment rights.

Nor does defendant cite to any case authority to the contrary. Indeed, courts have held that similar orders do not violate the Sixth Amendment right to prepare a defense. *See United States v. Moore*, 322 F.App'x 78, 83 (2d Cir. 2009) (holding that the district court did not violate defendant's Sixth Amendment rights when it denied defendant's motion to view discovery material without counsel

10

present). Indeed, in some cases, the Fourth Circuit has recognized that there may be a countervailing interest that prohibits counsel from discussing discovery material with defendant at all. *See, e.g., United States v. Moussaoui*, 591 F.3d 263, 289 (4th Cir. 2010). The Protective Order at issue here is far less restrictive and, as bears repeating, was agreed to by defendant. Moreover, some courts have held that a defendant does not have an independent right to review discovery material where he is represented by counsel. *See United States v. Thompson*, 2013 WL 1809659 at 5-6 (D. Me. 2013) (recognizing there are no cases holding that the Constitution or Rule 11 "require[ ] that a defendant represented by lawyer must personally see all the discovery ... or even the discovery that [the defendant] asks to see."); *United States v. Faulkner*, 2011 WL 3962513 *4 (N.D. Tex. 2011) (holding that the defendant's review of discovery is "not constitutionally required or otherwise legally mandated where, as here, [the defendant] is represented by counsel...."); *Baker v. McKee*, 2009 WL 1269628 (E.D. Mich. 2009) (holding that a criminal defendant has no independent right to his own copy of discoverable documents when represented by counsel and when documents were provided to defense counsel). Accordingly, the restrictions imposed by the Protective Order are fully consistent with the Sixth Amendment.

In sum, defendant's Second Motion neither explains how the Protective Order, which was originally agreed upon, now violates the Sixth Amendment nor does it cite to any authority supporting such a claim. A review of the relevant case authority demonstrates that there is no Sixth Amendment violation where, as here, providing such information to defendant would risk the dissemination of information about the alleged minor victim and other persons who were minors at the time of their contact with defendant. Accordingly, on this record, the Court finds no Sixth Amendment violation and must deny defendant's Second Motion.

Accordingly,

It is hereby **ORDERED** that defendant's motion to revoke orders prohibiting telephone and mail access in the jail (Dkt. 54) is **DENIED**.[6]

It is further **ORDERED** that defendant's motion to modify protective order (Dkt. 59) is **DENIED**.

The Clerk is directed to forward copies of this Order to all counsel of record.

Alexandria, VA
August 12, 2020

/s/
T. S. Ellis, III
United States District Judge

---

[6] If there are other ways to protect the alleged minor victim, potential witnesses, and their families from contact by defendant than those currently in place, then defense counsel may seek modification of the Orders. Notably, the government asserts that the government "is willing to continue to seek alternative solutions." Opp'n at 9.