# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                               Plaintiff,<br><br>    v.<br><br>ZACKARY ELLIS SANDERS,<br><br>                               Defendant. | Case No. 1:20-cr-00143<br>The Honorable Judge Ellis<br><br>Pretrial Conference: May 7, 2021<br>Trial: July 12, 2021<br><br>**HEARING REQUESTED** |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL, OR, IN THE ALTERNATIVE, TO SUBMIT MATERIAL FOR *IN CAMERA* INSPECTION

Jonathan Jeffress (#42884)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C. 20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

Nina J. Ginsberg (#19472)
DiMuroGinsberg, P.C.
1101 King Street, Suite 610
Alexandria, VA 22314
Telephone: (703) 684-4333
Facsimile: (703) 548-3181
Email: nginsberg@dimuro.com

*Counsel for Defendant Zackary Ellis Sanders*

Zackary Ellis Sanders, through undersigned counsel, respectfully submits this Motion to Compel or, in the Alternative, to Submit Material for *In Camera* Inspection. The instant motion raises urgent discovery issues in light of new evidence the government has just now produced that is directly relevant to the violation of Mr. Sanders's rights under the Fourth Amendment. Mr. Sanders's requests are all well-supported by Rule 16, *Brady v. Maryland*, 373 U.S. 83 (1963), and the Fifth and Sixth Amendments and should all be granted. The most urgent issue for the Court's consideration, however, is the production of the Title III warrant and/or "Pen Register/Trap and Trace" order(s) used in the investigation of the Sanders family's IP address (among many others).

## DISCUSSION

### I. THE GOVERNMENT MUST PRODUCE THE TITLE III WARRANTAND/OR "PEN REGISTER/TRAP AND TRACE" ORDER(S) THE FBI OBTAINED AS PART OF ITS INVESTIGATON OF THE SANDERS FAMILY'S IP ADDRESS.

#### A. Supplemental Background

On March 26, 2021, the government finally produced the subpoenas the FBI relied upon to obtain the subscriber information for the Sanders family's IP address. The government's production of the two subpoenas occurred after repeated defense requests: more than *six months* after Mr. Sanders filed his motions to suppress, and almost *five months* after the Court issued its Opinion (ECF 122) denying those motions, which the Court presumably believed it was issuing on a complete record.

The government's recent production bears directly on whether it violated Mr. Sanders's Fourth Amendment rights in procuring its search warrant for the Sanders family's home. It does so in at least two ways. First, the subpoenas further confirmed what the defense has contended from the beginning but that the Court held was "mere speculation," *to wit*: that the only evidence

the FBI believed it had (including Special Agent Christopher Ford, the affiant for the search warrant) was that the IP address at the Sanders's family home was used to access an unspecified part of the TOR website ▬▬▬ one time, at one second, on May 23, 2019—and nothing else.

This is clear from the first subpoena, issued on September 10, 2019 ("September subpoena"), which describes the evidentiary basis for the subpoena *only* as "IP Address: 98.169.118.39 used on 5/23/2019 at 02:06:48 UTC."  September Subpoena, attached as Ex. 1.  In other words, the FBI knew when Special Agent Ford submitted the Affidavit in Support of a Search Warrant that a user of the Sanders family's IP address had not, in fact, "'access[ed] online child sexual abuse and exploitation material,'" Aff. ¶ 23, as the FBI incorrectly claimed when applying for the search warrant—an argument the defense has been urging on the Court, without success, since early in this case.

Moreover, the second subpoena, issued on November 22, 2019 ("November subpoena") demonstrates that the foreign law enforcement agency ("FLA") transmitted a significant number of IP addresses alleged to have engaged in precisely the same activity of visiting the target website a single time.[1]  November Subpoena, attached as Ex. 2.  With respect to Cox Communications ("Cox") alone, the November subpoena sought the subscriber information for ▬ different IP addresses.  Ex. 2 at 5-11.  Given that Cox is just one of many Internet Service Providers in the United States, the total number of subscribers the FLA identified for the FBI

---

[1] Because all of the IP addresses besides the Sanders family's IP address are redacted, the FLA may have alleged that certain IP addresses were used to visit the target website more than once. With respect to the Sanders family's IP address, however, the relevant documentation reflects one visit only, at a single time.  Ex. 2 (November Subpoena) at 10; FD-1057, attached as Ex. 3, at 2.

easily numbers in the thousands.² This subpoena appears to have been withheld until now—well after Mr. Sanders could have used it in litigation his motions to suppress—precisely because it reveals the scope of the FBI's operation.

Given the significant number of IP addresses the FLA provided to the FBI, an obvious question is why the FBI sought to obtain a search warrant for the Sanders family's home in particular. The fact the FLA listed the Sanders family's IP address as one of possibly thousands of IP addresses that visited the target website could not have been enough. Special Agent Ford's own internal report notes that a check of the Sanders's family's IP address against FBI databases, "revealed nothing pertinent," Ex. 3 (FD-1057) at 3, and that after searching public databases, "[n]o additional derogatory information was revealed." *Id.* at 4. Moreover, in prior child pornography operations of this significant scope—a scope which has only become evident in light of the recent production of the November subpoena—the FBI must have applied for a Title III warrant and/or Pen Register/Trap and Trace order(s) to narrow down the number of suspicious IP addresses as part of the operation.³

---

² Presumably, the FBI also subpoenaed information relating to IP addresses associated with other Internet Service Providers ("ISPs"), such as AT&T, Sparklight, CenturyLink, Charter Communications, Comcast High Speed Internet, Consolidated Communications Frontier Communications, Mediacom, TDS Telecom, Windstream, and Verizon High Speed Internet. *List of broadband providers in the United States*, Wikipedia, https://en.wikipedia.org/wiki/List_of_broadband_providers_in_the_United_States (last accessed May 4, 2021).

³ Notably, previous cases stemming from tips from foreign law enforcement agencies that resulted in the FBI taking control of and shutting down child pornography websites on Tor—including Operation Torpedo and the FreedomHosting investigation—have involved the same FBI Supervisory Special Agent involved in this case, ███████████. He may well have been involved in Operation Pacifier (PlayPen) as well. Agent ███████ approved the September and November subpoenas, and the FLA's September 16, 2019 letter was addressed to him alone.

On April 29, 2021, the defense sent the government a discovery letter asking whether the FBI had obtained a Title III warrant and/or Pen Register/Trap and Trace order(s)—as it had done in other past similar operations—in order to monitor or trace internet communications involving the target website. 2021/04/29 Discovery Letter, attached as Ex. 4. On May 4, 2021, the government responded to Mr. Sanders's letter. In an email from AUSA William Clayman, the government stated that it "does not have any material to produce in response to your request for Title III and/or pen-trap and trace material pertinent to the investigation of your client." Emails, attached as Ex. 5, at 2. Given the government's failure to directly answer the question the defense had asked—whether the government *obtained* a Title III and/or Pen Register/Trap and Trace warrant *with respect to its investigation of IP addresses that were alleged to have accessed the* ▇▇▇▇ *website (including the Sanders family's IP address)*—defense counsel followed up on AUSA Clayman's email as follows:

> Please clarify your response so that it can accurately be reflected in the court record. It is reasonable to infer from your response that the government **did, in fact**, seek and/or obtain Title III and/or pen-trap and trace material pertinent to the investigation of the Sanders family's IP address and/or the investigation of IP addresses that were alleged to have accessed the ▇▇▇▇ website, but is refusing to disclose that information. If neither was sought or obtained, the expected response would be "none was sought or obtained."

*Id.* at 1-2 (emphasis in original). AUSA Clayman responded:

> The government does not have any material to produce in response to your request for Title III and/or pen register/trap and trace material pertinent to the investigation of your client because the government did not obtain a Title III warrant or a pen register/trap and trace order that is pertinent to this case.

*Id.* at 1.

Given the government's carefully crafted language limiting what it regards "as pertinent to "*this case*" to the specific charges alleged in the indictment, as opposed to the investigation of the Sanders family's IP address that resulted in the search warrant, it is evident that the

4

government is drawing a distinction between "this case" on the one hand, and the investigation that led to the issuance of the search warrant, on the other. *See, e.g.,* 20/07/31 Tr., attached as Ex. 6 at 19 (where the government is arguing that "the search warrant is *unrelated* to anything he has been charged with. The evidence we found in the search warrant is what the basis for all the charges are. So he hasn't been charged with accessing child sexual abuse material on this TOR site. He has been charged with *entirely different conduct* related to chats that we uncovered.") (emphases added). It is therefore clear that the government did, in fact, obtain a Title III warrant and/or Pen Register/Trap and Trace order(s), or used some other undisclosed, investigative technique to narrow down the IP addresses it targeted as part of its investigation into IP addresses associated with the ▇▇▇▇ website (including the Sanders family's IP address).

The defense has also raised serious concerns with government counsel about how the prosecutors in this case are defining "the government" for the purposes of complying with its discovery obligations. In discussions with defense counsel, government counsel has repeatedly drawn legal distinctions between and among the FBI, the Department of Justice, and the United States Attorney's Office for the Eastern District of Virginia. Those distinctions are not a legal or ethical basis for withholding discovery as it is well-established that there is no distinction among these entities for the purposes of a prosecutor's discovery obligations. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (Prosecutors have a constitutional "duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."); *Barbee v. Warden*, 331 F.2d 842, 846 (4th Cir. 1964) (Because FBI agents are "part of the prosecution, . . . the taint on the trial is no less if they, rather than the [prosecutor], were guilty of nondisclosure.").

Because the government is refusing provide an unqualified answer to defense counsel's inquiries or to produce the Title III warrant(s) and/or pen register/trap and trace orders, the defense is left with no recourse but to file the instant motion to compel.

**B.     The Government is Obligated to Disclose the Warrant or Warrants.**

It should be undisputed that the government has a discovery obligation to a defendant with respect to any warrant—whether it be a Title III warrant, Pen Register/Trap and Trace order(s), or a search warrant—that implicates a privacy or other interest of that person. *Katz v. United States*, 389 U.S. 347, 350 (1967) (the Fourth Amendment "protects individual privacy against certain kinds of governmental intrusion, but its protections go further, and often have nothing to do with privacy at all"); *Brown v. Waddell*, 50 F.3d 285, 289 (4th Cir. 1995) ("The principal purpose of the ECPA amendments to Title III was to extend to 'electronic communications' the same protections against unauthorized interceptions that Title III had been providing for 'oral' and 'wire' communications via common carrier transmissions."); *United States v. Knowles*, 207 F. Supp. 3d 585, 594 (D.S.C. 2016) (noting that in Operation Pacifier, the government "applied for and received an order authorizing interception of electronic communications pursuant to 18 U.S.C. § 2518 (the 'Title III order'), to allow interception of electronic communications occurring over Playpen's private messaging and chat functions.")

If the government obtained any kind of warrant and/or pen register/trap and trace order(s) as part of its investigation of IP addresses alleged to have visited the ▮▮▮▮ website, including the Sanders family's IP address, the government must produce it.  A contrary view would eliminate all Fourth Amendment litigation, as the government would have no obligation to produce the warrant in the first place.

6

## CONCLUSION

The government should be ordered to produce the missing warrant and/or orders, or, in the alternative, to produce it to the Court for *in camera* inspection, for all of the factual and legal grounds stated herein, and in Mr. Sanders's previous filings related to compelling Rule 16 and *Brady* material. ECF Nos. 38, 48, 58, 64, 88, 137, 140, 176, and 241.

Respectfully submitted,

/s/
Jonathan Jeffress (#42884)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C.  20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

/s/
Nina J. Ginsberg (#19472)
DiMuroGinsberg, P.C.
1101 King Street, Suite 610
Alexandria, VA  22314
Telephone: (703) 684-4333
Facsimile: (703) 548-3181
Email: nginsberg@dimuro.com

*Counsel for Defendant Zackary Ellis Sanders*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of May 2021, the foregoing was served electronically on the counsel of record through the U.S. District Court for the Eastern District of Virginia Electronic Document Filing System (ECF) and the document is available on the ECF system.

*/s/ Jonathan Jeffress*
Jonathan Jeffress