# Exhibit 4
## April 29, 2021
## Discovery Letter



1099 14TH ST. NW
8TH FLOOR WEST
WASHINGTON, DC 20005
(202) 640-2850
WWW.KAISERDILLON.COM

April 28, 2021

**<u>VIA ELECTRONIC MAIL</u>**
Mr. Jay Prabhu, Mr. William G. Cayman, and Mr. Seth Schlessinger
Assistant United States Attorneys
United States Attorney's Office for the Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA  22314
Jay.Prabhu@usdoj.gov, William.G.Clayman@usdoj.gov, Seth.Schlessing@usdoj.gov

Re: *United States v. Zackary Ellis Sanders*, 1:20-cr-00143

Dear Jay and Bill,

On April 23, 2021, we sent you a discovery letter regarding a missing portion of the foreign law enforcement agency's tip, *to wit*: the communication from the FLA transmitting the list of IP addresses to the FBI.  This communication likely elucidated the alleged Internet activity associated with those IP addresses and/or the reliability of the FLA's information.  We still have not received a response to our letter.  Please let us know the status of that request; as you know, we are due in court on May 7th, and will be raising this discovery issue prior to or on that date if it remains unresolved.

In addition, further review of the two subpoenas you recently provided, as well as standard FBI procedure, strongly suggests that the FBI undertook additional investigative steps with respect to the Sanders family's IP address prior to the time Special Agent Ford applied for the search warrant.  The list of IP addresses we received as part of the November 22nd subpoena return includes ██ separate entries – for Cox Communications alone.  Given the number of other Internet Service Providers (ISPs), and the fact that many ISPs have significantly more subscribers than Cox, the total number of IP addresses the FLA provided to the FBI could easily number in the thousands.  Accordingly, it stands to reason that the FBI relied upon some additional investigative method or methods to narrow down the list of IP addresses for which it eventually sought search warrants.

Additionally, we have also become aware that the FBI has previously relied on Title III warrants and/or pen-trap and trace orders in cases where it took control of, and shut down other child pornography websites on Tor, including in Operation Torpedo, FreedomHosting, and

Operating Pacifier.[1]  In all of those operations, the FBI relied on tips and intelligence from foreign law enforcement agencies, NIT warrants, and some combination of Title III warrants and/or pen-trap and trace registers.  Furthermore, Supervisory Special Agent ███████████ was involved in both Operation Torpedo and FreedomHosting, and he may have been involved in Operation Pacifier as well.  Agent ████████ is the FBI agent to whom the FLA addressed its September 16, 2019 letter in which the FLA claimed that it had not interfered with, searched, or seized data from any computer in the United States.  He is also the Supervisory Special Agent listed on the two subpoenas for the Sanders family's IP address you recently disclosed to us.

Accordingly, please confirm whether the FBI obtained a Title III warrant(s) and/or pen-trap and trace orders in conjunction with this investigation, and if so, we request that you immediately produce copies of the warrant(s), the affidavit(s) in support of the warrant(s), any pen-trap and trace orders and affidavits, and the results of any such law enforcement surveillance.  If the warrant(s) and/or pen-trap and trace orders included IP addresses other than the IP address for the Sanders family's home, you may redact any non-pertinent information from the production.

The requested information is material under Rule 16. *See, e.g., United States v. Caro*, 597 F.3d 608, 621 (4th Cir. 2010) (evidence is material if "there is a strong indication" that it will "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal," and therefore allow a defendant "significantly to alter the quantum of proof in his favor," including through suppression);  See also *Guidance For Prosecutors regarding Criminal Discovery*, available at https://www.justice.gov/archives/jm/criminal-resource-manual-165-guidance-prosecutors-regarding-criminal-discovery; *U.S. Attorney's Manual*, Title 9, Section 9-5.000 - Issues Related To Discovery, Trials, And Other Proceedings, available at https://www.justice.gov/jm/jm-9-5000-issues-related-trials-and-other-court-proceedings#9-5.002

Please let us know no later than Friday, April 29, 2021 whether you intend to produce the requested materials.  Thank you for your courtesy.

Sincerely,

[signature]

---

[1] *See, e.g.*, *United States v. Levin*, 186 F. Supp. 3d 26, 30–31 (D. Mass. 2016), *vacated and remanded*, 874 F.3d 316 (1st Cir. 2017) (describing use of NIT warrant and Title III warrant in Operation Torpedo); *United States v. Cottom*, 679 F. App'x 518, 519 (8th Cir. 2017) (describing use of NIT warrant in Operation Torpedo); *United States v. Austin*, 230 F. Supp. 3d 828, 831 (M.D. Tenn. 2017) (describing use of NIT warrant and Title III warrant in Operation Pacifier (Playpen) cases); *United States v. Michaud*, No. 3:15-CR-05351-RJB, 2016 WL 337263, at *1–2 (W.D. Wash. Jan. 28, 2016) (similar).  Affidavits in support of search warrants, other pleadings filed in such operations, and publicly available documents also reveal, in some instances, the use of pen-trap and trace registers.

Jonathan Jeffress

Nina Ginsberg

*Counsel for Zackary Ellis Sanders*