# Exhibit 6
## July 31, 2020 Hearing Transcript

SEALED TRANSCRIPT

1

```
1                    UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF VIRGINIA
2                         ALEXANDRIA DIVISION

3
   UNITED STATES OF AMERICA,      )
4                                 )
        v.                        )   Criminal No. 20-143
5                                 )
   ZACKARY ELLIS SANDERS,         )
6                                 )
             Defendant.           )   Alexandria, Virginia
7   _____ )
                                      July 31, 2020
8

9                                    SEALED TRANSCRIPT

10

                      TRANSCRIPT OF MOTION HEARING
11                BEFORE THE HONORABLE T. S. ELLIS
                    UNITED STATES DISTRICT JUDGE
12
                  APPEARANCES:
13
        For the Government:    WILLIAM CLAYMAN, AUSA
14                             TONY ROBERTS, AUSA
                               U.S. Attorney's Office
15                             2100 Jamieson Avenue
                               Alexandria, Virginia  22314
16
        For the Defendant:     JONATHAN STUART JEFFRESS, ESQ.
17                             JADE CHONG-SMITH ON BEHALF, ESQ.
                               KaiserDillon PLLC
18                             1099 14th Street NW
                               8th Floor West
19                             Washington, DC 20005

20

21      Court Reporter:     PATRICIA A. KANESHIRO-MILLER, RMR, CRR
                            United States District Court
22                          Eastern District of Virginia
                            401 Courthouse Square
23                          Ninth Floor
                            Alexandria, Virginia  22314
24
        Proceedings reported by stenotype shorthand.
25      Transcript produced by computer-aided transcription.
```

2

```
1                        P R O C E E D I N G S

2                         (11:03 a.m.)

3              THE DEPUTY CLERK:  Criminal Case United States of

4       America versus Zachary Ellis Sanders, case number

5       2020-CR-143.

6              May I have appearances please, first for the

7       government.

8              MR. CLAYMAN:  Good morning, Your Honor.  Bill Clayman

9       and Tony Roberts for the United States.

10             THE COURT:  Good morning.

11             MR. JEFFRESS:  Good morning, Your Honor.  Jon

12      Jeffress and Jade Chong-Smith on behalf of Mr. Sanders.

13             THE COURT:  All right.  Good morning to you.

14             Mr. Sanders is present in the custody of the

15      marshals.      This matter is proceeding under seal because

16      the substance of what is at issue involves, as I understand

17      it, both an ongoing investigation and matters that the

18      government has sought to protect because of the methodologies

19      used by the government to investigate and prosecute crimes.

20             Do I have that right?

21             MR. CLAYMAN:  That's correct, Your Honor.  It's an

22      ongoing investigation that the government believes is very

23      sensitive.

24             THE COURT:  All right.  Now, the matter before the

25      Court today is the question whether there were
```

3

1    misrepresentations made to the magistrate judge so as to

2    warrant a *Franks* hearing.

3            So I have your briefs.  I have reviewed the briefs,

4    but I do want to hear argument from both of you.  I will give

5    you an unfettered opportunity to be heard on that.

6            Mr. Jeffress, you will be heard first.

7            MR. JEFFRESS:  Thank you, Your Honor.

8            THE COURT:  You're the movant.

9            MR. JEFFRESS:  That's right, Your Honor.  I thank

10   you.        We are here before the Court on our motion to

11   compel further information so that we can meaningfully

12   challenge how the government obtained the search warrant in

13   our motion for a *Franks* hearing.  So right now, at this

14   stage, we're requesting further evidence in support of that

15   which we believe is in the government's possession and the

16   government has not denied it's in its possession.  And Your

17   Honor, I think to back out as to why --

18           THE COURT:  That's not exactly true.  You say that

19   the government had evidence that they either knew or directed

20   interference with a computer.  They don't admit they have

21   information that shows that.

22           MR. JEFFRESS:  Your Honor, I was referring mostly to

23   the first issue, actually, which is the paragraph 23 issue,

24   and whether the tip from the foreign law enforcement agency

25   that they included in that paragraph misled the magistrate,

4

1    which we think it clearly did, and whether the special agent,

2    when he submitted his affidavit in February of 2020, knew

3    that the reiteration of that tip would mislead the magistrate

4    because --

5            THE COURT:  Why would it mislead the magistrate?

6            MR. JEFFRESS:  Because, Your Honor, the information

7    in the tip was false.  And the government has not -- it

8    was false -- The FLA -- I don't know why -- we're trying to

9    find out why -- but the FLA falsely characterized the state

10   of the evidence that they had.  And unfortunately -- and I

11   don't relish saying this -- but it is very clear that the

12   special agent knew that tip falsely --

13           THE COURT:  What was false?

14           MR. JEFFRESS:  What the tip did was it said that the

15   user, the computer user, which the government believes is

16   Mr. Sanders, had in fact on a specific date, May of 2019,

17   accessed on -- and I want to repeat this exactly -- "accessed

18   on a specific date" -- "the FLA had determined that the user

19   had accessed" -- this is quote -- "accessed online child

20   sexual abuse and exploitation material via a website."

21           That is not what the state of the evidence was.  And

22   again, I don't relish saying this, it is very clear to me

23   that the special agent who submitted the affidavit knew that

24   that was a misrepresentation of the --

25           THE COURT:  Why was it a misrepresentation?

SEALED TRANSCRIPT

5

1      MR. JEFFRESS:  Because all the government really

2    had -- and again, on this, Your Honor, the government has not

3    denied this in its opposition.  All the government really had

4    at that point was that the computer user had gone to the home

5    page of the website, just the very front page of the website,

6    which itself contains no illegal material whatsoever, and

7    that's it.  That's all they had at that time.  So it was a --

8      THE COURT:  That's all the foreign law enforcement

9    agency had?

10      MR. JEFFRESS:  That's all they had, and as a result,

11    that's all the FBI had, yes.

12      THE COURT:  All right.  And you say that's true

13    because of what?

14      MR. JEFFRESS:  A couple of things, Your Honor.  We're

15    here on a motion to compel.  We're trying to seek further

16    confirmation of this.  But just the limited discovery that we

17    have been given to date fully supports this.  And there are a

18    couple of different things.  One is, is that there is a

19    report done, internal report done by the affiant, the same

20    special agent who submitted the affidavit, it's done

21    three weeks prior to the submission of the affidavit.  In

22    that report, which again is an internal report, it's an

23    FD1057, the same agent --

24      THE COURT:  Which you have been provided?

25      MR. JEFFRESS:  That's right.  The same agent -- this

SEALED TRANSCRIPT

6

1    is the only document we have involving the affiant other than

2    the affidavit.  This is the only thing we've been given so

3    far.

4           In this one document, though, just this one

5    document -- and again, this is the only thing we have to try

6    to determine the agent's state of mind -- what the agent says

7    specifically about what the FLA tip meant was -- again, I

8    want to quote this exactly -- "that the computer user had

9    accessed the website."  Just accessed the website.  Not that

10   he had registered for the website, not that he had logged

11   into the website, not that he had accessed -- not what is

12   said in the affidavit, which is that he had accessed child

13   -- again, I want to be exact -- "accessed online child sexual

14   abuse and exploitation material via the website."  They

15   didn't have that, and he knew that.  And that's why --

16          THE COURT:  How do you know they didn't have that?

17          MR. JEFFRESS:  Well, first, they haven't denied it.

18   They haven't said we're wrong about that.  But, secondly --

19          THE COURT:  Put that to one side.

20          MR. JEFFRESS:  Okay.  So he --

21          THE COURT:  Why do you think they didn't have that?

22          MR. JEFFRESS:  Because the agent in his own

23   description is saying -- it is a much more limited

24   description -- it is saying basically that the user --

25          THE COURT:  I think the bottom line is that you don't

7

```
1    know.
2              MR. JEFFRESS:  This is what we -- this is what we --
3    what we can see from the evidence, this is our judgment about
4    what we can see from the evidence right now.  That's correct,
5    Your Honor.
6              THE COURT:  So you do have the FBI talking to a
7    foreign law enforcement agency?
8              MR. JEFFRESS:  That's right.
9              THE COURT:  And you know that the foreign law
10   enforcement agency told him that the defendant accessed this
11   website.
12             MR. JEFFRESS:  The foreign law enforcement agency's
13   tip actually said much more than that, but that is one of the
14   things that they said, yes.
15             THE COURT:  All right.  And you don't have any
16   information as to whether that is false.
17             MR. JEFFRESS:  Well, in the FD1057 submitted
18   three weeks before the affidavit, he described it -- the
19   agent described it quite differently.  He said that all -- he
20   described it as the computer user just going to the website,
21   merely going to a website, that's it, nothing more.  In the
22   affidavit, that's not how it's described.  In the affidavit,
23   he repeats the full FLA tip, which misleadingly suggests that
24   the user had actually gone into the website and downloaded or
25   viewed child pornography.  They didn't have that, Judge.
```

8

```
 1    Look, I'm not God.  I don't know for certain --
 2            THE COURT:  No, you don't know whether they had that
 3    or not.
 4            MR. JEFFRESS:  I don't know, but we strongly suspect
 5    based on the state of the evidence that they did not.
 6            THE COURT:  All right.  I think I understand your
 7    argument.
 8            MR. JEFFRESS:  Yes.  That is on paragraph 23, Your
 9    Honor.  So that is the main issue here.
10            Now, then, on paragraph 25 is the second issue, which
11    is the issue Your Honor referred to, which is the use of a
12    -- interference -- ███████████████████████ in order
13    to obtain the IP address that the government believes was
14    Mr. Sanders'.  As Your Honor pointed out at the beginning,
15    that is an issue of whether ████ did that.  Now -- ████
16    ██████████████████  Now, in the paragraph 25, the agent
17    represents that ████ did not violate its own laws, which
18    may be true --
19            THE COURT:  What?
20            MR. JEFFRESS:  That they did not violate their own
21    laws, the ██████████████████
22            THE COURT:  All right.
23            MR. JEFFRESS:  But then it also says that they did
24    not interfere, access -- again, I want to be precise -- 25
25    says that they did not -- ████ did not access, search, or
```

9

1    seize any data from any computer in the United States in

2    order to obtain that IP address information.

3          Now, both the experts that we've retained so far and

4    talked to and submitted affidavits from, and FBI agents --

5    numerous FBI agents who we have quoted from sworn testimony

6    in this district have said many times that you cannot obtain

7    an IP address on the Tor network without using a technique

8    that would interfere, access, search or -- interfere with,

9    access, search, or seize data from a computer in the United

10   States.  The FBI said there is no other way to get this.  And

11   that is why --

12          THE COURT:  So what if they did?

13          MR. JEFFRESS:  Well, they represented that they

14   didn't.

15          THE COURT:  What if they did?

16          MR. JEFFRESS:  Then, the agent's statement in

17   paragraph 25 is false.

18          THE COURT:  Why is it material if it doesn't make a

19   hill of beans?

20          MR. JEFFRESS:  On that one, Your Honor, we think it's

21   material for several reasons.  First of all, this is how they

22   obtained the information with respect to this IP user.  This

23   is the method.  And so we think that we should -- we should

24   -- if this is false, then they did use something that

25   interfered with the computer here.

SEALED TRANSCRIPT

————————————————————————————————————————————————10—

 1          THE COURT:  ███████      did.

 2          MR. JEFFRESS:  ███████     did, that's right.

 3          THE COURT:  What difference does it make?

 4          MR. JEFFRESS:  Well, I mean, first of all, the agent

 5     can't submit a false -- a knowingly false statement in the

 6     affidavit.

 7          THE COURT:  Yes, he can.  He can make a mistake.  He

 8     can be wrong.

 9          MR. JEFFRESS:  He can be wrong.

10          THE COURT:  The question is whether it is material to

11     the issuance of the search warrant.

12          MR. JEFFRESS:  Certainly, if he was wrong in good

13     faith, that would be true, Your Honor.  But I -- but what the

14     situation here is the FBI well knows that they cannot obtain

15     -- they can't get an IP address like that except by going

16     through an interference equipment technique.

17          THE COURT:  What difference does it make if ████████

18     do that?

19          MR. JEFFRESS:  Well, a couple of things.

20          THE COURT:  Your colleague wants you to say

21     something.

22          MR. JEFFRESS:  A couple of things.  First of all, if

23     that was true, ██████ did that without the -- without

24     cooperation from the United States, ███████ then

25     committed -- I mean, that's a criminal offense.  That is

—11—

```
 1      hacking into Mr. Sanders' computer.
 2              THE COURT:  So what?  That doesn't have anything to
 3      do with whether it is material to the issuance of a probable
 4      cause determination --
 5              MR. JEFFRESS:  I would also say --
 6              THE COURT:  -- if ████████████ legal agency or the
 7      ████████ law enforcement agency violated their own or our
 8      laws.
 9              MR. JEFFRESS:  I would say if it was -- if it was an
10      innocent mistake that the agent made, then of course Your
11      Honor is correct.  But if it was deliberately made, if it was
12      deliberately stated, and he knew it was a reckless disregard
13      or it was just false, then that would -- then that would
14      provide us with the opportunity for a Franks hearing.
15              THE COURT:  Not if it is not material.
16              MR. JEFFRESS:  If you take -- they're the ones that
17      put this in paragraph 25, the agent did.  They're the ones
18      that made this statement --
19              THE COURT:  I understand that.  Answer my question.
20      Why is it material?
21              MR. JEFFRESS:  It is also material to the agent's
22      credibility.  If he knowingly put that statement in there
23      knowing that it wasn't true, then there are very
24      serious credible -- again, I don't relish saying this.
25              THE COURT:  You're aware, are you not, of cases which
```

12

1    repeatedly hold that there may be misrepresentations in a

2    search warrant that are not material to the issuance of the

3    warrant.

4          MR. JEFFRESS:  That's right.

5          THE COURT:  Yes, there was a misrepresentation, but

6    it is not material.  So that's why I am asking you

7    repeatedly, why is it material if the foreign legal -- what

8    do you call it? -- foreign law enforcement agency violated

9    their law.  Certainly, it doesn't make any difference if they

10   violated their law.

11         MR. JEFFRESS:  It doesn't.

12         THE COURT:  But violated American law.

13         MR. JEFFRESS:  Yeah.  I think, like I said, Your

14   Honor, I think it does go to the FBI's credibility if they're

15   making that -- they're the ones who put it in here.  They

16   clearly thought it was important.  If they're making that

17   statement and they know it's not true, then that is a serious

18   issue that would entitle us to a *Franks* hearing.  Maybe

19   nothing else on whether --

20         THE COURT:  I'm assuming all of what you say.  Why is

21   it material to the issuance of the warrant?

22         MR. JEFFRESS:  Because I think the magistrate could

23   have believed, look, did they hack into this person's

24   computer in order to get this information.  I think that is

25   why they sort of fronted the issue and said, no, we didn't do

SEALED TRANSCRIPT

13

1    that.  But that's not true.

2              THE COURT:  Let me put it to you this way, because

3    you're starting to get there, but you need to get there

4    directly.

5              MR. JEFFRESS:  Thank you, Your Honor.

6              THE COURT:  Let's suppose that the magistrate judge

7    concluded that there was a misrepresentation about that.  Why

8    would he then not have issued the warrant based on all of the

9    other information?

10             MR. JEFFRESS:  I think in part because he would have

11   questioned the agent's credibility at that point.  Because

12   the agent is telling him something -- telling him something

13   important --

14             THE COURT:  What do you have other than that?

15             MR. JEFFRESS:  Other than that, this is the way --

16   this is the method in which they obtained his IP address.

17   And if this isn't true, then I think that casts the whole

18   affidavit into doubt.  If it is not true that they -- that

19   their -- the way that they're saying they got his IP

20   address -- that's the whole issue about who this was.  And so

21   if that's not true, then we have bigger problems, I think,

22   with respect to the entirety of the affidavit.

23             THE COURT:  All right.  I think I understand your

24   position.  You've also made it quite clear in your briefs.

25             MR. JEFFRESS:  Yes.  And Your Honor, just on

14

1    paragraph 23, you know, that is the crux of the affidavit.

2    That is the only incriminating fact in the affidavit.  So, on

3    that one, I don't think there is any material issue

4    whatsoever.  That is the most material paragraph in the

5    affidavit, and we believe, respectfully, that that statement

6    was knowingly made, either falsely or with reckless disregard

7    of the truth.

8              THE COURT:  Let me hear from the government.

9              MR. CLAYMAN:  Yes, Your Honor.

10             I know Your Honor has reviewed the briefs and our

11   response brief, so I don't want to spend any time reiterating

12   those arguments, but I do --

13             THE COURT:  You better do so if you think it responds

14   to what he said.

15             MR. CLAYMAN:  I do want to respond to the reply brief

16   in the arguments today, Your Honor, because I think what the

17   reply briefs and those arguments make clear to the

18   government, at least, is that the issue here is the defendant

19   doesn't think that the FLA's tip provided us sufficient basis

20   for Magistrate Judge Anderson to have issued the warrant.

21             But what the FLA's tip meant or whether it was

22   misleading or how much weight it should have been given,

23   those are all arguments that go to probable cause for a

24   motion to suppress.  Those are arguments Magistrate Judge

25   Anderson was able to resolve just through the four corners of

15

1    the affidavit.  Those are arguments that Your Honor would be

2    able to resolve just by looking at the affidavit.  These

3    aren't arguments, though, we would argue that should require

4    the government to turn over all e-mails or documents or

5    reports or whatever else the defendant is looking for

6    regarding this tip, because, Your Honor, as we outlined in

7    our response, the tip consisted of basically two key pieces

8    of information.  There is this one piece that says an IP

9    address was used to access child sexual abuse material on a

10   website.  There is another piece that says the foreign law

11   enforcement agency did not interfere with or search a

12   computer in the U.S. to find out this information.

13          THE COURT:  While you're there, though, let me ask

14   you, what do you say to their argument based on their expert

15   report and what's been argued here today that everyone knows

16   you can't get there without interfering?

17          MR. CLAYMAN:  So a couple of things, Your Honor.  I

18   would note, first, that the declarations that they provided

19   do not state that affirmatively.  They suspect that's what

20   happened, and they note that this has happened in the past.

21   But at no point do they say this is the only way they could

22   have obtained this information.

23          Regarding the prior FBI testimony, that is in a

24   completely unrelated matter.  That is a matter where the FBI

25   seized a website and then, yes, did use a NIT to send out

SEALED TRANSCRIPT

16

1      data to computers in the U.S.

2              The tip we received from the foreign law enforcement

3      agency unequivocally states we did not use a NIT to get into

4      the U.S. computers.

5              THE COURT:  And you provided that document to them?

6              MR. CLAYMAN:  Yes, they have all the reports that

7      make up the entirety of the tip, which is accurately

8      summarized in the search warrant.  So, really, all they're

9      doing is --

10             THE COURT:  Tell me this:  Let's suppose that the

11     British agency did interfere with a domestic computer to get

12     that information.  What, if any, effect does that have on the

13     validity of the issuance of the warrant?

14             MR. CLAYMAN:  I'm not sure it would have any, Your

15     Honor.  We were told they didn't -- I think -- I would be

16     happy to provide a declaration of our own.  But there are

17     ways they could have obtained this information without doing

18     that.  ████████████  government is a reliable law enforcement

19     agency.  We were told they didn't, and we relied on the

20     search warrant.  That is the extent of what the report or the

21     tip is, and that is what we put in the search warrant

22     affidavit.  Whether ████████ lied to us, we don't know.  They

23     said they didn't.  And there is really only speculation that

24     they might be lying or that we might know they're lying and

25     therefore we might have something to show that they're lying.

1    This is all just speculation.

2            What we have been told is that they did not do what

3    the defendant is now arguing they did do.

4            THE COURT:  Go on.

5            MR. CLAYMAN:  Again, I think the proper testimony

6    from the FBI agents they point to, those are from entirely

7    different cases with entirely different sets of facts where

8    there was, in fact, a NIT used.  That is not what happened

9    here based on what we have been told.

10           Again, if it would help the Court, I would be happy

11   to provide a declaration of our own explaining again that

12   this is not the only way to obtain this information, so that

13   the defendant's speculation that maybe this is how they did

14   it --

15           THE COURT:  Why didn't you do that before?  They have

16   a declaration from an expert that says that is the only way

17   you get it.

18           MR. CLAYMAN:  I would argue that's not what the

19   declaration says.  From my reading, they say this is probably

20   what happened, or this is what happened in the past.  But at

21   no point do they say this is how it happened.  Because I

22   think they would admit if they were subject to

23   cross-examination here that there are other ways to obtain

24   this information.  So all they have provided is one

25   possibility by which the FLA's tip could be completely false,

SEALED TRANSCRIPT

18

1    the FBI could have known it was completely false, and that

2    we're hiding this trove of information showing that we know

3    all of this.

4           THE COURT:  And I take it you would also argue to me

5    that if you were to disclose these other ways, that would be

6    a breach; that would give, as you see it, the bad guys an

7    opportunity to get around those methods.

8           MR. CLAYMAN:  That's correct, Your Honor.  We would

9    not like to do that.  But if necessary, we are prepared to

10   discuss other ways that TOR users can be identified.

11          THE COURT:  Let's say there is a misrepresentation in

12   the affidavit.  One of the things they argue is that the FBI

13   knew about it or encouraged it or something, and so that's

14   false.  Wouldn't that go to the credibility of the agent on

15   the rest of the affidavit?

16          MR. CLAYMAN:  If the idea that the FBI did not know

17   about what the FLA was doing was false?

18          THE COURT:  Yes.

19          MR. CLAYMAN:  I suppose it would, Your Honor, but we

20   have no -- I can represent we have no e-mail from the FLA

21   showing what we did here is actually a lie, this tip is a

22   lie, but you guys should rely on it anyway.  There is no

23   representation like that.

24          THE COURT:  Would the misrepresentation that the

25   defendant is arguing for go to every count in the indictment?

19

1          MR. CLAYMAN:  So the search warrant is the

2    evidence -- the search warrant is unrelated to anything he

3    has been charged with.  The evidence we found in the search

4    warrant is what the basis for all the charges are.  So he

5    hasn't been charged with accessing child sexual abuse

6    material on this TOR site.  He has been charged with entirely

7    different conduct related to chats that we uncovered with

8    various minors in which he had them produce child pornography

9    --

10          THE COURT:  Would those be fruit of the poisonous

11    tree if there was a violation before?

12          MR. CLAYMAN:  I suppose if the motion -- if there was

13    a motion to suppress that was granted, that would present

14    problems for our case-in-chief.  But again, I don't think

15    they have provided any actual specific facts to believe that

16    their argument for a *Franks* hearing is valid.

17          THE COURT:  All right.  Go ahead and finish your

18    argument, please.

19          MR. CLAYMAN:  Just the last point I wanted to

20    address, Your Honor, is the defendant's assertion that the

21    tip information stating that the IP address user actually

22    accessed child sexual abuse material is false based on these

23    light distinctions in the way the FBI agent described it at a

24    later point.  As we outlined in our response brief, the way

25    he described the tip is not at all inconsistent with the way

SEALED TRANSCRIPT

20

1   he described the tip in the search warrant.  There is no

2   difference between the user accessed the website versus the

3   user accessed child exploitation material on the website.

4   Because in order to access that child exploitation material,

5   you would have to access the website.  Otherwise, Your Honor,

6   unless Your Honor has any specific questions, we would rest

7   on the --

8           THE COURT:  Well, they argue that there is both

9   lawful and unlawful material.  Why is there anything in the

10  affidavit that says he went for the unlawful information?

11          MR. CLAYMAN:  Because that is what the FLA's tip

12  advised us.  The tip states he accessed unlawful material.

13  And that's what we relied on in the search warrant, and we

14  represented it, just as it was advised to us, to Judge

15  Anderson.  There is no misrepresentation about what the tip

16  said.  We did not misquote the tip to Judge Anderson, and

17  they aren't arguing that we did.  They are only arguing that

18  we must have known somehow that this tip was false and that

19  it is actually false, which we would argue is not the case.

20          THE COURT:  Just a moment.

21          (Pause)

22          THE COURT:  The affidavit says that the FLA, the

23  foreign law agency, further advised U.S. law enforcement that

24  the foreign law agency had not interfered with that access,

25  searched, or seized any data from any computer in the United

SEALED TRANSCRIPT

21

1    States in order to obtain the IP address information.

2          What do you say to the defendant's argument that

3    that's flatly false?  It can't be done, they argue, without

4    interfering with or accessing or searching or seizing data

5    from the U.S. computer?

6          MR. CLAYMAN:  Again, Your Honor, that is what the tip

7    advised us.  And the information that they point to to

8    suggest that that is just obviously false, in our view, is

9    not sufficient to make that claim.  As I noted previously,

10   the declarations they provided do not affirmatively state

11   this is the only way they could have got that information.

12   That is because, I think, any expert on TOR would admit on

13   cross-examination that there are other ways to obtain this

14   sort of information that would be consistent with what the

15   FLA said.

16         THE COURT:  Well, as I see what Special Agent Ford

17   averred, it is that the foreign law agency advised the U.S.

18   that the foreign law agency had not interfered with,

19   accessed, searched, or seized any data from any computer in

20   the United States in order to obtain the IP address; and that

21   the U.S. law enforcement personnel did not participate in the

22   investigative work through which the FLA identified the IP

23   address.

24         That's what the affidavit says, isn't it?

25         MR. CLAYMAN:  That's correct, Your Honor.

22

1      THE COURT:  And their argument distilled to its

2   essence is that can't be true, it simply can't be.  As the

3   expert says, you must do these things.  And then the

4   defendant says, so, they either knew about it, which makes it

5   worse, it makes it more of a misrepresentation, or they were

6   acting in reckless disregard by not finding out, or something

7   like that.

8      What is your answer to that argument, that where this

9   affidavit says that they didn't interfere with it and that

10  the FLA did not interfere, search, or access any data from a

11  computer in the United States, and that U.S. law enforcement

12  personnel did not participate in the investigative work?  I

13  don't see anything that says that's false.  But they have

14  submitted information that suggests that somebody had to

15  interfere with it to get to it.

16      MR. CLAYMAN:  Correct, Your Honor.  So, again, I

17  would argue that what we put in the search warrant affidavit

18  is essentially a verbatim quote from the tip.

19      THE COURT:  From the what?

20      MR. CLAYMAN:  From the foreign law enforcement

21  agency's tip.  That is almost verbatim what they told us.

22      I would, again, push back on their suggestion that

23  that is a lie because the only way they could have gotten

24  this information is by interfering with a U.S. computer.  As

25  I have alluded to, there are other ways this could have

23

1    happened, that they could have gotten this information, and I

2    don't think their experts --

3              THE COURT:  Is their affidavit from an expert, in

4    your view, sufficient or insufficient to warrant the *Franks*

5    hearing, and if not sufficient, why not?

6              MR. CLAYMAN:  We think it is insufficient because,

7    again, the expert only speculates this is what happens.  He

8    says this is the most likely way it would happen because the

9    FBI did this 5 years ago, so this is what ▓▓▓▓▓ must have

10   been doing.  But he doesn't know what ▓▓▓▓▓ was doing.  And

11   he doesn't say that ▓▓▓▓▓ could have gotten -- could not

12   have gotten this information from some other way.  There are

13   other ways.  I could try to articulate them, but they are

14   very technological, so it probably would not make much sense,

15   but there are other ways for this information to have been

16   obtained, and the expert they provided --

17             THE COURT:  Been obtained by the foreign law agency?

18             MR. CLAYMAN:  Without interfering with a U.S.

19   computer.

20             THE COURT:  All right.

21             MR. CLAYMAN:  And their expert does not deny that.

22   He just says that the most likely way it happened, in his

23   view, is interfering with a U.S. computer.

24             So we would say that is insufficient for a *Franks*

25   hearing.  That is just one way they think this is false.

SEALED TRANSCRIPT

24

1   It's just a speculation about why this is false, why the

2   sworn declaration from the agent is false, when we have

3   provided them with the report that shows he's reporting

4   exactly what he was told by the foreign law enforcement

5   agency.

6           THE COURT:  And what do you say to the argument made

7   by the defendant's counsel here that, at most, you can say he

8   accessed the site, which had both lawful and unlawful

9   content, but you go on to say in the affidavit that he

10  accessed unlawful content?

11          MR. CLAYMAN:  So the information about him accessing

12  unlawful child sexual abuse material is, again, directly from

13  the tip that we have been provided.  So that is a direct

14  quote from the foreign law enforcement agency.  The special

15  agent didn't restate what the tip said, he didn't add to it

16  or say he accessed certain stuff that we weren't told he

17  accessed.  He just directly quoted what the foreign law

18  enforcement agency told the FBI.  And they're only

19  speculating now, well, actually, that tip must be false

20  because at another point the FBI agent described it slightly

21  differently, but at a time when he was not swearing out the

22  search warrant.  I don't think that provides a basis to

23  conclude that there should be a *Franks* hearing here or that

24  he is entitled to any more discovery than he has already

25  received, which is again the tip that we're relying on.

SEALED TRANSCRIPT

1          THE COURT:  Yes.  Outline for me what documents you

2     have already made available to the defendant in this case.

3          MR. CLAYMAN:  With respect to what we are here for

4     today, we have provided him with three reports from the

5     foreign law enforcement agency.  And those reports make up

6     the entire substance of the tip that we were provided.

7          We have also provided him with substantial

8     information --

9          THE COURT:  Is that in Exhibit 1 that you have

10     provided?

11          MR. CLAYMAN:  So our Exhibit 1 was the search

12     warrant, but I believe they have attached at least two of the

13     reports to their motion.

14          So their Exhibits 2 and 3 to the motion contain, one,

15     the letter we received from the foreign law enforcement

16     agency saying an IP address was used to access this material.

17     And then Exhibit 3 is a letter explaining that they obtained

18     this information without interfering with a U.S. computer and

19     while still complying with all ▮ laws.  And then there is a

20     third report that we have provided that identifies the

21     website by name as the specific website that was used to

22     access the material.

23          THE COURT:  Is that in our record, that third report

24     or that third communication?

25          MR. CLAYMAN:  It was not attached to our filing.

SEALED TRANSCRIPT

26

1        THE COURT:  I don't believe it was to theirs, either.

2        MR. CLAYMAN:  No, it was not.

3        THE COURT:  I want that made a part of our record, as

4    well, because it is part of the information that was provided

5    to the defendant about the tip.

6        Any other information provided about the tip?

7        MR. CLAYMAN:  That is the extent of the information

8    about the tip.  But that is the extent of the tip.  We don't

9    have any more exculpatory information out there about the tip

10   that we're withholding.  This is what we were told.

11       We have also provided them substantial information

12   about the post-tip case, the case --

13       THE COURT:  You mean after the search?

14       MR. CLAYMAN:  Right.  With regard to prior to the

15   search, these reports, as well as a report from the agent in

16   which he opened the case and sort of explained what he was

17   told about this tip and why he was opening the case to get a

18   search warrant.

19       THE COURT:  And I take it there has also been

20   discovery about what you learned from the search of the

21   defendant's computers and stuff?

22       MR. CLAYMAN:  That's correct, Your Honor.

23       THE COURT:  And that's what has led to the other

24   counts in the indictment relating to his dealing with young

25   people?

SEALED TRANSCRIPT

27

1          MR. CLAYMAN:  That's correct, Your Honor.

2          THE COURT:  All right.  You need to provide this

3      record with that third item.

4          MR. CLAYMAN:  We do have a copy here.  The defense

5      has a copy we could pass up to the Court, or I could file one

6      under seal on the docket.

7          THE COURT:  File one under seal so that it is

8      formally part of the record.

9          Also, let me hear briefly from Mr. Jeffress, and then

10     I'll come back and end up with you, Mr. Clayman.

11         MR. JEFFRESS:  Your Honor, so first I would just like

12     to respond on the paragraph 23 issue, which is the one where

13     we believe -- strongly believe -- that the FLA tip that the

14     government reiterated there, you know, was extremely

15     misleading to Magistrate Judge Anderson.  Again, that tip is

16     the sole incriminating fact alleged in the entire affidavit.

17     I don't think the government would disagree that that

18     paragraph is the crux of probable cause and that in the

19     absence of that paragraph, there is no possibility that the

20     magistrate would have found probable cause.  So it is an

21     extremely important provision of the affidavit paragraph.

22         And I am not hearing the government saying that they

23     do not have information showing that they understood the

24     state of the evidence differently from what they put in this

25     paragraph.

28

1          Now, what they're saying, instead, is:  All we did

2    was repeat what the FLA had said, and we repeated what the

3    FLA had said accurately.  That does not make this case fall

4    squarely within *Franks*.  And I will just use an analogy to a

5    drug case.  Let's say there is an apartment building where

6    certain apartments in the building are known to be where you

7    can purchase or sell drugs.  A confidential informant, with a

8    history of liability or whatever, tells the government that,

9    hey, I saw this person, the suspect, go into this apartment

10   building, go to one of the apartments where drugs were sold,

11   buy the drugs, and then I saw him walk out of the building; I

12   saw all of that.  The government says, okay, that sounds

13   good, that sounds like probable cause.  But then what they

14   find out is that, in fact, all this confidential informant

15   saw was the person walk into this apartment building and walk

16   out of this apartment building, and that's it, that's all

17   they had.  They do not comply with their responsibilities if

18   they simply repeat that tip, the full tip from the

19   confidential informant saying he saw him actually buy drugs

20   and then not say that they know for a fact that that tip is

21   false or misleading, because they can't just put that in

22   there and then let it stand and then say, oh, we accurately

23   repeated the tip.  That is not what the *Franks* caselaw says.

24   The *Franks* caselaw says that if things are put in the

25   affidavit or omitted from the affidavit in a way to make it

SEALED TRANSCRIPT

29

1    materially misleading, the way paragraph 23 is, then that is

2    *Franks*, and we do get a *Franks* hearing in support of that.

3           Now, there are documents -- we have received one

4    document -- again, we have only received two documents that

5    involve Special Agent Ford, who is the affiant.  One is the

6    affidavit itself.  The second is this 1057 that was

7    submitted -- that was authored -- this internal report from

8    before the affidavit that already shows that he understood

9    the evidence quite differently.

10          The government was also representing during

11   Mr. Sanders' detention hearing that all the evidence -- that

12   what the evidence showed was that this computer user just

13   went to the website, went to the website, not that he

14   downloaded child pornography from there or anything else.  So

15   those two statements right there should be enough to get us

16   further discovery.

17          All we're asking for -- and if it doesn't exist,

18   that's fine -- but all we're asking for are whatever e-mails

19   or reports -- other reports show that Special Agent Ford knew

20   when he submitted 23 that he didn't see -- that the FLA --

21   they knew the FLA did not see the person buy the drugs in the

22   apartment where the drugs were sold.  All they saw was the

23   person walk into the building and then walk out of the

24   building because that's all they had.

25          And the government has right now -- we believe, we

SEALED TRANSCRIPT

1     believe -- respectfully submit -- e-mails, you know,

2     correspondence with ███████ showing that Agent Ford knew that

3     that's all he had, and he just can't -- and I understand that

4     he is saying, well, I just accurately repeated the tip in 23,

5     but that is not the point.  That is not the point of the

6     *Franks* caselaw.  If that paragraph was modified, if they had

7     said, in fact, we don't believe that this IP user actually

8     viewed or downloaded child pornography, we believe this

9     overstates it, there was no probable cause here, we get a

10    *Franks* hearing, and frankly, I think, beyond that, we should

11    get suppression.  But what we should get at this stage at

12    least is the information that pertains to this issue --

13         THE COURT:  Well, doesn't the tip say that he

14    downloaded child pornography?

15         MR. JEFFRESS:  I think it does, yes.

16         THE COURT:  And that comes from ███████

17         MR. JEFFRESS:  That comes from ███████

18         THE COURT:  Why wouldn't that be acceptable for them

19    to rely on that?

20         MR. JEFFRESS:  Because they didn't -- because all of

21    the other information shows that this was false.  First of

22    all, in order to --

23         THE COURT:  That ███████ made a false statement to

24    them?

25         MR. JEFFRESS:  Well, you know, ███████ were

SEALED TRANSCRIPT

1   describing -- what was kind of --

2           THE COURT:  I'm sorry.  Is that what you're saying,

3   that ███████, in their tip to the U.S., lied?

4           MR. JEFFRESS: ███████ were describing --

5           THE COURT:  I'm sorry.  Yes or no?

6           MR. JEFFRESS:  As to this IP user, yes.

7           THE COURT:  All right.  Go on.

8           MR. JEFFRESS:  Yeah.  Because what ███████ were

9   describing -- and it took us a while to figure this out --

10  but if you look at the full -- ███████ were describing a

11  bunch of people.  They were not describing just this IP

12  address that the government believes is Mr. Sanders.  They

13  were describing a whole bunch of IP addresses.  This is very

14  preliminary information provided by ██████, like, hey, you

15  might want to look more at these people.  So they

16  characterized a number -- we don't know how many because the

17  government hasn't given it to us -- but they were

18  characterizing a number of different IP addresses.  Then what

19  Special Agent Ford did was make it appear that ███████ were

20  just supplying information as to this IP address.  And that's

21  what sort of led to this confusion in the language.  And

22  that's what led to this very misleading use of the language.

23  Because it was supposed to apply to a bunch of people.  And

24  in fact, what Special Agent Ford made it seem like is that

25  ███████ are just letting us know about this one person.  So

SEALED TRANSCRIPT

32

1    I think that's why the language was the way it was, source of

2    confusion.  Then trying to use that and say, this is what we

3    had on this one IP user, that's part of what made this so

4    misleading to the magistrate.  And you know, I think the

5    government would concede if you excise paragraph 23, or if

6    you qualify it for what the true case was, then there is no

7    probable cause.  No neutral and detached magistrate could

8    find probable cause without paragraph 23, because it is the

9    only paragraph that says that this person actually went in

10   and viewed or downloaded child pornography.

11          The other thing, Your Honor, the way this site works,

12   is to get past the home page, which just has innocuous

13   content -- that is the only thing that it has on the home

14   page -- to get past that, you have to actually register, you

15   have to give them your e-mail, and you have to give them a

16   password and stuff, and then you have to go log on, and then

17   you have to go to this next step where you go to these forums

18   and everything, and then you have to download the stuff.

19   Okay.  So what they were representing was that he had done

20   all of that when really they knew he just went to this

21   innocuous -- the IP user just went to this innocuous home

22   page.  And that makes all the difference.

23          And the government, I think -- what I'm hearing from

24   my colleague, Mr. Clayman, is that, hey, there is really no

25   difference between going to there home page and going all the

33

1    way to downloading child pornography.  Well, that is not a

2    tenable argument.  And the only reason the government is

3    making that argument is because they know that they only had

4    him going to the home page.

5            THE COURT:  All right.  Thank you.

6            MR. JEFFRESS:  Thank you.

7            THE COURT:  Mr. Clayman.

8            MR. CLAYMAN:  Yes, Your Honor.

9            I would just want to reiterate that, under *Franks* and

10   Rule 16, the burden is on the defendant to show that we have

11   this information he is after and that it is in fact material.

12   So while he is making a big deal of the fact that we have not

13   denied it, he actually needs to provide specific facts to

14   indicate that we do in fact have it.  And I can represent

15   that right now I am not aware of any e-mail, document, or

16   report in which either the FLA or the FBI acknowledges that

17   the tip is false.  I think that's proven because the agent

18   relied on it in the search warrant.  He wouldn't be relying

19   on a tip that everyone knew was false.

20           THE COURT:  What do you say to his argument that he

21   just made that the tip really was that they only went to the

22   front door, they didn't go in?

23           MR. CLAYMAN:  I would say that is contradicted by the

24   face of the tip, which says that they did go in, they did

25   access illegal content.

SEALED TRANSCRIPT

34

1      THE COURT:  That was the tip.

2      MR. CLAYMAN:  Right.  His speculation that maybe

3   that's a lie, he needs to provide some basis to believe that,

4   and he hasn't other than pointing to a couple of times we've

5   described the tip using shorter language.

6      THE COURT:  All right.  I'm going to take the matter

7   under advisement.

8      I'm going to give you each -- I'm thinking -- 10 days

9   to file simultaneous anything further you want to file.  I

10  don't think it needs to be one after the other.  If you want

11  to say anything more than what's already been said, I will

12  allow you to do it in 10 days in 10 pages or less.  In fact,

13  I don't think it needs to be 10 pages.  If you haven't said

14  everything you need to say in what you've already filed and

15  what you've had an opportunity to say today, I would be

16  shocked.  The only thing that I've heard that is new or

17  different is this additional document that you say that they

18  have that isn't in our record yet, and you've indicated that

19  there are other ways to get to this information, and that the

20  affidavit by the expert on behalf of the defendant is not the

21  only way and there are other ways.

22     All right.  I thank counsel for your interesting

23  arguments.  I will take the matter under advisement and get

24  to the matter as soon as I can in these trying times.

25     MR. JEFFRESS:  Thank you very much, Your Honor.

SEALED TRANSCRIPT

35

```
 1            THE COURT:  Thank you.

 2                 (Adjourned at 11:46 a.m.)

 3

 4

 5                      *  *  *  *  *

 6            CERTIFICATE OF OFFICIAL COURT REPORTER

 7

 8            I, Patricia A. Kaneshiro-Miller, certify that the

 9       foregoing is a correct transcript from the record of

10       proceedings in the above-entitled matter.

11

12

13       /s/ Patricia A. Kaneshiro-Miller        August 7, 2020
         -----------------------------------     ---------------------
14       PATRICIA A. KANESHIRO-MILLER                   DATE

15

16

17

18

19

20

21

22

23

24

25
```