**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                    Plaintiff,<br><br>        v.<br><br>ZACKARY ELLIS SANDERS,<br><br>                                    Defendant. | Case No. 1:20-cr-00143<br>Honorable T.S. Ellis, III<br><br>Pretrial conference: May 7, 2021<br>Trial: July 12, 2021 |

**REPLY TO GOVERNMENT'S OPPOSITION TO**
**DEFENDANT'S MOTION FOR ENTRY OF DISCOVERY ORDER**
**AND TO MODIFY THE PROTECTIVE ORDER**

At the hearing on April 2, 2021, this Court agreed that Mr. Sanders was entitled to see all the evidence that the government intends to present in its case-in-chief, as well as have the opportunity to discover and review exculpatory evidence.  See Transcript of Proceedings on 4/2/2021, attached as Ex. 1, at 28 ("THE COURT: . . . He is entitled to see all of the evidence you intend to present against him, and he is entitled to see exculpatory evidence.").   The Court further instructed the parties to find a way for Mr. Sanders to review all the chats underlying the production and receipt counts.  *Id.* at 28  ( 'THE COURT. . . . .we need to figure out a way that he can sit down and look at all of these [chats] because they're all material to the government's accusation of production of child pornography, which of course is the more serious of the allegations. So we need to figure out how to do this."). *Id*.

The defense has attempted to reach an agreement with the government which remains unwilling to allow Mr. Sanders to receive sanitized copies of the approximately 2,150 pages of redacted chats in which he is alleged to be one of two participants, as well as approximately

2,000 pages extracted from Mr. Sanders's electronic devices by a defense expert who was provided access to Mr. Sanders's electronic devices at an FBI facility over a four-day period. The redactions proposed by the defense include the names, family members, contact information, addresses, usernames and/or passwords, and educational institutions of the alleged minor victims, as well as any other information that the government believes needs to be redacted. *None* of the sanitized chats contain any contraband.

The proposed redactions would preserve the rights of any alleged victim to be reasonably protected from the accused and guarantees that their dignity and privacy would  be treated with fairness and respect, as required by 18 U.S.C. §§ 3771(a)(1), (8), and would disclose only information that the government alleges Mr. Sanders *was previously sent* by the alleged minor victims and which is information that he *needs to know* by virtue of his participation in the instant proceeding *as the accused.*  See 18 U.S.C. §§ 3509(d)(1),, (d)(4).  ).  *See, e.g.,* 18 U.S.C. § 3509(d)(1)(A)-(B) (providing that "persons who, by reason of their participation in the proceeding, have reason to know [the name or any other information concerning a child]" include "the defendant and employees of the defendant.").  Section 3509(d)(4) expressly provides that "[t]his subsection *does not prohibit disclosure of the name of or other information concerning a child to the defendant*."  18 U.S.C. § 3509(d)(4) (emphasis added).

Not surprisingly, the government provides no explanation for how providing Mr. Sanders with redacted chats containing information that an alleged victim previously chose to disclose fails to protect that individual's privacy and dignity—particularly when it has offered no evidence that Mr. Sanders has disclosed any such information to a third person without a need to know.  See *Gov't Opp*, ECF at 9.  Private information, such as disagreements with a victim's family members that an alleged victim previously disclosed to Mr. Sanders, is outside the scope

of "information concerning a child that must be protected from disclosure" because it is information that Mr. Sanders already knows, and that he has not previously attempted to disclose to third parties.  See *Gov't Opp.*, ECF 308 at 9.  The same is true for any private, sensitive and potentially embarrassing information that any alleged victim has already voluntarily shared with Mr. Sanders in the chats, and that Mr. Sanders has not attempted to disclose.

The government also argues that the Protective Order should not be modified because Mr. Sanders "has provided no explanation of how his unsupervised access to this information at ADC, (potentially around inmates and others present in the facility), would ensure that the minor victims' dignity and privacy rights are being respected."  *Gov't Opp*, ECF 308, at 9.  The argument is disingenuous.

In order to assuage the government's concerns that the information could fall into third parties' hands, the defense proposed making the material available to Mr. Sanders on a password protected iPad that was disabled from connecting to the Internet and that the ADC could provide to Mr. Sanders at predetermined times when he could be locked in his cell.  The ADC has previously provided inmates with access to a laptop provided by defense teams that have been similarly disabled from connecting to the Internet.  Because of the storage capacity and battery life of an iPad, the defense believes that an iPad would be more convenient than a laptop but would serve the same function.

## DISCUSSION

### I.  None of the material that the defense seeks to share with Mr. Sanders contains contraband.

None of the material that the defense is seeking to share with Mr. Sanders contains contraband as the government would have this Court believe.  As government counsel well know, an FBI agent who was not involved in this investigation reviewed every page of the

thousands of pages of material that Mr. Sanders's forensic examiner extracted to ensure that none of it included contraband.  The government misleadingly stated in its Opposition that "[t]he government does not know what information is contained in the material his examiners extracted beyond the fact that some of what the examiner sought to remove from the FBI's office contained child sexual abuse material."  ECF No. 308 at 4.  That statement is not only misleading, but omits facts known to the government—that out of the thousands of pages the defense sought to copy, there were only 3 or 4 instances where contraband was inadvertently included among the images selected for copying by the defense team.  Before the defense team was allowed to take a copy of any image out of the FBI facility, the images selected for copying were carefully examined by an FBI agent who is not a member of the prosecution team.  Once the contraband images were flagged by the FBI agent, the defense team was required to re-select all the images they selected for copying with the small number of contraband images removed. The forensic reports generated by the defense expert with the new images selected for copying were reexamined by the FBI agent to confirm that no contraband had been inadvertently included for a second time, and that all the contraband images had been removed.  Neither the examiner nor the defense attorneys left the FBI facility with copies of any child sexual abuse material.  The defense has also offered to allow the government to review the redacted and sanitized materials before they are provided to Mr. Sanders to eliminate its concerns that they contained sexually explicit material.

## II.  Both video and in-person visits with Mr. Sanders have become increasingly difficult to schedule since May 1, 2021, so the defense will not readily be able to review non-contraband evidence at ADC with his attorneys.

Prior to May 1, 2021, the defense was more easily able to schedule video visits with Mr. Sanders.  Since the jail has begun to allow in-person visitation, it has become increasingly

difficult to do so. As a result, Mr. Sanders will be more limited in what he is able to review with

his attorneys for at least the month of May. To date, the defense has not yet met with Mr.

Sanders in-person at the ADC, and so far has been unable to schedule any in-person visits

between Mr. Sanders and his attorneys.  It has also become increasingly difficult to schedule any

kind of visit at all.  The defense attempted to schedule in-person visits with Mr. Sanders during

the week of May 17, 2021 but was only able to schedule one 45-minute in-person scheduled with

Mr. Sanders for the entire week, and no video visits at all that week.  For the week of May 25,

2021, the defense was only able to schedule four 45-minute video visits with Mr. Sanders.

Reviewing thousands of pages of chats and written discovery with Mr. Sanders via video

conferencing by holding pages up to a computer screen will not provide sufficient time, or a

constitutionally sufficient means of review.

### III.     This case is distinguishable from *United States v. Hewlett*.

The government claims that the Protective Order in this case should not be modified

because the defendant in *United States v. Hewlett*, 1:20-cr-64-TSE, Dkt. 84 (E.D. Va. Aug. 12,

2020), was similarly situated and was not permitted to modify the protective order in that case.

Unlike Mr. Sanders, the defendant in *Hewlett* was alleged to have engaged in in-person

production while having sex with a minor.  This Court ruled that it was necessary to protect the

defendant's minor victim from the accused in that case because he had both violated and

attempted to circumvent the Court's Orders restricting him from contacting the alleged victim as

well as other witnesses in the case.  ECF No. 308-1 at 6. (*Hewlett* Order).  The Court further held

that the Sixth Amendment did not require modification of the Protective Order to permit Hewlett

to receive copies of the discovery materials at the jail.  Among the reasons cited by the Court

was the fact that neither party discussed the volume of discovery or whether that would make

redactions impossible.  The Court further concluded that under the circumstances of that case, reviewing discovery on a shared computer screen via video conferencing was consistent with the defendant's Sixth Amendment rights.   ECF No. 308-1 at 10, (*Hewlett* Order).  The volume of discovery and findings that Hewett violated the Protective Order are very different from what has occurred in this case.  First, there is no evidence that none of the alleged victims currently needs to be protected from Mr. Sanders.[1]  Moreover, unlike *Hewett*, there are more than 2,150 pages of chats that the government intends to introduce in its case-in-chief that Mr. Sanders needs to personally review in order to adequately and meaningfully assist in his defense and critically, to decide whether to testify.  *Crane v. Kentucky*, 476 U.S. 683, 687 (1986) (citing *California v. Trombetta*, 467 U.S. 479, 485 (1984)) (recognizing that defendants have "fundamental constitutional right to a fair opportunity to present a defense.")

**IV.     The government has previously grossly overstated the sensitivity of information.**

This Court should not credit the government's claims about the sensitivity of the sanitized, redacted chats that the defense seeks to share with Mr. Sanders.  Mr. Sanders was alleged to be a participant in each of the chats.  The information disclosed by the alleged victims underlies the government's case and was voluntarily disclosed to Mr. Sanders during the chats.  Thus, their privacy and dignity rights will not be violated if Mr. Sanders is permitted to receive sanitized copies of the chats in a secure setting at the ADC.  If as the defense proposes, all personal identifying information is redacted from the chats and the chats are provided to Mr. Sanders on a password protected iPad at times when he is locked in his cell, there is no danger that their privacy and dignity rights will be violated by either Mr. Sanders, fellow inmates, or

---

[1] The government claimed that Mr. Sanders's mother contacted one of the alleged minor victims after Mr. Sanders was arrested.  That was before Mr. Sanders was indicted, and the person whom Mrs. Sanders contacted was an <u>adult</u> at the time.

others present at the facilities, including as the deputies at the jail who would maintain custody of the iPad.

**V.      The current process for reviewing evidence is unworkable.**

The limited sessions planned at the U.S. Attorney's Office also provide insufficient time to review the totality of the evidence, including reading and discussing the thousands of pages of chats, nor would the schedule proposed by the government for attorney jail visits be workable given the difficulty in scheduling attorney visits and counsel's other professional and personal obligations.   If this Court does not afford Mr. Sanders greater access to exculpatory evidence and to evidence the government will introduce in its case-in-chief, the defense anticipates that a further continuance will be required for the same reasons that previous continuances were granted.  Mr. Sanders simply will not have had adequate opportunity to review the evidence which he must do in order to assist in his defense and decide whether to testify.

## CONCLUSION

Wherefore, for the above reasons and any other reason appearing to the Court, Mr. Sanders respectfully requests that his Motion be granted and that this Court issue the proposed discovery order and modify the protective order to ensure Mr. Sanders is able to adequately review discovery prior to the July 12, 2021 trial.

Respectfully submitted,

_____/s/_____
Jonathan Jeffress (#42884)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C.  20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

_____/s/_____
Nina J. Ginsberg (#19472)
Zachary Deubler (#90669)
DiMuroGinsberg, P.C.
1101 King Street, Suite 610
Alexandria, VA  22314
Telephone: (703) 684-4333
Facsimile: (703) 548-3181
Email: nginsberg@dimuro.com
Email: zdeubler@dimuro.com

*Counsel for Defendant Zackary Ellis Sanders*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of May 2021, the foregoing was served electronically on the counsel of record through the U.S. District Court for the Eastern District of Virginia Electronic Document Filing System (ECF) and the document is available on the ECF system.

_/s/_____
Nina Ginsberg