**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:20-cr-00143 |
| Plaintiff, | The Honorable Judge Ellis |
| v. | Hearing on Motion to Compel: May 28, 2021 |
| ZACKARY ELLIS SANDERS, | |
| Defendant. | Trial: July 12, 2021 |

**DEFENDANT'S REPLY TO GOVERNMENT OPPOSITION**

Zackary Ellis Sanders, by and through counsel, respectfully submits this reply to the government's opposition to his motion to compel any Title III warrant and/or pen register/trap and trace ("PRTT") order(s) that the FBI obtained as part of its investigation of the target website and the IP addresses that were alleged to have visited it, including the Sanders family's IP address.

Notwithstanding the government's opposition, the Court should grant Mr. Sanders's motion to compel for at least three reasons.  First, the government has previously dismissed as "hypothetical" and "speculative" Mr. Sanders's requests for discovery that the government knew well it possessed and that reflected what Mr. Sanders said it would.  Those *Brady* violations have directly prejudiced Mr. Sanders and resulted in obviously incorrect rulings by this Court.  Second, the government's opposition fails to answer the relevant question:  whether law enforcement obtained a Title III warrant and/or PRTT order(s) with respect to the target website in this case.  Indeed, the government's opposition appears deliberately worded to evade that question.  And third, the government's representation to this Court that it decided to seek a

search warrant for the Sanders family's home based on nothing more than a "tip" listing the Sanders's family's IP address as one of thousands to have visited the target website is simply not credible. Based on the large number of IP addresses the foreign law enforcement agency ("FLA") provided, the government is plainly withholding an additional form(s) of electronic surveillance involving the Sanders family's IP address that the FBI used when determining whether to seek a search warrant.

## DISCUSSION

I.   **The government has previously dismissed as "hypothetical" and "speculative" Mr. Sanders's requests for discovery that the government knew well it possessed and that reflected what Mr. Sanders said it would.**

This is not the first time the government has misleadingly dismissed Mr. Sanders's requests for discovery material as "baseless speculation" or "concocted," ECF No. 350 at 2, while in knowing possession of the very material Mr. Sanders was seeking—only to produce the requested material after the time the defense could make effective use of it.[1] With respect to the four exculpatory screenshots the government belatedly produced, for example, the government similarly denigrated Mr. Sanders's requests for that material while possessing it all along. Indeed, in litigating Mr. Sanders's prior motions to compel involving the screenshots, the government used the word "speculative" seven times, "conclusory" eight times, and "fish" or "fishing expedition" nine times, *even though the government was referring to screenshots it possessed before Mr. Sanders was ever charged.*[2] In describing the defense's requests in this manner, the government blatantly misled the Court about the material's existence.

---

[1] *See, e.g.*, Gov't Opp'n (ECF No. 43) at 1, 19.

[2] *See* Defense Pleadings (ECF Nos. 51, 88, 89, 176, 241, and 316)*;* Gov't Opp'n (ECF No. 43).Gov't Opp'n (ECF No. 57) at 6 (similar); Gov't Opp'n (ECF No. 70) at 6 (similar).

Relying on the government's characterizations of Mr. Sanders's requests, the Court agreed that Mr. Sanders was engaging in mere "hopeful speculation," Court Opinion (ECF No. 73) at 13; Court Opinion (ECF No. 107) at 9 (similar), and denied his motions to compel, including with respect to the four exculpatory screenshots the government was withholding at that very time.  Much worse, having been misled by the government's deliberately selective production of *inculpatory* screenshots only, the Court issued a clearly incorrect ruling on Mr. Sanders's motion to suppress, holding that the website in fact included no legal content, when the government well knew the opposite was true.  *See* Memorandum Opinion (ECF No. 113) at 16 ("Defendant's claim that the site included legal content . . . does not make it so. . . [T]hat claim is contradicted by screenshots of the site provided by the FBI, which display the [target] website's board index . . . Thus, Special Agent Ford's description of the [target] website is accurate and without any materially misleading omissions."); *but see* Later Produced Screenshots, attached as Ex. 1 (displaying only legal content).  When the government finally produced the four additional screenshots demonstrating that the website's very homepage neither contained nor "advertised" any illegal content, the Court then had to reverse itself entirely on the significance of the screenshots, paradoxically holding that "[t]he fact that the Target Website's homepage does not mention child pornography in no way changes the conclusion that the Affidavit accurately portrayed the Target Website and the FLA Tip."  Court Opinion (ECF No. 237) at 2, n.1.  The Court's reversal—which was not just incorrect but transparently so—was the direct result of the government withholding exculpatory material until well past the time the Court could appropriately consider it as part of the record.  Needless to say, the Court should not allow those events to repeat themselves here.

## II.     The government's opposition fails to answer the relevant question:  whether law enforcement obtained a Title III warrant and/or PRTT order with respect to the target website in this case.

The government's arguments in opposition to Mr. Sanders's motion for a Title III warrant and/or PRTT order(s) are consistent with its past practice of attacking Mr. Sanders's requests while simultaneously dodging the question of whether the government (meaning not just the prosecutors here, but also the FBI and the Department of Justice generally) possesses the material.[3]  Instead of simply denying that it ever sought a Title III warrant and/or PRTT order(s) to investigate the IP addresses that were identified as having visited the target website in the spring of 2019, the government adopts the same refrain from prior pleadings and refers to the requested Title III warrant and/or PRTT order(s) as "hypothetical."  Gov't Opp'n (ECF No. 350) at 1.

The government states that it "has no material to produce in response to the defendant's request for a [Title III warrant and/or PRTT order] used in the investigation of his IP address." *Id.* at 3-4.  But this only begs the question of how the government defines its duty "to produce" in the first instance.  If past events in this very case are a guide, then the government's understanding of that duty is unduly narrow and inconsistent with *Brady*.  Moreover, the government's qualification that the Title III warrant and/or PRTT order must have been "used in the investigation of [Mr. Sanders's] IP address" is also concerning.  *Id.* at 3-4.  In strikingly similar FBI operations, the Title III warrants and/or PRTT orders were often not specific to an

---

[3] In discussions with defense counsel, the government has repeatedly drawn distinctions between materials in its possession and what might be residing with the FBI or at the Department of Justice, with the suggestion that the prosecutors here are not accountable for *Brady* material in the FBI or DOJ's possession.  The Supreme Court rejected any such distinction long ago.  *See Kyles v. Whitley*, 514 U.S. 419 (1995).  The Court should ensure that the government is not relying on this incorrect argument to further evade its core discovery obligations.

individual user's IP address, but were used to investigate all IP addresses that visited a specific website.[4]  That is precisely the information Mr. Sanders requested and that the government has not denied exists.  The Court should compel the government to state whether it obtained such a warrant and/or order(s) here and, if so, to produce it.

III.   **The government's representation to this Court that it decided to seek a search warrant for the Sanders family's home based on nothing more than a "tip" listing the Sanders family's IP address as one of thousands to have visited the target website is not credible.**

Finally, the government's claim that the FBI decided to search the Sanders family's home based solely on the tip from the August 2019 Intel Log (ECF No. 253-1) is not credible on its

---

[4] The government misleadingly attempts to distinguish this case from prior child pornography operations on the sole basis that those operations "involved the FBI taking control of child pornography websites," which the defense "knows did not occur here."  Gov't Opp'n 3.  The mere fact that the FBI had the sense to outsource that controversial part of the operation to the FLA on this occasion does not meaningfully distinguish those past operations from the one at issue here.  Furthermore, it is notable that the government repeatedly continues to evade admitting to facts that *have long been part of the public record*.  The government states that ███ ████████████████████████████████████ "may" have been involved in similar FBI child pornography operations, Gov't Opp'n (ECF 350) at 3, but that is a fact. ██████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

████████████████████████████████  Similarly, the government disturbingly refuses to admit that the FBI took control of child pornography websites in the past, but that is also a known fact. Operation Torpedo NIT Warrant, attached as Ex. 4, at ¶ 28 (describing how the FBI sought and obtained a pen trap order that was renewed multiple times to monitor one of the administrators of one of the target websites, after taking control of the target websites); Eric Marques (Freedom Hosting) Assistant Director Report, Complaint, and Statement of Facts, attached as Ex. 5 (demonstrating that the FBI took control of the Freedom Hosting server after a tip from a foreign law enforcement agency, and that mutual legal assistance treaties and Title III warrant(s) were used in that investigation); Opinion, *United States v. Michaud*, No. 3:15-CR-05351-RJB, 2016 WL 337263, at *1 (W.D. Wash. Jan. 28, 2016), attached as Ex. 6 (explaining how, in Operation Pacifier, the FBI executed a Title III warrant to intercept communications of Play Pen, a website the FBI took control of); Gov't Opp'n in *Michaud* (claiming that Title III warrant justified use of NIT in Operation Pacifier), attached as Ex. 7; Operation Pacifier Assistance Director Report, attached as Ex. 8 (providing that the FBI used PRTT order(s) and Title III warrant(s) in Play Pen investigation).  The government's repeated denial of known facts is affirmatively harmful to this Court's decisional process.

face. *See* Gov't Opp'n (ECF 350) at 3 ("The answer to the defendant's 'obvious question' of why the FBI obtained a warrant to search his home is equally obvious: because the government received a reliable tip advising that someone using his IP address accessed child sexual abuse material on a TOR hidden service."). First of all, as the FBI well knew at the time it sought the search warrant, the FLA's tip did not mean that the IP user had actually "accessed child sexual abuse material;" as the government itself has now recognized (and as the belatedly produced subpoenas reinforce, by seeking information on "IP Address: 98.169.118.39 used on 5/23/2019 at 02:06:48 UTC"), it meant that the person had visited the site a single time. September Subpoena (ECF No. 335-1); November Subpoena (ECF No. 335-2) (similar); FD-1057 (ECF No. 335-3) at 2 (similar).[5]

Moreover, as the government's belated disclosure of the administrative subpoenas has now also made clear, the FLA provided the FBI with a list of ▮▮ IP addresses for one internet service provider alone (Cox Communications). November Subpoena (ECF No. 335-2). Given the enormous number of IP addresses the FLA must have provided, including for subscribers to other major Internet Service Providers, it strains credulity that the FBI did not use some other form of electronic surveillance, *i.e.*, a Title III warrant or and/or PRTT order, before applying for a search warrant for the Sanders's family home and committing 26 law enforcement agents there for a full day to conduct the search. Because Mr. Sanders would have standing to challenge whatever other warrant or order the FBI obtained, it must produce that material to Mr. Sanders.

---

[5] *See also* ▮▮▮ ▮▮▮ attached as Ex. 9, at ¶ 3 (stating that ▮▮▮ ▮▮▮ ▮▮▮ ▮▮▮ ▮▮▮ ▮▮▮") (emphases added). The government moved to unseal the Complaint in ▮▮▮ in ▮▮▮ 2021. The name of the target website has been available on the public docket since then.

## **CONCLUSION**

Although the government claims to be "aware of its Rule 16, *Brady*, *Giglio*, and other disclosure obligations," Gov't Opp'n (ECF 350) at 2, it suppressed for many months four exculpatory screenshots of the target website that directly contradicted Special Agent Ford's affidavit, the government's representations to the Court, and this Court's memorandum opinions. The government only disclosed such screenshots, and the subpoena for ▮ IP addresses, after Mr. Sanders could make effective use of them in litigating his motion to suppress. The Court should not permit the government to engage in gamesmanship of this kind—in direct violation of *Brady* and Rule 16—yet again. For the above reasons, the Court should order the government to produce the missing warrant and/or orders, or, in the alternative, to produce it to the Court for *in camera* inspection.

Respectfully submitted,

_____/s/_____
Jonathan Jeffress (#42884)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C.  20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

_____/s/_____
Nina J. Ginsberg (#19472)
DiMuroGinsberg, P.C.
1101 King Street, Suite 610
Alexandria, VA  22314
Telephone: (703) 684-4333
Facsimile: (703) 548-3181
Email: nginsberg@dimuro.com

*Counsel for Defendant Zackary Ellis Sanders*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of May 2021, the foregoing was served electronically on the counsel of record through the U.S. District Court for the Eastern District of Virginia Electronic Document Filing System (ECF) and the document is available on the ECF system.

*/s/ Jonathan Jeffress*
Jonathan Jeffress

8