IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>ZACKARY ELLIS SANDERS,<br>　　　　　　　　　　Defendant. | Case No. 1:20-cr-00143<br><br>Judge T.S. Ellis III |

**MEMORANDUM IN SUPPORT OF**
**UNOPPOSED MOTION FOR ENTRY OF PROTECTIVE ORDER**

　　　　Zackary Ellis Sanders, by and through counsel, respectfully files this motion for entry of a Protective Order to govern material disclosed by the defense to the government. Certain of the discovery materials in this case that Mr. Sanders has already disclosed and/or intends to disclose to the government and/or its expert (who is a licensed psychologist) contain (1) sensitive, confidential medical information regarding his mental and physical health, from his early childhood to the present, and (2) test materials and raw test data that should not be made public, according to the American Psychological Association ("APA"), *inter alia*, because of psychologists' ethical obligations and "concerns regarding . . . test security, the potential invalidation of tests, copyright laws, and contractual obligations."[1]  Neither of those two categories of materials contain information the public would be entitled to see.  Accordingly, Mr.

---

[1] APA, *FAQs: Disclosure of Test Data and Test Materials* (Apr. 11, 2019), available from https://www.apa.org/science/programs/testing/data-disclosure-faqs, ("APA FAQs"), attached as Ex. 2; *see also* APA ETHICAL PRINCIPLES OF PSYCHOLOGISTS AND CODE OF CONDUCT (Am. Psychol. Assoc. 2017) ("APA Ethics Code") Section 9: Assessment, attached as Ex. 3.

Sanders respectfully requests that the Court issue the attached Protective Order (Ex. 1), and in support thereof states as follows:

1. The attached Protective Order is required to protect (1) Mr. Sanders's confidential medical information, which Mr. Sanders has already disclosed to the government, and (2) test materials and raw test data, which defense expert Dr. Tyler Whitney has begun producing to the government's expert, Dr. Paul Montalbano, in accordance with his ethical and contractual obligations as a psychologist.

2. The Protective Order (ECF No. 28) that was previously entered in this case applies only to discovery that the government discloses to the defense, not discovery that the defense discloses to the government. The proposed protective order contains the same language as the existing order other than using language that applies the defense's disclosures to the government. *Compare* Ex. 1 (Proposed Order) *with* Protective Order (ECF No. 28).

3. The defense has conferred with the government and the government does not oppose the entry of the proposed protective order.

4. With respect to Mr. Sanders's medical records, the Eastern District of Virginia has previously held that such records are entitled to privacy protection and may be filed under seal. *James v. Service Source, Inc.*, 2007 U.S. Dist. LEXIS 86169 at *12 (Nov. 21, 2007 E.D. Va.).

5. With respect to test materials and raw test data, the government previously requested that the defense disclose to the government certain information underlying Dr. Whitney's preliminary March 31st report (ECF No. 282-1) and/or forming the basis of Dr. Whitney's final report, which Dr. Whitney is in the process of completing. At the time the

government made such a request, it did not inform the defense that it had identified a specific expert to whom the defense could produce such materials.

6. In a pleading filed on May 28, 2021, the government suggested for the first time that it had selected a specific expert. Gov't Motion (ECF No. 371). On June 1, 2021, the defense requested the identity of the government's expert in order to begin producing materials to that expert.

7. On June 2, 2021, the defense produced to the government the non-test data and non-test materials that formed the basis of Dr. Whitney's March 31st report that the government did not already possess. This consisted of items 1-7 provided by Mr. Sanders's mother, Risa Sanders, to Dr. Whitney, and items 8-14 provided by the defense to Dr. Whitney. ECF No. 282-1 at 2. Items 1-7 provided by the defense were already in the government's possession and had been produced to the defense in discovery. *Id.* at 2.

8. On June 3, 2021, the government disclosed the identity of Dr. Montalbano to the defense for the first time. The very next morning, Dr. Whitney contacted Dr. Montalbano regarding the most convenient way for producing test materials and raw test data directly to Dr. Montalbano, in accordance with Dr. Whitney's ethical and contractual obligations. Without receiving a response back from Dr. Montalbano, during the afternoon of June 4,

    Dr. Whitney began producing test materials and raw data to Dr. Montalbano electronically.[2]

9. As the government and this Court may be aware from previous cases involving licensed psychologists, the defense's expert, absent an appropriate protective order and Court order, Dr. Tyler Whitney, is only permitted to disclose testing materials and raw test data to another licensed psychologist, due to his ethical and contractual obligations surrounding such materials. Ex. 2 (APA FAQs); Ex. 3 (APA Ethics Code).

10. According to the APA:

> The Testing Standards (Standard 9.1) note that responsibility for test use is only assumed by, and delegated to, persons with training and experience necessary to handle the responsibility in a professional and technically adequate manner. Concerns regarding test data release to unqualified individuals include: incompetent test interpretation resulting in misguided decisions based on a misunderstanding of the test, test data, test materials, and test reports; an underappreciation of the limitations of test data and test materials used out of context and without professional guidance; and the potential misuse of data and materials which could have harmful effects on the client, patient, or others. The psychologist's responsibilities in these respects extend to raw test data and test materials, such as responses to test items or recording of observations during assessment that may be contained in test protocols or testing records.
>
> . . .
>
> The critical concerns regarding the release of test materials primarily relate to test security, the potential invalidation of tests, copyright laws, and contractual obligations. Psychologists are required by the Ethics Code to maintain the integrity and security of tests and other assessment techniques consistent with law and contractual obligations (Standard 9.11). This is important for several reasons.

---

[2] Dr. Whitney produced to Dr. Montalbano test materials and raw data comprising the Autism Quotient (AQ) [Risa Sanders]'s scored / [Mr. Sanders]'s self-report scored, Empathy Quotient (EQ) [Risa Sanders]'s scored / [Mr. Sanders]'s self-report scored, Personality Assessment Inventory (PAI), Psychopathic Personality Inventory- Revised (PPI-R), Multiphasic Sexual Inventory, 2nd Edition (MSI-II), Rotter's Incomplete Sentence Battery-Adult Form (RISB), Vineland Adaptive Behavior Scales, 3rd Edition (VABS-3). Dr. Whitney informed Dr. Montalbano that early in the week of June 7, 2021, he would provide him with the Autism Diagnostic Observation Scale-2nd Edition, Module 4 (ADOS-G, Module 4) and the Reading the Mind in the Eyes Test (RMET).

> Disclosure of secure testing materials (e.g., test items, test forms, test responses, test scoring, or test protocols) to unqualified persons may not only render the test invalid for any future use with that individual; doing so may also jeopardize the validity, security, and integrity of the test for other test-takers and other stakeholders. Such releases impose very concrete harms to the general public, e.g., a loss of effective assessment tools; a disruption of research and practice when assessments must change due to a security breach; and a devaluating or nullifying of scores that were previously obtained under secure conditions. Psychometrically well-developed tests of intelligence, personality, achievement, and other constructs require a considerable investment of time, money, and expertise. Furthermore, there may be a limited number of standardized psychological tests considered appropriate for a given purpose (in some circumstances only a single instrument). Therefore, tests often cannot easily be replaced or substituted when the security of a test is compromised by test takers, administrators, groups, technologies, or in other ways. Test owners and developers may file breach of contract claims against psychologists who violate the test-security terms of their test purchase or lease agreements.
>
> …
>
> Psychologists are legally and ethically responsible for respecting test copyrights (Testing Standards 9.22, 9.23). Tests and test protocols are generally protected by the federal copyright laws and usually may not be copied without permission of the copyright holder. Consequently, psychologists mandated by law or regulation to provide copies of a test, test manual, or test protocols need to consider copyright laws that may potentially be violated by releasing such materials. Psychologists are encouraged to be familiar with the terms of their test purchase or lease agreements with test publishers as well as reasonably informed about relevant provisions of the federal copyright laws. Psychologists may wish to consult with test publishers and/or knowledgeable experts to resolve possible conflicts before releasing specific test materials to ensure that the copyright and proprietary interests of the test publisher are not compromised.
>
> Ex. 2 (APA FAQs) at 1-2.[3]

11. Mr. Sanders requests that a Protective Order require that the government not disseminate discovery items to anyone other than counsel and members of the prosecution's litigation team. As proposed in the Protective Order, the prosecution shall return materials produced in discovery within 10 days upon conclusion of the case before this Court, or, if

---

[3] Georgia has adopted the APA's ethical guidelines verbatim, Ga. Comp. R. & Regs. 510-4-.02, and Georgia is Dr. Whitney's home licensing state.

an appeal is taken, upon completion of such an appeal, or destroy all discovery and certify to the defense that it has been destroyed. Any materials produced in discovery, or information contained therein, that are filed with the Court in connection with pretrial motions, trial, sentencing or any other matter before this Court, shall be filed under seal and shall remain sealed until otherwise ordered by this Court. This does not entitle either party to seal their filings as a matter of course. The parties are required to comply in all respects with the relevant local and federal rules of criminal procedure pertaining to the sealing of court documents.

12. Any violation of any term or condition of the Proposed Order by any member of the prosecution team or any attorney for the United States Attorney's Office for the Eastern District of Virginia may be sanctioned by contempt of court and/or may be subject to monetary or other sanctions as deemed appropriate by this Court.

13. This motion and proposed Protective Order are submitted for the purpose of ensuring that confidential medical information and test materials/raw test data are not disseminated to third parties. The requested relief is narrowly tailored to ensure that the confidential and/or copyrighted information identified above will remain protected.

Based on the foregoing, Mr. Sanders respectfully requests that the Court authorized the proposed Protective Order governing the use and disclosure of confidential and/or copyrighted discovery material.

Respectfully submitted,

/s/
Nina J. Ginsberg (#19472)
DiMuroGinsberg, P.C.
1101 King Street, Suite 610
Alexandria, VA  22314
Telephone: (703) 684-4333
Facsimile: (703) 548-3181
Email: nginsberg@dimuro.com
Email: zdeubler@dimuro.com

/s/
Jonathan Jeffress (#42884)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C.  20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

/s/
Mark John Mahoney (admitted *pro hac vice*)
Harrington & Mahoney
70 Niagara Street
3rd Floor
Buffalo, NY 14202
Telephone: 716-853-3700
Facsimile: 716-853-3710
Email: mjm@harringtonmahoney.com

*Counsel for Defendant Zackary Ellis Sanders*

# CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of June 2021, the foregoing was served electronically on the counsel of record through the U.S. District Court for the Eastern District of Virginia Electronic Document Filing System (ECF) and the document is available on the ECF system.

*/s/ Jonathan Jeffress*
Jonathan Jeffress