**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 1:20-cr-00143 |
| v. | The Honorable Judge Ellis |
| ZACKARY ELLIS SANDERS, | Hearing: June 11, 2021 |
| Defendant. | |

## MR. ZACKARY SANDERS'S CORRECTED OPPOSITION TO GOVERNMENT'S MOTION TO EXCLUDE EVIDENCE AT TRIAL AND CONSENT TO GOVERNMENT'S MOTION TO CONTINUE TRIAL

This case involves several areas of specialized knowledge that are beyond the understanding of the average juror. These include ████████████████████ and how someone with ████ would perceive and react to (1) interrogation by law enforcement and (2) online role play, BDSM, and leather culture, especially among gay males, and how both would differ from the behavior of ██████████████. Whether Mr. Sanders receives a fair trial that is based on the evidence, and not false preconceptions and prejudice, hinges on the jury having information about each of these areas.

## INTRODUCTION

Only if the jury is able to accurately understand the impacts ███ has on Mr. Sanders's ability to perceive, understand, and communicate with others, including in interacting with law enforcement and in the online milieu involving online role play (including BDSM and leather culture among gay males) will the jury be able to fairly judge how Mr. Sanders's perceptions of these activities differ from those held by a person who does not have the same ██████

███████████. Understanding Mr. Sanders requires understanding his ██████. His █████████████████████████████████ ███████████████████████████████████████.

Exclusion of such evidence, especially evidence bearing on his intent and purpose for engaging in online activities, invites a biased, erroneous, and unfairly prejudicial interpretation of what might otherwise prove to be innocent conduct.

While the Federal Rules of Evidence and Criminal Procedure require the admission of this expert testimony, the failure of the government to address the accused's fundamental right to present a defense warrants clarification of the contours of that right as it to applies to this case, and the present motion.

The government misperceives both the facts and the procedural requirements of Rule 12.2(b). That rule states that the defense is only required to file a notice *after* forming the intent to introduce such evidence. Fed. R. Crim. P. 12.2(b). The timing of the filing of the notice therefore hinges on the formation of defense counsel's intent, which in this case was not until April 2021. Motion for Leave to File Rule 12.2(b) Notice of Expert Evidence of a Mental Condition Bearing on Lack of Guilt and Memorandum in Support (ECF Nos. 299, 305). Notably, the Advisory Committee Notes to Rule 12.2(b) provide: "Subdivision (b) does *not* attempt to decide when expert testimony is admissible on the issue of the requisite mental state. It provides only that the defendant must give pretrial notice *when he intends to introduce such evidence*." Fed. R. Crim. P. 12.2 advisory committee note (1974) (emphases added).

The government also lacks a fundamental understanding of █████ and the prevalence of delayed diagnoses of █████. Decades of research reflect consensus among █████ experts that

2

████████████████████████████████████████████, which does

detact from ██████████████, or the integrity of a defense resting on it.

Counsel have not received ██████'s final report, which will be submitted to the

government on or before June 18, 2021.  Until counsel have studied the final report, they cannot

determine precisely the evidence they will seek to introduce, or precisely how exactly they might

argue that Mr. Sanders's diagnosis and his underlying characteristics negate the intent and

purpose elements of the production counts.  By the same token, the government will not have the

information it is entitled to receive until it has ██████'s final report and Mr. Sanders's Rule

16 disclosures.  Given all of the above, the defense consents to a continuance of the trial in this

matter until on or after October 4, 2021, to allow the government an equal opportunity to conduct

its own review of the evidence and to engage its own expert to evaluate Mr. Sanders.  ECF No.

373 at 9.[1]

Mr. Sanders has no constitutional obligation to lay out his complete defense, as the

government sought to do in its motion *in limine*.  Nor does the government's factual recitation,

which the defense disputes, bear on Mr. Sanders's right to present a defense and the admissibility

---

[1] The government's expert, ████████████, has already been provided copies of all the test
materials and raw test data that underlie ████████'s forthcoming report.  ████████
provided the majority of materials to ████████ on June 4, 2021, the day after the defense
was informed for the first time of the identity of the government's expert, and also provided
additional materials on June 8, 2021.  The defense has not reproduced to the government Rule 16
discovery material the government already has.

of evidence about his ███████ as it relates to (1) the voluntariness of statements he made to law enforcement and (2) his purpose and intent in interacting online with alleged minors.[2]

## FACTUAL BACKGROUND

I.   **Mr. Sanders's** ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████

_____

[2] For example, much of what the government describes as "commands" or "demands" is not factually accurate and will be contested at trial, as will the government's characterization of Mr. Sanders's use of the word "boy" in his communications, which in this particular context *does not, in fact,* denote a person of a young age. *The DC Boys of Leather*, The DC Center for the LGBT Community, https://thedccenter.org/organizations/listing/the-dc-boys-of-leather (last accessed June 9, 2021).

## II.   Relevance ███



██████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████

**III.**  ███████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

██████████████████████  ██████████████████████

████████

████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

---

[4] ████████████████████████████████████████
████████████████████████



**IV.**

v.

## ARGUMENT

### I.    The right to present a defense

The admissibility of evidence offered by the defense is not only governed by the Federal Rules of Evidence and the Federal Rules of Criminal Procedure, but also by the defendant's Right to Present a Defense, which is protected by the Compulsory Process Clause of the Sixth Amendment.  The Supreme Court has held that:

> The right to offer the testimony of witnesses and to compel their attendance, if necessary, is in *plain terms the right to present the defense*, the right to present the defendant's version of the facts as well as the prosecution's to the *jury so it may decide where the truth lies*.  Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.

*Washington v. Texas*, 388 U.S. 14, 19 (1967) (*emphases added*).

*Chambers v. Mississippi*, 410 U.S. 284 (1973) further established that the Federal Rules are subordinate to the defendant's right to compulsory process to present a defense.  Chambers was tried for a murder to which someone named McDonald had extrajudicially confessed. McDonald was called by the defense but retracted his prior confessions and asserted an alibi. Under the state "voucher" rule, Chambers was not allowed to impeach McDonald with respect to his alibi or confession.  Furthermore, Chambers was not allowed to introduce into evidence McDonald's extrajudicial confessions, because they were only against his *penal* (as opposed to pecuniary) interest, and therefore inadmissible under Mississippi hearsay rules.

The Supreme Court reversed Chambers's conviction.  With respect to the application of the state "voucher" rule, the Court held that the defendant's Sixth Amendment right

> has never been held to depend on whether the witness was initially put on the stand by the accused or by the State.  We reject the notion that a right of such substance in the criminal process may be governed by the technicality or by narrow and unrealistic definition of the word "against."  The "voucher" rule, as

applied in this case, plainly interfered with Chambers' right to defend against the State's charges.

*Chambers*, 410 U.S. at 298.

And with respect to the exclusion of McDonald's extrajudicial confessions, the Court stated as follows:

> Although perhaps no rule of evidence has been more respected or more frequently applied in jury trials than that applicable to the exclusion of hearsay…. . The testimony rejected by the trial court here bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declaration against interest. *The testimony also was critical to Chambers' defense.* In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.

*Id.* at 302 (emphasis added).

## II.   The right to present a defense is more than the right to a "fair trial" or compliance with the rules of evidence.

Because the right to present a defense is a fundamental right, based on the compulsory process clause, it has to mean something more than the Sixth Amendment right to a fair trial, or the due process right to a fair application of the rules of evidence.

As put by Professor Peter Westen, who argued the case on Chambers' behalf, *Chambers* and the cases on which it relies, establish the following general rules:

> Broadly construed, it appears to recognize that the accused in a criminal proceeding has a constitutional right to introduce any exculpatory evidence, unless the state can demonstrate that it is so inherently unreliable as to leave the trier of fact no rational basis for evaluating its truth.

> *   *   *

> At the very least, therefore, Chambers stands for the proposition that evidence that is sufficiently reliable by constitutional standards to be introduced "against" the accused is sufficiently reliable to be introduced "in his favor."

> *   *   *

> A defendant has a right to introduce material evidence in his favor whatever its character, unless the state can demonstrate that the jury is incapable of determining its weight and credibility and that the only way to ensure the integrity of the trial is to exclude the evidence altogether.

Westen, The Compulsory Process Clause, 73 Mich. L.R. 71 at 151-52, 155 and 159 (1974).

Professor Westen has been repeatedly cited by Justices of the Supreme Court as an authority on

the right to compulsory process.[2]  As retired Southern District of New York Judge Shira

Scheindlin has repeatedly noted, the criterion for admission of defense evidence must be whether

the evidence has the capacity to raise a reasonable doubt in the mind of a rational juror.  *E.g.*

*United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008); *United States v. Nachamie*, 91 F.

Supp. 2d 552, 561 (S.D.N.Y. 2000).  Even arguments about reliability must give way: "If the

Supreme Court cases of *Washington v. Texas, supra* and *Chambers v. Mississippi*, *supra* mean

anything, it is that a judge cannot keep important yet possibly unreliable evidence from the jury."

*Pettijohn v. Hall*, 599 F.2d 476 (1st Cir. 1979).

Importantly, evaluation of the issue in light of its constitutional character militates against

the "balancing away" of this fundamental right for the sake of keeping a trial simple.[3]

### III.    Admission of Evidence of ▇▇▇▇ is Not a Matter of Discretion

One thing is clear from the compulsory process cases: trial level determinations that

exclude favorable defense evidence, even on a determination of relevance, are not merely rulings

on a question of evidence but are determinations of the scope of the fundamental right to present

---

[2] *See Taylor v. Illinois*, 484 U.S. 400, 408 n.13 (1988); *Pennsylvania v. Ritchie*, 480 U.S. 39, 54-56 n.10-12 (1987); *Rock v. Arkansas*, 483 U.S. 44, 52 (1987); *United States v. Inadi*, 475 U.S. 387, 396, 397 n.9, 408, 409 (1986); *Green v. Georgia*, 442 U.S. 95, 97 n.4 (1979); *Taliaferro v. Maryland*, 461 U.S. 948, 949 (1983) (White, J. dissenting from denial of certiorari); *Smith v. Jago*, 470 U.S. 1060, 1061 (1985) (White, J. dissenting from denial of certiorari).

[3] "We are not free to conduct cost-benefit analysis of clear and explicit constitutional guarantees, and then to adjust their meaning to comport with our findings." *Maryland v. Craig*, 497 U.S. 836, 870 (1990) (Scalia, J., dissenting, joined by Brennan, Marshall, and Stevens).

a defense and reviewable for error.  *Pettijohn v. Hall*, *supra*. The trial court's discretion does not

extend to exclusion of crucial relevant evidence.  *United States v. Cohen*, 888 F.2d 770, 29 Fed.

R. Evid. Serv. 182 (11th Cir. 1989); *United States v. McClure*, 546 F.2d 670 (5th Cir. 1977);

*United States v. Anderson*, 872 F.2d 1508, 28 Fed. R. Evid. Serv. 162 (11th Cir. 1989); *United

States v. Riley*, 550 F.2d 233, 237 (5th Cir. 1977); *United States v. Wasman*, 641 F.2d 326, 329

(5th Cir. 1981); *see also United States v. Terebecki*, 692 F.2d 1345, 1351 (11th Cir. 1982) (Hill,

J., dissenting). Similarly, in *United States v. Thor*, 574 F.2d 215 (5th Cir. 1970), the court

observed that in the past "[a]ppellate courts took the view that under the rule [(Fed. R. Cr. P.

17(b))] the grant or denial of a subpoena was committed to the sound discretion of the trial

court," but that rule's mandatory language "rests ultimately upon the Sixth Amendment

guarantee of compulsory process." *Id.* at 218, 220.

**IV.**    **Mr. Sanders has the right to present expert testimony and** ███████████

The right to present a defense also means the right to introduce expert testimony helpful

to understand or make out the theory of the defense. *Crane v. Kentucky*, 476 U.S. 683 (1986);

*Boykin v. Wainwright*, 737 F.2d 1539 (11th Cir. 1984); *United States v. Roarke*, 753 F.2d 991

(11th Cir. 1985).

The right to present a defense also limits the Court's ability to exclude evidence as a

means of enforcing literal violations of discovery rules.[6] The Supreme Court held that in the case

of experts offered by the defense where literal interpretation of discovery rules or directives

might be raised as grounds for preclusion, preclusion is the last resort, and then only in a case

where the late notice was "willful and motivated by a desire to obtain tactical advantage."

---

[6] Mr. Sanders's Rule 12.2(b) notice was not untimely, as his defense team submitted the notice upon forming the intent to introduce such evidence in April 2021.

*Taylor v. Illinois*, 484 U.S. 400, 415 (1988) ("a trial court may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his favor"). *See also*, *Michigan v. Lucas,* 500 U.S. 145 (1991); *Escalara v. Coombe*, 852 F.2d 45, 48 (2d Cir. 1988); *Dutton v. Brown*, 812 F.2d 593 (10th Cir. 1987) *cert. den.* 108 S.Ct. 116;[4] *United States v. McBride,* 786 F.2d 45 (2d Cir. 1986);[5] *United States v. Davis*, 639 F.2d 239 (5th Cir. 1981); *Ronson v. Commissioner*, 604 F.2d 176 (2d Cir. 1979);[6] *United States v. Austin*, 933 F.2d 833 (10th Cir. 1991); *Pulinario v. Goord*, 291 F. Supp. 2d 154 (E.D.N.Y. 2003), *afff'd.*, *Pulinario v. Goord*, 118 Fed. Appx. 554, 2004 U.S. App. LEXIS 26803 (2d Cir. N.Y., 2004); *United States v. Austin*, 933 F.2d 833, 842 (10th Cir. 1991); *Agard v. Portuondo,* 117 F.3d 696, 705 (2d Cir. 1997) *rev'd on other grounds,* 529 U.S. 61 (2000); *Washington v. Schriver,* 255 F.3d 45, 56 (2d Cir. 2001) ("evidentiary rules cannot be inflexibly applied in such a way as to violate fundamental fairness."); *United States v. Finley*, 301 F.3d 1000, 1017 (9th Cir. 2002) (reversed a

---

[4] In *Dutton v. Brown,* a Writ of a Habeas Corpus was granted to a state prisoner whose mother was excluded at trial for violation of a witness sequestration order.

[5] *McBride* involved a defendant who asserted that she was mentally incapable of forming the intent to commit the bank fraud crimes she was charged with, and that she was unwittingly manipulated by her co-defendant into the commission of the crimes. The Second Circuit panel reversed McBride's conviction. Her only apparent defense was her contention that she lacked the capable knowledge of the criminal activity and that her co-defendant manipulated her behavior in furtherance of the crime. . .  *the excluded evidence was critical to appellant's defense*. 786 F.2d at 49-50 (*emphasis added*).

[6] In *Ronson v. Commissioner*, 604 F.2d 176 (2d Cir.1979), the Second Circuit granted an application for a writ of habeas corpus after the New York State trial court had disallowed a § 250.10 Notice to present a defense of diminished mental capacity as having been filed too late. The Second Circuit observed that this was not a statute which was self-executing and under which the trial court had no discretion: "CPL § 250.10 allows a trial judge to permit an insanity defense "in the interests of justice' even if the notice requirements are not met prior to trial." 604 F.2d at 178.

conviction based on erroneous exclusion of an expert, where the notice "supplied the government with sufficient notice of the general nature of [the expert's] testimony," even though it "may not have been as full and complete as it could have been or the government would have liked."). *See also United States v. Sarracino*, 340 F.3d 1148, 1170 (10th Cir. 2003) (sanction of exclusion of a witness's expert testimony 'is almost never imposed' 'absent bad faith.') (citations omitted); *Holmes v. South Carolina,* 547 U.S. 319 (2006).

**V.**  ███████████████████████████████████

███████████████████████████████████

███████████████████████████   ████████████████











**VI.** ▮ **in the context of interrogation**

▮ is extremely relevant in determining the voluntariness of any statements to law enforcement.  This is partly reflected in the problems seen in the reliability and involuntariness of the outcome of typical interrogations of those with ▮, interrogations

of the highly psychological and coercive nature of the one that occurred here, and in fact

prompted the decision in *Miranda v. Arizona*, 384 U.S. 436 (1966).

According to leading scholars in the area of wrongful convictions and false confessions

(Drizin & Leo, 2004), up to 25% of all wrongful convictions are the result of false confessions

(see also Scott-Hayward, 2007).  The sad record of proven false or involuntary confessions is

filled with stories of law enforcement exploiting the heightened vulnerabilities of those with

███████ and juveniles to get them to endorse what the agent incorrectly thinks he "knows," or

forcing the subject to say what he or she believes he must say to conclude the interview, without

understanding the inculpatory nature of his or her statements.  This is partly the product of

widely used psychological interrogation techniques that encourage suspects to agree with the

suggestions of interrogators, whether or not they reveal the truth. This is also partly as a result of

coercion, or implicit promises that agreeing with interrogators will result in benefits which never

happen, including more lenient sentencing or release from custody of youth and ██████ persons

desperate to go home.

██████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████



███████████████████████████████████████████████

███████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

██████

**VII.**    ████████ **and the assessment of *mens rea***

      18 U.S.C. § 2251(a) defines a crime of which an accused must be acquitted if the jury believes that there is a reasonable doubt about the *mens rea* elements regarding the intent or purpose of the accused.  The government will seek to prove those elements based on the behavior of the accused, including the content of his written communications. ████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████



## **CONCLUSION**

The motion to exclude must be denied and the government's request for a continuance should be granted.  Mr. Sanders must be allowed to introduce expert testimony essential to the jury's accurate understanding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ impacted both his ability to perceive and react to questioning by law enforcement, and to his intent and purpose in engaging in the online conduct charged in the indictment.  The jury must not be allowed to decide Mr. Sanders's guilt or innocence based on mere intuition and erroneous preconceptions, or a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that many experienced clinicians fail even to recognize.  Encouraging the Court to preclude defense available to the accused recklessly invites the Court to conduct a trial the outcome of which could never be sustained.

Respectfully submitted,


/s/_____

Mark J. Mahoney (admitted *pro hac vice*)
Harrington & Mahoney
70 Niagara Street, 3rd Floor
Buffalo, New York 14202-3407
Tel.: 716-853-3700
Facsimile: 716-853-3710
Email: mjm@harringtonmahoney.com


/s/_____

Jonathan Jeffress (#42884)
Jade Chong-Smith (admitted pro hac vice)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C.  20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com


/s/_____

Nina J. Ginsberg (#19472)
DiMuroGinsberg, P.C.
1101 King Street, Suite 610
Alexandria, VA  22314
Telephone: (703) 684-4333
Facsimile: (703) 548-3181
Email: nginsberg@dimuro.com


*Counsel for Defendant Zackary Ellis Sanders*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of June 2021, the foregoing was served electronically on the counsel of record through the U.S. District Court for the Eastern District of Virginia Electronic Document Filing System (ECF) and the document is available on the ECF system.

<u>/s/ *Jonathan Jeffress*</u>

Jonathan Jeffress