IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:20-CR-143 |
| v. ) | |
| ) | Hearing: June 11, 2021 |
| ZACKARY ELLIS SANDERS, ) | |
| ) | **UNDER SEAL** |
| *Defendant.* ) | |
| ) | |

**REPLY TO DEFENDANT'S CORRECTED OPPOSITION TO UNITED STATES'
MOTION TO EXCLUDE EVIDENCE AT TRIAL OR, IN THE ALTERNATIVE,
TO CONTINUE THE TRIAL**

The United States of America, by and through undersigned counsel, hereby files this reply to the defendant's corrected opposition ("Opp."). For the reasons below, the government requests, as it did in its motion, that the Court either preclude the defendant from introducing at trial any evidence related to his asserted ▇▇▇▇▇▇▇▇▇▇▇▇▇▇, or continue the trial to allow the government a fair opportunity to review and respond to his psychologist's opinion and independently evaluate him. The government also requests that the Court order the defendant to produce all material that ▇▇▇▇▇ is relying on in preparing his forthcoming report.

**ARGUMENT**

The defendant's response contains numerous citations to literature about ▇▇ generally, accompanied by promises that his psychologist, ▇▇▇▇▇, will explain how these general concepts apply to the defendant's case specifically. To the extent the response actually pertains to this case or the government's instant motion, however, it either mischaracterizes the evidence or omits inconvenient information.

For example, with respect to his voluntary law enforcement interview, the defendant suggests that ███████████████████████████████████████████████████████ ███████████████████████████████████████.[1] Opp. at 20. That is not correct. Other agents found the drive in his bedroom, reviewed it on scene, discovered the child sexual abuse material, and then informed the interviewers so that they could ask the defendant about the contraband. He also claims that █████████████████████ ███████████, *id.*, ███████████████████████████████████████████████ ████████████████████████████████, including his discussion with the interviewers about attending college and working on Broadway in New York City and operating his own business.[2] He also claims that ██████████████████████████████████████████ ████████████████████, *id.* at 21, █████████████████ he adamantly denied ever engaging in sexually explicit chats with minors—a denial he knew to be false.[3] If anything, the defendant's admissions were the result of a calculated decision: after learning that law enforcement found his child pornography, he consulted with his mother in private and determined—as some reasonably do in similar circumstances—that cooperating with law enforcement and providing information about larger investigative targets would benefit him in the long run.

---

[1] To be sure, the defendant's admissions to viewing child pornography online were not false.

[2]  Opp. at 20.

[3] In fact, MINOR VICTIM 6 told law enforcement that the defendant reached out to him after the search of his home and instructed him to delete evidence.

The defendant's claims regarding the impact his alleged ▆ had on his intent to produce child pornography similarly misrepresent or ignore the evidence. Most notably, the defendant's conduct was not ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.[4] Opp. at 22–23 (emphasis added). Instead, the chats that ▆▆▆▆▆ purports to have read make clear that the defendant was sexually interested in both the online and real-life aspects of the BDSM community and actively sought out minors with whom he intended to indulge his sexual fetishes and desires. Indeed, the evidence shows that the defendant met three of the minor victims in this case in person and that he engaged in sexual acts with at least two of them. He encouraged MINOR VICTIM 5, for example, to work for him so that they could spend time alone without the minor's parents becoming suspicious. The defendant later told MINOR VICTIM 5: "Blowjobs are honestly my favorite thing. If you can suck my dick and do a good job I'll love you forever" and "You'll learn to please me fully. I'll make sure of that." The day after sending these messages, the defendant arranged to meet MINOR VICTIM 5 in his high school's parking lot. MINOR VICTIM 5 reported to law enforcement that the defendant repeatedly showed up at his school and his place of work, and even put a "chastity cage" on the victim's genitals during one of these meetings.

Similarly, after MINOR VICTIM 6 sent the defendant videos of himself engaged in sexually explicit conduct, the defendant responded: "Just seeing you suck dick reminded me that you were good at it when I saw you." He also told this victim that he wished the victim was in the Washington, D.C. area during the weekend of January 18, 2020, so that they could attend a BDSM-

---

[4] BDSM refers to a collection of certain sexual practices, "namely bondage, discipline, dominance, submission, sadism, and masochism." *Doe v. Rector and Visitors of George Mason Univ.*, 149 F. Supp. 3d 602, 609 (E.D. Va. 2016). "[A] BDSM relationship might involve as part of the sexual activity such actions as biting, choking, spanking, or the use of restraints." *Id.*

3

themed event called "Mid Atlantic Leather weekend." When the minor asks what that is, the defendant described it as follows:

> [T]here's a whole area where they're selling tons of gear and toys, it's in a hotel so there's a lot of sex parties in a bunch of people rooms but I don't usually go to those. Huge lobby in the hotel where everyone hangs out and you can meet people, parties at night, there's a Mr. MAL leather contest, pup mosh, kink demos and other things going on.

On January 18, 2020, the defendant wrote to the victim: "You NEED to be here," and "If only you were in my room right now. . ." Ten days later, he sent the victim five pictures of a hotel room full of BDSM-themed sex toys and devices, including what appear to be leather restraints, paddles, and a sex swing, and wrote: "Was a fun hotel room lol." During the search of the defendant's home, law enforcement found what appears to be the same large collection of sex toys and devices in the back of the defendant's car, which is adorned with the vanity license plate "SIR ZACK." Neither the defendant's response nor any of ███████ letters thus far attempt to reconcile these facts with the defendant's insistence that his behavior can only be viewed through the lens of "online milieu involving online role play." Opp. at 1.

Presumably, the defendant's proposed expert testimony regarding ███████████ ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████. However, the defendant's claims as to how his alleged ████ prevented him from forming the requisite *mens rea* to produce child pornography misses the point. Even assuming *arguendo* that ███████████ ██████████████████████████████████████████████████████████████████ ████████████████—claims that are plainly contradicted by the above facts and significant amounts of additional evidence produced to the defense—███████████████ ██████████████████████████████████. Opp. at 23. What is at issue is his particular

objective in each instance where he instructed them to engage in sexually explicitly conduct, record themselves doing so, and send him those recordings. *See* 18 U.S.C. § 2251(a) (prohibiting any person from, among other things, using a minor to engage in "any sexually explicit conduct for the purpose of producing any visual depiction of such conduct[.]"); Dkt. No. 29 (Indictment). Put differently, even if ███████████████████████████████████████████████████████ ███████████████████████████████, as he claims, ███████████████████████████████ ███████████████████████ ██████ his inducement of the minor to engage in sexually explicit conduct for the purpose of recording visual depictions of that conduct. Opp. at 23. Nothing about the defendant's ███████████████████████████████████████████ affect his ability to form the intent to do that; moreover, neither ██████████ nor defense counsel have, at this point, argued that █████████████████████████████████████████████████████████████████████, which is what would be required for him to demonstrate that he did not have the intent to commit the production-of-child-pornography offenses in this case.

The government therefore continues to harbor deep skepticism regarding the defendant's recent claims and reserves its right to challenge ██████████ opinion, whenever it is provided, and the admissibility of his testimony at trial. Setting aside this skepticism, which is not relevant to the government's requested relief, the government wishes to address two issues that will aid the Court in resolving the issues that are actually raised in the instant motion.

I. **The Defendant Has Not Filed a Notice Pursuant to Rule 12.2(b) and Any Rule 12.2(b) Notice is Now Untimely**

The defendant argues that his notice under Federal Rule of Criminal Procedure 12.2(b) "was not untimely, as his defense team submitted the notice upon forming the intent to introduce such evidence in April 2021." Opp. at 12 n.6; *see id.* at 2 ("The timing of the filing of the notice

5

therefore hinges on the formation of defense counsel's intent, which in this case was not until April 2021."). The defendant's argument is wrong on both the facts and the law.

As an initial matter, the defendant has not filed a notice pursuant to Rule 12.2(b). Instead, he filed a motion for leave to file such a notice, tacitly admitting that he missed the deadline to file it in a timely manner. Dkt. No. 299. ████████████

████████████████████████████

████████████████████████. Dkt. No. 347. And while a court "may, for good cause, allow the defendant to file the notice late," the defendant's claim that the rule permits him to file his notice whenever he opts to pursue this defense, regardless of the fact that members of his current defense team represented him for over a year without ever raising a concern over his mental condition, is foreclosed by a plain reading of the rule, the advisory committee notes, and the relevant caselaw. Fed. R. Crim. P. 12.2(b); *see also* Fed. R. Crim. P. 12.2, advisory committee notes ("The purpose [of 12.2(b)] is to prevent the need for a continuance when such evidence is offered without prior notice."); *United States v. Diaz*, 189 F.3d 1239, 1247 (5th Cir. 1999) (affirming decision to exclude expert testimony where 12.2(b) notice was given five months after pretrial motions deadline despite counsel's claim that "she was not aware of the need to have [the defendant] evaluated by an expert").

II. **The Defendant Has Not Provided the Government with All the Materials that ███ ███████ is Relying Upon in Forming his Opinion**

On May 21, 2021, the government requested that the defendant provide:

all records, information, and material that ██████████ reviewed or relied on in preparing the letters from him that [the defendant] provided, as well as all records, information, and material that he is reviewing or relying on in preparing his evaluation report; and

      all test data and test materials—including any raw test scores, scoresheets, worksheets, notes, protocols, test question materials, and any result summaries and interpretative documents or reports—related to any assessments or tests administered to [the defendant] and [his] mother, as well as any notes and recordings that ▆▆▆▆▆ took or relied on while meeting with and evaluating [the defendant] and his mother.

Dkt. No. 371 at 5. On June 9, 2021, the defendant reported that ▆▆▆▆▆ has provided the government's expert with the test materials and raw test data associated with all the assessments ▆▆▆▆▆ administered.[5] While undersigned counsel will work with the government's expert to ensure that the government received the material to which it is entitled, the defendant has thus far declined to produce ▆▆▆▆▆ notes from his evaluations of the defendant and his mother.[6] The defendant also asserted that he has no obligation to identify material that ▆▆▆▆▆ may be relying upon to form his opinion if the government has that material in its possession already.

      Contrary to the defendant's claim, the government is entitled to all material in ▆▆▆▆▆ possession that he is relying upon in forming his opinion, including notes from his evaluations of the defendant and the defendant's mother. After all, the defendant—not the government—has put his mental condition at issue. And as he explains, ▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ and is in the process of incorporating what he and his mother stated into a final report. Opp. at 4. In fact, ▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆. The government will therefore need all the material in ▆▆▆▆▆

---

[5] Concerningly, defense counsel informed the government that they do not have any of the testing material that ▆▆▆▆▆ is relying upon and asked the government to agree to a discovery process in which their witness—as opposed to defense counsel—would be responsible for determining what material is relevant and must be produced pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C) and the Federal Rules of Evidence. Defense counsel has not provided any material to the government directly and appears to still be relying on ▆▆▆▆▆ to determine what material is relevant and to provide that material solely to the government's expert.

[6] The defendant reports that ▆▆▆▆▆ did not record any of his meetings.

7

possession, including his notes ███████████████████████, to probe the bases for his conclusions and opinions, move to exclude his testimony if warranted, and to effectively cross-examine him if he is permitted to testify. This is what Federal Rule of Criminal Procedure 16 requires. *See* Fed. R. Crim. P. 16(b)(1)(C) (requiring disclosure of "the bases and reasons" of an expert's opinions). As the Supreme Court has explained,

> the disclosure of basis evidence can help the factfinder understand the expert's thought process and determine what weight to give to the expert's opinion. For example, if the factfinder were to suspect that the expert relied on factual premises with no support in the record, or that the expert drew an unwarranted inference from the premises on which the expert relied, then the probativeness or credibility of the expert's opinion would be seriously undermined. The purpose of disclosing the facts on which the expert relied is to allay these fears—to show that the expert's reasoning was not illogical, and that the weight of the expert's opinion does not depend on factual premises unsupported by other evidence in the record—not to prove the truth of the underlying facts.

*Williams v. Illinois*, 567 U.S. 50, 77–78 (2012) (plurality opinion).

In light of these principles, and given the defendant's attempts to delegate his discovery obligations to his witness and withhold ███████ notes ███████, the government requests that the Court now order the defendant to provide the government with the following:

> all records, information, and material that ███████ reviewed or relied on in preparing the letters from him that [the defendant] provided, as well as all records, information, and material that he is reviewing or relying on in preparing his evaluation report; and

> all test data and test materials—including any raw test scores, scoresheets, worksheets, notes, protocols, test question materials, and any result summaries and interpretative documents or reports—related to any assessments or tests administered to [the defendant] and [his] mother, as well as any notes and recordings that ███████ took or relied on while meeting with and evaluating [the defendant] and his mother.

The government has and will continue to make diligent efforts to have its expert evaluate the defendant and the material ███████ is relying upon to reach an independent conclusion regarding the defendant's asserted ███. Based on conversations with its expert, the government

expects its expert to complete his report by August 16, 2021. That timeline might be delayed, however, if the defendant continues to withhold critical information in ▮▮▮▮▮▮ possession, including his notes ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

## CONCLUSION

Based on the foregoing, the United States respectfully requests that the Court either preclude the defendant from introducing any evidence related to his alleged ▮▮▮ at trial or continue the trial to allow the government to have an opportunity to review and respond to whatever evidence the defendant intends to introduce and rely on related to his alleged ▮▮▮. The government also respectfully requests that the Court order the defendant to produce the requested material that forms the bases and reasons for ▮▮▮▮▮▮ forthcoming opinion.

Respectfully submitted,

Raj Parekh
Acting United States Attorney

By:  /s/
William G. Clayman
Special Assistant United States Attorney (LT)
Seth M. Schlessinger
Jay V. Prabhu
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700
Email: william.g.clayman@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which automatically generated a Notice of Electronic Filing to the parties of record.

By:    /s/
William G. Clayman
Special Assistant United States Attorney (LT)
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700
Email: william.g.clayman@usdoj.gov