1

                UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA

2
                  Alexandria Division

3  UNITED STATES OF AMERICA,     :
                       :   Criminal Case

4              Plaintiff    :   No. 20-CR-00143-TSE
                       :

5       v.             :   November 27, 2021
                       :   9:35 a.m.

6  ZACKARY ELLIS SANDERS,      :
                       :   JURY INSTRUCTIONS

7            Defendant    :   VERDICT
............................... :  .......................

8
              TRANSCRIPT OF TRIAL PROCEEDINGS

9                      DAY 7
       BEFORE THE HONORABLE T.S. ELLIS, III

10            UNITED STATES DISTRICT JUDGE
               and a jury

11

12  <u>APPEARANCES:</u>

13    FOR THE PLAINTIFF:       SETH SCHLESSINGER
                        JAY V. PRABHU

14                          WILLIAM CLAYMAN
                        U.S. ATTORNEY'S OFFICE

15                          2100 Jamieson Avenue
                        Alexandria, VA  22314

16                          (703) 299-3700

17    FOR THE DEFENDANT:       NINA J. GINSBERG, ESQ.
                        DiMURO GINSBERG, P.D.

18                          1101 King Street
                        Suite 610

19                          Alexandria, VA  22314
                        (703) 684-4333

20
                        JONATHAN STUART JEFFRESS, ESQ.

21                          JADE CHONG-SMITH, ESQ.
                        KAISER DLLON, PLLC

22                          1099 14th Street, NW
                        8th Floor West

23                          Washington, DC  20005
                        (202) 640-2850

24
                        (APPEARANCES CONTINUED ON NEXT

25                          PAGE.)

2

```
 1
 2     FOR THE DEFENDANT:          HENRY LOUIS SIRKIN
                                   SANTEN & HUGHES, LPA
                                   600 Vine Street
 3                                 Suite 2700
                                   Cincinnati, OH   45202
 4                                 513-721-4450

 5
       OFFICIAL COURT REPORTER:    REBECCA STONESTREET, RPR, CRR
 6                                 U.S. District Court, 9th Floor
                                   401 Courthouse Square
 7                                 Alexandria, Virginia   22314
                                   (240) 426-7767
 8

 9                       ( Pages 1 - 66)

10

11          COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2          THE COURT:  Good morning.  The record will reflect that

 3   the defendant, counsel for the defendant and counsel for the

 4   Government are present and prepared to proceed.  We're going to

 5   bring the jury in, do the usual calling of the roll, ask the

 6   question, and I'll proceed to instruct the jury.  Bring the jury

 7   in, please.

 8          (Jury in at 9:37 a.m.)

 9          THE COURT:  Good morning, ladies and gentlemen.  We'll

10   begin, as always, with the calling of the roll.

11          COURTROOM CLERK:  Juror number 19, Joseph Hilton.

12          JUROR:  Present.

13          COURTROOM CLERK:  Juror number 2, Bruce Arthur.

14          JUROR:  Present.

15          COURTROOM CLERK:  Juror number 31, Joshua Mecham.

16          JUROR:  Present.

17          COURTROOM CLERK:  Juror number 2, Candice Alidoosti.

18          JUROR:  Present.

19          COURTROOM CLERK:  Juror number 26, Richard Loveland the

20   second.

21          JUROR:  Present.

22          COURTROOM CLERK:  Juror number 33, Lucinda McLaughlin.

23          JUROR:  Present.

24          COURTROOM CLERK:  Juror number 27, Patrick Kerns.

25          PROSPECTIVE JUROR:  Present.
```

4

```
 1              COURTROOM CLERK:  Juror number 6, Jason Brost.

 2              JUROR:  Present.

 3              COURTROOM CLERK:  Juror number 38, Christy Rice.

 4              JUROR:  Present.

 5              COURTROOM CLERK:  Juror number 31, Michael Mason.

 6              JUROR:  Present.

 7              COURTROOM CLERK:  Juror number 16, Kamel Elhassani.

 8              JUROR:  Present.

 9              COURTROOM CLERK:  Juror number 7, Razzakul Chowdhury.

10              JUROR:  Present.

11              COURTROOM CLERK:  Juror number 42, Elizabeth Sheriff.

12              JUROR:  Present.

13              COURTROOM CLERK:  And juror number 6, Patrick Campo.

14              JUROR:  Present.

15              THE COURT:  Again, good morning, ladies and gentlemen.

16    Let me ask, were any of you unable to follow the Court's and

17    adhere to the Court's instructions to refrain from discussing

18    the matter among yourselves or with anyone, or undertaking any

19    investigation on your own?

20              The record will reflect that no hands are raised.  And

21    I see some shaking of heads, so am I correct in assuming that

22    you were all able to adhere to the Court's instructions?

23              All right.  The record will reflect that there seems to

24    be a unanimous nodding of the heads.

25              Members of the jury, now that you've heard the evidence
```

1    and arguments of counsel, it becomes my duty to give you

2    instructions as to the law applicable to this case.  All of the

3    instructions of law given to you by the Court, those given to

4    you at the beginning of the trial, those given to you during the

5    trial, and these final instructions must guide and govern your

6    deliberations.  It is your duty as jurors to follow the law as

7    stated by the Court and to apply the rules of law to the facts

8    as you find them from the evidence in the case.

9         Counsel have quite properly referred to some of the

10   governing rules of law in their arguments.  If, however, any

11   difference appears to you between the law as stated by counsel

12   and that stated by the Court in these instructions, you are, of

13   course, to be governed by the Court's instructions.  Nothing I

14   say in these instructions is to be taken as an indication that I

15   have any opinion about the facts of the case, or what that

16   opinion is.  It is not my function to determine the facts, but

17   yours.

18        You are not to single out one instruction alone as

19   stating the law but must consider the instructions as a whole.

20   Neither are you to be concerned with the wisdom of any rule of

21   law stated by the Court.  Regardless of any opinion you may have

22   as to what you think the law ought to be, it would be a

23   violation of your sworn duty as jurors if you ignore the law as

24   I give it to you and apply some other law.  It would also be a

25   violation of your sworn duty as jurors of the facts to base a

1    verdict upon anything but evidence in the case.

2          You've been chosen as jurors for this trial in order to

3    evaluate all the evidence received and to decide each of the

4    factual questions presented by the allegations brought by the

5    Government in the indictment and the pleas of not guilty by the

6    defendant.

7          In deciding the issues presented to you for decision in

8    this trial, you must not be persuaded by bias, prejudice, or

9    sympathy for or against any of the parties in this case, or by

10   any public opinion.  You should not be influenced by any

11   person's race, color, religion, national ancestry or sex.

12   Justice through trial by jury must always depend upon the

13   willingness of each individual juror to seek the truth as to the

14   facts from the same evidence presented to all jurors, and to

15   arrive at a verdict by applying the same rules of law given by

16   the Court.

17         Now, the law presumes -- as I told you at the outset,

18   the law presumes a defendant to be innocent of a crime.  Thus, a

19   defendant, although accused, begins the trial with a clean

20   slate, with no evidence against him.  And the law permits

21   nothing but legal evidence presented before the jury to be

22   considered in support of any charge against the accused.  So the

23   presumption of innocence alone is sufficient to acquit a

24   defendant unless the jurors are satisfied beyond a reasonable

25   doubt of the defendant's guilt after careful and impartial

1    consideration of all the evidence in the case.  It is not

2    required that the Government prove guilt beyond all possible

3    doubt.  The test is one of reasonable doubt.

4         The jury will remember that a defendant is never to be

5    convicted on mere suspicion or conjecture.  The burden is always

6    on the prosecution to prove guilt beyond a reasonable doubt.

7    The burden never shifts to a defendant, for the law never

8    imposes upon a defendant in a criminal case the burden or duty

9    of calling any witnesses or producing any evidence.  So if the

10   jury, after careful and impartial consideration of all the

11   evidence in the case, has a reasonable doubt that the defendant

12   is guilty of the charge, it must acquit.

13        There is nothing particularly different in the way that

14   a juror should consider the evidence in a trial from that in

15   which any reasonable and careful person would treat any very

16   important question that must be resolved by examining facts,

17   opinions, and evidence.  You're expected to use your good sense

18   in considering and evaluating the evidence in the case, for only

19   those purposes for which it has been received, and to give such

20   evidence a reasonable and fair construction in the light of your

21   common knowledge of the natural tendencies and inclinations of

22   human beings.  If a defendant be proved guilty beyond a

23   reasonable doubt, say so.  If not proved guilty beyond a

24   reasonable doubt, say so.

25        Keep constantly in mind that it would be a violation of

8

1    your sworn duty to base a verdict upon anything other than the

2    evidence received in the case and the instructions of the Court.

3    Remember as well that the law never imposes upon a defendant in

4    a criminal case the burden or duty of calling any witnesses or

5    producing any evidence because the burden of proving guilt

6    beyond a reasonable doubt is always with the Government.

7          Now, the evidence in this case, as I've told you at the

8    outset, consists of the sworn testimony of the witnesses,

9    regardless of who may have called them, all exhibits received in

10   evidence, regardless of who may have produced them, and you'll

11   have all of these in the jury room.  And to the extent that any

12   of them are CDs or something that need to be played, there will

13   also be a device this the jury room that will permit that.

14         Am I correct, Tanya?

15         COURTROOM CLERK:  Yes, Judge.

16         THE COURT:  All right.  So as I said, the evidence in

17   the case consists of the sworn testimony of the witnesses,

18   regardless of who may have called them, all exhibits received in

19   evidence, regardless of who may have produced them, and all

20   facts which may have been agreed or stipulated to, and all facts

21   and events which may have been judicially noticed.  Any proposed

22   testimony or proposed exhibit as to which an objection was

23   sustained by the Court, any testimony or exhibit ordered

24   stricken by the Court must be entirely disregarded.  And

25   anything you may have seen or read or heard outside the

1    courtroom is not proper evidence and must be entirely

2    disregarded.

3          Questions, objections, statements and arguments of

4    counsel are not evidence in the case.  You are to base your

5    verdict only on the evidence received in the case.  And in your

6    consideration of the evidence received, however, you are not

7    limited to the bald statements of the witnesses or to the bald

8    assertions in the exhibits.  In other words, you're not limited

9    solely to what you see and hear as the witnesses testify or as

10   the exhibits are admitted.  You're permitted to draw from the

11   facts that you find have been proved such reasonable inferences

12   as you feel are justified in the light of your experience and

13   common sense.

14         Now, the questions asked by a lawyer for either party

15   to this case are not evidence.  The questions received by a

16   lawyer for either party -- the questions asked by a lawyer for

17   either party are not evidence.  If a lawyer asks a question of a

18   witness which contains an assertion of fact, you may not

19   consider the assertion by the lawyer as any evidence of that

20   fact.  Only the answers are evidence.

21         As I told you at the outset, there are two types of

22   evidence which are generally presented during a trial, direct

23   evidence and circumstantial evidence.  Direct evidence is the

24   testimony of a person who asserts or claims to have actual

25   knowledge of a fact, such as an eyewitness.  Circumstantial

1    evidence is proof of a chain of facts and circumstances

2    indicating the existence of a fact.

3            The law makes no distinction between the weight or

4    value to be given to either direct or circumstantial evidence,

5    nor is a greater degree of certainty required of circumstantial

6    evidence than of direct evidence.  You should weigh all the

7    evidence in the case, and after weighing all the evidence, if

8    you are not convinced of the guilt of the defendant beyond a

9    reasonable doubt, you must find the defendant not guilty.

10           Now, inferences are simply deductions or conclusions

11   which reason and common sense lead the jury to draw from the

12   evidence in the case.  Testimony and exhibits can be admitted

13   into evidence during a trial only if certain criteria or

14   standards are met.  It's the sworn duty of the attorney on each

15   side of a case to object when the other side offers testimony or

16   an exhibit which that attorney believes is not properly

17   admissible under the rules of law.  Only by raising an objection

18   can a lawyer request and obtain a ruling from the Court on the

19   admissibility of the evidence being offered by the other side.

20           You should not be influenced against an attorney or his

21   or her client because the attorney has made objections.  Do not

22   attempt, moreover, to interpret any rulings, my rulings on

23   objections as somehow indicating how I think you should decide

24   the case.  I'm simply making a ruling on a legal question.

25           By allowing the testimony or other evidence to be

1    introduced over the objections of an attorney, the Court does

2    not, unless expressly stated, indicate any opinion as to the

3    weight or effect of the evidence.  As stated before, you and you

4    alone, as jurors, are the sole judges of the credibility of all

5    the witnesses and the weight and effect of all the evidence.

6          On the other hand, where the Court has sustained an

7    objection to a question addressed to a witness, jurors must

8    disregard the statement entirely.  You may draw no inference in

9    the wording of the question, or speculate as to what the witness

10   would have said had he or she been permitted to answer the

11   question.

12         It's the duty of the Court to admonish an attorney who,

13   out of zeal for his or her cause, does something which I feel is

14   not in keeping with the rules of evidence or procedure.  You are

15   to draw absolutely no inference against the side to whom an

16   admonition of the Court may have been addressed during the trial

17   of this case.

18         The law of the United States permits a federal judge to

19   comment to the jury on the evidence in the case.  Such comments

20   are, however, only expressions of my opinion as to the facts,

21   and the jury may disregard them entirely.  You as jurors are the

22   sole judges of the facts in this case, and it's your

23   recollection and evaluation of the evidence that is important to

24   the verdict in this case.  Although you must follow the Court's

25   instructions concerning the law applicable to this case, you are

—12

1    totally free to accept or reject any observation concerning the

2    evidence received in the case.

3            During the course of the trial, I may have occasionally

4    asked questions of a witness.  Do not assume that I hold any

5    opinion on the matters to which my questions related.  The Court

6    may have asked questions simply to clarify a matter, not to help

7    one side of the case or hurt another.  Remember, as I've said

8    several times, at all times you as jurors are the sole judges of

9    the facts of this case.

10           Your opinion on the facts of this case should not be

11   determined on the number of witnesses testifying for or against

12   a party.  You should consider all the facts and circumstances in

13   evidence to determine which of the witnesses you choose to

14   believe or not believe.  You may find that the testimony of a

15   smaller number of witnesses on one side is more credible than

16   the testimony of a greater number of witnesses on the other

17   side.

18           Charts or summaries have been prepared by the

19   Government and have been admitted into evidence, and have been

20   shown to you during the trial for the purpose of explaining

21   facts that are allegedly contained in records or other documents

22   which have been admitted in the case -- into evidence in the

23   case.  You may consider the charts and summaries as you would

24   any other evidence admitted during the trial, and give them such

25   weight or importance, if any, as you may -- as you feel they

1   deserve.

2          Now, the rules of evidence ordinarily do not permit

3   witnesses to testify as to their own opinions or their own

4   conclusions about issues in the case.  An exception to this rule

5   exists as to those witnesses who are described as expert

6   witnesses.  An expert witness is someone who, by education or by

7   experience, may have become knowledgeable in some technical,

8   scientific, or very specialized area.

9          If such knowledge or experience may be of assistance to

10  you in understanding some of the evidence or in determining a

11  fact, an expert witness in that area may state an opinion as to

12  relevant and material matter in which he or she claims to be an

13  expert.

14         You should consider the expert opinion received in this

15  case and give it such weight as you may think it deserves.  You

16  should consider the testimony of expert witnesses just as you

17  consider other evidence in the case.  If you should decide that

18  the opinion of an expert is not based on sufficient education or

19  experience or if you should conclude that the reasons given in

20  support of the opinion are not sound or if you should conclude

21  that the opinion is outweighed by other evidence in the case,

22  you may disregard the opinion in part or in its entirety.  And

23  as I've told you several times, you, the jury, are the sole

24  judges of the facts of this case.

25         If any reference by the Court or by counsel to matters

1      of testimony or exhibits does not coincide with your own

2      recollection of that evidence, it is your recollection which

3      should control during your deliberations, and not the statement

4      of the Court or of counsel.  You're the sole judges of the

5      evidence received in the case.

6              Now, as I've told you before, you as jurors are the

7      sole and exclusive judges of the credibility of each of the

8      witnesses called to testify in this case, and only you determine

9      the importance or the weight that their testimony deserves.

10     After making your assessment concerning the credibility of a

11     witness, you may decide to believe all of that witness'

12     testimony or only a portion of it, or none of it.  In making

13     your assessment, you should carefully scrutinize all of the

14     testimony given, the circumstances under which each witness has

15     testified, and all of the other evidence which tends to show

16     whether a witness is worthy of belief.

17             Consider each witness' intelligence, motive to falsify,

18     state of mind, and appearance and manner while on the stand.

19     Consider each of the witness' ability to observe the matters as

20     to which he or she has testified, and consider whether he or she

21     impresses you as having an accurate recollection -- an accurate

22     memory or recollection of these matters.

23             Consider also any relation a witness may bear to either

24     side of the case, the manner in which each witness might be

25     affected by your verdict, and the extent to which, if at all,

1    the witness is either supported or contradicted by other

2    evidence in the case.

3        Now, inconsistencies or discrepancies in the testimony

4    of a witness or between the testimony of different witnesses may

5    or may not cause you to disbelieve or discredit such testimony.

6    Two or more persons witnessing an incident or a transaction may

7    simply see or hear it differently.  Innocent misrecollection,

8    like failure of recollection, is not an uncommon experience.  In

9    weighing the effect of a discrepancy, however, always consider

10   whether it pertains to a matter of importance or an

11   insignificant detail, and consider whether the discrepancy

12   results from innocent error or intentional falsehood.

13       In connection with your evaluation of the credibility

14   of witnesses, you should specifically consider evidence of

15   resentment or anger, which some witness may have.  Evidence that

16   a witness is biased, prejudiced, or hostile toward one side or

17   another may require you to view that witness' testimony with

18   caution or to weigh it with care, and subject it to close and

19   searching scrutiny.

20       After making your own judgment or assessment concerning

21   the believability of a witness, you can then attach such

22   importance or weight to that testimony, if any, that you feel it

23   deserves.  You will then be in a position to decide whether the

24   Government has proven the charges beyond a reasonable doubt.

25       Now, evidence relating to any alleged statement or

1    confession or admission or act or omission alleged to have been

2    made or done by a defendant outside of court and after a crime

3    has been committed should always be considered by the jury with

4    caution, and weighed with greater care.  All such alleged

5    statements, confessions, or admissions should be disregarded

6    entirely unless other evidence in the case convinces the jury

7    beyond a reasonable doubt that the statement, confession,

8    admission, or act or omission was made or done knowingly and

9    voluntarily.

10         In determining whether any statement, confession,

11   admission, or act or omission alleged to have been made by a

12   defendant outside of court after a crime has been committed was

13   knowingly and voluntarily made, the jury should consider the

14   age, training, education, occupation, and physical and mental

15   condition of the defendant, and his treatment while in custody

16   or under interrogation as shown by the evidence in the case.

17   Also consider all other circumstances in evidence surrounding

18   the making of the statement, confession, or admission.

19         If after considering all -- after considering the

20   evidence, you determine that a statement, confession, admission,

21   or act or omission was made or done knowingly and voluntarily,

22   you may give it such weight as you feel it deserves under the

23   circumstances.

24         Statements knowingly made -- statements knowingly and

25   voluntarily made by a defendant upon being informed that a crime

1    has been committed or upon being accused of a criminal charge

2    may be considered by the jury.  When a defendant voluntarily

3    offers an explanation or voluntarily makes some statement

4    tending to show his or her innocence, and it is later shown that

5    the defendant knew that the statement or explanation was false,

6    the jury may consider this as showing a consciousness of guilt

7    on the part of the defendant since it is reasonable to infer

8    that an innocent person does not usually find it necessary to

9    invent or fabricate an explanation or statement tending to

10   establish his innocence.

11        Whether or not evidence as to a defendant's explanation

12   or statement points to a consciousness of guilt on his or her

13   own part, and the significance, if any, to be attached to any

14   such evidence are matters exclusively within the province of the

15   jury as the sole judges of the facts of this case.  And in your

16   evaluation of an exculpatory statement shown to be false, you

17   may consider that there may be reasons fully consistent with

18   innocence that could cause a person to give a false statement

19   showing their innocence.  Fear of law enforcement, reluctance to

20   become involved, and simple mistake may cause a person who has

21   committed no crime to give such statement or explanation.

22        Now, an indictment, as I told you at the outset, is but

23   a formal method used by the Government to accuse a defendant of

24   a crime.  It is not evidence of any kind against the defendant.

25   The defendant is presumed to be innocent of the crime or crimes

1    charged.  Even though this indictment has been returned against

2    the defendant, the defendant begins the trial with absolutely no

3    evidence against him.

4         The defendant has pled not guilty to the indictment,

5    and therefore denies that he is guilty of the charges.

6         Now, the defendant is not on trial for any act or

7    conduct not specifically charged in the indictment, and a

8    separate crime is charged in each count of the indictment.  Each

9    charge and the evidence pertaining to it should be considered

10   separately by the jury.  The fact that you may find the

11   defendant guilty or not guilty as to one of the charges --

12   offenses charged should not control your verdict as to the other

13   offenses charged.

14        The indictment charges the offenses alleged -- or were

15   committed on or about a certain date.  Although it is necessary

16   for the Government to prove beyond a reasonable doubt that the

17   offenses were committed on a date reasonably near the dates

18   alleged in the indictment, it is not necessary for the

19   Government to prove that the offenses were committed precisely

20   on the dates charged.

21        The Court instructs the jury that although the

22   indictment may charge the defendant with committing an offense

23   in several ways, using conjunctive language -- that is, "and" --

24   it is sufficient if the Government proves the offense in the

25   disjunctive -- that is, "or."  That is to say, a jury may

1    convict on a unanimous finding of any of the alternative acts

2    charged in the indictment.

3          For example, in -- Count 1 of the indictment charges

4    that defendant attempted to and did employ, use, persuade,

5    induce, entice, and coerce a minor.  And there are other

6    examples of charging in the conjunctive or disjunctive in the

7    indictment.  In order to prove that the defendant -- to prove

8    the defendant guilty of a particular offense, the Government

9    does not need to prove that the defendant did all of the

10   alternative acts, but only that he did one of the alternative

11   acts in the example above.

12         The Government would need to prove beyond a reasonable

13   doubt that the defendant attempted to or did employ or use or

14   persuade or induce or entice or coerce.

15         The intent of a person, or the knowledge that a person

16   possesses at any given time, may not ordinarily be proved

17   directly because there's no way of directly scrutinizing the

18   workings of the human mind.  In determining the issue of what a

19   person knew or what a person intended at a particular time, you

20   may consider any statements made or acts done or omitted by that

21   person, and all other facts and circumstances received in

22   evidence which may aid in your determination of that person's

23   knowledge or intent.  You may infer, but you are certainly not

24   required to infer, that a person intends the natural and

25   probable consequences of acts knowingly done or knowingly

1    omitted.

2         It's entirely up to you, however, to decide what facts

3    to find from the evidence received during this trial.

4         Now, Count 1 through 5 of the indictment charges that

5    on various dates listed below -- and I'll tell you what they

6    are -- within the Eastern District of Virginia, Zackary Ellis

7    Sanders attempted to and did knowingly employ, use, persuade,

8    induce, entice, and coerce five minors, Minor Victim 1 through

9    5, to engage in sexually explicit conduct for the purpose of

10    producing a visual depiction of such conduct, and he knew and

11    had reason to know that the visual depiction would be

12    transported or transmitted using any means and facility of

13    interstate and foreign commerce, and in and affecting commerce

14    and foreign interstate and foreign commerce, or mailed, and that

15    visual depiction was produced and transmitted using materials

16    that had been mailed, shipped, and transported in and affecting

17    interstate and foreign commerce by any means, and that visual

18    depiction had been transported and transmitted using any means

19    or facility of interstate commerce, and affecting interstate and

20    foreign commerce by any means, including by computer; to wit, a

21    digital visual depiction of different minors engaged in sexually

22    explicit conduct on the following dates:

23         For Count 1, between on or about November 20, 2019, and

24    on or about November 25, 2019.  That's Minor Victim 1.

25         For Count 2, between on or about November 10, 2019, and

1    on or about November 14th -- from the 10th to the 14th -- 2019.

2    That's Minor Victim 2.

3           Count 3, between on or about September 17, 2017, and on

4    or about April 4, 2018.  That's Minor Victim 3.

5           Count 4, between on or about November 29, 2017, and on

6    or about December 11, 2017.  That's Minor Victim 4.

7           And between on or about May 8th, 2017, and on or about

8    October 21st, 2017.  That's Minor Victim 5.

9           Now, Section 2251(a) of Title 18, which is the statute

10   that is alleged to have been violated in Count 1, the U.S. Code

11   at that point provides in relevant part that any person who

12   employs, uses, persuades, induces, entices, or coerces, or

13   attempts to employ -- let me begin again.

14          Any person who employs, uses, persuades, induces,

15   entices, or coerces, or attempts to employ, use, persuade,

16   induce, entice, or coerce any minor to engage in any sexually

17   explicit conduct for the purpose of producing any visual

18   depiction of such conduct shall be guilty of a federal crime if

19   such person transported or transmitted, using any means or

20   facility of interstate or foreign commerce, or in or affecting

21   interstate or foreign commerce or mail, if that visual depiction

22   was produced or transmitted using material that had been --

23   materials that had been mailed, shipped, or transported in or

24   affecting interstate or foreign commerce by any means, including

25   by computer, or such visual depiction has actually been

1    transported or transmitted using any means or facility of

2    interstate or foreign commerce, or in or affecting interstate or

3    foreign commerce or mail.

4          Now, in order to prove the defendant guilty of

5    producing child pornography, as charged in Count 1, the

6    Government must prove the following elements beyond a reasonable

7    doubt:

8          First, that at the time of the alleged incident,

9    Minor Victims 1, 2, 3, 4, and 5, the alleged victims named in

10   Count 1 through 5 of the indictment, were under the age of 18.

11         Two -- second element.  Two, that the defendant

12   attempted to and did knowingly employ, use, or persuade, or

13   induce or entice or coerce Minor Victims 1, 2, 3, 4, and 5 to

14   engage in sexually explicit conduct for the purpose of producing

15   a visual depiction of that conduct.

16         And three, the visual depiction was produced using

17   materials that had been mailed, shipped, or transported in or

18   affecting interstate or foreign commerce by any means, or such

19   visual depiction had actually been transported or transmitted

20   using any means or facility of interstate or foreign commerce,

21   or in or affecting interstate or foreign commerce or mail.

22         So with respect to the first element that the

23   Government must prove beyond a reasonable doubt, is that

24   Minor Victims 1, 2, 3, and 4 and 5 were each less than 18 years

25   old at the time of the acts alleged in the indictment.

1          The Government does not have to prove that the

2     defendant knew that the Minor Victims 1, 2, 3, 4, and 5 were

3     less than 18 years old.  Moreover, defendant's belief,

4     reasonable or not, that Minor Victims 1, 2, 3, 4, and 5 were

5     18 years or older is irrelevant and not a defense to the crime

6     charged.

7          I therefore instruct you that if you find that

8     Minor Victims 1, 2, 3, 4, and 5 were, in fact, less than

9     18 years old at the time of the acts alleged in the indictment,

10    then that is sufficient to satisfy the first element of the

11    offense.

12         The second element of the offense that the Government

13    must prove beyond a reasonable doubt is that the defendant

14    employed or used or persuaded or induced or enticed or coerced

15    Minor Victims 1, 2, 3, 4, and 5 to take part in sexually

16    explicit conduct for the purpose of producing a visual depiction

17    of that conduct.  A visual depiction includes any photograph,

18    film, video, or picture, including undeveloped film and

19    videotape and data stored on a computer disk, or by electronic

20    means that is capable of conversion into a visual image whether

21    or not stored in a permanent format.

22         The term "producing" means producing, directing,

23    manufacturing, issuing, publishing, or advertising.  The phrase

24    "purpose of producing" means that the defendant had the specific

25    intent to cause the production of a video depiction.  The facts

1    must support the conclusion that the defendant engaged in

2    conduct in order to produce a visual depiction of sexually

3    explicit conduct.

4          While the image itself can be probative of the

5    defendant's intent, it cannot be the only evidence.

6          In deciding whether the Government has proven that the

7    defendant acted for the purpose of producing a visual depiction

8    of sexually explicit conduct, you may consider all of the

9    evidence concerning the defendant's conduct.  The production of

10   a visual depiction of sexually explicit conduct must have been a

11   significant or motivating purpose of the defendant, and not

12   merely incidental to engaging in the sexually explicit conduct.

13         It is not necessary, however, for the Government to

14   prove that the defendant was single-minded in his purpose or

15   that the production of a visual depiction of sexually explicit

16   conduct was the defendant's sole or primary purpose.  Rather, it

17   is sufficient for the Government to prove that the defendant had

18   a significant or motivating purpose of producing a visual

19   depiction of sexually explicit conduct when he employed or used

20   or persuaded or induced or enticed or coerced Minor Victims 1

21   through 5 to engage in sexually explicit conduct.

22         The third element that the Government must prove beyond

23   a reasonable doubt is that the visual depiction was produced

24   using materials that had been mailed or transported in

25   interstate or foreign commerce and that the defendant knew or

1    had reason to know that the visual depiction had been

2    transported or transmitted using any means and facility of

3    interstate or foreign commerce or that the visual depiction was

4    actually transported or transmitted using any means or facility

5    of interstate or foreign commerce.

6         Simply stated, the phrase "transported in interstate or

7    foreign commerce" means that the materials used to produce the

8    visual depiction had previously moved from one state to another

9    or between the United States and another country.  If you find,

10   for example, that a cellular telephone or computer was used to

11   produce the visual depiction in question and that the cellular

12   telephone was manufactured or assembled outside the Commonwealth

13   of Virginia, then that is sufficient to satisfy this element.

14        The Government does not have to prove that the

15   defendant personally transported the cellular telephone or

16   computer across a state line or into the United States or that

17   the defendant knew that the cellular telephone or computer had

18   previously crossed state line or previously had been imported

19   into the United States.

20        Furthermore, because of the interstate nature of the

21   internet, if you find beyond a reasonable doubt that the

22   defendant used the internet in receiving or possessing the

23   produced visual depiction of a minor engaged in sexually

24   explicit conduct, then that visual depiction traveled in

25   interstate commerce.  It does not matter whether the computer --

1    it does not matter whether the computer that -- Counsel, pick up

2    your earphones.  I think I missed a verb here.

3              (BENCH CONFERENCE ON THE RECORD.)

4              THE COURT:  Mr. Schlessinger, you were the one who did

5    instructions?

6              MR. SCHLESSINGER:  Yes, Your Honor.

7              THE COURT:  All right.  And Ms. Chong-Smith, you were

8    the one who did instructions, I believe.

9              MS. GINSBERG:  She is not here, Your Honor.

10             THE COURT:  All right.  Ms. Ginsberg, you will stand in

11   for her.

12             MS. GINSBERG:  Yes.

13             THE COURT:  You can see that at the bottom of page 32

14   there seems to be a word missing.  Mr. Schlessinger, what do you

15   think it should be?  It says:  It does not matter whether the

16   visual depiction the defendant was -- I see.  "It does not

17   matter whether the computer" -- and then it goes on.  What

18   should that be?

19             MR. SCHLESSINGER:  Your Honor, I believe it should be,

20   "It does not matter whether the computer that the visual

21   depiction was transported to was in Virginia."

22             THE COURT:  "It does not matter whether the" -- go

23   ahead.  What did you say?

24             MR. SCHLESSINGER:  "Whether the computer that the

25   visual depiction was transported to was in Virginia."

1          That's what does not matter.

2          THE COURT:  So the only thing that's added is the word

3     "that"?

4          MR. SCHLESSINGER:  The word "the" in between "that" and

5     "visual."

6          THE COURT:  So read me again how you think it should

7     be, Mr. Schlessinger.

8          MR. SCHLESSINGER:  "It does not matter whether the

9     computer that the visual depiction was transported to was in

10    Virginia."

11         THE COURT:  All right.  Ms. Ginsberg?

12         MS. GINSBERG:  We don't object.

13         THE COURT:  All right.  Thank you.

14         (END BENCH CONFERENCE.)

15         THE COURT:  All right.  Let me begin with the sentence

16    before that.  Furthermore, because of the interstate nature of

17    the internet, if you find beyond a reasonable doubt that the

18    defendant used the internet in receiving or possessing the

19    produced visual depiction of a minor engaged in sexually

20    explicit conduct, then that visual depiction traveled in

21    interstate commerce.

22         It does not matter whether the computer that the visual

23    depiction was transported to was in Virginia and it does not

24    matter whether the visual depiction the defendant received or

25    possessed was transmitted from within Virginia.  If the internet

28

1    was used in moving the visual depiction, then it traveled in

2    interstate commerce.

3         Now, for purposes of the charges contained here, a

4    minor is defined as any person under the age of 18.  And I

5    instruct you that, under federal law, which is the sole law

6    governing in this case, that a minor cannot consent to the

7    production of child pornography.  Accordingly, any argument

8    regarding a minor's consent to the production of child

9    pornography is irrelevant in reaching your verdict.

10        The Government has -- the Government only has to prove

11   venue -- that is, the place where the underlying events

12   occurred -- by a preponderance of the evidence.  This means

13   that, with respect to venue, the Government only has to convince

14   you that it is more likely so than not so that part, if not all,

15   of the offense took place or occurred in the Eastern District of

16   Virginia.

17        And the Eastern District of Virginia includes the

18   eastern half of the state, including Northern Virginia,

19   extending down to and including Richmond, Fredericksburg,

20   Tidewater, Norfolk, and Newport News, and extending to the west,

21   but not as far as Charlottesville.  Charlottesville is not in

22   the Eastern District of Virginia.

23        Now, Counts 6 through 11 of the indictment charge --

24   they charge that in separate instances on or about the dates set

25   forth -- and I'll tell you the dates -- within the Eastern

```
 1      District of Virginia, the defendant, Zackary Ellis Sanders,

 2      attempted to and did receive visual depiction using any means

 3      and facility of interstate and foreign commerce that had been

 4      mailed and had been shipped or transported in and affecting

 5      interstate and foreign commerce, and which had -- and which

 6      contained materials which had been mailed or so shipped and

 7      transported by any means, including by computer, and the

 8      production of such visual depiction involved the use of a minor

 9      engaging in sexually explicit conduct, and the visual depiction

10      was of such conduct; to wit, digital visual depictions of

11      different minors engaged in sexually explicit conduct on the

12      following dates:

13              For Count 6, on or about January 16, 2020,

14      Minor Victim 6; Count 7, between on or about November 20, 2019

15      and on or about November 25th, 2019, Minor Victim 1; Count 8,

16      between on or about November 10, 2019, and on or about

17      November 14, 2019 -- that's Minor Victim 2; Count 9, between on

18      or about September 17, 2017, and on or about April 14, 2018 --

19      that's Minor Victim 3; Count 10, between on or about

20      November 29, 2017, and on or about December 11, 2017 -- that's

21      Minor Victim 4; and Count 11, between on or about September 15,

22      2017, and on or about October 21, 2017 -- that's

23      Minor Victim 5 -- all in violation of Section 2252(a)(2) of

24      Title 18, which provides in relevant part as follows:

25              Any person who knowingly receives or attempts to
```

1    receive any visual depiction using any means or facility of

2    interstate or foreign commerce or that has been mailed or has

3    been shipped or transported in or affecting interstate or

4    foreign commerce, or which contains materials which have been

5    mailed or so shipped or transported by any means, including by

6    computer, or knowingly reproduces any visual depiction for

7    distribution using any means or facility of interstate or

8    foreign commerce or in and affecting interstate or foreign

9    commerce or through the mails, if, A, the producing of such

10   visual depiction involves the use of a minor engaging in

11   sexually explicit conduct, and, B, such visual depiction is of

12   such conduct, shall be guilty of a federal crime.

13        So in order to prove the defendant guilty of receiving

14   child pornography, as charged in Counts 6 through 11 of the

15   indictment, the Government must prove the following elements

16   beyond a reasonable doubt:

17        First, that the defendant knowingly received or

18   attempted to receive any visual depiction.

19        Two, that defendant received or attempted to receive

20   the visual depiction using any means or facility of interstate

21   or foreign commerce, or that the visual depiction had been

22   shipped or transported in or affecting interstate or foreign

23   commerce, or the visual depiction contained materials that had

24   been made or shipped or transported in or affecting interstate

25   or foreign commerce.

1          Third, that the producing of the visual depiction

2     involved using a minor engaged in sexually explicit conduct.

3          Four, that the visual depiction is of a minor engaged

4     in sexually explicit conduct.

5          And five, that the defendant knew that the visual

6     depiction involved the use of a minor engaging in sexually

7     explicit conduct.

8          The Government has alleged that the defendant either

9     produced or attempted to produce child pornography as charged in

10    Counts 1 through 5 of the indictment.  In addition, the

11    Government has alleged that the defendant either received or

12    attempted to receive child pornography as charged in Counts 6

13    through 11 of the indictment.  So in order to sustain its burden

14    of proof for the crime of attempt, as charged in these counts of

15    the indictment, the Government must show the following two

16    essential elements beyond a reasonable doubt:

17         First, that the defendant knowingly took a substantial

18    step toward committing the offense.

19         And two, that defendant had the intent to commit the

20    offense.

21         The difference between conduct which violates the law

22    and conduct which does not violate the law in this regard -- and

23    I'm talking about attempts -- is what is referred to as a

24    substantial step towards the commission of a crime.

25         The substantial step must be an act that strongly

1    corroborates that the defendant intended to carry out the

2    offense.  A defendant may be found guilty of attempting to

3    commit a federal crime even though no one actually did all of

4    the acts necessary in order to commit that crime.  A defendant

5    may not be found guilty of attempting to commit any crime,

6    however, merely by thinking about it or even by making some plan

7    or other preparation for the commission of a crime.

8           In order to find the defendant guilty of committing the

9    crime or attempted -- crime of attempted production of child

10   pornography and attempted receipt of child pornography, the

11   Government must prove beyond a reasonable doubt that the mental

12   processes of the defendant passed from the stage of thinking

13   about the crime to actually intending to commit that crime, and

14   that the physical process of the defendant went beyond and

15   passed from the stage of mere preparation to some form -- some

16   firm, clear, and undeniable action to accomplish that intent.

17          Count 12 of the indictment charges that in or about

18   February 2020, within the Eastern District of Virginia, the

19   defendant, Zackary Ellis Sanders, knowingly possessed at least

20   one matter which contained a visual depiction that had been

21   mailed or had been shipped or transported using any means or

22   facility of interstate or foreign commerce, or in or affecting

23   interstate or foreign commerce, or which was produced using

24   materials that had -- which had been mailed or so shipped or

25   transported by any means, including by computer, and that the

1     production of such visual depiction involved the use of a minor

2     engaging in sexually explicit conduct, and such visual depiction

3     was of such conduct; to wit, digital visual depictions of

4     minors, including prepubescent minors, and minors who had not

5     attained the age of 12 years of age engaged in sexually explicit

6     conduct stored on a SanDisk Cruzer Edge thumb drive, an HP

7     Elitebook 755 laptop, a Lexar thumb drive, an HP laptop serial

8     number 5CH11262Y5Y, and an HP laptop, serial number CMF8255WHS.

9          Section 2255(a)(4) of Title 18 of the U.S. Code

10    provides, in relevant part, that any person who knowingly

11    possesses one or more books, magazines, periodicals, films,

12    videotapes, or other matter which contain any visual depiction

13    that has been mailed or has been shipped or transported using

14    any means or facility of interstate or foreign commerce, or in

15    or affecting interstate or foreign commerce, or which was

16    produced using materials which have been made [sic] or so

17    shipped or transported by any means, including by computer, if,

18    one, the producing of such visual depiction involves the use of

19    a minor engaging in sexually explicit conduct; and two, such

20    visual depiction is of such conduct, shall be guilty of a

21    federal crime.

22         Now, in order for the Government to prove the defendant

23    guilty of possessing child pornography, as charged in Count 12

24    of the indictment, the Government must prove the following

25    elements beyond a reasonable doubt:

1          First, that the defendant knowingly possessed a matter

2     which contained any visual depiction.

3          Two, that the producing of such visual depiction

4     involved the use of a minor engaging in sexually explicit

5     conduct, and the visual depiction is of such sexually explicit

6     conduct.

7          And third, that the matter which contained the visual

8     depiction involving the use of a minor engaging in sexually

9     explicit conduct had been transported using any means or

10    facility of interstate or foreign commerce, or in or affecting

11    interstate or foreign commerce by any means, including by

12    computer, or the matter which contained a visual depiction

13    involving the use of a minor engaging in sexually explicit

14    conduct was produced using materials which had been mailed or so

15    shipped or transported by any means, including by computer.

16         And four, the fourth, that the defendant knew that the

17    visual depiction involved the use of a minor engaging in

18    sexually explicit conduct.

19         Now I'm going to define a number of terms for you.  I

20    will define the terms "visual depiction," "computer," "minor,"

21    "sexually explicit conduct," and "lascivious exhibition," which

22    apply to your deliberations and to the indictment.

23         The term "visual depiction" includes images, pictures,

24    videos, undeveloped film, and video data stored on a computer

25    disk or by electronic means which is capable of conversion into

 1    a visual image, and data which is capable of conversion into a

 2    visual image that has been transmitted by any means, whether or

 3    not stored in permanent format.

 4         Computer -- the term "computer" means any electronic,

 5    magnetic, optical, electrochemical, or other high-speed data

 6    processing device performing logical, arithmetic or storage

 7    functions and includes any data storage facility or

 8    communications facility directly related to or operating in

 9    conjunction with such a device.

10         "Minor," as I've told you, I think, before, means any

11    person under the age of 18 years.

12         The term "sexually explicit conduct" means actual or

13    simulated, one, sexual intercourse involving genital-genital,

14    oral-genital, and [sic] genital, or oral-anal, whether between

15    persons of the same or opposite sex.

16         Two, bestiality.

17         Three, masturbation.

18         Four, sadistic or masochistic abuse.

19         And five, the lascivious exhibition of the genitals or

20    pubic area of any person.

21         For the visual depiction of an exhibition of the

22    genitals or pubic area of a minor to be considered sexually

23    explicit conduct, the exhibition must be lascivious.  Whether a

24    picture or image of the genitals or pubic area constitutes such

25    lascivious exhibition requires a consideration of the overall

1    context of the material.  In determining whether an exhibition

2    of the genitals or pubic area of a minor is lascivious, you may

3    consider the following factors:

4         Whether the focal point of the visual depiction is on

5    the minor's genitals or pubic area; two, whether the setting or

6    visual depiction is sexually suggestive -- that is, a place or

7    pose generally associated with sexual activity; whether the

8    minor is depicted in an unnatural pose or in inappropriate

9    attire considering the age of the minor; whether the minor is

10   fully or partially clothed or nude; whether the visual depiction

11   suggests coitus or a willingness to engage in sexual activity;

12   and whether the visual depiction is intended or designed to

13   elicit a sexual response in the viewer.

14        Whether -- a picture or image need not involve all of

15   these factors to be lascivious exhibition of the genitals or

16   pubic area.  It is for you to decide the weight or lack of

17   weight to be given to any of these factors.  Ultimately, you

18   must determine whether the visual depiction is lascivious based

19   on its overall content.

20        The Government must prove beyond a reasonable doubt

21   that the visual depiction was distributed or attempted -- or an

22   attempt was made to distribute it in one of three ways:

23        First, the visual depiction was distributed by any

24   means or facility of interstate or foreign commerce.

25        Second, that the visual depiction had been shipped or

1    transported in or affecting interstate or foreign commerce.

2           Or third, that the visual depiction contained materials

3    which had been mailed or shipped or transported in and affecting

4    interstate commerce by any means, including by computer.

5           The term "means or facility of interstate commerce"

6    includes any electronic devices, program, including social media

7    applications connected to the internet and capable of sending

8    information over the internet.

9           The phrase "affecting interstate or foreign commerce"

10   means having at least a minimal effect upon interstate or

11   foreign commerce.

12          The Government is not required to prove that the

13   defendant knew that any means or facility of interstate commerce

14   had been or would be used when he received or distributed the

15   visual depiction.

16          The Government must prove beyond a reasonable doubt

17   that the production of the visual depiction involved the use of

18   a minor engaging in sexually explicit conduct and portrays that

19   minor engaged in that conduct.  The visual depiction must be of

20   a real person under the age of 18 engaging in sexually explicit

21   conduct.

22          The Government does not have to prove the identity of

23   the minor or the exact age of the minor.  You may consider all

24   of the evidence admitted, including your viewing of the person

25   depicted in the video or image, in determining whether the image

portrayed an actual person under the age of 18 engaging in sexually explicit conduct.

The Government must prove beyond a reasonable doubt that the defendant knew both that the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct and that it portrayed minors engaged in that conduct.  An act is done knowingly when it is done voluntarily and intentionally, and not because of accident, mistake, or some other innocent reason.

In this case, "knowingly" refers to an awareness of the sexually explicit nature of the material and to the knowledge that the visual depictions were, in fact, actual minors engaging in that sexually explicit conduct.

The Government must show that the defendant had knowledge of the general nature of the contents of the material. The defendant need not have specific knowledge as to the identity of -- the identity or actual age of the underage performer, but the defendant must have knowledge or an awareness that the material contained a visual depiction of a minor engaging in sexually explicit conduct.

Such knowledge may be shown by direct or circumstantial evidence or both.

Eyewitness testimony of the defendant's viewing of the material is not necessary to prove the awareness of its contents.  The circumstances may warrant an inference that he

1    was aware of what the material depicts.  Furthermore,

2    defendant's belief as to the legality or illegality of the

3    material is irrelevant.

4         Now, intent and motive are different concepts and

5    should never be confused.  Motive is what prompts a person to

6    act or to fail to act; that is, what prompts a person to act or

7    fail to act.  Intent refers to the state of mind with which the

8    act is done or omitted.  Personal advancement and financial gain

9    are -- for example, are two well-recognized motives of human

10   conduct.  These praiseworthy motives -- they may be

11   praiseworthy -- however, may prompt one person to voluntary acts

12   of good while prompting another person to voluntary acts of

13   crime.

14        Good motive alone is never a defense where the act done

15   or omitted is a crime.  The motive of the person is, therefore,

16   immaterial except insofar as evidence of motive may aid in

17   determining the state of mind or intent of the defendant.

18        Now, in the course of the trial you were permitted to

19   take notes.  You are permitted to use your notes as you

20   deliberate, but your notes should be used only as memory aids.

21   You should not give your notes precedence over your independent

22   recollection of the evidence.  Notes are not entitled to any

23   greater weight than the recollection or impression of each juror

24   as to what the testimony may have been.

25        Now, you may not base your verdict in any way upon

1    sympathy, bias, guesswork, or speculation.  Your verdict must be

2    based solely on the evidence and the Court's instructions.

3         Your verdict must represent the considered judgment of

4    each juror.  In other words, in order to return a verdict, it is

5    necessary that each juror agree thereto.  Your verdict must be

6    unanimous.

7         Now, it's your duty as jurors to consult with one

8    another and to deliberate with a view to reaching an agreement

9    if you can do so without violence to your individual judgment.

10   You must each decide the case for yourself, but only after an

11   impartial consideration of the evidence in the case with your

12   fellow jurors.

13        In the course of your deliberations, do not hesitate to

14   reexamine your own views and to change your opinion if convinced

15   it is erroneous.  But do not surrender your honest conviction as

16   to weight or effect of evidence solely because of the opinion of

17   your fellow jurors or for the mere purpose of returning a

18   verdict.  Remember at all times you are not partisans; you are

19   judges, judges of the facts.  Your sole interest is to seek the

20   truth from the evidence in the case.

21        The punishment provided by law for the offenses charged

22   in the indictment is a matter exclusively within the province of

23   the Court and should never be considered by the jury in any way

24   in arriving at an impartial verdict as to the offenses charged.

25        Now, during your deliberations you must not communicate

1   with or provide any information to anyone by any means,

2   electronic or otherwise, about this case.  You may not use any

3   electronic device or media, such as a telephone, cell phone,

4   smart phone, iPhone, BlackBerry, or computer, the internet or

5   any internet service or any text or instant messaging service or

6   any internet chat room, blog, or website such as Facebook,

7   Myspace, LinkedIn, YouTube, or Twitter, to communicate with

8   anyone any information about this case, or to conduct any

9   research about this case until I accept your verdict.

10          Now, when you retire to the jury room, you'll elect --

11   or select one of your number to act as your foreperson.  The

12   foreperson will preside over your deliberations and will be your

13   spokesperson here in court.  Forms of the verdict have been

14   prepared for your convenience.

15          May I have that, please.  Thank you.

16          And I'm going to explain the verdict form to you now.

17   I've had a hard time seeing all of you.

18          The verdict form is a three-page form, and in that form

19   is the following:  First, there is the style of the case at the

20   top.  The title is verdict form.  And then it says, Count 1:

21   With respect to Count 1, production of child pornography, we,

22   the jury, find the defendant, Zackary Ellis Sanders, either not

23   guilty or guilty.  So you are to reach a verdict and put down

24   whether you find him not guilty or guilty.

25          And then it goes to Count 2:  With respect to Count 2,

42

1    production of child pornography, we, the jury, find the

2    defendant, Zackary Ellis Sanders, not guilty or guilty.  You'll

3    remember that each of the counts is a different alleged minor

4    victim.

5           And then there's Count 3, and exactly the same question

6    is asked as to Count 3 and as to Count 4 and as to Count 5.

7           Now, Count 6, the question then is:  With respect to

8    Count 6, receipt of child pornography, we, the jury, find the

9    defendant either not guilty or guilty, as you may find.  And 7,

10   8, 9, and 10 are all the different counts of receipt of child

11   pornography.  And 11 as well.

12          In other words, 6, 7, 8, 9, 10, and 11 are the receipt

13   counts, and you are asked to mark here whether you find the

14   defendant not guilty or guilty.

15          And then, for Count 12, it says, with respect to

16   Count 12, possession of child pornography, we, the jury, find

17   the defendant, Zackary Ellis Sanders, either not guilty or

18   guilty as you may find.  There's an additional question asked

19   with respect to Count 12.  If your verdict is not guilty as to

20   Count 12, you don't have to answer that further question.  If

21   your finding is that the defendant is guilty as to Count 12,

22   then you have to answer the following question, and that's

23   explicit here on the form:  Did a visual depiction involved in

24   the offense charged in Count 12 involve a prepubescent minor or

25   a minor who had not attained the age of 12 years?

1          And there's a place for you to mark no or yes.  And

2     again, you don't have to answer that question if you find the

3     defendant not guilty of Count 12.  But if you find the defendant

4     guilty of Count 12, you must answer that question.

5          And after that, there's a statement that says:  So say

6     we all this -- whatever day you reach your verdict.  What is

7     today?  Today is the 27th -- 27th, but you may deliberate as

8     long as or as little as you like.  So whatever that date is, it

9     will be.

10          And then your foreperson signs it and then you'll

11     return with your verdict to the courtroom.  So it's a three-page

12     form, and I have reviewed it all with you.

13          Now, it's proper to add the caution that nothing said

14     in the instructions I've given you and nothing in my form of the

15     verdict prepared for your convenience is meant to suggest or to

16     convey in any way or manner any intimation as to what verdict I

17     think you should find.  What your verdict shall be is your sole

18     and exclusive duty and responsibility.

19          Now, if it becomes necessary during your deliberations

20     to communicate with the Court, you may send a note by the court

21     security officer who will be right outside.

22          They're going to deliberate on this floor, aren't they?

23          COURT SECURITY OFFICER:  Yes, sir.

24          THE COURT:  He will be right outside the door.  And the

25     note should be signed by your foreperson or by one or more

1    members of the jury.  No member of the jury should ever attempt

2    to communicate with the Court by any means other than a signed

3    writing, and the Court will not communicate with any member of

4    the jury on any subject touching the merits of the case

5    otherwise than in writing or orally here in open court.

6         I may communicate with you for other reasons such as

7    how long you wish to continue to deliberate.  I've had other

8    situations.  If it gets too hot in there, too cold in there,

9    those sorts of things I will communicate with you other than by

10   a signed writing or orally here in open court.

11        Now, you'll note from the oath about to be taken by the

12   court security officer that he too, as well as all other

13   persons, are forbidden to communicate in any way or manner with

14   any member of the jury on any subject touching the merits of the

15   case.

16        And bear in mind that you are never to reveal to any

17   person, not even to the Court, not even to me, how the jury

18   stands, numerically or otherwise, on the questions before you

19   until after you have reached your unanimous verdict.

20        All right.  You may administer the oath to the court

21   security officer.

22        COURTROOM CLERK:  You shall keep this jury together,

23   not have any communication with them, nor permit any other to

24   communicate with them touching this trial, so help you God?

25        COURT SECURITY OFFICER:  I shall.

1        THE COURT:  All right.  Now, as I said, the exhibits

2    will be in there, but it's going to take us a few minutes to get

3    the exhibits in there.  Unless that's already happened.

4        COURTROOM CLERK:  Yes, Judge.

5        THE COURT:  Would that I could be as efficient as those

6    of my colleagues.

7        But in any event, once all of you are there and all the

8    exhibits are in there and the verdict form and the tape

9    recorder, because you will not have a written version of the

10   instructions I've given you, but you will have a tape recording

11   of it.  You're not required to listen to the tape again, but

12   it's there if you want to, if you think that's important.

13   That's up to you.  And that will be provided to you.  The -- I

14   don't have a written version, and I prefer to do it this way.

15   The tape recorder will be there.

16       Now, once all of that is in the room and the 12 of you

17   are in the room and the door closes, then you may begin your

18   deliberations.  Now, you may tell the court security officer at

19   any time if you want to take a recess, but remember this:  If

20   one of you -- if any one of you, or more, leave the room to go

21   use the head -- bathroom, or for some other reason are absent

22   temporarily, cease your deliberations.  You can only deliberate

23   if all of you are there and the door is closed because all of

24   you have to know what everyone else says.  So if one of you

25   leaves and there's a discussion, that person who left hasn't

```
1    heard all of that, and that person must hear everything.

2              Now, put on your earphones, please.

3              (BENCH CONFERENCE ON THE RECORD.)

4              THE COURT:  Can you hear me?

5              MR. SCHLESSINGER:  Yes, Your Honor.

6              MS. GINSBERG:  Yes, Your Honor.

7              THE COURT:  All right.  Has the jury been fully and

8    fairly instructed in accordance with the instructions

9    conference, Mr. Schlessinger?

10             MR. SCHLESSINGER:  Yes, Your Honor.

11             THE COURT:  Ms. Ginsberg?

12             MS. GINSBERG:  Yes, Your Honor.  But I do have an

13   objection to the verdict form.

14             THE COURT:  Too late.

15             MS. GINSBERG:  Is Your Honor going to send the

16   indictment into the jury room?

17             THE COURT:  I hadn't planned to.  Do you want it?

18             MS. GINSBERG:  No, I don't.

19             THE COURT:  All right.  I don't plan to send it to

20   them.

21             MS. GINSBERG:  The reason for my objection, Your Honor,

22   is I think the verdict form, without reference to the individual

23   images and the individual victims, is going to be totally

24   confusing to the jury.

25             THE COURT:  All right.  Your objection comes too late.
```

1  I don't think it's a sound objection in any event.  They'll have

2  to use their recollections to match images with what was done,

3  and the Government made clear which images it said were in

4  effect for -- or were operative for each count.

5        So -- and you don't want the indictment sent back, and

6  I will accommodate that request and I won't send the indictment

7  back.  But I'm not going to change the verdict form.

8        MS. GINSBERG:  I understand.  Your Honor, one other

9  request.  The phone, the cell phone, is an exhibit which the

10 Government moved into evidence.  I believe the appellate court

11 has ruled that the phone should be provided for the jurors the

12 same way a tape recorder is going to be provided for them to

13 listen to any portion of the recorded chats or recorded

14 testimony.  I've asked the Government if they have a power cord

15 and I don't think they have one present in the courtroom.

16        THE COURT:  Mr. Schlessinger, she wants to give the

17 jury the ability to plug in to the phone.  What's your view?

18        MR. SCHLESSINGER:  Your Honor, that's not appropriate.

19 It was not a part of any exhibit that's been admitted.

20 Moreover, unlike the computer that's going to be provided to the

21 jurors in order to play the CDs, which is incapable of altering

22 the CDs that were admitted as exhibits, the power cord

23 inherently will and does change the condition and the contents

24 of the phone that's been admitted as an exhibit.

25        So it's not appropriate to be admitted.  At an absolute

1    minimum, I don't think --

2            THE COURT:  Well, the phone itself is admitted.

3            MR. SCHLESSINGER:  It is.

4            THE COURT:  But not a device to hook in to the phone.

5            MR. SCHLESSINGER:  That's correct, Your Honor.

6            THE COURT:  All right.  Ms. Ginsberg?

7            MS. GINSBERG:  Your Honor, it was for that reason that

8    I asked yesterday that the entire transcript of the chats be

9    admitted.  The Government objected to that.  They did

10   acknowledge, and the Court has acknowledged, that the phone has

11   been admitted as a Government exhibit at their request, and that

12   being the case, it is an exhibit, the jury is entitled to have

13   access to the contents.  And if the Government is concerned

14   about altering the data on the phone, they should have come up

15   with some other mechanism for the jury to be able to access the

16   contents of an exhibit which they have admitted.

17           THE COURT:  All right.  Go ahead, Ms. Ginsberg.

18           MS. GINSBERG:  That's my argument, Your Honor.

19           THE COURT:  All right.  Thank you.

20           Mr. Schlessinger, last chance.

21           MR. SCHLESSINGER:  Once again, Your Honor, we admitted

22   the phone itself, which the jury may fully examine.  We have not

23   admitted a power cord that goes along with the phone, and the

24   jury should not have access to that, which is going to alter the

25   evidence, and which also they have indicated no request for at

 1    this time.

 2            So at an absolute minimum, it would be entirely

 3    premature to send it back and send the signal that the jury

 4    should plug it in or examine it in that way.

 5            THE COURT:  Now, I did, did I not, indicate to the

 6    defendant, Ms. Ginsberg, that you were free to introduce any

 7    other part of that -- those conversations?  Am I correct?

 8            MS. GINSBERG:  Yes, Your Honor.  But the phone was

 9    admitted.

10            THE COURT:  Yes, you've said that.  I understand your

11    argument.  I don't find it persuasive, so I'm going to decline

12    to do as you request.

13            And I didn't ask you, Mr. Schlessinger, because I was

14    in agreement with Ms. Ginsberg that the indictment should not be

15    admitted -- or should not be sent back to the jury.  Do you have

16    a different view?

17            MR. SCHLESSINGER:  I do, Your Honor.  We have asked

18    that it be sent back, but I understand the Court's ruling, and

19    we understand.

20            THE COURT:  And you don't want it sent back, do you,

21    Ms. Ginsberg?

22            MS. GINSBERG:  No, we don't.

23            THE COURT:  All right.  I'm not going to send it back.

24            All right.  We'll allow the jury to retire and begin

25    their deliberations.

1          MR. SCHLESSINGER:  I'm sorry, Your Honor.  Is

2     Your Honor going to excuse the alternates at this time?

3          THE COURT:  Yes, I am.  They are Elizabeth Sheriff and

4     Patrick Campo.  Any objection to that, Mr. Schlessinger?

5          MR. SCHLESSINGER:  No.

6          THE COURT:  Ms. Ginsberg?

7          MS. GINSBERG:  No, Your Honor.  Just going back to the

8     evidence just briefly, I do want to make sure that the recording

9     of Mr. Sanders' statement is available to the jury, the

10    transcript --

11         THE COURT:  Did I admit it?

12         MS. GINSBERG:  The transcript, at least, has been

13    admitted.  That should go back to the jury.

14         THE COURT:  Whatever I have admitted, Ms. Ginsberg,

15    will go back to the jury.  If I have not admitted it because you

16    didn't specifically offer it, it will not.

17         All right?  This is not the time to offer any piece of

18    evidence that wasn't specifically offered at the time.

19         MS. GINSBERG:  One last thing, Your Honor.

20         THE COURT:  Yes, your client is sending you notes.  Go

21    ahead.

22         MS. GINSBERG:  Your Honor, for the record, the phone

23    was charged when it was seized, and so that is the format that

24    the phone should be given to the jury.

25         THE COURT:  All right.  Let me be clear.  I have

1    rejected your argument that the phone be sent back -- the phone

2    will go back, but not with a device that enables the jury to

3    access it.  That's what you wanted, and I have denied that.

4            MS. GINSBERG:  Yes, Your Honor.

5            THE COURT:  Anything further, Mr. Schlessinger?

6            MR. SCHLESSINGER:  No, Your Honor.

7            (END BENCH CONFERENCE.)

8            THE COURT:  All right, ladies and gentlemen.  I'm sure

9    you all know how many persons comprise a jury in a federal

10   criminal case.  Of course it is 12.  Two of you have been

11   alternates.  We could not have proceeded in this case without

12   your participation.  So we are grateful to you for that.  But

13   it's now my duty to excuse you, number 42, Ms. Sheriff, and

14   number 6, Mr. Campo.  Yes.

15           Now, I'm going to excuse you and you may take your

16   books.  But I'm going to ask you that you refrain from

17   discussing this matter with anyone.  In other words, remain as

18   if I were just having another recess.  The reason for that is

19   that it may be necessary to call you back and ask you to serve.

20   It would be a very rare circumstance where that might be

21   necessary.  So I wouldn't be too worried about it, but it could

22   happen.  In 34 years of my doing this, it has not happened.  But

23   it may.

24           So please remain so that you don't discuss the matter

25   with anyone because, if you're recalled, that will be the first

1    thing I'll ask you, whether you've discussed the matter with

2    anyone or undertaken any investigation, because you remain just

3    as you are.

4         But the Court thanks you, again, for your service.

5    Again, I tell you, we could not have proceeded without your

6    participation.

7         You may take your books now and depart.  Let me ask the

8    court security officer, do we have the means to communicate?

9         COURT SECURITY OFFICER:  I'm sorry?

10        THE COURT:  Do we have the means to communicate with

11   Ms. Sheriff and Mr. Campo?

12        COURT SECURITY OFFICER:  Do we have cell phones?

13        THE COURT:  All right.  I'll do it this way.  Give him

14   a cell number, please, and that means that, if we need to reach

15   you, we will.

16        Now, once there's a result, we will call you.  We will

17   tell you what the result is.

18        All right.  You may depart.

19        (Alternate jurors excused.)

20        THE COURT:  All right.  Now, ladies and gentlemen, I'm

21   going to have you retire.  Take your books with you.  You'll go

22   into the jury room or -- is it the jury room or are we going to

23   use the large conference room?

24        COURT SECURITY OFFICER:  The large conference room.

25        THE COURT:  Good.  That enables you to have social

1    distancing.  There is a method to our madness.  When we use jury

2    rooms in the non-pandemic times, you're much closer together and

3    you don't have a window to look out; it's an encouragement to do

4    the work that you've been asked to do.  But here you'll be in a

5    much larger conference room so you'll be able, if you wish, to

6    retain or to maintain your social distancing.  Some people want

7    it.  Some people don't.  Individual.  You decide what you want.

8    Accommodate each other.  That's what I do.  I wear the mask when

9    it makes other people feel better and when it's required, and I

10   may not otherwise.

11           Now, you may follow -- and this time you won't hear the

12   familiar litany of refraining from discussing the matter among

13   yourselves because the time has arrived when you must do that.

14   Once all 12 of you are in the room, everything is in the room,

15   the verdict form, the tape recorder with my instructions, and

16   the exhibits are all in the room, the door closes, and the court

17   security officer leaves, then you may begin your deliberations.

18   And you may deliberate as long or as little as you like.

19           When lunches come, you can decide to eat your lunch,

20   everybody continuing to deliberate, or you can take a break.

21   You may determine that you want to do that.  But if you take a

22   break and you don't deliberate, people leave the room --

23   remember, you may not deliberate unless all 12 of you are

24   present.

25           All right.  You may follow the court security officer

1    out.

2              (Jury out at 11:06 a.m.)

3              THE COURT:  As I recall, the interview of defendant was

4    offered both in an audio form and a transcript form.  Do you

5    agree, Mr. Schlessinger?

6              MR. SCHLESSINGER:  Yes, that's correct, Your Honor.

7              THE COURT:  All right.  Both should go back to the

8    jury.  What were the exhibit numbers, Ms. Ginsberg?

9              MS. GINSBERG:  DX-5.  The transcript is DX -- the

10   Defendant's Exhibit 5.

11             THE COURT:  Is that right, Mr. Schlessinger?

12             MR. SCHLESSINGER:  Yes, Your Honor.  The audio of the

13   entire thing is Government's Exhibit 101.  The transcript of

14   that is Defense Exhibit 5.

15             THE COURT:  All right.  Court stands in recess.  You

16   may, of course, leave the courthouse, but leave a number where

17   you can be reached in the event there's a question or a verdict.

18             MS. GINSBERG:  Judge, I think we'll probably be just

19   across the street.

20             THE COURT:  I'm sorry?

21             MS. GINSBERG:  I think we'll be just across the street

22   at the Westin, so we'll be very close to the courthouse.

23             THE COURT:  Suit yourself.  It's --

24             MS. GINSBERG:  Thank you.

25             THE COURT:  -- entirely up to you all.

1          All right.  Court stands in recess until the jury

2    reaches a verdict, because I don't plan to recess them or

3    inquire of them how much they wish to continue to deliberate

4    today until 5 o'clock or so.  And that's when I'll have the

5    court security officer inquire of them of that.

6          MS. GINSBERG:  Thank you, Your Honor.

7          THE COURT:  Court stands in recess.

8          (Recess taken at 11:08 a.m.)

9          THE COURT:  We have a note from the jury.  I'll read

10   the note and then the court security officer can show it to

11   counsel and you can look at it together at the podium.

12         "Judge Ellis, the jury has reached a verdict.

13   10/27/21, 12:30 p.m.," I can't read the signature.

14         Tell me who signed it.  Brost.  Male or female?

15         COURTROOM CLERK:  Male.

16         THE COURT:  Hand it to the court security officer.  The

17   parties may look at it at the bench and then I will tell you how

18   the verdict will be received.

19         I'll have the note made a part of the record in this

20   case.  And the way in which the verdict will be received is,

21   after the jury is brought in, the deputy clerk -- and I'll tell

22   this to the jury as well.  The deputy clerk will be asked

23   whether the jury has reached a verdict, and upon receiving an

24   affirmative answer, presumably from the foreperson, the deputy

25   clerk will ask for the verdict form.

1          And then I will review the verdict form to ensure that

2    it's correct as to form.  If it isn't -- only as to form.  In

3    other words, if they checked "not guilty" and "guilty" to the

4    same count, I'll have you on the earphones and discuss how the

5    matter will be dealt with.

6          On the other hand, if there's no problem as to form, I

7    will have the deputy clerk publish the verdict, which will

8    require defendant to stand, face the jury, and then the deputy

9    clerk will publish the verdict.  And after the deputy clerk

10   publishes the verdict, then I will have some words of thanks for

11   the jury.

12         Any questions, Mr. Schlessinger?

13         MR. SCHLESSINGER:  No, Your Honor.

14         THE COURT:  Ms. Ginsberg?

15         MS. GINSBERG:  No, sir.

16         THE COURT:  All right.  Bring the jury in, please.

17         (Jury in at 1:08 p.m.)

18         THE COURT:  Ladies and gentlemen, I've received a note

19   signed by Mr. Brost.  I assume you're the foreperson?

20         JURY FOREPERSON:  That's correct, Your Honor.

21         THE COURT:  I've received a note indicating the jury

22   has reached a unanimous verdict.  Is that correct?

23         JURY FOREPERSON:  That's correct, Your Honor.

24         THE COURT:  Now, the way in which a verdict is received

25   in this case, let me describe that to you.  The deputy clerk

1    will ask the foreperson whether the jury has reached a unanimous

2    verdict, and when you respond affirmatively, she'll ask for the

3    verdict form.  She'll give me the verdict form.  I will then

4    review it to ensure that it is correct as to form; in other

5    words, that you didn't do something like put down "not guilty"

6    and "guilty" for the same count.

7         Once I review -- I'm not interested in the result, I'm

8    interested in whether the form is correct.  And then, if I

9    conclude that it is, I will have the deputy clerk publish the

10   jury verdict, which she will do by reading it with the defendant

11   standing and facing the jury.

12        And after that, I will have some words of thanks to you

13   and advice and instruction, and then permit you to retire.

14        All right.  The deputy clerk may proceed.

15        COURTROOM CLERK:  Mr. Foreman, has the jury agreed upon

16   the verdict?

17        JURY FOREPERSON:  Yes, we have.

18        COURTROOM CLERK:  Will you hand it to the court

19   security officer, please.

20        THE COURT:  You may publish the verdict.

21        COURTROOM CLERK:  Will the defendant please stand and

22   face the jury.  In the case United States of America versus

23   Zackary Ellis Sanders, Case Number 2020-CR-143, with respect to

24   Count 1, production of child pornography, we the jury find the

25   defendant, Zackary Ellis Sanders, guilty.

1            With respect to Count 2, production of child

2       pornography, we the jury find the defendant, Zackary Ellis

3       Sanders, guilty.

4            With respect to Count 3, production of child

5       pornography, we the jury find the defendant, Zackary Ellis

6       Sanders, guilty.

7            With respect to Count 4, production of child

8       pornography, we the jury find the defendant, Zackary Ellis

9       Sanders, guilty.

10           With respect to Count 5, production of child

11      pornography, we the jury find the defendant, Zackary Ellis

12      Sanders, guilty.

13           With respect to Count 6, receipt of child pornography,

14      we the jury find the defendant, Zackary Ellis Sanders, guilty.

15           With respect to Count 7, receipt of child pornography,

16      we the jury find the defendant, Zackary Ellis Sanders, guilty.

17           With respect to Count 8, receipt of child pornography,

18      we the jury find the defendant, Zackary Ellis Sanders, guilty.

19           With respect to Count 9, receipt of child pornography,

20      we the jury find the defendant, Zackary Ellis Sanders, guilty.

21           With respect to Count 10, receipt of child pornography,

22      we the jury find the defendant, Zackary Ellis Sanders, guilty.

23           With respect to Count 11, receipt of child pornography,

24      we the jury find the defendant, Zackary Ellis Sanders, guilty.

25           With respect to Count 12, possession of child

```
 1    pornography, we the jury find the defendant, Zackary Ellis

 2    Sanders, guilty.  Did a visual depiction involved in the offense

 3    charged in Count 12 involve a prepubescent minor or a minor who

 4    had not attained 12 years of age?  Yes.

 5         So say we all, this 27th day of October, 2021,

 6    Foreperson.

 7         THE COURT:  You may be seated.  The deputy clerk will

 8    now poll the jury to ensure it is their individual verdict.

 9         COURTROOM CLERK:  Juror number 19, Joseph Hilton, is

10    this your verdict?

11         JUROR:  Yes.

12         COURTROOM CLERK:  Juror number 2, Bruce Arthur, is this

13    your verdict?

14         JUROR:  Yes.

15         COURTROOM CLERK:  Juror number 31, Joshua Mecham, is

16    this your verdict?

17         JUROR:  Yes.

18         COURTROOM CLERK:  Juror number 2, Candice Alidoosti, is

19    this your verdict?

20         JUROR:  Yes.

21         COURTROOM CLERK:  Juror number 26, Richard Loveland the

22    second, is this your verdict?

23         JUROR:  Yes.

24         COURTROOM CLERK:  Juror number 33, Lucinda McLaughlin,

25    is this your verdict?
```

1                   JUROR:  Yes.

2                   COURTROOM CLERK:  Juror number 27, Patrick Kerns, is

3       this your verdict?

4                   JUROR:  Yes.

5                   COURTROOM CLERK:  Juror number 6, Jason Brost, is this

6       your verdict?

7                   JUROR:  Yes.

8                   COURTROOM CLERK:  Juror number 38, Christy Rice, is

9       this your verdict ?

10                  JUROR:  Yes.

11                  COURTROOM CLERK:  Juror number 31, Michael Mason, is

12      this your verdict?

13                  JUROR:  Yes.

14                  COURTROOM CLERK:  Juror number 16, Kamel Elhassani, is

15      this your verdict?

16                  JUROR:  Yes.

17                  COURTROOM CLERK:  And juror number 7, Razzakul

18      Chowdhury, is this your verdict?

19                  JUROR:  Yes.

20                  THE COURT:  All right.  Ladies and gentlemen, I'm now

21      able to excuse you, but I first want to thank you for your

22      service as jurors in this case.  This lasted some considerable

23      period of time, and there was a good deal of evidence and

24      testimony that you listened to.  And it was apparent to the

25      Court that you paid careful and close attention to the evidence

1    as it was presented, and it's also apparent that you deliberated

2    conscientiously in order to reach a unanimous verdict.

3           Now, you are no longer under any constraints to speak

4    to anyone about this case.  However, I will say this.  The

5    lawyers may not contact you.  They're forbidden by local rule

6    from doing so.  If a lawyer contacts you, I want to know about

7    it immediately.

8           You, however, may speak to whoever you wish about the

9    case.  In that regard, let me add a caution.  It's not an order,

10   it's a caution.  I am always disturbed when I see in the media

11   jurors discussing on the media what went on in the course of

12   jury deliberations.  That seems to me to be inappropriate.  It

13   does an injury to the deliberative process if jurors knew in

14   advance that everything that they said and did in the course of

15   deliberations was going to be grist for the media mill.

16          So I suggest to you - and it is a suggestion, not an

17   order - that you have a duty of confidentiality to your fellow

18   jurors to maintain the confidentiality of what went on in the

19   course of your deliberations.  But that is a decision you must

20   make.

21          Now, I'm going to excuse you, again, with thanks.  I

22   invite you -- this is not my courthouse, and although this is

23   the courtroom where I do all my work and my chambers are

24   attached to it, it doesn't belong to me.  None of this belongs

25   to me.  It is the people's courthouse.  It's your courthouse as

1    well as mine, and these proceedings, all of the proceedings that

2    I am in, are proceedings that you and every American should have

3    an interest in.

4         So I invite you, if you have a comment or a criticism

5    or something you want to express to me, to come back and tell me

6    about it.  But don't do it for eight or 10 weeks, not until this

7    case is completely over.  What will happen now is that I will

8    order the preparation of a presentence investigation report.

9    This is a document which has a great deal of information about

10   the defendant in it that I can take into account in imposing an

11   appropriate sentence.

12        And then, about eight or 10 weeks from now, or perhaps

13   even longer, I will impose an appropriate sentence.  And after

14   that is concluded, then I'm happy to see any of you who wish to

15   come and talk to me about the case.  And you can always call the

16   clerk's office, particularly Ms. Randall, the deputy clerk, and

17   ask if the case is totally over.  And I will have the deputy

18   clerk call the alternate jurors and tell them about the verdict,

19   and relate to them as well that they cannot be contacted, but

20   they're free to speak to whomever they wish.

21        And you can add the caution that I added to the jurors

22   here.

23        All right.  You have your books.  Take your books with

24   you, thank you again for your service.  You're free now to

25   depart.

1        (Jury out at 1:20 p.m.)

2        THE COURT:  Mr. Sanders, come to the podium, please,

3    sir.  Mr. Sanders, you have been found guilty by the jury.  I'll

4    enter judgment in that regard at the appropriate time.  But I'm

5    going to order the preparation of a presentence investigation

6    report.  This is a vitally important document because it's a

7    document on which the Court will chiefly rely in imposing an

8    appropriate sentence.

9        And you have a role to play in the preparation of this

10   report.  You will be asked by a probation officer to provide

11   information so that the report can be prepared.  You'll be asked

12   to provide information about your family, your background, your

13   education, your work experience, your health and financial

14   conditions, any criminal history that you may have, and indeed

15   anything that may be material in any way to the Court's

16   sentencing decision.  And you may have your counsel with you

17   when you provide that information to the probation officer.

18       And when the report is completed, Mr. Sanders, you'll

19   receive a copy.  So will your counsel.  You'll have an

20   opportunity to review it, to review it with your counsel, and

21   then to call to the Court's attention any corrections you think

22   should be made to the report, or any objections you have to the

23   facts, conclusions, or calculations contained in the report.

24   And the Government will also have an opportunity to register its

25   corrections or objections.

1        Now, if the Government disputes those objections or

2   corrections that you offer, or you dispute those that are

3   offered by the Government, then the Court will hold a hearing

4   and then the Court will resolve the dispute at that time by

5   issuing findings.

6        Then the Court will proceed to sentencing.  At the time

7   of sentencing, Mr. Sanders, you'll have the right to address the

8   Court and to say anything at all you wish to the Court by way of

9   extenuation, mitigation, or indeed anything, Mr. Sanders, that

10  you think the Court should know before the Court decides what

11  sentence to impose in your case.  You won't be required to

12  address the Court, but you will have the opportunity to do it.

13  And, of course, your counsel - or one of them, rather - will

14  have an opportunity to address the Court on your behalf.

15       I will set sentencing for the 4th of March at 9 a.m.

16  Is that date available ?

17       MS. GINSBERG:  I expect so, Your Honor.  I don't have

18  my calendar, but unless the Elsheikh matter is in trial at that

19  date, I am available on that date.

20       THE COURT:  Well, it might be.  If it is, Ms. Ginsberg,

21  we'll accommodate that, since that's also mine.

22       MS. GINSBERG:  Yes, sir.

23       THE COURT:  And we'll see.  So I understand that you

24  you can't be in two places at one time, and you need some time

25  to prepare.  So we'll set it for the 4th of March, and I'll

 1    change that date if it becomes necessary to do so.

 2            Mr. Schlessinger, I assume that date is okay with you,

 3    or whoever is going to do this?

 4            MR. SCHLESSINGER:  Yes, it is, Your Honor.

 5            THE COURT:  All right.  Anything else to be

 6    accomplished in this matter today on behalf of the Government?

 7            MR. SCHLESSINGER:  No, Your Honor.

 8            THE COURT:  On behalf of the defendant?

 9            MS. GINSBERG:  Just one thing.  If we could ask the

10    Court's assistance.  I'm not sure what the conditions at the

11    Alexandria jail are in terms of crowding or COVID, but we would

12    ask the Court to ask the marshal service to have Mr. Sanders

13    retained at the Alexandria Detention Center as opposed to being

14    sent to any other of the regional jails.  As Your Honor knows,

15    you facilitated his ability to get ongoing medical treatment.

16    He is receiving specialized treatment --

17            THE COURT:  Do you have any objection to that,

18    Mr. Schlessinger?

19            MR. SCHLESSINGER:  Your Honor, just that I think the

20    Bureau of Prisons and the marshals need to be allowed sufficient

21    latitude to take whatever steps necessary.

22            THE COURT:  Well, yes, but I can always trump that, and

23    that's what Ms. Ginsberg is asking me to do.  He's receiving

24    treatment for another condition, so unless the marshals tell me

25    it's a real problem, I want him kept here.

1      DEPUTY MARSHAL: Understood. I'll pass it up the

2  chain.

3      THE COURT: Anything else today?

4      MS. GINSBERG: No, sir.

5      THE COURT: I want to thank counsel for your

6  cooperation. I don't recall a case in this court that I've had

7  in which four law firms have been involved. I've had three. I

8  went back to check. I've had three, but four was a new record.

9  And I appreciate the cooperation of counsel in getting this

10  matter tried.

11      Court stands in recess until tomorrow -- there may be

12  something else tomorrow. All right. Court stands in recess.

13      (Off the record at 1:26 p.m.)

14

15

16

17      **CERTIFICATE OF OFFICIAL COURT REPORTER**

18

19      **I, Rebecca Stonestreet, certify that the foregoing is a**

20  **correct transcript from the record of proceedings in the**

21  **above-entitled matter.**

22

23

24  **____//Rebecca Stonestreet_____        __12/3/21___**

25  **SIGNATURE OF COURT REPORTER                DATE**

*Rebecca Stonestreet, RPR, CRR, Official Court Reporter*