1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Criminal Case |
| Plaintiff | : | No. 20-CR-00143-TSE |
| | : | |
| v. | : | November 19, 2021 |
| | : | 9:10 a.m. |
| ZACKARY ELLIS SANDERS, | : | |
| | : | JURY SELECTION |
| Defendant | : | OPENING STATEMENTS |

.............................  :  .......................

TRANSCRIPT OF TRIAL PROCEEDINGS
DAY 1
BEFORE THE HONORABLE T.S. ELLIS, III
UNITED STATES DISTRICT JUDGE
and a jury

**APPEARANCES:**

FOR THE PLAINTIFF:      SETH SCHLESSINGER
                        JAY V. PRABHU
                        WILLIAM CLAYMAN
                        U.S. ATTORNEY'S OFFICE
                        2100 Jamieson Avenue
                        Alexandria, VA  22314
                        (703) 299-3700

FOR THE DEFENDANT:      NINA J. GINSBERG, ESQ.
                        DiMURO GINSBERG, P.D.
                        1101 King Street
                        Suite 610
                        Alexandria, VA  22314
                        (703) 684-4333

                        JONATHAN STUART JEFFRESS, ESQ.
                        JADE CHONG-SMITH, ESQ.
                        KAISER DLLON, PLLC
                        1099 14th Street, NW
                        8th Floor West
                        Washington, DC  20005
                        (202) 640-2850

                        (APPEARANCES CONTINUED ON NEXT
                        PAGE.)

```
 1        FOR THE DEFENDANT:          HENRY LOUIS SIRKIN
 2                                    SANTEN & HUGHES, LPA
                                      600 Vine Street
 3                                    Suite 2700
                                      Cincinnati, OH  45202
 4                                    513-721-4450

 5        OFFICIAL COURT REPORTER:    REBECCA STONESTREET, RPR, CRR
 6                                    U.S. District Court, 9th Floor
                                      401 Courthouse Square
 7                                    Alexandria, Virginia  22314
                                      (240) 426-7767
 8

 9                          ( Pages 1 - 158)

10

11           COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**P R O C E E D I N G S**

1

2          THE COURT:  Good morning.  The record will reflect that

3     this is United States against Sanders, 20-CR-143, and it is

4     apparent to the Court that counsel and the defendant are present

5     and prepared to proceed.  I've been advised, however, that

6     Ms. Ginsberg, your client wishes to be heard on something.

7          MS. GINSBERG:  Yes, that's correct, Your Honor.

8          THE COURT:  Is that to be *ex parte* or under seal?

9          MS. GINSBERG:  Your Honor, we would prefer to do it

10    *ex parte*, if it's possible.

11         THE COURT:  Any objection, Mr. Schlessinger?

12         MR. SCHLESSINGER:  No objection to that, Your Honor.

13         THE COURT:  All right.  Then I would ask you all to

14    depart.

15         (Counsel and parties exit the courtroom.)

16         I don't acquiesce easily to *ex parte* statements, but

17    I'll hear Mr. Sanders briefly.  Mr. Sanders, come to the podium

18    briefly, sir.

19         All right.  Mr. Sanders, what do you have to say?

20         THE DEFENDANT:  This entire time, you know, there have

21    been significant problems between my counsel and myself.  I have

22    not been listened to, I have said things; nothing has been done

23    about it.  It comes months later that I've been pleading for my

24    counsel to do certain things, that they finally look into it,

25    realize it needs to be done.  By that point either it's too

1    late, a motion gets filed untimely.

2         During our, you know, video calls that we've had at the

3    court, I have been speaking to my attorneys; a certain

4    individual has been distracted.  One time they accidentally

5    turned their microphone on and they were watching a golf

6    tutorial video while I was trying to discuss my case with them.

7         For the first year at least of my case I was pleading

8    to get a new attorney.  My mother, Risa, who is paying them,

9    refused to do anything about it.  We were locked down in the

10   jail during COVID.  I had pretty much no access to the outside.

11   We weren't allowed to go to the law library, we weren't allowed

12   to speak with any really counselors.  There was no one who would

13   do anything.

14        Every time I was able to get to a phone, I'm begging

15   and pleading to do something about this.  And my mother, Risa,

16   said that if I don't use a certain attorney, that she's not

17   going to pay for an attorney, that the Court is not going to

18   appoint someone, and it's too close to trial.  I'm not going to

19   get a continuance, nothing that can be done about this.

20        As I'm sure Your Honor has seen, everything has been

21   late, everything has been untimely.  There's mistakes, there's

22   ridiculous things that have happened.  I've desperately pleaded

23   for over a year, and then it was only after it became so obvious

24   to anyone that I wasn't allowed to change attorneys, but another

25   person was selected for me and brought onto the team who kind of

1    viewed themselves, I believe, as more of a consultant role at

2    the beginning.

3            One of my counsel said to me after they were finally

4    added to the case, after things had not been done properly for

5    the first year, that they don't really have time for my case,

6    that they weren't expecting this, that I need to hire more

7    lawyers.  An exact quote was, "I don't have time for this.  You

8    need to hire five more lawyers.  This is too much.  You know,

9    I'm busy with my other cases, I don't have time to handle this."

10           You know, it has been so frustrating.  I have been

11   pleading, you know, for them to look into certain research,

12   certain discovery.  There's tons of discovery that has not been

13   looked at, not been addressed.  I mean, as you saw yourself the

14   other day, my attorneys don't even know what BDSM stands for.

15           This case is integral to BDSM and the gay leather

16   community and gay leather culture.  If there's no understanding

17   of the background, of any of these dynamics, there's no way to

18   argue whether this was for the purpose of producing a video or

19   not, or whether this was part of our normal relationship, that

20   these were activities that we were engaging in whether or not

21   there is a video; that the video had no reason or purpose at all

22   to any of the dynamics exchanged between us, and that any of the

23   conduct would happen regardless.

24           If there's no understanding of the culture and the

25   context and the dynamic, how can I have a proper legal defense?

```
 1              THE COURT:  All right.  I understand, Mr. Sanders, that
 2    you're expressing, in a very articulate and interesting fashion,
 3    your dissatisfaction with your attorneys.  That's unfortunate.
 4    However, you or your family selected these attorneys, and you're
 5    paying them.  You are not an indigent defendant whose counsel
 6    are appointed by the Court.
 7              Now, you do have a number of lawyers, and some of them
 8    I'm personally familiar with their activities.  Ms. Ginsberg has
 9    a long record of very effective participation in federal
10    criminal trials here going back many years.
11              THE DEFENDANT:  Uh-huh.
12              THE COURT:  And it is unfortunate.  I know that you are
13    dissatisfied.  You've made that quite clear.  And, of course,
14    you may discharge as many of your attorneys - or all of them -
15    as you wish.
16              But one thing isn't going to happen.  I'm not going to
17    approve, Ms. Ginsberg, your withdrawal from the case.  You're
18    currently the earliest person.  I think there was one other
19    person before you.  But I'm not going to approve her withdrawal
20    because this case is scheduled for trial today.  Nearly 100
21    people have been summoned to appear for a jury selection this
22    morning, so we're going ahead.
23              Now, I understand that you are dissatisfied with some
24    of the Court's rulings, too.  I understand that.  I've been
25    doing this a long time, and every time I make a ruling, one side
```

7

1    is happy, the other side is unhappy.

2              THE DEFENDANT:  Of course.

3              THE COURT:  It's the dynamic.  But you should know that

4    every decision I've made, virtually every one that I've made, is

5    reviewable by an appellate court in the event there's an adverse

6    verdict against you.  And you should also know that I've made a

7    number of rulings -- you've mentioned how central BDSM is for

8    your case.  I've made a number of rulings about that expert, but

9    I have deferred that, for that expert, until the end.

10             Now, of course, you say it's central to your case.  I

11   don't know.  I don't have a view on that at this point in time.

12   And the rulings I've made apply to the experts that I have been

13   presented with.  They do not apply to the defendant.  Of course,

14   you have an absolute right to remain silent, and if you do

15   remain silent, I will tell the jury that they cannot even

16   discuss the fact that you have remained silent when they

17   consider their verdict, because your right to remain silent is

18   absolute under the Constitution.  You also have an absolute

19   right to testify before a jury, should you choose to do so.  And

20   I will consider any objections at that time anew with respect to

21   BDSM and the like.

22             Now, having said all that, you may discharge as many of

23   your attorneys as you wish.  I am not going to release

24   Ms. Ginsberg.  You may do as you wish otherwise, but we're going

25   to proceed with jury selection this morning.

1          So to the extent that you're requesting a continuance,

2    I'm going to deny that.  But what I will do, Mr. Sanders, is to

3    give you 15 minutes to discuss with your attorneys anything

4    further you want them to say or that you wish to say.  Is that

5    clear?

6          THE DEFENDANT:  Yes, it is.  And if I may just add one

7    last thing, just for the record.

8          THE COURT:  Yes, you may.

9          THE DEFENDANT:  You know, we were supposed to have

10   attorney visits that were scheduled at the jail over the past

11   several days leading up to trial, yesterday, the day before,

12   Friday, I believe Thursday as well.  They canceled every single

13   one of those visits except for one.  I only saw them briefly for

14   one of those visits.  I was not able to meet with them, discuss

15   the case, or anything of the like.

16         So I just kind of have to get that on the record, I

17   feel.

18         THE COURT:  All right.  You may be seated.

19   Ms. Ginsberg, you may respond briefly.

20         MS. GINSBERG:  Thank you, Your Honor.  Mr. Sanders is

21   inaccurate at least with respect to two of the four scheduled

22   visits.  The first visit was on Thursday night.  It was

23   approximately three and a half hours.  The second -- or three

24   hours.  The second visit was approximately three and a half

25   hours.  We did not visit on Sunday evening or last evening

1    because we were preparing for trial.

2              THE COURT:  All right.  Thank you, Ms. Ginsberg.

3              I'm going to recess, and, Ms. Ginsberg, I'm going to

4    give you and your co-counsel there an opportunity to have a

5    further discussion briefly with Mr. Sanders.  And then we will

6    proceed with the jury selection in accordance with the procedure

7    I have previously outlined to the parties.

8              Court stands in recess for 15 minutes.  If you

9    absolutely need longer Ms. Ginsberg, tell the court security

10   officer and I'll consider it.  But we have roughly 50 people

11   here and awaiting jury selection, and I don't want to keep them

12   waiting unnecessarily.

13             MS. GINSBERG:  Thank you, Your Honor.

14             THE COURT:  Court stands in recess.

15             (Recess taken at 9:21 a.m.)

16             THE COURT:  This is United States against Sanders and

17   it's 20-CR-143.  And I thought we were going to be prepared to

18   proceed, but we need to recess and bring the panel up here and

19   begin the jury selection process.

20             Now, I don't think there's anything further to be done

21   in the matter that you've raised, Ms. Ginsberg, am I correct?

22             MS. GINSBERG:  You are correct, Your Honor.  Thank you.

23             THE COURT:  All right.  Let's proceed.  Now, I'm going

24   to tell the panel when they get here that -- I'll give

25   Mr. Sanders' full name.  His middle is the same as my last name.

10

1     I'll tell him there's no relation.

2          I'm correct in that regard, am I not, Ms. Ginsberg?

3          MS. GINSBERG:  I'm sorry, Your Honor, I apologize.

4     Mr. Jeffress was...

5          THE COURT:  I said there's no relationship between me

6     and your client because we share a name, Ellis.

7          MS. GINSBERG:  No, there is not.

8          THE COURT:  All right.  Neither is there any relation

9     between me and two of the jurors whose name is Ellis.  Not a

10    bit.  Interestingly, though, I can't remember another time in

11    the past 34 years where I have had jurors with the last name of

12    Ellis.

13         All right.  Court stands in recess.  Let's bring the

14    jury in and have them seated here in the courtroom.  Court

15    stands in recess.  I will reconvene as soon as the deputy clerk

16    or the court security officer advises me that the jurors are

17    present in the courtroom.

18         (Recess taken at 9:38 a.m.)

19         THE COURT:  Good morning, ladies and gentlemen.  This

20    is the trial of United States against Sanders.  My name is

21    Tim Ellis, I will be the judge presiding over this case, and

22    I'll proceed to tell you a bit more in a minute.

23         But would counsel pick up your earphones, please.  This

24    is a means that I have of communicating with the defendant,

25    defendant's counsel, and plaintiff counsel about matters that

11

1      need not be before the jury.

2                (BENCH CONFERENCE ON THE RECORD.)

3                THE COURT:  I'm going to ask Ms. Randall, the deputy

4      clerk, to tell counsel - I think Ms. Ginsberg asked - to tell

5      counsel what was the situation with the three jurors who had

6      been excused.  Other jurors are absent for reasons I don't know.

7                COURTROOM CLERK:  Juror number 1, Amy Agarwal, she's

8      taking her mother to a cardiac procedure this morning.  Juror

9      number 7, Kimberly Brown, has a daughter that has a doctor's

10     appointment this morning.  And juror number 45, Patrick Tessier,

11     is a full-time student out of town, Harrisburg, Virginia.

12               THE COURT:  He shouldn't having called in the first

13     place.

14               Now, there are some other jurors absent and we don't

15     know the reason for those.  In addition, jurors who answered

16     "yes" to questions 2 through 5 on the questionnaire are not

17     here.  How many of those were there, Ms. Randall?

18               COURTROOM CLERK:  Judge, there were 12.

19               THE COURT:  12.  All right.  And if you need the gender

20     and race of those, we will be glad to furnish that to you as

21     well.

22               All right.  We're going to proceed now with the jury

23     selection process.

24               MS. GINSBERG:  Judge, I'm going to object to the

25     excusal of numbers, I think, 1 and 7.  Those are individuals who

1    could have made other arrangements.

2              THE COURT:  All right.  You note that, I take it.  I

3    don't think so, Ms. Ginsberg.  You have no idea.  I'm happy with

4    the reason for the exclusion and your objection is noted.  Let's

5    proceed.

6              (END BENCH CONFERENCE.)

7              THE COURT:  All right.  Ladies and gentlemen, as I

8    indicated, my name is Tim Ellis.  I will be the judge presiding

9    over this trial today, which is United States against Sanders.

10   And I will tell you a bit about this case in a moment.

11             But at the outset, I want to take this opportunity to

12   thank each of you for your service as jurors.  Nothing you do as

13   an American citizen is any more important than your service as

14   jurors.  Together with voting, it is one of the two cardinal

15   duties each of us has as an American in any case.  So we thank

16   you for your service.

17             Now, we're going to proceed in the jury selection,

18   which is what we're doing this morning, and it is in two phases.

19   First, I will ask you a series of questions -- first, I'm going

20   to have the roll called, and after the roll is called, then

21   we'll proceed.  The roll is called to enable the counsel to

22   match a name with a face.  So when your name is called, please

23   stand, say "present" or "here" so the court reporter can record

24   your presence, and when the next name is called, you may be

25   seated again.

1          After that, an oath will be administered to you to tell

2     the truth.  This is what's called the voir dire process.  You

3     may have heard that term.  I'm sure I'm mispronouncing it.  It's

4     a law French statement derived from the Latin which merely

5     means, literally, to speak the truth.

6          So you will be administered an oath to answer the

7     Court's questions truthfully, and I will ask you a series of

8     questions designed to enable the Court to determine whether any

9     of you may be disabled, by any rule of law, from serving as a

10    juror in this case.

11         Now we'll begin with the calling of the roll, and then

12    I will have the oath administered to you.  All right.  You may

13    proceed.

14         COURTROOM CLERK:  Ladies and gentlemen of the jury, as

15    I call your name, please stand, answer "present," and be seated

16    as the next name is called.

17         Juror number 2, Bruce Arthur.

18         PROSPECTIVE JUROR:  Present.

19         COURTROOM CLERK:  Juror number 3, James Bowman.

20         PROSPECTIVE JUROR:  Present.

21         COURTROOM CLERK:  Juror number 4, Wesley Braudaway.

22    Juror number 4, Wesley Braudaway.

23         THE COURT:  Show cause.

24         COURTROOM CLERK:  Juror number 5, Colette Brooks.

25         PROSPECTIVE JUROR:  Present.

```
 1              COURTROOM CLERK:  Juror number 6, Jason Brost.
 2              PROSPECTIVE JUROR:  Present.
 3              COURTROOM CLERK:  Juror number 8, Steven Cereghino.
 4              PROSPECTIVE JUROR:  Present.
 5              COURTROOM CLERK:  Jury number 9, Virginia
 6    Chavez-Mendoza.  Juror number 9, Virginia Chavez-Mendoza.
 7              THE COURT:  All right.  Show cause.
 8              COURTROOM CLERK:  Juror number 10, Jun Cho.
 9              PROSPECTIVE JUROR:  Present.
10              COURTROOM CLERK:  Juror number 11, Diane Corina.
11              PROSPECTIVE JUROR:  Present.
12              COURTROOM CLERK:  Juror number 12, Patricia Craig.
13              PROSPECTIVE JUROR:  Present.
14              COURTROOM CLERK:  Juror number 13, Marilyn Davis.
15              PROSPECTIVE JUROR:  Present.
16              COURTROOM CLERK:  Juror number 14, Jamal Dimashk.
17              PROSPECTIVE JUROR:  Present.
18              COURTROOM CLERK:  Juror number 15, Elizabeth Earls.
19              PROSPECTIVE JUROR:  Present.
20              COURTROOM CLERK:  Juror number 16, Kamel Elhassani.
21              PROSPECTIVE JUROR:  Present.
22              COURTROOM CLERK:  Juror number 17, Valerie Galbraith.
23              PROSPECTIVE JUROR:  Present.
24              COURTROOM CLERK:  Juror number 18, Bobby Ray Giles, Jr.
25              PROSPECTIVE JUROR:  Present.
```

1            COURTROOM CLERK:  Juror number 19, Erwin Go.

2            PROSPECTIVE JUROR:  Present.

3            COURTROOM CLERK:  Juror number 20, Erin Harris.

4            PROSPECTIVE JUROR:  Present.

5            COURTROOM CLERK:  Juror number 21, Samantha Hart.

6            PROSPECTIVE JUROR:  Present.

7            COURTROOM CLERK:  Juror number 22, Douglas Hazelgrove.

8            PROSPECTIVE JUROR:  Present.

9            COURTROOM CLERK:  Juror number 23, Robert Heiden.

10           PROSPECTIVE JUROR:  Here, ma'am.

11           COURTROOM CLERK:  Juror number 24, Fang Hu.  Juror

12   number 24, Fang Hu.

13           THE COURT:  All right.  Show cause.

14           COURTROOM CLERK:  Juror number 25, Scott Hunter.

15           PROSPECTIVE JUROR:  Present.

16           COURTROOM CLERK:  Juror number 26, Leonora Jordan.

17           PROSPECTIVE JUROR:  Present.

18           COURTROOM CLERK:  Juror number 27, Patrick Kerns.

19           PROSPECTIVE JUROR:  Present.

20           COURTROOM CLERK:  Juror number 28, Nathaniel Lee.

21           PROSPECTIVE JUROR:  Present.

22           COURTROOM CLERK:  Juror number 29, Brian Lieberman.

23           PROSPECTIVE JUROR:  Present.

24           COURTROOM CLERK:  Juror number 30, Nebojsa Malic.

25           PROSPECTIVE JUROR:  Present.

1            COURTROOM CLERK:  Juror number 31, Michael Mason.

2            PROSPECTIVE JUROR:  Present.

3            COURTROOM CLERK:  Juror number 32, Michael McAllister.

4            PROSPECTIVE JUROR:  Present.

5            COURTROOM CLERK:  Juror number 33, Lucinda McLaughlin.

6            PROSPECTIVE JUROR:  Present.

7            COURTROOM CLERK:  Juror number 34, Fonda Newcomb.

8            PROSPECTIVE JUROR:  Present.

9            COURTROOM CLERK:  Juror number 35, Alexander Nykorchuk.

10           PROSPECTIVE JUROR:  Present.

11           COURTROOM CLERK:  Juror number 36, Elizabeth Pennisi.

12           PROSPECTIVE JUROR:  Present.

13           COURTROOM CLERK:  Juror number 37, Michael Quinlan.

14           PROSPECTIVE JUROR:  Present.

15           COURTROOM CLERK:  Juror number 38, Kristin Richter.

16           PROSPECTIVE JUROR:  Present.

17           COURTROOM CLERK:  Juror number 39, Cynthia Riggs.

18           PROSPECTIVE JUROR:  Present.

19           COURTROOM CLERK:  Juror number 40, Gerald Roma, III.

20     Juror number 40, Gerald Roma, III.

21           THE COURT:  Show cause.

22           COURTROOM CLERK:  Juror number 41, Kelly Leigh Rupard.

23           PROSPECTIVE JUROR:  Present.

24           COURTROOM CLERK:  Juror number 42, Elizabeth Sheriff.

25           PROSPECTIVE JUROR:  Present.

1          COURTROOM CLERK:  Juror number 43, Daniel Stapor.

2          PROSPECTIVE JUROR:  Present.

3          COURTROOM CLERK:  Juror number 44, Weiwei Stiltner.

4          PROSPECTIVE JUROR:  Present.

5          COURTROOM CLERK:  Juror number 46, Selma Totimeh.

6          PROSPECTIVE JUROR:  Present.

7          COURTROOM CLERK:  Juror number 47, James Vollmers.

8   Juror number 47, James Vollmers.

9          THE COURT:  Show cause.

10         COURTROOM CLERK:  Juror number 48, Nazra Waheed.  Juror

11  number 48, Nazra Waheed.

12         THE COURT:  Show cause.

13         COURTROOM CLERK:  Is there any juror whose name I have

14  not called?

15         THE COURT:  The record will reflect there were none.

16  You may proceed to administer the oath to the panel.

17         COURTROOM CLERK:  Ladies and gentlemen of the jury,

18  will you please stand, raise your right hands, and respond after

19  the oath by stating "I shall."

20         Do you swear that you shall true and perfect answer

21  make to such questions as may be propounded to you by the Court

22  so help you god?

23         PROSPECTIVE JUROR PANEL:  (Collectively) I shall.

24         COURTROOM CLERK:  Thank you.  Please be seated.

25         THE COURT:  All right.  Ladies and gentlemen, I'm now

1    going to tell you what the charges are in this case, and I'm

2    going to read to you excerpts from the indictment.  But I hasten

3    to instruct you that the indictment itself is not proof or

4    evidence of guilt of any kind whatsoever.  It's merely the

5    Government's formal means of accusing a defendant of a crime.

6    And I also hasten to add that the defendant has pled not guilty

7    to the charges in the indictment, and therefore must be presumed

8    by you to be innocent of those charges unless and until the jury

9    find otherwise.

10        Let me inquire, Mr. Schlessinger, are there still --

11   there are 12.  Is that correct?

12        MR. SCHLESSINGER:  12 counts in the indictment,

13   Your Honor, yes.

14        THE COURT:  All right, ladies and gentlemen.  The first

15   Counts, 1 through 5, the first five charges are as follows:  In

16   separate instances, on or about the dates set forth below - and

17   there are five dates that are set forth - within the

18   Eastern District of Virginia, Defendant Zackary Ellis Sanders

19   attempted to and did employ, use, persuade, induce, entice, and

20   coerce a minor to engage in sexually explicit conduct for the

21   purpose of producing a visual depiction of such conduct, knowing

22   and having reason to know that such visual depiction would be

23   transported or transmitted using any means and facility of

24   interstate and foreign commerce, and in and affecting commerce

25   and foreign commerce and mail, and which visual depiction was

1    actually transported and transmitted using any means and

2    facility of interstate and foreign commerce, and in and

3    affecting interstate and foreign commerce and mail, and which

4    visual depiction was produced using materials that had been

5    shipped, transported, and affecting interstate and foreign

6    commerce by any means, including by computer; to wit, digital

7    visual depictions of different minors engaged in sexually

8    explicit conduct, on those five dates.

9           All right.  The next group of charges, again five of

10   them -- six of them.  Six of them are as follows:  In separate

11   instances, on or about the dates set forth, within the

12   Eastern District of Virginia, the defendant, Zackary Ellis

13   Sanders, attempted to and did receive a visual depiction using

14   any means and facility of interstate and foreign commerce, and

15   that had been mailed and had been shipped and transported in and

16   affecting interstate and foreign commerce, and which materials,

17   which had been mailed and so shipped and transported by any

18   means, including by computer, and the production of such visual

19   depiction involved the use of a minor engaging in sexually

20   explicit conduct, and the visual depiction was of such conduct;

21   to wit, digital visual depictions of different minors engaged in

22   sexually explicit conduct on the various dates.  And there are

23   six different dates alleged in the indictment.

24          So that covers the first 11 counts or charges.

25          The 12th count, 12th and final count or charge, is:  In

1    or about February 2020, within the Eastern District of Virginia,

2    that the defendant, Zackary Ellis Sanders, knowingly possessed

3    at least one matter which contained a visual depiction that had

4    been mailed or had been shipped or transported using any means

5    or facility of interstate or foreign commerce, or in or

6    affecting interstate or foreign commerce, or which was produced

7    using materials which had been mailed or so shipped or

8    transported, by any means, including by computer, and the

9    production of such depiction involved the use of a minor

10   engaging in sexually explicit conduct, and such visual depiction

11   was of such conduct; to wit, digital visual depictions of

12   minors, including prepubescent minors and minors who had not

13   attained the age of 12 years of age, engaged in sexually

14   explicit conduct stored on a Sandisk Cruzer Edge thumb drive, an

15   HP Elite Book 755 laptop, a Lexar thumb drive, an HP laptop, and

16   an IP [sic] laptop, all in violation of Section 2252(a)(4) and

17   (b)(2) of Title 18 of the U.S. Code.

18          So, ladies and gentlemen, those are the charges in the

19   indictment.  And, as I've told you, the indictment from which

20   I've read the charges is not itself proof or evidence of guilt

21   of any kind whatsoever.  It's merely the formal means the

22   government has of accusing a defendant of a crime.  And the

23   defendant has pled not guilty to all of those charges, and

24   therefore must be presumed to be innocent of all of those

25   charges unless and until the jury find otherwise.

1            All right.  That tells you a bit about what this case

2    is about.  Now, I'm going to ask you a series of questions and I

3    will do so in two phases.  In the first phase, if you have an

4    affirmative answer to any question that I ask, raise your hands

5    after the question is asked and the court security officer will

6    take a microphone to you and you will answer the question

7    standing from where you are currently sitting.  That's in

8    Phase One.

9            Now, in Phase Two of the voir dire I will ask you

10   questions and they'll be in a series of three.  And if you have

11   an affirmative answer to any of the questions that I ask, then I

12   will have you come forward and sit in the witness box, but

13   you'll be behind plastic, as I am here.  The reason I'm not

14   wearing a mask is I'm 50 feet from everybody and I'm behind this

15   Plexiglass screen.  You'll be behind the Plexiglass screen, and

16   you will have the ability to use earphones and a microphone to

17   give your answers to the questions in the relative privacy of

18   bench and counsel.

19           In other words, what you say in response to the

20   questions that I will ask will be heard only by the lawyers and

21   the defendant and by me, but not by others in the courtroom.

22   And that's done to preserve your confidentiality in any answers

23   that you may be required to give, and also to prevent any

24   knowledge that you have concerning this case or anything else

25   from affecting or infecting other members of the panel.

1         Let me again hasten to tell you, if I didn't before,

2    the defendant, Mr. Sanders', middle name is the same as my last

3    name but we're not related in any way.  There will also be, I

4    believe, some members of the jury panel - maybe not in the

5    morning session but in the afternoon session - with the last

6    name of Ellis.  And so far as I'm aware, there is no relation

7    whatever between me and those persons merely because we may

8    share a last name.  I will point out that I've been doing this

9    for 34 years now, and this is the first time in 34 years that

10   any members of the panel have come up with a last name like

11   mine.  It isn't the first time that other persons in the

12   courtroom, like counsel and parties, have had the last name, but

13   it's the first time the jurors have.

14        So, now, I've said to you that we'll proceed in two

15   phases, and we're going to do that this morning.  I expect it to

16   take about three hours.  And then I will do the same thing in

17   the afternoon for a similarly large group of people who will

18   also be prospective jurors in this case.  But we can't do it all

19   at the same time as we could in pre-pandemic times because of

20   the need to maintain social distancing.

21        And let me take this opportunity to tell you that the

22   court is very sensitive to the need to safeguard the health and

23   safety of all prospective jurors.  That's why we have you

24   wearing masks and that's why we have the social distancing.  And

25   we will continue to observe that.

23

```
 1              All right.  To begin with, Mr. Schlessinger, would you
 2    stand, introduce yourself and your co-counsel to the panel, as
 3    well as your case agent.
 4              MR. SCHLESSINGER:  Yes, Your Honor.  Ladies and
 5    gentlemen, good morning.  My name is Seth Schlessinger, and I
 6    have with me here at counsel table my co-counsel, Bill Clayman
 7    and Jay Prabhu.  We are prosecutors with the Department of
 8    Justice.  We represent the United States in this matter.  And
 9    we're also joined here by case agent FBI Special
10    Agent Christopher Ford, as well as Loraine McNeill, who is a
11    paralegal with our office.
12              Once again, good morning.
13              THE COURT:  All right.  Do you or any member of your
14    family, so far as you know, know any of these individuals, or
15    have you had any business or social dealings of any kind
16    whatsoever with any of them?  The record will reflect there are
17    no hands.
18              Now, Mr. Schlessinger and his co-counsel are members of
19    the United States Attorney's Office for the Eastern District of
20    Virginia.  So let me ask whether you or any member of your
21    family, so far as you know, know any of the employees or
22    attorneys in that office, or have you had any business or social
23    dealings of any kind whatsoever with any of them.  If so, raise
24    your hands.  There being no hands raised, I will continue.
25              Agent Ford is employed by the Federal Bureau of
```

1    Investigation.  I want to know whether you or any member of your

2    family, so far as you know, know any of the employees or agents

3    of the FBI, or whether you've had any business or social

4    dealings of any kind whatsoever with any of them.  Once again,

5    no hands are raised.

6          Did I see a hand?  Yes, I did.  All right.  May I have

7    your name, please?

8          PROSPECTIVE JUROR:  Jason Brost.

9          THE COURT:  You're an attorney?

10         PROSPECTIVE JUROR:  I'm an attorney.

11         THE COURT:  With what firm?

12         PROSPECTIVE JUROR:  Combs & Taylor.

13         THE COURT:  And what is the main focus of your law

14   practice?

15         PROSPECTIVE JUROR:  It's a general practice supporting

16   small businesses, commercial litigation, and some transaction

17   support.

18         THE COURT:  All right.  Apart from what you had in law

19   school and criminal law, have you had any special training in

20   criminal law?

21         PROSPECTIVE JUROR:  No, no special training.  No.

22         THE COURT:  Do you believe there's anything in your

23   legal practice or education that would prevent or hinder you in

24   any way from rendering a fair and impartial verdict in this

25   case?

1          PROSPECTIVE JUROR:  No.

2          THE COURT:  Now, who do you know in the FBI?

3          PROSPECTIVE JUROR:  Actually, the dad of another child

4   in my child's skating class is an FBI agent.  I actually don't

5   even remember his first name.  But I just saw him yesterday at

6   skating.  That's really the extent of it.

7          THE COURT:  I'm not sure I understood what you said.

8   You're the dad of another -- oh, I see, you're -- "the dad of

9   another child in my child's skating class is an FBI agent."  Is

10  that right?

11         PROSPECTIVE JUROR:  Yes.  So I see him every couple of

12  weeks.

13         THE COURT:  Do you socialize with him other than the

14  skating class?

15         PROSPECTIVE JUROR:  No.

16         THE COURT:  Do you feel that knowing another FBI agent

17  in the context of your child's skating class would prevent or

18  hinder you in any way from rendering a fair and an impartial

19  verdict in this case based solely on the evidence and the

20  Court's instructions on the law?

21         PROSPECTIVE JUROR:  No, Your Honor.

22         THE COURT:  Thank you.  You may be seated.  Anyone

23  else?

24         PROSPECTIVE JUROR:  James Bowman.

25         THE COURT:  Yes, Mr. Bowman.  And who is it that you

1    know in the FBI?

2           PROSPECTIVE JUROR:  Our neighbor, Forrest Brannon (ph),

3    is in the FBI; and then an old high school buddy,

4    Bill Kirkonel (ph).  I believe he is since retired.  He lives in

5    Savannah.

6           THE COURT:  The first one you mentioned is a neighbor?

7           PROSPECTIVE JUROR:  Yes, sir.

8           THE COURT:  And do you know what he does for the FBI?

9           PROSPECTIVE JUROR:  As far as I know, he has done SWAT

10   stuff.  He works in investigations.  I don't know specifics

11   because he doesn't talk too much about it.  As a neighbor, we do

12   socialize with them fairly frequently.

13          THE COURT:  Do you feel that having a neighbor you

14   socialize with who is employed with the FBI as you've described

15   would prevent or hinder you in any way from rendering a fair and

16   an impartial verdict in this case based only on the evidence and

17   the Court's instructions on the law?

18          PROSPECTIVE JUROR:  No, Your Honor.

19          THE COURT:  Now, you also mentioned that you had, what

20   was it?

21          PROSPECTIVE JUROR:  A high school friend who is FBI.

22   He's since retired.  We haven't done anything socially literally

23   in decades, and I don't feel that would affect me in any way

24   either.

25          THE COURT:  All right.  Thank you, Mr. Bowman, you may

1    be seated.

2              Anyone else?  Was there a hand over here?  No.  All

3    right.  The record will reflect there are no other hands.

4              Now, Ms. Ginsberg, would you stand and introduce your

5    client and your co-counsel to the panel, please?

6              MS. GINSBERG:  Good morning.  My name is Nina Ginsberg.

7    I'm a lawyer with the law firm DiMuro Ginsberg here in

8    Alexandria.  This is Mr. Sanders, Zack Sanders.

9              THE COURT:  And also your co-counsel, if you would,

10   please.

11             MS. GINSBERG:  To my right is Lou Sirkin of the law

12   firm of Santen & Hughes in Cincinnati, Ohio.  To my left is

13   John Jeffress and Jade Chong-Smith of the law firm of

14   KaiserDillon in the District of Columbia, and our paralegal,

15   Leanna Feinleib, also of KaiserDillon.

16             THE COURT:  Ladies and gentlemen, do any or any member

17   of your family, so far as you know, know any of these

18   individuals, or have you had any business or social dealings

19   with any of them?  The record will reflect no hands.

20             You also heard that the attorneys are members of firms

21   in Ohio and in the District of Columbia.  Do you or any member

22   of your family, so far as you know, know any of the employees or

23   the attorneys in those firms, or have you had any business or

24   social dealings of any kind whatsoever with any of them?  Once

25   again, the record will reflect there are no hands raised.

1          Now, I want to know, ladies and gentlemen, whether any
2    of you have served in the past on any grand juries or trial
3    juries in either state, federal, or local courts.  If you would
4    raise your hands, please.  There are a few hands raised.  All
5    right.  When a microphone is brought to you, let me have you
6    first give me your name, please.
7          PROSPECTIVE JUROR:  My name is Diane Corina.
8          THE COURT:  What juries have you served on in the past?
9          PROSPECTIVE JUROR:  It was Arlington County about
10   20 years ago.
11         THE COURT:  And what was the nature of the case on
12   which you served?
13         PROSPECTIVE JUROR:  It was capital rape and murder.
14         THE COURT:  And was the jury -- don't tell me the
15   result, but was the jury on which you served able to reach a
16   unanimous verdict?
17         PROSPECTIVE JUROR:  Yes.
18         THE COURT:  Any other jury service, Ms. Corina?
19         PROSPECTIVE JUROR:  No.
20         THE COURT:  Thank you, Ms. Corina, you may be seated.
21   Next.
22         PROSPECTIVE JUROR:  My name is Colette Brooks.  I
23   served with the Stafford County on a court case about three or
24   four years ago.  I was picked for the jury and we did reach a
25   unanimous decision.

29

1           THE COURT:  All right.  And what was the nature of the

2     case?

3           PROSPECTIVE JUROR:  It was a car accident case.

4           THE COURT:  All right.  Any other jury service,

5     Ms. Brooks?

6           PROSPECTIVE JUROR:  No, sir.

7           THE COURT:  Thank you.  You may be seated.  Next.

8           PROSPECTIVE JUROR:  My name is Jamal Dimashk, and I

9     served, I believe it was in Arlington County, as a juror many

10    years ago.  I can't recall.  The case was assaulting a

11    police officer, and we did come up with a verdict.

12          THE COURT:  All right.  Thank you, Mr. Dimashk.  Any

13    other jury service, sir?

14          PROSPECTIVE JUROR:  No, sir.

15          THE COURT:  Next.

16          PROSPECTIVE JUROR:  Your Honor, Nebojsa Malic.  I

17    served on an Arlington County jury briefly about 10 years ago.

18    I ended up getting stricken during voir dire after answering a

19    question about trustworthiness of police.

20          THE COURT:  Your name is Dimashk?

21          PROSPECTIVE JUROR:  Malic, M-A-L-I-C.

22          THE COURT:  So you didn't serve on that jury?

23          PROSPECTIVE JUROR:  I ended up being impanelled and

24    then stricken.

25          THE COURT:  All right.  Thank you, sir.  You may be

1    seated.  I assume no other jury service?

2            PROSPECTIVE JUROR:  No, sir.

3            THE COURT:  Next?

4            PROSPECTIVE JUROR:  Nathaniel Lee.  I served a few

5    years ago, I don't remember when it was, state or whatever.  The

6    case was for embezzlement.

7            THE COURT:  All right.  Was the jury on which you

8    served able to reach a unanimous verdict?

9            PROSPECTIVE JUROR:  Yes.

10           THE COURT:  Any other jury service?

11           PROSPECTIVE JUROR:  No.

12           THE COURT:  Thank you.  You may be seated.  Next.

13           PROSPECTIVE JUROR:  My name is Doug Hazelgrove and I

14   served in Fairfax County probably six or seven years ago.  And

15   it was a car accident injury case, and we reached a unanimous

16   decision.

17           THE COURT:  Any other jury service, Mr. Hazelgrove?

18           PROSPECTIVE JUROR:  No, sir.

19           THE COURT:  Thank you, sir.  You may be seated.

20           PROSPECTIVE JUROR:  Good morning, sir.  My name is

21   Robert Heiden, and I'm not sure if this is exactly what you're

22   looking for, but I served on a court martial case.  I know you

23   said state, federal, or local.  I wanted to disclose that

24   anyway.

25           THE COURT:  Yes, that's perfectly appropriate.  I would

1    have gotten it by other means.  But I take it you served on a

2    special courts martial panel?

3           PROSPECTIVE JUROR:  Yes, sir.

4           THE COURT:  And were you a commissioned officer?

5           PROSPECTIVE JUROR:  Yes.

6           THE COURT:  What was your rank?

7           PROSPECTIVE JUROR:  At the time, lieutenant.  First or

8    second lieutenant, I can't remember.

9           THE COURT:  All right.  Well, I remember going from

10   ensign to Lieutenant JG, and that was a big step for me back

11   then.

12          PROSPECTIVE JUROR:  Yeah, still is.  Good pay raise,

13   yeah.

14          THE COURT:  May I have your name again?

15          PROSPECTIVE JUROR:  Yes, sir.  It's Heiden, first name

16   Robert.

17          THE COURT:  What was the nature of the court martial on

18   which you served?

19          PROSPECTIVE JUROR:  It was a fraud case after

20   Hurricane Katrina.

21          THE COURT:  And was the court martial on which you sat

22   able to reach a unanimous conclusion?

23          PROSPECTIVE JUROR:  Yes, sir.

24          THE COURT:  Any other jury service, Mr. Heiden?

25          PROSPECTIVE JUROR:  No, sir.

32

```
 1                THE COURT:  Thank you, sir.  You may be seated.

 2                Next.  All right.  The record will reflect no other

 3    hands.

 4                Have all of you had an opportunity to tell me about any

 5    past jury service?  If any has not, please raise your hand.  No

 6    hands are raised, so we will continue.

 7                The next question I have for you is, I want you to tell

 8    me whether you are any member of your immediate family is

 9    employed by any law enforcement agency.  If your answer to that

10    is yes, please raise your hands.

11                All right.  I see a few hands.  Would you stand and

12    give me your name, please.

13                PROSPECTIVE JUROR:  Robert Heiden again.

14                THE COURT:  Yes, Mr. Heiden.

15                PROSPECTIVE JUROR:  My cousin is a sheriff in

16    Pennsylvania.

17                THE COURT:  How long has he served as a sheriff in

18    Pennsylvania?

19                PROSPECTIVE JUROR:  10 years.  Long time.

20                THE COURT:  Do you feel that having -- is it a cousin,

21    you say?

22                PROSPECTIVE JUROR:  Yes, sir.

23                THE COURT:  Having a cousin who served as a sheriff in

24    Pennsylvania, would that prevent or hinder you in any way from

25    rendering a fair and an impartial verdict in this case based
```

1    only on the evidence and the Court's instructions on the law?

2         PROSPECTIVE JUROR:  No, sir.

3         THE COURT:  Any other members of your family in law

4    enforcement?

5         PROSPECTIVE JUROR:  No, sir.

6         THE COURT:  Thank you.  You may be seated.  Next.

7         PROSPECTIVE JUROR:  Erin Harris.

8         THE COURT:  Yes, Ms. Harris.

9         PROSPECTIVE JUROR:  My aunt is employed by the

10   Virginia State Police.

11        THE COURT:  And what does your aunt do for the Virginia

12   State Police?

13        PROSPECTIVE JUROR:  She does licensing enforcement.

14        THE COURT:  Is she a law enforcement agent?

15        PROSPECTIVE JUROR:  Yes.

16        THE COURT:  She goes out and arrests people and the

17   like?

18        PROSPECTIVE JUROR:  No.

19        THE COURT:  What does she do?

20        PROSPECTIVE JUROR:  She manages her department.

21        THE COURT:  Is she a uniformed officer?

22        PROSPECTIVE JUROR:  No.

23        THE COURT:  Is she a clerical employee?

24        PROSPECTIVE JUROR:  Yes.

25        THE COURT:  Do you feel that having an aunt so employed

1    would prevent or hinder you in any way from rendering a fair and

2    an impartial verdict in this case based only on the evidence and

3    the Court's instructions on the law?

4              PROSPECTIVE JUROR:  No.

5              THE COURT:  Do you have any other relatives --

6              PROSPECTIVE JUROR:  My uncle is a state trooper.

7              THE COURT:  And how long has he been a state trooper?

8              PROSPECTIVE JUROR:  Over a decade.

9              THE COURT:  And is that a Virginia State Trooper?

10             PROSPECTIVE JUROR:  Virginia state.

11             THE COURT:  And where is he located?

12             PROSPECTIVE JUROR:  Manassas.

13             THE COURT:  Do you feel that having an uncle so

14   employed would prevent or hinder you in any way from rendering a

15   fair and an impartial verdict based only on the evidence and the

16   Court's instructions on the law?

17             PROSPECTIVE JUROR:  No.

18             THE COURT:  Thank you.  You may be seated.

19             Next.  There's somebody here in the front row, but

20   you'll get them on the way around.

21             Yes, sir.  Your name?

22             PROSPECTIVE JUROR:  Your Honor, Nebojsa Malic again.

23   My wife works for the U.S. Army Criminal Investigation Division

24   in the name verification team, processing records, seeing all

25   sorts of records.  And before that she served for about a decade

1    as a Transportation Security Administration agent.  So you said

2    law enforcement...

3            THE COURT:  But does your wife currently have any

4    law enforcement responsibilities?

5            PROSPECTIVE JUROR:  She does not wear a badge.  She

6    does not have a gun and doesn't go around arresting people, no.

7            THE COURT:  All right.  Do you feel that having a wife

8    employed as you've so described would prevent or hinder you in

9    any way from rendering a fair and an impartial verdict in this

10   case based only on the evidence and the Court's instructions on

11   the law?

12           PROSPECTIVE JUROR:  I don't think so.

13           THE COURT:  Well, do you have any doubt?

14           PROSPECTIVE JUROR:  A little bit.

15           THE COURT:  Why?

16           PROSPECTIVE JUROR:  Just the facts of cases that she's

17   discussed with me over the years, there's some troublesome stuff

18   and I'm not --

19           THE COURT:  Do you realize those cases have nothing

20   whatever to do with this case?

21           PROSPECTIVE JUROR:  I do realize, yes.

22           THE COURT:  Can you put whatever she has told you about

23   other cases to one side and judge this case fairly and

24   impartially based only on the evidence presented and the Court's

25   instructions on the law?

```
 1              PROSPECTIVE JUROR:  I think so.

 2              THE COURT:  You think so.  I need to be clearer.  Can

 3      you do so?

 4              PROSPECTIVE JUROR:  Yes.

 5              THE COURT:  What is the other person you described?

 6              PROSPECTIVE JUROR:  My wife has worked with the Army

 7      CID and TSA.  Thank you, Your Honor.

 8              THE COURT:  Thank you.  You may be seated.

 9              Yes, sir?

10              PROSPECTIVE JUROR:  My name is Michael McAllister.

11              THE COURT:  Yes, Mr. McAllister.

12              PROSPECTIVE JUROR:  My daughter is currently a

13      detective in Prince William County.

14              THE COURT:  Your daughter is a detective with

15      Prince William County?

16              PROSPECTIVE JUROR:  Yes, sir.

17              THE COURT:  And does she work in any specific area?

18              PROSPECTIVE JUROR:  I don't know.  I'm not 100 percent

19      sure if she's directly related to this case, but I did speak

20      with her this morning and she was on her way here, so I assume

21      that this is the case she's working.  She's also a member of the

22      FBI task force.

23              THE COURT:  Why do you assume it has anything to do

24      with this case?

25              PROSPECTIVE JUROR:  I'm not 100 percent sure that it
```

1    does have anything to do with this case.

2         THE COURT:  Why do you have any idea that it might have

3    something to do with this case?

4         PROSPECTIVE JUROR:  I'm just relating to you that she

5    is employed by Prince William County police department.

6         THE COURT:  All right.  And?

7         PROSPECTIVE JUROR:  And that's all, sir.

8         THE COURT:  Well, are you drawing an inference that

9    because she is employed by Prince William, that somehow has

10   something to do with this case?

11        PROSPECTIVE JUROR:  As I said, I'm not 100 percent sure

12   that she's directly related to the arrest of the gentleman.

13        THE COURT:  The arrest of whom?

14        PROSPECTIVE JUROR:  The defendant.

15        THE COURT:  I want to know why you think there's any

16   possibility for that.

17        PROSPECTIVE JUROR:  Well, she called me this morning

18   when I was on my way here and she said she was coming here.

19        THE COURT:  Did you ask her why?

20        PROSPECTIVE JUROR:  No, I did not.

21        THE COURT:  Did she tell you why?

22        PROSPECTIVE JUROR:  She just said that she was coming

23   to talk to the U.S. Attorney.

24        THE COURT:  And what is your -- it's your daughter.  Is

25   that right?

1           PROSPECTIVE JUROR:  Yes, sir.

2           THE COURT:  And what is her name?

3           PROSPECTIVE JUROR:  Michelle McAllister.

4           THE COURT:  Put on the earphones.

5           (BENCH CONFERENCE ON THE RECORD.)

6           THE COURT:  Mr. Schlessinger, can you hear me?

7           MR. SCHLESSINGER:  Yes, Your Honor, I can.

8           THE COURT:  Now, do you know who his daughter is and

9   why she said she was coming here?

10          MR. SCHLESSINGER:  No, I don't know who his daughter

11  is.  I don't think she's connected to this case.

12          THE COURT:  All right.  Do you know of any reason,

13  Ms. Ginsberg, why he might be -- or his daughter might be

14  connected to this case?

15          MS. GINSBERG:  I don't know specifically, but he said

16  that she was on an FBI task force and she was coming to this

17  courthouse.

18          THE COURT:  Well, there are other matters going on in

19  this courthouse.  All right.  I'll ask him about that.

20          (END BENCH CONFERENCE.)

21          THE COURT:  Did you say your daughter works on an FBI

22  task force?

23          PROSPECTIVE JUROR:  Yes, sir, I said that.

24          THE COURT:  What task force?

25          PROSPECTIVE JUROR:  Currently it's the gang force.

1          THE COURT:  It's gang?

2          PROSPECTIVE JUROR:  Yes.

3          THE COURT:  This case, as you know, has nothing to do

4    with gangs.

5          PROSPECTIVE JUROR:  Prior to that she was assigned to

6    crimes against children.

7          THE COURT:  All right.  Let me be very clear,

8    Mr. McAllister.  Did your daughter tell you she was coming for

9    this case?

10         PROSPECTIVE JUROR:  No, sir.

11         THE COURT:  Is there any reason, other than the fact

12   that she said she was coming to this court, that causes you to

13   think that she might have something to do with this case?

14         PROSPECTIVE JUROR:  No, sir.

15         THE COURT:  Do you feel that having a daughter so

16   employed, Mr. McAllister, would prevent or hinder you in any way

17   from rendering a fair and an impartial verdict in this case

18   based only on the evidence and the Court's instructions on the

19   law?

20         PROSPECTIVE JUROR:  No, sir.

21         THE COURT:  Mr. McAllister, what is your current

22   occupation?

23         PROSPECTIVE JUROR:  I'm retired law enforcement, sir.

24         THE COURT:  Retired from what, sir?

25         PROSPECTIVE JUROR:  United States Secret Service.

40

```
 1              THE COURT:  And were you a special agent?

 2              PROSPECTIVE JUROR:  No, uniform division.

 3              THE COURT:  And how long were you in the uniform

 4    division of the Secret Service?

 5              PROSPECTIVE JUROR:  27 years.

 6              THE COURT:  What did you do for the Secret Service?

 7              PROSPECTIVE JUROR:  Physical security, explosives

 8    detection.

 9              THE COURT:  All right.  Do you feel that your

10    employment would prevent -- your past employment would prevent

11    or hinder you in any way from rendering a fair and an impartial

12    verdict in this case based only on the evidence presented and

13    the Court's instructions on the law?

14              PROSPECTIVE JUROR:  No, sir.

15              THE COURT:  All right.  You may be seated,

16    Mr. McAllister.

17              Next.

18              PROSPECTIVE JUROR:  Hello, my name is Cynthia Riggs.

19              THE COURT:  All right.  Just a moment.  Yes, Ms. Riggs.

20              PROSPECTIVE JUROR:  My brother is in the sheriff's

21    department in Leesburg, Virginia.  He works in the courthouse.

22              THE COURT:  Your brother works in this courthouse?

23              PROSPECTIVE JUROR:  In the courthouse in

24    Leesburg, Virginia.

25              THE COURT:  Oh, but not in this courthouse?
```

```
1                PROSPECTIVE JUROR:  Right.

2                THE COURT:  Because he's a state employee.  Is that

3    correct?

4                PROSPECTIVE JUROR:  Yes.

5                THE COURT:  And what does your brother do for the

6    sheriff's department in Leesburg?

7                PROSPECTIVE JUROR:  I'm not exactly sure.  I know he's

8    a uniformed deputy within the courthouse, whatever is necessary.

9                THE COURT:  Do you feel that having a brother so

10   employed would prevent or hinder you in any way from rendering a

11   fair and an impartial verdict in this case based only on the

12   evidence presented and the Court's instructions on the law?

13               PROSPECTIVE JUROR:  No.  No, I don't.

14               THE COURT:  Thank you, Ms. Riggs.  You may be seated.

15   Next.

16               PROSPECTIVE JUROR:  My name is Doug Hazelgrove, and my

17   brother-in-law works as a detective for the City of Fairfax.

18               THE COURT:  Mr. Hazelgrove, what does your brother do

19   for the city?

20               PROSPECTIVE JUROR:  Brother-in-law.  He's a detective

21   for Fairfax City.

22               THE COURT:  And how long has he been employed as a

23   detective?

24               PROSPECTIVE JUROR:  Probably 20-plus years.

25               THE COURT:  And do you feel that having a brother so
```

1    employed would prevent or hinder you in any way from rendering a

2    fair and am impartial verdict in this case based only on the

3    evidence and the Court's instructions on the law?

4              PROSPECTIVE JUROR:  No, sir.

5              THE COURT:  Does your brother-in-law -- is it

6    brother-in-law?

7              PROSPECTIVE JUROR:  Yes, sir.

8              THE COURT:  Does your brother-in-law focus on any

9    specific area of the law, criminal law?

10             PROSPECTIVE JUROR:  He does computer forensics.

11             THE COURT:  Computer forensics.  Is he an agent with

12   law enforcement arresting powers, or is he a computer IT person?

13             PROSPECTIVE JUROR:  He does go to crime scenes and

14   stuff, yes.

15             THE COURT:  Yes, I understand he may go to crime

16   scenes, but I want to know whether he is a law enforcement

17   person.  Does he arrest people and investigate, or he is an IT

18   person?

19             PROSPECTIVE JUROR:  Oh, no, he does arrest people and

20   investigate, yes.  Sorry.

21             THE COURT:  Do you feel that having a brother-in-law so

22   employed would prevent or hinder you in any way from rendering a

23   fair and an impartial verdict in this case based only on the

24   evidence and the Court's instructions on the law?

25             PROSPECTIVE JUROR:  No, sir.

43

```
 1                 THE COURT:  Thank you, Mr. Hazelgrove.  You may be
 2       seated.
 3                 Next.
 4                 PROSPECTIVE JUROR:  My name is Lucinda McLaughlin.
 5                 THE COURT:  Yes.  What persons do you know in
 6       law enforcement?
 7                 PROSPECTIVE JUROR:  Myself.  I work for Department of
 8       Justice Interpol.
 9                 THE COURT:  Department of Justice Interpol is not an
10       American operation.  You don't work for Interpol, do you?
11                 PROSPECTIVE JUROR:  Yes, I do.  In the United States,
12       there's one office for Interpol which is international, and it's
13       under the Department of Justice.
14                 THE COURT:  What do you do in that office for Interpol?
15                 PROSPECTIVE JUROR:  My main focus would be
16       Black Notices and identify dead bodies.  But I also work with
17       prison escapees, or investigations into prison escapees and
18       missing persons.
19                 THE COURT:  Do you have law enforcement duties to go
20       out and arrest people?
21                 PROSPECTIVE JUROR:  No, we are not an arresting agency.
22                 THE COURT:  And I take it that's because you work
23       really for Interpol?
24                 PROSPECTIVE JUROR:  I work for Interpol, yes.  I'm an
25       intelligence analyst.
```

```
 1              THE COURT:  All right.  Do you feel that your work for
 2    Interpol, and to the extent it has anything to do with the
 3    Department of Justice, would prevent or hinder you in any way
 4    from rendering a fair and an impartial verdict in this case
 5    based only on the evidence and the Court's instructions on the
 6    law?
 7              PROSPECTIVE JUROR:  No, sir.  No, sir.
 8              THE COURT:  Ms. McLaughlin, I didn't quite hear what
 9    you did.  Did you say Black Notices?
10              PROSPECTIVE JUROR:  Black Notices, which would be
11    unidentified dead bodies or parts thereof.  I identify them
12    through DNA, fingerprints.
13              THE COURT:  I see.  So are you a medical or science
14    person?
15              PROSPECTIVE JUROR:  No, sir.  Just an investigative
16    analyst.
17              THE COURT:  All right.  Let me ask you again whether
18    you think that would -- your duties would prevent or hinder you
19    in any way from rendering a fair and an impartial verdict in
20    this case, or following the Court's instructions on the law and
21    issuing a fair and an impartial verdict?
22              PROSPECTIVE JUROR:  No, sir.
23              THE COURT:  All right.  Ms. McLaughlin, you may be
24    seated.
25              Next.  Has anyone told me everything they need to tell
```

-45

1    me in response to my question whether you or a member of your

2    immediate family is in a law enforcement agency or works in law

3    enforcement?  No hands are raised.

4         All right.  I'm now going to read to you a list of

5    names.  Pay careful attention to this list as I read it to you,

6    because at the end I will ask you whether you know or have had

7    any business or social dealings of any kind whatsoever with any

8    of these persons.  FBI Special Agent Eric Bailey; FBI Special

9    Agent Laura Calvillo; FBI Special Agent Ford, you've already

10   met; FBI forensic examiner Daniel Iannotti; FBI Special

11   Agent Kochy; and FBI Special Agent Jeremy Obie; and FBI Special

12   Agent Jeffrey Ross.

13        And do you or any member of your family, so far as you

14   know, know any of those individuals, or have you had any

15   business or social dealings of any kind whatsoever with any of

16   them?

17        Mr. Schlessinger, you have listed here a person with an

18   initial of GM and CM.  Can you give me -- you don't want to give

19   a last name because these are minors.  Is that correct?

20        MR. SCHLESSINGER:  There are minors -- both were minors

21   at the time.  One is now an adult.  But yes.

22        THE COURT:  Are they in this area?

23        MR. SCHLESSINGER:  They're within the Eastern District

24   of Virginia, both of them are, yes.

25        THE COURT:  I think I'm going to ask you for a last

1    name, just to be sure.  What is the last name for each?

2              MR. SCHLESSINGER:  For GM, the last name is ███████.

3    For CM, the last name is █████.

4              THE COURT:  Ladies and gentlemen, do you or any member

5    of your family, so far as you know, know an individual whose

6    name is G. ████████ or an individual named C, what was the last

7    name?

8              MR. SCHLESSINGER:  ██████.

9              THE COURT:  If you would raise your hands and we'll

10   explore it further to see if they're the same people.  No hands

11   are raised.  Let's continue.

12             I have some more names for you, ladies and gentlemen.

13   Risa Sanders, Jay Sanders, Phillip DePue, Dr. Frederick Berlin,

14   and Donna Fessler.  Do you or any member of your family, so far

15   as you know, know any of those individuals, or have you had any

16   business or social dealings of any kind whatsoever with any of

17   them?

18             All right.  Finally, ladies and gentlemen, I want to

19   ask whether any of you have any information you need to change

20   with respect to questions 2 through 5, 2 through 5 of the COVID

21   questionnaire that you submitted previously.  If you have any

22   changes to that, please raise your hand.  And the record will

23   reflect no changes to questions 2 through 5.

24             Next, ladies and gentlemen, I'm going to ask you a

25   series of questions - several series - and I'll ask it in a

1    series of three.  Because what I want you to do is, if you have

2    an affirmative answer to any of the three questions, I want you

3    to raise your hand and a court security officer will come,

4    shepherd you to the witness box here, where you will give your

5    answers in the relative privacy of myself, attorneys, and the

6    defendant, using an earphone and a microphone.  And I do that,

7    as I said, to preserve your privacy as to any information you

8    may have to provide, and also to prevent any information that

9    you may have from affecting or infecting any other prospective

10   juror.

11          The first question - and as I said, there will be three

12   questions - if your answer is no, you need not raise your hand

13   or come forward.  Have any of you seen or read or heard or know

14   anything about this case from any source whatever?  Now, it's

15   not likely or probable that you have, it's simply a matter of

16   caution that I ask you that.  Because if you know anything about

17   this case, it is important that you bring that promptly to the

18   Court's attention.

19          The second question is, have you or any member of your

20   family or close friend ever been the victim of child sexual

21   abuse.

22          And the third question is, have you or any member of

23   your family ever been a defendant in a criminal case, or ever

24   been accused of a crime by any federal, state, or local

25   prosecutor.

1           If your answer is yes to any of those questions, raise

2    your hand and the court security officer will come and escort

3    you to the witness box here so that we can hear your answers to

4    those questions.

5           (JUROR CONFERENCE ON THE RECORD.)

6           THE COURT:  Good morning.  Can you hear me?

7           PROSPECTIVE JUROR:  Yes, I can.

8           THE COURT:  You may remove your mask so that we can

9    understand you.  And you're behind the screen, so you're quite

10   well protected.  May I have your name, please?

11          PROSPECTIVE JUROR:  Valerie Galbraith.

12          THE COURT:  Yes, which question do you have an answer

13   to?

14          PROSPECTIVE JUROR:  My mother was in the foster care

15   system and was sexually abused as a child.

16          THE COURT:  Was anyone prosecuted as a result of that?

17          PROSPECTIVE JUROR:  No.

18          THE COURT:  And you understand that what happened to

19   your mother has nothing whatever to do with this case?

20          PROSPECTIVE JUROR:  Right.

21          THE COURT:  Do you feel you can put your feelings about

22   what happened to your mother to one side and judge this case

23   fairly and impartially based only on the evidence that's

24   presented here and the Court's instructions on the law?

25          PROSPECTIVE JUROR:  Yes.

49

```
 1              THE COURT:  Do you have any answers to any of the other
 2    questions I put to you, affirmative answers?
 3              PROSPECTIVE JUROR:  No.
 4              THE COURT:  Thank you, Ms. Galbraith.  You may return
 5    to your seat.
 6              Would you give me your name, please.
 7              PROSPECTIVE JUROR:  Erin Harris.
 8              THE COURT:  Yes, which question do you have an
 9    affirmative answer to?
10              PROSPECTIVE JUROR:  Can you repeat the questions,
11    please?
12              THE COURT:  Yes, I can.  I want to know whether you or
13    any member of your family, or anyone you know well, has been
14    involved in a crime involving -- oh, no, that's not the first
15    question.  I'm sorry.  Have you seen or read or heard or know
16    anything about this case from any source whatever.  And I ask
17    that question not because it's likely or probable that you have,
18    but merely out of an abundance of caution, to ensure that if you
19    know anything about this case, that it's brought promptly to the
20    Court's attention.
21              PROSPECTIVE JUROR:  No, I know nothing about this case.
22              THE COURT:  If your answer is no, you need not come
23    forward.  But you're here.  Let me ask you the second question.
24              Have you or any member of your family or any close
25    friend ever been the victim of child sexual abuse?
```

1           PROSPECTIVE JUROR:  Yes.

2           THE COURT:  And who would that be?

3           PROSPECTIVE JUROR:  Myself.

4           THE COURT:  All right.  May I have your name again,

5     please?

6           PROSPECTIVE JUROR:  Erin Harris.

7           THE COURT:  Yes, Ms. Harris, was this when you were a

8     much younger person?

9           PROSPECTIVE JUROR:  Yes, I was a minor.

10          THE COURT:  And how old were you?

11          PROSPECTIVE JUROR:  Between the ages of five and 10.

12          THE COURT:  And was the abuser a member of your family?

13          PROSPECTIVE JUROR:  Yes.

14          THE COURT:  Was that person prosecuted?

15          PROSPECTIVE JUROR:  No.

16          THE COURT:  Now, Ms. Harris, do you have strong

17    feelings about that experience?

18          PROSPECTIVE JUROR:  Yes.

19          THE COURT:  Do you feel you can put those feelings to

20    one side and judge this case fairly and impartially based only

21    on the evidence that's presented here and the Court's

22    instructions?

23          PROSPECTIVE JUROR:  If I'm being perfectly honest with

24    you, I feel that my personal experience would impact my ability

25    to judge things fairly.

1          THE COURT:  All right.  Thank you.  You may remove your

2     earphones now for a moment.

3          Any objection to the striking of this person,

4     Mr. Schlessinger?

5          MR. SCHLESSINGER:  No objection from the Government.

6          MR. CLAYMAN:  No objection, Your Honor.

7          THE COURT:  Ms. Ginsberg, any objection?

8          MS. GINSBERG:  None, Your Honor.

9          THE COURT:  All right.  She is stricken for cause.

10          All right.  Ms. Harris, you may step down.  Thank you.

11     Turn off the noise for a moment.

12          (END JUROR CONFERENCE.)

13          THE COURT:  Ladies and gentlemen, some of you have

14     asked for a bathroom break, which I will take shortly.  But if

15     you're not coming up here because you have an affirmative

16     answer, then you may take a very short bathroom break.  But I'm

17     going to ask another series of questions, and everyone needs to

18     be in here when I do that.  So if you absolutely must go now,

19     you may do so.

20          Now, a number of persons are leaving.  I would assume

21     that none of those persons leaving have an affirmative answer to

22     the questions I've asked.

23          I want the court security officers to have the names of

24     everyone who leaves and have them back here in very short order.

25     Is that clear?

52

1            COURT SECURITY OFFICER:  Yes, Your Honor.

2            (JUROR CONFERENCE ON THE RECORD.)

3            THE COURT:  May I have your name, please?

4            PROSPECTIVE JUROR:  My name is Elizabeth Pennisi.

5            THE COURT:  I'm sorry, may I have it once again,

6    please?

7            PROSPECTIVE JUROR:  Sure.  It's Elizabeth Pennisi.

8            THE COURT:  All right.  Which question do you have an

9    affirmative answer to?

10           PROSPECTIVE JUROR:  I have a close friend and colleague

11   who was molested as a child, and was later convicted of

12   basically having child pornography on his work computer.

13           THE COURT:  All right.  Now, you understand that that

14   matter has nothing whatever to do with this case?

15           PROSPECTIVE JUROR:  I do.

16           THE COURT:  Now, this person was a close friend and

17   colleague.  Is that what you're saying?

18           PROSPECTIVE JUROR:  Right.

19           THE COURT:  And was the person who sexually abused her

20   a family member?

21           PROSPECTIVE JUROR:  No.

22           THE COURT:  And was the person who sexually abused her

23   caught and convicted?

24           PROSPECTIVE JUROR:  No.

25           THE COURT:  So you mentioned that somebody was

1    convicted of child pornography.  Who was that?

2           PROSPECTIVE JUROR:  Oh, so my friend was molested as a

3    child; then as an adult, he was arrested for having child

4    pornography on his work computer.

5           THE COURT:  And was he prosecuted for that?

6           PROSPECTIVE JUROR:  Yes.

7           THE COURT:  And was that in federal court?

8           PROSPECTIVE JUROR:  I don't remember.  It was in

9    Washington, D.C., and I honestly don't remember.

10          THE COURT:  How long ago?

11          PROSPECTIVE JUROR:  About 10 years ago.

12          THE COURT:  And was he sentenced to a period of

13   incarceration?

14          PROSPECTIVE JUROR:  No, he was not incarcerated.  He

15   was put on probation.

16          THE COURT:  All right.  And do you feel the legal

17   system operated fairly in his case?

18          PROSPECTIVE JUROR:  I do.

19          THE COURT:  Now, you understand that those matters have

20   nothing whatever to do with this case?

21          PROSPECTIVE JUROR:  Correct.

22          THE COURT:  Do you feel you can put your feelings about

23   that matter to one side and judge this case fairly and

24   impartially based only on the evidence and the Court's

25   instructions on the law?

1           PROSPECTIVE JUROR:  I do.

2           THE COURT:  Thank you.  Any other affirmative answers

3    to the questions I asked?

4           PROSPECTIVE JUROR:  No.

5           THE COURT:  Thank you.  You may return to your seat.

6           PROSPECTIVE JUROR:  Thank you.

7           THE COURT:  May I have your name, please?

8           PROSPECTIVE JUROR:  Fonda Newcomb.

9           THE COURT:  Which question do you have an affirmative

10   answer to?

11          PROSPECTIVE JUROR:  The third question.

12          THE COURT:  All right.  The third question, have you or

13   any member of your immediate family ever been a defendant in a

14   criminal case or ever been accused of a crime by any federal,

15   state, or local prosecutor.

16          PROSPECTIVE JUROR:  Yes.  My brother-in-law was

17   convicted of child molestation in the state of North Carolina.

18          THE COURT:  And was your brother sentenced to a period

19   of incarceration?

20          PROSPECTIVE JUROR:  Yes.

21          THE COURT:  How long?

22          PROSPECTIVE JUROR:  I want to say four years.

23          THE COURT:  And that was in the state system of

24   North Carolina?

25          PROSPECTIVE JUROR:  Correct.

1          THE COURT:  And do you feel that the legal system

2    operated fairly in that context?

3          PROSPECTIVE JUROR:  I was not involved in the trial, or

4    wasn't present, so I don't know if I can comment on that.

5          THE COURT:  All right.  You understand, however, that

6    that matter has nothing whatever to do with this case?

7          PROSPECTIVE JUROR:  Correct.  Yes, I understand.

8          THE COURT:  Can you put your feelings about that

9    matter, whatever they may be, to one side and judge this case

10   fairly and impartially based only on the evidence and the

11   Court's instructions on the law?

12         PROSPECTIVE JUROR:  Yes.

13         THE COURT:  Any other affirmative answers to the

14   questions presented to you?

15         PROSPECTIVE JUROR:  No, sir.

16         THE COURT:  Thank you.  You may return to your seat.

17         (END JUROR CONFERENCE.)

18         THE COURT:  Are all the persons who went to have a

19   bathroom break back in?

20         COURT SECURITY OFFICER:  Yes, Your Honor, they are.

21         THE COURT:  Now, I have a second series of questions to

22   ask you, ladies and gentlemen.  Have you or any member of your

23   family, or anyone you know well, ever been involved in a crime

24   or a prosecution involving child pornography or child sexual

25   abuse, whether as a victim, as a witness, as a complainant, or

1    in any other capacity?

2           The second question is, would you tend to believe or

3    would you tend to disbelieve the testimony of a law enforcement

4    officer merely because that person is a law enforcement officer?

5           And the third question is, you may be asked to view

6    evidence concerning alleged child pornography in this case, and

7    I want to know whether you would be able to do so and render a

8    fair and impartial verdict based on the evidence presented and

9    the instructions given to you by the Court.

10          If any of you have affirmative answers to those

11   questions, I ask that you come forward.

12          I have a device here that is designed to mask the

13   conversations that occur here at the bench.  When it was

14   installed, oh -- roughly 2005, I think, is when it was installed

15   for the second time; the first time when it was installed, it

16   was 1987.  And at that time I was told by the person installing

17   it that it would sound like waves breaking gently on some

18   distant tropical romantic beach, and that it would mask the

19   conversations here at the bench.  In a few minutes I'll ask

20   whether it succeeds in either of those efforts or goals.

21          All right.  Put the noise back on.

22          (JUROR CONFERENCE ON THE RECORD.)

23          THE COURT:  All right, sir, can you hear me?

24          PROSPECTIVE JUROR:  Yes, I hear you.

25          THE COURT:  You might want to remove your mask.  You're

1    behind the screen, and it would aid the court reporter and me in

2    understanding what you say.

3             May I have your name, please, sir?

4             PROSPECTIVE JUROR:  Yes, my name is Michael Mason.

5             THE COURT:  Mr. Mason, what is your occupation?

6             PROSPECTIVE JUROR:  I'm retired.  The focus of this

7    question, I'm a volunteer for Fairfax County.  I am a

8    facilitator in the child Speak Up and Be Safe Body safety

9    program.  We go into elementary schools and teach kids safety

10   rules about how to avoid abuse.  So I don't know anyone well,

11   but I've had a number of children make disclosures about child

12   sexual abuse.  So I thought I ought to clarify that.

13            THE COURT:  You were quite right to do, so but let me

14   go back to this for a moment.  I'm going to come to this

15   information because I'm glad you disclosed it.  What are you

16   retired from?

17            PROSPECTIVE JUROR:  I was a system consultant for

18   Deltek.  I'm an accountant by training, and I helped people to

19   configure and implement and install government contracting

20   systems.

21            THE COURT:  Now let's go back to your work for

22   Fairfax County.  As you said, you're a facilitator in the child

23   Speak Up and Be Safe Body safety program --

24            PROSPECTIVE JUROR:  Correct.

25            THE COURT:  -- in which you hear disclosures from

1    children about child sexual abuse.  Do you understand that none

2    of those disclosures, none of what may have happened to those

3    children, have anything to do with this case?

4            PROSPECTIVE JUROR:  I do understand that, yes.

5            THE COURT:  Do you feel you can put your feelings to

6    one side about what may have been disclosed to you by these

7    children, and judge this case fairly and impartially based only

8    on the evidence presented and the Court's instructions on the

9    law?

10           PROSPECTIVE JUROR:  Yes, Your Honor.

11           THE COURT:  Do you have any answers to the other

12   questions I asked?

13           PROSPECTIVE JUROR:  No.

14           THE COURT:  Thank you, sir.  You may step down and

15   return to your seat, sir.

16           Hold this person for a moment, please.  Have that

17   person come forward.

18           Good morning, sir.  Can you hear me?

19           PROSPECTIVE JUROR:  Yes.

20           THE COURT:  What is your name, sir?

21           PROSPECTIVE JUROR:  Robert Giles, Junior.

22           THE COURT:  I'm sorry, say that again, please.

23           PROSPECTIVE JUROR:  Robert Giles, Junior, G-I-L-E-S.

24           THE COURT:  All right, Mr. Giles.  I have a note

25   indicating -- I don't know whether you wrote it or not, but you

1    said that you had some sort of medical disorder and you couldn't

2    sit for long periods of time.  Is that correct, sir?

3              PROSPECTIVE JUROR:  Yeah.  I've been on sick leave

4    since April, and I had strep in my blood and cellulitis of my

5    skin, and it caused tremendous swelling.  And I can't sit for

6    long periods of time without the swelling.  And I put that in

7    the original -- when I originally got the summons, I wrote that

8    down.

9              THE COURT:  All right, sir.  As I understand it, you

10   had strep, streptococcus, in your blood, and cellulitis of your

11   skin that causes tremendous swelling, and you can't sit for

12   periods of time.  How long can you sit for?

13             PROSPECTIVE JUROR:  Well, right now it's starting to

14   swell now as I sit.  It comes like every hour or so, and then I

15   have to get up and walk around and stuff.  But also I'm on

16   medication.  I have medications, too.

17             THE COURT:  Do those medications affect or hinder you

18   in any way in paying attention to the evidence as it's

19   presented?

20             PROSPECTIVE JUROR:  No, I don't think it will.

21             THE COURT:  All right.  You may not be selected, sir,

22   but if you are, I will give you leave to raise your hand if you

23   feel you need to get up, and I'll call a recess.

24             PROSPECTIVE JUROR:  Okay.

25             THE COURT:  But generally we will sit and pay attention

1    to the evidence for about an hour and a half per session.  Do

2    you think you can handle that?

3              PROSPECTIVE JUROR:  I think so.

4              THE COURT:  All right.  Thank you for calling this to

5    my attention, and we'll do what we can to accommodate you, sir.

6              PROSPECTIVE JUROR:  Okay.  Thank you.

7              THE COURT:  You may return to your seat.

8              May I have your name, please, sir?

9              PROSPECTIVE JUROR:  James Bowman.

10             THE COURT:  Yes, which question do you have an

11   affirmative answer to?

12             PROSPECTIVE JUROR:  Two of them.  One was whether or

13   not I objectively hear law enforcement officers' opinions one

14   way or the other.  And I do tend to give the benefit of the

15   doubt to LEOs when I hear them.

16             THE COURT:  I'll come to the second one.  Let me deal

17   with this first one first.  You understand that law enforcement

18   officers, like everyone else, including judges, are human

19   beings, and sometimes they tell the truth and sometimes they

20   don't.  Do you understand that?

21             PROSPECTIVE JUROR:  Yes, sir.

22             THE COURT:  Do you feel you can put your feelings about

23   law enforcement officers telling the truth to one side and judge

24   this case fairly and impartially, and judge the testimony of a

25   law enforcement officer just as you would judge the testimony of

1    any other witness?

2              PROSPECTIVE JUROR:  Yes, sir.

3              THE COURT:  What was the second answer you wanted to

4    give?

5              PROSPECTIVE JUROR:  It wasn't directly, but you were

6    saying we might have to see physical evidence of what happened.

7    I have two daughters, one is 16 and one is 21.  Any time

8    something comes up, I'm not sure I could stay objective about

9    something like that.

10             THE COURT:  All right.  You understand, though, that

11   this case has nothing whatever to do with your daughters?

12             PROSPECTIVE JUROR:  I understand that completely.

13             THE COURT:  Do you feel you can put your feelings about

14   your daughters and your desire to ensure that they're protected

15   and not assaulted to one side, and judge this case fairly and

16   impartially based only on the evidence presented here and the

17   Court's instructions on the law?

18             PROSPECTIVE JUROR:  I feel like I can, but I honestly

19   don't know.

20             THE COURT:  All right.  And what was your name again,

21   sir?

22             PROSPECTIVE JUROR:  James Bowman.

23             THE COURT:  Yes, Mr. Bowman.  Would you remove the

24   earphones for a moment, Mr. Bowman.  Oh, before you do so,

25   before you do so, what is your occupation?

1          PROSPECTIVE JUROR:  I'm in sales.  I'm currently out of

2     work.

3          THE COURT:  All right.  And what's the last job you

4     held?

5          PROSPECTIVE JUROR:  I worked for a company called

6     Locator Services in Old Town.  It was an association.  I did

7     digital sales, print sales, basically CRM sales, which is how

8     you manage your clients for an association, for a nonprofit.

9          THE COURT:  All right.  Thank you, sir.  If you would

10    remove your earphones for a moment.

11          All right.  Mr. Schlessinger, what's your view on

12    whether this juror should serve as a juror in this case, given

13    that he has very obvious firm concerns about his adult

14    daughters?

15          MR. SCHLESSINGER:  Your Honor, there's no objection to

16    removing this juror for cause.

17          THE COURT:  Ms. Ginsberg?

18          MS. GINSBERG:  Judge, we would request he be removed

19    for cause.

20          THE COURT:  All right.  I'll do so.  He is stricken for

21    cause.  Although I would point out to you, Ms. Ginsberg, it's

22    about as weak a motion to strike for cause as you could make.

23          MS. GINSBERG:  I understand.  I just think he's

24    expressed doubts about his ability to be impartial.

25          THE COURT:  Yes, that's why I have granted your motion.

63

1          MS. GINSBERG:  Thank you.

2          THE COURT:  You may step down, thank you.

3          Can you hear me?

4          PROSPECTIVE JUROR:  Thank you.

5          THE COURT:  I'm sorry, can you hear me?

6          PROSPECTIVE JUROR:  I can hear you.

7          THE COURT:  What is your name, please?

8          PROSPECTIVE JUROR:  My name is Elizabeth Pennisi.

9          THE COURT:  Yes, Ms. Mason [sic], which question do you

10  have an affirmative answer to?

11          PROSPECTIVE JUROR:  I'm not sure I can be dispassionate

12  about seeing pictures of sexually explicit activities by minors.

13          THE COURT:  All right.  And why is it that you can't be

14  sure that you can put your feelings about seeing pictures of

15  sexually explicit activities by minors to one side and judge

16  this case fairly and impartially based only on the evidence and

17  the Court's instructions on the law?

18          PROSPECTIVE JUROR:  Based on how I'm reacting just at

19  the thought of it, I might start crying.  And I think I can step

20  away from that to be impartial, but I could possibly make a

21  scene.

22          THE COURT:  All right.  Would you remove your

23  earphones, please.

24          Mr. Schlessinger, any objection to strike?

25          MR. SCHLESSINGER:  No objection.

64

```
1                THE COURT:  Ms. Ginsberg?

2                MS. GINSBERG:  Your Honor, we would ask she be stricken

3      for cause.

4                THE COURT:  So you don't have any objection?

5                MS. GINSBERG:  No, sir.

6                THE COURT:  She is stricken for cause.

7                All right.  Thank you.  You may return to your seat.

8                Yes, may I have your name, please, sir?

9                PROSPECTIVE JUROR:  Jun Cho, C-H-O.

10               THE COURT:  Which questions do you have an affirmative

11     answer to?

12               PROSPECTIVE JUROR:  I think the last question, that

13     whether the nature of the crime would have an impact on my

14     ability to be impartial.

15               THE COURT:  All right.  We'll come to that.  Let me ask

16     you, are you a practicing attorney?

17               PROSPECTIVE JUROR:  Yes, I am.

18               THE COURT:  What is the nature of your practice?

19               PROSPECTIVE JUROR:  I'm general counsel for an

20     automotive company.

21               THE COURT:  And what automotive company is that?

22               PROSPECTIVE JUROR:  It's called FCA US LLC.  It's the

23     newly formed company resulting from the merger from Fiat,

24     Chrysler, and Peugeot.

25               THE COURT:  All right.  Tell me, why is it you think
```

1    you would be affected by the nature of the crimes what are

2    alleged in this case by the Government?

3            PROSPECTIVE JUROR:  I raised -- I have three kids, and

4    one of the kids is autistic, and that was always a big concern

5    for our family, whether he would be taken advantage of.

6            THE COURT:  Now, is your child who is autistic, he is

7    on the autistic spectrum?

8            PROSPECTIVE JUROR:  Yes.

9            THE COURT:  And is he far down the spectrum?

10           PROSPECTIVE JUROR:  He's able to function.  He has a

11   job.

12           THE COURT:  All right.  And has he ever been abused?

13           PROSPECTIVE JUROR:  Not to my knowledge.

14           THE COURT:  All right.  You understand that your

15   concerns about your son have nothing to do with this case?

16           PROSPECTIVE JUROR:  I do.  But I just the question

17   whether I can be impartial, when you have the Department of

18   Justice bringing a case against an individual for this crime.

19           THE COURT:  Well, as I told you, the indictment brought

20   by the Department of Justice is merely an accusation.  It's not

21   proof or evidence of any kind whatsoever.  And the defendant has

22   pled not guilty, and must be presumed innocent --

23           PROSPECTIVE JUROR:  Yes.

24           THE COURT:  -- unless and until a jury find otherwise.

25   Do you think you can give effect to the presumption of

1    innocence?

2         PROSPECTIVE JUROR:  Yes.  I was asking myself that

3    question, and I just felt that I probably, in all fairness,

4    couldn't be that impartial.

5         THE COURT:  All right.  Remove your earphones, if you

6    would, please, sir.

7         All right.  Mr. Schlessinger, any objection to striking

8    this juror?

9         MR. SCHLESSINGER:  No objection to his removal for

10   cause.

11        THE COURT:  All right.  And Ms. Ginsberg?

12        MS. GINSBERG:  Also no objection, Your Honor.

13        THE COURT:  All right.  He is stricken.

14        Thank you, sir.  You may return to your seat.

15        (END JUROR CONFERENCE.)

16        THE COURT:  All right.  Ladies and gentlemen, I have

17   three final questions for you.  It may be that some of the

18   evidence in this case will involve sexually explicit

19   conversations between two people of the same sex or gender, and

20   I want to know whether that would prevent or hinder any of you

21   from rendering a fair and an impartial verdict in this case

22   based only on the evidence and the Court's instructions on the

23   law.

24        The next question is, the presentation of evidence in

25   this case will likely last about four days, and may extend until

1    Tuesday of next week.  I want to know whether that would prevent

2    or hinder you in any way from rendering a fair and an impartial

3    verdict in this case based only on the evidence or the Court's

4    instructions on the law -- and the Court's instructions on the

5    law.

6          And finally, I want to ask you whether there is

7    anything in any question that I have asked, or anything about

8    the nature of this case that you think would prevent or hinder

9    you in any way from rendering a fair and an impartial verdict in

10   this case based only on the evidence and the Court's

11   instructions.

12         Now, if you already brought that to my attention, you

13   need not come forward.  But if you haven't, I want you to come

14   forward.  And if you have anything to add to what you've already

15   told me, you may also come forward.

16         All right.  Raise your hands if you have answers to any

17   of those questions.  I can't see clearly.  I don't see any

18   hands.  All right.  One.  All right.

19         Mr. Giles, as I recall.  Come forward and sit in the

20   jury box, Mr. Giles.

21         (JUROR CONFERENCE ON THE RECORD.)

22         THE COURT:  Or in the witness stand, I should say.

23         Can you hear me, Mr. Giles?

24         PROSPECTIVE JUROR:  Yes, sir.  I can hear you.  The

25   matter being is, I have to appear at another court case on

1    Friday, so if it extends to next week --

2          THE COURT:  What is the court case on which you have to

3    appear on Friday?

4          PROSPECTIVE JUROR:  It's a moving violation in

5    Clarksburg.

6          THE COURT:  All right.  Well, if you're selected and

7    this case carries over, I will ensure that you're excused from

8    that appearance and it will be rescheduled.  Your jury service

9    would take precedence if you're selected.  You may not be

10   selected, in which case you can attend it.

11         PROSPECTIVE JUROR:  Okay.  All right.  Thank you.

12         THE COURT:  Thank you, Mr. Giles, for calling that to

13   my attention.

14         PROSPECTIVE JUROR:  All right.

15         (END JUROR CONFERENCE.)

16         THE COURT:  All right.  Any other answers?  All right,

17   let's have the noise again, and counsel, put the earphones back

18   on.

19         (BENCH CONFERENCE ON THE RECORD.)

20         THE COURT:  Counsel, that completes the Court's

21   voir dire.  Let me begin, Mr. Schlessinger, with you.  Is there

22   any additional voir dire you think the Court should ask?

23         MR. SCHLESSINGER:  No, Your Honor.

24         THE COURT:  Ms. Ginsberg, is there any additional

25   voir dire you think the Court should ask?

1          MS. GINSBERG:  Yes, Your Honor.  It would be a question

2    in the nature of our proposed voir dire question number 9

3    regarding BDSM evidence that they'll hear.  We had requested the

4    Court ask -- or advise the jury that they would hear testimony

5    about bondage, discipline, domination, submission, sadism, and

6    masochism.

7          THE COURT:  So now you know the whole term.

8          MS. GINSBERG:  I think I knew the term last week.

9          THE COURT:  Let me hear it again.

10          MS. GINSBERG:  It's bondage, discipline, domination --

11    I'm sorry, domination comes first.  Bondage, discipline,

12    domination.

13          THE COURT:  Oh, so discipline does come first?

14          MS. GINSBERG:  Yes, sir.

15          THE COURT:  Bondage, discipline, domination.

16          MS. GINSBERG:  Submission, sadism, and masochism.  And

17    BDSM includes practices such as gagging, restraining, lipping,

18    and flogging, that, if consensual, you may find distasteful.

19    And we want to know if that would prevent jurors from being

20    fair.  There will be evidence about these types of activities -

21    not all of them, for sure - but there will be evidence, and I

22    think it may be either minimally distasteful to some of the

23    jurors.

24          THE COURT:  All right.  I do recall that somebody on

25    the defense team told me this was widespread, but let's get past

```
 1            that and move on.
 2                    MS. GINSBERG:  Judge, I live in a vacuum so I'm not a
 3            good judge.
 4                    THE COURT:  Tell me about those.  Let me list those
 5            things.  Gagging, tell me what that is.
 6                    MS. GINSBERG:  In this case there will be flogging,
 7            restraint, possibly --
 8                    THE COURT:  Was this in your question?
 9                    MS. GINSBERG:  This was in our question number 9.
10                    THE COURT:  Read those to me again.  Flogging,
11            restraining, what else?
12                    MS. GINSBERG:  Gagging, restraint, self-imposed harm.
13            No, I'm sorry, that's not accurate.
14                    THE COURT:  All right.  I've got flogging, restraining,
15            and gagging.  Anything else?
16                    MS. GINSBERG:  Judge, I think if you would add power
17            exchange relationships, that would probably define the nature of
18            these relationships, as best as I can.
19                    THE COURT:  That's an undefined term.  I'm not going to
20            add that.  But I will ask this question.  Anything else,
21            Ms. Ginsberg?
22                    MS. GINSBERG:  No, thank you, Your Honor.
23                    THE COURT:  Let's turn off the noise.
24                    (END BENCH CONFERENCE ON THE RECORD.)
25                    THE COURT:  Ladies and gentlemen, I have a further
```

1    question for you.  This case may involve evidence of what is

2    maybe known as BDSM.  That is evidence of bondage, discipline,

3    domination, submission, sadism, and masochism.  And in that

4    regard, practices of flogging, restraining, and gagging, you may

5    hear evidence of that.  And I want to know whether that would

6    prevent or hinder any of you from rendering a fair and an

7    impartial verdict in this case based only on the evidence and

8    the Court's instructions on the law.

9         That doesn't mean you have to approve or disapprove of

10   those, I just want to know whether hearing evidence about BDSM,

11   with the possible practices of submissions, of flogging,

12   restraining, or gagging, would prevent or hinder you in any way

13   from rendering a fair and impartial verdict in this case based

14   only on the evidence and the Court's instructions on the law.

15        All right.  There are no hands raised.  Put the noise

16   back on.

17             (BENCH CONFERENCE ON THE RECORD.)

18             THE COURT:  All right.  Counsel, as that completes the

19   voir dire, I will now ask the Government, do you have any

20   motions to strike for cause?

21             MR. SCHLESSINGER:  Your Honor, we have no additional

22   motions to strike for cause.

23             THE COURT:  Ms. Ginsberg, do you have any motions to

24   strike for cause?  You didn't have your earphones on.  Let me

25   re-ask it.  Do you have any motions to strike for cause on

1    behalf of the defendant?

2         MS. GINSBERG:  Judge, if I could have just a minute to

3    consult with co-counsel and Mr. Sanders.

4         THE COURT:  Yes, you may do so.

5         MS. GINSBERG:  Thank you.

6         THE COURT:  Ms. Ginsberg, are you on?

7         THE DEFENDANT:  She's not.  I will tell her.

8         THE COURT:  The record will reflect that that was the

9    defendant that said that.  I think your co-counsel need to

10   remember, this is motions to strike for cause, not peremptory

11   challenges.

12        MS. GINSBERG:  I understand, Your Honor.  We would move

13   to strike number 31 for cause.  He was the volunteer in the

14   program, the Speak Up and Be Safe childhood program.  He said he

15   had heard disclosures of sexual abuse by minors.

16        THE COURT:  Yes.  And, of course, he also said he could

17   be fair and impartial.

18        But Mr. Schlessinger, do you oppose this motion to

19   strike for cause of Mr. Mason?

20        MR. SCHLESSINGER:  We do oppose that.  As Your Honor

21   has already pointed out, he said quite clearly that he could be

22   fair.  I think he volunteered that he worked as a volunteer for

23   that child safety program simply to provide an accurate response

24   to the Court's question, but was nevertheless totally clear that

25   he could be fair in applying the law to the facts of the case.

1    There's no reason to categorically exclude all jurors who serve

2    as volunteers in child settings to rule out serving as a juror.

3              THE COURT:  I'll overrule the strike for cause, but of

4    course, Ms. Ginsberg, you may remove him peremptorily if you

5    wish.  Anyone else?

6              MS. GINSBERG:  Yes, Judge.  Number 30, that was the

7    juror who said he had doubts about his ability to be fair

8    because of cases his wife had told him about.

9              THE COURT:  All right.  Any objection to that,

10   Mr. Schlessinger?

11             MR. SCHLESSINGER:  No objection to striking 30 for

12   cause.

13             THE COURT:  All right.  30 is stricken for cause.

14   Next.

15             MS. GINSBERG:  32, Your Honor, is the individual who

16   has a daughter who works in law enforcement and is on the FBI

17   task force, currently the gang task force, but she previously

18   worked in either her state capacity or federal capacity on a

19   task force of crimes against children.  It's almost

20   inconceivable that she hasn't had some discussions with her

21   parents about the nature of that work.

22             THE COURT:  All right.  Mr. Schlessinger?

23             MR. SCHLESSINGER:  The Government opposes excusing this

24   juror for cause.  He responded about his daughter to the Court's

25   general question about whether anyone close to the juror worked

74

 1     in law enforcement, and he identified her for that reason, not

 2     because he felt that his relationship with her or her work would

 3     be in any way a problem or an obstacle for him in applying the

 4     law.  And indeed, he also said unequivocally that he would be

 5     fair and impartial and would apply the law as the Court explains

 6     it.  So there's no reason to excuse this juror for cause.

 7              THE COURT:  What was his name again?

 8              MR. SCHLESSINGER:  Michael McAllister?

 9              THE COURT:  Anything further on this person?

10              MS. GINSBERG:  Yes, Your Honor.  It is possible that

11     she was on the task force of crimes against children at the time

12     the search occurred in this case.  But no question -- the juror

13     was not questioned about whether he had had discussions about

14     the nature of his daughter's work when she was on that task

15     force, and I think it's impossible to know that he would not be

16     influenced by conversations he may have had about this very

17     topic.

18              THE COURT:  Any other motions to strike for cause,

19     Ms. Ginsberg?

20              MS. GINSBERG:  No.

21              THE COURT:  All right.  I'll grant this motion to

22     strike.

23              MS. GINSBERG:  Thank you.

24              THE COURT:  I think, Ms. Ginsberg, it's probably not

25     persuasive, but we're going to move things along.  I will grant

1    it.

2           That completes the process.  I'm now going to instruct

3    this jury that they're released for lunch.  They won't need to

4    come become until 3 o'clock.  I'll tell them that I'm going to

5    go through the same process with another 45 to 50 people to

6    result in a panel from which the jury will be selected.

7           Any objection to that, Mr. Schlessinger or

8    Ms. Ginsberg?

9           MR. SCHLESSINGER:  No, Your Honor.

10          MS. GINSBERG:  No, Your Honor.

11          THE COURT:  All right.  Let's proceed.  Turn off the

12   noise, please.

13          (END BENCH CONFERENCE.)

14          THE COURT:  Ladies and gentlemen, that completes the

15   part of the process that needed to be completed this morning for

16   you-all, so I'm going to release you now for lunch and ask that

17   you return at 3 o'clock.  Now, when you return at 3 o'clock,

18   you're to go to the ninth floor conference room.  There will be

19   a court security officer out here to direct you.

20          Now, during this luncheon recess, do not discuss this

21   case with anyone.  Do not allow anyone to discuss it with you.

22   Put it out of your mind until you return at 3 o'clock, when we

23   will continue and complete the jury selection process.

24          What I'm going to do now is, after lunch I'm going to

25   meet with another group just like you, about 40 to 50 people,

1    and I will go through the same questions, get to the same point,

2    and then the jury -- the court security officer will call names

3    at random and seat you in the jury box, and then the lawyers

4    will have an opportunity to exercise their peremptory

5    challenges.  And once that's completed, the jury will be

6    selected and we'll proceed, and I'll be able to excuse the rest

7    of you.

8            The following need not come back at 3 o'clock:

9    Erin Harris, James Bowman, Elizabeth Pennisi, Jun Cho,

10   Nebojsa Malic, Michael McAllister.  You don't need to come back

11   at 3:00 o'clock, but I do want to thank you for your service

12   this morning.

13           All right.  You may follow the court security officer

14   and go to lunch.  Now, if you're selected as a juror, your

15   lunches will be provided for the duration of the trial.  But

16   don't look hard on the menu for Pheasant Under Glass or

17   Baked Alaska.  We can't even get a Chik Fil A around here.

18               (Prospective jurors leave the courtroom.)

19               THE COURT:  Court stands in recess until 1 o'clock.

20               (Recess taken at 11:47 a.m.)

21               THE COURT:  Good afternoon, ladies and gentlemen.  This

22   is United States against Sanders, it's 20-CR-143.  My name is

23   Tim Ellis, I'll be the judge presiding over this case, and I'll

24   tell you more about the case and your role in it in just a

25   moment.

1          But first let me ask the attorneys here to put on your

2    earphones.  This is the device we want use when we want to

3    engage in conversations among the lawyers and the parties

4    without everyone else hearing them.  It will just be two

5    minutes.

6               (BENCH CONFERENCE ON THE RECORD.)

7               THE COURT:  You hear me, counsel?  Ms. Ginsberg has

8    again asked for the reasons for the, I think, three or four

9    people -- is it three people, Ms. Randall?

10              COURTROOM CLERK:  Three people, yes, Your Honor.

11              THE COURT:  Go ahead and the tell the counsel the

12   reasons they were excused.

13              COURTROOM CLERK:  Juror number 29, father is in the

14   hospital; juror number 46, full-time student out in California;

15   juror number 47, Marine Corps base Quantico, Virginia, law

16   enforcement police officer.

17              THE COURT:  I don't have any further information at

18   this time for that.

19              MS. GINSBERG:  Thank you, Your Honor.

20              THE COURT:  Let's proceed.  Take off the earphones.

21              (END BENCH CONFERENCE.)

22              THE COURT:  Ladies and gentlemen, as I said, this is

23   United States against Sanders, and it is a criminal proceeding

24   that I will tell you more about in a few minutes, and your role

25   in it.  We are in the jury selection process.  You may know that

78

1    about an equal number of your fellow prospective jurors were

2    here this morning and went through what we call the voir dire

3    process.

4            Voir dire is a -- I can't quite put my finger on it.

5    It's either law French or French from a Latin origin that means

6    speak the truth, something close to that.  And that is the term

7    that lawyers use to describe the jury selection process in which

8    the court asks jurors a series of questions designed to enable

9    the court to ascertain whether any of you may be disabled by any

10   rule of law from serving as a juror.  And that's what we're

11   going to be about today.

12           But the first thing we are going to do is, I'm going to

13   have the deputy clerk call the roll.  But before we do it, I

14   forgot to add this.  I want to thank all of you for your service

15   as jurors.  Nothing you do as an American citizen is any more

16   important than jury service.  Together with voting, it's one of

17   the two cardinal duties we have as Americans, and it's very

18   important that you fulfill that responsibility and serve as a

19   juror and vote.

20           All right.  I will have the deputy clerk now call the

21   roll.  Now, when your name is called, please stand.  That

22   enables the attorneys to match a name with a face.  And when the

23   next name is called, you may be seated.  And after that, an oath

24   will be administered to you to answer truthfully the court's

25   questions during voir dire.  And after that, I will commence the

79

1      voir dire.

2              All right.  I'll ask the deputy clerk now to call the

3      roll.

4              COURTROOM CLERK:  Juror number 1, Kurt Abendschein.

5              PROSPECTIVE JUROR:  Here.

6              COURTROOM CLERK:  Juror number 2, Candice Alidoosti.

7              PROSPECTIVE JUROR:  (No verbal response.)

8              COURTROOM CLERK:  Juror number 3, Carol Bachmann.

9              PROSPECTIVE JUROR:  (No verbal response.)

10             COURTROOM CLERK:  Juror number 4, Justin Bradley.

11             THE COURT:  Excuse me.

12             (OFF THE RECORD.)

13             THE COURT:  I used to use a phrase, when I was looking

14     for something, I would say, when I found it, well, if it had

15     been a snake it would have bitten me.  Because it's always right

16     there.  I can't tell you how many times I would be a dead man

17     right now.

18             All right.  Proceed, please.  The first was -- did you

19     call the first one?

20             COURTROOM CLERK:  Yes, Judge.  Do you prefer me to

21     start over?

22             THE COURT:  No, that's fine.

23             COURTROOM CLERK:  Juror number 5, Gzne Brown.

24             PROSPECTIVE JUROR:  (No verbal response.)

25             COURTROOM CLERK:  Ladies and gentlemen, I prefer that

1    you answer "present" so I know exactly who the individual is.

2    Thank you.

3              Juror number 6, Patrick Campo.

4              PROSPECTIVE JUROR:  Present.

5              COURTROOM CLERK:  Juror number 7, Razzakul Chowdhury.

6              PROSPECTIVE JUROR:  Present.

7              COURTROOM CLERK:  Juror number 8, Sylvia Cook.

8              PROSPECTIVE JUROR:  Present.

9              COURTROOM CLERK:  Juror number 9, George Corso.

10             PROSPECTIVE JUROR:  Present.

11             COURTROOM CLERK:  Juror number 10, Tejal Desai.

12             PROSPECTIVE JUROR:  Present.

13             COURTROOM CLERK:  Juror number 11, William Ellis.

14             PROSPECTIVE JUROR:  Present.

15             THE COURT:  Mr. Ellis, I think you will confirm that

16    you have no relation to me or anybody in my family?

17             PROSPECTIVE JUROR:  Not that I know of.

18             THE COURT:  I'm sorry?

19             PROSPECTIVE JUROR:  Not that I know of.

20             THE COURT:  All right.  Next.

21             COURTROOM CLERK:  Juror number 12, Steven Ellis.

22             PROSPECTIVE JUROR:  Present.

23             THE COURT:  Would you confirm the same thing?

24             PROSPECTIVE JUROR:  I'm not related.

25             THE COURT:  And I would assume -- the middle name of

1    the defendant here is Zackary Ellis Sanders.  If any of you is

2    related in any way to this defendant, I'll be asking you a

3    question.  But I assume you two are not.  Is that correct?

4            PROSPECTIVE JUROR:  Correct.

5            PROSPECTIVE JUROR:  Correct, sir.

6            THE COURT:  All right.  Continue.

7            COURTROOM CLERK:  Juror number 13, Donaciana Evans.

8            PROSPECTIVE JUROR:  Present.

9            COURTROOM CLERK:  Juror number 14, Beth Feldpush.

10           PROSPECTIVE JUROR:  Present.

11           COURTROOM CLERK:  Juror number 15, Sarah Finnern.

12           PROSPECTIVE JUROR:  Present.

13           COURTROOM CLERK:  Juror number 16, Hannah Fry.  Juror

14    number 16, Hannah Fry.

15           THE COURT:  Show cause.

16           COURTROOM CLERK:  Juror number 17, Regina Goffus.

17           PROSPECTIVE JUROR:  Present.

18           COURTROOM CLERK:  Juror number 18, Barbara Hill.

19           PROSPECTIVE JUROR:  Present.

20           COURTROOM CLERK:  Juror number 19, Joseph Hilton.

21           PROSPECTIVE JUROR:  Present.

22           COURTROOM CLERK:  Juror number 20, Adam Jacobs.

23           PROSPECTIVE JUROR:  Present.

24           COURTROOM CLERK:  Juror number 21, Wendy Jensen.

25           PROSPECTIVE JUROR:  Present.

1          COURTROOM CLERK:  Juror number 22, Belle Johnson.

2          PROSPECTIVE JUROR:  Present.

3          COURTROOM CLERK:  Juror number 23, Carter Jones.

4          PROSPECTIVE JUROR:  Present.

5          COURTROOM CLERK:  Juror number 24, Irvin Kalugdan.

6          PROSPECTIVE JUROR:  Present.

7          COURTROOM CLERK:  Juror number 25, Patricia Kremer.

8    Juror number 25, Patricia Kremer.

9          THE COURT:  Show cause.

10          COURTROOM CLERK:  Juror number 26, Richard

11   Loveland, II.

12          PROSPECTIVE JUROR:  Present.

13          COURTROOM CLERK:  Juror number 27, Timothy Lynch.

14          PROSPECTIVE JUROR:  Present.

15          COURTROOM CLERK:  Juror number 28, Dale Manry.

16          PROSPECTIVE JUROR:  Present.

17          COURTROOM CLERK:  Juror number 30, Deanna McNeal.

18          PROSPECTIVE JUROR:  Present.

19          COURTROOM CLERK:  Juror number 31, Joshua Mecham.

20          PROSPECTIVE JUROR:  Present.

21          COURTROOM CLERK:  Juror number 32, Yesenia Mendez

22   Rodriguez.

23          PROSPECTIVE JUROR:  Present.

24          COURTROOM CLERK:  Juror number 33, Kohnwirak Om.

25          PROSPECTIVE JUROR:  Present.

```
1              COURTROOM CLERK:  Juror number 34, David Park.

2              PROSPECTIVE JUROR:  Present.

3              COURTROOM CLERK:  Juror number 35, Urmi Patel.

4              PROSPECTIVE JUROR:  Present.

5              COURTROOM CLERK:  Juror number 36, Madison Payne.

6        Juror number 36, Madison Payne.

7              THE COURT:  Show cause.

8              COURTROOM CLERK:  Juror number 37, Gerard Poliquin.

9              PROSPECTIVE JUROR:  Present.

10             COURTROOM CLERK:  Juror number 38, Christy Rice.

11             PROSPECTIVE JUROR:  Present.

12             COURTROOM CLERK:  Juror number 39, Brittany Schindler.

13             PROSPECTIVE JUROR:  Present.

14             COURTROOM CLERK:  Juror number 40, Jonathan Smith.

15             PROSPECTIVE JUROR:  Present.

16             COURTROOM CLERK:  Juror number 41, Patricia Stoermer.

17             PROSPECTIVE JUROR:  Present.

18             COURTROOM CLERK:  Juror number 42, Mabel Twumasi.

19       Juror number 42, Mabel Twumasi.

20             THE COURT:  Show cause.

21             COURTROOM CLERK:  Juror number 43, Gordon Weynand.

22             PROSPECTIVE JUROR:  Present.

23             COURTROOM CLERK:  Juror number 44, Allen Williams.

24             PROSPECTIVE JUROR:  Present.

25             COURTROOM CLERK:  And juror number 45, Kyle,
```

1     Williamson.

2              PROSPECTIVE JUROR:  Present.

3              COURTROOM CLERK:  Is there any juror whose name I have

4     not called?

5              THE COURT:  All right.  You may administer the oath to

6     the panel, please.

7              COURTROOM CLERK:  Ladies and gentlemen of the jury,

8     will you please stand, raise your right hands, and respond after

9     the oath by stating "I shall."

10             Do you swear that you shall true and perfect answer

11    make to such questions as may be propounded to you by the Court

12    so help you God?

13             PROSPECTIVE JUROR PANEL:  (Collectively.)  I shall.

14             COURTROOM CLERK:  Thank you.  Please be seated.

15             THE COURT:  Ladies and gentlemen, I'm now going to ask

16    you a series of questions.  As I told you earlier, I'm going to

17    rely on your answers in order to ascertain whether any of you

18    may be disabled by any rule of law from serving as a juror in

19    this case.

20             Now, there will be two parts to my questions to you.

21    In the first part I will be asking you questions in a series

22    of -- well, singular questions, and if you have an affirmative

23    answer, raise your hands.  The court security officer will take

24    a microphone to you and hand you the microphone, and you can

25    answer with this microphone.

1          The second phase or the second group of questions will

2     be in a series of three.  And I ask it in a series of three so

3     that it won't be evident which question you have an affirmative

4     answer to.  Of course if your answer is no, you need not raise

5     your hand or indicate that you have a question.

6          And for those questions, if you have an affirmative

7     answer, the court security officer won't take the microphone to

8     you, but rather we'll have you come forward here and sit in the

9     witness box.  There is a screen around you, a Plexiglass screen,

10    and I will ask you questions using the earphones and a

11    microphone so that your answers will not be heard by everyone in

12    the courtroom.  They will be heard only by the lawyers, myself,

13    and the defendant.  And that is done to preserve your privacy as

14    to any information you may have to provide in response to my

15    questions, and also to avoid having any information that may

16    disable you from serving as a juror from also disabling others.

17         So I'll begin now by asking you the first series of

18    questions.  First I want to know whether any of you have seen or

19    read or heard or know anything about this case from any source

20    whatever.  Now, I ask that question not because it's likely or

21    probable that you have, but merely out of an abundance of

22    caution, to ensure that if any of you know anything at all about

23    this case, that that is brought promptly to the Court's

24    attention.

25         The second question in this first series of three is

1    whether you or any member of your immediate family have ever

2    been the victim of child sexual abuse.

3            And the third question - and I'll repeat these three in

4    a minute - have you or any member of your family, or immediate

5    family, ever been a defendant in a criminal case or ever been

6    accused of a crime by federal, state, or local prosecutors.

7            I said I'll repeat those to you.  What I omitted doing

8    is to tell you what the charges are in this case.  I'm going to

9    read those charges against the defendant from the indictment.

10   But I hasten to instruct you that the indictment itself is not

11   proof or evidence of guilt whatsoever, it is merely the

12   government's means of accusing a defendant of a crime.  And this

13   defendant has pled not guilty to those crimes, and therefore

14   must be presumed by you to be innocent of those crimes unless

15   and until a jury finds otherwise.

16           So I will read to you now excerpts from the indictment.

17   There are 12 counts.  The first five counts are the following:

18   In separate instances, on or about five specific dates, within

19   the Eastern District of Virginia, Zackary Ellis Sanders

20   attempted to and did employ, use, persuade, induce, entice, and

21   coerce a minor to engage in sexually explicit conduct for the

22   purpose of producing a visual depiction of such conduct, knowing

23   and having reason to know that such visual depiction would be

24   transported or transmitted using any means and facility of

25   interstate and foreign commerce, and in and affecting interstate

 1    and foreign commerce and mail, and which visual depiction was

 2    actually transported, transmitted using any means and facility

 3    of interstate and foreign commerce, and in and affecting

 4    interstate and foreign commerce and mail, and which visual

 5    depiction was produced using materials that have been mailed,

 6    shipped, and transported, affecting interstate and foreign

 7    commerce, by any means, including by computer; to wit, digital

 8    visual depictions of different minors engaged in sexually

 9    explicit conduct.  And as I said, there are five separate

10    charges of that sort on five separate dates.

11            The next six charges are the following:  In separate

12    instances, on or about dates set below - that means the six

13    dates that are set forth in the indictment - within the

14    Eastern District of Virginia, the defendant, Zackary Ellis

15    Sanders, attempted to and did receive a visual depiction, using

16    any means and facility of interstate and foreign commerce, and

17    that had been mailed and had been shipped and transported in and

18    affecting interstate and foreign commerce, and which contained

19    materials which had been mailed and so shipped and transported

20    by any means, including by computer, and the production of such

21    visual depiction involved the use of a minor engaging in

22    sexually explicit conduct, and the visual depiction was of such

23    conduct; to wit, digital visual depictions of different minors

24    engaged in sexually explicit conduct on the following, and there

25    are six dates.  All in violation of Section 2252(a) and (a)(2)

1    and (b)(1).

2         And then the 12th charge is the following:  That in or

3    about February 2013, within the Eastern District of Virginia,

4    the defendant, Zackary Ellis Sanders, knowingly possessed at

5    least one matter which contained a visual depiction that had

6    been mailed or had been shipped or transported using any means

7    or facility of interstate or foreign commerce, or in and

8    affecting interstate or foreign commerce, or which was produced

9    using materials which had been mailed or so shipped or

10   transported by any means, including by computer, and the

11   production of such visual depiction involved the use of a minor

12   engaging in sexually explicit conduct, and such visual depiction

13   was of such conduct; to wit, digital visual depictions of

14   minors, including prepubescent minors and minors who had not

15   attained the age of 12 years of age, engaged in sexually

16   explicit conduct stored on a Sandisk Cruzer Edge thumb drive, an

17   HP Elite Book 755 laptop, a Lexar thumb drive, an HP laptop, and

18   an HP -- second HP laptop, all in violation of Title 18

19   U.S. Code Section 2252(a)(4)(B) and (b)(2).

20        As I told you, ladies and gentlemen, I have just read

21   to you from the indictment.  The indictment itself is not proof

22   or evidence of guilt of any kind whatsoever.  The defendant has

23   pled not guilty to those crimes, and therefore must be presumed

24   by you to be innocent of those crimes unless and until the

25   Government [sic] find otherwise.

1          Now, let me repeat these first three questions that I

2     posed to you.  Let me begin first by having you,

3     Mr. Schlessinger, stand, introduce yourself, your co-counsel,

4     and your case agent to the panel.

5          MR. SCHLESSINGER:  Thank you, Your Honor.  Ladies and

6     gentlemen, good afternoon.  My name is Seth Schlessinger.  Up

7     here at the table with me are Bill Clayman and Jay Prabhu.  We

8     are prosecutors with the Department of Justice and we represent

9     the United States in this case.  Also here with us, Special

10    Agent Christopher Ford with the FBI, and Loraine McNeill, a

11    paralegal in our office.  Once again, good afternoon.

12         THE COURT:  All right.  Ladies and gentlemen, do you or

13    any member of your family, so far as you know, know any of these

14    individuals, or have you had any business or social dealings of

15    any kind whatsoever with any of them?  If your answer is yes,

16    please raise your hand.  The record will show no hands.

17         Mr. Schlessinger and his colleagues are members of the

18    U.S. Attorney's Office of the Eastern District of Virginia.  I

19    want to know whether you or any member of your family, so far as

20    you know, has had any business or social dealings of any kind

21    whatsoever with any of the lawyers or employees of the

22    U.S. Attorney's Office for the Eastern District of Virginia.

23    Raise your hands if your answer is yes.  And the record will

24    reflect no raised hands.  We will continue.

25         Did you introduce Agent Cook, I think it is?

1              MR. SCHLESSINGER:  Agent Ford.

2              THE COURT:  Did you stand, Agent Ford?

3              SPECIAL AGENT FORD:  Yes, sir.

4              THE COURT:  Do you or any member of your family --

5      Agent Ford is an FBI agent.  Do you or any member of your

6      family, so far as you know, know any agents or employees of the

7      FBI?  Raise your hands.  If there are none, you need not raise

8      your hand.  All right.  No hands are raised.

9              I didn't ask you this, but I think I will.  The

10     U.S. Attorney's Office, I asked you about that, but I think I

11     want to ask you whether you or any member of your family, so far

12     as you know, know any of the employees or attorneys with the

13     Department of Justice, and have you had any business or social

14     dealings of any kind whatsoever with any of them.  If you would

15     raise your hands.  One hand raised.  All right.  Hand that

16     person a microphone.

17             What is your name, please?

18             PROSPECTIVE JUROR:  Wendy Jensen.

19             THE COURT:  Who do you know in the Department of

20     Justice?

21             PROSPECTIVE JUROR:  I'm an attorney recruiter, so I've

22     placed numerous attorneys from the Department of Justice.

23             THE COURT:  All right.  And is the Department of

24     Justice a client of yours, or are these individuals clients?

25             PROSPECTIVE JUROR:  Individual clients, Your Honor.

1          THE COURT:  All right.  And none of these individuals

2    who were introduced today are your clients?

3          PROSPECTIVE JUROR:  No.

4          THE COURT:  Do you feel that having your position as a

5    legal recruiter or as a recruiter of lawyers would prevent or

6    hinder you in any way from rendering a fair and an impartial

7    verdict in this case based only on the evidence and the Court's

8    instructions on the law?

9          PROSPECTIVE JUROR:  No, I don't.

10         THE COURT:  Now, I take it -- you're Ms. Jensen?

11         PROSPECTIVE JUROR:  Correct.

12         THE COURT:  I take it you have a lot of clients who

13   have nothing to do with the Department of Justice?

14         PROSPECTIVE JUROR:  Correct.

15         THE COURT:  So it's only some of your clients that are.

16   Is that correct?

17         PROSPECTIVE JUROR:  Yes.  I've also placed attorneys

18   from the U.S. Attorney's Office.

19         THE COURT:  And do you have any current clients at the

20   U.S. Attorney's Office?

21         PROSPECTIVE JUROR:  Me personally, no.  But my partners

22   may.

23         THE COURT:  But you don't know whether they do or

24   don't?

25         PROSPECTIVE JUROR:  I don't know.

1           THE COURT:  Do you feel that that would prevent - that

2    is, your employment and the fact that you have clients in the

3    U.S. Attorney's Office -- or may have.  You don't know that you

4    do.  Is that correct?

5           PROSPECTIVE JUROR:  Correct.  Currently.

6           THE COURT:  Do you feel that would prevent or hinder

7    you in any way from rendering a fair and an impartial verdict in

8    this case based only on the evidence and the Court's

9    instructions on the law?

10          PROSPECTIVE JUROR:  No.

11          THE COURT:  Thank you, Ms. Jensen.  Anyone else?  One

12   more here.

13          Yes, sir, your name, please, sir?

14          PROSPECTIVE JUROR:  Gerard Poliquin.

15          THE COURT:  Tell me your name once again, please sir.

16          PROSPECTIVE JUROR:  Gerard Poliquin.

17          THE COURT:  Mr. Poliquin, whom do you know in the

18   Department of Justice?

19          PROSPECTIVE JUROR:  I do not know any of the lawyers in

20   this particular case, but I'm a government enforcement attorney

21   and we do a lot of business with the U.S. Attorney's Office,

22   Department of Justice, and the FBI.

23          THE COURT:  Now, your employer is who.

24          PROSPECTIVE JUROR:  National Credit Union

25   Administration.

93

```
1              THE COURT:  What do you do for that employer?

2              PROSPECTIVE JUROR:  I'm a trial attorney, primarily

3    involved in litigation and enforcement.

4              THE COURT:  What kinds of cases?

5              PROSPECTIVE JUROR:  Primarily bank fraud, credit union

6    fraud.

7              THE COURT:  Is your employer a government agency?

8              PROSPECTIVE JUROR:  Yes, sir.

9              THE COURT:  Do you feel that your employment would

10   prevent or hinder you in any way from rendering a fair and an

11   impartial verdict in this case based only on the evidence and

12   the Court's instructions?

13             PROSPECTIVE JUROR:  I do not.

14             THE COURT:  I take it you do know attorneys who are in

15   the Department of Justice?

16             PROSPECTIVE JUROR:  Yes, sir.

17             THE COURT:  And do you work with them in your work?

18             PROSPECTIVE JUROR:  I do.

19             THE COURT:  Do you feel that that would prevent or

20   hinder you in any way from rendering a fair and impartial

21   verdict in this case?

22             PROSPECTIVE JUROR:  I do not.

23             THE COURT:  And confirm for me again whether you know

24   any of the attorneys that were introduced to you here on --

25             PROSPECTIVE JUROR:  I do not, no.
```

```
 1                    THE COURT:  I didn't hear you.

 2                    PROSPECTIVE JUROR:  No, sir, I don't.

 3                    THE COURT:  Thank you, Mr. Poliquin.  Anyone else?  No

 4      other hands were raised.

 5                    Let's turn now to you, Ms. Ginsberg.  Would you stand,

 6      introduce yourself, your client, and your co-counsel to the

 7      panel, please.

 8                    MS. GINSBERG:  Good afternoon.  My name is

 9      Nina Ginsberg.  I'm an attorney in private practice with

10      DiMuro Ginsberg in Alexandria, Virginia.  This is

11      Zackary Sanders.  He's my client and the defendant in this case.

12      He's represented by Mr. Sirkin of the firm of Santen & Hughes in

13      Cincinnati, Ohio, and by John Jeffress and Jade Chong-Smith with

14      the firm of KaiserDillon in the District of Columbia.  And we

15      have Leanna Feinleib, also from that same firm, who is helping

16      us as a paralegal for this trial.

17                    THE COURT:  All right.  Ladies and gentlemen, do you or

18      any member of your family, so far as you know, know any of these

19      individuals, or have you had any business or social dealings of

20      any kind whatsoever with any of them?  The record will reflect

21      no hands have been raised.

22                    Now, you heard that Ms. Ginsberg was a member of the

23      firm of DiMuro & Ginsberg.  Do I have that right?

24                    MS. GINSBERG:  That's correct, Your Honor.

25                    THE COURT:  And Mr. Sirkin is a member of what firm?
```

1              MR. SIRKIN:  Santen & Hughes.

2              THE COURT:  And that's in Cincinnati, Ohio.  And

3      Mr. Jeffress, your firm is what, again?

4              MR. JEFFRESS:  KaiserDillon.

5              THE COURT:  Located?

6              MR. JEFFRESS:  In Washington, D.C.

7              THE COURT:  Ladies and gentlemen, do you or any member

8      of your family, so far as you know, know any of the employees or

9      lawyers in those firms, or have you had any business or social

10     dealings of any kind whatsoever with any of them? No hands were

11     raised.

12             All right.  Next, ladies and gentlemen, I want to know

13     whether any of you have served on any juries in the past, on any

14     grand juries or trial juries, in either state, federal, or local

15     courts.  If you would raise your hands.  I see a few veterans

16     here.

17             May I have your name, please.

18             PROSPECTIVE JUROR:  Beth Feldpush.

19             THE COURT:  Would you say your name again, please.

20             PROSPECTIVE JUROR:  Beth Feldpush.

21             THE COURT:  Yes, Ms. Feldpush, what juries have you

22     served on in the past?

23             PROSPECTIVE JUROR:  I served on a jury in the

24     District of Columbia about 10 years ago.  It was a civil case.

25             THE COURT:  And what was the nature of the case on

1    which you served?

2            PROSPECTIVE JUROR:  It was a car accident and some

3    damage that resulted from it.

4            THE COURT:  And was the jury on which you served able

5    to reach a unanimous verdict, without telling me what the

6    verdict was?

7            PROSPECTIVE JUROR:  Yes, we did.

8            THE COURT:  Have you had any other jury service,

9    Ms. Feldpush?

10           PROSPECTIVE JUROR:  I have not.

11           THE COURT:  Thank you.  You may be seated.

12           Next.  Your name, please?

13           PROSPECTIVE JUROR:  Wendy Jensen.

14           THE COURT:  What juries have you served on in the past?

15           PROSPECTIVE JUROR:  I served on a jury in the

16   District of Columbia probably 25 years ago, and it was a

17   criminal trial.

18           THE COURT:  What was the nature of the crime involved?

19           PROSPECTIVE JUROR:  Murder.

20           THE COURT:  And was the jury on which you served able

21   to reach a unanimous verdict?

22           PROSPECTIVE JUROR:  Yes, we were.

23           THE COURT:  Thank you, Ms. Jensen.  Any other jury

24   service?  Ms. Jensen, any other jury service?

25           PROSPECTIVE JUROR:  No, Your Honor.

```
 1                    THE COURT:  Thank you, Ms. Jensen.

 2               Next.  Your name, please.

 3               PROSPECTIVE JUROR:  Regina Goffus, G-O-F-F-U-S.

 4               THE COURT:  Yes, Ms. Goffus.  What juries have you

 5     served on in the past?

 6               PROSPECTIVE JUROR:  Prince William County in 1995.

 7               THE COURT:  And what was the nature of the case on

 8     which you served?

 9               PROSPECTIVE JUROR:  A criminal case.

10               THE COURT:  And the nature of the crime involved?

11               PROSPECTIVE JUROR:  A child died.  A child was killed.

12               THE COURT:  You say a child was killed.  Can you be a

13     little more specific?

14               PROSPECTIVE JUROR:  Shaken baby syndrome.

15               THE COURT:  I'm not sure I know what conveyance

16     syndrome is.

17               PROSPECTIVE JUROR:  Shaken baby syndrome.

18               THE COURT:  All right.  And was the jury on which you

19     served able to reach a unanimous verdict?

20               PROSPECTIVE JUROR:  Yes.

21               THE COURT:  Any other jury service?

22               PROSPECTIVE JUROR:  No.

23               THE COURT:  Thank you.  You may be seated.

24               Anyone else?  May I have your name, please?

25               PROSPECTIVE JUROR:  Sylvia Cook.
```

1           THE COURT:  Yes, Ms. Cook, what juries have you served

2    on in the past?

3           PROSPECTIVE JUROR:  Prince William County, about

4    10 years ago.

5           THE COURT:  What was the nature of the case?

6           PROSPECTIVE JUROR:  It was brandishing a firearm.

7           THE COURT:  Criminal case?

8           PROSPECTIVE JUROR:  Yes.

9           THE COURT:  And without telling me what the jury

10   decided, was the jury on which you served able to reach a

11   unanimous verdict?

12          PROSPECTIVE JUROR:  Yes.

13          THE COURT:  Any other jury service, Ms. Cook?

14          PROSPECTIVE JUROR:  No.

15          THE COURT:  Next.  Has everyone had a chance to tell me

16   about your past jury service, trial jury or grand jury, at

17   either state local, or federal court?  All right.  We will go

18   on.

19          Are you or any member of your family employed by any

20   law enforcement agency.  If you would raise your hands, please.

21          All right.  One hand.

22          PROSPECTIVE JUROR:  Yes, sir.  It's the National Credit

23   Union Administration.  We have civil litigation authority, not

24   criminal authority.

25          THE COURT:  And your name again, sir?

1          PROSPECTIVE JUROR:  Gerard Poliquin.

2          THE COURT:  Yes, Mr. Poliquin.  All right.  Do you feel

3     that your employment as such would prevent or hinder you in any

4     way from rendering a fair and an impartial verdict in this case

5     based only on the evidence and the Court's instructions on the

6     law?

7          PROSPECTIVE JUROR:  No, sir.

8          THE COURT:  Do you cooperate with Department of Justice

9     prosecutions in your cases?

10         PROSPECTIVE JUROR:  Yes, we do.

11         THE COURT:  Do you feel that that would prevent or

12    hinder you in any way from rendering a fair and an impartial

13    verdict in this case based only on the evidence and the Court's

14    instructions on the law?

15         PROSPECTIVE JUROR:  No, Judge.

16         THE COURT:  You may be seated.

17         Anyone else?  There's one over here to my left.

18         Your name, please, sir?

19         PROSPECTIVE JUROR:  Joshua Mecham, M-E-C-H-A-M.

20         THE COURT:  Mr. Mecham, what is your connection with

21    law enforcement?

22         PROSPECTIVE JUROR:  I'm a contractor for a federal law

23    enforcement agency.

24         THE COURT:  Which one?

25         PROSPECTIVE JUROR:  Customs & Border Protection.

1          THE COURT:  And what do you do for them?

2          PROSPECTIVE JUROR:  I assist with the development of

3   systems that the officers use.

4          THE COURT:  Can you be more explicit than "systems"?

5          PROSPECTIVE JUROR:  The primary and secondary

6   inspection systems that they enter their findings into.

7          THE COURT:  Do you have any law enforcement

8   responsibilities?

9          PROSPECTIVE JUROR:  No.

10          THE COURT:  Do you feel that your employment would in

11   any way hinder or impair your ability to be a fair and an

12   impartial juror in this case, and reach a fair and an impartial

13   verdict based only on the evidence and the Court's instructions

14   on the law?

15          PROSPECTIVE JUROR:  No, Your Honor.

16          THE COURT:  All right.  Thank you, Mr. Mecham.  You may

17   be seated.

18          Anyone else?  All right.  The record will reflect no

19   other hands have been raised.

20          Now, ladies and gentlemen, I want to ask you whether

21   any of you, when you filled out your COVID questionnaire for the

22   court -- you'll recall that you had to respond to questions 2

23   through 5, and your answers at that time were "no."  And I want

24   to know whether your answers have changed in any way to

25   questions 2 through 5.  And if you need me to repeat those

1    questions, simply ask and I will do so.  I'll repeat them

2    anyway, just to be sure.

3            As you can see, we take special care to ensure the

4    health and safety of all jurors and prospective jurors.  We have

5    enforced social distancing, and we use masks except when you're

6    behind Plexiglass enclosures, as I am here, more than 40 to 50

7    feet away from everybody.

8            Here are the first questions, 2 through 5:  Have you

9    been diagnosed with COVID-19 or had contact with anyone who has

10   been diagnosed with COVID-19.

11           The second one is:  Have you been directed to

12   quarantine or isolate.

13           The third is:  Have you experienced a fever or chills,

14   persistent cough, shortness of breath, or difficulty breathing,

15   a new loss of taste or smell, or other flu-like symptoms.

16           And the fifth one is:  Have you resided with or been in

17   close contact with any person in the above-mentioned categories.

18           Previously you all answered "no" to those questions.  I

19   want to know whether your answers would change now in the

20   interim.  Anybody have new information they want to give me?

21   All right.  The record will reflect no hands, and so I will

22   proceed.

23           Now, ladies and gentlemen, I'm going to go to the

24   second phase of the voir dire in which I will ask you a series

25   of questions, and I do it in a series of three so it will not be

1    evident to everyone which question you have an affirmative

2    answer to.

3              Has any one of you, have you seen or read or heard or

4    know anything about this case from any source whatever.  And I

5    ask that not because it's likely that you have, but merely out

6    of an abundance of caution, to be sure that if any of you know

7    anything about this case from any source whatever, that it is

8    brought promptly to the Court's attention.

9              The second question is, have you or any member of your

10   family or any close friend ever been the victim of child sexual

11   abuse.

12             Third, have you or any member of your immediate family

13   ever been a defendant in a criminal case, or ever been accused

14   of a crime by any federal, state, or local prosecutor.

15             If your answer is "yes" to any of those, I want you to

16   come forward, and you'll be asked to sit in the witness box

17   here, and we'll use microphones and earphones to communicate so

18   that the answers you give will not be public.  It will preserve

19   your confidentiality as to any information you may be required

20   to give me in response to the questions, and it will also avoid

21   having any other juror in any way affected by your answers.

22             All right.  Come forward if your answer was "yes" to

23   any of those.

24             (JUROR CONFERENCE ON THE RECORD.)

25             THE COURT:  May I have your name, please, sir?

103

```
 1                    PROSPECTIVE JUROR:  Carol Bachmann.
 2                    THE COURT:  Yes, Ms. Bachmann, what is your occupation?
 3                    PROSPECTIVE JUROR:  I'm retired.
 4                    THE COURT:  Retired from what, Ms. Bachmann?
 5                    PROSPECTIVE JUROR:  The Navy.
 6                    THE COURT:  What did you do in the Navy?
 7                    PROSPECTIVE JUROR:  I was an officer.
 8                    THE COURT:  What was your rank on retirement?
 9                    PROSPECTIVE JUROR:  04, Lieutenant Commander.
10                    THE COURT:  All right.  And what did you do in the
11     Navy?
12                    PROSPECTIVE JUROR:  I guess leadership and management.
13                    THE COURT:  All right.
14                    PROSPECTIVE JUROR:  My last command was I was
15     commanding officer of a ship repair facility.
16                    THE COURT:  And where was that located?
17                    PROSPECTIVE JUROR:  Long Beach, California.
18                    THE COURT:  All right.  Thank you for your service.
19     Now, which question do you have an answer to?
20                    PROSPECTIVE JUROR:  I was the victim of child abuse.
21                    THE COURT:  Now, Ms. Bachmann, how old were you when
22     you suffered this abuse?
23                    PROSPECTIVE JUROR:  11.
24                    THE COURT:  And was the person who committed the abuse
25     a family member?
```

1            PROSPECTIVE JUROR:  No.

2            THE COURT:  Was the person who committed the abuse

3    prosecuted and convicted?

4            PROSPECTIVE JUROR:  No.

5            THE COURT:  Was the person ever accused?

6            PROSPECTIVE JUROR:  He died shortly thereafter.

7            THE COURT:  Now, you understand, Ms. Bachmann, that

8    what happened to you has nothing whatever to do with this case?

9            PROSPECTIVE JUROR:  Of course.

10            THE COURT:  Do you feel you can put your feelings - and

11    I can tell they're strong feelings, as understandably they would

12    be - to one side and judge this case fairly and impartially

13    based only on the evidence and the Court's instructions on the

14    law?

15            PROSPECTIVE JUROR:  To be honest, I'm not sure,

16    Your Honor.

17            THE COURT:  All right.  Thank you, Ms. Bachmann.

18    Remove your earphones for just a minute but stay there.

19            Mr. Schlessinger, any objection to striking this person

20    for cause?

21            MR. SCHLESSINGER:  No objection to striking her.

22            THE COURT:  Ms. Ginsberg?

23            MS. GINSBERG:  No objection.

24            THE COURT:  All right.  She is stricken for cause.

25            MS. GINSBERG:  Judge, the last panel you read out the

1    names of the witnesses and asked if the jurors had any

2    connection or knowledge of the witnesses.  You haven't done

3    that.

4              THE COURT:  Yes, thank you for reminding me.  I haven't

5    done that, you're quite right.  I will do so.

6              MS. GINSBERG:  Thank you, sir.

7              THE COURT:  Thank you.  You may step down.

8              May I have your name, please?

9              PROSPECTIVE JUROR:  Kurt Abendschein.

10             THE COURT:  Yes, which questions do you have an answer

11   to?

12             PROSPECTIVE JUROR:  The sexual abuse question.

13             THE COURT:  Yes, sir.  Go ahead.

14             PROSPECTIVE JUROR:  In middle school I was coerced into

15   performing sex acts on older men, and I am currently seeking

16   therapy for sex addiction.

17             THE COURT:  All right.  Were these older men caught,

18   prosecuted, and convicted of sexual abuse?

19             PROSPECTIVE JUROR:  I have no idea.  I hope so.

20             THE COURT:  Now, you say you are currently in therapy?

21             PROSPECTIVE JUROR:  Yes.  I have been for several

22   years.

23             THE COURT:  Is that therapy growing out of that

24   experience?

25             PROSPECTIVE JUROR:  I'm sorry, repeat the question?

106

1           THE COURT:  Is the therapy you are undergoing, did it

2     grow out of this abuse that you suffered as a youngster?

3           PROSPECTIVE JUROR:  I think it was a big part of it,

4     absolutely.

5           THE COURT:  All right.  And what is it, other than

6     that, that you are receiving this counseling for?

7           PROSPECTIVE JUROR:  Just the sex addiction.

8           THE COURT:  That you have?

9           PROSPECTIVE JUROR:  Yes.

10          THE COURT:  All right.  Put your earphones down, if you

11    would, for a minute.  I want to...

12          PROSPECTIVE JUROR:  Of course.

13          THE COURT:  Mr. Schlessinger, any objection to striking

14    this person?

15          MR. SCHLESSINGER:  No objection.

16          THE COURT:  Ms. Ginsberg?

17          MS. GINSBERG:  No objection.

18          THE COURT:  All right.  He is stricken.

19          All right, sir.  Thank you.  You may step down.

20          PROSPECTIVE JUROR:  Thank you.  Do I go back to my

21    seat?

22          THE COURT:  Yes, you may return to your seat.

23          May I have your name, please?

24          PROSPECTIVE JUROR:  Candice Alidoosti.

25          THE COURT:  Yes, Ms. Alidoosti, which question do you

1    have an answer to?

2              PROSPECTIVE JUROR:  My brother was convicted of a

3    crime.

4              THE COURT:  And what's the crime your brother was

5    convicted of?

6              PROSPECTIVE JUROR:  Theft by taking and drug charges.

7              THE COURT:  And was he convicted?

8              PROSPECTIVE JUROR:  Yes.

9              THE COURT:  And did he serve a sentence?

10             PROSPECTIVE JUROR:  Yes.

11             THE COURT:  Do you feel that the legal system operated

12   fairly in that context?

13             PROSPECTIVE JUROR:  Yes.

14             THE COURT:  You understand that what your brother did

15   and what he went through has nothing whatever to do with this

16   case?

17             PROSPECTIVE JUROR:  Yes.

18             THE COURT:  Do you feel you can put your feelings about

19   your brother's experience to one side and judge this case fairly

20   and impartially based only on the evidence presented and the

21   Court's instructions on the law?

22             PROSPECTIVE JUROR:  Yes.

23             THE COURT:  Do you have answers to any of the other

24   questions I put to you?

25             PROSPECTIVE JUROR:  No.

```
 1              THE COURT:  Thank you, Ms. Alidoosti.  You may return
 2    to your seat.
 3              PROSPECTIVE JUROR:  Thank you.
 4              THE COURT:  May I have your name, please, sir?
 5              PROSPECTIVE JUROR:  Steven Ellis.
 6              THE COURT:  Yes, Mr. Ellis, would you confirm for me
 7    that you and I are not related in any way?
 8              PROSPECTIVE JUROR:  Not that I'm aware of.
 9              THE COURT:  My mother's family came from a Jewish
10    shtetl in the Ukraine.  Do you have any Jewish relatives from
11    the Ukraine?
12              PROSPECTIVE JUROR:  None that I know of.
13              THE COURT:  They came in the early twentieth century.
14    And my father's family came from Surrey in England in the early
15    twentieth century.  Do you have any relatives there?
16              PROSPECTIVE JUROR:  Not that I know of.  My
17    grandparents were from Florida on the Ellis side.
18              THE COURT:  All right.  I have no family from Florida
19    ever, to my disappointment.  It's a nice place to live.
20              Mr. Ellis, can you tell me what affirmative answers you
21    have to the questions I asked?
22              PROSPECTIVE JUROR:  Your second question was about
23    whether anyone in my family had been party to sexual assault as
24    a minor.  My younger sister made accusations against my
25    stepfather in the late '80s.  As best I'm aware, no charges were
```

1    ever filed.

2           THE COURT:  Do you feel that your sister, her

3    accusations, were valid?

4           PROSPECTIVE JUROR:  It's not clear.

5           THE COURT:  You understand that what your sister said

6    happened to her has nothing whatever to do with this case?

7           PROSPECTIVE JUROR:  Correct.

8           THE COURT:  Do you feel you can put your feelings about

9    that to one side and judge this case fairly and impartially

10   based only on the evidence presented and the Court's

11   instructions on the law?

12          PROSPECTIVE JUROR:  Yes.

13          THE COURT:  Do you have answers to any of the other

14   questions that I asked, Mr. Ellis?

15          PROSPECTIVE JUROR:  No.

16          THE COURT:  Thank you, sir.  You may return to your

17   seat.

18          Turn off the noise for a minute, please.

19          (END JUROR CONFERENCE.)

20          THE COURT:  Ladies and gentlemen, I understand that

21   some of you would like very much to have a very brief bathroom

22   break.  I'm going to permit that.  But everyone has to be in

23   here when I ask the questions in a series of three, and if you

24   have an answer, you can't leave until after you've given that

25   answer.

1          And I want the court security officers to take note of

2    who leaves and who comes back, so I need to know from you before

3    I start the next series of three questions that everyone is

4    back.  Is that clear?

5          COURT SECURITY OFFICER:  Yes, Your Honor.

6          THE COURT:  All right, thank you.  Noise again, please.

7          (JUROR CONFERENCE ON THE RECORD.)

8          THE COURT:  Yes, sir.  May I have your name, please,

9    sir?

10         PROSPECTIVE JUROR:  Jonathan Smith.

11         THE COURT:  All right.  Mr. Smith, which of the

12   questions that I asked do you have an answer to?

13         PROSPECTIVE JUROR:  May you repeat them again?

14         THE COURT:  Yes, sir, I can.  First is, have you seen

15   or read or heard or know anything about this case from any

16   source whatever.  And I said I asked that question not because

17   it's likely or probable that you have, but merely out of an

18   abundance of caution, to ensure that if you do know anything

19   about this case from any source, that it is brought promptly to

20   the Court's attention.

21         The second question was, have you or any member of your

22   family, or any close friend, ever been the victim of child

23   sexual abuse.

24         The third question is, have you or any member of your

25   immediate family ever been a defendant in a criminal case, or

1    ever been accused of a crime by any federal, state, or local

2    prosecutor.

3            Does that help you?

4            PROSPECTIVE JUROR:  That does help me, Your Honor.

5    Number two.

6            THE COURT:  All right, sir.  What's your answer?

7            PROSPECTIVE JUROR:  I have a friend of mine that was

8    molested in Jamaica when he was little, by three women, and his

9    daughter was molested as well when she was living with her

10   mother in Virginia as well.

11           THE COURT:  All right.  Now, were the people who

12   molested your brother, I think you said it was?

13           PROSPECTIVE JUROR:  No, a friend of mine.

14           THE COURT:  Were they caught, prosecuted, and convicted

15   by any authority?

16           PROSPECTIVE JUROR:  In Jamaica, no.  And here, no as

17   well.

18           THE COURT:  All right.  So you say that -- who was it

19   who was molested here?

20           PROSPECTIVE JUROR:  It was my really close friend and

21   his daughter.  She's now 27.

22           THE COURT:  And nobody was prosecuted or arrested for

23   any of those.  Is that correct?

24           PROSPECTIVE JUROR:  That's correct, Your Honor.

25           THE COURT:  And I take it you have feelings about that?

1      PROSPECTIVE JUROR:  Most definitely, I do.

2      THE COURT:  Do you think you can put those feelings

3  aside and judge this case fairly and impartially based only on

4  the evidence and the Court's instructions on the law?  Because

5  as you know, those instances have nothing whatever to do with

6  this case.

7      PROSPECTIVE JUROR:  That's correct, Your Honor.  It's

8  very difficult for me to do that when there is child sexual

9  abuse involved.  It's just something personal that I have a hard

10 time dealing with, when I hear somebody else does that to

11 minors.

12     THE COURT:  All right, sir.  You want to tell me

13 anything more, or does that encapsulate your feelings?

14     PROSPECTIVE JUROR:  That encapsulates my feelings,

15 Your Honor.

16     THE COURT:  Let me ask you again.  I think you did

17 answer.  Do you think you could put those feelings - and you

18 said they were strong feelings - to one side and judge this case

19 fairly and impartially based only on the evidence and the

20 Court's instructions on the law?

21     PROSPECTIVE JUROR:  I don't think I could.  If I did

22 say that, I would be lying, and I don't lie in the court.

23     THE COURT:  Thank you, sir.  You may remove your

24 earphones but stay up there for just a moment.

25     Mr. Schlessinger, any objection by the Government to

1    striking this prospective juror?

2              MR. SCHLESSINGER:  No objection, Your Honor.

3              THE COURT:  Ms. Ginsberg?

4              MS. GINSBERG:  No, Your Honor.

5              THE COURT:  This juror, whose name is Smith, number 40,

6    is stricken for cause.

7              Mr. Smith, you may step down and return to your seat,

8    sir.

9              May I have your name, please, sir?

10             PROSPECTIVE JUROR:  My name is Allen Williams.

11             THE COURT:  Which question do you have an affirmative

12   answer to?

13             PROSPECTIVE JUROR:  This is for child pornography,

14   sexual molestation.

15             THE COURT:  Yes, sir.

16             PROSPECTIVE JUROR:  When I was a child I had some

17   childhood friends who were sexually abused by a man who was

18   later convicted of that crime.  This would have been in the

19   early '70s, '72 to '76.  And within the last 10 years, a person

20   from our church was convicted of possession of child

21   pornography.

22             THE COURT:  All right, sir.  With respect to the first

23   one, do you have strong feelings about what happened to your

24   friends?

25             PROSPECTIVE JUROR:  Relatively so.  I haven't seen

1    those friends in years, you know, so...

2         THE COURT:  Do you feel you could put those feelings to

3    one side and judge this case?  Because what happened to -- who

4    was it, again, a friend?

5         PROSPECTIVE JUROR:  Yeah, a couple of friends.

6         THE COURT:  What happened to your friends has nothing

7    to do with this case.  Do you feel you could put your feelings

8    about what happened to them to one side and judge this case

9    fairly and impartially based only on the evidence presented and

10   the Court's instructions on the law?

11        PROSPECTIVE JUROR:  Yes, I think so.

12        THE COURT:  You think so, or can you be certain?

13        PROSPECTIVE JUROR:  Yes, I can be certain.

14        THE COURT:  Now, the second thing you mentioned, tell

15   me that again.

16        PROSPECTIVE JUROR:  So that was a person in our church

17   hierarchy charged with sexual pornography possession.  The

18   reason I bring that up is, I actually helped this gentleman move

19   apartments, so I had not seen any incriminating information, but

20   I had been involved with him to some degree.

21        THE COURT:  And was he prosecuted for child pornography

22   possession?

23        PROSPECTIVE JUROR:  Correct.  And he was convicted.

24        THE COURT:  In federal court?

25        PROSPECTIVE JUROR:  I think it was in Virginia state

1    court.

2         THE COURT:  And do you think he was treated fairly in

3    that process?

4         PROSPECTIVE JUROR:  As far as I know.  I wasn't in the

5    trial.

6         THE COURT:  Do you feel you can put your feelings about

7    that matter to one side and judge this case fairly and

8    impartially based only on the evidence presented and the Court's

9    instructions on the law?

10        PROSPECTIVE JUROR:  Yes.

11        THE COURT:  Do you have affirmative answers to any of

12   the other questions I asked, Mr. Williams?

13        PROSPECTIVE JUROR:  No.

14        THE COURT:  Thank you, sir.  You may return to your

15   seat.

16        May I have your name, please?

17        PROSPECTIVE JUROR:  It's Yesenia Mendez Rodriguez.

18        THE COURT:  All right.  Do you go by Mendez or by

19   Mendez Rodriguez?

20        PROSPECTIVE JUROR:  Mendez.

21        THE COURT:  Ms. Mendez, what question do you have an

22   affirmative answer to?

23        PROSPECTIVE JUROR:  Yes, of course.  I guess my main

24   question was, I know somebody who was sex trafficked.  I didn't

25   know if that was part of the trial, domestic sex abuse.  I just

1    wanted to make sure I had the information correct and wasn't

2    withholding anything.

3            THE COURT:  You say you have a friend who was sex

4    trafficked.  Is that right?

5            PROSPECTIVE JUROR:  A family friend, yes.

6            THE COURT:  Was she a minor when she was sex

7    trafficked?

8            PROSPECTIVE JUROR:  She was a minor.

9            THE COURT:  And was anyone caught, prosecuted, and

10   convicted for that?

11           PROSPECTIVE JUROR:  To my understanding, no.

12           THE COURT:  Now, do you have dealings about what

13   happened to your friend?

14           PROSPECTIVE JUROR:  Well, this was a friend of my

15   brother's.  It was a childhood friend.  So she wasn't directly

16   my friend, but I knew, obviously, of her.  But yes, of course

17   there was emotions towards it, but I don't think that would hold

18   any feelings or make any judgment.

19           THE COURT:  Do you understand that what happened to

20   that friend has nothing whatever to do with this case?

21           PROSPECTIVE JUROR:  That is correct.

22           THE COURT:  Do you feel you could put your feelings

23   about that case to one side and judge this case fairly and

24   impartially based only on the evidence presented here in court

25   and the Court's instructions on the law?

1            PROSPECTIVE JUROR:  Yes, sir.

2            THE COURT:  Ms. Mendez, do you have answers to any of

3    the other questions the Court put to you?

4            PROSPECTIVE JUROR:  No, I do not.

5            THE COURT:  Thank you.  You may return to your seat.

6            PROSPECTIVE JUROR:  Thank you.

7            THE COURT:  May I have your name, please?

8            PROSPECTIVE JUROR:  Wendy Jensen.

9            THE COURT:  Which question do you have an affirmative

10   answer to?

11           PROSPECTIVE JUROR:  The sexual assault question.

12           THE COURT:  Yes, ma'am.  Go ahead.

13           PROSPECTIVE JUROR:  My sister was sexually assaulted by

14   a neighbor as a child.

15           THE COURT:  Was that neighbor caught and prosecuted?

16           PROSPECTIVE JUROR:  No, he was not.

17           THE COURT:  And do you have strong feelings about what

18   happened to your sister?

19           PROSPECTIVE JUROR:  Yes, I do.

20           THE COURT:  You understand that that incident with your

21   sister has nothing whatever to do with this case?

22           PROSPECTIVE JUROR:  Yes, I do.

23           THE COURT:  Do you feel you could put your feelings

24   about what happened to your sister to one side and judge this

25   case fairly and impartially based only on the evidence and the

```
 1      Court's instructions on the law?

 2              PROSPECTIVE JUROR:  I'm not 100 percent certain.

 3              THE COURT:  Why not?

 4              PROSPECTIVE JUROR:  Because I have strong feelings

 5      about child sexual abuse.

 6              THE COURT:  Tell me about that.

 7              PROSPECTIVE JUROR:  I'm a mother of two children, and

 8      I've read a lot about it, and it's very disturbing.

 9              THE COURT:  Now, you know that everything you've read

10      doesn't have anything to do with this case, this specific case.

11      Is that right?

12              PROSPECTIVE JUROR:  I know nothing about this specific

13      case, no.

14              THE COURT:  All right.  Let me ask you once again, do

15      you feel you can put any feelings you might have about child

16      sexual abuse to one side and judge this case fairly and

17      impartially based only on the evidence and the Court's

18      instructions on the law?

19              PROSPECTIVE JUROR:  I would try my best.

20              THE COURT:  All right.  You may remove your earphones

21      for a moment, Ms. Jensen.

22              Mr. Schlessinger, can you hear me?

23              MR. SCHLESSINGER:  Yes, I can, Your Honor.

24              THE COURT:  I watched, as I watch all jurors - fairly

25      carefully - and it seems to me that there is a basis for
```

1    striking this juror for cause.  Would you object to that?

2            MR. SCHLESSINGER:  I understand, Your Honor.  No

3    objection.

4            THE COURT:  Ms. Ginsberg?

5            MS. GINSBERG:  No objection, Your Honor.

6            THE COURT:  All right.  She is stricken.

7            Thank you.  You may return to your seat.

8            (END JUROR CONFERENCE.)

9            THE COURT:  All right.  I have three additional

10    questions for you.  Well, I actually have six, but we'll start

11    with three.  Have you or any member of your family or anyone you

12    know well ever been involved in a crime involving

13    child pornography or child sex abuse, whether as a victim, as a

14    witness, as a complainant, or in any other capacity whatever.

15    That's the first question.

16            The second question is, would you tend to believe or

17    would you tend to disbelieve a law enforcement officer witness

18    merely because that person is a law enforcement officer.  If

19    your answer is no, you don't need to come forward.

20            And the last question I want to ask is, I'm going to

21    read to you a list of names, and at the end of that list I will

22    ask you whether you know or have had any business or social

23    dealings of any kind whatsoever with any of them:  FBI Special

24    Agent Eric Bailey; FBI Special Agent Laura Calvillo; FBI Special

25    Agent Ford, you've already met; former FBI forensic examiner

1    Daniel Iannotti; FBI Special Agent Kochy.

2            And what were the last names of those two?

3            MR. SCHLESSINGER:  The last name of GM is ███████,

4    and the last name of CM is ██████.

5            THE COURT:  All right.  A GM -- or a G ██████ and a C?

6            MR. SCHLESSINGER:  It's G ███████ and C ███████.

7            THE COURT:  There's also an FBI Special Agent Obie and

8    Special Agent Jeffrey Ross, Risa Sanders, Jay Sanders,

9    Phillip DePue, Dr. Frederick S. Berlin, and Donna Fessler.

10           Do you or any member of your family, so far as you

11   know, know any of those people or have had any business or

12   social dealings with any of them?  If you have an affirmative

13   answer to any of those three questions, please raise your hands

14   at this time.

15           All right.  The record will reflect I don't see any

16   hands.  There are no hands that were raised.

17           So I will now ask you the final list of three

18   questions.  In the course of this case, it may be necessary to

19   disclose and reveal scenes of child sex abuse, child

20   pornography.  And I want to know whether that experience would

21   prevent or hinder you in any way from rendering a fair and an

22   impartial verdict in this case based only on the evidence and

23   the Court's instructions.

24           Next, the second question is, it may be that some of

25   the evidence in this case will involve sexually explicit

1    conversations between two people of the same sex, and I want to

2    know whether that would prevent or hinder you in any way from

3    rendering a fair and an impartial verdict in this case based

4    only on the evidence and the Court's instructions on the law.

5           And finally for this round, this case may involve the

6    presentation of evidence relating to what may be known as BDSM;

7    that is, bondage, domination, submission...I've forgotten the

8    other term.

9           MS. GINSBERG:  Judge, it's bondage, discipline,

10   domination, submission, sadism, and masochism.

11          THE COURT:  Thank you, Ms. Ginsberg.  Otherwise known

12   as BDSM.

13          Would that prevent or hinder you in any way from

14   rendering a fair and an impartial verdict in this case based

15   only on the evidence and the Court's instructions.

16          If you have affirmative answers to any of that, come

17   forward.  I will have one final set of questions to ask you

18   after this.  I see one, two.  Come forward, please.

19          (JUROR CONFERENCE ON THE RECORD.)

20          THE COURT:  May I have your name, please, sir?

21          PROSPECTIVE JUROR:  Yes.  Kurt Abendschein.

22          THE COURT:  Let me see.  Your name once again, please.

23          PROSPECTIVE JUROR:  Kurt Abendschein.

24          THE COURT:  Abendschein, that's what I was looking for.

25   Hang on a moment.

1            PROSPECTIVE JUROR:  Yes, sir.

2            THE COURT:  All right, sir.  And this relates to

3     matters you've already told me about?

4            PROSPECTIVE JUROR:  Yes.

5            THE COURT:  All right.  Thank you.  You may step down.

6     I'm aware of that.

7            May I have your name, please, sir?

8            PROSPECTIVE JUROR:  Jonathan Smith.

9            THE COURT:  Yes, Mr. Smith.  I think you've already

10    told me about your strong feelings about this.  Is that correct?

11           PROSPECTIVE JUROR:  That's correct, Your Honor.

12           THE COURT:  Thank you.  That was helpful.  You may step

13    down.  Thank you, sir.  I'm aware of it.

14           PROSPECTIVE JUROR:  Okay.

15           THE COURT:  Thank you.

16           May I have your name, sir?

17           PROSPECTIVE JUROR:  Timothy Lynch.

18           THE COURT:  Yes, Mr. Lynch, which question do you have

19    an affirmative answer to?

20           PROSPECTIVE JUROR:  I believe it was that first

21    question related to the imagery.  I've got two young kids.  My

22    daughter was born eight months ago.  I would do my best, but it

23    would be very hard to be impartial to imagery in that way.

24           THE COURT:  Can you explain that further?  What does

25    imagery that you have to look at in this case have to do with

1    your feelings about your daughter?

2           PROSPECTIVE JUROR:  It would be challenging to separate

3    the two, knowing my daughter was born eight months ago, and it's

4    just hard to imagine if that happened to anybody.  And I would

5    have a tough time disassociating.

6           THE COURT:  All right.  Put your earphones down for

7    just a moment, please, sir.

8           Mr. Schlessinger, any objection to striking this

9    person?

10          MR. SCHLESSINGER:  Your Honor, actually, I would object

11   to striking this particular juror based on his answers so far.

12          THE COURT:  What else would you suggest I ask him?

13          MR. SCHLESSINGER:  I would suggest that the Court

14   ensure that this juror understands that the question is not

15   whether the child pornography is pleasant or unpleasant - that

16   many people would naturally find it unpleasant - but the task of

17   the jurors is going to be simply whether the defendant produced,

18   received, and possessed the child pornography, and that's a

19   separate undertaking apart from whether the child pornography is

20   difficult or easy to watch.

21          THE COURT:  Ms. Ginsberg, any objection to asking -- my

22   asking this person that question?

23          MS. GINSBERG:  No, I don't object.  But I think he's

24   made his views pretty clear.

25          THE COURT:  All right.

```
 1              Mr. Lynch, you understand that this is not a case about
 2    whether child pornography, images of child pornography, are
 3    pleasant or unpleasant, whether they're easy to watch or not
 4    easy to watch.  The question is whether the allegations in the
 5    indictment are proven beyond a reasonable doubt or not by the
 6    government.  And do you feel that you could pay careful and
 7    close attention to the evidence as it's presented and see these
 8    images of child pornography, and put aside your feelings and
 9    render a fair and an impartial based only on the evidence and
10    the Court's instructions on the law?
11              PROSPECTIVE JUROR:  I do.
12              THE COURT:  Do you have any doubt?
13              PROSPECTIVE JUROR:  No.
14              THE COURT:  All right.  Take your earphones off for a
15    minute.
16              Ms. Ginsberg, any further questions you would suggest I
17    ask?
18              MS. GINSBERG:  Yes.  If Your Honor would ask whether he
19    believes he can do that while he is watching these types of
20    images.
21              THE COURT:  While he is watching?
22              MS. GINSBERG:  Yes, if he believes he can be fair and
23    impartial in the face of -- while he is watching these images.
24    If seeing the images will overtake his belief that he can be
25    fair, given the strength of his earlier answers.
```

1          THE COURT:  Well, he's also just given strong answers

2    to the opposite.  But I'll ask a further question.  I'm not sure

3    it will capture exactly what you're seeking, but I'll ask

4    further questions.

5          MS. GINSBERG:  Thank you.

6          THE COURT:  Put your earphones back on, please.

7          Yes, Mr. Lynch, I want to ask you further, do you feel

8    you can be fair and impartial in this case -- after seeing these

9    images of child pornography, do you think you could be fair and

10   impartial in resolving the questions of guilt or innocence as a

11   juror?

12         PROSPECTIVE JUROR:  I believe that I could, but -- I

13   believe that I could.  That's as far as I can really say,

14   honestly.  It's recently difficult for me.

15         THE COURT:  Tell me what you find difficult.

16         PROSPECTIVE JUROR:  I think everybody relates those

17   things back to their own personal livelihoods and effects, and

18   it would be hard to disassociate that.  I would do my absolute

19   best.  I understand the importance of looking at the evidence

20   and evaluating the evidence, but it would be difficult.

21         THE COURT:  And when you say relate back to, what are

22   you referring to?

23         PROSPECTIVE JUROR:  My family.

24         THE COURT:  Take your earphones off please, sir.

25         Mr. Schlessinger?

126

 1            MR. SCHLESSINGER:  No objection at this point.

 2            THE COURT:  All right.  He is stricken.  I assume you

 3      want him stricken, Ms. Ginsberg?

 4            MS. GINSBERG:  Yes, sir, thank you.

 5            THE COURT:  All right.  You may step down, thank you,

 6      sir.

 7            May I have your name, please?

 8            PROSPECTIVE JUROR:  Beth Feldpush F-E-L-D-P-U-S-H.

 9            THE COURT:  Yes.  Which question do you have an answer

10      to?

11            PROSPECTIVE JUROR:  I think primarily the first one.  I

12      have an educational background in public health, and I work

13      currently for a hospital association, and part of my work

14      involves helping hospitals see and intercept victims of sexual

15      and human trafficking.  I have also previously worked for an

16      organization that assisted street sex workers in exiting that

17      trade and moving on to other opportunities.

18            So while neither of those focus specifically on the

19      pediatric or children's population, sexual trafficking is an

20      advocacy issue that I'm fairly passionate about for my work, and

21      I do worry that it would not -- that background and those

22      feelings would not make me as impartial as I would want to be.

23            THE COURT:  I understand what you're saying is that you

24      do a lot of work in sex trafficking.  Is that right?

25            PROSPECTIVE JUROR:  Correct.

```
 1              THE COURT:  What is sex trafficking?

 2              PROSPECTIVE JUROR:  Sex trafficking is one individual

 3    coerces another, against their will, into sexual acts.

 4              THE COURT:  All right.  And do you feel you can put

 5    your feelings to one side -- because your general feelings about

 6    sex trafficking don't have anything to do with this case.  Do

 7    you feel your could put your feelings to one side and judge this

 8    case fairly and impartially based only on the Court's

 9    instructions and the evidence presented?

10              PROSPECTIVE JUROR:  Your Honor, I am concerned that I

11    would not be impartial because I have a very strong emotional

12    reaction.  And when you mentioned the evidence that we may be

13    viewing, I just feel that I would not be able to approach this

14    with impartiality like I would another topic.

15              THE COURT:  All right.  Remove your earphones for a

16    moment, please.

17              Mr. Schlessinger, any objection to striking this

18    prospective juror?

19              MR. SCHLESSINGER:  No objection, Your Honor.

20              THE COURT:  And Ms. Ginsberg, do you have any

21    objection?

22              MS. GINSBERG:  No objection.

23              THE COURT:  All right.  She is stricken.  What number

24    is she?

25              MS. GINSBERG:  14, Your Honor.
```

1          THE COURT:  Yes.  Feldpush.  All right.

2          Thank you, you may step down.

3          (END JUROR CONFERENCE.)

4          THE COURT:  All right.  Ladies and gentlemen, I just

5   have a couple more questions for you.  I anticipate that this

6   case may last three to six days, no longer than that.  In other

7   words, until about Tuesday of next week is, I think, the most

8   pessimistic view.  And I want to know whether there is anything

9   that would prevent or hinder you from sitting and paying careful

10  and close attention to the evidence in this case as it is

11  presented, and rendering a fair and an impartial verdict based

12  only on that evidence and the Court's instructions.  So if you

13  have any physical impairment that would prevent that, or hearing

14  or anything else, I want to know about that.

15         The second question I would ask you is, I want to know

16  if there's anything about this case, anything about the nature

17  of the case or anything in any question that I have asked you,

18  that suggests itself that you would be unable to be a fair and

19  an impartial juror, I want you to come forward and tell me about

20  it.  But you need do so only if you haven't already told me

21  about something in particular.  Or if you feel you need to

22  expand on it, by all means come forward.

23         All right.  Let's see if there are any hands for either

24  of those questions.  I see one hand.  Come forward, please.

25         (JUROR CONFERENCE ON THE RECORD.)

1          THE COURT:  May I have your name, please, ma'am?

2          PROSPECTIVE JUROR:  Gzne Brown.

3          THE COURT:  Yes, Ms. Brown, which question do you have

4     an answer to?

5          PROSPECTIVE JUROR:  In regards to anything else we feel

6     around the case that you don't feel like you could be fair and

7     impartial regarding, I am a mother of three -- well, mother of

8     five, but three small children.  So as you talked about the

9     indictments, I felt concerned.  I immediately thought about my

10    own children.

11         THE COURT:  Well, that's certainly understandable.

12    Tell me why you think you might not be able to be fair and

13    impartial, though.

14         PROSPECTIVE JUROR:  I've not been a juror before, so

15    I'm not really sure how I would ensure that I frame my own

16    personal thoughts and opinions in regard to children in general

17    to ensure that I'm not being impartial.

18         THE COURT:  All right.  Would you put down your

19    earphones, please.

20         Mr. Schlessinger, we have an abundance of jurors now.

21    What's your view?

22         MR. SCHLESSINGER:  I understand, Your Honor.  There's

23    no objection to excusing this juror for cause.

24         THE COURT:  Ms. Ginsberg?

25         MS. GINSBERG:  No objection, Your Honor.

```
 1                  THE COURT:  All right.  She is excused.

 2                  Thank you.  You may step down.  What number was that?

 3                  COURTROOM CLERK:  Juror number 5.

 4                  THE COURT:  May I have your name, please?

 5                  PROSPECTIVE JUROR:  Hi, my name is Barbara Hill.

 6                  THE COURT:  Last name again, please.

 7                  PROSPECTIVE JUROR:  Hill, H-I-L-L.

 8                  THE COURT:  Yes, ma'am.  Which question do you have an

 9      answer to?

10                  PROSPECTIVE JUROR:  Well, I just wanted to make you

11      aware of a conflict that I have for a trial that would last

12      three to six days.  I have a trip that I had planned where the

13      plane would leave Friday at 5:40 to Budapest, and I have an

14      appointment Thursday afternoon to do a PCR COVID test to make

15      sure I'm negative for the flight.  I have those conflicts for

16      the time of the trial.  I do want to serve, but this one is not

17      going to work with my schedule.  They told me to come and tell

18      you what my conflict was, so I'm doing that today.

19                  THE COURT:  All right.  Well, you're certainly right to

20      do so.  Is this a business or pleasure trip?

21                  PROSPECTIVE JUROR:  It's a pleasure trip.

22                  THE COURT:  And you already have your tickets to

23      Budapest?

24                  PROSPECTIVE JUROR:  Yes.

25                  THE COURT:  And how long will you be away?
```

1          PROSPECTIVE JUROR:  A little over two weeks.

2          THE COURT:  All right.  Put your earphones down for a

3    moment, please.

4          Mr. Schlessinger, any objection to striking this juror?

5    I will do that, but I will have her placed on the next list.

6    She won't escape jury service, but I think it's reasonable, and

7    typically I allow the jury people to -- sometimes to excuse

8    people who have already planned overseas vacations.  But in this

9    case, out of an abundance of caution, I didn't give them that

10   freedom.

11         MR. SCHLESSINGER:  No objection, Your Honor.

12         THE COURT:  Ms. Ginsberg?

13         MS. GINSBERG:  Also no objection.

14         THE COURT:  All right.  You may return to your seat.

15   Thank you.

16         That concludes the Court's voir dire.  Does the

17   Government suggest any further voir dire?

18         MR. SCHLESSINGER:  No further voir dire requests from

19   the Government, Your Honor.

20         THE COURT:  All right, thank you.  Ms. Ginsberg?

21         MS. GINSBERG:  No, Your Honor.

22         THE COURT:  All right.  Now let me hear from the

23   Government, any motions to strike for cause?

24         MR. SCHLESSINGER:  No motions to strike for cause.

25         THE COURT:  Ms. Ginsberg?

1          MS. GINSBERG:  Also none, Your Honor.

2          THE COURT:  What I'm going to do is, I think we will --

3     we can't put all the jurors in here, but we're going to have

4     them -- where are we going to put these jurors and where are we

5     going to put the other jurors?  Let me ask Ms. Randall.

6          COURTROOM CLERK:  Judge, we will leave the 1 p.m. group

7     in the courtroom and the 9 a.m. group is already on the other

8     side, by the conference room.

9          THE COURT:  All right.  Well, that will take care of

10    all the delays we had in the past.

11         COURTROOM CLERK:  Yes, Judge.

12         THE COURT:  If that doesn't remove any doubt in your

13    minds, you should have it removed; the real person in charge

14    here is Ms. Randall.  And for that, we are all fortunate.

15         All right.  I will tell the jury now, or this panel,

16    that the voir dire is completed; we'll now proceed with the jury

17    selection process.  Now, remember, counsel, you have seven

18    strikes for the Government; 11 strikes, Ms. Ginsberg, for the

19    defendant.  You may exercise as many or as few of those strikes

20    as you wish on any ground, but you may not back-strike, by which

21    I mean you may not return to strike a particular juror who has

22    made it through one round.  You only get one opportunity to

23    strike a particular juror.

24         And when you note your strikes on the jury board,

25    number them so we will know how many you have exercised.

1          MS. GINSBERG:  Judge, may I ask a question?

2          THE COURT:  Yes, of course.

3          MS. GINSBERG:  Are you planning to bring the jurors

4    from the first morning group back into the courtroom so we can

5    see them?

6          THE COURT:  No, not in the courtroom.

7          MS. GINSBERG:  I think we need to see the individual

8    people.

9          THE COURT:  Oh, you will, you will.  When they're

10   called, they will come through the door.

11         MS. GINSBERG:  I see.  Okay.

12         THE COURT:  There's no conceivable way we can do it any

13   other way and maintain social distancing.

14         MS. GINSBERG:  I understand.  Thank you, Your Honor.

15         THE COURT:  Anything else, Ms. Ginsberg?

16         MS. GINSBERG:  No, nothing else.  Thank you.

17         MR. SCHLESSINGER:  I just wanted to make sure that the

18   Court was planning to announce the excusal of the jurors from

19   this panel so they will know before the jury selection starts.

20         THE COURT:  No.  But I will tell you who they are.  The

21   names of the persons excused -- is this for this afternoon's

22   group?

23         COURTROOM CLERK:  Yes, Judge.

24         THE COURT:  It's number 3, Carl Bachmann; number 1,

25   Kurt Abendschein; number 40, Jonathan Smith; number 21,

```
 1    Wendy Jensen; number 27, Timothy Lynch; number 14,
 2    Beth Feldpush; number 5, Gzne Brown, or Zizney (ph) Brown or
 3    something like that; and number 18, Barbara Hill.  Those all
 4    have been stricken for cause.  Is there any difference between
 5    the list I just gave you and what you know I've stricken,
 6    Mr. Schlessinger?
 7              MR. SCHLESSINGER:  No, Your Honor.
 8              THE COURT:  Ms. Ginsberg?
 9              MS. GINSBERG:  No, Your Honor.
10              THE COURT:  All right.  Then we will proceed.  Let's
11    turn off the noise and go back.
12              (END JUROR CONFERENCE.)
13              THE COURT:  Ladies and gentlemen, that completes the
14    Court's voir dire.  We are now going to start with the selection
15    process.  The deputy clerk will call 12 names at random.  You'll
16    come and sit here, and you'll see there are places here to
17    maintain social distancing.  Come and sit here, and then the
18    attorneys will have an opportunity to strike persons, exercise
19    their peremptory challenges.
20              Well, what I'm going to do, ladies and gentlemen, is
21    I'm going to take a 15-minute recess.  And the reason for that
22    is, I told your colleagues from the morning session to come back
23    here at 3:00, and they took me literally.  Many of them are not
24    here yet because it is not yet 3:00, and we can't proceed
25    without them.  They will be on this floor, however, and so there
```

1    will be no delay as we call people from the 9 o'clock session or

2    the 1 o'clock session.

3             So we will recess until 3 o'clock.  Be back here

4    promptly at 3 o'clock and we will proceed as I've indicated;

5    namely, the deputy clerk will calls names at random, you'll be

6    seated here, and then the attorneys will have an opportunity to

7    exercise their peremptory challenges.  When that whole process

8    is completed, we will have selected our jury, and I will then be

9    able to excuse the rest of you with our thanks for your service.

10   Because we could not have proceeded without you today.

11            Thank you.  Court stands in recess until 3 o'clock.

12            (Recess taken at 2:45 p.m.)

13            THE COURT:  All right.  We will proceed now to select

14   at random.  You may select 12 names at random, please.

15            COURTROOM CLERK:  Ladies and gentlemen of the jury, as

16   I call your name, please come forward and have a seat in the

17   jury box as directed by the security officer.  Juror number 19,

18   Joseph Hilton, p.m. group; juror number 44, Allen Williams, p.m.

19   group; juror number 31, Joshua Mecham, p.m. group; juror

20   number 5, Colette Brooks, a.m. group.

21            (OFF THE RECORD.)

22            COURTROOM CLERK:  Are you juror number 5,

23   Colette Brooks?

24            PROSPECTIVE JUROR:  Yes.

25            COURTROOM CLERK:  Please be seated.

136

```
1              Juror number 11, Diane Corina, a.m. group.  Juror
2     number 11, Diane Corina.  Juror number 13, Donaciana Evans,
3     p.m. group; juror number 8, Steven Cereghino, a.m. group.  Juror
4     number 8, Steven Cereghino.  Juror number 6, Jason Brost,
5     a.m. group.  Juror number 6, Jason Brost.  Juror number 32,
6     Yesenia Mendez Rodriguez, p.m. group; juror number 26,
7     Leonora Jordan, a.m. group.  Juror number 26, Leonora Jordan.
8     Juror number 35, Alexander Nykorchuk, a.m. group.  Juror
9     number 35, Alexander Nykorchuk.  Juror number 17,
10    Valerie Galbraith, a.m. group.  Juror number 17,
11    Valerie Galbraith.
12              THE COURT:  Put your earphones on for just a minute.
13              (BENCH CONFERENCE ON THE RECORD.)
14              THE COURT:  Let me remind counsel, Government has seven
15    strikes, the defendant has 11.  You are not required to save
16    strikes for your alternates.  You may exercise as many or as few
17    of your numbered strikes, either on this first 12 or on the
18    alternates when they are selected.  But you may not back-strike.
19    You may not strike any prospective juror who has already
20    survived a round.
21              Any questions, Mr. Schlessinger?
22              MR. SCHLESSINGER:  No, Your Honor.
23              THE COURT:  Ms. Ginsberg?
24              MS. GINSBERG:  No, Your Honor.
25              THE COURT:  All right.  Let's proceed.
```

```
 1              (END BENCH CONFERENCE.)

 2              COURTROOM CLERK:  Will the following jurors please

 3    return to their seats in the courtroom.  Juror number 26,

 4    Leonora Jordan, a.m. group; juror number 8, Steven Cereghino,

 5    a.m. group; juror number 35, Alexander Nykorchuk, a.m. group;

 6    juror number 13, Donaciana Evans, p.m. group; juror number 11,

 7    Diane Corina, a.m. group; juror number 5, Colette Brooks,

 8    a.m. group; juror number 44, Allen Williams, p.m. group; juror

 9    number 32, Yesenia Mendez Rodriguez, p.m. group; juror

10    number 17, Valerie Galbraith, a.m. group.

11              Ladies and gentlemen of the jury, as I call your name,

12    please come forward and have a seat in the jury box as directed

13    by the security officer.  Juror number 2, Bruce Arthur,

14    a.m. group.  Juror number 2, Bruce Arthur, a.m. group.  Juror

15    number 2, Candice Alidoosti, p.m. group; juror number 21,

16    Samantha Hart, a.m. group.  Juror number 21, Samantha Hart.

17              PROSPECTIVE JUROR:  Here.

18              COURTROOM CLERK:  Juror number 33, Lucinda McLaughlin,

19    a.m. group.  Juror number 33, Lucinda McLaughlin.  Juror

20    number 39, Cynthia Riggs, a.m. group.  Juror number 39,

21    Cynthia Riggs.  Juror number 17, Regina Goffus, p.m. group;

22    juror number 41, Patricia Stoermer, p.m. group; juror number 29,

23    Brian Lieber man, a.m. group.  Juror number 29, Brian Lieberman,

24    a.m. group; juror number 7, Razzakul Chowdhury, p.m. group.

25              Will the following jurors please return to their seats
```

1    in the courtroom.  Juror number 41, Patricia Stoermer,

2    p.m. group; juror number 29, Brian Lieberman, a.m. group; juror

3    number 39, Cynthia Riggs, a.m. group; juror number 21,

4    Samantha Hart, a.m. group; juror number 17, Regina Goffus,

5    p.m. group.

6            Ladies and gentlemen of the jury, as I call your name,

7    please come forward and have a seat in the jury box as directed

8    by the security officer.  Juror number 26, Richard Loveland, II,

9    p.m. group; juror number 27, Patrick Kerns, a.m. group.  Juror

10   number 27, Patrick Kerns.

11           PROSPECTIVE JUROR:  That's correct.

12           COURTROOM CLERK:  Juror number 38, Christy Rice,

13   p.m. group; juror number 28, Dale Manry, p.m. group; juror

14   number 16, Kamel Elhassani, a.m. group.  Juror number 16,

15   Kamel Elhassani.

16           Will the following juror please return to your seat in

17   the courtroom.  Juror number 28, Dale Manry, p.m. group.

18           Ladies and gentlemen of the jury, as I call your name,

19   please come forward and have a seat in the jury box as directed

20   by the security officer.  Juror number 44, Weiwei Stiltner,

21   a.m. group.  Juror number 44, Weiwei Stiltner.

22           Will the following juror please return to their seat in

23   the courtroom.  Juror number 44, Weiwei Stiltner, a.m. group.

24           Ladies and gentlemen of the jury, as I call your name,

25   please come forward and have a seat in the jury box as directed

 1   by the security officer.  Juror number 31, Michael Mason,

 2   a.m. group.  Juror number 31, Michael Mason.

 3          Ladies and gentlemen of the jury, as I call your name,

 4   please come forward and have a seat in the jury box as directed

 5   by the security officer.  Juror number 42, Elizabeth Sheriff,

 6   a.m. group; and juror number 6, Patrick Campo, p.m. group.

 7   Juror number 42, Elizabeth Sheriff.

 8          THE COURT:  You may now swear the jury.  Will the

 9   defendant please stand and face the jury.

10          COURTROOM CLERK:  Ladies and gentlemen of the jury,

11   please stand and raise your right hand.  You shall well and

12   truly try, and true deliverance make, between the

13   United States of America and Zackary Ellis Sanders, the

14   defendant at the bar, whom you shall have in charge, and a true

15   verdict give according to the evidence, so help you God?

16          JURY PANEL:  (Collectively.)  I shall.

17          COURTROOM CLERK:  Thank you.  Please be seated.

18          THE COURT:  All right.  Ladies and gentlemen, now we're

19   prepared to proceed, but before we do so, I want to excuse the

20   remainder of you and thank you for your participation.  We could

21   not have proceeded in this matter without your participation.

22   So you may retire with the thanks of the Court for your help in

23   getting this matter under way.  You may file out of the

24   courtroom now.

25          All right.  Members of the jury, now that you've been

1    sworn, I'm going to give you some preliminary instructions to

2    guide you in your participation in this trial.  First, it will

3    be your duty to find from the evidence presented what the facts

4    are in this case.  You and you alone will be the sole judges of

5    the facts in this case.  You will then have to apply to the

6    facts as you find them from the evidence in the case the law

7    that the Court will give to you in the form of instructions at

8    the end of the case and during the case, and you must follow

9    that law whether you agree with it or not.

10          Nothing the Court may say or do during the course of

11   the trial is intended to indicate to you how -- what your

12   verdict should be or how I think you should find your verdict.

13   What your verdict is, is your sole and exclusive duty and

14   responsibility.

15          Now, the evidence from which you will find the facts of

16   the case will consist of the testimony of the witnesses who will

17   testify across from you on the witness stand, and any documents

18   or other materials received into the record in this case as

19   exhibits, and any facts that the lawyers may agree or stipulate

20   to or that the Court may instruct you that you may find.  But

21   there are certain matters that are not evidence and must not be

22   considered by you.  And let me list those for you now.

23          First, the lawyers' statements, the lawyers' arguments,

24   and the lawyers' questions are not evidence.  Only the answers

25   of the witnesses are evidence.  Objections to questions are not

1   evidence.  Of course lawyers have an obligation to their client

2   to make an objection when they believe evidence is being offered

3   that is contrary to the rules of evidence.  The essence of a

4   fair trial is that it be conducted in such a way that only

5   legally admissible evidence is admitted, and your verdict is to

6   be based solely on legally admissible evidence.  You should not

7   be influenced by an objection or by the Court's ruling on it.

8   If the Court sustains an objection, then of course ignore the

9   question.  If the Court overrules the objection, then you may

10  treat the answer to the question as to which an objection was

11  overruled just as you treat the answer to any other question.

12          And if you're instructed that some item of evidence is

13  received for a limited purpose, you must follow that instruction

14  and consider that evidence solely for that limited purpose.  And

15  any testimony that the Court excludes or tells you to disregard

16  must be disregarded and must not be considered by you.  And

17  anything you may have seen or read or heard outside the

18  courtroom is not evidence and must not be considered by you in

19  arriving at your verdict.  You're to decide the case solely on

20  the evidence presented here in the courtroom.

21          Now, there are two kinds of evidence from which you may

22  find the facts of this case.  There is direct evidence and

23  circumstantial evidence.  Now, direct evidence is direct proof

24  of a fact, such as the testimony of an eyewitness, and

25  circumstantial evidence is proof of facts from which you may

1    infer or conclude that other facts exist.  And I will give you

2    further instructions on these as well as other matters at the

3    end of the case.  But have in mind that at this time, you may

4    consider both kinds of evidence, both direct and circumstantial.

5         Now, it will be up to you to decide which witness to

6    believe -- which witnesses to believe or not believe, and how

7    much of each witness' testimony to accept or reject.  You and

8    you alone are the sole judges of the credibility of the

9    witnesses in this case.  And I'll give you some guidelines for

10   determining the credibility of witnesses at the end of the case.

11        Now, as you know, this is a criminal case, and there

12   are certain basic rules that you must keep in mind in a criminal

13   case.  First, as I told you at the outset, this is a criminal

14   case, and the defendant is presumed innocent unless and until

15   the jury find otherwise.  And the indictment against the

16   defendant, as I told you earlier, is not proof or evidence of

17   guilt.  It's brought by the government, and that's only an

18   accusation, nothing more.  It is not proof or guilt or anything

19   else.  The defendant, therefore, starts out with a clean slate.

20        Second, the burden of proof is on the government until

21   the very end of the case.  The defendant has no burden to prove

22   his innocence or present any evidence, or to testify.  And since

23   the defendant has the right to remain silent, the law prohibits

24   you, in arriving at your verdict, from considering that the

25   defendant may not have testified.

1        Now, the third rule you must keep in mind is that the

2    government must prove the defendant's guilt beyond a reasonable

3    doubt.  And I'll give you further instructions on this point

4    later.  But bear in mind that in this respect, a criminal case

5    is different from a civil case.

6        Now let me give you a few words about your conduct as

7    jurors.  First, I instruct you that during the trial, you are

8    not to discuss the case among yourselves or with anyone.  You

9    are not to discuss it at all among yourselves.  Not until you

10   retire to the jury room at the end of the case are you to

11   deliberate on your verdict.  At that time, of course you are to

12   discuss it among yourselves.  But until then, you are not to

13   talk about this case to anyone.

14       Also, you are not to read or listen to anything

15   touching on this case in any way.  If anyone tries to talk to

16   you about this case, stop them and call that to the Court's

17   attention promptly.

18       Also, do not undertake to do any research on your own.

19   Now, many years ago when I first began hearing trials, this was

20   simple to tell people:  Don't look up anything in books.  Of

21   course for me to tell you that now would be silly.  Who looks up

22   things in books today, other than me?  Very few people.  But

23   don't do any investigation, electronically or otherwise.  Don't

24   use any computer or computer-related gadget to look up anything.

25   Don't look up anybody's name, including my own.  Don't look up

1    anybody.  You are not to conduct any investigation on your own.

2           Now the trial will begin.  First the Government has an

3    opportunity to make its opening statement.  An opening statement

4    is simply a forecast of the evidence that the Government intends

5    to offer, and it's presented so you can follow that evidence as

6    it is being presented.  Next, the defendant's attorney may, but

7    does not have, make an opening statement.  And opening

8    statements are neither evidence nor argument.

9           Next, the Government will have an opportunity to

10   present its witnesses, and counsel for the defendant may

11   cross-examine them.  And after the Government's case is

12   completed, the defendant may, if he wishes - but he's not

13   required to - present witnesses, who the Government may

14   cross-examine.

15          And after all the evidence is in, the attorneys will

16   have an opportunity to present their closing arguments in which

17   they will summarize and interpret the evidence as they see it

18   for you.  And after that, I will instruct you on the law and you

19   will be permitted to retire and deliberate on your verdict.

20          Now we're going to have opening statements.  Tell me

21   again, Mr. Schlessinger, how long you think you need for your

22   opening statement.

23          MR. SCHLESSINGER:  Your Honor, about 10 to 15 minutes.

24          THE COURT:  All right.  And who is going to make the

25   opening statement for the defendant?

1          MR. SIRKIN:  I will be, Your Honor.  It will be between

2     10 and 15 minutes.

3          THE COURT:  In past times, before the pandemic, we

4     could move the podium.  We can't do that anymore.  You will

5     stand at the podium and do your best to speak.  You'll be behind

6     the enclosure.  You can, of course, if you wish, remove your

7     mask.

8          All right.  Mr. Schlessinger, are you ready to make

9     your opening statement?

10          MR. SCHLESSINGER:  Yes, Your Honor, I am.

11          THE COURT:  You may proceed, sir.

12          MR. SCHLESSINGER:  Thank you, Your Honor.

13          THE COURT:  Let me ask first of all, have we given the

14     jurors their books yet?  They're in the cubbyholes.  Let's

15     collect them, if you would, and give them to the jurors.  I'm

16     going to permit you to take notes.  You may take as many or as

17     few notes as you wish.  It's entirely up to you.

18          Now, nobody will look at these books but you.  At the

19     end of the day, they will be placed back in this cubbyhole and

20     the court security officer will maintain their security, and

21     nobody will look at them.  I won't, nobody else.  Then, at the

22     end of the case, you'll have books to take home and discard or

23     do with as you wish.  But I'm going to have them provided to you

24     now so that you may take notes if you wish.  It's entirely up to

25     you.

1        While we're waiting, let me ask this.  After the

2   opening statements we're going to recess for the evening.  I

3   know many of you come from different distances and face

4   different obstacles in the morning, all the way from children to

5   traffic.  And I am willing to accommodate you to some extent on

6   what time we begin tomorrow morning.  I would ordinarily begin

7   at 9:00, but I'm prepared to begin a bit later if that suits

8   you, if that's something that you-all need in order to send your

9   kids off to school or feed them or whatever.

10        Would 9:30 be more suitable for you?  I think I see

11   some nods and some don't care.

12        JUROR:  It would help with traffic.

13        THE COURT:  Oh, believe me, that's why I don't live in

14   this area.  Yes, 9:30 tomorrow.

15        All right.  Mr. Schlessinger, are you ready to proceed?

16        MR. SCHLESSINGER:  Yes, Your Honor.

17        THE COURT:  You may do so.

18        MR. SCHLESSINGER:  May it please the Court, counsel for

19   the defendant, ladies and gentlemen, this case is about the

20   creation and the collection of sexually explicit images of

21   children.  It's specifically about this man, Zackary Sanders,

22   and his repeated and successful efforts to produce videos of

23   multiple minors, children, some of them as young as 13 years

24   old, engaged in sexually explicit conduct, specifically by

25   having those minors record themselves engaging in that type of

1    conduct and then to send those videos to him.

2         And it's about the defendant's collection not only of

3    that child pornography, of those sexually explicit videos

4    depicting the minors with whom he was directly and personally

5    communicating, but also a large quantity of additional child

6    pornography that this defendant had obtained by other means,

7    much of which depicted extremely young children, including

8    toddlers.

9         What the evidence is going to show in this case is that

10   the defendant engaged in a pattern of behavior that you'll see

11   repeated over and over again with respect to five separate minor

12   victims.  What you'll see time and again is the defendant

13   meeting a minor online, engaging in conversations over any one

14   of a variety of different internet-based messaging platforms,

15   you'll see they included iMessaging, Kik, Telegram, and sooner

16   or later - in many cases it was very much sooner - directing

17   them to record a sexually explicit video of themselves and to

18   send that video to him.

19        So for that reason, much of the evidence in this case

20   consists of the defendant's own words, and you'll see that

21   evidence in the case.  You'll see the defendant 's own words in

22   the form of his own statements to those minor victims, his

23   directions to them, and you'll see that those statements

24   couldn't be clearer.

25        Now, here I'm going to beg your pardon for my language,

1    but I'm going to quote the actual words of the defendant himself

2    as you'll see them presented in evidence.  You'll see that they

3    included, on November 24th, 2019, to a minor child who was

4    14 years old.  The defendant:  "You will send me a video of

5    this, you will apologize for disobeying, strip, and then slap

6    your balls as hard as you can 30 times.  Then send me the video.

7    If you don't do it hard enough, I'll make you start over."

8           You're going to see the defendant's own words to

9    another separate minor victim on November 14th, 2019, also

10   14 years old.  The defendant's words:  "Now for your punishment,

11   you're going to slap yourself on your balls as hard as you can

12   40 times.  You will record yourself doing this and then send me

13   the video."  To a 14-year-old child.

14          To a third child victim, this time September 18th,

15   2017, this child, 17 years old, the defendant's words:  "Slap

16   your balls as hard as you can 15 times, record it, send me a

17   video."

18          A fourth minor victim, September 30th, 2017, this child

19   also 17 years old.  The defendant's words:  "You're going to

20   slap yourself on the balls as hard as you can 30 times.  You

21   will record this and send me the video.  I strongly suggest you

22   actually do it hard, because if I feel you're being too gentle,

23   you'll have to start over."

24          To a fifth minor victim on November 29th, 2017, this

25   child, only 13 years old, immediately after this defendant

1    obtained that minor child's home address and the names of his

2    parents, and after learning that that 13-year-old minor was

3    then, at that time, nude and in the bathtub, these were the

4    defendant's words to that 13-year-old child:  "Now record a

5    video showing your entire face, your full body, and say, I am a

6    worthless," and a slur beginning with "F" that I will not repeat

7    here, and continuing, "and in the property of Master Zack for

8    the rest of my life."

9         Well, in February 2020, FBI agents obtained a search

10   warrant for the defendant's house.  You'll see where he was

11   living in McLean, Virginia with his parents.  And the search was

12   actually conducted on February 12th of that year.  And you're

13   going to see evidence in the form of the contents of the various

14   electronic devices that were recovered both from the defendant

15   himself, his phone, and also various other electronic devices

16   that were recovered from his bedroom.  And the evidence, the

17   contents of those devices, they include those conversations with

18   the minor victims and the sexually explicit videos that were

19   created and sent to the defendant as a result -- that I

20   described earlier.

21        But in addition, the evidence will also demonstrate, as

22   I mentioned, the defendant's extensive collection of additional

23   child pornography on various devices belonging to him and

24   recovered from his bedroom, laptop computers, USB thumb drives,

25   and you'll see that that additional child pornography depicted

1    numerous other minors, additional minors apart from those with

2    whom he was directly communicating.

3            And here I think that I must once again ask for your

4    indulgence.  This, as you've heard already, is a child

5    pornography case, and as you've already heard from the Court,

6    including in the preliminary instructions just now, the

7    Government, of course, bears the sole burden of proof in this

8    case.  And we proudly shoulder that burden.  But in order to

9    meet that burden, we're, of course, required to present

10   evidence.  And in a case like this, that evidence naturally

11   includes images and videos that are disturbing and difficult to

12   see.

13           I think that you'll see, during the course of this

14   trial, that we've taken all the steps possible to minimize, to

15   the greatest extent that we can, the need to display those in

16   court.  But to the extent that it is necessary to display those

17   in court, I simply ask that you bear in mind that we're doing so

18   only because we're required to in order to satisfy our burden of

19   proof.

20           Now, as I mentioned, in addition to that evidence, the

21   evidence also includes the defendant's own statements.  And we

22   already heard one type of evidence of the defendant's own

23   statements, including his messages to minor victims directing

24   them to create child pornography videos and send them to him;

25   but it also includes the defendant's words in another context,

1    in the form of his statements to two FBI agents who interviewed

2    him on the day of the search.

3            You'll hear the defendant.  You'll hear the defendant

4    in his own voice because the interview was audio recorded.  And

5    you'll hear him ultimately admit, admit downloading and

6    possessing the child pornography that was found on his

7    electronic devices.  You'll hear he eventually admitted that he

8    was, quote, "curious to see some of it," and that was why he had

9    obtained it.

10           You'll also hear the defendant in that interview

11   denying that he had caused or wanted minors to send him sexually

12   explicit images of themselves, a denial that is significant only

13   because of how utterly false it is, as will be demonstrated by

14   the evidence I just referred to.  That evidence will indeed show

15   that the defendant specifically directed multiple minor victims

16   to create and send to him sexually explicit videos involving the

17   minors, and that he possessed child pornography on the various

18   additional digital devices found in his bedroom.  That's what

19   this case is about.

20           Now, having said that, I would like to finish up by

21   pointing out a couple of things that this case is not about.

22   This case is not about anyone's attitude or feelings or thoughts

23   about any type or category of sexual interest or sexual

24   practices, including BDSM, including dominant and submissive

25   roles, or anything along those lines whatsoever.  This case is

1    in no way related to whether anything in that category is usual

2    or unusual, whether it's appealing or unappealing, good, bad,

3    indifferent.  This case is in no way about that.

4             It's not about whether, in producing child pornography,

5    the defendant was acting in some way consistent with these

6    practices; it's not about whether, if not, he thought that he

7    was.  That's not what this case is about.  It's about the

8    defendant's production, receipt, and possession of child

9    pornography, and that's all this case is about.

10            This case is also decidedly not about whether any of

11   the defendant's minor victims could in any way be characterized

12   as allegedly participating voluntarily or consenting to this

13   activity.  It is utterly irrelevant, because as you'll hear from

14   the Court's instructions, they are children; they're incapable

15   of legally consenting.  So when the defendant directed those

16   minor victims to produce sexually explicit videos of themselves

17   and send them to him, the fact that they indeed did so, just as

18   he intended them to do, of course in no way excuses, justifies

19   that conduct.

20            What does matter in this case is the evidence to be

21   admitted, the evidence that I've just briefly summarized for you

22   and that you're about to have presented to you in more detail

23   over the course of the rest of this trial.  That evidence will

24   prove the defendant overwhelming guilty of all of the offenses

25   charged in the indictment, well beyond a reasonable doubt.

1          For that reason, at the conclusion of the trial, we

2     will return to ask you to return the only verdict consistent

3     with that evidence, and that is guilty as charged in the

4     indictment.  Thank you very much.

5          THE COURT:  Mr. Sirkin, are you ready to make your

6     opening statement?

7          MR. SIRKIN:  If it please the Court, admitted counsel,

8     admitted counsel for Mr. Sanders.  I'm here representing

9     Mr. Sanders.  And what this case is really about is somebody who

10    chose a lifestyle, a lifestyle that demands obedience,

11    discipline, honesty, pure honesty and openness about one's

12    thoughts and desires, and thirdly, they need a trainer.  They

13    need a master in order to teach this.  This case started when

14    Mr. Sanders chose a lifestyle that included and is known as

15    BDSM, but is really expanded to bondage, discipline, domination,

16    submission, sadism, and masochism.

17         Now, the evidence will also show that this is a

18    lifestyle, again, that advocates honesty, openness.  And what

19    happened here, in order to find other people of similar

20    interests, he went on social media, and he was very specific on

21    his social media looking for other persons to participate or to

22    become, you know, under him.  There will be terms that you will

23    hear like a "sub" or a "slave" or a "pup" or a "puppy."  But

24    those are -- that's terminology used by people who practice

25    BDSM.  It's not derogatory.  It has meanings.  One who is

1    submissive wants to please a master.  A master is a trainer --

2              THE COURT:  You're slipping into argument now.

3              MR. SIRKIN:  Is a trainer.  He would train people, and

4    they would then -- you know, they would learn --

5              THE COURT:  You're still doing it.

6              MR. SIRKIN:  They would take these submissive --

7              THE COURT:  You're still doing it.

8              MR. SIRKIN:  I'm saying what the evidence will show.

9              THE COURT:  You can present evidence --

10             MR. SIRKIN:  We will attempt to present evidence that

11   shows that, Your Honor.

12             THE COURT:  Go ahead, sir.

13             MR. SIRKIN:  And you will find, in basically taking on

14   those roles, he would teach these young people who, on their

15   own, sought out from the internet, and then, because they were

16   supposed to be 18, indicated online that they were not when they

17   responded to his seeking individuals who wanted to participate

18   in this practice.  And what they did is, when he ultimately

19   learned, when they connected and communicated, he would indicate

20   to them that they're too young to engage in any conduct,

21   specifically sexual conduct or any other conduct with them that

22   dealt with the BDSM, but they could do whatever they wanted on

23   their own.  And they engaged in lawful activity for him.

24             And what he did, he did not, he did not ask them to go

25   ahead and perform any specific acts for the purposes of filming

```
 1    it.  He asked them -- because he would impose a discipline when
 2    they lied, when they lied about their age or they lied about
 3    what they were supposed to do as part of the obedient part of
 4    the discipline of BDSM, and it was a penalty that was engaged.
 5    And what would happen is he would say, I want you to do
 6    something.  And it's our position that the activity that these
 7    young people engaged in was lawful, it was not in a way
 8    sexual --
 9              THE COURT:  Now you're arguing.
10              MR. SIRKIN:  We will prove it was not a sexual
11    activity --
12              THE COURT:  Acknowledge when I speak to you, sir.
13              MR. SIRKIN:  I did, Your Honor.  I don't think that is
14    argument.  I'm saying what the evidence will show.
15              THE COURT:  All right.  That's how you respond, not
16    just continue on.  Is that clear?
17              MR. SIRKIN:  Yes, Your Honor.
18              THE COURT:  Proceed.
19              MR. SIRKIN:  All he wanted the recordings for, the
20    evidence will show, is he wanted to be certain that the activity
21    that he asked them to engage in, that they actually did perform
22    it.  That was the motivational factor of wanting it recorded.
23    That being the case -- you know, it wasn't -- he didn't direct
24    them, he didn't produce these.  They did it on their own.
25              And I think when I know you hear all this evidence and
```

1     you learn about all of this, I think at the end of the case you

2     will find that the Government did not sustain their burden

3     beyond a reasonable doubt that this individual, Mr. Sanders,

4     produced any of these videos.  This was activity that was sent

5     to him voluntarily.  And at the end of the case you will find

6     him not guilty.  Thank you.

7               THE COURT:  All right, ladies and gentlemen, we're

8     going to recess for the evening and we will commence tomorrow

9     morning at 9:30.  Now, put your books in the cubbyhole this

10    evening.  They'll be maintained there by the court security

11    officer.  No one will see them.  And then tomorrow morning we'll

12    begin at 9:30 and begin with the first witness of the day.

13              Who is that?

14              MR. SCHLESSINGER:  It will be CM.

15              THE COURT:  All right.  Ladies and gentlemen, again,

16    refrain from discussing the matter among yourselves or with

17    anyone, or undertaking any investigation on your own.  And do

18    not look up anything in books or any electronic source at all.

19    Don't look up anything about this case.  Put it out of your

20    mind.  Your spouses, your children, your friends will be

21    intensely curious about what you've been doing today.  They will

22    ask you questions and you will be tempted to answer those

23    questions.  Resist that temptation.  Do not answer the questions

24    because I've instructed you not to speak to anybody.

25              When the case is over, you'll have an opportunity to

1    tell anyone whatever you wish about the case, but for now you

2    must not discuss it with anyone.  Thank you for your attention

3    today.  You may follow the court security officer out.  Remember

4    to put your books in the cubbyholes that are designated out

5    there, and tomorrow morning when you arrive there will be the

6    court security officer out here who will direct you into the

7    jury room where you can await our convening of the case.  One of

8    you is eager to leave.

9         JUROR:  No, I just have a bad hip.

10        THE COURT:  All right.  I'm glad you mentioned that.

11   If at any time during the case any of you truly need a recess

12   for some truly exigent reason, I give you the privilege of

13   raising your hand or giving the sports "time" signal, and I will

14   give you the recess.  And I will not ask you the reason for it.

15   So I ask that you don't avail yourself of that privilege unless

16   it's really truly necessary.

17        All right.  You may follow the court security officer

18   out.

19        (Jury out at 4:25 p.m.)

20        THE COURT:  Court stands in recess until 9:30 tomorrow

21   morning.

22        (Off the record at 4:26 p.m.)

23

24

25

1              CERTIFICATE OF OFFICIAL COURT REPORTER

2

3          I, Rebecca Stonestreet, certify that the foregoing is a

4    correct transcript from the record of proceedings in the

5    above-entitled matter.

6

7

8    ____//Rebecca Stonestreet_____          __12/9/21____

9    SIGNATURE OF COURT REPORTER                DATE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25