1

```
                    UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF VIRGINIA
                         ALEXANDRIA DIVISION


UNITED STATES OF AMERICA,      )
                               )
      v.                       )   Criminal No. 20-143
                               )
ZACKARY ELLIS SANDERS,         )
                               )
            Defendant.         )   Alexandria, Virginia
_____)   November 6, 2020




                    TRANSCRIPT OF MOTION HEARING
                BEFORE THE HONORABLE T. S. ELLIS
                   UNITED STATES DISTRICT JUDGE

             APPEARANCES:

     For the Government:       WILLIAM CLAYMAN, AUSA
                               JAY PRABHU, AUSA
                               U.S. Attorney's Office
                               2100 Jamieson Avenue
                               Alexandria, Virginia  22314

     For the Defendant:        JONATHAN STUART JEFFRESS, ESQ.
                               JADE CHONG-SMITH, ESQ.
                               KaiserDillon PLLC
                               1099 14th Street, NW
                               8th Floor West
                               Washington, DC 20005



     Court Reporter:     PATRICIA A. KANESHIRO-MILLER, RMR, CRR


     Proceedings reported by stenotype shorthand.
     Transcript produced by computer-aided transcription.
```

```
 1                    P R O C E E D I N G S
 2                         (2:08 p.m.)
 3              THE DEPUTY CLERK:  The Court calls Criminal Case
 4     United States of America versus Zachary Ellis Sanders, Case
 5     Number 2020-CR-143.
 6              May I have appearances please, first for the
 7     government.
 8              MR. PRABHU:  Good afternoon, Your Honor.  Jay Prabhu
 9     and William Clayman for the government.
10              THE COURT:  Good afternoon to you.
11              And for the defendant?
12              MR. JEFFRESS:  Jon Jeffress and Jade Chong-Smith for
13     Mr. Sanders, Your Honor.
14              THE COURT:  Good afternoon to you all.  And good
15     afternoon, Mr. Sanders.
16              I might note just for the record the caption
17     indicates that Mr. Sanders' middle name is Ellis, but he and
18     I are not related in any way, so far as I am aware.
19              All right.  There was an initial motion to continue
20     this matter filed in late October.  I denied it because in my
21     view it amounted to little more than saying we need more time
22     because we haven't prepared, we didn't want to spend the time
23     or money to prepare until we had resolution of the pending
24     motions.  Well, that's not how you do things.  So I denied
25     it.
```

3

1      You then filed a renewed motion, which I have read.
2 And of course this provides more significant information,
3 which you should have supplied the first time around.
4      MR. JEFFRESS:  I apologize, Your Honor.
5      THE COURT:  Well, I'm not going to belabor it.  But
6 in this court don't do that again because a renewed motion
7 isn't going to help you.
8      Now, if I grant the continuance, the fact that the
9 defendant waives his speedy trial rights, of course, is not
10 conclusive because that right belongs to the public as well
11 as to the defendant.  And so I have to make specific findings
12 in that regard.
13      In your renewed motion, you say that there are
14 thousands of pages of electronic communications.  Do you now
15 have all of those pages?
16      MR. JEFFRESS:  Your Honor, we have what's called the
17 sanitized version of that.  So they take out all of the
18 photographs and everything like that, and then they gave us
19 that.  I think we do now have all of those chats.
20      Just one wrinkle, though, there is that we are not
21 allowed under the protective order the government sought --
22 and we did not oppose at the time and the Court granted --
23 we're not allowed to provide those to Mr. Sanders.  So in
24 order to review those with him -- you know, we can look at
25 them at our office, but in order to review them with him, we

1    have to do that on the very short time that we're allotted
2    with him on video at the Alexandria Detention Center.
3            THE COURT:  Does the protective order preclude you
4    from showing him the discovery on the video when you confer
5    with him by video?
6            MR. JEFFRESS:  No, it does not, but it is a very
7    painstaking process.  We get through I would say -- first of
8    all, it is hard to get time with him on video.  I would say
9    everybody is trying to get time with their clients, and as I
10   understand it, there is only one video room at the Alexandria
11   Detention Center.
12           THE COURT:  How much time do you have with your
13   client each week?
14           MR. JEFFRESS:  The most we can get is five hours.
15   And oftentimes, they're cancelled.  And we end up with about
16   four hours a week.
17           THE COURT:  Well, have you actually spent four hours
18   a week with your client?
19           MR. JEFFRESS:  I would say we spent four hours a week
20   with him, but we have a variety of matters to discuss.  Part
21   of that has been -- since at least the last couple -- I'd say
22   over a month -- has been trying to go through the most
23   important aspects of the written discovery to try and show it
24   to him.  You can probably get through at most 10 pages a day,
25   at most, of that.  And there are, I would say, at least

5

1    hundreds, maybe over a thousand pages of chats.  The
2    government just filed a notice seeking the admission of more
3    information outside of what is set forth in the indictment.
4    So it is a very laborious and painstaking process.  There are
5    many, many pages of chats on each indictment count, which is
6    basically six, six counts.  So it's a lot, Your Honor, to go
7    through with him.  And it's just been a challenge, a real
8    challenge under these circumstances.
9            I have never been in a room with Mr. Sanders -- not
10   once -- physically except here in court.  So I have never
11   been able to sit down and review things with him.  It is a
12   very difficult process, which is not typical.  It is,
13   obviously, just as a result of the COVID restrictions that
14   ADC has employed.
15           THE COURT:  Yes, I understand that.
16           You mentioned that the government has recently sought
17   to produce more information?
18           MR. JEFFRESS:  They sought to admit more information.
19   That's right.
20           THE COURT:  All right.  Let me ask the government
21   what that is all about.
22           MR. PRABHU:  Your Honor, on Monday, the government
23   submitted it's 414 notice about other conduct that might be
24   relevant to the charges here, and so there is conduct outside
25   the charged conduct that --

6

1       THE COURT: Are you talking about 404(b)?
2       MR. PRABHU: No, 414. It's basically conduct
3   involving minors that might be relevant. And so we provided
4   that information. It does involve other chats beyond those
5   which they were focusing on for the charged counts.
6       But let me also say, the government does share the
7   concerns of the defense about their ability to prepare, and
8   we were supportive of them filing a continuance motion.
9       There are two other things I should probably put on
10  the record. One is one of our victims in a named count is in
11  the United Kingdom. As the Court may be aware, there has
12  been a lockdown, so we won't have access to that witness in
13  person for sure if the current trial date is left on the
14  calendar. We would try to work something out, but it would
15  be complicated.
16      And the second thing is we have some documents,
17  mainly birth certificates, that are in the mail. As the
18  Court may be aware, the mail has been delayed, as well, and
19  so we haven't received them yet. We're trying to track down
20  those, as well.
21      THE COURT: Where are they coming from?
22      MR. PRABHU: Utah and potentially the UK and
23  Pennsylvania. We actually had an agent go to the Utah
24  facility because we hadn't received it yet, and the whole
25  building was closed due to COVID. So we got notice that it

1   was mailed, but we haven't seen that yet.  So those are
2   evidentiary issues related to our case that we think we can
3   work around under the current state, but I want it to be on
4   the record.
5          THE COURT:  If I grant the continuance and set a new
6   trial date, does the Speedy Trial Act recognize that my
7   docket won't permit setting this for trial until next spring?
8          MR. PRABHU:  Your Honor, I believe it does --
9          THE COURT:  What information do you have in mind?
10  I'm looking at (h)(1).  I don't see it in (h)(1).
11         MR. PRABHU:  Your Honor, the defense has just
12  indicated that they would agree that the case is complex,
13  which normally under our rules --
14         THE COURT:  Yes, I know that.  But you know, I set
15  this case for trial when?
16         MR. PRABHU:  November.  It was set on July 10th.
17         THE COURT:  And at the time I said that it would be
18  outside the speedy trial date.  So I don't have any
19  doubt -- I mean, after all, it's 12 counts in the indictment.
20         MR. PRABHU:  Yes, Your Honor.
21         THE COURT:  And there is some complexity and some
22  considerable volume.  But I think the main problem is the
23  problem the defense counsel is having to prepare.  What
24  bothered me is I have already indicated to Mr. Jeffress that
25  I think it conveyed the impression that we don't want to

1    spend the money to prepare until you resolve these motions,
2    which I didn't consider to be a good reason not to proceed to
3    trial.  But in any event, he has now furnished additional
4    reasons, so I'm going to grant the motion.  But I'm going to
5    require you and Mr. Jeffress -- Mr. Clayman, you and
6    Mr. Jeffress -- to collaborate on an order that makes
7    findings under the Speedy Trial Act that it's a complex
8    matter under 3161(h), and I would think that it also should
9    mention that it's delay required by the defendant to prepare
10   adequately for trial, mentioning the COVID problems, that
11   they can't meet with him and do those sorts of things.  And I
12   don't see a provision that says that my docket says anything.
13   But if you find it, put that in there.  I think it is clear
14   that under the Speedy Trial Act the condition of my docket
15   doesn't permit that.  But I do have matters now set.
16           How much time do you think -- if I make those
17   findings, how much time do you think it would be appropriate
18   to have pass before I set this matter for trial?
19           MR. JEFFRESS:  Your Honor, I think we agreed to the
20   Court's first available trial date even if that is in the
21   spring.
22           THE COURT:  Well, I probably won't do that.
23           MR. JEFFRESS:  Okay.
24           THE COURT:  I will probably do it sooner than that
25   because my docket doesn't control.  I'll have to make some

1     arrangements.
2              MR. JEFFRESS:  Well, certainly from the defense
3     perspective, this is a very serious case for Mr. Sanders.
4     This is something where the mandatory minimum, we're talking
5     about much of the rest of his life if the lead count is
6     resolved against him, and it doesn't seem like the government
7     is going away from the lead count.  So it is an extremely
8     serious matter.  If we're not able to resolve this, it is
9     going to require an enormous amount of preparation and
10    discussion.
11             Mr. Sanders' parents are here in the courtroom today.
12    You know, obviously, we've been working on trying to resolve
13    all these things and make decisions, but it is going to take
14    some time.  So if the Court feels like we need that
15    long -- we can use the time, is what I'm saying,
16    productively.
17             THE COURT:  Let me ask the government:  How long will
18    this trial take?
19             MR. PRABHU:  We expect our government's case-in-chief
20    to take approximately three days.
21             THE COURT:  Really?  With 12 counts?
22             MR. PRABHU:  Yes.
23             THE COURT:  So this trial should take no longer than
24    a week?
25             MR. PRABHU:  That's our estimate, yes, Your Honor.

1        THE COURT:  Well, I still haven't heard from either
2   of you how long it would be reasonable to postpone this case
3   because my docket doesn't control.  What controls is the
4   complexity of it, the volume of material and that sort of
5   thing.
6        MR. JEFFRESS:  Your Honor, looking at that, I would
7   say a February trial date would be appropriate.
8        THE COURT:  You agree, Mr. Clayman?
9        MR. PRABHU:  Mr. Prabhu.  I know with the mask it's
10  hard.
11       Probably February would be fine with the government,
12  Your Honor.
13       THE COURT:  I'm going to grant the motion to
14  continue, again pointing out that not being prepared because
15  you were waiting for motions to be resolved is not an
16  adequate reason for continuance, but all of these other
17  matters that you've raised are.
18       (Pause)
19       THE COURT:  I'm going to take a brief recess so I can
20  decide a date here.
21       Anything else from the government or the defendant on
22  this, on a prospective date?
23       Mr. Jeffress, how long do you think the trial will
24  take?
25       MR. JEFFRESS:  Beyond the government's presentation,

1       I would think that we would need a day.
2               THE COURT:  All right.  Thank you.  The Court stands
3       in recess for 10 minutes.
4               (Recess taken)
5               THE COURT:  As I indicated, I will grant the
6       continuance, but let me be clear that it is not on some of
7       the grounds that are asserted by the defendant.  I don't
8       think COVID precludes the selection of a jury.  Indeed, I
9       have done it.  And it has comported with the requirements;
10      namely, a fair cross section of the community.  And I even
11      think there's some indication in there about counsel being
12      concerned because counsel is pregnant.  I don't know much
13      about that particular subject, but there are other defense
14      counsel present, and they'll have to carry on.
15              I'm going to continue this case until February the
16      9th, at 10 a.m., with a jury.  That's because I expect that
17      it will last no more than three to four days, as I have been
18      told.
19              I'll issue an order requiring jury instructions,
20      proposed voir dire, and any motions in limine if there are to
21      be any.  I'll set the dates for that.  You all will have to
22      comply with those.
23              And as I've said, Mr. Prabhu, you and defense counsel
24      are required to confer, collaborate on an order that makes
25      specific findings that this is a complex case and that the

1   defendant's counsel need an adequate opportunity to prepare
2   for the trial, and that the COVID pandemic has imposed
3   significant burdens and obstacles to lawyers communicating
4   with their clients.
5           MR. PRABHU:  Understood, Your Honor.
6           THE COURT:  I think that's all that needs to be said
7   about that.  It does not prevent, COVID does not prevent the
8   selection of a constitutionally proper jury.
9           All right.  Now, I'll issue an order accordingly.
10          Anything else to be accomplished in this matter
11  today?
12          MR. PRABHU:  Nothing from the government, Your Honor.
13          MR. JEFFRESS:  Your Honor, we'll file an appropriate
14  motion on this -- oh, I'm sorry.
15          THE COURT:  Go ahead.
16          MR. JEFFRESS:  But one thing that might assist -- and
17  I don't think the government would oppose -- is we may be
18  able to work with ADC to create a situation where we could
19  actually use a room there -- it's been done in past cases --
20  to review discovery with Mr. Sanders.  We will look into that
21  and present the appropriate motion to the Court --
22          THE COURT:  What is it that you said had been done in
23  previous cases?
24          MR. JEFFRESS:  They were able to get more time with
25  him because of the volume of discovery.  If we are able to do

```
 1      that without the Court's intervention, then that would be
 2      fine.  But if they said, well, if the judge recommended it,
 3      we may come to the Court for an appropriate order.
 4              THE COURT:  We will cross those bridges when we come
 5      to it.
 6              MR. JEFFRESS:  Thank you, Your Honor.
 7              THE COURT:  If we come to it.
 8              Anything further?
 9              I thank counsel for your cooperation.
10              (Adjourned)
```

...

14

CERTIFICATE OF OFFICIAL COURT REPORTER

   I, Patricia A. Kaneshiro-Miller, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

      Dated this 24th day of November, 2021

      /s/ Patricia A. Kaneshiro Miller
      _____
      Patricia A. Kaneshiro-Miller, RMR-CRR
      Official Court Reporter