IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA )| |
| ) | Case No. 1:20-CR-143 |
| v. ) | |
| ) | Honorable T.S. Ellis, III |
| ZACKARY ELLIS SANDERS, ) | |
| ) | Sentencing: April 1, 2022 |
| *Defendant.* ) | |
| ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR
NEW TRIAL AND TO RECONSIDER MOTIONS TO COMPEL AND SUPPRESS**

The United States of America, by and through undersigned counsel, files this response in

opposition to the defendant's motion for a new trial and to reconsider his repeated failed motions

to compel and suppress. Dkt. No. 585. For the reasons below, the defendant's motion should be

denied. Further, given the Court's familiarity with this case and the baselessness of the defendant's

claims, a hearing on his motion would not aid the Court and is not necessary.

**BACKGROUND**

As explained in the search warrant affidavit, the investigation of the defendant began when

the Federal Bureau of Investigation ("FBI") received a tip from a foreign law enforcement agency

("FLA") that his Internet Protocol ("IP") address was used on May 23, 2019 to access "child sexual

abuse and exploitation material" on a hidden service on The Onion Router network ("Tor," also

known as the "dark web") dedicated to depictions of violent child sexual abuse ("Target Website").

Dkt. No 252-1 ("Affidavit") at ¶ 23. The FLA advised that it obtained this information through its

own lawful, independent investigation without interfering with any computer in the United States.

*Id.* at ¶ 25. And as explained in another section of the Affidavit, the server containing the Target

Website was seized by a foreign law enforcement agency in June 2019, after the defendant's IP

address was used to access child sexual abuse material on the site. *Id.* at ¶ 15. The agency that seized the server is not the FLA described in paragraphs 22 through 26 of the Affidavit that conducted the investigation that led to the information in the tip.

The defendant was later charged in a twelve-count indictment with production, receipt, and possession of child pornography. Dkt. No. 29. He proceeded to trial, and, on October 27, 2021, a jury found him guilty of all counts. Dkt. No. 541. On November 4, 2021, he moved to continue the deadline for filing post-trial motions to January 9, 2022. Dkt. No. 543. The Court extended the deadline to December 27, 2021, but he did not file any timely briefing. Dkt. No. 544. On January 20, 2022, another attorney joined the defense, bringing the number of attorneys who have appeared on behalf of the defendant in this case to nine. Dkt. No. 566. That same day, the defendant's newest attorney filed a motion to continue the sentencing, citing the need to have the defendant evaluated by multiple doctors. Dkt. No. 569. The Court initially denied the motion, Dkt. No.572, but later postponed the sentencing from March 4, 2022, to April 1, 2022, Dkt. No. 581.

On March 3, 2022, a different defense attorney sent undersigned counsel a transcript from a September 17, 2021 hearing on a motion to compel (Dkt. No. 586-1, "*Kiejzo* transcript,") and a complaint affidavit filed on January 28, 2020 (Dkt. No. 586-5), and asked if it is "accurate that the information underlying the tip was from an unnamed FLA," and if there is any exculpatory evidence regarding the defendant's activity on the Target Website. *See* Dkt. No. 586-8. Undersigned counsel responded that his claim about an unnamed foreign agency was inaccurate, and that law enforcement could not further investigate the defendant's activity on the Target Website because he did not provide his username. *Id.* Ignoring this response, defense counsel insisted that the country that seized the server—not the FLA—conducted the investigation that uncovered the information in the FLA's tip based on the *Kiejzo* transcript. *Id.* Undersigned counsel

reiterated that the tip came from the known FLA and the information in the tip came from that FLA's independent, lawful investigation. *Id.* Undersigned counsel also advised that the defense's claim to the contrary was based on the defense's unsupported claim in *Kiejzo* that conflates the seizure of a server with how the FLA obtained the information in the tip in that case.[1] *Id.*

On March 14, 2022, the defendant filed the instant motion requesting that the Court order a new trial under Federal Rule of Criminal Procedure 33 ("Rule 33") and reconsider its rulings on approximately 28 pre-trial motions and filings. *See* Dkt. No. 586 at 1 n.1. Attached to his motion are hundreds of pages of exhibits, which he submits in an attempt to supplement his prior failed claims for an appeal. Dkt. No. 586 at 1, Dkt. Nos. 586-1 to 586-45. The Court ordered the government to respond on or before March 18, 2022. Dkt. No. 587.

## ARGUMENT

Prior to trial, the defendant filed dozens of motions and "supplements" raising a litany of claims, many of which were untimely and all of which were denied. His latest motion—totaling over 700 pages in briefing and exhibits but providing no substantive evidence that was not available prior to the trial—is no different. Indeed, he filed it around 77 days after the already-extended motions deadline and less than three weeks after he obtained a continuance of the sentencing on other grounds, and it should therefore be denied as untimely. Dkt. Nos. 544 & 582.

Moreover, his latest motion appears to be the result of his collaboration with defendants in other cases, as he is now advancing the failed argument of another defendant alongside untimely

---

[1] In the *Kiejzo* transcript, the court criticized the defendant's argument as speculative and denied the defense motion to compel in an order that was made public on October 12, 2021. Dkt. No. 586-1; *see also* Ex. 1 (*United States v. Kiejzo*, Criminal No. 20-40036, Order, Dkt. No. 106-1 (D. Mass. Oct. 4, 2021). Based on the order, it appears that the defendant in that case asked whether the country that seized a server containing two websites was the same FLA that provided the tip in his case, and the government advised that it was not. Nowhere does the government state that the country that seized the server also de-anonymized the defendant's IP address and told the FLA.

arguments this Court has already rejected. And while his wide-ranging claims are untethered from any unifying argument or principle, his motion at base challenges whether the Affidavit established probable cause to search his home and not any issues from the trial. In particular, it relates to two paragraphs in the Affidavit stating that the FLA provided a tip that the user of his IP address accessed "child sexual abuse and exploitation material" on the Target Website, that the FLA has a history of providing reliable information, and that the FLA advised that it obtained this information through its own independent, lawful investigation without interfering with any computer in the United States. All this information is documented in the tip, which has been extensively litigated. Nothing in his latest motion supports his "conspiratorial" theories that the tip is false or misleading, that the FBI knows or believes the tip is false or misleading, or that the United States is withholding exculpatory material related to the tip or the Affidavit. Dkt. No. 369 at 6. His claims are instead based on "a stack of hypotheticals" that he is insisting the government must disprove even though he knows that the same or similar theories have been rejected by this Court and other courts. *See, e.g.*, *United States v. Bateman*, Criminal Action No. 1:20-cr-10012-IT, 2021 WL 3055014, at *3 (D. Mass. July 20, 2021). Accordingly, his motion should be denied.

## I.     The Defendant's Motion for a New Trial is Not Based on New Evidence Discovered through the Exercise of Due Diligence and is Untimely

As an initial matter, despite framing his motion as based on newly discovered evidence pursuant to Rule 33(b)(1), the defendant's request for a new trial relies on information that was available to him prior to trial and his motion should be denied as untimely. Pursuant to Rule 33(a), the Court may "vacate any judgment and grant a new trial if the interest of justice so requires." The Fourth Circuit has instructed that "[a] trial court should exercise its discretion to award a new trial sparingly," and "a jury verdict is not to be overturned except in the rare circumstance when the evidence weighs heavily against it." *United States v. Williams*, 783 F. App'x 269, 274 (4th Cir.

4

2019) (internal citation omitted)). When a defendant seeks a new trial based on allegedly new evidence, he bears a heavy burden. To obtain a new trial in those circumstances, the defendant "must satisfy a five-part test by showing that (1) the evidence is newly discovered; (2) the defendant exercised due diligence; (3) the newly discovered evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence would probably result in acquittal at a new trial." *United States v. Moore*, 709 F.3d 287, 292 (4th Cir. 2013) (citing *United States v. Chavis*, 880 F.2d 788, 793 (4th Cir. 1989)). "And, in the absence of a *Brady* violation, 'a new trial should be granted only when the evidence weighs heavily against the verdict.'" *United States v. Lobo-Lopez*, No. 1:08-cr-194-TSE, 2010 WL 11691673, at *1 (E.D. Va. May 25, 2010) (quoting *United States v. Arrington*, 757 F.2d 1484, 1486 (4th Cir. 1985)).

At the defendant's request, the Court set the deadline to file Rule 33 motions as December 27, 2021. Dkt. No. 544. He filed the instant motion on March 14, 2022, referencing "newly discovered materials" with no other explanation as to why he failed to comply with that deadline. Dkt. 586 at 2. But "[n]ewly discovered evidence means evidence discovered since the trial," *Moore*, 250 F.3d at 250, and the defendant's motion relies on materials from other matters that have been available since 2020 and 2021, if not earlier. And while he claims that the *Kiejzo* transcript in particular was not available until January 10, 2022, Dkt. 586 at 8 n.5, the court in *Kiejzo* denied the motion to compel from that hearing in an order that was made public on October 12, 2021, *see* Ex. 1, the defense in that case filed publicly available objections to that order that the defendant cites in his motion on October 18, 2021, Dkt. No. 856-2, and the defendant has been sharing information and affidavits from this case with the defense in that case since before the deadline to file post-trial motions here, Dkt. No. 586-6. Moreover, the *Kiejzo* transcript is not new evidence of anything. It certainly does not establish that an unknown country "deployed the

method that was used to obtain" the defendant's IP address, as he now claims. Dkt. No. 486 at 3. The government advised the defendant of this weeks ago, but he nevertheless filed the instant motion well after the deadline for post-trial motions. *Id.* at 10-11.

The only information referenced in the defendant's motion that appears to at least partially post-date the trial comes from assorted press releases, none of which have any clear bearing on the reliability of the FLA's tip or the accuracy of the Affidavit. Dkt. 856 at 25-27. It is unclear if these releases even refer to a related matter, as he acknowledges. *Id.* at 25 (guessing that investigation "appears" to relate to the FLA's investigation). The defendant made a similar argument about the government's alleged involvement with the FLA's investigation based on his parsing of other random press releases before, and the Court rejected the claim as "unsupported speculation." Dkt. No. 236 at 5-6. In sum, the "newly discovered evidence" the defendant relies on in his motion for a new trial is not newly discovered or even evidence relevant to this case at all. At a minimum, the same information was or could have been uncovered prior to the trial and certainly prior to the Court's deadline to file post-trial motions, and his motion should be denied.

## II.     The Defendant's Motion for a New Trial Fails Satisfy the Other *Chavis* Factors

Even if the Court determines that the defendant's motion for a new trial is timely and based on new evidence discovered through the exercise of due diligence, he still fails to satisfy the other *Chavis* factors required to warrant a new trial. His motion is simply an extension of his oft-used discovery tactic, in which he hypothesizes ways that the FLA's tip and the Affidavit might be false, repeats those suspicions as facts based on a patchwork of documents that do not actually support his far-reaching theories, and then faults the government for not proving these theories for him while discarding as "not accurate" any information contradicting them. Dkt. No. 586 at 10. Because his speculative claims do not change the fact that the Affidavit accurately conveyed the

FLA's tip and established probable cause to search his home, this allegedly new evidence in his motion is cumulative, immaterial to any relevant issue, and unlikely to result in an acquittal.[2] Accordingly, his motion for a new trial should be denied.

The defendant first claims that a transcript from one case and a plea agreement from another prove that an unknown country de-anonymized his IP address and gave it to the known FLA, which "merely provid[ed] that information second-hand" to the FBI with no independent investigation, contrary to the FLA's tip. Dkt. No. 586 at 2-3, 7-10. The government struggles to understand this claim because, put simply, there is no good-faith reading of the documents that supports it, let alone proves it. With respect to the *Kiejzo* transcript, the defendant simply parrots the defense's speculative claim from that hearing, which that court rejected. *Supra* p.3 n.1. Further, the cherry-picked, generic sentence from the plea agreement—"Law enforcement infiltrated this dark web website and determined that the defendant had utilized the website"—in no way proves that an unknown country obtained the information in the FLA's tip. *Id.* at 9-10. And even assuming these documents provide some support for his efforts to conflate the seizure of a server with the FLA's independent investigation and tip—which they do not—the defendant provides no support for the many other inferences required to make this claim material to a challenge to the Affidavit, including, at a minimum: that the seizing country's actions were unlawful and violated his rights; that the FLA that provided the tip knew this and misrepresented the origin of the tip; and that the FBI also knew this and was working with one or more foreign agencies to conceal this. The only

---

[2] In fact, because the defendant's motion is directed exclusively at so-called "newly discovered evidence" allegedly affecting the reliability of the FLA's tip and the validity of the Affidavit—and not any evidence that could have been presented at trial—his motion for a new trial necessarily fails to identify material that would likely have resulted in an acquittal and should be denied on this basis alone (in addition to relying on material that is neither "newly discovered" nor relevant to either the existence of probable cause in the Affidavit or the government's discovery obligations). *See Moore*, 709 F.3d at 292.

"evidence" for these claims beyond the defendant's baseless assertions are the equally baseless assertions made by another defendant. *See also Bateman*, 2021 WL 3055014, at *3-4 ("All of Bateman's requests are based entirely on speculation that the evidence may show wrongdoing by foreign and domestic law enforcement.").

The government corrected the defendant's misunderstanding prior to the filing of this motion, confirming that the statements in the Affidavit about his IP address came from the same reliable FLA that has been the subject of his prior motions and that this FLA advised that it collected this data through an independent and lawful investigation. Dkt. No. 586-8. The defendant ignored the government and filed the instant motion, alleging in conclusory fashion that the government's communication was "not accurate."[3] Dkt. No. 586 at 10. But despite his claim to the contrary, the defendant has not identified anything beyond his own speculation—and now the speculation of another defendant—to prove the inaccuracy of the sworn Affidavit and show that "the tip no longer has any indicia of reliability." *Id.* at 10-11. The defendant's allegedly new evidence is therefore cumulative of his many speculative pre-trail motions, immaterial, and unlikely to produce an acquittal, and his motion for a new trial should be denied.

The defendant next claims that he is entitled to a new trial because he believes the government has exculpatory evidence regarding his activity on the Target Website. Dkt. No. 586 at 15-16. His claim is based on an out-of-district complaint filed in January 2020, which describes what appear to be archived postings on a Tor site obtained after a defendant provided, among other information that may not be disclosed in the complaint, his username and password to the site. *See*

---

[3] The defendant's total disregard of the government's effort to correct his false understanding of the Affidavit underscores the frivolousness of his repeated accusations that the government "fail[ed] to correct" other false impressions he held.  Dkt. No. 586 at 10-11.  Even assuming that the government bears the responsibility to correct every false belief to which the defendant unjustifiably clings, his motion itself makes clear the fruitlessness of any such effort.

Dkt. 586-5 at ¶ 13. As the government also explained to the defense, law enforcement cannot further investigate his activity on the Target Website because he did not provide his username on the site, though he admitted to downloading child sexual abuse material from sites like the Target Website. If the defendant wishes to provide his true username and password—which he is unlikely to do now—the government can further investigate his criminal activity. More to the point, whether the defendant engaged in additional activity on the Target Website is immaterial because the Affidavit as written establishes probable cause.[4] *See* Dkt. No. 113. Accordingly, to the extent the information in this two-year-old complaint is new, it is cumulative, immaterial to the narrow probable-cause dispute raised in the defendant's motion, and unlikely to result in an acquittal. The defendant's motion for a new trial on this ground should therefore be denied as well.

The defendant's remaining grounds for a new trial are either recycled versions of his failed arguments or new arguments that he failed to timely raise. In either instance, they are frivolous. He claims, for example, that affidavits in support of search warrants from other cases prove that the Affidavit here lacked probable cause. Dkt. No. 586 at 12-14. That is, of course, incorrect. Information in affidavits not before the magistrate judge are immaterial to a court's probable cause determination. *See United States v. Montieth*, 662 F.3d 660, 664 (4th Cir. 2011) ("The magistrate's probable cause determination is a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him there is a fair probability that contraband or evidence of a crime will be found in a particular place." (internal alterations removed)); *id.*

---

[4] The defendant also relies on the complaint to make wide-ranging and unsupported claims about the FBI's purported ability to de-anonymize users and further investigate activity on the Target Website. Dkt. No. 586 at 7, 15-16. The limited information in the complaint does not support the defendant's conclusory assertions. Moreover, as explained above, whether the defendant engaged in additional activity on the Target Website is irrelevant because the information already included in the Affidavit—including the reliable FLA's tip—is sufficient to establish probable cause.

(limiting review of magistrate judge's determination to whether there was a "substantial basis for determining the existence of probable cause"). He also argues that these other affidavits, some of which were prepared by Homeland Security Investigations, prove the FBI did not think the Affidavit here established probable cause. Dkt. No. 586 at 12. The defendant's suggestion that a handful of warrants from other cases are somehow representative of the FBI's views on the Affidavit in this case is absurd. It is also belied by the record, which reflects that both Magistrate Judge John F. Anderson and this Court agreed that the warrant established probable cause.

He also claims that the affidavits and heavily redacted reports from other investigations confirm that the government has been investigating the Target Website for years, that a Network Investigative Technique ("NIT") must have been used to identify his IP address, and that the FBI was engaged in a joint investigation with whoever used a NIT and hid this information. Dkt. No. 586 at 17-22. The defendant has long known, however, that law enforcement in the United States was also investigating the Target Website, that law enforcement received other tips, and that a Tor user's IP address can be de-anonymized without a NIT. *See, e.g.*, Dkt. No. 350 at 3 n.2; Dkt. No. 101 at 23. Additional confirmation that the government is investigating others based on similar tips is simply cumulative of evidence he already has and immaterial to the probable-cause issue in his motion. Nor does the fact that the government gleaned information about individuals who accessed child sexual abuse material on a Tor hidden service in a prior investigation that involved a NIT confirm the defendant's ongoing suspicion that a NIT was used here. *Id.* at 21-22. Similarly, the fact that the Affidavit included information about registered users of the Tor site from this prior investigation does not magically render the Affidavit's accurate description of the FLA's tip misleading. *Id.* at 23-24. These arguments are non sequiturs. Moreover, they are variations of

arguments he already raised, and he is not entitled to litigate the validity of the Affidavit again with no new evidence by repackaging his theories in a motion for a new trial.

Finally, the defendant asserts that various press releases prove the FBI was "working hand in hand" with other countries to bolster his claim that the FBI was engaged in a joint venture and was therefore a "party to an imagined Fourth Amendment violation alluded to in defendant's previous motions to suppress." Dkt. No. 236 at 6. The Court has twice rejected this claim as speculative and untimely, *see id.* & Dkt. No. 501 at 3, and nothing in the defendant's latest motion changes this. In fact, he admits that he does not know if the documents he found online even relate to the FLA's tip and is relying on perceived similarities in names to support his theory. Dkt. No. 586 at 25. He cannot point to a single press release establishing that the FBI knows or should know information undermining the FLA's tip or that the FBI had any involvement with any of these investigations beyond receiving the tip. The defendant's argument is more of the same rank, untimely speculation that this Court previously denied, and the defendant's motion for a new trial on this ground should be denied, too.[5]

---

[5] As he has done throughout this case, the defendant filed a last-minute "supplemental" brief in support of his exceedingly untimely joint-venture claim and attached what he asserts are a foreign report and transcript to prove it. Dkt. No. 591. The supplement is, put bluntly, conspiratorial gibberish. He has provided no additional information as to what these documents are, who edited and provided them, or why they appear to have been photographed on a towel, but even assuming they are what he says they are, they do not prove his "supplemental" theory that the FBI engaged in a joint venture to operate the Target Website for years, all while repeatedly deploying NITs that captured his IP address. *Id.* at 3. As best the government can tell, an individual who was prosecuted in another country years ago for his proven involvement with different sites once made a reference to the Target Website to law enforcement. Dkt. No. 591-2 at 2. Neither document appears to make any other mention of the Target Website, nor any mention at all of the FBI, the concept of a NIT, or any investigative activity taken after 2017. To be sure, law enforcement agencies around the world are working—sometimes together, sometimes alone, and often at the same time—to take down websites that traffic in the kind of violent child sexual abuse material that the defendant enjoys. How he concluded that his supplemental brief proves the existence of a joint venture here, however, is a mystery, and his motion should be denied.

### III.   The Defendant's Motion to Reconsider his Repeated Failed Motions to Compel and Suppress is Untimely and Should Also be Denied

The defendant also asks the Court to reconsider (for at least the fifth time, based on a review of the docket) its rulings on his pre-trial motions to compel and suppress. The Court has made clear that "a motion for reconsideration can be successful in only three situations: (1) to accommodate and intervening change in controlling law; (2) to account for new evidence; or (3) to correct a clear error of law or prevent manifest injustice." Dkt. No. 501 at 2 (citing *Zinkland v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007)). The defendant appears to be relying on the new-evidence prong to support his latest motion. But for the reasons above, the evidence he relies on is not new and was known or should have been known to him through the exercise of reasonable diligence prior to the trial. *Supra* pp. 5-7. Accordingly, his motion for reconsideration should be denied. *See* Dkt. No. 107 (explaining that a motion to reconsider must be based on evidence unavailable at trial); *see also United States v. Dickerson*, 971 F. Supp. 1023, 1024 (E.D. Va. 1997) ("In order to support a motion for reconsideration, the movant is obliged to show not only that ... evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered or produced such evidence at the hearing.").

To the extent the evidence is new, the defendant is asking this Court to "rethink what the Court ha[s] already thought through—rightly or wrongly." *Dickerson*, 971 F. Supp. at 1024 (internal quotation marks omitted). As described above, the Court has repeatedly rejected the claims in his motion, including that: the FBI knew that a NIT was used; the FBI was engaged in a joint venture; the government misled the defendant and the Court about the scope of the investigation; and the Affidavit's description of the FLA's tip is misleading. *See, e.g.*, Dkt. Nos. 73, 107, 113, 236, 442, 501. Repurposing these arguments under the guise of "newly discovered" information that in reality is cumulative of the same failed claims he has repeatedly advanced does

not require a different outcome, nor does it "resolve[] the serious issues of timeliness that have plagued all of defendant's motions[.]" Dkt. No. 501 at 3.

Finally, even if the Court reaches the merits of the defendant's motion, he has failed to show that he is entitled to additional discovery or that the Affidavit was invalid. Instead, as he has done before, he has invented ways in which the FLA's tip might be unreliable or there might be exculpatory evidence and insisted that the government provide the evidence to support those very claims. But the defendant's "repeated incantation that the government misrepresented the FLA's tip does not make it so," Dkt. No. 73 at 10-11. His reliance on the *Kiejzo* transcript is more of the same. The *Kiejzo* transcript does not prove that an unknown country "deployed a technique that identified [the defendant's] IP address" and the FBI knew this. Dkt. No. 586 at 28. Rather, it captures the uninformed speculation of a defendant who, like the defendant here, is grasping at straws to undermine what the FLA's tip plainly states. Omitted entirely from his motion is the order from the court that heard this argument, which describes the claim now advanced by the defendant as "speculation" and supported only by the "bald assertion of a possibility." Ex. 1 at 6-7. The defendant cannot launder what he knows to be baseless, failed arguments from another defendant through a motion for reconsideration, and his motion should be denied.

The government has complied with its discovery obligations. That the government did not catch and correct the defendant's unsupported and irrelevant inference about the seizure of the Target Website's server in a few of his many filings does not prove that "there is a significant amount of withheld discovery material." Dkt. No. 586 at 28. Indeed, the instant motion is so rife with inaccuracies, distortions, and baseless inferences that the government would be hard-pressed to address them all in a single filing. Nor should the government have to. The burden is on the defendant here, and he cannot satisfy that burden by repeatedly seeking to delay the resolution of

this case and then inundating the Court with speculative claims that ignore the evidence before him. While this is not the first time he has exploited the litigation process in this way, the frivolousness of the instant motion is particularly clear given that he was informed that his arguments were premised on a misapprehension of the facts. *See also* Dkt. No. 369 (denying motion to compel the production of material he had already been told does not exist). Because the defendant has only offered non-conclusory allegations to support the many logical leaps required to show the materiality of his claims, his motion should be denied.

## **CONCLUSION**

The government respectfully requests that the Court deny the defendant's motion for a new trial and to reconsider his failed motions to compel and motions to suppress. Dkt. No. 585.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:          /s/
          William G. Clayman
          Special Assistant United States Attorney (LT)
          Jay V. Prabhu
          Seth M. Schlessinger
          Assistant United States Attorneys
          United States Attorney's Office
          2100 Jamieson Avenue
          Alexandria, Virginia 22314
          Phone: 703-299-3700

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 18, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of that electronic filling (NEF) to counsel of record.

By: _____/s/_____
William G. Clayman
Special Assistant United States Attorney (LT)
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700
Email: william.g.clayman@usdoj.gov