IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 1:20-cr-00143 |
| v. | Honorable T.S. Ellis, III |
| ZACKARY ELLIS SANDERS, | Hearing: Apr. 28, 2022 |
| Defendant. | |

**RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL BRIEF REGARDING FORFEITURE OF NON-CONTRABAND ELECTRONIC FILES AND DATA**

Mr. Zackary Sanders respectfully submits this Response to the Government's Reply on Defendant's Supplemental Brief Regarding Forfeiture (ECF 641). Both because Mr. Sanders's compromise proposal is just and reasonable, and because the Court has the clear authority to implement it, Mr. Sanders respectfully asks the Court to permit the Sanders family to a small subset of materials through a brief visit to the United States Attorney's Office to make copies of various electronic, non-contraband materials for return. Furthermore, to the extent the Court addresses the larger statutory and due process issues here, Mr. Sanders submits the following to clarify the record on several fundamental points. Most importantly, the record should be clear that Mr. Sanders is *not* seeking the return of any part or portion of any device subject to forfeiture.

**DISCUSSION**

I.   **The Court can and should order the government to permit the inspection and identification of a limited universe of materials that can be returned to the Sanders family after the government's review.**

In its Reply (ECF 641), the government greatly exaggerates the nature of Mr. Sanders's request, which is modest in scope and easily accomplished. Mr. Sanders is not seeking to review (much less the return of) the overwhelming majority of the folders on these devices. He is not seeking any part of any device, data from the applications on those devices, or any cached data; he is simply seeking the return of copies of certain discrete files contained on the devices. As set forth in his Supplemental Brief (ECF 632), Mr. Sanders's request is for the defense to identify and, upon the government's approval, extract a small universe of electronic copies of materials from only three devices[1]—*at his family's own expense.* Under this proposal, a family representative and defense lawyer will meet and confer with the government to select copies of a small number of images and documents for potential return. This meeting can likely be accomplished in just a single visit to the U.S. Attorney's Office and will take no more than approximately one business day. Indeed, it is less than what other courts faced with this same situation have ordered. *See, e.g.*, *United States v. Gladding*, 775 F.3d 1149, 1154 (9th Cir. 2014) (noting that "[t]he district court may also order alternative measures for returning Gladding's noncontraband files other than forcing the government to pay for the segregating the data itself. . . . For example, the district court can require Gladding to pay the costs of segregation by having

---

[1] Using the government's categorization system, the three devices are the HP Elite Book computer (1B2), an iPad (either 1B22 or IB22, whichever is the iPad Pro), and his iPhone X (1B27). The serial number for 1B19 listed in the Government's motion for preliminary forfeiture and the Eckert Declaration is not accurate (it should include a number; not all letters), leaving the defense unable to tell which iPad is at issue. If the government can provide accurate serial numbers and/or the model of the iPad, the defense can specify which iPad is at issue.

his expert review the electronic storage devices and copy the noncontraband files to the extent otherwise permitted by law.").

As the Court is aware, in this age, much of a family's recorded memory can—and in this case does—exist on electronic devices. There is no other record of Mr. Sanders's academic and professional life, which is essential for future employment, or any other recorded memories of his childhood. For the Sanders, the recorded memories and artifacts from their shared life exist on three devices (a computer, an iPad, and an iPhone) and fall into two categories: (1) personal/family photographs; and (2) materials from Mr. Sanders's previous jobs that he will need in order to find employment following his release from prison. Contrary to the government's hyperbolic submission, this is a simple request that the government could easily accommodate through the brief tasking of one agent.[2]

Examples of the specific materials the Sanders family asks for the return of are as follows:

- Family and personal photos from the Sanders's family vacation cruises, which took place annually during the summers from 2012-2020 separate, non-contraband files from within the device, as opposed; Birthday photos from family birthday parties on Mr. Sanders's birthday, February 16th of each year; and holiday family photos from each year.

- The lighting design plans from theatrical shows (including on Broadway, off Broadway and regional theaters) where Mr. Sanders served as a designer.

- Academic work, contracts entered into, and financial documents from Mr. Sanders's prior employment.

---

[2] Indeed, this process for returning non-contraband material appears to a standard practice for resolving these issues in order. *See, e.g., United States v. Arnold Bernard Conrad*, 3:12-cr-00134-J-34 (TEM) (M.D. Fl. (Jacksonville Div.) May 14, 2013) (Attached as Exhibit 2) (reciting process for return of non-contraband material from computer in child pornography case).

3

Needless to say, the Sanders family has been devastated by this prosecution and Mr. Sanders's lengthy sentence. Permitting them copies of this small universe of materials to recall happier times and help ensure future employment for Mr. Sanders years down the road is not an unreasonable request.

The courts have consistently recognized this Court's authority to order the return of non-contraband to a defendant. In addition to the Ninth Circuit's decision in *Gladding*, the district court in *United States v. Michael Alan Reaid*, Order (ECF 84), 4:10-cr-00042 (RH-CAS) (N.D. Fl. June 11, 2012) (attached as Exhibit 1), expressly recognized its authority in this regard. In *Reaid*, the defendant had agreed to forfeiture as part of his plea. Following sentencing, however, he filed a motion for the return of property under Federal Rule of Criminal Procedure 41(g). The court stated as follows:

> What Defendant is asking for are personal and professional files that are stored on his laptop computer *and* the media files. He wants the Government to go through the media disks and the hard drive on the on the lap top computer to find his personal and professional files, copy them, and send them to his parents for safe keeping. . . .
>
> In response, the Government states that many hours may be needed to separate the criminal from the non-criminal files because persons possessing images of child pornography often hide them in seemingly benign files or within the background of larger images. The Government also notes that no authority exists to require non-criminal items to be extracted from forfeited property.
>
> Rule 41, however, does contemplate extraction and return or electronically stored information. Vast quantities of non-case related information may be involved when electronic media items are seized. The 2009 Advisory Committee Note to Rule 41(e)(2) acknowledges that "[c]omputers and other electronic storage media commonly contain [] large amounts of information . . ." and that "officers may seize or copy the entire storage medium and review it later to determine what electronically stored information falls within the scope of the warrant." The same Advisory Committee Note explains that the property owner has a remedy to seek "return of the property, excluding contraband or instrumentalities of crime" through a court order under Rule 41(g) for return of "electronically stored information, under reasonable circumstances." The Advisory Committee Note states that "the court on a case by case basis can fashion an appropriate remedy, taking into account the time needed to image and search the data and any prejudice to the aggrieved party."

> So at least in some circumstances a defendant may be entitled to the return of electronically stored information, which is what Defendant is seeking here. The fact that Defendant is not entitled to return of the laptop computer itself or the actual media disks does not mean that he is not entitled to certain electronically stored information contained therein. By analogy, a defendant may be entitled to return of personal property contained in an automobile even if the automobile is subject to lawful seizure and forfeiture. *See United States v. Berroa*, No. 05-40098, 2007 WL 2683996 (C.D. Ill. Sept. 6, 2007) (setting hearing on post-conviction 41(g) motion for return of property that was contained in a seized and forfeited automobile). Likewise, information copied from a computer hard drive may be subject to return under Rule 41(g), even if the defendant is not entitled to possession of the computer hardware.

*Id.*

Certain of the authorities the government cites in support its position are not to the contrary. The case *United States v. Hull*, 606 F.3d 524 (8th Cir. 2010), for example, in fact supports Mr. Sanders's position. While the government notes that the Eighth Circuit upheld the forfeiture of real property used to commit the child pornography offense under 18 U.S.C. 2253(a), the government did not ask—and the Court did not address—the forfeiture of all *of the contents* of Mr. Hull's house, such as the furniture and everything else. Only in that event would the case support the government's position here, where the government seeks the forfeiture of not to just the device itself, but all of the devices' contents, including those that both parties agree are not contraband. As the Supreme Court stated in *Riley v. California*, 573 U.S. 373, 403 (2014), "[t]he fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought." Just as *Riley* and the other warrant cases require that the government treat each separate part of a phone as a separate container for probable cause purposes, *see, e.g., United States v. Carey*, 172 F.3d 1268, 172-73 (10th Cir. 1999) (suppression warranted where government exceeded the scope of warrant for computer search), so here with respect to forfeiture.

5

**II.     The Government's statements about the Griffeye technology as a tool for segregating images are immaterial and also contradicted by Griffeye's own website.**

Under the proposal Mr. Sanders asks the Court to implement, the volume of material from the devices will be minimal. Mr. Sanders is asking for only a small number of photos, documents, and no "victim information" whatsoever. There will accordingly be no need for the government to devote much, if any, time to inspecting the small universe of material the Sanders family seeks to recover.

To the extent it is relevant, however, the government's motion incorrectly describes the Griffeye technology. In the Declaration of Special Agent Andrew Kochy (ECF 610-1), Special Agent Kochy states as follows:

> Use of such tools as Griffeye will not alleviate the manual review required to identify all contraband within digital media. The Griffeye data base is created by previously identified, and categorized, child pornography images. If images are not currently in the database, Griffeye will return a result of 'Uncategorized'. This category would still require a manual review by a FBI examiner. Griffeye relies on the known hash sets to identify child pornography images. If an image has been cropped or altered in any way, Griffeye will return a result of 'Uncategorized' as the new image does not match the hash on file.

*Id.* at 9-10.

According to Griffeye's own website, the above is incorrect—that is not how Griffeye works. The Griffeye website expressly states that it instead relies on artificial intelligence to classify images, and not on "known hash sets," as Agent Kochy averred. *See* Exhibit 3 (printout of Griffeye website).[3] As stated on the website, "[t]he AI scans through *previously unseen footage* and suggest images that is believes depicts child sexual abuse content. The AI outputs a

---

[3] Special Agent Ford also expressly confirmed to the defense team during its pre-trial visits that Griffeye had processed the material using artificial intelligence, and not based on previously assigned the hash tag values.

6

score that can be used to tell whether a file is pertinent to the investigation or not." *Id.* (emphasis added).  Griffeye relies on "A[rtficial] I[ntelligence] technology that will help investigators filter out relevant information, speed up investigations and free up time to prioritize investigative work such as victim identification." *Id.*

As stated in Mr. Sanders's previous submission, FBI Special Agent Ford has already used Griffeye to process Mr. Sanders's iPhone (1B27) and segregated the images from that device into three different categories:  (1) cleared images, (2) questionable images needing further review, and (3) contraband images.[4]  Further, in addition to using the Griffeye technology, Special Agent Ford confirmed to counsel that he also *already* manually reviewed the Griffeye results to appropriately categorize the material.  Thus, much of the work that the government asserts as unduly burdensome has in fact already been completed and would not require any additional expenditure of government resources.

### III.   A hearing on forfeiture is respectfully required here and the Court should accordingly decline to cancel the April 28th hearing date.

In its response, the government argues that "the United States believes that a hearing would not aid the Court's decisional process and is therefore not requesting a hearing."  Gov't Reply on Def.'s Supplemental Brief Regarding Forfeiture (ECF 641) at 1.  The government formerly admitted, however, that a hearing on forfeiture is necessary when requested by either party.  *See* Gov't Mot'n for Preliminary Order of Forfeiture (ECF 610) at 17 (noting that, "if either party requests a hearing on the forfeiture, Fed. R. Crim. P. 32.2(b)(1)(B) provides that 'the court must conduct a hearing.'").  Thus, as Mr. Sanders is requesting a hearing here, the Court should not cancel the hearing currently scheduled for April 28, as the government asks for it do.

---

[4] The defense does not seek to review any of the material already classified by Special Agent Ford as contraband, thus further alleviating the expenditure of government resources.

A hearing is also necessary as the government has failed to satisfy the required evidentiary criteria for at least one device, "IB24." Indeed, it is not even clear what that device is. In its initial motion for a preliminary order of forfeiture, the government described 1B24 as an "Apple iPad." Gov't Mot'n for Preliminary Order of Forfeiture (ECF 610) at 1. In Agent Emily Eckert's Declaration, however, the device is described as an "Apple iPhone." Eckert Declaration (ECF 610-1) at 3. The device is not discussed *at all* in the government's motion—and was never introduced or mentioned at trial—but in Agent Eckert's Declaration it is described as having "suspected" child pornography. *Id.* There is no confirmation of its illegal content and, based on the government's failure to even identify what the device is, the defense respectfully submits that the government's motion for forfeiture of 1B24 should be denied. In any event, Mr. Sanders respectfully objects to the forfeiture of this device (and the other devices) in the absence of a hearing.

Respectfully submitted,

/s/
Jonathan Jeffress (#42884)
Jade Chong-Smith (admitted *pro hac vice*)
KaiserDillon PLLC
1099 Fourteenth St., N.W.; 8th Floor—West
Washington, D.C.  20005
Telephone: (202) 683-6150
Facsimile: (202) 280-1034
Email: jjeffress@kaiserdillon.com
Email: jchong-smith@kaiserdillon.com

/s/
Nina J. Ginsberg (#19472)
DiMuroGinsberg, P.C.
1101 King Street, Suite 610
Alexandria, VA  22314
Telephone: (703) 684-4333
Facsimile: (703) 548-3181
Email: nginsberg@dimuro.com

*/s/*
H. Louis Sirkin (admitted *pro hac vice*)
Santen & Hughes
600 Vine Street, Suite 2700
Cincinnati, OH 45202
Telephone: (513) 721-4450
Facsimile: (513) 721-0109
Email: hls@santenhughes.com

*Counsel for Defendant Zackary Ellis Sanders*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of April 2022, the foregoing was served electronically on the counsel of record through the US District Court for the Eastern District of Virginia Electronic Document Filing System (ECF) and the document is available on the ECF system.

*/s/ Jonathan Jeffress*
Jonathan Jeffress