```
 1                    UNITED STATES DISTRICT COURT
                    FOR THE EASTERN DISTRICT OF VIRGINIA
 2                         Alexandria Division

 3    UNITED STATES OF AMERICA,        :
                        Plaintiff      :      Criminal Case
 4             v.                      :      No. 20-CR-00143-TSE
                                       :
 5    ZACKARY ELLIS SANDERS,           :      April 1, 2022
                        Defendant      :      8:10 a.m.
 6    ........................... :      .......................

 7                 TRANSCRIPT OF SENTENCING HEARING
                 BEFORE THE HONORABLE T.S. ELLIS, III
 8                   UNITED STATES DISTRICT JUDGE

 9    APPEARANCES:

10     FOR THE PLAINTIFF:          WILLIAM CLAYMAN, AUSA
                                   SETH SCHLESSINGER, AUSA
11                                 JAY V. PRABHU, AUSA
                                   ANNIE ZANOBINI, AUSA
12                                 U.S. ATTORNEY'S OFFICE
                                   2100 Jamieson Avenue
13                                 Alexandria, VA  22314
                                   703-299-3700
14
       FOR THE DEFENDANT:          CHRISTOPHER BRYAN AMOLSCH, ESQ.
15                                 LAW OFFICE OF CHRISTOPHER AMOLSCH
                                   12005 Sunrise Valley Drive
16                                 Suite 200
                                   Reston, VA 20191
17                                 703-969-2214

18                                 NINA J. GINSBERG, ESQ.
                                   DiMURO GINSBERG, P.D.
19                                 1101 King Street
                                   Suite 610
20                                 Alexandria, VA  22314
                                   703-684-4333
21
       OFFICIAL COURT REPORTER:    REBECCA STONESTREET, RPR, CRR
22                                 U.S. District Court, 9th Floor
                                   401 Courthouse Square
23                                 Alexandria, Virginia  22314
                                   (240) 426-7767
24
                         ( Pages 1 - 118)
25
              COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
```

**P R O C E E D I N G S**

1
2          COURTROOM CLERK:  Court calls criminal case
3     United States of America versus Zackary Ellis Sanders, Case
4     Number 2020-CR-143.  May I have appearances, please, first for
5     the Government.
6          MR. CLAYMAN:  Good morning, Your Honor.  Bill Clayman,
7     Annie Zanobini, Seth Schlessinger, and Jay Prabhu for the
8     United States.
9          THE COURT:  All right.  Good morning to all of you.
10    And who is here for the defendant?
11         MR. AMOLSCH:  Good morning, Your Honor.
12    Christopher Amolsch and Nina Ginsberg for Mr. Sanders, who is
13    present.
14         THE COURT:  All right.  Good morning to you and good
15    morning to you, Mr. Sanders.
16         THE DEFENDANT:  Good morning, Your Honor.
17         THE COURT:  At the outset, there have been about eight
18    or nine lawyers that have appeared in this case.  I don't
19    typically allow that many lawyers, but today we're going to hear
20    just from you.  Is that right, Mr. Amolsch?
21         MR. AMOLSCH:  That's my understanding, Your Honor, yes.
22         THE COURT:  All right.  Now, you filed a number of
23    things, and I'm not sure -- let me ask, Tanya...
24         (OFF THE RECORD.)
25         MR. AMOLSCH:  Your Honor, I have them here to file

1   under seal this morning with the clerk.  I filed them with

2   Your Honor --

3            THE COURT:  You didn't file it with me.

4            MR. AMOLSCH:  No, I haven't filed them yet but they

5   will be filed, Your Honor.  I provided them to the Government

6   and I provided them to the Court --

7            THE COURT:  You need to understand.  You've been here a

8   long time --

9            MR. AMOLSCH:  Yes, Your Honor.

10           THE COURT:  -- not as long as I have --

11           MR. AMOLSCH:  Yes, Your Honor.

12           THE COURT:  You've been here a long time, and you don't

13  file something by sending it to a deputy clerk or sending it to

14  me.  You have to follow a procedure in filing things.

15           MR. AMOLSCH:  Yes, Your Honor.

16           THE COURT:  So at 5 o'clock, or after 5 o'clock last

17  night, I received your supplemental objections to the PSR.

18           MR. AMOLSCH:  Yes, Your Honor.

19           THE COURT:  Now, it won't come as a surprise to you

20  that I think that they're completely untimely.

21           MR. AMOLSCH:  Your Honor, as I put in my motion, I took

22  the amended presentence report to Mr. Sanders as soon as I

23  received it, dropped it off at the jail.  It took a long time

24  for the jail to get to it.  I then had to have an in-person

25  meeting with him --

4

1           THE COURT:  When were you first appointed?

2           MR. AMOLSCH:  I wasn't appointed, I was retained,

3   Your Honor.

4           THE COURT:  All right.  When were you first retained?

5           MR. AMOLSCH:  I don't know.  Several months ago,

6   Your Honor.

7           THE COURT:  Several months ago?

8           MR. AMOLSCH:  Yes, Your Honor.

9           THE COURT:  When was the PSR first issued?

10          MR. AMOLSCH:  The PSR, which I reviewed with

11  Mr. Sanders promptly, was issued probably three weeks before

12  that.  But I will tell Your Honor, some of the objections I made

13  were additional information included in the amended PSR that

14  weren't in the original PSR.

15          THE COURT:  And you only reviewed the original PSR?

16          MR. AMOLSCH:  I reviewed both the amended and the

17  original, but it took --

18          THE COURT:  You made some objections that clearly were

19  remedied in the amended PSR.

20          MR. AMOLSCH:  Well, some of them were, Your Honor, and

21  some of them weren't.  But I don't --

22          THE COURT:  But you put them both in here.

23          MR. AMOLSCH:  No, I actually didn't, Your Honor.

24          THE COURT:  Actually, you did.  I reviewed it very

25  carefully last night.  Be seated, please.

1                MR. AMOLSCH:  Yes, Your Honor.

2                THE COURT:  Your objections are untimely, and I find

3      that --

4                MR. AMOLSCH:  Just so Your Honor -- I don't believe --

5                THE COURT:  -- inexplicable.

6                MR. AMOLSCH:  Well, they're not inexplicable.  I don't

7      believe they have anything to do with Your Honor's sentencing

8      decisions.  As I put in my memo, this isn't about sentencing,

9      this is about the fact that the BOP is going to look at that PSR

10     and make certain decisions based on how he's --

11               THE COURT:  Yes, I understood that.

12               MR. AMOLSCH:  And we don't have to do that today.  From

13     a sentencing point of view, I don't think it's germane.  But I

14     think it is important --

15               THE COURT:  All right.  Well, if it isn't changed

16     today, I'm not going to change it ever.

17               MR. AMOLSCH:  I understand.  But just so Your Honor

18     understands, the reason I put them in there is I think there are

19     certain things that will cause BOP concern, that I don't think

20     are accurate, and that's why they need to be corrected.

21               THE COURT:  Well, let me just mention briefly, as I

22     said, it's untimely.

23               I take it -- Mr. Clayman, have you seen it?

24               MR. CLAYMAN:  We got it last night at the same time as

25     Your Honor.

6

```
1              THE COURT:  All right.  So you've obviously not had an
2      the opportunity to file your response?
3              MR. CLAYMAN:  That's correct.
4              THE COURT:  All right.  In my interest, M. Amolsch, to
5      make sure that I wasn't proceeding with a misunderstanding, I
6      reviewed it last night --
7              MR. AMOLSCH:  Yes, Your Honor.
8              THE COURT:  -- after 5:00, when I received it.
9              MR. AMOLSCH:  Yes, Your Honor.
10             THE COURT:  And I'm satisfied that some of these have
11     already been made.  You mention Paragraph 15; that change has
12     already been made.  It's a footnote in the PSR.
13             MR. AMOLSCH:  Okay.  Thank you, Your Honor.
14             THE COURT:  But I shouldn't have to do this,
15     Mr. Amolsch.  That's your job.
16             MR. AMOLSCH:  It is my job, Your Honor.  And it's an
17     enormous PSR, and if I'm mistaken on that one, that's on me.
18             THE COURT:  Yes, it is.
19             MR. AMOLSCH:  I agree.
20             THE COURT:  That isn't the only one.
21             MR. AMOLSCH:  I agree.
22             THE COURT:  I'm not going to go through it in some
23     detail, but in the future I expect you to be far more careful.
24             MR. AMOLSCH:  Thank you, Your Honor.
25             THE COURT:  It has nothing to do, also, with my
```

7

1    sentencing decision.  And just because I may be irritated to

2    get, at 5 o'clock in the evening before an 8 o'clock in the

3    morning sentencing, a further pleading from you, rest assured,

4    that isn't Mr. Sanders' fault.  He's not in any way affected by

5    the behavior of his many lawyers in this case.

6          MR. AMOLSCH:  I understand, Your Honor.  That's always

7    been my experience with the Court.  But just to make sure

8    Your Honor --

9          THE COURT:  Let's go on for just a minute.

10         You also objected to Paragraph 22 about the chastity

11   cage.  That came from the interview with the Minor Victim 5 with

12   the FBI.  That doesn't play any role in my sentencing decision.

13   I don't care about a chastity belt.  So it's irrelevant.  That

14   objection is irrelevant.

15         MR. AMOLSCH:  It is for the purposes of sentencing,

16   Your Honor.  But again, just to reiterate --

17         THE COURT:  I'm not going to make a finding of fact.

18         MR. AMOLSCH:  I understand, Your Honor.

19         THE COURT:  It is -- I did confirm that it was in the

20   interview of Minor Victim 5.

21         MR. AMOLSCH:  But my cites, Your Honor, were to some

22   testimony that made that maybe seem not true.  That was my

23   point.

24         THE COURT:  You can raise that with the Bureau of

25   Prisons if you wish to.

8

```
 1              MR. AMOLSCH:  Thank you, Your Honor.

 2              THE COURT:  It's not material to the Court's sentencing

 3    decision.

 4              MR. AMOLSCH:  I understand.

 5              THE COURT:  You talk about a key to a chastity cage.  I

 6    don't doubt that MV 5, Minor Victim 5, might have had a key.  I

 7    don't know how he would urinate or otherwise use the facilities

 8    if he couldn't.

 9              MR. AMOLSCH:  Yes, Your Honor.

10              THE COURT:  So that never interested me or bothered me.

11              MR. AMOLSCH:  I understand, Your Honor.

12              THE COURT:  And I might as well say this at this time,

13    too.  Many of your objections - and indeed, many of the

14    positions taken by the attorneys in this case on behalf of

15    Mr. Sanders - belabor the BDSM aspect of this case.  Mr. Sanders

16    is not before the Court today, or any day, because of BDSM.

17    BDSM is neither legal or illegal.  It's not illegal.  It's not a

18    crime.  The crime is when you deal with underage people and

19    engage in the kind of conduct that he did.  But it isn't before

20    the Court that that's legal or illegal.  I don't express any

21    view about it.  I frankly don't care.

22              Now, you would tell me:  But you need to understand the

23    BDSM behavior so that you understand why he did what he did, why

24    the defendant did what he did.  I do.  You-all have explained

25    that in some excruciating detail.  Does it make anything he did
```

1    legal?  No.  Does it make it anything less criminal?  No.

2            MR. AMOLSCH:  I understand.  And again, my only concern

3    is that the BOP isn't going to have the benefit of Your Honor's

4    wealth of experience on this, and how they may read these things

5    in isolation may impact his classification.  That's my only

6    point.

7            THE COURT:  Well, there's no reason why you can't deal

8    directly with the BOP as well.

9            MR. AMOLSCH:  I will do that as well, Your Honor.  But

10   I also wanted to bring it up to Your Honor because you have

11   final control over the PSR, and what goes into it and what

12   doesn't.

13           THE COURT:  That's right.

14           MR. AMOLSCH:  And so this is appropriate for me to talk

15   to you about it, even if you discard my objections.

16           THE COURT:  Well, I discard them in the first place

17   because they're untimely, totally untimely.

18           MR. AMOLSCH:  Just so you know, Your Honor, I saw

19   Mr. Sanders as early as the ADC would allow me to see him.  I

20   couldn't get in any earlier.  I had to make special arrangements

21   with Chief --

22           THE COURT:  How many weeks have you been an attorney in

23   this case?

24           MR. AMOLSCH:  I've been a couple months, but I've

25   only had -- the amended PSR I only had for about a week.  So

1    that's what we're talking about here, the amended PSR, not the

2    original.

3              THE COURT:  No, but then you raise objections in the

4    PSR that were covered in the amended.

5              MR. AMOLSCH:  Your Honor, to the extent I made an error

6    about that, that's on me.  But I think that the Court would

7    be -- it's not fair to state that I didn't act timely, when I

8    got in --

9              THE COURT:  I don't think you did.

10             MR. AMOLSCH:  -- as quickly --

11             THE COURT:  I understand your explanation --

12             MR. AMOLSCH:  -- as I could.

13             THE COURT:  -- but I'm not satisfied with it.

14             MR. AMOLSCH:  I understand.  Thank you, Your Honor.

15             THE COURT:  The PSR has been out for a long time.

16   There are detailed objections - four of them, as I recall -

17   filed by one of your predecessors.

18             MR. AMOLSCH:  Yes, sir.

19             THE COURT:  And I take it you're prepared to address

20   those today?

21             MR. AMOLSCH:  Yes, sir.  If it comes up, I will, yes.

22             THE COURT:  It will come up.  You have an objection --

23             MR. AMOLSCH:  I am prepared to deal with it, yes,

24   Your Honor.  But I don't know what Your Honor wants to talk

25   about.  But yes, if it comes up, I'll be able to deal with it.

11

1          THE COURT:  All right.  Let's finish with what you

2     filed -- well, you didn't file, what you sent to the court at

3     5 o'clock last night.

4          MR. AMOLSCH:  Yes, sir.

5          THE COURT:  All right.  The first thing you brought to

6     my attention is that you object to the characterization in

7     Paragraph 14.  As you recognize, that's not material to my

8     sentencing decision --

9          MR. AMOLSCH:  Yes, sir.

10          THE COURT:  -- and, moreover, there is no question that

11     he used -- he persuaded some of these people.  And I don't find

12     that inaccurate.

13          MR. AMOLSCH:  Yes, sir.

14          THE COURT:  Then you go to Paragraph 15.  That is an

15     objection that was already accommodated in the amended PSR.

16          MR. AMOLSCH:  Yes, sir.

17          THE COURT:  There's a footnote in the amended PSR that

18     says precisely what you raise in your supplemental objection.

19          MR. AMOLSCH:  Yes, sir.

20          THE COURT:  Then we go to Paragraph 22.  That's the

21     chastity cage.

22          MR. AMOLSCH:  Yes, sir.

23          THE COURT:  I have no interest -- it doesn't play any

24     role in my sentencing decision.  You also consistently point out

25     that these minor victims were not coerced, as you would see it;

12

1    that is, they did this willingly.  They participated willingly.

2    That's the impression you want the BOP to get.

3              MR. AMOLSCH:  And specifically as it relates to

4    Paragraph 23, if that's what we're talking about next, there's

5    allegations of duct-taping and forcibly removing pants.  That I

6    think BOP is going to take some issue with, and I don't think

7    that's --

8              THE COURT:  All right.  I will do this.  I will just

9    insert that -- because this came from an interview as well.

10   That the defendant denies that he did those two things.

11             MR. AMOLSCH:  Thank you, Your Honor.

12             THE COURT:  On Paragraph 24, I'll also add that; that

13   the defendant denies that he choked and handcuffed

14   Minor Victim 5.  You also deny that he masturbated --

15             MR. AMOLSCH:  Yes, sir, all of that.

16             THE COURT:  All right.  I'll note that you deny that,

17   and I'll have the probation officer, who is present in the

18   courtroom -- Ms. Smihal, make that change, but make clear that

19   what appears in that paragraph came from an FBI interview of

20   Minor Victim 5.

21             MR. AMOLSCH:  Your Honor, it is worth noting -- not to

22   try the Court's patience, but I believe from the testimony of

23   this particular person, they acknowledged lying to the FBI when

24   they made these statements.  So it is true it came from his

25   statement.

13

```
1              THE COURT:  Next, Paragraph 41, I don't see any changes

2    necessary there, so any objection there is denied.  The whole

3    thing is denied because it's untimely --

4              MR. AMOLSCH:  Yes, sir.

5              THE COURT:  -- but I'm addressing this because I want

6    my -- I want to get it right when I decide what sentence to

7    impose on this defendant.

8              MR. AMOLSCH:  Yes, sir.

9              THE COURT:  So even if you had shown up this morning

10   and handed me this, I would be doing this.

11             MR. AMOLSCH:  I understand, Your Honor.  Thank you.

12             THE COURT:  Paragraph 42, again, Ms. Smihal, point out

13   that the defendant denies that Minor Victim 2 is referring to

14   Mr. Sanders in that.  He says it must be some other individual.

15             Again, this comes, Ms. Smihal, from an FBI interview?

16             MS. SMIHAL:  Yes, Your Honor.

17             THE COURT:  All right.  Note that.

18             Let's go to Paragraphs 44 to 49.  That's an argument

19   about whether the chats are accurately characterized.

20             MR. AMOLSCH:  Your Honor, not to go back, but just to

21   correct something Your Honor said about the interview in

22   Paragraph 42.  I've just been informed it wasn't from an FBI

23   interview, it was from an interview completed by another

24   law enforcement agency outside the United States, to the extent

25   that is important.
```

14

1          THE COURT:  All right.  Ms. Smihal, is that correct?

2          MS. SMIHAL:  That is correct, Your Honor.

3          THE COURT:  All right.  Note that, Ms. Smihal.

4          Paragraph 45, you say the PSR fails to explain that the

5    statements are part of a BDSM type of dialogue.  That's

6    irrelevant.  Again, this isn't a case about whether BDSM is

7    legal or illegal.

8          MR. AMOLSCH:  I understand, Your Honor.

9          THE COURT:  And while I appreciate and understand your

10   desire, and the eight or seven other lawyers who have appeared

11   in this case, to explain BDSM to put in context his behavior and

12   to understand his behavior, I understand.

13         MR. AMOLSCH:  Thank you.

14         THE COURT:  It's not relevant in fact, because whatever

15   the behavior, whether it's BDSM or some other kind of behavior,

16   it's criminal.

17         MR. AMOLSCH:  Yes, sir.

18         THE COURT:  Now, Ms. Smihal, add, with respect to

19   Paragraph 45 and Paragraph 51, that the defendant denies that he

20   in any way blackmailed or forced Minor Victim 1 to do anything.

21         MS. SMIHAL:  Yes, Your Honor.

22         THE COURT:  And record how you got that information

23   there as well.

24         Then we go to Paragraph 55.

25         MR. AMOLSCH:  Your Honor, just for the Court, this is

1    what was added to the PSR as part of the amended PSR.  This is

2    where we begin those objections.  These are not objections we

3    could have made earlier because they were added after the fact,

4    as well as -- 55 onward.  Just letting the Court --

5              THE COURT:  I'm glad you appreciate, Mr. Amolsch, that

6    there's much you could have done much earlier.

7              MR. AMOLSCH:  I just wanted to let the Court know where

8    we were beginning in terms of the new information.

9              THE COURT:  Let's go to 55.  This is where the PSR

10   reports that he asks Minor Victim 6 to delete everything.

11             Where did you get that from, Ms. Smihal?

12             MS. SMIHAL:  Your Honor, from law enforcement

13   interview.

14             THE COURT:  All right.  And that's an FBI interview?

15             MS. SMIHAL:  Yes, I believe so.  I'm pretty sure.  I

16   have to double check.

17             THE COURT:  All right.  Just add that he denies that he

18   asked him to delete everything.

19             Now, you also object to the two-point enhancement for

20   obstruction, as a result.  I'll overrule that objection.  I'm

21   satisfied with what's in the PSR.  I'm going to put in the PSR

22   that he denies that, but I am satisfied that the record

23   satisfies the Court by a preponderance of the evidence that he

24   did tell Minor Victim 6 to delete everything.

25             He isn't -- I think the two-level enhancement is

1    appropriate, but again, it's really immaterial to the Court's

2    sentencing decision.  The guidelines in this case put an offense

3    level as high as above 43, which is as high as the guidelines

4    permit an offense level to go.

5            Is that right, Ms. Smihal?

6            MS. SMIHAL:  Yes, Your Honor.

7            THE COURT:  So it doesn't make any difference.

8            MR. AMOLSCH:  I understand, Your Honor.

9            THE COURT:  I'm satisfied that the obstruction

10   enhancement applies, but it's immaterial, not only to the

11   guideline calculation, it's also immaterial to my decision on an

12   appropriate sentence.

13           MR. AMOLSCH:  I understand, Your Honor.  Thank you.

14           THE COURT:  The others about 15 milligrams of

15   Meloxicam, I don't think anything needs to be changed there.

16           MR. AMOLSCH:  Your Honor, the only reason why that's in

17   there is because BOP is going to be required to administer his

18   medication.

19           THE COURT:  Yes, and you're going to be required, when

20   he is sent - and I would do it quickly - to make sure that the

21   BOP has all the medical records.

22           MR. AMOLSCH:  Yes, sir.

23           THE COURT:  And I would not rely solely on whether

24   Alexandria Detention Center sends everything.

25           MR. AMOLSCH:  Yes, sir.

17

```
 1              THE COURT:  You need to make sure they have everything.
 2   And I know he's been diagnosed with multiple sclerosis.  I've
 3   already dealt with that.  I ordered him to have certain
 4   treatments in a timely manner that will also be recorded in the
 5   Judgment and Conviction [sic] order.
 6              MR. AMOLSCH:  Yes, sir.
 7              THE COURT:  And I don't think any change needs to be
 8   made to Paragraph 130.
 9              MR. AMOLSCH:  Yes, sir.
10              THE COURT:  All right.  Now, I think I can assume,
11   Mr. Amolsch, that you and your client have had an adequate
12   opportunity to review the presentence report and the amended
13   presentence report, and that you've had an opportunity to read
14   it together?
15              MR. AMOLSCH:  Yes, sir.
16              THE COURT:  All right.  Mr. Sanders, good morning
17   again, sir.
18              THE DEFENDANT:  Good morning, Your Honor.
19              THE COURT:  Mr. Sanders, your middle name is Ellis, and
20   I want to record, and I'm sure you want to record, that there's
21   no familial relationship or any blood relationship, so far as I
22   know or you know, between you and me.
23              THE DEFENDANT:  That's correct, Your Honor.
24              THE COURT:  All right.  Now, could you confirm that
25   you've had an adequate opportunity to see and review the
```

18

1    presentence report, both the original one and the amended one?

2              THE DEFENDANT:  My attorney dropped it off at the jail;

3    they refused to give it to me.  He contacted them multiple

4    times.  I only had maybe a day to review the presentence report,

5    I believe, before he filed the updated objections.  And I know

6    there was new stuff added to the revised presentence report.

7              I asked every sergeant, captain that I could find at

8    the jail; they said, we have a new process for legal mail, it

9    takes a few days to get to people.  It doesn't matter if your

10   attorney dropped it off, you get it when you get it.  I

11   contacted, you know, my family, and they contacted my attorneys;

12   my understanding is they sent more emails to the jail.  Days

13   went by, nothing, until he was finally able to get an in-person

14   visit briefly, I believe it was Wednesday morning.  And that was

15   the first time I was able to go over -- I was actually given a

16   copy.  Even though he had dropped off a copy that weekend, the

17   jail refused to give it to me.  I finally got a copy Wednesday

18   morning when we met, and I reviewed it during the day Wednesday,

19   we spoke Thursday.

20             THE COURT:  All right.  I'm glad that you've had an

21   opportunity to tell me about those difficulties, but let me

22   confirm.  Have you now read it?

23             THE DEFENDANT:  I have read it, yes.

24             THE COURT:  And have you conferred with Mr. Amolsch

25   about it and its contents?

1           THE DEFENDANT:  Yes.  We were able to talk about it

2      yesterday.

3           THE COURT:  And are you fully satisfied with the advice

4      and counsel that he has provided to you in this case?

5           THE DEFENDANT:  That Mr. Amolsch has, since he's been

6      on, yes.

7           THE COURT:  Well, that's all I've asked you.  If you

8      have any qualms with any of your previous lawyers in this

9      phalanx of lawyers --

10          THE DEFENDANT:  That's why I wanted to be clear, yes.

11          THE COURT:  -- you may take it up with them.  All

12     right.  You may be seated, sir.

13          Does the Government have any objections or corrections

14     to the presentence report?

15          MR. CLAYMAN:  No, Your Honor.

16          THE COURT:  All right.  I will adopt the findings and

17     conclusions of the presentence investigation report, with the

18     exception of the matters that I've mentioned to Ms. Smihal that

19     she is to make changes regarding that.  But I will note that -

20     and this should be there as well - I've ruled that it's

21     untimely, and that I'm only reviewing it as a matter of grace,

22     not as a matter of right.

23          MR. AMOLSCH:  Yes, sir.

24          THE COURT:  All right.  Now, Mr. Amolsch, there are

25     other objections to the presentence report that were filed

20

1    previously.  Am I correct?

2         MR. AMOLSCH:  That's correct, Your Honor.  And as to

3    those objections, we're just going to rely on our pleadings on

4    that.  I don't have additional arguments unless the Court has

5    questions.

6         THE COURT:  All right.  Well, let me rule on those,

7    then.  Just a moment.

8         Well, the first objection raised is not unrelated to

9    what you've raised, Mr. Amolsch.  I've addressed a good bit of

10   it.  But the objection is that in Paragraphs 8 through 57, the

11   objection is that that information contained therein is

12   irrelevant, unadjudicated, not proven by a preponderance of the

13   evidence at trial, and the objection is that much of it is

14   inaccurate, incomplete, and/or contradicted by other evidence.

15        The information contained in those paragraphs was

16   obtained from materials that the United States Attorney's Office

17   provided.  They include the investigative reports, the

18   affidavits prepared by the case agents, as well as the review of

19   the exhibits presented at trial.  And under the guidelines, of

20   course, it's clear that the Court may consider, without

21   limitation, any information concerning the background,

22   character, and conduct of the defendant unless otherwise

23   prohibited by law.

24        I've looked at 8 through 57, and I looked at it even

25   again, last night, in the face of Mr. Amolsch's supplemental

-21

1    objections.  And I have made some corrections.  Some are

2    redundant; that is, some of these objections are the same as

3    were made earlier.

4              And Ms. Smihal, am I correct, you did make some of

5    those changes with respect to the earlier objections?

6              MS. SMIHAL:  Yes, I made some amendments and reworded

7    some things --

8              THE COURT:  I can't hear you.  Why don't you come

9    forward so I can hear you a little better, please.  Go ahead.

10             MS. SMIHAL:  I did make some amendments to the

11   paragraphs.  I reworded a few paragraphs.

12             THE COURT:  All right.  And as I recall, one of those I

13   remember that you made is there was an objection made about some

14   website, suggesting that it was some sort of child website.  And

15   you made the correction.  Is that right?

16             MS. SMIHAL:  Well, I don't think it suggested that it

17   was a child website, but I did add that it had the disclaimer

18   that it was for people 18 and over.

19             THE COURT:  All right.  To the extent that anybody

20   might read it thinking that, you made an addition to it?

21             MS. SMIHAL:  Yes, Your Honor.

22             THE COURT:  All right.  And you did that in other cases

23   as well; that is, other instances in this presentence report?

24             MS. SMIHAL:  Yes, Your Honor.

25             THE COURT:  All right.  And I have also asked you to

1    make some additional changes -- not changes, but additions to

2    it, where I've indicated that the defendant denies certain

3    behavior.

4              MS. SMIHAL:  Yes, Your Honor.

5              THE COURT:  All right.  Yes?

6              MR. AMOLSCH:  Yes, Your Honor.

7              THE COURT:  I couldn't tell whether you needed to say

8    something.

9              MR. AMOLSCH:  Oh, no, sir.  I thought you were going to

10   address me, Your Honor.  I apologize.

11             THE COURT:  No, that's all right.

12             All right.  So that takes care of those.  Paragraph 60

13   to 62, I'm not going to make any changes there, and I'll

14   overrule any objections there.  The images and videos that the

15   presentence report and the probation officer relied on is the

16   fact that the images and videos were sent to the National Center

17   For Missing and Exploited Children, who identified 32 images and

18   files, and 18 video files from 18 known series of child

19   exploitation material.  Of those, victims from two of the known

20   series, a "Spongebob" series and the "8 Kids" series, have

21   submitted victim impact statements and requests for restitution.

22   And I am required -- the Court is required to order restitution

23   in an amount that reflects the defendant's relative role in the

24   causal process that underlies the victims' losses, but no less

25   than $3,000 per victim.

1            So that takes care, I think, of all of those.  We'll

2    get to restitution later in this case.  And I note, you have

3    requested, Mr. Amolsch, that as you put it, there is material on

4    his devices and memories that relate to his life that has

5    nothing to do with the criminal behavior in this case, and you

6    would like to have that returned.

7            MR. AMOLSCH:  That was actually a pleading filed by

8    Ms. Ginsberg, but yes, I believe that is the essence of the

9    pleading.

10           THE COURT:  Then I'll address that later, not now.

11           MR. AMOLSCH:  Yes, sir.

12           THE COURT:  Then, Paragraphs 71, 79, 86, 93, and 100,

13   this is an objection to the two-level enhancement because the

14   offense involved the use of a computer.  That's overruled.  I

15   think it's quite clear that that's necessary to impose.

16           Again, I point out that the guideline calculation in

17   this case leads to a final offense level above 43, which is the

18   highest it could go.  And so I proceed only because the

19   Supreme Court has made clear that a District Court must complete

20   the guideline calculation before imposing sentence.  And I think

21   that's a sensible requirement.  In certain circumstances, it

22   does seem to me to be less useful.  This is one of those.

23           MR. AMOLSCH:  Yes, sir.

24           THE COURT:  And I'll hear from you at the time of

25   argument on sentencing.  I'm sure you will point out to me that

24

1    I shouldn't rely on the guidelines at all in this case.

2              MR. AMOLSCH:  Yes, sir.

3              THE COURT:  We'll come to that.  And I don't even think

4    the Government argues that I should impose the guidelines

5    sentence in this case.  Am I right, Mr. Clayman?

6              MR. CLAYMAN:  We're requesting a substantial sentence

7    consistent with the guidelines, Your Honor.

8              THE COURT:  What did I ask?  I said, you don't even ask

9    for a guidelines sentence in this case, do you?  The answer is,

10   no, you don't.  Just answer it directly.  Do you?

11             MR. CLAYMAN:  No, Your Honor.  We're asking for a

12   substantial sentence.

13             THE COURT:  All right.  That's all I was asking.

14   Because a guidelines sentence in this case, Mr. Clayman, would

15   be life in prison, would it not?

16             MR. CLAYMAN:  I believe it's 3,480 months, so

17   effectively life, yes.

18             THE COURT:  Yes.  Do you know how many years that is?

19             MR. CLAYMAN:  I believe it's 120, but I'm not certain.

20             THE COURT:  Yes.  And that's why I said life.

21             Now, we go on to Paragraph 109, where there's an

22   objection to the application of the five-level enhancement

23   pursuant to 4B1.5(b)(1).  And the objection is that the conduct

24   is already covered by 2G2.2(b)(5).  In essence, the objection is

25   that it's redundant, that it's double counting.

25

1              Well, it isn't.  If you look -- the guidelines have

2   actually addressed this very issue, and I will call your

3   attention to where it is addressed if I can find it.  If you

4   turn to the "Primmer on Offenses Involving Commercial Sex Act

5   and Sexual Exploitation of Minors" published by the

6   Sentencing Commission, and we look at page 46 of that report.

7   And I won't go through the entire analysis.  But I am satisfied

8   that it is correct by the Sentencing Commission, that

9   Section 4b1.5(b)(1) specifically states that the enhancement is

10  to be added to the offense levels determined under Chapters 2

11  and 3.

12             In other words, it is not double counting.  It's

13  clearly understood to be additive to those, to be in addition to

14  those.  Thus, the guidelines -- I'm now quoting:  "Thus, the

15  guidelines intend the cumulative application of most

16  enhancements in conjunction with 4B1.5."

17             And that's why I overruled that objection, and they

18  will both be counted.

19             MR. AMOLSCH:  Thank you, Your Honor.

20             THE COURT:  But I can understand the argument that's

21  made, and I think it is a reasonable substantial argument, but

22  they do cover different behavior, in effect.  So that covers

23  that objection as well.

24             Now let me go to another matter.  I want to be sure,

25  Mr. Amolsch, that I attach to the presentence report all of the

1   material that I have received, including material related to -

2   that you-all have sent to me - awards received by this

3   defendant.

4           MR. AMOLSCH:  Yes.  Correct, Your Honor.

5           THE COURT:  I'll make those, Ms. Smihal, part of the

6   presentence report.  They can read it all.  This will be part of

7   it.  So will the letters --

8           MR. AMOLSCH:  Thank you, Your Honor.

9           THE COURT:  -- the letters that have been submitted to

10  me, letters by his parents and letters by a friend, and I want

11  to be sure they're attached to the presentence investigation

12  report.

13          MS. SMIHAL:  Yes, Your Honor.

14          THE COURT:  Finally, I want to make one other addition

15  to the presentence report, and then, Mr. Amolsch, I'll ask you

16  whether you have anything else.

17          There are three doctors -- I'm not talking about his

18  physical problems.  But there are three doctors who have

19  interviewed and provided to the Court their views about

20  Mr. Sanders.  Two of them were retained by the defendant, I

21  think Berlin, and what's the name of the other one?

22          MR. AMOLSCH:  Dr. Hendricks, Your Honor.

23          THE COURT:  Hendricks.

24          MR. AMOLSCH:  Yes, sir.

25          THE COURT:  And the Government submitted one,

27

1    Mr. Clayman, by whom?

2         MR. CLAYMAN:  Dr. Montalbano.  I would just note for

3    the record, there was also Dr. Whitney, who was another --

4         THE COURT:  That's right.  I do recall that.  I want

5    all of that in the presentence report, all of those.  They can

6    have them all.

7         And you can address this at the appropriate time,

8    Mr. Amolsch, but it is understandable to me doctors retained on

9    behalf of the defendant would minimize or at least explain the

10   conduct as more benign than the doctor retained by the

11   Government.  The doctor retained by the Government would see it

12   differently.  It's all advocacy.

13        MR. AMOLSCH:  Yes, sir.

14        THE COURT:  I understand that.  I spent some time,

15   because I think Dr. Singer [sic] and Dr. --

16        MR. AMOLSCH:  Dr. Berlin and Dr. Hendricks, Your Honor.

17        THE COURT:  Berlin, not Singer.  Berlin and Hendricks,

18   they both suggested that he's not a pedophile.  Do you recall

19   that?

20        MR. AMOLSCH:  Your Honor, I believe the conclusions

21   were he doesn't have pedophilic interests, and he's a low risk

22   for recidivism and a good candidate for therapy.

23        THE COURT:  That's right.  That's a more precise way of

24   putting it.

25        MR. AMOLSCH:  Yes, sir.  And I will get to that,

28

1    Your Honor.  I'm happy to talk about that now, but if

2    Your Honor wants --

3            THE COURT:  No, you can address it later and I'll hear

4    whatever you need to say about that.

5            MR. AMOLSCH:  Yes, sir.

6            THE COURT:  The only relevance of that today is my

7    assessment as to whether he needs to be carefully monitored in

8    the future, and what is the risk of recidivism and that sort of

9    thing.

10           MR. AMOLSCH:  Yes, sir.

11           THE COURT:  And there are two aspects of that.  One is

12   actual behavior with young people.  I don't care what he does

13   with adults.  It's not society's business as long as he doesn't

14   hurt them or they don't hurt him.

15           MR. AMOLSCH:  Yes, sir.

16           THE COURT:  But the second aspect is child pornography.

17   There was a lot of it.  It was not a small amount.  And I know

18   your position is that he was -- he just collected it, because

19   it's so easy to do on a computer, for examination at some later

20   time so that he could see if there was anything in there that

21   related to him and his BDSM interests, but not because he was

22   interested in, you would argue, sexual exploitation of young

23   people.

24           MR. AMOLSCH:  I think my point, Your Honor, was the

25   number of images were downloaded in bulk, and that there's no

29

```
 1    evidence he looked at them or reviewed them.  And they're not
 2    specific --
 3              THE COURT:  There is evidence.
 4              MR. AMOLSCH:  And again, Your Honor, I'm not trying to
 5    nitpick here, but there is a distinction between the BDSM
 6    community and child pornography.  And so --
 7              THE COURT:  Yes.  I don't know if there's a
 8    distinction.  It depends on who participates in it.
 9              MR. AMOLSCH:  That true.  But they don't necessarily
10    overlap, I guess is my point.  And so as it relates to the
11    possession charges, Your Honor, I don't know if these images --
12              THE COURT:  No sexual activity necessarily overlaps.
13    We're interested in --
14              MR. AMOLSCH:  This case, yes, sir.
15              THE COURT:  -- this case and the fact that it's
16    illegal, it's a crime to do it with underage people.  That's why
17    he's here.
18              MR. AMOLSCH:  My point on the images, Your Honor - and
19    this is the last thing I'll say - is I don't think these
20    images -- the number of images are unusually high for what this
21    court sees.  So I don't think there's anything unusual about
22    that, given the number of images that are typically seen.
23              THE COURT:  I see a lot of child pornography cases.
24              MR. AMOLSCH:  Yes, sir.
25              THE COURT:  What do you think is the average number of
```

30

1    child pornography images that I see in an average case?

2         MR. AMOLSCH:  I can tell you about my experience,

3    Your Honor.  I couldn't speculate on yours.  My experience is

4    there are thousands and thousands and thousands all the time;

5    that there is an enormous amount of it because of the ease with

6    which things can be downloaded in bulk.  That's my experience.

7         THE COURT:  All right.  And, Mr. Clayman, how many

8    images were on his devices?

9         MR. CLAYMAN:  Hundreds, Your Honor, across multiple

10   devices, dating back to 2014.

11        THE COURT:  All right.  And what types of activities --

12   refresh my recollection.  I've reviewed this before.

13        MR. CLAYMAN:  That were depicted in the child

14   pornography material?

15        THE COURT:  Yes.

16        MR. CLAYMAN:  It was predominantly, if not exclusively,

17   minor boys and prepubescent minor boys being sexually abused and

18   subjected to sadomasochistic abuse.

19        THE COURT:  Well, there was other material in there,

20   too.  You said prepubescent.  Am I incorrect?  Were there any

21   infants in there?

22        MR. CLAYMAN:  That was infant and toddler age material

23   in there as well.

24        THE COURT:  And I'll hear more from you if you want to

25   address it later, Mr. Amolsch.  But I think I understood your

1    position that -- your position is that he downloaded this in

2    bulk, not because he was interested in any of it, but to look at

3    it later to see if there was anything in there relating to his

4    interest in BDSM activities.

5              MR. AMOLSCH:  I don't think it's my position so much

6    that that's what happened, Your Honor.  He downloaded it in

7    bulk, and, as a result, all of these images --

8              THE COURT:  Yes, it is your position that that's why he

9    did it.

10             MR. AMOLSCH:  My position is that's what he did.  In

11   terms of why he did it, I think he downloaded it and was going

12   to look at it later and just never did.  But there's no doubt --

13             THE COURT:  Well, we don't know if he looked at it then

14   or later.  We just know he had the material.  He possessed it.

15             MR. AMOLSCH:  My understanding of the evidence

16   presented was that there was no direct evidence that he had

17   looked at it or viewed it, though it certainly was on his

18   computer.

19             THE COURT:  All right.  Just a moment.

20             I believe I ruled on the four-level enhancement under

21   2B2, did I not, Mr. Amolsch?

22             MR. AMOLSCH:  I don't remember if you did or not,

23   Your Honor, but I'm happy to have Your Honor go over it again,

24   if you want.  But I don't believe Your Honor did.

25             THE COURT:  What is that enhancement, Mr. Amolsch?

32

1          MR. AMOLSCH:  Your Honor, honestly, I apologize.  You

2     have the pleading.  I don't remember what it is.  But I remember

3     Your Honor didn't discuss it in this hearing.

4          THE COURT:  I did, in fact.  Remember when I talked

5     about the cumulative aspects between that, and I said 2B1.1.

6          MR. AMOLSCH:  Did you?  Okay.  Then my correction,

7     Your Honor.

8          THE COURT:  Mr. Clayman?

9          MR. CLAYMAN:  I understood it was regarding the

10    guidelines objection to the application of the sadistic and

11    masochistic enhancement.  I don't recall if Your Honor -- I

12    don't believe you specifically addressed that, but it was

13    included in one of the --

14          THE COURT:  Let me see the objection.  I did address

15    the double-counting argument.

16          MR. CLAYMAN:  Yes.  And the use of a computer argument.

17    You did address those.

18          THE COURT:  Well, there was an objection raised under

19    Paragraphs 71, 79, 86, 93, and 100.  Defense counsel objected to

20    the two-level enhancement applied pursuant to 2G1.1(b)6(b)

21    because the offense involved the use of a computer.  Again, I'll

22    preface everything I say by noting that it's really immaterial

23    to my sentencing decision, but in the interest of calculating

24    the guidelines correctly, I will overrule that objection.

25    There's adequate evidence in the record to conclude by a

1    preponderance of the evidence that the defendant did in fact use

2    a computer or interactive computer service to persuade, induce,

3    entice, coerce, or facilitate the travel of a minor to engage in

4    sexually explicit conduct, or otherwise to solicit,

5    participate -- or participation by a minor in such conduct for

6    the purpose of producing sexually explicit material.

7            And then I addressed also in Paragraph 109 the

8    five-level enhancement pursuant to 4B1.5(b)(1), on the ground

9    that that conduct was already covered by the five-level

10   enhancement applicable to 2G2. -- 2G2.2(b)(5).  And I've already

11   addressed that.  They're not cumulative, they're not the same.

12   I'm sorry, they are cumulative, but they both are added.  The

13   guidelines, as I said, quoting from the "Manual on Offenses

14   Involving Commercial Sex Acts and Sexual Exploitation of

15   Minors," specifically addresses the argument that those two are

16   the same and shouldn't be double counted.  They should be.

17           Again, I will end by saying, it doesn't matter to my

18   sentencing decision because the guidelines in this case are well

19   beyond what I think is appropriate in this case.

20           MR. AMOLSCH:  Thank you, Your Honor.

21           THE COURT:  All right.  Then there's an objection to

22   the four-level enhancement pursuant to 2G2.1(b)(4)(a), and this

23   is for the possession of child pornography for the offense

24   involving material that portrays sadistic or masochistic conduct

25   or other depictions of violence.  According to defense counsel,

1    the conduct should not be considered sadistic or masochistic

2    because the evidence shows that although consent is not a

3    defense to the production of child pornography, Minor Victims 1,

4    2, 3, and 5, nonetheless chose to engage in this conduct when

5    they were by themselves.  And as a result, it should not be

6    considered sadistic, masochistic, or violent.  Furthermore, none

7    of the images were violent, as required under this section.

8         I disagree.  The application of 2G2.1(b)(4)(a) requires

9    that the material portray sadistic or masochistic conduct or

10   other depictions of violence; therefore, violence is not

11   required if one of the other criteria are met.  Sadistic, that

12   means taking pleasure in the infliction of pain, punishment, or

13   humiliation of others.  Masochistic is deriving sexual

14   gratification from being subjected to physical pain or

15   humiliation, or gaining pleasure from pain and suffering.

16        In this case, defendant was engaged in BDSM

17   relationships with each of the minor victims, of which sadism

18   and masochism are part and parcel; indeed, core tenets.  As part

19   of the BDSM relationship, the defendant instructed

20   Minor Victims 1, 2, 3, and 5 to inflict pain on themselves by

21   slapping themselves on their genitals, and record themselves

22   doing it and send the videos to the defendant.  They did so.

23        The probation officer, I think, correctly concluded

24   that that conduct is sufficiently covered by 2G2.1(b)(4)(a), and

25   therefore that objection is overruled.

1          Now, have I missed any objections, Mr. Amolsch?

2          MR. AMOLSCH:  Your Honor, the only thing I will mention

3     to the Court is that, it's not an objection so much, but the

4     presentence report references certain financial releases and

5     information Mr. Sanders was to provide the probation officer.

6     There was some miscommunication with Ms. Smihal.  Those releases

7     have been provided.  They were provided earlier; I think they

8     just got lost in the shuffle.

9          So we'll be supplementing the PSR with those releases

10    and the financial affidavit.  That's only relevant for any kind

11    of financial penalties that come into play.

12         THE COURT:  All right.  Ms. Smihal, were you supplied

13    with the financial statements that you requested?

14         MS. SMIHAL:  I was not supplied with the financial

15    statement.  I was supplied with the release forms so I could run

16    his credit.

17         THE COURT:  With what, I'm sorry?

18         MS. SMIHAL:  I was supplied with release forms so I

19    could run his credit report, but I do not have his completed

20    financial affidavit.

21         THE COURT:  All right.  And Mr. Amolsch will say now

22    those will be provided?

23         MR. AMOLSCH:  Yeah, the releases were already provided,

24    and we will fill out the financial affidavit, which I believe

25    was already submitted but we'll submit it again.  But it

1    basically says he has no assets.  But we will definitely submit

2    that to the probation office.

3           THE COURT:  All right.  Ms. Smihal, is that correct?

4    Were you provided with releases?

5           MS. SMIHAL:  I was never provided with -- so the

6    releases and the affidavit are two separate things.

7    Mr. Amolsch, I believe in February, did email me signed release

8    forms, one of which is a release so I can run a credit report.

9    I did miss that email somewhere in the shuffle, and he sent it

10   back to me I believe Wednesday or Thursday.  So I have run his

11   credit report.

12          I did inform Mr. Amolsch that I still have not received

13   Mr. Sanders' financial affidavit, the net worth and cash flow

14   statement.

15          THE COURT:  And that's what you say you will submit,

16   Mr. Amolsch?

17          MR. AMOLSCH:  Yes, sir.  Mr. Sanders needs to

18   personally fill that out, so I need to be with him to do that.

19          THE COURT:  All right.  Anything else, Mr. Amolsch?

20          MR. AMOLSCH:  No, sir.

21          THE COURT:  All right.  Thank you.

22          So I have ruled on all the objections, I've adopted --

23   with the exception of the rulings I've made and the additions

24   I've required, I've adopted the findings and conclusions of the

25   presentence investigation report as the Court's findings and

37

1    conclusions in this matter.

2            So we'll proceed now to hear argument on an appropriate

3    sentence for this defendant.  In that regard, I'll note that --

4    I'll get to you.

5            MR. AMOLSCH:  Yes, sir.  I'm sorry.

6            THE COURT:  Indeed, the Government is going to go

7    first, Mr. Amolsch.

8            MR. AMOLSCH:  Yes, sir.

9            THE COURT:  I will note that the guidelines are quite

10   high.  They're above 43, and they would generally -- if the

11   Court were going to impose a guidelines sentence, it would be a

12   life sentence.  I've already indicated that I don't think that

13   is appropriate or necessary in this case to accomplish the goals

14   of sentencing.

15           So having ruled on the objections, having determined

16   that the PSR is accurate with the additions that I've noted --

17   and I understand, Mr. Amolsch, that you're concerned with how

18   the Bureau of Prisons will read this.  I don't know whether

19   you've ever participated or at least been present when the

20   Bureau of Prisons makes those determinations.  I can tell you

21   that sometimes, when they have a mountain of material to review,

22   it takes them quite a while.  They do look at everything, and,

23   as you would expect, some material is of greater interest to

24   them than others.

25           But I am not insensitive to your desire to make sure

1    that they have as much information as possible.  And the J&C

2    will indicate and will underscore to the Bureau of Prisons that

3    this case is not here because of his interest in BDSM.  He has

4    not been charged, prosecuted, and convicted because of his

5    interest in BDSM activity.  It certainly has been evident in

6    this case, in part because he injected it to explain what he did

7    and why he did it, and I allowed a good bit of that.  Indeed, he

8    testified.  But, as I indicated then and now, that's not a

9    defense.  It's not a justification.  But it does help to explain

10   why he did what he did, and that's always important and useful

11   to understand.

12          But now, Mr. Clayman, I want to hear from the

13   Government what the Government's view is on an appropriate

14   sentence in this case.

15          MR. CLAYMAN:  Before proceeding to argument,

16   Your Honor, one of the mothers of the minor victims is present

17   and she's requesting an opportunity to be heard today.

18          THE COURT:  Which minor victim?

19          MR. CLAYMAN:  It's Minor Victim 1, Your Honor.

20          THE COURT:  Yes, of course you may be heard.  The law

21   not only permits it, it requires it.  So I will hear her.

22          Any objection to hearing her now rather than later,

23   Mr. Amolsch?

24          MR. AMOLSCH:  I leave it to the Court's discretion,

25   Your Honor.

```
1                  THE COURT:  Yes, all right.  Where is this person?
2        Yes, ma'am, would you come forward, please.
3                  Good morning, ma'am.  Is that your husband with you?
4                  THE WITNESS:  Yes, sir.
5                  THE COURT:  Indeed, I'll hear from him as well if he
6        wishes to be heard.
7                  All right.  You may say anything you wish now.
8                  THE WITNESS:  I wrote it down.  My name is DXXXXX and
9        I'm the mother of one of your victims, which is well on his way
10       to becoming a survivor.  This is the first time I get to see the
11       face of the monster who hurt my son.  Out of respect for my son,
12       I did not come into the courtroom when he testified.  I sat in a
13       room in the back and paced the floor for hours.  He was
14       embarrassed and ashamed of what happened.  Because of the things
15       that you did to my son, you made him feel like he was worthless.
16       He called himself trash all the time.  You made him vulnerable
17       to other predators like you who in return did much more harm to
18       my son.
19                 Even though you know what you have done was illegal and
20       immoral, you continued to torture to take this to trial.  Then,
21       not only did you want to go to trial, but you also kept having
22       it postponed over and over.  Every time court was postponed, the
23       anxiety would get worse and worse, not just for my son, but for
24       me and his other family members.  Not only would it cause
25       anxiety in everyone, but it also made us angry and madder at
```

1    you.

2            Even though your contact was only with my son, you hurt

3    our family deeply.  Because of you and others like you, we

4    moved.  We did not feel safe in our home because you knew what

5    school he went to and where we lived.  I lived in fear for

6    months.  I had a hard time sleeping, and still do some nights.

7            I am not as trusting or as social as I used to be.  My

8    son is now in therapy and will be for a very long time, and is

9    working on himself.  We are not hearing him call himself trash

10   as much.  He still puts himself down, but not as much as he used

11   to.

12           Monsters like you feed off fear.  Today I will not give

13   you that control.  I now hope you have that fear.  With the fear

14   you instilled in all of these kids, I pray that someone in jail

15   realizes what you did and then causes you to feel the same fear

16   that you inflicted upon your victims.  I hope you cannot sleep

17   because you are afraid of who will come through that cell door

18   for you.

19           My son and all the victims and survivors of you will

20   have to live with what they have done for the rest of their

21   lives, and I pray you get the same sentence and that you get the

22   maximum time for each charge.  I also hope that the judge makes

23   each sentence consecutive so you will have to pay for each crime

24   one at a time, like each one of those children were hurt one at

25   a time.

41

```
1              Thank you, Your Honor.
2              THE COURT:  All right.  Does your husband wish to be
3    heard?
4              THE WITNESS:  No, sir.
5              THE COURT:  Thank you.  You may return to your seat.
6              Anyone else, Mr. Clayman?
7              MR. CLAYMAN:  No, Your Honor.
8              THE COURT:  All right.  Go ahead, Mr. Clayman.
9              MR. CLAYMAN:  Yes, Your Honor.  As you just heard from
10   the mother of one of the minor victims, and as I'm sure
11   Your Honor saw in the victim impact statements that were
12   submitted with the PSR, the defendant's crimes here are
13   incredibly serious and they had a profound impact on those who
14   were affected by them.
15             The Court is obviously very familiar with the facts of
16   this case, and we think there are a couple of factors here in
17   particular that warrant a substantial sentence consistent with
18   what the guidelines are recommending.
19             In particular, with respect to the history and
20   characteristics of the defendant and the seriousness of this
21   offense, Your Honor, the Court should take into account the
22   defendant's utter lack of remorse for or even acknowledgement of
23   his crimes.  Even today, in his objections to the PSR, he
24   continues to blame everyone but himself, including the minor
25   victims, for why we are here.
```

42

1        And what he fails to recognize, Your Honor, and what I

2   think everyone else can recognize is that he is the individual

3   who posted the ads seeking out boys and slaves; he is the

4   individual who continued to communicate with minors online,

5   despite them telling him how old they were; and he is the

6   individual who came up with the idea and communicated to these

7   minors that they should produce very specific videos of

8   themselves engaging in harmful sexual conduct.

9        I think equally significant, Your Honor, is the type of

10   conduct that we're talking about here.  The defendant persuaded

11   these minors to engage in very specific and often

12   sadomasochistic and degrading sex acts.  They were obviously

13   quite significant and sexually appealing to the defendant.

14        They are also reflective, as we discussed earlier, of

15   the kind of child sexual abuse material that he also possessed.

16   That is, the child pornography that the defendant produced and

17   possessed made clear that he has a very specific, and frankly

18   devoted, interest in seeing minors subjected to sadomasochistic

19   abuse.  Your Honor has seen the material that he produced as

20   well as that he possessed - it was displayed during the trial in

21   this case - and I think it's frankly shocking, in many respects.

22        I would submit, Your Honor, that the defendant's

23   ongoing refusal, and the refusal of those around him, to even

24   acknowledge what has happened, or to show no sign of contrition

25   or to continue making excuses for why we are here today, that is

43

1    of grave concern to the Government, Your Honor, and I think it

2    is not reflective of a defendant who is committed to ensuring

3    that he does not end up before this court or another court

4    again.

5            So based on those factors, Your Honor, as well as the

6    sentences imposed in similar cases that we cited in our position

7    paper, we are asking that the Court impose a substantial

8    sentence here consistent with the guidelines, as well as a

9    lifetime of supervised release.

10           THE COURT:  All right.  Let me ask you, Mr. Clayman.

11   You called my attention to other cases to ensure, as you put it,

12   that I don't impose a sentence that is different from or that

13   involves an unwarranted disparity.  Is that correct?

14           MR. CLAYMAN:  Yes, Your Honor.

15           THE COURT:  What page was that on yours?  Was that on

16   page 22?

17           MR. CLAYMAN:  It's 24, Your Honor.

18           THE COURT:  All right.  I'm there.

19           MR. CLAYMAN:  So in the footnote we cited cases from

20   around the country.  In the body of the paragraph we cited I

21   believe three cases within this district where between, it looks

22   like 40 to 50-year sentences, were imposed in similar

23   circumstances.

24           THE COURT:  Yes.  Now, you didn't indicate there, and I

25   should have looked.  I could easily have looked, and I should

44

1    have.  You cited the *Harris* case, at which there was a 50-year

2    sentence.  And that's a defendant who posed as a minor online

3    and had multiple girls send him sexually explicit images.  That

4    wasn't a case that I had, was it?

5            MR. CLAYMAN:  No, Your Honor.  I don't believe that any

6    of these cases were Your Honor's.

7            THE COURT:  That's what I wanted to double check.  The

8    other that you cited was a 24-year-old defendant who posed as a

9    minor online and had four minors create and send sexually

10   explicit images of themselves.  And that was a 300-month

11   sentence.  Is that right?

12           MR. CLAYMAN:  Yes.  I believe that was in front of

13   Judge Lee.

14           THE COURT:  Judge Lee.  Then there was a case involving

15   a defendant who received a 40-year sentence.  He was in his late

16   20s, and he groomed multiple teenagers to record themselves

17   engaging in sexually explicit conduct.  Is that right?

18           MR. CLAYMAN:  Yes, Your Honor.

19           THE COURT:  All right.  I think I understand those.

20   And you think those are essentially similar to this, and for me

21   to impose a different sentence, in your view, would contravene

22   the requirement in the statute to avoid unwarranted disparities?

23           MR. CLAYMAN:  Yes, Your Honor.  And I would argue that

24   there are aggravating factors here that were not present in

25   those cases, specifically the sadomasochistic nature of the

1    abuse here.

2         THE COURT:  And what's the Government's view on the

3    need to deter this defendant and the need to impose a sentence

4    that provides general deterrence?

5         MR. CLAYMAN:  I think those are both obviously quite

6    significant considerations for the Court to have in mind.  With

7    respect to this defendant, I think a substantial sentence is

8    warranted, because, as we've discussed, there's been simply no

9    admission or acknowledgement of what happened; there's been

10   repeated efforts to blame law enforcement, the defendant's

11   family, the victims, anyone but the defendant himself for why we

12   are here, for what he did.  And so in terms of specific

13   deterrence, I think a substantial sentence is appropriate.

14        With regard to general deterrence, I think, as we

15   outlined in our position paper, these sort of crimes are very

16   difficult to detect.  They often go unreported and undiscovered.

17   And so I think it is equally important for the Court to impose a

18   substantial sentence to send a loud message to other like-minded

19   offenders, that when you are caught, you are going to face

20   substantial consequences for this sort of conduct.

21        THE COURT:  All right.  Mr. Amolsch, I'll hear from you

22   now.

23        MR. AMOLSCH:  Thank you, Your Honor.  May it please the

24   Court.  As an initial matter, I want to be clear that I am not

25   in any way suggesting that consent is a defense to these crimes.

1    I'm not saying that.  So to the extent the Court might interpret

2    what I'm saying to be the case, it is not a defense and I don't

3    want the Court to interpret it that way.

4         But I think it is important to understand, Your Honor,

5    that unlike every other case the Government has cited, in

6    virtually any other case I have been involved in, this

7    particular crime of production of child pornography, the

8    underlying acts themselves are not illegal.  The behavior of the

9    minors who participated in the videos, if Mr. Sanders --

10        THE COURT:  I'm sorry, what do you mean, the underlying

11   acts themselves are not illegal?

12        MR. AMOLSCH:  The crime of production of child

13   pornography deals with, as Your Honor knows, that the sexual

14   acts were committed for the purpose of producing them.  That is

15   the essence of the production charge, as we're well aware.  It's

16   why did he do it.  Not what did he do, but why did he do it.

17        In every other case that I've been familiar with,

18   there's always some underlying criminal activity associated with

19   it:  Sex with an underage person, an older gentleman having sex

20   with a 14-year-old, you know, that then becomes videoed and then

21   becomes a production-of-child-pornography case.

22        In this particular case - and I'm not hear to talk

23   about purpose, Your Honor.  That will be for another court for

24   another day.  But for the purposes of this discussion, the acts

25   the minors committed --

47

1          THE COURT:  I'm sorry, I don't understand what you

2     mean, purpose is not for today.

3          MR. AMOLSCH:  I'm not going to get into whether the

4     Government proved purpose.  I'm not trying to re-litigate

5     whether they satisfied the statute.  But it is important for the

6     Court to know - and maybe this is the easiest way I can put it -

7     if Mr. Sanders had been in the room watching the victim,

8     watching the minors do this, there would be no

9     production-of-child-pornography crime.  If all the actions had

10    happened in his presence, there would be no

11    production-of-child-pornography crime.  There would be no crimes

12    at all.

13         THE COURT:  That's not exactly true, is it?  I mean, if

14    he said, "Do this," and they did it, then even if he's in the

15    room, there would be a production of child pornography.  If he

16    said, "Take a picture of yourself," and he stayed in the room,

17    there's still production of child pornography.

18         MR. AMOLSCH:  Right.  But it's the making of the video,

19    Your Honor, which I think distinguishes this case from virtually

20    every other case; that in those cases of child pornography, the

21    ones described by the Government - especially those described by

22    the Government - there was an actual minor with whom the

23    producer of child pornography in those cases was -- there was an

24    underlying criminal act.

25         So it's the recording of the acts in this particular

1    case that violates the statute.  But again, as you heard at

2    trial, Mr. Sanders' position was that he did not -- that the

3    acts were committed not for the purpose of filming them, but

4    because these people had voluntarily entered into a BDSM

5    relationship, and Mr. Sanders wanted proof that they were

6    following his orders.

7           I understand that the jury discarded that.  But if you

8    were to take away the filming of this, the beating of the

9    testicles, any of the other activities, those minors can consent

10   to that.  There's nothing illegal about that.  Mr. Sanders never

11   physically was with --

12          THE COURT:  Minors can consent to sexual activity?

13          MR. AMOLSCH:  They can consent to beating their own

14   testicles.  I mean, there was no force or -- however odd that

15   might sound.  But this is what makes this case so particularly

16   different, is that Mr. Sanders was never with any of these

17   people.  Like, he didn't troll them, he didn't go find them.

18   They came to him and reached out to him after he -- after going

19   to an adult-oriented website and confirming that they were over

20   18.  And there's no question that Mr. Sanders, once he

21   discovered they weren't, should have backed away from it.  But

22   there's no evidence that he was seeking out this sort of

23   behavior.  All the evidence goes the other way.  He only went to

24   adult-oriented websites, he only went to sites that verified

25   age.

49

1           The Government makes some issue, takes an issue that

2   he's looking for boys and minors.  I hope the Court understands

3   by now that the term "boys" is not a reference to age, not

4   within the context of the lesbian/gay/queer community, and not

5   within the context of the BDSM community.  That "boys" topic

6   describes a place in the hierarchy.  There are those who are

7   above - those are doms or masters - and there are those who are

8   below - slaves and boys - and the ages of the two are irrelevant

9   to the description.  It's a term of art.

10           So when you look at this and ask, what exactly did

11   Mr. Sanders do, is he had them record themselves.  Like, he

12   didn't even do the recording.  He had them do it themselves and

13   then send it to him.

14           From a culpability point of view -- and again, while I

15   understand that consent is not a defense to the fact that they

16   can't consent to being videoed as a defense to the child

17   pornography case, I understand that.  But their consent to the

18   behavior I think goes directly to how Your Honor ought to

19   sentence Mr. Sanders.  Like, there's no force or coercion or any

20   of the things that you would normally associate with this.

21   Whether he used them, whether he persuaded them may be a topic

22   for another day, but in terms of whether there was force,

23   coercion, abuse of authority, there's just nothing like that

24   here, Your Honor.

25           I had -- Your Honor, I had Dr. Berlin and Dr. Hendricks

1    complete psychosexual evaluations of Mr. Sanders.  Dr. Berlin

2    concluded that he is not a pedophile.  I believe that is also

3    consistent with what Dr. Montalbano concluded, that they did not

4    assign a paraphilic disorder.  Dr. Hendricks completed a sexual

5    recidivism and violence kind of analysis, and said basically he

6    doesn't meet any of the factors of anybody who is either a

7    pedophile or is at a high risk of re-offending.  In fact, he's

8    at a low risk for re-offending.  Everybody, I think -- every

9    expert acknowledges that Mr. Sanders made a terrible error in

10   judgment, that he should not have been engaging in this behavior

11   once he --

12          THE COURT:  What about the Government's expert?  What

13   did he conclude?

14          MR. AMOLSCH:  He concluded that -- my understanding,

15   and the Government can answer this --

16          THE COURT:  Well, you haven't read it?

17          MR. AMOLSCH:  I have read it, but I don't want to speak

18   for them.  The point is, that report was focused mostly on the

19   autism argument, which Your Honor has discarded.  But in the

20   process of doing that, Dr. Montalbano completed an examination

21   and did not diagnose a personality disorder.  He didn't diagnose

22   a paraphilic disorder.  So there's nothing in the record to

23   suggest that he's a pedophile.  All the experts seem to go the

24   other way.

25          Zack, as Your Honor saw, was in business --

1          THE COURT:  You do know that one consequence of his

2    conviction and my sentence is going to be that he must register

3    as a sex offender.

4          MR. AMOLSCH:  Of course.  Of course.

5          THE COURT:  All right.  Go on.

6          MR. AMOLSCH:  Zack, as you saw from the sentencing

7    memorandums and the letters submitted, and the pleading itself,

8    has been involved in business for many years.  He has employed

9    over 50 people.  There are siblings, all -- some of whom are

10   under 18.  There's never been any suggestion anywhere, any

11   allegation that he's acted untoward to any of them.  There's

12   nothing in the evidence to even suggest that he's actively

13   sought out kids, people who are underage.  Like, all the

14   evidence goes the other way.

15         So when you take all of that into account, that what

16   the minors did, independently of the videoing, is not illegal;

17   that there was no coercion, no force, none of the things you

18   normally associate with the production of child pornography; the

19   fact that there's no evidence that he's ever been -- had --

20   expressed any pedophilic interest towards people in the real

21   world - setting aside whatever Your Honor might think about what

22   was found on the hard drive - our real life evidence suggests

23   this is not part of who he is.  It has never been part of who he

24   is.

25         The Government asked you about similar sentences, and

1       Your Honor asked the question about --

2               THE COURT:  The Government didn't ask me.  They --

3               MR. AMOLSCH:  I apologize.  The Government said

4       something about similar sentences, and Your Honor asked whether

5       these were sentences that you handed out.  The last two

6       sentences Your Honor handed out in production of child

7       pornography that went to trial, as far as I can tell, were

8       Logan McCauley and Mr. Hewlett.

9               THE COURT:  Well, in McCauley, I gave the wrong

10      instruction.  So that case I never --

11              MR. AMOLSCH:  Okay.  I'm talking about Your Honor's

12      rationale for the sentence that you gave Mr. McCauley.

13              THE COURT:  All right.  Go on.

14              MR. AMOLSCH:  That's what I'm talking about.  As you

15      will remember, in Mr. McCauley's case, he had sex with a

16      13-year-old or a 14-year-old five separate times, and recorded

17      one of those.  There was actual physical sex between the

18      producer of the child pornography and the victim in that case.

19              Mr. McCauley had no criminal record, and had some

20      mental health issues not identical to Mr. Sanders but not

21      altogether dissimilar either.  Your Honor gave him 15 years.  My

22      memory is that you said at the sentencing, you might not have

23      even given him that, but you were bound by the statute so you

24      did.

25              Mr. Hewlett -- I took this from the Government's

53

1    pleading in terms of the Hewlett case.  According the

2    Government, "The defendant's conviction stems largely from a

3    video he created of himself having sex with a minor victim.  But

4    the full picture of the defendant's background is much larger.

5    At the outset, the defendant has a lengthy criminal history

6    which includes a history of noncompliance with supervision.  The

7    relevant conduct in the case began with his sexual abuse of

8    Minor Victim 1, recording that, and then uploading it to online.

9    While the investigation of those crimes was ongoing, he pursued

10   another minor.  During the case he repeatedly violated court

11   orders and endangered the privacy and safety of the minor

12   victims, lied under oath, and physically threatened his former

13   counsel."

14          None of those factors are present in this case.

15          THE COURT:  And you read that from the Government's --

16          MR. AMOLSCH:  The Government's -- that was the first

17   paragraph that the --

18          THE COURT:  That isn't something I recited.

19          MR. AMOLSCH:  No, that is something that the Government

20   wrote in reference to what sentence they were asking Your Honor

21   to impose.  So that's my understanding of what the Government's

22   version of what happened was.

23          THE COURT:  All right.  But it's not -- the point I'm

24   making is, I didn't necessarily accept that.

25          MR. AMOLSCH:  We're going to get to your sentence in

1    just one second.  I wanted to frame it for Your Honor in terms

2    of distinguishing Mr. Sanders from Mr. Hewlett.

3              Again, Mr. Sanders didn't upload any of these videos.

4    He didn't share them, distribute them, otherwise -- he didn't

5    share them with anybody.  They literally stayed on his computer.

6    This wasn't for anybody else's gratification.  He didn't try to

7    make money off of this.  He wasn't doing any of those things.

8              THE COURT:  I don't recall that Hewlett published them

9    either.

10             MR. AMOLSCH:  He did.  He uploaded them to the

11   internet.  In that case, Your Honor, Your Honor gave him...

12             (OFF THE RECORD.)

13             THE COURT:  I don't think -- you're wrong.  He

14   distributed it to a minor girl.

15             MR. AMOLSCH:  Okay.  He distributed it.  There was no

16   distribution from Mr. Sanders.

17             THE COURT:  He sent it to a minor girl.

18             MR. AMOLSCH:  In that case, Your Honor, you gave

19   Mr. Hewlett 228 months, which is a 19-year sentence.

20             THE COURT:  Yes.

21             MR. AMOLSCH:  Again, with facts that are radically

22   different than this case, in the sense that Mr. Hewlett actually

23   had sex with the minor --

24             THE COURT:  How old was the victim in Hewlett?

25             MR. AMOLSCH:  I don't know, Your Honor.  I'll let you

1    tell me.  I'm not certain.

2            THE COURT:  Go on.  She was a teenager, 16.

3            MR. AMOLSCH:  She was a teenager, about the same ages

4    of the minors here, Your Honor.

5            THE COURT:  Some were younger.

6            MR. AMOLSCH:  Not all that different.  But there's no

7    sexual activity between Mr. Sanders --

8            THE COURT:  Well, there was one -- you're right.  I

9    don't know that that makes any difference to the production

10   requirement.

11           MR. AMOLSCH:  I don't want to talk about that either.

12   But I want to talk about how that impacts Your Honor's sentence,

13   because I think it is incredibly important from a perspective on

14   how to sanction Mr. Sanders for the behavior the jury found him

15   guilty of -- the acts that the jury found him guilty of

16   committing.  I think it's incredibly relevant from a mitigation

17   point of view; it's incredibly relevant to how Your Honor

18   sentences other people consistent with how Your Honor has done

19   it before.

20           Other cases that have been decided in this court which

21   involve the actual sex trafficking of minors -- not the videoing

22   of them, but them actually being trafficked, meaning people are

23   making money off the sex that minors are having in violation of

24   the law.  In 2017, Judge Trenga gave a somewhat -- a

25   sex-trafficker who had sex trafficked a 15-year-old repeatedly

56

1    180 months, 15 years.  He gave another defendant, also

2    trafficking a 15-year-old girl, 186 months.  And in the *Daniels*

3    case, the one that's most recent, where he actually was having

4    the girls brought to him so that he could then have sex with

5    him, was 182 months.  Those cases, I think we can all agree - I

6    would hope we could agree - are far more egregious than this.

7            Again, not to be repetitive, but there's nothing like

8    that in this case.  There's nothing to suggest that 15 years,

9    15 years is not sufficient for Mr. Sanders.  And, you know,

10   you've seen letters from his family of describing the person

11   that they've known him to be; you've seen his activities in the

12   community, the charity work he's done, the feeding of the

13   homeless, all of those things, the awards that he's won.  He has

14   no criminal history at all.  There's never been any suggestion

15   that he's done anything illegal before this.

16           And I understand, and I certainly am sensitive, to the

17   position of the mother who spoke here today.  But I don't want

18   to lose track of the fact that Mr. Sanders was on a website that

19   was supposed to be for adults; that person's user name, prior to

20   Mr. Sanders meeting him, was Ugly Trash.  I understand there's

21   some impact that has probably been -- he's probably suffered as

22   a result of this, but I don't want to blow that out of

23   proportion.  I'm not minimizing it, but it's important for the

24   Court to have that context.

25           How much time is videoing somebody else doing something

1    to themselves worth?  15 years.  15 years is a long time.  He's

2    only in his mid 20s.  His father is right there.  He's 80 years

3    old.  His mother, who suffers from breast cancer, is 65.  His

4    cousin is here to support him.  15 years is a long time,

5    especially when you consider the fact that Logan McCauley got

6    15, Mr. Hewlett got 19, all for actions that are well in excess

7    of what Mr. Sanders did.

8            All of that, Your Honor, needs to be factored in as you

9    factor in a sentence.  Again, I'm not saying consent is a

10   defense, but as relates to mitigation, it's incredibly

11   important.  Both experts concluded he's not a future -- he's at

12   a low risk of recidivism.  He's a good candidate for therapy.

13   Dr. Hendricks talked about the fact that given the nature of

14   these bulletin boards and given the nature of the community

15   itself, there's a lot of role playing that goes on, and it's not

16   surprising that this sort of thing happened, a minor finding his

17   way onto an adult-oriented website.  Although he does

18   acknowledge that Mr. Sanders should have backed away once he

19   knew or was able to reasonably assume the person was a minor,

20   and he didn't, so he needs to be punished for that.

21           But 15 years is a long time.  He spent two years in the

22   Alexandria Detention Center already --

23           THE COURT:  He'll receive credit for that.

24           MR. AMOLSCH:  The time he has spent there, Your Honor,

25   has been pretty unusual.  It's not designed to hold somebody for

58

1    two years.  He's been in COVID lockdown, he's been isolated.

2    It's been hard time already.  He has serious medical issues.

3    He's got the multiple sclerosis, he's got the optic neuritis,

4    all of which has to be --

5              THE COURT:  Well, those are related.

6              MR. AMOLSCH:  All of which -- but they have to be

7    treated.  So he's physically deteriorating.

8              Again, his parents are elderly.  He would like to see

9    them one more time when he comes out.

10             I understand Your Honor is going to give him a

11   sentence.  We have objected, just for the record - I want to put

12   this on - to the fact that I don't believe the mandatory

13   minimums are constitutional.  I understand the state of the law.

14   I'm not expecting Your Honor to do anything meaningful with

15   that, but in the event that changes down the road, it's at least

16   important to Mr. Sanders that I've noted an objection.  I

17   understand the law, I'm just putting it out there for the Court.

18             THE COURT:  All right.  Anything else?

19             MR. AMOLSCH:  When you think about what happened in

20   this case versus the others, and the fact that consent is not a

21   defense but it is definitely a mitigating factor, Your Honor,

22   15 years, lifetime supervision, sexual offender registry,

23   required sex offender treatment, if that's what Your Honor

24   orders, all of those are incredibly punitive on their own.

25             We would ask for the Court to designate him

1    specifically to FCI Butner Low.  That's in the pleading, and I

2    understand Your Honor is taking that into consideration and will

3    include something in the Judgment & Commitment order reflecting

4    your recommendation that he go there.

5         The Alexandria Detention Center has agreed to keep him

6    locally at the ADC so he can be directly designated to his

7    facility when the BOP designates him.  The drug he takes,

8    Kesimpta, is a very fragile drug, for his MS.  It needs to be

9    refrigerated.  It can only be taken out a certain amount of time

10   ahead of time.  He needs to take injections of Benadryl.  All of

11   that the ADC has under control, and they've got the protocols in

12   place.  But if he bounces around from here to Northern Neck to

13   Oklahoma, the odds of the BOP being able to successfully manage

14   his condition are going to be pretty low.

15        Mr. Sanders -- I know you're going to give Mr. Sanders

16   an opportunity to say something.  Given his appeals and the fact

17   that this is an ongoing process, I've advised him to not say

18   anything.  That's on me.  I can tell you, contrary to what the

19   Government has said, that he's very remorseful --

20        THE COURT:  Well, you're certainly free to tell me what

21   you've advised him, but it's up to him whether he allocutes or

22   not.

23        MR. AMOLSCH:  Yes, sir.

24        THE COURT:  So that's not on you, that's on him.

25        MR. AMOLSCH:  I understand.  But I wanted the Court to

60

1    know that that's been my advice; that given his appeal --

2    Mr. Sanders has indicated that he is incredibly remorseful.

3    He's sorry to everybody that this happened, and he's going to be

4    paying for it for the rest of his life in one form or another.

5            THE COURT:  All right.

6            MR. AMOLSCH:  But 15 years is enough, Your Honor, in

7    this case.

8            THE COURT:  Mr. Sanders, you now have an opportunity to

9    address the Court, and to say anything at all you wish to the

10   Court by way of extenuation, mitigation, or indeed anything you

11   think the Court should know before sentence is imposed.  You're

12   not required to say anything if you don't wish to, but you do

13   have the opportunity to say something if you do wish to say

14   something.  Do you?

15           THE DEFENDANT:  Briefly.

16           THE COURT:  All right.  Come to the podium, please.

17           THE DEFENDANT:  My attorneys strongly advised me not to

18   say anything today, but I at minimum I want to say I'm very

19   sorry to everyone involved in this case.  Thank you.

20           THE COURT:  All right.  I didn't give you an

21   opportunity, Mr. Clayman, to respond to Mr. Amolsch's argument.

22   He went over a great many things you didn't go over.  But let me

23   ask Mr. Amolsch -- just a moment.

24           MR. AMOLSCH:  Yes, sir.

25           THE COURT:  Mr. Amolsch, what did you say about

1    United States against *Battle*?

2            MR. AMOLSCH:  I don't know if I said anything about

3    *United States vs. Battle*, Your Honor.  You would have to -- I

4    have my sentencing memorandum.  If you could point me to what

5    Your Honor is asking me specifically, I can...

6            THE COURT:  I think what you said that triggered my

7    question -- you didn't say anything about the *Battle* case in

8    your brief or in your argument, but you said that there is no

9    case like this.  And --

10           MR. AMOLSCH:  Maybe there's one or two.

11           THE COURT:  Yes.

12           MR. AMOLSCH:  But that doesn't change --

13           THE COURT:  The *Battle* case which was cited is one of

14   those, which seems to me to be very close to this case.

15           But Mr. Clayman, I'll give you the opportunity now to

16   respond.

17           MR. AMOLSCH:  Your Honor, again, my points are the

18   sentences that are handed out in this court by Your Honor in

19   similar cases.

20           MR. CLAYMAN:  Yes, Your Honor.  We would just note our

21   strong disagreement with the defendant's suggestion that this

22   case is somehow unique, or so unique that it warrants a 15-year

23   sentence.  As Your Honor noted, we cited the *Battle* case.  We've

24   cited multiple cases on page 24 of our position paper that are

25   extremely similar; online production cases, which are

62

1    unfortunately becoming more common, involving multiple victims.

2           Here, the victims are younger.  They're, I believe, 13

3    to 17.  There are aggravating factors here that are not present

4    in the other cases we cited, including, like I said previously,

5    the sadomasochistic nature of the abuse.  And contrary to what

6    the defense has argued here, some of the minor victims reported

7    that the defendant did have sex with them or did engage in

8    conduct with them in person.

9           So contrary to what the defense has said, Your Honor,

10   this case is not unique.  We have cited multiple cases where

11   substantial sentences were imposed on very, very similar facts.

12          Unless the Court has any further questions --

13          THE COURT:  Yes, I did.  Confirm, if you would, please,

14   that none of the minor victims have submitted requests for

15   restitution in this case.

16          MR. CLAYMAN:  None of the production victims did,

17   Your Honor.  The possession victims are the two restitution

18   requests.  That's correct.

19          MR. AMOLSCH:  The last thing I will say, Your Honor,

20   and then I'll be done, is that as relates to those cases, in

21   each one of those cases cited by the Government, in those

22   particular instances, the defendants actively deceived the

23   people to send them videos and engage in sexual activity --

24          THE COURT:  So now you know a lot about those cases,

25   but a few minutes ago you didn't know anything.

63

1           MR. AMOLSCH:  Well, Your Honor --

2           THE COURT:  I'll go look at it myself.  I think I will

3    be more comfortable with that.

4           MR. AMOLSCH:  Thank you.  Yes, I think that's fair,

5    Your Honor.

6           THE COURT:  I have them here.  I'm going to take a

7    recess.  I'm very sensitive to lawyers -- I've been here

8    35 years now, and lawyers tend to not be cabined by what they

9    actually know.

10          MR. AMOLSCH:  Well, Your Honor, I was trying to pick

11   the things that I thought were most important and based --

12          THE COURT:  I understand that.  I was a lawyer once.  I

13   did what you're doing.

14          MR. AMOLSCH:  Thank you, Your Honor.

15          THE COURT:  All right.  Court stands in recess.  It

16   will be for 10 minutes.

17          (Recess taken at 9:35 a.m.)

18          THE COURT:  Any reason why the Court should not now

19   impose sentence, Mr. Clayman?

20          MR. CLAYMAN:  No, Your Honor.

21          THE COURT:  Mr. Amolsch?

22          MR. AMOLSCH:  No, Your Honor.  Unless Your Honor has

23   some questions about the cases you read.  Other than that, no.

24          THE COURT:  All right.  Mr. Sanders, you may come to

25   the podium, sir.

1        Mr. Sanders, you stand convicted of a number of serious

2   criminal offenses involving production of child pornography,

3   receipt of child pornography, possession of child pornography.

4   I presided over the trial and I heard all of the evidence

5   presented, including evidence from some of the child victims.

6        The law requires that I consider a variety of factors

7   in imposing an appropriate sentence.  First, your personal

8   history and characteristics, about which I know a great deal.  I

9   know a great deal about your medical situation, I know a great

10  deal about your -- about the assessment of the experts that you

11  and the Government have retained to provide information.  So I

12  do know something -- I do know a good deal about your personal

13  history and characteristics.  And the law requires that I take

14  that into account.  And the reason for that is, every sentencing

15  is unique because individuals are unique, and individuals

16  present unique circumstances about themselves and the crimes

17  they commit.  So I am familiar with your personal history and

18  characteristics, which I'm required by law to take into account

19  in imposing an appropriate sentence.

20        I'm also required to impose a sentence that promotes

21  respect for the law, that provides just punishment for the

22  offenses, and that serves to deter you from committing crimes in

23  the future.  And also, any sentence I impose has to stand as a

24  beacon, as a warning to others not to engage in this type of

25  criminal conduct.  And I also have to take into account your

1    educational background, your personal history.  I do all of

2    that.

3          Now, I have heard argument from counsel.  Let me make

4    one comment there.  The reason I raised the *Battle* case,

5    Mr. Amolsch, is, it is very close -- I don't expect to hear from

6    you.  I just want you to listen.

7          MR. AMOLSCH:  Yes, sir.

8          THE COURT:  Is that that case is very close to this

9    case.  You also cited the *McCauley* and *Hewlett* cases.  *McCauley*

10   differs from this case because, unlike this defendant, the

11   defendant in *McCauley* did not have the intellectual ability --

12   he was very limited.  His IQ was very low.

13         Weren't you counsel in that case?

14         MR. AMOLSCH:  I was, Your Honor.

15         THE COURT:  So you remember that.

16         MR. AMOLSCH:  I do, Your Honor.

17         THE COURT:  By contrast, Mr. Sanders has a degree from

18   NYU and has also succeeded as a business person, and I'm sure

19   and hope he will again in the future.  So I just point that out

20   as a distinction.

21         You also cited *Hewlett*.  *Hewlett*, there was only one

22   victim, and in *Hewlett*, the distribution there was sending it to

23   that person, that young woman.  So I don't think those are the

24   same.  *Hewlett* and *McCauley* are not the same as this case.

25         All right.  Let's go on.  I think the most important

1    factor here is just punishment for the offenses involved, and

2    also general deterrence and specific deterrence of Mr. McCauley.

3            Let me emphasize yet again, Mr. Sanders, you are not

4    here because you have an inclination to participate in BDSM

5    activities.  The law does not proscribe or criminalize BDSM

6    per se.  What the law says is that -- the law says that you

7    can't abuse minors.  You can't engage in this conduct with

8    minors.  And you did.  Your counsel points out that you didn't

9    know when you went on these websites that there were minors on

10   there.  I don't know what you knew, but I do know that you knew

11   that these people were underage when you engaged in this

12   activity.

13           And I think the Fourth Circuit put it well in the very

14   case that Mr. Amolsch cited, in the *Battle* case.  There, there

15   was a First Amendment claim that people could take pictures of

16   child pornography if that's what the victim wanted to do.  The

17   Fourth Circuit appropriately rejected that defense and said,

18   simply:  "The Government may legitimately protect children from

19   self-destructive decisions reflecting the youthful poor judgment

20   that makes them, in the eyes of the law, beneath the age of

21   consent."

22           So that's why you're here for the production charges.

23   And for the possession charges, that's separate.  I'll come to

24   that.

25           So I do want to make that clear.  I want you to

1    understand clearly, Mr. Sanders, I'm not interested in and I

2    don't express any view -- I don't care about whatever sexual

3    proclivities you or anyone else has.  I don't care.  But you

4    can't do it with underage people.  I want you to be unmistakably

5    clear about that.

6            THE DEFENDANT:  It's very clear.

7            THE COURT:  And the reason for that is, you got up and

8    allocuted and you said you were sorry.  Well, that doesn't say

9    very much.  When adults engage in sexual activity with children,

10   no matter how much the children may not resist it or how much it

11   may be argued by lawyers that they consented, the law doesn't

12   permit the consent.  And I can tell you that I have heard from

13   many such victims that the scars of those experiences don't go

14   away.  It's just like a very serious physical scar.

15           I have a scar on my hand that I got almost 80 years

16   ago, and it isn't gone.  These are lifetime scars that result

17   from these experiences.  I made the same speech -- you didn't

18   represent Hewlett, though, did you, Mr. Amolsch?

19           MR. AMOLSCH:  That was Mr. Kiyonaga's case.

20           THE COURT:  These are lifetime scars, so the law

21   requires that I impose a sentence that reflects the seriousness

22   of these offenses.  And they are serious for that reason.

23           There's a tendency that people have -- and it's

24   appropriate for your lawyer to argue as he did, but I don't want

25   you to get the idea that you are here because of BDSM, and I

1    don't want you to escape from the knowledge that you can't do

2    this with underage people no matter how much you think you

3    persuade yourself that you may be helping them.  You aren't.

4    And I want that to be clear to you.

5            Now, the law also requires that I impose a sentence

6    that deters others generally.  So the sentence I impose on you,

7    as I said, has to stand as a beacon, as a warning to others.

8    And I do take that into account.

9            The law also requires that I impose a sentence that

10   does not involve unwarranted disparities between the sentence I

11   impose on you and the sentence imposed on others that are

12   similar.  Well, no case is exactly similar.  Every case is

13   distinctive, every defendant is unique, and the crimes in each

14   case are unique.

15           And I've already alluded to some of the differences.

16   For example, in *Hewlett* and *McCauley*, there was only one victim,

17   not multiple victims, and the production there was a little

18   different.  In fact, in *McCauley*, what he did is he took -- in

19   the course of a sex act, he -- as I recall, he asked the victim,

20   "Do you mind if I take a picture of this," and then clicked it.

21   And I erroneously concluded that that was sufficient to

22   constitute production.  I was not correct.  That was wrong, and

23   the Court of Appeals pointed that out.  There has to be more of

24   a purpose shown than just the instantaneous thought that they

25   would take a picture.  But my point is, that case was

1    distinctive for other reasons, distinct from this case for other

2    reasons.

3          The law also requires that I take into account the

4    guidelines.  The guidelines here are, in effect, life.  I think

5    that is far too severe and not warranted in this case.  And the

6    Government has not argued for a guidelines sentence in that

7    regard.

8          Am I right, Mr. Clayman?

9          MR. CLAYMAN:  Yes, Your Honor.

10         THE COURT:  But I have to impose a sentence that is

11   reflective of the factors that I've indicated.

12         And so ultimately, a sentence is a judgment.  Now,

13   Congress makes a judgment for each of these offenses to a

14   maximum.  For example, for the production cases, the assessment

15   is that there must be a mandatory minimum term of imprisonment

16   of 15 years, and a maximum of 30 years for each of the

17   production counts.  And for the receipt counts, it is a

18   mandatory minimum of five years and a maximum of 20 years.  For

19   the possession charge, it is no mandatory minimum, but a

20   sentence of up to 20 years imprisonment.  That's the judgment

21   that Congress makes.

22         Then the Sentencing Commission has issued guidelines,

23   and it attempts to indicate what the sentencing range should be

24   if certain factors are taken into account.  We've done that.

25   And here, the sentencing guidelines would be a fairly large

70

1    number of months that I think goes beyond 100 years.  Is that

2    correct, Mr. Amolsch, Mr. Clayman?

3            MR. AMOLSCH:  That's correct, Your Honor.

4            THE COURT:  So it's essentially life, and I think

5    that's excessive.  I don't think that's warranted in this case.

6            So those are the facts that the Court takes into

7    account.  But ultimately it's the Court that makes a specific

8    judgment in a specific case about specific defendants having

9    committed specific crimes.  But I'm cabined by those maximums

10   and minimums.  And so I've taken all of that into account.

11           But in the end, it's my judgment.  And that's why the

12   lawyers have called to my attention other cases that they argue

13   are similar, because similar cases should be treated alike.

14   It's not appropriate to treat different cases differently -- or

15   same cases differently.  I beg your pardon.

16           So in the end, I have to impose a sentence that's my

17   judgment.  It is the judgment of the court in this case,

18   Mr. Sanders, that you be committed to the custody of the Bureau

19   of Prisons for a period of -- with respect to Count 1, a period

20   of 216 months; for Count 2, 216 months; for Count 3, 216 months;

21   and for Count 4, 216 months.  And for Count 5 and Count 6

22   each -- no, for Count 5, 216 months.  All of those sentences are

23   to run concurrently, not consecutively.  216 months is, I think,

24   18 years, Mr. Clayman?

25           MR. AMOLSCH:  I was doing the math, Your Honor.  I

1       believe that's correct.

2              MR. CLAYMAN:  It's 17, Your Honor.  I apologize,

3       18 years, Your Honor.

4              THE COURT:  Most lawyers are lawyers because they

5       failed math.  I was actually very good at math.  And then

6       you-all would say I failed at law.

7              In any event, we continue.  216 months, and that's all

8       concurrent.  You're to pay a $100 special assessment for each of

9       those counts, for a total of $600 for the six counts -- I'm

10      sorry, not six counts.  Five counts.  So it's $500 for those

11      counts.  And don't hesitate to correct me if I err in that

12      regard.  This is simple.  A special assessment of $100 for each

13      of Counts 1 through Count 5, for a total of $500.

14             Now, there are other special assessments that I want to

15      come to in a moment, but I want to go on.

16             I'm also going to impose, for each of those counts, a

17      period of lifetime supervision.  Now, Mr. Sanders, let me

18      emphasize that that doesn't mean that you can't seek to have

19      that shortened once you demonstrate a law-abiding habit of life

20      for a while.  I would be, if I'm here, or another judge will

21      consider reducing that.  It won't be necessary.  But it's up to

22      you.

23             I tell all defendants, life is making choices and

24      living with the consequences of the choices you make.  In other

25      words, you write the pages of your own life story.  You don't

1    determine where you're born, to whom you're born, or whether

2    you're born with handicaps or talents, but you do determine how

3    you respond to all of that.

4           Now, in fact, you were fortunate in your birth and you

5    are fortunate in your abilities.  You're an intelligent, capable

6    young man.  That doesn't mean you don't have problems physically

7    and you don't have limitations.  We all do.  But you do

8    determine how you respond to all of that.

9           Now, you've made good decisions, to some extent, in

10   your life already.  You went to university, you graduated; you

11   developed an interest in being a lighting director in theatre

12   and you got a degree in that.  You also have made good decisions

13   about being an entrepreneur and trying to earn money.  And

14   you've done well in that regard.  Those are good decisions, and

15   you have benefitted from those.

16          Your decision to engage in crime, however, is a bad

17   decision.  It's a criminal decision, and there are consequences

18   for that today.  I've imposed a sentence for Counts 1 through 5,

19   and I've included everything but the special assessments.

20          Mr. Clayman, there's also a special assessment pursuant

21   to Section 3014 of Title 18.  Is that right?  And also 3013?

22          MR. CLAYMAN:  Yes.  3013 is the $100 special

23   assessment; 3014 is a $5,000 special assessment.

24          THE COURT:  Now, that special assessment requires that

25   I make a finding about whether he's able to afford it?

73

 1            MR. CLAYMAN:  If you determine that he is not indigent,

 2    then the special assessment has to be imposed.

 3            THE COURT:  Just tell me in a couple of sentences

 4    whether you think he's indigent or not, and, if so, why or why

 5    not.

 6            MR. CLAYMAN:  We do not think he is indigent,

 7    Your Honor.  I think, based on the record in this case, it is

 8    clear he has significant resources.  On top of that, the case

 9    law makes clear you can consider his educational background, his

10    age, and his future earning potential.

11            THE COURT:  So his future earning potential?

12            MR. CLAYMAN:  Yes, Your Honor.  Based on those factors,

13    we would say he's not indigent.

14            THE COURT:  Mr. Amolsch, you would say his only asset

15    is his car?

16            MR. AMOLSCH:  And the fact that his parents have been

17    supporting his lifestyle, both in terms of lawyers and things

18    like that.  So what he has, Your Honor, is virtually

19    nonexistent.

20            THE COURT:  So your arrangement is with his parents,

21    not with him?

22            MR. AMOLSCH:  That is correct, Your Honor.

23            THE COURT:  It seems to me that I've imposed an 18 year

24    mandatory sentence -- or 18 years.  It's 15 mandatory; I

25    enhanced that by three.  So it will be a long time before he is

1    out earning money.  I'm going to delay any imposition of a

2    special assessment pursuant to 3014 until I finish the sentence

3    in this case.

4         Now let's turn to Counts 6 through 12, which are

5    somewhat similar, because Congress has provided there that for

6    Counts 6, 7, 8, and 9 and 10 and 11, there's a mandatory minimum

7    term of five years and up to 20 years.  So what I'm going to do

8    is impose the 216 months for each of those counts, but again,

9    that's all concurrent, and it's concurrent with the sentences I

10   imposed on Counts 1 through 6.

11        In other words, Mr. Sanders, your total custody

12   sentence I intend is 216 months.  Nothing consecutive and

13   nothing beyond that.

14        Now, you'll have to pay a $100 special assessment for

15   each of those counts; that is, Counts 6 through 12.  And then,

16   for supervised release I'm going to impose five years of

17   supervised release for each of those counts, but that supervised

18   release term will be concurrent, not consecutive.

19        So your total custody sentence is going to be the

20   216 months, and although you have a lifetime of supervision

21   there, the supervision on the other counts is five years, and

22   that is to run concurrently.  And again, even with the 5-year

23   sentence, Mr. Sanders, you can seek to have that terminated

24   early if you demonstrate a law-abiding existence consistently -

25   that is, you don't violate the conditions of supervised

1    release - and you demonstrate that you don't need supervision

2    anymore.

3            Supervision has two principal purposes.  First, it is

4    to help you adjust to a law-abiding existence and life; and

5    secondly, it is to protect the public, to make sure you don't do

6    anything that harms the public, that you don't commit any crimes

7    in the future.  And if you do, you could be returned to prison

8    for the full supervised release term.

9            But my point to you, Mr. Sanders, is to underscore that

10   you can shorten these periods of supervised release, especially

11   the lifetime one, if you demonstrate it isn't needed because you

12   don't need it anymore.  But you have to show that.  And you'll

13   have to show that to the judge, to a judge.  It may well not be

14   me.  I won't be in this veil of tears that much longer, but you

15   will be.

16           Now, I think I have imposed a sentence on each count.

17           MR. AMOLSCH:  Your Honor, if I could, I believe there's

18   the remaining possession count.

19           THE COURT:  Yes.  There's what?

20           MR. AMOLSCH:  The remaining possession count.

21           THE COURT:  Yes, that's right.  That's Count 12, and

22   there's no mandatory minimum there.  That's up to 20 years, and

23   I'm going to impose a 10-year sentence on that, to run

24   concurrently to all of the others.  It's pretty hideous, some of

25   the things you collected.

76

1          MR. AMOLSCH:  Yes, sir.

2          THE COURT:  Now, your counsel has underscored again and

3     again that all you did was punch a button, and boom, you

4     collected it.  And you didn't do it to -- or at least he says

5     there's no evidence that you did it to slake any thirst you had

6     for this kind of foul stuff that you collected.  We don't know

7     that.  We don't know that.

8          Now, I also imposed a sentence on you, I said up to

9     10 years, and I'll give you five years of supervised release in

10    that count as well.  And that, too, can be shortened.

11         Now, all of the supervised release counts will be

12    subject to the standard conditions that will be issued, and,

13    Mr. Amolsch, you'll be required to review those with your

14    client.

15         MR. AMOLSCH:  Yes, sir.

16         THE COURT:  I want to impose two special conditions.

17    One is that he participate and successfully complete a program

18    of mental health counseling.  I think he would profit from this.

19    We all might.  You need to have insight, Mr. Sanders, into why

20    you did what you did; indeed, you need to have insight into what

21    interests you have in terms of sex, and why you have those

22    interests, and how it is you can have them and how it is you

23    ought to find a way not to have them.  But that's what the

24    mental health counseling is to help you do, to give you insight

25    into what interests you and why you do certain things, so that

1    you can take command of your life.

2            As I told you, life is making choices and living with

3    the consequences.  You should say that to yourself every day.

4    Because it's true for all of us in this courtroom.  And you've

5    demonstrated in your life, Mr. Sanders, that you have the

6    intelligence, clearly, and the ability to make better choices

7    for yourself.  You're a smart young man.  You can do better, and

8    you have done better.  But you need to understand very clearly

9    that what you did is very wrong.  It's criminal, and you can't

10   do it ever again.

11           Now, we come back to special assessments.  I've imposed

12   a $100 special assessment for each count; then there is a

13   special assessment for the certain eligible counts, under

14   Section 3014, of up to $5,000.  But that depends on his

15   financial ability, and, as Mr. Clayman correctly points out, not

16   just what he has today, but based on his ability to earn in the

17   future when he's released.

18           I think that's what you correctly reminded me of,

19   Mr. Clayman, am I right?

20           MR. CLAYMAN:  Yes, Your Honor.

21           THE COURT:  Well, it's a long time off, and I think I

22   want to deal with restitution first and then come back to that.

23   Because special assessments really have a kind of punitive

24   effect.  I don't doubt that his parents will continue to support

25   him, but I don't want the punishment to be to his parents.  I

1    don't want to assess a $5,000 special assessment that his

2    parents are going to have to pay.  I don't doubt that they have

3    the wherewithal to do it and more.  After all, they hired seven

4    or eight different law firms and lawyers to participate in this

5    case.  I don't have any doubt at all that they can afford it.

6    But that isn't legally relevant, and they shouldn't have to pay

7    for that.

8           So let's go to restitution.  Mr. Clayman, from where

9    you're sitting - you don't have to go to the podium, I want

10   Mr. Sanders to remain there - who is it who has requested

11   restitution?  Which of the victims?

12          MR. CLAYMAN:  There are two victims of the possession

13   of child pornography counts that have requested restitution.

14   The pseudonyms of the victims are Andy and John Doe 4.

15          THE COURT:  Yes, I recall those.

16          And so that the people in the courtroom understand,

17   these are not any of the minor victims of the production counts,

18   these are individuals whose -- who were abused and their images

19   appear on the internet as child pornography.  And some of them

20   are quite awful, quite awful.

21          Now, is there an agreement as to how much I should

22   order, or is there a disagreement, Mr. Amolsch?

23          MR. AMOLSCH:  I have not reached any agreement with the

24   Government regarding restitution, Your Honor.

25          THE COURT:  How much is claimed, Mr. Clayman?

79

1          MR. CLAYMAN:  I believe John Doe 4 is requesting at

2     least 3,000, and the other victim is requesting substantially

3     more.  We would submit, Your Honor, that the statute requires at

4     least 3,000, and based on what's in the PSR, that amount would

5     be appropriate.

6          THE COURT:  Yes.  Now, is it -- 3,000 not joint and

7     several, but 3,000 individually.  Right?

8          MR. CLAYMAN:  Per victim, yes.

9          THE COURT:  In other words, those victims may have

10     claims against other defendants in other cases, but it is not

11     joint and several with this one?

12          MR. CLAYMAN:  Correct, Your Honor.

13          THE COURT:  All right.  I'm going to impose a $3,000

14     restitution obligation for each of those two victims.  It won't

15     be due -- it is due and payable immediately, but if it isn't,

16     Mr. Sanders, you won't have to begin paying it until you're

17     60 days released from confinement.  And then you'll have to pay

18     it to each at $100 per month, unless at that time, and at that

19     time you can show -- or the Government can show that that amount

20     should be increased or your counsel can show that it should be

21     decreased because of your situation.

22          Now, that will be some years from now, and I won't be

23     the judge when you're released.  In fact, I won't be in this

24     veil of tears.  But I want you to know that it can be increased

25     or decreased, and that I am imposing that upon you.

1          Now, I have imposed a term of incarceration for each

2     count, a term of supervised release for each count, a special

3     assessment for each count, except for the higher amounts under

4     3014.  And I'll come back to that.  And I've indicated what a

5     special condition is.

6          I'm also going to recommend to the Bureau of Prisons

7     that Mr. Sanders be designated to serve his sentence at a

8     facility that is competent, capable of addressing his physical

9     impairments.  He has -- I'm not going to recite them here in

10    open court.  I know what they are.  They're in the record.  And

11    he has requirements for medication.  Indeed, while he was

12    incarcerated here in Alexandria, I ordered immediate steps to be

13    taken to provide certain medication which he still is required

14    to receive.

15         And you're still receiving it, aren't you, Mr. Sanders?

16         THE DEFENDANT:  Yes.

17         THE COURT:  And that's very important, and I want the

18    Bureau of Prisons - and I'll put this in the J&C - to be aware

19    of that.  And to be aware, as Mr. Amolsch as pointed out, that

20    if he's shuffled here and there in various facilities, as the

21    Bureau of Prisons is entitled to do - they have the discretion

22    to do - that that's risky with him because he has to have this

23    medication and he cannot predict when the onset of the condition

24    that he requires the medication for is going to occur.

25         So I am going to recommend to the Bureau of Prisons

1    that he be designated to serve his sentence at a facility, and

2    that he not be moved from the Alexandria Detention Center until

3    that place is designated and he can go directly to that place.

4    And, Mr. Amolsch, you and Ms. Ginsberg can make sure that

5    whatever that place is, they have all the medical records,

6    including his need for this medication and any other

7    medications, and treatment for an ongoing condition that he may

8    well have for the rest of his life.

9         MR. AMOLSCH:  May I be heard on that just briefly,

10   Your Honor?

11        THE COURT:  Yes.

12        MR. AMOLSCH:  The Sanders hired Joshua Sickler, who is

13   an expert in BOP designations.  And as part of our preparation

14   for this sentencing, he did research on all the facilities that

15   have the necessary medical treatment, the sex offender

16   treatment, all of the things that Mr. Sanders is going to

17   require.

18        We, in our pleading, asked for a specific designation

19   to FCI Butner.  I don't know if Your Honor would consider

20   lifting that language directly from the pleading as part of your

21   J&C recommendation to BOP, but we've done all the work on the

22   front end to try to identify the appropriate --

23        THE COURT:  Yes, and I think it's appropriate, and I

24   think it's appropriate for you to have done that.  It's my

25   experience that these experts don't always get it right.  I've

82

1    had people that I've sentenced who needed a heart transplant and

2    they got it.

3              MR. AMOLSCH:  Yes, sir.

4              THE COURT:  Now, they didn't get it from where the

5    expert said he should get it.  He instead got it from the

6    University of Texas in Houston or Dallas.  I don't remember

7    which one.

8              So I don't want pick a specific one, but I'll include

9    in the J&C the recognition that an expert for the defendant has

10   done research and believes that Butner is the most appropriate

11   place.  But I leave that to the discretion of the BOP, pointing

12   out to the BOP that they should leave him in Alexandria

13   Detention Center until they designate him to a specific place so

14   we can be certain about the continuity of his medication and

15   treatment.

16             MR. AMOLSCH:  Thank you, Your Honor.  If I could jump

17   back to the $3,000 restitution, would Your Honor consider

18   waiving any interest and penalties?

19             THE COURT:  Yes, I will.

20             MR. AMOLSCH:  Thank you, Your Honor.  That's all I

21   have.

22             THE COURT:  One lawyer.  Do you want to tell

23   Mr. Amolsch?  Ms. Ginsberg, I have a rule that --

24             MR. AMOLSCH:  Yes, Your Honor, I'm getting instructions

25   as we speak.

83

```
 1            THE COURT:  I have that rule because I got tired, many,
 2    many years ago, of listening to a cacophony of lawyers giving me
 3    their views.  What is it?
 4            MR. AMOLSCH:  Ms. Ginsberg wanted me to bring up to the
 5    Court, that the Kesimpta, which is the medication Mr. Sanders
 6    needs to control his MS, is not yet on the BOP registry.  So
 7    once he goes there, that's just something we're going to have to
 8    deal with in the future --
 9            THE COURT:  That's a good point, Ms. Ginsberg.  But
10    that's your problem, in the sense that I will put in the J&C --
11    spell the -- Ms. Ginsberg, you spell the medication.
12            MR. AMOLSCH:  I can spell it.  It's in my pleading,
13    Your Honor, but it's K-E-S-I-M-P-T-R-A.  Sorry, no R.  But it's
14    in my pleading, Your Honor, spelled correctly.
15            THE COURT:  I will put in the J&C that he requires
16    this, and it isn't a requirement for periodic; he requires it
17    when the event occurs.
18            MR. AMOLSCH:  And there's also regimented applications
19    to it.  It has to be refrigerated.  I think Your Honor
20    understands the fragile nature of it, and I appreciate the
21    consideration.
22            Ms. Ginsberg has already arranged for the ADC to keep
23    him there so they can follow these protocols.  I think this will
24    be okay.  But anything put in the J&C will be much appreciated.
25            THE COURT:  Yes, I will put it in the J&C.  But, you
```

84

1    know, when your client is sent somewhere, you need to stay with

2    your client and make sure that the receiving institution knows

3    everything you think it should know.  It will know everything

4    from the J&C --

5                MR. AMOLSCH:  Yes, sir.

6                THE COURT:  -- and the PSR, because this is in the

7    presentence investigation report --

8                MR. AMOLSCH:  Right.

9                THE COURT:  -- his physical condition.

10               MR. AMOLSCH:  Yes, sir.  Again, ADC gives him the

11   Kesimpta 30 days, on schedule.  It's a regular administration of

12   it, there's a regular protocol for that.  So it's just something

13   I appreciate the Court taking it into consideration.

14               THE COURT:  There is also something he gets if there's

15   an onset of specific symptoms regarding his eyesight.

16               MR. AMOLSCH:  That's right.  That's in addition too,

17   Your Honor, as well.

18               THE COURT:  Yes.  And they need to know about that,

19   too.  And they need to know, as I've ordered -- because he was

20   in pretrial detention, and I ordered it because it was unclear

21   he was going to get it in time to prevent any damage to his

22   eyesight, which I was firm in my instructions to them to do it.

23   And I think he's received it.

24               MR. AMOLSCH:  Yes.  And we appreciate that, Your Honor.

25   Thank you.

```
 1                    (OFF THE RECORD.)

 2              MR. AMOLSCH:  I think we've covered everything,

 3    Your Honor.

 4              THE COURT:  I think so.  Anything further on behalf of

 5    the Government?

 6              MR. CLAYMAN:  There are a few issues, Your Honor.

 7              THE COURT:  Oh, there's the return of property.

 8              MR. CLAYMAN:  Correct.  A couple of other, as well as

 9    the forfeiture, which Ms. Zanobini can discuss if Your Honor

10    would like to hear from the Government on it.

11              THE COURT:  All right.  Let me tell you where I stand

12    on forfeiture.  I'm not sure that I'm prepared to resolve

13    everything.  Clearly he must forfeit everything, all the

14    equipment he used.  The fact that on this equipment he has stuff

15    that he wants back that doesn't relate to criminal conduct, but

16    he wants it because, as I think you pointed out in your brief,

17    it's part of his past life, that doesn't stop the forfeiture of

18    the equipment.

19              Do you have a different view?

20              MR. AMOLSCH:  Me, Your Honor, or the Government?

21              THE COURT:  You.

22              MR. AMOLSCH:  Me, no.  I don't, as an initial -- to the

23    initial answer to Your Honor's question, no.  But I think

24    Your Honor's instinct is correct that this is probably something

25    that takes too much time to hash out now, and we probably ought
```

1    to have a --

2           THE COURT:  Well, it won't surprise you to know that

3    I've looked into it a bit.

4           MR. AMOLSCH:  I believe that you have, Your Honor.  But

5    just given the time constraints, and I don't think it needs to

6    be resolved today.  So I think Your Honor's instinct is correct,

7    we should table this to talk about --

8           THE COURT:  Well, I'm going to tell you something so

9    you can focus on it.

10          MR. AMOLSCH:  Yes, sir.

11          THE COURT:  Let me say this much, in the interest of

12   moving on.

13          MR. AMOLSCH:  Yes, sir.

14          THE COURT:  I have looked into this.  I think what it

15   comes down to, Mr. Amolsch, is the defendant's view that he

16   should have returned to him those portions of the memory of

17   these devices that are not criminal.  Do I have that right?

18          MR. AMOLSCH:  Your Honor, I think there's slightly more

19   to it.  And I think the rules say if there's any dispute, I

20   think we have to have a hearing.

21          THE COURT:  Oh, I don't question that.  Just answer my

22   question.

23          MR. AMOLSCH:  That is my general understanding of it,

24   Your Honor.  But given the Court's admonition against more than

25   one lawyer speaking, that pleading was filed by Ms. Ginsberg.

1                    THE COURT:  There's going to be some other lawyer --

2                    MR. AMOLSCH:  Well, no, it will just be Ms. Ginsberg,

3      but I am probably ill-equipped to answer the specifics of

4      Your Honor's questions.

5                    THE COURT:  All right, Ms. Ginsberg.

6                    MS. GINSBERG:  Judge, I'm sure you've heard enough of

7      me over the days and weeks.  But that is correct, we are seeking

8      the return of the data -- copies of the data of the

9      noncontraband material on his computers, excluding anything that

10     was used to facilitate any of these offenses.

11                   THE COURT:  All right.  Now, you understand, of course,

12     that these materials have to be found on these memories.

13                   MS. GINSBERG:  That's correct.

14                   THE COURT:  And these devices, the memories are not

15     going to be returned to you or the defendant for that exercise.

16     In other words, the Government - probably the FBI - is going to

17     have to, as you would say, go through this and give him back

18     everything that isn't criminal.  In other words, if on there is

19     an essay he wrote or a memory that he had about some happy

20     event, he wants all that back because it wasn't criminal.

21     That's what you're referring to.

22                   And the issue is going to come down to, is that

23     necessary under the law because it involves a significant burden

24     on the Government.  Isn't that it?

25                   MS. GINSBERG:  No, not quite.  Because, Your Honor,

88

1    we've suggested that we use the same procedure that we used

2    during the discovery phase of this case to identify exculpatory

3    evidence that we believe we were entitled to, which is this.  We

4    retained a forensic expert who went to the FBI facility in

5    Manassas, who made this initial scanning of the data, and

6    downloaded that data onto a hard drive, which was then given to

7    the FBI to review.

8            So the initial recovery and retrieval of the data is

9    something that we are endeavoring to undertake.

10           THE COURT:  All right.  Let me cut to the chase.  You

11   may not know this, but I do.  There's a Third Circuit and a

12   Second Circuit case on this point, and I don't know that it --

13   because I haven't studied them yet.  I don't know that those two

14   decisions cover that.  I think they do, and I think both

15   decisions find that you forfeit the whole thing, and the

16   government isn't required to do that.

17           Now, you've suggested that there's already a procedure.

18   You and Mr. Clayman can discuss this.  Look at those cases, and

19   I think it's sufficient under the law that today, at sentencing,

20   I have recognized that he forfeits all of the equipment, and the

21   only question remaining is whether the memories have to be

22   looked at by the government or by some other entity to determine

23   whether there is anything on these memories that is not

24   criminal.  And that's where the debate is.

25           And I think you'll find the Second Circuit -- let me

1    see if I have those items here for you.

2            MS. GINSBERG:  Judge, I'm aware of those cases.  I'm

3    also --

4            THE COURT:  The *Noyes* case at 557 Federal Appendix, and

5    *Wernick* at 673 Federal Appendix, W-E-R-N-I-C-K.

6            MS. GINSBERG:  Yes, Your Honor.  And in neither of

7    those cases is there any real analysis of this issue whether

8    the --

9            THE COURT:  So I shouldn't pay attention to them.

10   Okay.  You'll get that chance.  But you have those cases to

11   overcome.

12           MS. GINSBERG:  I do.  And there is at least a

13   Ninth Circuit case and another circuit case that has held to the

14   contrary.

15           THE COURT:  All right.  And you'll be able to -- let's

16   do it this way.  You can file a brief, and do it a week from

17   today, in which you -- you already filed a brief on forfeiture,

18   so this will be sharply focused.  And, Mr. Clayman, you can

19   respond a week later.  And then, if I need oral argument, I will

20   ask for it; otherwise, I will decide it on the papers.

21           So in these briefs, make sure you focus sharply on what

22   the issue is, make sure that you detail in clear fashion what

23   you think the right solution and result is, and then,

24   Mr. Clayman, you can tell me what you think the right result is

25   and why you think I should rule that way.  And I will consider

1    whether I need oral argument.

2           Anything else in sentencing today on behalf of the

3    Government?  Yes.  Mr. Clayman, am I correct that forfeiture is

4    required at the time of sentencing, unless I indicate that there

5    are issues yet to be decided.  Is that right?

6           MR. CLAYMAN:  I think there's Fourth Circuit precedent,

7    Your Honor, saying that if you notice your intention to enter an

8    order of forfeiture, but then address it later, after

9    sentencing, that that would preserve jurisdiction over the issue

10   for Your Honor.

11          THE COURT:  All right.  And what's the case?

12          MR. CLAYMAN:  That is the *Martin* case, the cite is

13   662 F.3d 301.

14          THE COURT:  Yes, I think that's the same authority I

15   was relying on.

16          Do you have any different view, Ms. Ginsberg?

17          MS. GINSBERG:  No, Your Honor, I believe that's

18   correct.

19          THE COURT:  All right.  Now, finally, Mr. Sanders, you

20   have the right to appeal your conviction and sentence in this

21   case.  You may either ask me to note it now or you may do it

22   within 10 days of today.

23          Mr. Amolsch, which does he prefer to do?

24          MR. AMOLSCH:  If Your Honor can note it today, that

25   would be great.  And I will also file a notice of appeal, just

1    to make sure all issues are covered.

2             THE COURT:  All right.  I'll have the clerk note it.

3             Anything further?

4             MR. AMOLSCH:  Nothing for Mr. Sanders, Your Honor.

5             THE COURT:  Mr. Clayman?

6             MR. CLAYMAN:  There were a few points I wanted to

7    clarify for my understanding.  Your Honor does not intend to

8    impose any special assessments under 3014 or 2259(a).  Is that

9    correct?

10            THE COURT:  No.  Let's come back.  I'm glad you

11   reminded me, Mr. Clayman, because I wanted to do restitution

12   first.

13            MR. CLAYMAN:  Correct.  So Your Honor is aware, these

14   payments are due after restitution is paid, by the statute.

15            THE COURT:  Yes.  And these are a $5,000 special

16   assessment, is that right, Mr. Clayman, for each of the

17   production counts?

18            MR. CLAYMAN:  For 3014, it's 5,000 per all 12 counts,

19   because they all involve child pornography crimes.

20            THE COURT:  So that's the total for all?

21            MR. CLAYMAN:  It would be 60,000.  So 5,000 per count,

22   60,000 total.

23            THE COURT:  But to do that, I have to determine that

24   he's either not indigent now, or that in the future he would be

25   able to come up with $60,000.

1          MR. CLAYMAN:  You have to make a finding as to whether

2    he is indigent now, considering, among other factors, his

3    earning potential, his educational background, his age, that

4    sort of information.

5          THE COURT:  All right.  Well, I think I will make the

6    finding that he is indigent now, because the record shows he has

7    only an automobile.  And although his parents may well be

8    wealthy, as they apparently are, that doesn't count, does it,

9    Mr. Clayman?

10          MR. CLAYMAN:  Presently, I don't think his parents'

11   wealth can be factored in.  Again, though, I would stress, his

12   future earning potential is something the Court can consider.

13          THE COURT:  Yes.  So I have to look ahead at 15 or

14   20 years from now and decide whether he should pay a special

15   assessment then.

16          MR. CLAYMAN:  Yes, Your Honor.  If you determine that,

17   as you suggested, he could start another business and he would

18   be able to afford these payments, then Your Honor would be able

19   to find him non-indigent and impose those special assessments.

20          THE COURT:  And the special assessment is 5,000?

21          MR. CLAYMAN:  Per count of conviction.

22          THE COURT:  Right.  It isn't less than that.

23          MR. CLAYMAN:  It's a mandatory 5,000, yes.

24          THE COURT:  Mr. Amolsch?

25          MR. AMOLSCH:  Your Honor, I think Your Honor is

1    correct, he's indigent now.  You've given him an 18-year

2    sentence.  He will have 12 convictions for possession,

3    distribution, receipt of child pornography.  The whole point is,

4    his ability to earn any money when he comes out, I think the

5    Court needs to understand the circumstances into which he's

6    going to reenter the world.  So whatever his earning potential

7    may have been prior to this is going to be severely limited when

8    he comes out.  That's just the reality.

9           THE COURT:  That's a view that's appropriate for you to

10   bring to my attention, but actually, I know probably more about

11   Mr. Sanders than you do.

12          MR. AMOLSCH:  Yes, Your Honor.

13          THE COURT:  And he is a pretty amazingly inventive and

14   energetic young man.  "Enterprising" would be the best word I

15   could use.  You know, even as a child, he developed a business

16   selling...

17          MR. AMOLSCH:  Yes, sir, rocks and candy.

18          THE COURT:  That's right.  And I have no doubt that

19   while his convictions will be a significant burden if he wants

20   to go out and work for Goldman Sachs, they are not a significant

21   burden if he becomes, as he will, an entrepreneur of sorts.  So

22   I'm not moved by that.  I think he does have earning potential

23   in the future.

24          And the problem is, Mr. Clayman, it's $5,000 per count,

25   for a total of how many counts?

```
 1            MR. CLAYMAN:  12 counts.  So 60,000 total, I believe.
 2            THE COURT:  That's a chunk of money.  And the problem
 3   is, the statute doesn't -- I'm sorry, Mr. Amolsch, you can sit
 4   down.
 5            MR. AMOLSCH:  I apologize.  I didn't know if I was
 6   going to be asked anything.
 7            THE COURT:  The statute doesn't give me the ability to
 8   reduce that by any amount?
 9            MR. CLAYMAN:  No, Your Honor.  It requires $5,000.
10            THE COURT:  So it's asking me -- and I would love to
11   put this to the people who drafted that statute.  It's asking
12   me, at my age -- now, I've seen a lot.  I've been on this planet
13   for more than eight decades.  I'm in my ninth decade.  So I've
14   seen a lot.  And I do think he has earning potential when he
15   gets out, and I do think -- but I have no idea what the
16   situation is going to be when he gets out, or how much he will
17   be able to earn.  And the statute doesn't give me any discretion
18   on whether it should be less than 5,000.
19            I think the best I can do, Mr. Amolsch -- because I am
20   firmly convinced that your client has a lot more resiliency that
21   you may think.
22            MR. AMOLSCH:  Yes, sir.
23            THE COURT:  I think he will have earning capacity.  I
24   think he can pay this.  But I believe that if he turns out to be
25   indigent for any reasonable length of time after he is released
```

```
 1   from confinement, he can seek to show that and seek to be
 2   excused from paying this.
 3           Am I right, Mr. Clayman?
 4           MR. CLAYMAN:  I believe that's correct, Your Honor.
 5           THE COURT:  So let's let the future speak for itself.
 6   I have a rosier picture of the future than you've painted.
 7           MR. AMOLSCH:  Yes, sir.
 8           THE COURT:  But I understand your argument.  I think
 9   you're right, that in most cases these convictions would hobble
10   most people.  Not you, Mr. Sanders.  I think you will be
11   resilient.  I just hope you remember that you can't do anything
12   sexual with children, with underage people.  And I don't express
13   any view, and I don't care what you do with adults.  It's none
14   of my business and I don't care.  Do you understand?
15           THE DEFENDANT:  Yes.  Thank you.
16           MR. AMOLSCH:  If that's Your Honor's inclination, then,
17   I would ask for the minimum -- whatever minimum required
18   restitution order that Your Honor can order.
19           THE COURT:  Well, it is just that.  It's $5,000 per
20   count, for a total of $60 [sic], and the J&C will so reflect
21   that.
22           MR. AMOLSCH:  Again, Your Honor --
23           THE COURT:  But it will also note that it's based not
24   that he's currently indigent, and that it's based on my
25   assessment of his future ability to do it.  And if in the future
```

```
1    that turns out to be wrong, I would support excusing him from

2    that obligation.

3              MR. AMOLSCH:  If you could also waive penalties and

4    interest, as you did with the restitution.

5              THE COURT:  Yes, I will.  Anything further Mr. Clayman?

6              MR. CLAYMAN:  I do have a copy of the restitution order

7    that I can pass up to the Court.

8              THE COURT:  Yes.  Has it been seen by Mr. Amolsch?

9              MR. CLAYMAN:  It has not.  It's the standard order with

10   blanks to fill in for the amounts that Your Honor imposed.

11             MR. AMOLSCH:  Let me take a look at this, and we'll

12   submit this to chambers after I've conferred with Mr. Clayman.

13             THE COURT:  All right.  Anything further?  I think I've

14   already ordered the restitution, I've already said that interest

15   is waived, and I've already said that he has to begin paying the

16   restitution at $100 a month 60 days after his release from

17   confinement, and that amount can be increased or decreased

18   depending on his circumstances.

19             MR. CLAYMAN:  Yes, Your Honor.

20             THE COURT:  Is that what the order provides?

21             MR. CLAYMAN:  Yes, Your Honor.  We can submit it.

22             THE COURT:  I've done that at sentencing.

23             Anything else, Mr. Clayman?

24             MR. CLAYMAN:  To confirm that Your Honor intends to

25   remand the defendant.
```

97

1           THE COURT:  Yes.  He's in custody and he's committed to
2    the custody of the Bureau of Prisons and he's in their custody.
3           MR. AMOLSCH:  No objection.
4           THE COURT:  I beg your pardon?
5           MR. AMOLSCH:  No objection.
6           THE COURT:  All right.  Anything further on sentencing,
7    Mr. Amolsch?
8           MR. AMOLSCH:  No, sir, not from us.
9           THE COURT:  All right.  Let me ask -- well, we don't
10   have a probation officer anymore.  Have I omitted anything?  Oh,
11   yes, you're substituting for her?
12          PROBATION OFFICER:  I am, Your Honor.
13          THE COURT:  Have I omitted anything?
14          PROBATION OFFICER:  The only thing that wasn't
15   addressed was the other assessment, the ADAA, the 2259(a)
16   assessment.  That's the maximum of $50,000, but the Court can --
17          THE COURT:  But I'm not required to impose that.
18          MS. SMIHAL:  It just has to be addressed, Your Honor.
19          THE COURT:  I understand that.  Mr. Clayman?
20          MR. CLAYMAN:  Yes, that's correct.  You can impose zero
21   or up to, I believe, $50,000.
22          THE COURT:  What have I already imposed?  I've already
23   imposed $100 per count for all of the counts; I've already
24   imposed a special assessment of $5,000 under 3014.  Is that
25   correct?

1          MR. CLAYMAN:  Yes.

2          MR. AMOLSCH:  For a total of $60,000.

3          THE COURT:  For a total of $60,000.  Now, why should I

4   impose any more as a special assessment?

5          MR. CLAYMAN:  We haven't really taken a position on

6   that, Your Honor.  I believe the probation officer's concern is

7   that you need to make a finding on the record whether or not you

8   intend to impose --

9          THE COURT:  I do not.  He's indigent at this time, and

10  I've imposed, in essence, $60,000 on him when he gets out of

11  prison.  And that's enough.  And that's based on his future

12  earning capacity.

13         Now let me ask the probation officer, given that, have

14  I omitted anything?

15         PROBATION OFFICER:  Just to confirm, Your Honor, the

16  only special condition you want ordered is mental health

17  counseling?

18         THE COURT:  Yes.  He doesn't have a drug problem.

19         PROBATION OFFICER:  There are several other special

20  conditions for cases of this nature.

21         THE COURT:  Several other what?

22         PROBATION OFFICER:  Several other special conditions.

23         THE COURT:  Oh, just a moment here.  I've said that he

24  has to participate in a program approved by the probation office

25  for mental health treatment, to include psychosexual evaluation

1    and sex offender treatment.  I've also said he has to register

2    as a sex offender and make that registration or keep it up to

3    date.

4          And he shall not engage in employment or volunteer

5    services that allow him access to minors without the approval --

6    the knowing approval of the probation officer.  And if there is

7    going to be something, I think a judge at that time can address

8    it.  But at the moment, no employment or volunteer services

9    allowing him access to computers or minors.  He can't possess

10   any sexually explicit material or images using young juvenile

11   models under 18.  That's child pornography.

12         Let me ask the probation officer, he shall have no

13   contact with minors unless supervised by a competent informed

14   adult; by that, I mean a competent adult who knows about these

15   convictions.  And he can't utilize any sex-related adult

16   telephone services or electronic bulletin boards without the

17   knowledge or permission of the probation officer.

18         All right.  I've looked at the others.  I'm satisfied

19   none of the others should be imposed at this time.  But rest

20   assured that if, in the course of his supervised release -- I

21   won't be here.  But if, in the course of his supervised release,

22   it becomes apparent that some of these additional conditions

23   would be necessary, that's the time to address it, and the judge

24   at that time, taking into account the circumstances that then

25   exist, as well as these convictions, will be able to make a

1    reasoned judgment about it.

2            MS. SMIHAL:  Yes, Your Honor.

3            THE COURT:  Now, let me ask one last time, anything

4    further by any party?

5            MR. CLAYMAN:  Nothing from the Government.

6            MR. AMOLSCH:  Nothing from Mr. Sanders, Your Honor.

7            THE COURT:  And nothing from the probation office,

8    either.  Is that correct?

9            PROBATION OFFICER:  No, Your Honor.

10           THE COURT:  I thank counsel for your cooperation.

11       Mr. Amolsch, I was upset with you because of receiving,

12   at 5 o'clock last night, these filings.  I still looked at them,

13   I still considered them, I still engaged them.  But I want to

14   remind you, because I hope and expect to see you here

15   frequently - you're a good lawyer - don't do it again.  Try

16   anything you can to avoid that.

17           MR. AMOLSCH:  Yes, sir, I understand.

18           THE COURT:  And ask yourself, how would you feel if you

19   got inundated with that stuff, in the midst of a trial, for an

20   8 o'clock sentencing the next day, when it appears to me - and I

21   know you have views to the contrary - that it could have been

22   done by much earlier, especially given that you have eight or

23   nine lawyers on this case.

24           MR. AMOLSCH:  I understand, Your Honor.  Thank you.

25           THE COURT:  All right.  But I did want to say that what

1    you did was helpful to the Court.  You as well, Mr. Clayman.

2    And I appreciate it.  And Ms. Ginsberg, you've been in this case

3    for a lot longer --

4              MS. GINSBERG:  Yes, sir.

5              THE COURT:  -- and as always, I appreciate your

6    contributions.

7              MS. GINSBERG:  Thank you, Your Honor.

8              THE COURT:  Mr. Sanders, good luck to you.  And if

9    nothing else, you should remember two things.  You write the

10   pages of your own life story by the decisions you make.  You're

11   an intelligent, very smart young man.  You are young.  You have

12   a lot of life left open to you.  You need to be careful and

13   thoughtful about the decisions you make.

14             And the second thing you should take away is, don't do

15   anything sexually with anyone even close to the age of consent.

16   Do you understand?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  It's not permitted.  And I do think I

19   understand a lot about you.  Not everything, but I do think that

20   I understand a good deal about the facts of this case.  Good

21   luck to you, Mr. Sanders.

22             THE DEFENDANT:  Thank you.

23             THE COURT:  You don't need luck, you just need to pay

24   attention to what you do in your life.  And I hope, to the

25   extent that it's possible - and it isn't possible, to a large

 1    extent - that you make good use of your time.  And I think you

 2    do have the ability to do that.  Because as I said many times,

 3    you're a smart young man, in contrast to many of the defendants

 4    I see who are limited intellectually.  It doesn't mean you don't

 5    have problems.  We all do.  Recognize them.  Insight into why

 6    you do things is very important.  I don't have perfect insight

 7    as to why I do things, but I can assure you, I think a lot about

 8    them.  You should too.

 9            Court stands in recess.  It will be a 5-minute recess

10    and we'll go on with the trial.

11            (Off the record at 10:56 a.m.)

12

13

14

15            **CERTIFICATE OF OFFICIAL COURT REPORTER**

16

17        **I, Rebecca Stonestreet, certify that the foregoing is a**

18    **correct transcript from the record of proceedings in the**

19    **above-entitled matter.**

20

21

22

23    **___//Rebecca Stonestreet//___          _____**

24    **SIGNATURE OF COURT REPORTER                    DATE**

25

**$**

**$100** [8] - 71:8, 71:12,
72:22, 74:14, 77:12,
79:18, 96:16, 97:23
**$3,000** [3] - 22:25,
79:13, 82:17
**$5,000** [6] - 72:23,
77:14, 78:1, 91:15,
93:24, 94:9, 95:19,
97:24
**$50,000** [2] - 97:16,
97:21
**$500** [2] - 71:10, 71:13
**$60** [1] - 95:20
**$60,000** [4] - 91:25,
98:2, 98:3, 98:10
**$600** [1] - 71:9

**/**

**//Rebecca** [1] - 102:23

**1**

**1** [11] - 1:5, 1:24,
14:20, 34:3, 34:20,
38:19, 53:8, 70:19,
71:13, 72:18, 74:10
**10** [4] - 63:16, 74:6,
76:9, 90:22
**10-year** [1] - 75:23
**100** [3] - 23:12, 32:19,
70:1
**109** [2] - 24:21, 33:7
**10:56** [1] - 102:11
**11** [1] - 74:6
**1101** [1] - 1:19
**12** [6] - 74:4, 74:15,
75:21, 91:18, 93:2,
94:1
**120** [1] - 24:19
**12005** [1] - 1:15
**13** [1] - 62:2
**13-year-old** [1] - 52:16
**130** [1] - 17:8
**14** [1] - 11:7
**14-year-old** [2] -
46:20, 52:16
**15** [17] - 6:11, 11:14,
16:14, 52:21, 56:1,
56:8, 56:9, 57:1,
57:4, 57:6, 57:21,
58:22, 60:6, 69:16,
73:24, 92:13
**15-year** [1] - 61:22
**15-year-old** [2] -
55:25, 56:2
**16** [1] - 55:2
**17** [2] - 62:3, 71:2
**18** [11] - 21:18, 22:18,

48:20, 51:10, 70:24,
71:3, 72:21, 73:23,
73:24, 99:11
**18-year** [1] - 93:1
**180** [1] - 56:1
**182** [1] - 56:5
**186** [1] - 56:2
**19** [1] - 57:6
**19-year** [1] - 54:19

**2**

**2** [5] - 13:13, 25:10,
34:4, 34:20, 70:20
**20** [5] - 69:18, 69:20,
74:7, 75:22, 92:14
**20-CR-00143-TSE** [1]
- 1:4
**200** [1] - 1:16
**2014** [1] - 30:10
**2017** [1] - 55:24
**20191** [1] - 1:16
**2020-CR-143** [1] - 2:4
**2022** [1] - 1:5
**20s** [2] - 44:16, 57:2
**2100** [1] - 1:12
**216** [10] - 70:20,
70:21, 70:22, 70:23,
71:7, 74:8, 74:12,
74:20
**22** [3] - 7:10, 11:20,
43:16
**22314** [3] - 1:13, 1:20,
1:23
**2259(a** [1] - 97:15
**2259(a)** [1] - 91:8
**228** [1] - 54:19
**23** [1] - 12:4
**24** [3] - 12:12, 43:17,
61:24
**24-year-old** [1] - 44:8
**240** [1] - 1:23
**2B1.1** [1] - 32:5
**2B2** [1] - 31:21
**2G1.1(b)6(b** [1] -
32:20
**2G2** [1] - 33:10
**2G2.1(b)(4)(a** [3] -
33:22, 34:8, 34:24
**2G2.2(b)(5)** [2] -
24:24, 33:10

**3**

**3** [4] - 25:11, 34:4,
34:20, 70:20
**3,000** [4] - 79:2, 79:4,
79:6, 79:7
**3,480** [1] - 24:16
**30** [2] - 69:16, 84:11
**300-month** [1] - 44:10

**301** [1] - 90:13
**3013** [2] - 72:21, 72:22
**3014** [8] - 72:21,
72:23, 74:2, 77:14,
80:4, 91:8, 91:18,
97:24
**32** [1] - 22:17
**35** [1] - 63:8

**4**

**4** [3] - 70:21, 78:14,
79:1
**40** [1] - 43:22
**40-year** [1] - 44:15
**401** [1] - 1:22
**41** [1] - 13:1
**42** [2] - 13:12, 13:22
**426-7767** [1] - 1:23
**43** [3] - 16:3, 23:17,
37:10
**44** [1] - 13:18
**45** [2] - 14:4, 14:19
**46** [1] - 25:6
**49** [1] - 13:18
**4B1.5** [1] - 25:16
**4b1.5(b)(1** [2] - 25:9,
33:8
**4B1.5(b)(1)** [1] - 24:23

**5**

**5** [17] - 3:16, 7:2, 7:11,
7:20, 8:6, 11:3,
12:14, 12:20, 34:4,
34:20, 70:21, 70:22,
71:13, 72:18, 100:12
**5,000** [5] - 91:18,
91:21, 92:20, 92:23,
94:18
**5-minute** [1] - 102:9
**5-year** [1] - 74:22
**50** [1] - 51:9
**50-year** [2] - 43:22,
44:1
**51** [1] - 14:19
**55** [3] - 14:24, 15:4,
15:9
**557** [1] - 89:4
**57** [2] - 20:10, 20:24
**5:00** [1] - 6:8

**6**

**6** [7] - 15:10, 15:24,
70:21, 74:4, 74:6,
74:10, 74:15
**60** [3] - 22:12, 79:17,
96:16
**60,000** [3] - 91:21,
91:22, 94:1

**610** [1] - 1:19
**62** [1] - 22:13
**65** [1] - 57:3
**662** [1] - 90:13
**673** [1] - 89:5

**7**

**7** [1] - 74:6
**703-299-3700** [1] -
1:13
**703-684-4333** [1] -
1:20
**703-969-2214** [1] -
1:17
**71** [2] - 23:12, 32:19
**79** [2] - 23:12, 32:19

**8**

**8** [6] - 7:2, 20:10,
20:24, 22:20, 74:6,
100:20
**80** [2] - 57:2, 67:15
**86** [2] - 23:12, 32:19
**8:10** [1] - 1:5

**9**

**9** [1] - 74:6
**93** [2] - 23:12, 32:19
**9:35** [1] - 63:17
**9th** [1] - 1:22

**A**

**a.m** [3] - 1:5, 63:17,
102:11
**abiding** [3] - 71:19,
74:24, 75:4
**abilities** [1] - 72:5
**ability** [8] - 65:11,
77:6, 77:15, 77:16,
93:4, 94:7, 95:25,
102:2
**able** [13] - 10:25,
18:13, 18:15, 19:1,
57:19, 59:13, 72:25,
89:15, 91:25, 92:18,
94:17, 99:25
**above-entitled** [1] -
102:19
**abuse** [8] - 30:18,
42:15, 42:19, 45:1,
49:23, 53:7, 62:5,
66:7
**abused** [2] - 30:17,
78:18
**accept** [1] - 53:24
**access** [2] - 99:5, 99:9
**accommodated** [1] -
11:15

**accomplish** [1] -
37:13
**according** [2] - 33:25,
53:1
**account** [11] - 41:21,
51:15, 64:14, 64:18,
64:25, 68:8, 69:3,
69:24, 70:7, 70:10,
99:24
**accurate** [2] - 5:20,
37:16
**accurately** [1] - 13:19
**acknowledge** [2] -
42:24, 57:18
**acknowledged** [1] -
12:23
**acknowledgement** [2]
- 41:22, 45:9
**acknowledges** [1] -
50:9
**act** [3] - 10:7, 47:24,
68:19
**Act** [1] - 25:4
**acted** [1] - 51:11
**actions** [2] - 47:9,
57:6
**actively** [1] - 51:12,
62:22
**activities** [5] - 30:11,
31:4, 48:9, 56:11,
66:5
**activity** [8] - 29:12,
38:5, 46:18, 48:12,
55:7, 62:23, 66:12,
67:9
**Acts** [1] - 33:14
**acts** [8] - 42:12, 46:8,
46:11, 46:14, 46:24,
47:25, 48:3, 55:15
**actual** [4] - 28:12,
47:22, 52:17, 55:21
**ADAA** [1] - 97:15
**ADC** [5] - 9:19, 59:6,
59:11, 83:22, 84:10
**add** [4] - 12:12, 14:18,
15:17, 21:17
**added** [5] - 15:1, 15:3,
18:6, 25:10, 33:12
**addition** [4] - 21:20,
25:13, 26:14, 84:16
**additional** [4] - 4:13,
20:4, 22:1, 99:22
**additions** [3] - 22:1,
36:23, 37:16
**additive** [1] - 25:13
**address** [12] - 10:19,
22:10, 23:10, 27:7,
28:3, 30:25, 32:14,
32:17, 60:9, 90:8,
99:7, 99:23

**addressed** [8] - 20:9,
25:2, 25:3, 32:12,
33:7, 33:11, 97:15,
97:18
**addresses** [1] - 33:15
**addressing** [2] - 13:5,
80:8
**adequate** [3] - 17:11,
17:25, 32:25
**adjust** [1] - 75:4
**administer** [1] - 16:17
**administration** [1] -
84:11
**admission** [1] - 45:9
**admonition** [1] - 86:24
**adopt** [1] - 19:16
**adopted** [2] - 36:22,
36:24
**ads** [1] - 42:3
**adult** [6] - 48:19,
48:24, 57:17, 99:14,
99:15
**adult-oriented** [3] -
48:19, 48:24, 57:17
**adults** [4] - 28:13,
56:19, 67:9, 95:13
**advice** [2] - 19:3, 60:1
**advised** [3] - 59:17,
59:21, 60:17
**advocacy** [1] - 27:12
**affected** [2] - 7:4,
41:14
**affidavit** [5] - 35:10,
35:20, 35:24, 36:6,
36:13
**affidavits** [1] - 20:18
**afford** [3] - 72:25,
78:5, 92:18
**afraid** [1] - 40:17
**age** [8] - 30:22, 48:25,
49:3, 66:20, 73:10,
92:3, 94:12, 101:15
**agency** [1] - 13:24
**agents** [1] - 20:18
**ages** [2] - 49:8, 55:3
**aggravating** [2] -
44:24, 62:3
**ago** [5] - 4:5, 4:7,
62:25, 67:16, 83:2
**agree** [4] - 6:19, 6:21,
56:5, 56:6
**agreed** [1] - 59:5
**agreement** [2] - 78:21,
78:23
**ahead** [4] - 21:9, 41:8,
59:10, 92:13
**Alexandria** [10] - 1:2,
1:13, 1:20, 1:23,
16:24, 57:22, 59:5,
80:12, 81:2, 82:12

**alike** [1] - 70:13
**allegation** [1] - 51:11
**allegations** [1] - 12:5
**allocuted** [1] - 67:8
**allocutes** [1] - 59:21
**allow** [3] - 2:19, 9:19,
99:5
**allowed** [1] - 38:7
**allowing** [1] - 99:9
**alluded** [1] - 68:15
**almost** [1] - 67:15
**altogether** [1] - 52:21
**amazingly** [1] - 93:13
**amended** [12] - 3:22,
4:13, 4:16, 4:19,
9:25, 10:1, 10:4,
11:15, 11:17, 15:1,
17:12, 18:1
**Amendment** [1] -
66:15
**amendments** [2] -
21:6, 21:10
**America** [1] - 2:3
**AMERICA** [1] - 1:3
**Amolsch** [48] - 2:12,
2:20, 6:4, 6:15, 15:5,
17:11, 18:24, 19:5,
19:24, 20:9, 23:3,
23:25, 26:15, 27:8,
30:25, 31:21, 31:25,
35:1, 35:21, 36:7,
36:12, 36:16, 36:19,
37:7, 37:17, 38:23,
45:21, 60:23, 60:25,
63:21, 65:5, 66:14,
67:18, 70:2, 73:14,
76:13, 78:22, 80:19,
81:4, 82:23, 86:15,
90:23, 92:24, 94:3,
94:19, 96:8, 97:7,
100:11
**AMOLSCH** [213] -
1:14, 1:15, 2:11,
2:21, 2:25, 3:4, 3:9,
3:11, 3:15, 3:18,
3:21, 4:2, 4:5, 4:8,
4:10, 4:16, 4:20,
4:23, 5:1, 5:4, 5:6,
5:12, 5:17, 6:7, 6:9,
6:13, 6:16, 6:19,
6:21, 6:24, 7:6, 7:15,
7:18, 7:21, 8:1, 8:4,
8:9, 8:11, 9:2, 9:9,
9:14, 9:18, 9:24,
10:5, 10:10, 10:12,
10:14, 10:18, 10:21,
10:23, 11:4, 11:9,
11:13, 11:16, 11:19,
11:22, 12:3, 12:11,
12:15, 12:21, 13:4,

13:8, 13:11, 13:20,
14:8, 14:13, 14:17,
14:25, 15:7, 16:8,
16:13, 16:16, 16:22,
16:25, 17:6, 17:9,
17:15, 19:23, 20:2,
22:6, 22:9, 23:7,
23:11, 23:23, 24:2,
25:19, 26:4, 26:8,
26:22, 26:24, 27:13,
27:16, 27:20, 27:25,
28:5, 28:10, 28:15,
28:24, 29:4, 29:9,
29:14, 29:18, 29:24,
30:2, 31:5, 31:10,
31:15, 31:22, 32:1,
32:6, 33:20, 35:2,
35:23, 36:17, 36:20,
37:5, 37:8, 38:24,
45:23, 46:12, 47:3,
47:18, 48:13, 50:14,
50:17, 51:4, 51:6,
52:3, 52:11, 52:14,
53:16, 53:19, 53:25,
54:10, 54:15, 54:18,
54:21, 54:25, 55:3,
55:6, 55:11, 57:24,
58:6, 58:19, 59:23,
59:25, 60:6, 60:24,
61:2, 61:10, 61:12,
61:17, 62:19, 63:1,
63:4, 63:10, 63:14,
63:22, 65:7, 65:14,
65:16, 67:19, 70:3,
70:25, 73:16, 73:22,
75:17, 75:20, 76:1,
76:15, 78:23, 81:9,
81:12, 82:3, 82:16,
82:20, 82:24, 83:4,
83:12, 83:18, 84:5,
84:8, 84:10, 84:16,
84:24, 85:2, 85:20,
85:22, 86:4, 86:10,
86:13, 86:18, 86:23,
87:2, 90:24, 91:4,
92:25, 93:12, 93:17,
94:5, 94:22, 95:7,
95:16, 95:22, 96:3,
96:11, 97:3, 97:5,
97:8, 98:2, 100:6,
100:17, 100:24
**Amolsch's** [2] - 20:25,
60:21
**amount** [8] - 22:23,
28:17, 30:5, 59:9,
79:4, 79:19, 94:8,
96:17
**amounts** [2] - 80:3,
96:10
**analysis** [3] - 25:7,
50:5, 89:7

**Andy** [1] - 78:14
**angry** [1] - 39:25
**Annie** [1] - 2:7
**ANNIE** [1] - 1:11
**answer** [6] - 24:9,
24:10, 50:15, 85:23,
86:21, 87:3
**anxiety** [2] - 39:23,
39:25
**apologize** [5] - 22:10,
32:1, 52:3, 71:2,
94:5
**apparent** [1] - 99:22
**appeal** [3] - 60:1,
90:20, 90:25
**appealing** [1] - 42:13
**Appeals** [1] - 68:23
**appeals** [1] - 59:16
**appear** [1] - 78:19
**APPEARANCES** [1] -
1:9
**appearances** [1] - 2:4
**appeared** [2] - 2:18,
14:10
**Appendix** [2] - 89:4,
89:5
**applicable** [1] - 33:10
**application** [4] -
24:22, 25:15, 32:10,
34:8
**applications** [1] -
83:18
**applied** [1] - 32:20
**applies** [1] - 16:10
**appointed** [2] - 4:1,
4:2
**appreciate** [7] - 14:9,
15:5, 83:20, 84:13,
84:24, 101:2, 101:5
**appreciated** [1] -
83:24
**appropriate** [19] -
9:14, 16:1, 16:12,
27:7, 33:19, 37:2,
37:13, 38:13, 45:13,
64:7, 64:19, 67:24,
70:14, 79:5, 81:22,
81:23, 81:24, 82:10,
93:9
**appropriately** [1] -
66:17
**approval** [2] - 99:5,
99:6
**approved** [1] - 98:24
**April** [1] - 1:5
**argue** [4] - 28:22,
44:23, 67:24, 70:12
**argued** [2] - 62:6,
67:11, 69:6
**argues** [1] - 24:4

**argument** [16] - 13:18,
23:25, 25:20, 25:21,
32:15, 32:16, 33:15,
37:2, 38:15, 50:19,
60:21, 61:8, 65:3,
89:19, 90:1, 95:8
**arguments** [1] - 20:4
**arranged** [1] - 83:22
**arrangement** [1] -
73:20
**arrangements** [1] -
9:20
**art** [1] - 49:9
**ashamed** [1] - 39:14
**aside** [1] - 51:21
**aspect** [2] - 8:15,
28:16
**aspects** [2] - 28:11,
32:5
**assess** [1] - 78:1
**assessment** [24] -
28:7, 64:10, 69:14,
71:8, 71:12, 72:20,
72:23, 72:24, 73:2,
74:2, 74:14, 77:12,
77:13, 78:1, 80:3,
91:16, 92:15, 92:20,
95:25, 97:15, 97:16,
97:24, 98:4
**assessments** [6] -
71:14, 72:19, 77:11,
77:23, 91:8, 92:19
**asset** [1] - 73:14
**assets** [1] - 36:1
**assign** [1] - 50:4
**associate** [2] - 49:20,
51:18
**associated** [1] - 46:18
**assume** [2] - 17:10,
57:19
**assure** [1] - 102:7
**assured** [2] - 7:3,
99:20
**attach** [1] - 25:25
**attached** [1] - 26:11
**attempts** [1] - 69:23
**attention** [7] - 11:6,
25:3, 43:11, 70:12,
89:9, 93:10, 101:24
**attorney** [3] - 9:22,
18:2, 18:10
**Attorney's** [1] - 20:16
**ATTORNEY'S** [1] -
1:12
**attorneys** [3] - 8:14,
18:11, 60:17
**AUSA** [4] - 1:10, 1:10,
1:11, 1:11
**authority** [2] - 49:23,
90:14

**autism** [1] - 50:19
**automobile** [1] - 92:7
**Avenue** [1] - 1:12
**average** [2] - 29:25, 30:1
**avoid** [2] - 44:22, 100:16
**awards** [2] - 26:2, 56:13
**aware** [5] - 46:15, 80:18, 80:19, 89:2, 91:13
**awful** [2] - 78:20

## B

**backed** [2] - 48:21, 57:18
**background** [5] - 20:21, 53:4, 65:1, 73:9, 92:3
**bad** [1] - 72:16
**based** [9] - 5:10, 43:5, 63:11, 73:7, 77:16, 79:4, 95:23, 95:24, 98:11
**Based** [1] - 73:12
**Battle** [6] - 61:1, 61:7, 61:13, 61:23, 65:4, 66:14
**battle** [1] - 61:3
**BDSM** [20] - 8:15, 8:16, 8:17, 8:23, 14:5, 14:6, 14:11, 14:15, 28:21, 29:5, 31:4, 34:16, 34:19, 38:3, 38:5, 48:4, 49:5, 66:4, 66:5, 67:25
**beacon** [2] - 64:24, 68:7
**beating** [2] - 48:8, 48:13
**becomes** [4] - 46:20, 46:21, 93:21, 99:22
**becoming** [2] - 39:10, 62:1
**BEFORE** [1] - 1:7
**beg** [2] - 70:15, 97:4
**began** [1] - 53:7
**begin** [3] - 15:2, 79:16, 96:15
**beginning** [1] - 15:8
**behalf** [4] - 8:14, 27:9, 85:4, 90:2
**behavior** [15] - 7:5, 8:23, 14:11, 14:12, 14:15, 22:3, 23:5, 25:22, 28:12, 46:8, 48:23, 49:18, 50:10,

55:14
**belabor** [1] - 8:15
**believes** [1] - 82:10
**below** [1] - 49:8
**belt** [1] - 7:13
**Benadryl** [1] - 59:10
**beneath** [1] - 66:20
**benefit** [1] - 9:3
**benefitted** [1] - 72:15
**benign** [1] - 27:10
**Berlin** [6] - 26:21, 27:16, 27:17, 49:25, 50:1
**best** [2] - 93:14, 94:19
**better** [4] - 21:9, 77:6, 77:7, 77:8
**between** [7] - 17:22, 29:5, 32:5, 43:21, 52:17, 55:7, 68:10
**beyond** [3] - 33:19, 70:1, 74:13
**Bill** [1] - 2:6
**birth** [1] - 72:4
**bit** [3] - 20:9, 38:7, 86:3
**blackmailed** [1] - 14:20
**blame** [2] - 41:24, 45:10
**blanks** [1] - 96:10
**blood** [1] - 17:21
**blow** [1] - 56:22
**boards** [2] - 57:14, 99:16
**body** [1] - 43:20
**boom** [1] - 76:3
**BOP** [5] - 5:9, 5:19, 9:3, 9:8, 12:2, 12:6, 16:17, 16:21, 59:7, 59:13, 81:13, 81:21, 82:11, 82:12, 83:6
**born** [3] - 72:1, 72:2
**bothered** [1] - 8:10
**bounces** [1] - 59:12
**bound** [1] - 52:23
**boys** [7] - 30:17, 42:3, 49:2, 49:3, 49:5, 49:8
**breast** [1] - 57:3
**brief** [4] - 61:8, 85:16, 89:16, 89:17
**briefly** [4] - 5:21, 18:14, 60:15, 81:9
**briefs** [1] - 89:21
**bring** [3] - 9:10, 83:4, 93:10
**brought** [2] - 11:5, 56:4
**BRYAN** [1] - 1:14
**bulk** [4] - 28:25, 30:6,

31:2, 31:7
**bulletin** [2] - 57:14, 99:16
**burden** [3] - 87:23, 93:19, 93:21
**Bureau** [10] - 7:24, 37:18, 37:20, 38:2, 70:18, 80:6, 80:18, 80:21, 80:25, 97:2
**business** [7] - 28:13, 50:25, 51:8, 65:18, 92:17, 93:15, 95:14
**Butner** [3] - 59:1, 81:19, 82:10
**button** [1] - 76:3

## C

**cabined** [2] - 63:8, 70:9
**cacophony** [1] - 83:2
**cage** [3] - 7:11, 8:5, 11:21
**calculating** [1] - 32:23
**calculation** [3] - 16:11, 23:16, 23:20
**can..** [1] - 61:5
**cancer** [1] - 57:3
**candidate** [2] - 27:22, 57:12
**candy** [1] - 93:17
**cannot** [2] - 40:16, 80:23
**capable** [2] - 72:5, 80:8
**capacity** [2] - 94:23, 98:12
**captain** [1] - 18:7
**car** [1] - 73:15
**care** [9] - 7:13, 8:21, 22:12, 23:1, 28:12, 67:2, 67:3, 95:13, 95:14
**careful** [2] - 6:23, 101:12
**carefully** [2] - 4:25, 28:7
**case** [100] - 2:2, 2:18, 7:5, 8:14, 8:15, 9:23, 14:6, 14:11, 16:2, 19:4, 20:18, 23:2, 23:5, 23:17, 24:1, 24:5, 24:9, 24:14, 29:14, 29:15, 30:1, 33:18, 33:19, 34:16, 37:13, 38:3, 38:6, 38:14, 41:16, 42:21, 44:1, 44:4, 44:14, 46:2, 46:5, 46:6, 46:17, 46:21, 46:22, 47:19, 47:20, 48:1,

48:15, 49:17, 52:10, 52:15, 52:18, 53:1, 53:7, 53:10, 53:14, 54:11, 54:18, 54:22, 56:3, 56:8, 58:20, 60:7, 60:19, 61:7, 61:9, 61:13, 61:14, 61:22, 61:23, 62:10, 62:15, 65:4, 65:8, 65:9, 65:10, 65:13, 65:24, 66:14, 67:19, 68:12, 68:14, 68:25, 69:1, 69:5, 70:5, 70:8, 70:17, 73:7, 73:8, 74:3, 78:5, 88:2, 88:12, 89:4, 89:13, 90:11, 90:12, 90:21, 100:23, 101:2, 101:20
**Case** [2] - 1:3, 2:3
**cases** [34] - 21:22, 29:23, 43:6, 43:11, 43:19, 43:21, 44:6, 44:25, 47:20, 47:23, 55:20, 56:5, 61:19, 61:24, 61:25, 62:4, 62:10, 62:20, 62:21, 62:24, 63:23, 65:9, 69:14, 70:12, 70:13, 70:14, 70:15, 79:10, 88:18, 89:2, 89:7, 89:10, 95:9, 98:20
**cash** [1] - 36:13
**caught** [1] - 45:19
**causal** [1] - 22:24
**causes** [1] - 40:15
**cell** [1] - 40:17
**Center** [6] - 16:24, 22:16, 57:22, 59:5, 81:2, 82:13
**certain** [14] - 5:10, 5:19, 17:3, 22:2, 23:21, 24:19, 35:4, 55:1, 59:9, 69:24, 76:25, 77:13, 80:13, 82:14
**certainly** [4] - 31:17, 38:5, 56:16, 59:20
**CERTIFICATE** [1] - 102:15
**certify** [1] - 102:17
**chambers** [1] - 96:12
**chance** [1] - 89:10
**change** [5] - 5:16, 6:11, 12:18, 17:7, 61:12
**changed** [2] - 5:15, 16:15
**changes** [7] - 13:1, 19:19, 21:5, 22:1,

22:13, 58:15
**Chapters** [1] - 25:10
**character** [1] - 20:22
**characteristics** [4] - 41:20, 64:8, 64:13, 64:18
**characterization** [1] - 11:6
**characterized** [1] - 13:19
**charge** [3] - 40:22, 46:15, 69:19
**charged** [1] - 38:4
**charges** [3] - 29:11, 66:22, 66:23
**charity** [1] - 56:12
**chase** [1] - 88:10
**chastity** [4] - 7:10, 7:13, 8:5, 11:21
**chats** [1] - 13:19
**check** [2] - 15:16, 44:7
**Chief** [1] - 9:21
**child** [36] - 21:14, 21:17, 22:18, 28:16, 29:6, 29:23, 30:1, 30:13, 33:23, 34:3, 42:15, 42:16, 46:7, 46:12, 46:21, 47:9, 47:11, 47:15, 47:17, 47:20, 47:23, 49:16, 51:18, 52:6, 52:18, 64:2, 64:3, 64:5, 66:16, 78:13, 78:19, 91:19, 93:3, 93:15, 99:11
**children** [5] - 40:24, 66:18, 67:9, 67:10, 95:12
**Children** [1] - 22:17
**choices** [4] - 71:23, 71:24, 77:2, 77:6
**choked** [1] - 12:13
**chose** [1] - 34:4
**CHRISTOPHER** [2] - 1:14, 1:15
**Christopher** [1] - 2:12
**chunk** [1] - 94:2
**circuit** [1] - 89:13
**Circuit** [7] - 66:13, 66:17, 88:11, 88:12, 88:25, 89:13, 90:6
**circumstances** [6] - 23:21, 43:23, 64:16, 93:5, 96:18, 99:24
**cite** [1] - 90:12
**cited** [15] - 43:6, 43:19, 43:20, 44:1, 44:8, 46:5, 61:13, 61:23, 61:24, 62:4, 62:10, 62:21, 65:9,

65:21, 66:14
**cites** [1] - 7:21
**claim** [1] - 66:15
**claimed** [1] - 78:25
**claims** [1] - 79:10
**clarify** [1] - 91:7
**classification** [1] - 9:5
**Clayman** [37] - 2:6, 5:23, 24:5, 24:14, 27:1, 30:7, 32:8, 38:12, 41:6, 41:8, 43:10, 60:21, 61:15, 63:19, 69:8, 70:2, 70:24, 72:20, 77:15, 77:19, 78:8, 78:25, 88:18, 89:18, 89:24, 90:3, 91:5, 91:11, 91:16, 92:9, 93:24, 95:3, 96:5, 96:12, 96:23, 97:19, 101:1
**CLAYMAN** [67] - 1:10, 2:6, 5:24, 6:3, 19:15, 24:6, 24:11, 24:16, 24:19, 27:2, 30:9, 30:13, 30:16, 30:22, 32:9, 32:16, 38:15, 38:19, 41:7, 41:9, 43:14, 43:17, 43:19, 44:5, 44:12, 44:18, 44:23, 45:5, 61:20, 62:16, 63:20, 69:9, 71:2, 72:22, 73:1, 73:6, 73:12, 77:20, 78:12, 79:1, 79:8, 79:12, 85:6, 85:8, 90:6, 90:12, 91:6, 91:13, 91:18, 91:21, 92:1, 92:10, 92:16, 92:21, 92:23, 94:1, 94:9, 95:4, 96:6, 96:9, 96:19, 96:21, 96:24, 97:20, 98:1, 98:5, 100:5
**clear** [14] - 12:18, 19:10, 20:20, 23:15, 23:19, 42:17, 45:24, 66:25, 67:5, 67:6, 68:4, 73:8, 73:9, 89:22
**clearly** [6] - 4:18, 25:13, 67:1, 77:6, 77:8, 85:13
**clerk** [3] - 3:1, 3:13, 91:2
**CLERK** [1] - 2:2
**clicked** [1] - 68:20
**client** [5] - 17:11, 76:14, 84:1, 84:2, 94:20
**close** [4] - 61:14, 65:5,

65:8, 101:15
**coerce** [1] - 33:3
**coerced** [1] - 11:25
**coercion** [3] - 49:19, 49:23, 51:17
**collected** [4] - 28:18, 75:25, 76:4, 76:6
**comfortable** [1] - 63:3
**command** [1] - 77:1
**comment** [1] - 65:4
**Commercial** [2] - 25:4, 33:14
**Commission** [3] - 25:6, 25:8, 69:22
**commit** [2] - 64:17, 75:6
**Commitment** [1] - 59:3
**committed** [7] - 43:2, 46:14, 46:25, 48:3, 70:9, 70:18, 97:1
**committing** [2] - 55:16, 64:22
**common** [1] - 62:1
**communicate** [1] - 42:4
**communicated** [1] - 42:6
**community** [5] - 29:6, 49:4, 49:5, 56:12, 57:14
**competent** [1] - 80:8, 99:13, 99:14
**complete** [3] - 23:19, 50:1, 76:17
**completed** [4] - 13:23, 35:19, 50:4, 50:20
**completely** [1] - 3:20
**computer** [8] - 23:14, 28:19, 31:18, 32:16, 32:21, 33:2, 54:5
**COMPUTERIZED** [1] - 1:25
**computers** [2] - 87:9, 99:9
**concern** [4] - 5:19, 9:2, 43:1, 98:6
**concerned** [1] - 37:17
**concerning** [1] - 20:21
**conclude** [2] - 32:25, 50:13
**concluded** [6] - 34:23, 50:2, 50:3, 50:14, 57:11, 68:21
**conclusions** [4] - 19:17, 27:20, 36:24, 37:1
**concurrent** [4] - 71:8, 74:9, 74:18
**concurrently** [3] -

70:23, 74:22, 75:24
**condition** [6] - 59:14, 80:5, 80:23, 81:7, 84:9, 98:16
**conditions** [6] - 74:25, 76:12, 76:16, 98:20, 98:22, 99:22
**conduct** [21] - 8:19, 20:22, 24:23, 27:10, 33:4, 33:5, 33:9, 33:24, 34:1, 34:4, 34:9, 34:24, 42:8, 42:10, 44:17, 45:20, 53:7, 62:8, 64:25, 66:7, 85:15
**conferred** [2] - 18:24, 96:12
**confinement** [3] - 79:17, 95:1, 96:17
**confirm** [6] - 7:19, 17:24, 18:22, 62:13, 96:24, 98:15
**confirming** [1] - 48:19
**Congress** [3] - 69:13, 69:21, 74:5
**conjunction** [1] - 25:16
**consecutive** [3] - 40:23, 74:12, 74:18
**consecutively** [1] - 70:23
**consent** [13] - 34:2, 45:25, 48:9, 48:12, 48:13, 49:15, 49:16, 49:17, 57:9, 58:20, 66:21, 67:12, 101:15
**consented** [1] - 67:11
**consequence** [1] - 51:1
**consequences** [4] - 45:20, 71:24, 72:17, 77:3
**consider** [9] - 20:20, 57:5, 64:6, 71:21, 73:9, 81:19, 82:17, 89:25, 92:12
**consideration** [3] - 59:2, 83:21, 84:13
**considerations** [1] - 45:6
**considered** [3] - 34:1, 34:6, 100:13
**considering** [1] - 92:2
**consistent** [5] - 24:7, 41:17, 43:8, 50:3, 55:18
**consistently** [2] - 11:24, 74:24
**constitute** [1] - 68:22
**constitutional** [1] -

58:13
**constraints** [1] - 86:5
**contact** [2] - 40:2, 99:13
**contacted** [3] - 18:3, 18:11
**contained** [2] - 20:11, 20:15
**contents** [1] - 18:25
**context** [4] - 14:11, 49:4, 49:5, 56:24
**continue** [2] - 42:25, 71:7, 77:24
**continued** [2] - 39:20, 42:4
**continues** [1] - 41:24
**continuity** [1] - 82:14
**contradicted** [1] - 20:14
**contrary** [5] - 59:18, 62:5, 62:9, 89:14, 100:21
**contrast** [2] - 65:17, 102:3
**contravene** [1] - 44:21
**contributions** [1] - 101:6
**contrition** [1] - 42:24
**control** [4] - 9:11, 40:13, 59:11, 83:6
**convicted** [2] - 38:4, 64:1
**conviction** [4] - 51:2, 53:2, 90:20, 92:21
**Conviction** [1] - 17:5
**convictions** [5] - 93:2, 93:19, 95:9, 99:15, 99:25
**convinced** [1] - 94:20
**cooperation** [1] - 100:10
**copies** [1] - 87:8
**copy** [4] - 18:16, 18:17, 96:6
**core** [1] - 34:18
**correct** [35] - 6:3, 13:21, 14:1, 14:2, 17:23, 20:1, 20:2, 21:4, 25:8, 26:4, 36:3, 43:13, 62:18, 68:22, 70:2, 70:3, 71:1, 71:11, 73:22, 79:12, 85:8, 85:24, 86:6, 87:7, 87:13, 90:3, 90:18, 91:9, 91:13, 93:1, 95:4, 97:20, 97:25, 100:8, 102:18
**corrected** [1] - 5:20
**correction** [2] - 21:15,

32:6
**corrections** [2] - 19:13, 21:1
**correctly** [5] - 32:24, 34:23, 77:15, 77:18, 83:14
**counsel** [10] - 19:4, 32:19, 33:25, 53:13, 65:3, 65:13, 66:8, 76:2, 79:20, 100:10
**counseling** [3] - 76:18, 76:24, 98:17
**Count** [9] - 70:19, 70:20, 70:21, 70:22, 71:13, 75:21
**count** [14] - 75:16, 75:18, 75:20, 76:10, 77:12, 80:2, 80:3, 91:21, 92:8, 92:21, 93:24, 95:20, 97:23
**counted** [2] - 25:18, 33:16
**counting** [3] - 24:25, 25:12, 32:15
**country** [1] - 43:20
**counts** [21] - 69:17, 71:9, 71:10, 71:11, 71:16, 74:8, 74:15, 74:17, 74:21, 76:11, 77:13, 78:13, 78:17, 91:17, 91:18, 93:25, 94:1, 97:23
**Counts** [6] - 71:13, 72:18, 74:4, 74:6, 74:10, 74:15
**couple** [4] - 9:24, 41:16, 73:3, 85:8
**course** [8] - 20:20, 38:20, 51:4, 68:19, 87:11, 99:20, 99:21
**Court** [47] - 1:22, 3:6, 7:7, 8:16, 8:20, 10:6, 14:25, 15:4, 15:7, 15:23, 20:4, 20:20, 22:22, 23:19, 26:19, 35:3, 37:11, 41:15, 41:21, 43:7, 45:6, 45:17, 45:24, 46:1, 46:3, 47:6, 49:2, 56:24, 58:17, 58:25, 59:25, 60:9, 60:10, 60:11, 62:12, 63:18, 68:23, 70:6, 70:7, 83:5, 84:13, 92:12, 93:5, 96:7, 97:16, 101:1
**COURT** [325] - 1:1, 1:21, 2:9, 2:14, 2:17, 2:22, 3:3, 3:7, 3:10, 3:12, 3:16, 3:19, 4:1,

4:4, 4:7, 4:9, 4:15, 4:18, 4:22, 4:24, 5:2, 5:5, 5:11, 5:15, 5:21, 6:1, 6:4, 6:8, 6:10, 6:14, 6:18, 6:20, 6:22, 6:25, 7:9, 7:17, 7:19, 7:24, 8:2, 8:5, 8:10, 8:12, 9:7, 9:13, 9:16, 9:22, 10:3, 10:9, 10:11, 10:13, 10:15, 10:19, 10:22, 11:1, 11:5, 11:10, 11:14, 11:17, 11:20, 11:23, 12:8, 12:12, 12:16, 13:1, 13:5, 13:9, 13:12, 13:17, 14:1, 14:3, 14:9, 14:14, 14:18, 14:22, 15:5, 15:9, 15:14, 15:17, 16:7, 16:9, 16:14, 16:19, 16:23, 17:1, 17:7, 17:10, 17:16, 17:19, 17:24, 18:20, 18:24, 19:3, 19:7, 19:11, 19:16, 19:24, 20:6, 21:8, 21:12, 21:19, 21:22, 21:25, 22:5, 22:7, 22:11, 23:10, 23:12, 23:24, 24:3, 24:8, 24:13, 24:18, 24:20, 25:20, 26:5, 26:9, 26:14, 26:23, 26:25, 27:4, 27:14, 27:17, 27:23, 28:3, 28:6, 28:11, 28:16, 29:3, 29:7, 29:12, 29:15, 29:23, 29:25, 30:7, 30:11, 30:15, 30:19, 30:24, 31:8, 31:13, 31:19, 31:25, 32:4, 32:8, 32:14, 32:18, 33:21, 35:12, 35:17, 35:21, 36:3, 36:15, 36:19, 36:21, 37:6, 37:9, 38:18, 38:20, 39:1, 39:5, 41:2, 41:5, 41:8, 43:10, 43:15, 43:18, 43:24, 44:7, 44:14, 44:19, 45:2, 45:21, 46:10, 47:1, 47:13, 48:12, 50:12, 50:16, 51:1, 51:5, 52:2, 52:9, 52:13, 53:15, 53:18, 53:23, 54:8, 54:13, 54:17, 54:20, 54:24, 55:2, 55:5, 55:8, 57:23, 58:5, 58:18, 59:20, 59:24, 60:5, 60:8, 60:16, 60:20,

60:25, 61:6, 61:11, 61:13, 62:13, 62:24, 63:2, 63:6, 63:12, 63:15, 63:18, 63:21, 63:24, 65:8, 65:15, 65:17, 67:7, 67:20, 69:10, 70:4, 71:4, 72:24, 73:3, 73:11, 73:14, 73:20, 73:23, 75:19, 75:21, 76:2, 76:16, 77:21, 78:15, 78:25, 79:6, 79:9, 79:13, 80:17, 81:11, 81:23, 82:4, 82:19, 82:22, 83:1, 83:9, 83:15, 83:25, 84:6, 84:9, 84:14, 84:18, 85:4, 85:7, 85:11, 85:21, 86:2, 86:8, 86:11, 86:14, 86:21, 87:1, 87:5, 87:11, 87:14, 88:10, 89:4, 89:9, 89:15, 90:11, 90:14, 90:19, 91:2, 91:5, 91:10, 91:15, 91:20, 91:23, 92:5, 92:13, 92:20, 92:22, 92:24, 93:9, 93:13, 93:18, 94:2, 94:7, 94:10, 94:23, 95:5, 95:8, 95:19, 95:23, 96:5, 96:8, 96:13, 96:20, 96:22, 97:1, 97:4, 97:6, 97:9, 97:13, 97:17, 97:19, 97:22, 98:3, 98:9, 98:18, 98:21, 98:23, 100:3, 100:7, 100:10, 100:18, 100:25, 101:5, 101:8, 101:18, 101:23, 102:15, 102:24
**court** [14] - 2:2, 11:2, 29:21, 39:22, 43:3, 46:23, 53:10, 55:20, 61:18, 63:15, 70:17, 80:10, 102:9
**Court's** [6] - 8:2, 12:22, 16:1, 36:25, 38:24, 86:24
**Courthouse** [1] - 1:22
**courtroom** [4] - 12:18, 39:12, 77:4, 78:16
**COURTROOM** [1] - 2:2
**cousin** [1] - 57:4
**cover** [2] - 25:22, 88:14
**covered** [6] - 10:4,

24:24, 33:9, 34:24, 85:2, 91:1
**covers** [1] - 25:22
**COVID** [1] - 58:1
**create** [1] - 44:9
**created** [1] - 53:3
**credit** [5] - 35:16, 35:19, 36:8, 36:11, 57:23
**crime** [9] - 8:18, 29:16, 40:23, 46:7, 46:12, 47:9, 47:11, 72:16
**crimes** [12] - 41:12, 41:23, 45:15, 45:25, 47:11, 53:9, 64:16, 64:22, 68:13, 70:9, 75:6, 91:19
**criminal** [18] - 2:2, 9:1, 14:16, 23:5, 46:18, 47:24, 52:19, 53:5, 56:14, 64:2, 64:25, 72:17, 77:9, 85:15, 86:17, 87:18, 87:20, 88:24
**Criminal** [1] - 1:3
**criminalize** [1] - 66:5
**criteria** [1] - 34:11
**CRR** [1] - 1:21
**culpability** [1] - 49:14
**cumulative** [4] - 25:15, 32:5, 33:11, 33:12
**custody** [6] - 70:18, 74:11, 74:19, 97:1, 97:2
**cut** [1] - 88:10

## D

**Dallas** [1] - 82:6
**damage** [1] - 84:21
**Daniels** [1] - 56:2
**data** [5] - 87:8, 88:5, 88:6, 88:8
**date** [1] - 99:3
**DATE** [1] - 102:24
**dating** [1] - 30:10
**days** [7] - 18:9, 18:12, 79:17, 84:11, 87:7, 90:22, 96:16
**deal** [11] - 8:18, 9:7, 10:23, 10:25, 64:8, 64:9, 64:10, 64:12, 77:22, 83:8, 101:20
**deals** [1] - 46:13
**dealt** [1] - 17:3
**debate** [1] - 88:24
**Debbie** [1] - 39:8
**decade** [1] - 94:13

**decades** [1] - 94:13
**deceived** [1] - 62:22
**decide** [3] - 13:6, 89:20, 92:14
**decided** [2] - 55:20, 90:5
**decision** [12] - 7:1, 7:12, 8:3, 11:8, 11:24, 16:2, 16:11, 32:23, 33:18, 72:16, 72:17
**decisions** [10] - 5:8, 5:10, 66:19, 72:9, 72:12, 72:14, 88:14, 88:15, 101:10, 101:13
**decreased** [3] - 79:21, 79:25, 96:17
**deeply** [1] - 40:3
**defendant** [37] - 2:10, 8:24, 12:10, 12:13, 13:7, 13:13, 14:19, 20:22, 22:2, 26:3, 26:20, 27:9, 33:1, 34:16, 34:19, 34:22, 37:3, 41:20, 42:10, 42:13, 42:16, 43:2, 44:2, 44:8, 44:15, 45:3, 45:7, 45:11, 53:5, 56:1, 62:7, 65:10, 65:11, 68:13, 82:9, 87:15, 96:25
**Defendant** [1] - 1:5
**DEFENDANT** [16] - 1:14, 2:16, 17:18, 17:23, 18:2, 18:23, 19:1, 19:5, 19:10, 60:15, 60:17, 67:6, 80:16, 95:15, 101:17, 101:22
**defendant's** [9] - 22:23, 41:12, 41:22, 42:22, 45:10, 53:2, 53:4, 61:21, 86:15
**defendants** [5] - 62:22, 70:8, 71:23, 79:10, 102:3
**defense** [13] - 32:19, 33:25, 34:3, 38:9, 45:25, 46:2, 49:15, 49:16, 57:10, 58:21, 62:6, 62:9, 66:17
**definitely** [2] - 36:1, 58:21
**degrading** [1] - 42:12
**degree** [2] - 65:17, 72:12
**delay** [1] - 74:1
**delete** [3] - 15:10, 15:18, 15:24

**demonstrate** [4] - 71:19, 74:24, 75:1, 75:11
**demonstrated** [1] - 77:5
**denied** [2] - 13:2, 13:3
**denies** [7] - 12:10, 12:13, 13:13, 14:19, 15:17, 15:22, 22:2
**deny** [2] - 12:14, 12:16
**depicted** [1] - 30:13
**depictions** [2] - 33:25, 34:10
**deputy** [1] - 3:13
**deriving** [1] - 34:13
**described** [2] - 47:21
**describes** [1] - 49:6
**describing** [1] - 56:10
**description** [1] - 49:9
**designate** [2] - 58:25, 82:13
**designated** [4] - 59:6, 80:7, 81:1, 81:3
**designates** [1] - 59:7
**designation** [1] - 81:18
**designations** [1] - 81:13
**designed** [1] - 57:25
**desire** [2] - 14:10, 37:25
**despite** [1] - 42:5
**destructive** [1] - 66:19
**detail** [3] - 6:23, 8:25, 89:22
**detailed** [1] - 10:16
**detect** [1] - 45:16
**detention** [1] - 84:20
**Detention** [5] - 16:24, 57:22, 59:5, 81:2, 82:13
**deter** [2] - 45:3, 64:22
**deteriorating** [1] - 58:7
**determinations** [1] - 37:20
**determine** [7] - 72:1, 72:2, 72:8, 73:1, 88:22, 91:23, 92:16
**determined** [2] - 25:10, 37:15
**deterrence** [5] - 45:4, 45:13, 45:14, 66:2
**deters** [1] - 68:6
**developed** [2] - 72:11, 93:15
**devices** [5] - 23:4, 30:8, 30:10, 86:17, 87:14
**devoted** [1] - 42:18

**diagnose** [2] - 50:21
**diagnosed** [1] - 17:2
**dialogue** - 14:5
**difference** [2] - 16:7, 55:9
**differences** [1] - 68:15
**different** [11] - 25:22, 43:12, 44:21, 48:16, 54:22, 55:6, 68:18, 70:14, 78:4, 85:19, 90:16
**differently** [3] - 27:12, 70:14, 70:15
**differs** [1] - 65:10
**difficult** [1] - 45:16
**difficulties** [1] - 18:21
**DiMURO** [1] - 1:18
**direct** [1] - 31:16
**directly** [6] - 9:8, 24:10, 49:18, 59:6, 81:3, 81:20
**director** [1] - 72:11
**disagree** [1] - 34:8
**disagreement** [2] - 61:21, 78:22
**discard** [2] - 9:15, 9:16
**discarded** [2] - 48:7, 50:19
**disclaimer** [1] - 21:17
**discovered** [1] - 48:21
**discovery** [1] - 88:2
**discretion** [4] - 38:24, 80:21, 82:11, 94:17
**discuss** [3] - 32:3, 85:9, 88:18
**discussed** [2] - 42:14, 45:8
**discussion** [1] - 46:24
**disorder** [3] - 50:4, 50:21, 50:22
**disparities** [2] - 44:22, 68:10
**disparity** [1] - 43:13
**displayed** [1] - 42:20
**dispute** [1] - 86:19
**dissimilar** [1] - 52:21
**distinct** [1] - 69:1
**distinction** [3] - 29:5, 29:8, 65:20
**distinctive** [2] - 68:13, 69:1
**distinguishes** [1] - 47:19
**distinguishing** [1] - 54:2
**distribute** [1] - 54:4
**distributed** [2] - 54:14, 54:15
**distribution** [3] -

54:16, 65:22, 93:3
**district** [1] - 43:21
**DISTRICT** [3] - 1:1, 1:1, 1:8
**District** [2] - 1:22, 23:19
**Division** [1] - 1:2
**doctor** [2] - 27:10, 27:11
**doctors** [3] - 26:17, 26:18, 27:8
**Doe** [2] - 78:14, 79:1
**doms** [1] - 49:7
**done** [15] - 15:6, 39:19, 40:20, 55:18, 56:12, 56:15, 62:20, 69:24, 72:14, 77:8, 81:21, 81:24, 82:10, 96:22, 100:22
**door** [1] - 40:17
**double** [6] - 15:16, 24:25, 25:12, 32:15, 33:16, 44:7
**double-counting** [1] - 32:15
**doubt** [6] - 8:6, 31:12, 77:24, 78:2, 78:5, 93:18
**down** [6] - 39:8, 40:10, 58:15, 86:15, 87:22, 94:4
**downloaded** [6] - 28:25, 30:6, 31:1, 31:6, 31:11, 88:6
**Dr** [14] - 26:22, 27:2, 27:3, 27:15, 27:16, 49:25, 50:1, 50:3, 50:4, 50:20, 57:13
**drafted** [1] - 94:11
**drive** [2] - 51:22, 88:6
**Drive** [1] - 1:15
**dropped** [4] - 3:23, 18:2, 18:10, 18:16
**drug** [3] - 59:7, 59:8, 98:18
**duct** [1] - 12:5
**duct-taping** [1] - 12:5
**due** [3] - 79:15, 91:14
**during** [4] - 18:18, 42:20, 53:10, 88:2

## E

**early** [2] - 9:19, 74:24
**earn** [4] - 72:13, 77:16, 93:4, 94:17
**earning** [10] - 73:10, 73:11, 74:1, 92:3, 92:12, 93:6, 93:22, 94:14, 94:23, 98:12

**ease** [1] - 30:5
**easiest** [1] - 47:6
**easily** [1] - 43:25
**EASTERN** [1] - 1:1
**easy** [1] - 28:19
**educational** [2] - 65:1, 73:9, 92:3
**effect** [3] - 25:22, 69:4, 77:24
**effectively** [1] - 24:17
**efforts** [1] - 45:10
**egregious** [1] - 56:6
**eight** [5] - 2:17, 14:10, 78:4, 94:13, 100:22
**either** [7] - 50:6, 52:21, 54:9, 55:11, 90:21, 91:24, 100:8
**elderly** [1] - 58:8
**electronic** [1] - 99:16
**eligible** [1] - 77:13
**ELLIS** [2] - 1:5, 1:7
**Ellis** [2] - 2:3, 17:19
**email** [2] - 36:7, 36:9
**emails** [1] - 18:12
**embarrassed** [1] - 39:14
**emphasize** [2] - 66:3, 71:18
**employed** [1] - 51:8
**employment** [2] - 99:4, 99:8
**end** [5] - 33:17, 43:3, 70:11, 70:16, 81:22
**endangered** [1] - 53:11
**endeavoring** [1] - 88:9
**energetic** [1] - 93:14
**enforcement** [3] - 13:24, 15:12, 45:10
**engage** [11] - 8:19, 33:3, 34:4, 42:11, 62:7, 62:23, 64:24, 66:7, 67:9, 72:16, 99:4
**engaged** [3] - 34:16, 66:11, 100:13
**engaging** [3] - 42:8, 44:17, 50:10
**enhanced** [1] - 73:25
**enhancement** [13] - 15:19, 15:25, 16:10, 23:13, 24:22, 25:9, 31:20, 31:25, 32:11, 32:20, 33:8, 33:10, 33:22
**enhancements** [1] - 25:16
**enormous** [2] - 6:17, 30:5
**ensure** [1] - 43:11

**ensuring** [1] - 43:2
**enter** [1] - 90:7
**entered** [1] - 48:4
**enterprising** [1] - 93:14
**entice** [1] - 33:3
**entire** [1] - 25:7
**entitled** [3] - 80:21, 88:3, 102:19
**entity** [1] - 88:22
**entrepreneur** [2] - 72:13, 93:21
**equally** [2] - 42:9, 45:17
**equipment** [4] - 85:14, 85:18, 88:20
**equipped** [1] - 87:3
**err** [1] - 71:11
**erroneously** [1] - 68:21
**error** [2] - 10:5, 50:9
**escape** [1] - 68:1
**especially** [4] - 47:21, 57:5, 75:10, 100:22
**ESQ** [2] - 1:14, 1:18
**essay** [1] - 87:19
**essence** [4] - 23:8, 24:24, 46:15, 98:10
**essentially** [2] - 44:20, 70:4
**evaluation** [1] - 98:25
**evaluations** [1] - 50:1
**evening** [1] - 7:2
**event** [4] - 58:15, 71:7, 83:17, 87:20
**evidence** [20] - 15:23, 20:13, 20:14, 29:1, 29:3, 31:15, 31:16, 32:25, 33:1, 34:2, 48:22, 48:23, 51:12, 51:14, 51:19, 51:22, 64:4, 64:5, 76:5, 88:3
**evident** [1] - 38:5
**exactly** [3] - 47:13, 49:10, 68:12
**examination** [2] - 28:19, 50:20
**example** [2] - 68:16, 69:14
**except** [1] - 80:3
**exception** [2] - 19:18, 36:23
**excess** [1] - 57:6
**excessive** [1] - 70:5
**excluding** [1] - 87:9
**exclusively** [1] - 30:16
**excruciating** [1] - 8:25
**exculpatory** [1] - 88:2
**excused** [1] - 95:2

**excuses** [1] - 42:25
**excusing** [1] - 96:1
**exercise** [1] - 87:15
**exhibits** [1] - 20:19
**exist** [1] - 99:25
**existence** [2] - 74:24, 75:4
**expect** [4] - 6:23, 37:23, 65:5, 100:14
**expecting** [1] - 58:14
**experience** [6] - 7:7, 9:4, 30:2, 30:3, 30:6, 81:25
**experiences** [2] - 67:13, 67:17
**expert** [6] - 50:9, 50:12, 81:13, 82:5, 82:9, 88:4
**experts** [4] - 50:23, 57:11, 64:10, 81:25
**explain** [5] - 14:4, 14:11, 27:9, 38:6, 38:9
**explained** [1] - 8:24
**explanation** [1] - 10:11
**explicit** [4] - 33:4, 33:6, 44:3, 44:10, 44:17, 99:10
**exploitation** [2] - 22:19, 28:22
**Exploitation** [2] - 25:5, 33:14
**Exploited** [1] - 22:17
**express** [3] - 8:20, 67:2, 95:12
**expressed** [1] - 51:20
**extent** [7] - 10:5, 13:24, 21:19, 46:1, 72:9, 101:25, 102:1
**extenuation** [1] - 60:10
**extremely** [1] - 61:25
**eyes** [1] - 66:20
**eyesight** [2] - 84:15, 84:22

## F

**F.3d** [1] - 90:13
**face** [3] - 20:25, 39:11, 45:19
**facilitate** [2] - 33:3, 87:10
**facilities** [3] - 8:7, 80:20, 81:14
**facility** [4] - 59:7, 80:8, 81:1, 88:4
**fact** [22] - 5:9, 7:17, 14:14, 15:3, 22:16,

29:15, 32:4, 33:1,
49:15, 50:7, 51:19,
56:18, 57:5, 57:13,
58:12, 58:20, 59:16,
68:18, 72:4, 73:16,
79:23, 85:14
**factor** [3] - 57:9,
58:21, 66:1
**factored** [2] - 57:8,
92:11
**factors** [11] - 41:16,
43:5, 44:24, 50:6,
53:14, 62:3, 64:6,
69:11, 69:24, 73:12,
92:2
**facts** [5] - 41:15,
54:21, 62:11, 70:6,
101:20
**failed** [2] - 71:5, 71:6
**fails** [2] - 14:4, 42:1
**fair** [2] - 10:7, 63:4
**fairly** [1] - 69:25
**familial** [1] - 17:21
**familiar** [3] - 41:15,
46:17, 64:17
**family** [5] - 18:11,
39:24, 40:3, 45:11,
56:10
**far** [5] - 6:23, 17:21,
52:7, 56:6, 69:5
**fashion** [1] - 89:22
**father** [1] - 57:2
**fault** [1] - 7:4
**FBI** [9] - 7:12, 12:19,
12:23, 13:15, 13:22,
15:14, 87:16, 88:4,
88:7
**FCI** [2] - 59:1, 81:19
**fear** [5] - 40:5, 40:12,
40:13, 40:15
**February** [1] - 36:7
**Federal** [2] - 89:4,
89:5
**feed** [1] - 40:12
**feeding** [1] - 56:12
**few** [5] - 18:9, 21:11,
62:25, 85:6, 91:6
**file** [7] - 2:25, 3:3,
3:13, 6:2, 11:2,
89:16, 90:25
**filed** [11] - 2:22, 3:1,
3:4, 3:5, 10:17, 11:2,
18:5, 19:25, 23:7,
86:25, 89:17
**files** [2] - 22:18
**filing** [1] - 3:14
**filings** [1] - 100:12
**fill** [3] - 35:24, 36:18,
96:10
**filming** [1] - 48:3, 48:8

**final** [2] - 9:11, 23:17
**finally** [4] - 18:13,
18:17, 26:14, 90:19
**financial** [9] - 35:4,
35:10, 35:11, 35:13,
35:14, 35:20, 35:24,
36:13, 77:15
**findings** [3] - 19:16,
36:24, 36:25
**finish** [2] - 11:1, 74:2
**firm** [1] - 84:22
**firmly** [1] - 94:20
**firms** [1] - 78:4
**First** [1] - 66:15
**first** [15] - 2:4, 4:1, 4:4,
4:9, 9:16, 11:5,
18:15, 20:8, 37:7,
39:10, 53:16, 64:7,
75:3, 77:22, 91:12
**five** [10] - 24:22, 33:8,
33:9, 52:16, 69:18,
71:10, 74:7, 74:16,
74:21, 76:9
**five-level** [3] - 24:22,
33:8, 33:9
**floor** [1] - 39:13
**Floor** [1] - 1:22
**flow** [1] - 36:13
**focus** [2] - 86:9, 89:21
**focused** [2] - 50:18,
89:18
**follow** [2] - 3:14, 83:23
**following** [1] - 48:6
**footnote** [4] - 6:12,
11:17, 43:19
**FOR** [3] - 1:1, 1:10,
1:14
**force** [4] - 48:14,
49:19, 49:22, 51:17
**forced** [1] - 14:20
**forcibly** [1] - 12:5
**foregoing** [1] - 102:17
**forensic** [1] - 88:4
**forfeit** [2] - 85:13,
88:15
**forfeits** [1] - 88:20
**forfeiture** [6] - 85:9,
85:12, 85:17, 89:17,
90:3, 90:8
**form** [1] - 60:4
**former** [1] - 53:12
**forms** [3] - 35:15,
35:18, 36:8
**fortunate** [2] - 72:4,
72:5
**forward** [2] - 21:9,
39:2
**foul** [1] - 76:6
**four** [4] - 10:16, 31:20,
33:22, 44:9

**four-level** [2] - 31:20,
33:22
**Fourth** [3] - 66:13,
66:17, 90:6
**fragile** [2] - 59:8,
83:20
**frame** [1] - 54:1
**frankly** [3] - 8:21,
42:17, 42:21
**free** [1] - 59:20
**frequently** [1] - 100:15
**friend** [1] - 26:10
**front** [2] - 44:12, 81:22
**full** [2] - 53:4, 75:8
**fully** [1] - 19:3
**furthermore** [1] - 34:6
**future** [18] - 6:23,
28:8, 57:11, 64:23,
65:19, 73:10, 73:11,
75:7, 77:17, 83:8,
91:24, 92:12, 93:23,
95:5, 95:6, 95:25,
98:11

## G

**gaining** [1] - 34:15
**general** [4] - 45:4,
45:14, 66:2, 86:23
**generally** [2] - 37:10,
68:6
**genitals** [1] - 34:21
**gentleman** [1] - 46:19
**germane** [1] - 5:13
**Ginsberg** [13] - 2:12,
23:8, 81:4, 82:23,
83:4, 83:9, 83:11,
83:22, 86:25, 87:2,
87:5, 90:16, 101:2
**GINSBERG** [11] -
1:18, 1:18, 87:6,
87:13, 87:25, 89:2,
89:6, 89:12, 90:17,
101:4, 101:7
**girl** [3] - 54:14, 54:17,
56:2
**girls** [2] - 44:3, 56:4
**given** [13] - 18:15,
29:22, 52:23, 57:13,
57:14, 59:16, 60:1,
86:5, 86:24, 88:6,
93:1, 98:13, 100:22
**glad** [3] - 15:5, 18:20,
91:10
**goals** [1] - 37:13
**Goldman** [1] - 93:20
**Government** [35] -
2:5, 3:5, 19:13, 24:4,
26:25, 27:11, 37:6,
38:13, 43:1, 46:5,

47:4, 47:21, 47:22,
49:1, 50:15, 51:25,
52:2, 52:3, 53:2,
53:19, 59:19, 62:21,
64:11, 66:18, 69:6,
78:24, 79:19, 85:5,
85:10, 85:20, 87:16,
87:24, 90:3, 100:5
**government** [2] -
88:16, 88:22
**Government's** [7] -
38:13, 45:2, 50:12,
52:25, 53:15, 53:16,
53:21
**grace** [1] - 19:21
**graduated** [1] - 72:10
**gratification** [2] -
34:14, 54:6
**grave** [1] - 43:1
**great** [5] - 60:22, 64:8,
64:9, 90:25
**greater** [1] - 37:23
**groomed** [1] - 44:16
**ground** [1] - 33:8
**guess** [1] - 29:10
**guideline** [3] - 16:11,
23:16, 23:20
**guidelines** [24] - 16:2,
16:3, 20:19, 24:1,
24:4, 24:7, 24:9,
24:14, 25:1, 25:14,
25:15, 32:10, 32:24,
33:13, 33:18, 37:9,
37:11, 41:18, 43:8,
69:4, 69:6, 69:22,
69:25
**guilty** [2] - 55:15

## H

**habit** [1] - 71:19
**hand** [1] - 67:15
**handcuffed** [1] - 12:13
**handed** [4] - 13:10,
52:5, 52:6, 61:18
**handicaps** [1] - 72:2
**happy** [3] - 28:1,
31:23, 87:19
**hard** [4] - 40:6, 51:22,
58:2, 88:6
**harm** [1] - 39:17
**harmful** [1] - 42:8
**harms** [1] - 75:6
**Harris** [1] - 44:1
**hash** [1] - 85:25
**health** [5] - 52:20,
76:18, 76:24, 98:16,
98:25
**hear** [14] - 2:19, 21:8,
21:9, 23:24, 28:3,

30:24, 37:2, 38:12,
38:21, 39:5, 45:21,
46:22, 65:5, 85:10
**heard** [11] - 38:17,
38:20, 39:6, 41:3,
41:9, 48:1, 64:4,
65:3, 67:12, 81:9,
87:6
**HEARING** [1] - 1:7
**hearing** [4] - 32:3,
38:22, 40:9, 86:20
**heart** [1] - 82:1
**held** [1] - 89:13
**help** [3] - 38:9, 75:4,
76:24
**helpful** [1] - 101:1
**helping** [1] - 68:3
**Hendricks** [7] - 26:22,
26:23, 27:16, 27:17,
49:25, 50:4, 57:13
**hesitate** [1] - 71:11
**Hewlett** [16] - 52:8,
52:25, 53:1, 54:2,
54:8, 54:19, 54:22,
54:24, 57:6, 65:9,
65:21, 65:22, 65:24,
67:18, 68:16
**hideous** [1] - 75:24
**hierarchy** [1] - 49:6
**high** [5] - 16:3, 29:20,
37:10, 50:7
**higher** [1] - 80:3
**highest** [1] - 23:18
**him..** [1] - 54:11
**himself** [7] - 39:16,
40:9, 40:10, 41:24,
45:11, 53:3
**hired** [2] - 78:3, 81:12
**history** [8] - 41:19,
53:5, 53:6, 56:14,
64:8, 64:13, 64:17,
65:1
**hobble** [1] - 95:9
**hold** [1] - 57:25
**home** [1] - 40:4
**homeless** [1] - 56:13
**honestly** [1] - 32:1
**Honor** [226] - 2:6,
2:11, 2:16, 2:21,
2:25, 3:2, 3:5, 3:9,
3:11, 3:15, 3:18,
3:21, 4:3, 4:6, 4:8,
4:12, 4:20, 4:23, 5:1,
5:4, 5:17, 5:25, 6:7,
6:9, 6:13, 6:16, 6:24,
7:6, 7:8, 7:16, 7:18,
7:21, 8:1, 8:9, 8:11,
9:9, 9:10, 9:18, 10:5,
10:14, 10:24, 12:11,
12:21, 13:11, 13:16,

13:20, 13:21, 14:2,
14:8, 14:21, 14:25,
15:12, 16:6, 16:8,
16:13, 16:16, 17:18,
17:23, 19:15, 20:2,
21:21, 21:24, 22:4,
22:6, 22:10, 24:7,
24:11, 25:19, 26:4,
26:8, 26:13, 26:22,
27:16, 27:20, 28:1,
28:2, 28:24, 29:4,
29:11, 29:18, 30:3,
30:9, 31:6, 31:23,
31:24, 32:1, 32:3,
32:7, 32:11, 33:20,
35:2, 38:16, 38:19,
38:25, 41:1, 41:7,
41:9, 41:11, 41:21,
42:1, 42:9, 42:19,
42:22, 43:1, 43:5,
43:14, 43:17, 44:5,
44:18, 44:23, 45:23,
46:4, 46:13, 46:23,
47:19, 49:18, 49:24,
49:25, 50:19, 50:25,
51:21, 52:1, 52:4,
52:6, 52:21, 53:20,
54:1, 54:11, 54:18,
54:25, 55:4, 55:17,
55:18, 57:8, 57:24,
58:10, 58:14, 58:21,
58:23, 59:2, 60:6,
61:3, 61:5, 61:17,
61:18, 61:20, 61:23,
62:9, 62:17, 62:19,
63:1, 63:5, 63:10,
63:14, 63:20, 63:22,
65:14, 65:16, 69:9,
70:3, 70:25, 71:2,
71:3, 73:7, 73:12,
73:18, 73:22, 75:17,
77:20, 78:24, 79:3,
79:12, 81:10, 81:19,
82:16, 82:17, 82:20,
82:24, 83:13, 83:14,
83:19, 84:17, 84:24,
85:3, 85:6, 85:9,
85:20, 86:4, 86:18,
86:24, 87:25, 89:6,
90:7, 90:10, 90:17,
90:24, 91:4, 91:7,
91:13, 92:16, 92:18,
92:25, 93:12, 94:9,
95:4, 95:18, 95:22,
96:10, 96:19, 96:21,
96:24, 97:12, 97:18,
98:6, 98:15, 100:2,
100:6, 100:9,
100:24, 101:7,
101:17
**Honor's** [10] - 5:7, 9:3,

44:6, 52:11, 55:12,
85:23, 85:24, 86:6,
87:4, 95:16
**HONORABLE** [1] - 1:7
**hope** [9] - 40:13,
40:16, 40:22, 49:2,
56:6, 65:19, 95:11,
100:14, 101:24
**hours** [1] - 39:13
**Houston** [1] - 82:6
**humiliation** [2] -
34:13, 34:15
**hundreds** [1] - 30:9
**hurt** [5] - 28:14, 39:11,
40:2, 40:24
**husband** [2] - 39:3,
41:2

---

## I

**idea** [3] - 42:6, 67:25,
94:15
**identical** [1] - 52:20
**identified** [1] - 22:17
**identify** [2] - 81:22,
88:2
**III** [1] - 1:7
**ill** [1] - 87:3
**ill-equipped** [1] - 87:3
**illegal** [11] - 8:17,
8:20, 14:7, 29:16,
39:19, 46:8, 46:11,
48:10, 51:16, 56:15
**images** [17] - 22:14,
22:16, 22:17, 28:25,
29:11, 29:18, 29:20,
29:22, 30:1, 30:8,
31:7, 34:7, 44:3,
44:10, 78:18, 99:10
**immaterial** [4] - 16:1,
16:10, 16:11, 32:22
**immediate** [1] - 80:12
**immediately** [1] -
79:15
**immoral** [1] - 39:20
**impact** [5] - 9:5,
22:21, 41:11, 41:13,
56:21
**impacts** [1] - 55:12
**impairments** [1] - 80:9
**important** [14] - 5:14,
13:25, 38:10, 45:17,
46:4, 47:5, 55:13,
56:23, 57:11, 58:16,
63:11, 65:25, 80:17,
102:6
**impose** [32] - 13:7,
23:15, 24:4, 37:11,
43:7, 43:12, 44:21,
45:3, 45:17, 53:21,

63:19, 64:20, 64:23,
67:21, 68:5, 68:6,
68:9, 68:11, 69:10,
70:16, 71:16, 74:8,
74:16, 75:23, 76:16,
79:13, 91:8, 92:19,
97:17, 97:20, 98:4,
98:8
**imposed** [19] - 43:6,
43:22, 60:11, 62:11,
68:11, 72:18, 73:2,
73:23, 74:10, 75:16,
76:8, 77:11, 80:1,
96:10, 97:22, 97:23,
97:24, 98:10, 99:19
**imposing** [4] - 23:20,
64:7, 64:19, 79:25
**imposition** [1] - 74:1
**impression** [1] - 12:2
**imprisonment** [2] -
69:15, 69:20
**in-person** [2] - 3:24,
18:13
**inaccurate** [2] - 11:12,
20:14
**incarcerated** [1] -
80:12
**incarceration** [1] -
80:1
**inclination** [2] - 66:4,
95:16
**include** [4] - 20:17,
59:3, 82:8, 98:25
**included** [3] - 4:13,
32:13, 72:19
**includes** [1] - 53:6
**including** [5] - 26:1,
41:24, 62:4, 64:5,
81:6
**incomplete** [1] - 20:14
**incorrect** [1] - 30:20
**increased** [3] - 79:20,
79:24, 96:17
**incredibly** [7] - 41:13,
55:13, 55:16, 55:17,
57:10, 58:24, 60:2
**indeed** [8] - 8:13,
34:18, 37:6, 38:7,
39:5, 60:10, 76:20,
80:11
**independently** [1] -
51:16
**indicate** [4] - 38:2,
43:24, 69:23, 90:4
**indicated** [6] - 22:2,
37:12, 38:8, 60:2,
69:11, 80:4
**indigent** [12] - 73:1,
73:4, 73:6, 73:13,
91:24, 92:2, 92:6,

92:19, 93:1, 94:25,
95:24, 98:9
**individual** [4] - 13:14,
42:2, 42:4, 42:6
**individually** [1] - 79:7
**individuals** [3] -
64:15, 78:18
**induce** [1] - 33:2
**inexplicable** [2] - 5:5,
5:6
**infant** [1] - 30:22
**infants** [1] - 30:21
**inflict** [1] - 34:20
**inflicted** [1] - 40:16
**infliction** [1] - 34:12
**inform** [1] - 36:12
**information** [10] -
4:13, 14:22, 15:8,
20:11, 20:15, 20:21,
35:5, 38:1, 64:11,
92:4
**informed** [2] - 13:22,
99:13
**initial** [5] - 45:24,
85:22, 85:23, 88:5,
88:8
**injected** [1] - 38:6
**injections** [1] - 59:10
**insensitive** [1] - 37:25
**insert** [1] - 12:9
**insight** [5] - 76:19,
76:20, 76:24, 102:5,
102:6
**instances** [2] - 21:23,
62:22
**instantaneous** [1] -
68:24
**instead** [1] - 82:5
**instilled** [1] - 40:14
**instinct** [2] - 85:24,
86:6
**institution** [1] - 84:2
**instructed** [1] - 34:19
**instruction** [1] - 52:10
**instructions** [2] -
82:24, 84:22
**intellectual** [1] - 65:11
**intellectually** [1] -
102:4
**intelligence** [1] - 77:6
**intelligent** [2] - 72:5,
101:11
**intend** [4] - 25:15,
74:12, 91:7, 98:8
**intends** [1] - 96:24
**intention** [1] - 90:7
**interactive** [1] - 33:2
**interest** [14] - 6:4,
11:23, 31:4, 32:23,
37:23, 38:3, 38:5,

42:18, 51:20, 72:11,
82:18, 86:11, 96:4,
96:14
**interested** [5] - 8:10,
28:22, 29:13, 31:2,
67:1
**interests** [5] - 27:21,
28:21, 76:21, 76:22,
76:25
**internet** [2] - 54:11,
78:19
**interpret** [2] - 46:1,
46:3
**interview** [10] - 7:11,
7:20, 12:9, 12:19,
13:15, 13:21, 13:23,
15:13, 15:14
**interviewed** [1] -
26:19
**inundated** [1] - 100:19
**inventive** [1] - 93:13
**investigation** [5] -
19:17, 26:11, 36:25,
53:9, 84:7
**investigative** [1] -
20:17
**involve** [3] - 55:21,
68:10, 91:19
**involved** [6] - 23:14,
32:21, 46:6, 51:8,
60:19, 66:1
**involves** [1] - 43:13,
87:23
**involving** [4] - 33:24,
44:14, 62:1, 64:2
**Involving** [2] - 25:4,
33:14
**IQ** [1] - 65:12
**irrelevant** [5] - 7:13,
7:14, 14:6, 20:12,
49:8
**irritated** [1] - 7:1
**isolated** [1] - 58:1
**isolation** [1] - 9:5
**issue** [8] - 12:6, 25:2,
49:1, 87:22, 89:7,
89:22, 90:9
**issued** [4] - 4:9, 4:11,
69:22, 76:12
**issues** [5] - 52:20,
58:2, 85:6, 90:5,
91:1
**items** [1] - 89:1
**itself** [3] - 51:7, 57:15,
95:5

---

## J

**J&C** [10] - 38:1, 80:18,
81:21, 82:9, 83:10,

83:15, 83:24, 83:25, 84:4, 95:20
**jail** [7] - 3:23, 3:24, 18:2, 18:8, 18:12, 18:17, 40:14
**Jamieson** [1] - 1:12
**Jay** [1] - 2:7
**JAY** [1] - 1:11
**job** [2] - 6:15, 6:16
**John** [2] - 78:14, 79:1
**joint** [2] - 79:6, 79:11
**Joshua** [1] - 81:12
**judge** [9] - 40:22, 71:20, 75:13, 79:23, 87:6, 89:2, 99:7, 99:23
**Judge** [3] - 44:13, 44:14, 55:24
**JUDGE** [1] - 1:8
**judgment** [10] - 50:10, 66:19, 69:12, 69:13, 69:20, 70:8, 70:11, 70:17, 100:1
**Judgment** [2] - 17:5, 59:3
**jump** [1] - 82:16
**jurisdiction** [1] - 90:9
**jury** [3] - 48:7, 55:14, 55:15
**justification** [1] - 38:9
**juvenile** [1] - 99:10

## K

**K-E-S-I-M-P-T-R-A** [1] - 83:13
**keep** [3] - 59:5, 83:22, 99:2
**kept** [1] - 39:21
**Kesimpta** [3] - 59:8, 83:5, 84:11
**key** [2] - 8:5, 8:6
**Kids** [1] - 22:20
**kids** [2] - 40:14, 51:13
**kind** [7] - 8:19, 14:15, 35:10, 42:15, 50:5, 76:6, 77:23
**King** [1] - 1:19
**Kiyonaga's** [1] - 67:19
**knowing** [1] - 99:6
**knowledge** [2] - 68:1, 99:17
**known** [3] - 22:18, 22:19, 56:11
**knows** [3] - 46:13, 84:2, 99:14

## L

**lack** [1] - 41:22
**language** [1] - 81:20

**large** [2] - 69:25, 101:25
**largely** [1] - 53:2
**larger** [1] - 53:4
**last** [11] - 3:16, 4:25, 5:24, 6:6, 11:3, 20:25, 29:19, 52:5, 62:19, 100:3, 100:12
**late** [1] - 44:15
**LAW** [1] - 1:15
**law** [29] - 13:24, 15:12, 20:23, 38:20, 45:10, 55:24, 58:13, 58:17, 64:6, 64:13, 64:18, 64:21, 66:5, 66:6, 66:20, 67:11, 67:20, 68:5, 68:9, 69:3, 71:6, 71:19, 73:9, 74:24, 75:4, 78:4, 87:23, 88:19
**law-abiding** [3] - 71:19, 74:24, 75:4
**lawyer** [6] - 63:12, 67:24, 82:22, 86:25, 87:1, 100:15
**lawyers** [16] - 2:18, 2:19, 7:5, 14:10, 19:8, 19:9, 63:7, 63:8, 67:11, 70:12, 71:4, 73:17, 78:4, 83:2, 100:23
**leads** [1] - 23:17
**least** [7] - 27:9, 37:19, 58:15, 76:4, 79:2, 79:4, 89:12
**leave** [3] - 38:24, 82:11, 82:12
**Lee** [2] - 44:13, 44:14
**left** [1] - 101:12
**legal** [5] - 8:17, 8:20, 9:1, 14:7, 18:8
**legally** [1] - 78:6
**legitimately** [1] - 66:18
**length** [1] - 94:25
**lengthy** [1] - 53:5
**lesbian/gay/queer** [1] - 49:4
**less** [5] - 9:1, 22:24, 23:22, 92:22, 94:18
**letters** [6] - 26:7, 26:9, 26:10, 51:7, 56:10
**letting** [1] - 15:4
**level** [11] - 15:25, 16:3, 16:4, 23:13, 23:17, 24:22, 31:20, 32:20, 33:8, 33:9, 33:22
**levels** [1] - 25:10
**lied** [1] - 53:12
**life** [22] - 23:4, 24:15,

24:17, 24:20, 37:12, 51:22, 60:4, 69:4, 70:4, 71:19, 71:23, 71:25, 72:10, 75:4, 77:1, 77:2, 77:5, 81:8, 85:17, 101:10, 101:12, 101:24
**lifestyle** [1] - 73:17
**lifetime** [7] - 43:9, 58:22, 67:16, 67:20, 71:17, 74:20, 75:11
**lifting** [1] - 81:20
**lighting** [1] - 72:11
**like-minded** [1] - 45:18
**limitation** [1] - 20:21
**limitations** [1] - 72:7
**limited** [2] - 65:12, 93:7, 102:4
**listen** [1] - 65:6
**listening** [1] - 83:2
**literally** [1] - 54:5
**litigate** [1] - 47:4
**live** [1] - 40:20
**lived** [2] - 40:5
**lives** [1] - 40:21
**living** [2] - 71:24, 77:2
**locally** [1] - 59:6
**lockdown** [1] - 58:1
**Logan** [2] - 52:8, 57:5
**look** [11] - 5:9, 25:1, 25:6, 31:2, 31:12, 37:22, 49:10, 63:2, 88:18, 92:13, 96:11
**looked** [12] - 20:24, 29:1, 31:13, 31:17, 43:25, 86:3, 86:14, 88:22, 99:18, 100:12
**looking** [1] - 49:2
**looks** [1] - 43:21
**lose** [1] - 56:18
**losses** [1] - 22:24
**lost** [1] - 35:8
**loud** [1] - 45:18
**love** [1] - 94:10
**low** [5] - 27:21, 50:8, 57:12, 59:14, 65:12
**Low** [1] - 59:1
**luck** [3] - 101:8, 101:21, 101:23
**lying** [1] - 12:23

## M

**ma'am** [2] - 39:2, 39:3
**madder** [1] - 39:25
**mail** [1] - 18:8
**man** [5] - 72:6, 77:7, 93:14, 101:11, 102:3
**manage** [1] - 59:13

**Manassas** [1] - 88:5
**mandatory** [9] - 58:12, 69:15, 69:18, 69:19, 73:24, 74:6, 75:22, 92:23
**manner** [1] - 17:4
**Manual** [1] - 33:13
**Martin** [1] - 90:12
**masochism** [1] - 34:18
**masochistic** [6] - 32:11, 33:24, 34:1, 34:6, 34:9, 34:13
**masters** [1] - 49:7
**masturbated** [1] - 12:14
**material** [19] - 8:2, 11:7, 22:19, 23:3, 26:1, 30:14, 30:19, 30:22, 31:14, 33:6, 33:24, 34:9, 37:21, 37:23, 42:15, 42:19, 87:9, 99:10
**materials** [2] - 20:16, 87:12
**math** [3] - 70:25, 71:5
**matter** [10] - 18:9, 19:21, 19:22, 25:24, 33:17, 37:1, 45:24, 67:10, 68:2, 102:19
**matters** [1] - 19:18
**maximum** [5] - 40:22, 69:14, 69:16, 69:18, 97:16
**maximums** [1] - 70:9
**McCauley** [12] - 52:8, 52:9, 52:12, 52:19, 57:5, 65:9, 65:11, 65:24, 66:2, 68:16, 68:18
**McCauley's** [1] - 52:15
**mean** [8] - 46:10, 47:2, 47:13, 48:14, 71:18, 72:6, 99:14, 102:4
**meaning** [1] - 55:22
**meaningful** [1] - 58:14
**means** [1] - 34:12
**medical** [5] - 16:21, 58:2, 64:9, 81:5, 81:15
**medication** [9] - 16:18, 80:11, 80:13, 80:23, 80:24, 81:6, 82:14, 83:5, 83:11
**medications** [1] - 81:7
**meet** [1] - 50:6
**meeting** [2] - 3:25, 56:20
**Meloxicam** [1] - 16:15

**members** [1] - 39:24
**memo** [1] - 5:8
**memorandum** [1] - 61:4
**memorandums** [1] - 51:7
**memories** [5] - 23:4, 87:12, 87:14, 88:21, 88:23
**memory** [3] - 52:22, 86:16, 87:19
**mental** [5] - 52:20, 76:18, 76:24, 98:16, 98:25
**mention** [3] - 5:21, 6:11, 35:2
**mentioned** [1] - 19:18
**message** [1] - 45:18
**met** [2] - 18:18, 34:11
**mid** [1] - 57:2
**middle** [1] - 17:19
**midst** [1] - 100:19
**might** [8] - 8:6, 8:12, 21:20, 46:1, 48:15, 51:21, 52:22, 76:19
**milligrams** [1] - 16:14
**mind** [2] - 45:6, 68:20
**minded** [1] - 45:18
**minimize** [1] - 27:9
**minimizing** [1] - 56:23
**minimum** [8] - 60:18, 69:15, 69:18, 69:19, 74:6, 75:22, 95:17
**minimums** [2] - 58:13, 70:10
**Minor** [13] - 7:11, 7:20, 8:6, 12:14, 12:20, 13:13, 14:20, 15:10, 15:24, 34:3, 34:20, 38:19, 53:8
**minor** [24] - 11:25, 30:17, 33:3, 33:5, 34:17, 38:16, 38:18, 41:10, 41:24, 44:2, 44:9, 47:22, 53:3, 53:10, 53:11, 54:14, 54:17, 54:23, 57:16, 57:19, 62:6, 62:14, 78:17
**minors** [21] - 42:4, 42:7, 42:11, 42:18, 44:9, 46:9, 46:25, 47:8, 48:9, 48:12, 49:2, 51:16, 55:4, 55:21, 55:23, 66:7, 66:8, 66:9, 99:5, 99:9, 99:13
**Minors** [2] - 25:5, 33:15
**minute** [1] - 7:9

**minutes** [2] - 62:25, 63:16
**miscommunication** [1] - 35:6
**miss** [1] - 36:9
**missed** [1] - 35:1
**Missing** [1] - 22:17
**mistaken** [1] - 6:17
**misunderstanding** [1] - 6:5
**mitigating** [1] - 58:21
**mitigation** [3] - 55:16, 57:10, 60:10
**models** [1] - 99:11
**moment** [6] - 20:7, 31:19, 60:23, 71:15, 98:23, 99:8
**money** [6] - 54:7, 55:23, 72:13, 74:1, 93:4, 94:2
**monitored** [1] - 28:7
**monster** [1] - 39:11
**monsters** [1] - 40:12
**Montalbano** [3] - 27:2, 50:3, 50:20
**month** [2] - 79:18, 96:16
**months** [20] - 4:5, 4:7, 9:24, 24:16, 40:6, 54:19, 56:1, 56:2, 56:5, 70:1, 70:20, 70:21, 70:22, 70:23, 71:7, 74:8, 74:12, 74:20
**moreover** [1] - 11:10
**morning** [14] - 2:6, 2:9, 2:11, 2:14, 2:15, 2:16, 3:1, 7:3, 13:9, 17:16, 17:18, 18:14, 18:18, 39:3
**most** [8] - 25:15, 56:3, 63:11, 65:25, 71:4, 82:10, 95:9, 95:10
**mostly** [1] - 50:18
**mother** [4] - 39:9, 41:10, 56:17, 57:3
**mothers** [1] - 38:16
**motion** [1] - 3:21
**mountain** [1] - 37:21
**moved** [3] - 40:4, 81:2, 93:22
**moving** [1] - 86:12
**MR** [277] - 2:6, 2:11, 2:21, 2:25, 3:4, 3:9, 3:11, 3:15, 3:18, 3:21, 4:2, 4:5, 4:8, 4:10, 4:16, 4:20, 4:23, 5:1, 5:4, 5:6, 5:12, 5:17, 5:24, 6:3, 6:7, 6:9, 6:13, 6:16,

6:19, 6:21, 6:24, 7:6, 7:15, 7:18, 7:21, 8:1, 8:4, 8:9, 8:11, 9:2, 9:9, 9:14, 9:18, 9:24, 10:5, 10:10, 10:12, 10:14, 10:18, 10:21, 10:23, 11:4, 11:9, 11:13, 11:16, 11:19, 11:22, 12:3, 12:11, 12:15, 12:21, 13:4, 13:8, 13:11, 13:20, 14:8, 14:13, 14:17, 16:13, 16:16, 16:22, 16:25, 17:6, 17:9, 17:15, 19:15, 19:23, 20:2, 22:6, 22:9, 23:7, 23:11, 23:23, 24:2, 24:6, 24:11, 24:16, 24:19, 25:19, 26:4, 26:8, 26:22, 26:24, 27:2, 27:13, 27:16, 27:20, 27:25, 28:5, 28:10, 28:15, 28:24, 29:4, 29:9, 29:14, 29:18, 29:24, 30:2, 30:9, 30:13, 30:16, 30:22, 31:5, 31:10, 31:15, 31:22, 32:1, 32:6, 32:9, 32:16, 33:20, 35:2, 35:23, 36:17, 36:20, 37:5, 37:8, 38:15, 38:19, 38:24, 41:7, 41:9, 43:14, 43:17, 43:19, 44:5, 44:12, 44:18, 44:23, 45:5, 45:23, 46:12, 47:3, 47:18, 48:13, 50:14, 50:17, 51:4, 51:6, 52:3, 52:11, 52:14, 53:16, 53:19, 53:25, 54:10, 54:15, 54:18, 54:21, 54:25, 55:3, 55:6, 55:11, 57:24, 58:6, 58:19, 59:23, 59:25, 60:6, 60:24, 61:2, 61:10, 61:12, 61:17, 61:20, 62:16, 62:19, 63:1, 63:4, 63:10, 63:14, 63:20, 63:22, 65:7, 65:14, 65:16, 67:19, 69:9, 70:3, 70:25, 71:2, 72:22, 73:1, 73:6, 73:12, 73:16, 73:22, 75:17, 75:20, 76:1, 76:15, 77:20, 78:12, 78:23, 79:1, 79:8, 79:12, 81:9, 81:12, 82:3, 82:16, 82:20,

82:24, 83:4, 83:12, 83:18, 84:5, 84:8, 84:10, 84:16, 84:24, 85:2, 85:6, 85:8, 85:20, 85:22, 86:4, 86:10, 86:13, 86:18, 86:23, 87:2, 90:6, 90:12, 90:24, 91:4, 91:6, 91:13, 91:18, 91:21, 92:1, 92:10, 92:16, 92:21, 92:23, 92:25, 93:12, 93:17, 94:1, 94:5, 94:9, 94:22, 95:4, 95:7, 95:16, 95:22, 96:3, 96:6, 96:9, 96:11, 96:19, 96:21, 96:24, 97:3, 97:5, 97:8, 97:20, 98:1, 98:2, 98:5, 100:5, 100:6, 100:17, 100:24
**MS** [29] - 13:16, 14:2, 14:21, 15:12, 15:15, 16:6, 21:6, 21:10, 21:16, 21:21, 21:24, 22:4, 26:13, 35:14, 35:18, 36:5, 59:8, 83:6, 87:6, 87:13, 87:25, 89:2, 89:6, 89:12, 90:17, 97:18, 100:2, 101:4, 101:7
**multiple** [10] - 17:2, 18:3, 30:9, 44:3, 44:16, 58:3, 61:24, 62:1, 62:10, 68:17
**must** [5] - 13:14, 23:19, 51:2, 69:15, 85:13
**MV** [1] - 8:6

## N

**name** [4] - 17:19, 26:21, 39:8, 56:19
**National** [1] - 22:16
**nature** [6] - 44:25, 57:13, 57:14, 62:5, 83:20, 98:20
**necessarily** [3] - 29:9, 29:12, 53:24
**necessary** [7] - 13:2, 23:15, 37:13, 71:21, 81:15, 87:23, 99:23
**Neck** [1] - 59:12
**need** [23] - 3:7, 5:20, 8:22, 17:1, 28:4, 36:18, 45:3, 75:1, 75:12, 76:19, 76:20, 77:8, 81:6, 84:1, 84:18, 84:19, 89:19, 90:1, 98:7, 101:12,

101:23
**needed** [3] - 22:7, 75:11, 82:1
**needs** [11] - 16:15, 17:7, 28:7, 36:17, 57:8, 57:20, 59:8, 59:10, 83:6, 86:5, 93:5
**net** [1] - 36:13
**neuritis** [1] - 58:3
**never** [9] - 8:10, 31:12, 36:5, 48:10, 48:16, 51:10, 51:23, 52:10, 56:14
**new** [3] - 15:8, 18:6, 18:8
**next** [3] - 12:4, 13:1, 100:20
**night** [7] - 3:17, 4:25, 5:24, 6:6, 11:3, 20:25, 100:12
**nights** [1] - 40:6
**NINA** [1] - 1:18
**Nina** [1] - 2:12
**nine** [2] - 2:18, 100:23
**ninth** [1] - 94:13
**Ninth** [1] - 89:13
**nitpick** [1] - 29:5
**non** [1] - 92:19
**non-indigent** [1] - 92:19
**noncompliance** [1] - 53:6
**noncontraband** [1] - 87:9
**none** [7] - 34:6, 51:17, 53:14, 62:14, 62:16, 95:13, 99:19
**nonetheless** [1] - 34:4
**nonexistent** [1] - 73:19
**normally** [2] - 49:20, 51:18
**Northern** [1] - 59:12
**note** [13] - 12:16, 13:17, 14:3, 19:19, 23:2, 27:2, 37:3, 37:9, 61:20, 90:21, 90:24, 91:2, 95:23
**noted** [3] - 37:16, 58:16, 61:23
**NOTES** [1] - 1:25
**nothing** [16] - 6:25, 18:13, 23:5, 48:10, 49:23, 50:22, 51:12, 56:7, 56:8, 74:12, 74:13, 91:4, 100:5, 100:6, 100:7, 101:9
**notice** [2] - 90:7, 90:25

**noting** [2] - 12:21, 32:22
**Noyes** [1] - 89:4
**Number** [1] - 2:4
**number** [7] - 2:22, 28:25, 29:20, 29:22, 29:25, 64:1, 70:1
**NYU** [1] - 65:18

## O

**o'clock** [7] - 3:16, 7:2, 11:3, 100:12, 100:20
**oath** [1] - 53:12
**object** [2] - 11:6, 15:19
**objected** [3] - 7:10, 32:19, 58:11
**objection** [28] - 7:14, 10:22, 11:15, 11:18, 13:2, 15:20, 20:8, 20:10, 20:11, 20:13, 21:13, 23:13, 24:22, 24:23, 24:24, 25:17, 25:23, 32:10, 32:14, 32:18, 32:24, 33:21, 34:25, 35:3, 38:22, 58:16, 97:3, 97:5
**objections** [22] - 3:17, 4:12, 4:18, 5:2, 8:13, 9:15, 10:3, 10:16, 15:2, 18:5, 19:13, 19:25, 20:3, 21:1, 21:2, 21:5, 22:14, 35:1, 36:22, 37:15, 41:23
**obligation** [2] - 79:14, 96:2
**obstruction** [2] - 15:20, 16:9
**obtained** [1] - 20:16
**obviously** [4] - 6:1, 41:15, 42:12, 45:5
**occur** [1] - 80:24
**occurs** [1] - 83:17
**odd** [1] - 48:14
**odds** [1] - 59:13
**OF** [7] - 1:1, 1:3, 1:7, 1:15, 1:25, 102:15, 102:24
**OFF** [3] - 2:24, 54:12, 85:1
**offender** [6] - 51:3, 58:22, 58:23, 81:15, 99:1, 99:2
**offenders** [1] - 45:19
**offending** [2] - 50:7, 50:8
**offense** [8] - 16:2, 16:4, 23:14, 23:17,

25:10, 32:21, 33:23, 41:21
**Offenses** [2] - 25:4, 33:13
**offenses** [6] - 64:2, 64:22, 66:1, 67:22, 69:13, 87:10
**OFFICE** [2] - 1:12, 1:15
**office** [3] - 36:2, 98:24, 100:7
**Office** [1] - 20:16
**officer** [9] - 12:17, 22:15, 34:23, 35:5, 97:10, 98:13, 99:6, 99:12, 99:17
**OFFICER** [6] - 97:12, 97:14, 98:15, 98:19, 98:22, 100:9
**officer's** [1] - 98:6
**OFFICIAL** [2] - 1:21, 102:15
**often** [2] - 42:11, 45:16
**Oklahoma** [1] - 59:13
**old** [3] - 42:5, 54:24, 57:3
**older** [1] - 46:19
**omitted** [3] - 97:10, 97:13, 98:14
**once** [6] - 48:20, 50:11, 57:18, 63:12, 71:19, 83:7
**one** [41] - 6:17, 6:20, 10:17, 18:1, 21:12, 23:22, 26:14, 26:21, 26:25, 28:11, 32:13, 34:11, 36:8, 38:16, 39:9, 40:24, 41:10, 51:1, 52:17, 54:1, 55:8, 56:3, 58:9, 60:4, 61:10, 61:13, 62:21, 65:4, 65:21, 68:16, 75:11, 76:17, 79:11, 82:7, 82:8, 82:22, 86:25, 100:3
**ones** [1] - 47:21
**ongoing** [4] - 42:23, 53:9, 59:17, 81:7
**online** [5] - 42:4, 44:2, 44:9, 53:8, 61:25
**onset** [2] - 80:23, 84:15
**onward** [1] - 15:4
**open** [2] - 80:10, 101:12
**opportunity** [11] - 6:2, 17:12, 17:13, 17:25, 18:21, 38:17, 59:16, 60:8, 60:13, 60:21,

61:15
**optic** [1] - 58:3
**oral** [2] - 89:19, 90:1
**order** [10] - 17:5, 22:22, 59:3, 78:22, 90:8, 95:18, 96:6, 96:9, 96:20
**ordered** [6] - 17:3, 80:12, 84:19, 84:20, 96:14, 98:16
**orders** [3] - 48:6, 53:11, 58:24
**oriented** [3] - 48:19, 48:24, 57:17
**original** [5] - 4:14, 4:15, 4:17, 10:2, 18:1
**otherwise** [5] - 8:7, 20:22, 33:4, 54:4, 89:20
**ought** [3] - 49:18, 76:23, 85:25
**outlined** [1] - 45:15
**outset** [2] - 2:17, 53:5
**outside** [1] - 13:24
**overcome** [1] - 89:11
**overlap** [1] - 29:10
**overlaps** [1] - 29:12
**overrule** [3] - 15:20, 22:14, 32:24
**overruled** [3] - 23:14, 25:17, 34:25
**own** [4] - 48:13, 58:24, 71:25, 101:10

## P

**P.D** [1] - 1:18
**paced** [1] - 39:13
**page** [4] - 25:6, 43:15, 43:16, 61:24
**pages** [3] - 1:24, 71:25, 101:10
**paid** [1] - 91:14
**pain** [4] - 34:12, 34:14, 34:15, 34:20
**painted** [1] - 95:6
**pants** [1] - 12:5
**paper** [3] - 43:7, 45:15, 61:24
**papers** [1] - 89:20
**paragraph** [12] - 12:19, 43:20, 53:17
**Paragraph** [18] - 6:11, 7:10, 11:7, 11:14, 11:20, 12:4, 12:12, 13:1, 13:12, 13:22, 14:4, 14:19, 14:24, 17:8, 22:12, 24:21, 33:7

**paragraphs** [3] - 20:15, 21:11
**Paragraphs** [4] - 13:18, 20:10, 23:12, 32:19
**paraphilic** [2] - 50:4, 50:22
**parcel** [1] - 34:18
**pardon** [2] - 70:15, 97:4
**parents** [8] - 26:10, 58:8, 73:16, 73:20, 77:24, 77:25, 78:2, 92:7
**parents'** [1] - 92:10
**part** [12] - 14:5, 15:1, 26:5, 26:6, 34:18, 38:6, 51:23, 81:13, 81:20, 85:17
**participate** [5] - 33:5, 66:4, 76:17, 78:4, 98:24
**participated** [3] - 12:1, 37:19, 46:9
**participates** [1] - 29:8
**participation** [1] - 33:5
**particular** [7] - 12:23, 41:17, 41:19, 46:7, 46:22, 47:25, 62:22
**particularly** [1] - 48:15
**party** [1] - 100:4
**pass** [1] - 96:7
**past** [1] - 85:17
**patience** [1] - 12:22
**pay** [10] - 40:23, 71:8, 74:14, 78:2, 78:6, 79:17, 89:9, 92:14, 94:24, 101:23
**payable** [1] - 79:15
**paying** [4] - 60:4, 79:16, 95:2, 96:15
**payments** [2] - 91:14, 92:18
**pedophile** [4] - 27:18, 50:2, 50:7, 50:23
**pedophilic** [2] - 27:21, 51:20
**penalties** [3] - 35:11, 82:18, 96:3
**people** [25] - 8:18, 11:11, 18:9, 21:18, 28:12, 28:23, 29:16, 48:4, 48:17, 51:9, 51:13, 51:20, 55:18, 55:22, 62:23, 66:11, 66:15, 67:4, 67:23, 68:2, 78:16, 82:1, 94:11, 95:10, 95:12
**per** [10] - 22:25, 66:6,

79:8, 79:18, 91:18, 91:21, 92:21, 93:24, 95:19, 97:23
**perfect** [1] - 102:6
**period** [3] - 70:19, 71:17
**periodic** [1] - 83:16
**periods** [1] - 75:10
**permission** [1] - 99:17
**permit** [2] - 16:4, 67:12
**permits** [1] - 38:21
**permitted** [2] - 101:18
**person** [10] - 3:24, 12:23, 18:13, 39:1, 46:19, 56:10, 57:19, 62:8, 65:18, 65:23
**person's** [1] - 56:19
**personal** [4] - 64:7, 64:12, 64:17, 65:1
**personality** [1] - 50:21
**personally** [1] - 36:18
**perspective** [1] - 55:13
**persuade** [2] - 33:2, 68:3
**persuaded** [3] - 11:11, 42:10, 49:21
**phalanx** [1] - 19:9
**phase** [1] - 88:2
**physical** [2] - 26:18, 34:14, 52:17, 67:14, 80:8, 84:9
**physically** [4] - 48:11, 53:12, 58:7, 72:6
**pick** [2] - 63:10, 82:8
**picture** [5] - 47:16, 53:4, 68:20, 68:25, 95:6
**pictures** [1] - 66:15
**place** [8] - 9:16, 49:6, 59:12, 81:3, 81:5, 82:11, 82:13
**plaintiff** [1] - 1:3
**PLAINTIFF** [1] - 1:10
**planet** [1] - 94:12
**play** [3] - 7:12, 11:23, 35:11
**playing** [1] - 57:15
**pleading** [12] - 7:3, 23:7, 23:9, 32:2, 51:7, 53:1, 59:1, 81:18, 81:20, 83:12, 83:14, 86:25
**pleadings** [1] - 20:3
**pleasure** [2] - 34:12, 34:15
**podium** [3] - 60:16, 63:25, 78:9
**point** [22] - 5:13, 7:23,

9:6, 11:24, 13:12, 15:19, 23:16, 23:25, 28:24, 29:10, 29:18, 49:14, 50:18, 53:23, 55:17, 61:4, 65:19, 68:25, 75:9, 83:9, 88:12, 93:3
**pointed** [2] - 68:23, 80:19, 85:16
**pointing** [1] - 82:11
**points** [4] - 61:17, 66:8, 77:15, 91:6
**poor** [1] - 66:19
**pornography** [30] - 28:16, 29:6, 29:23, 30:1, 30:14, 33:23, 34:3, 42:16, 46:7, 46:13, 46:21, 47:9, 47:11, 47:15, 47:17, 47:20, 47:23, 49:17, 51:18, 52:7, 52:18, 64:2, 64:3, 66:16, 78:13, 78:19, 91:19, 93:3, 99:11
**portions** [1] - 86:16
**portray** [1] - 34:9
**portrays** [1] - 33:24
**posed** [2] - 44:2, 44:8
**position** [12] - 28:18, 31:1, 31:5, 31:8, 31:10, 43:6, 45:15, 48:2, 56:17, 61:24, 98:5
**positions** [1] - 8:14
**possess** [1] - 99:9
**possessed** [4] - 31:14, 42:15, 42:17, 42:20
**possession** [10] - 29:11, 33:23, 62:17, 64:3, 66:23, 69:19, 75:18, 75:20, 78:12, 93:2
**possible** [3] - 38:1, 101:25
**posted** [1] - 42:3
**postponed** [2] - 39:22
**potential** [7] - 73:10, 73:11, 92:3, 92:12, 93:6, 93:22, 94:14
**PRABHU** [1] - 1:11
**Prabhu** [1] - 2:7
**pray** [2] - 40:14, 40:21
**precedent** [1] - 90:6
**precise** [1] - 27:23
**precisely** [1] - 11:18
**predators** [1] - 39:17
**predecessors** [1] - 10:17
**predict** [1] - 80:23

**predominantly** [1] - 30:16
**preface** [1] - 32:22
**prefer** [1] - 90:23
**preparation** [1] - 81:13
**prepared** [4] - 10:19, 10:23, 20:18, 85:12
**preponderance** [3] - 15:23, 20:12, 33:1
**prepubescent** [2] - 30:17, 30:20
**presence** [1] - 47:10
**present** [8] - 2:13, 12:17, 37:19, 38:16, 44:24, 53:14, 62:3, 64:16
**presented** [3] - 20:19, 31:16, 64:5
**presentence** [19] - 3:22, 17:12, 17:13, 18:1, 18:4, 18:6, 19:14, 19:17, 19:25, 21:23, 22:15, 25:25, 26:6, 26:11, 26:15, 27:5, 35:4, 36:25, 84:7
**presently** [1] - 92:10
**preserve** [1] - 90:9
**presided** [1] - 64:4
**pretrial** [1] - 84:20
**pretty** [5] - 15:15, 57:25, 59:14, 75:24, 93:13
**prevent** [1] - 84:21
**previous** [1] - 19:8
**previously** [2] - 20:1, 62:4
**Primmer** [1] - 25:4
**principal** [1] - 75:3
**prison** [3] - 24:15, 75:7, 98:11
**Prisons** [10] - 7:25, 37:18, 37:20, 38:2, 70:19, 80:6, 80:18, 80:21, 80:25, 97:2
**privacy** [1] - 53:11
**probation** [13] - 12:17, 22:15, 34:23, 35:5, 36:2, 97:10, 98:6, 98:13, 98:24, 99:6, 99:12, 99:17, 100:7
**PROBATION** [6] - 97:12, 97:14, 98:15, 98:19, 98:22, 100:9
**problem** [4] - 83:10, 93:24, 94:2, 98:18
**problems** [3] - 26:18, 72:6, 102:5
**procedure** [3] - 3:14,

88:1, 88:17
**proceed** [2] - 23:18, 37:2
**proceeding** [2] - 6:5, 38:15
**proceedings** [1] - 102:18
**process** [4] - 18:8, 22:24, 50:20, 59:17
**proclivities** [1] - 67:3
**produce** [1] - 42:7
**produced** [2] - 42:16, 42:19
**producer** [2] - 47:23, 52:18
**producing** [2] - 33:6, 46:14
**production** [22] - 34:3, 46:7, 46:12, 46:15, 46:21, 47:9, 47:11, 47:15, 47:17, 51:18, 52:6, 55:9, 61:25, 62:16, 64:2, 66:22, 68:17, 68:22, 69:14, 69:17, 78:17, 91:17
**production-of-child-pornography** [3] - 46:21, 47:9, 47:11
**profit** [1] - 76:18
**profound** [1] - 41:13
**program** [2] - 76:17, 98:24
**prohibited** [1] - 20:23
**promotes** [1] - 64:20
**promptly** [1] - 4:11
**proof** [1] - 48:5
**property** [1] - 85:7
**proportion** [1] - 56:23
**proscribe** [1] - 66:5
**prosecuted** [1] - 38:4
**protect** [2] - 66:18, 75:5
**protocol** [1] - 84:12
**protocols** [2] - 59:11, 83:23
**proved** [1] - 47:4
**proven** [1] - 20:12
**provide** [3] - 35:5, 64:11, 80:13
**provided** [12] - 3:5, 3:6, 19:4, 20:17, 26:19, 35:7, 35:22, 35:23, 36:4, 36:5, 74:5
**provides** [3] - 45:4, 64:21, 96:20
**pseudonyms** [1] - 78:14
**PSR** [29] - 3:17, 4:9, 4:10, 4:13, 4:14,

4:15, 4:19, 5:9, 6:12, 6:17, 9:11, 9:25, 10:1, 10:4, 10:15, 11:15, 11:17, 14:4, 15:1, 15:9, 15:21, 35:9, 37:16, 41:12, 41:23, 79:4, 84:6
**psychosexual** [2] - 50:1, 98:25
**public** [2] - 75:5, 75:6
**published** [2] - 25:5, 54:8
**punch** [1] - 76:3
**punished** [1] - 57:20
**punishment** [4] - 34:12, 64:21, 66:1, 77:25
**punitive** [2] - 58:24, 77:23
**purpose** [7] - 33:6, 46:14, 46:23, 47:2, 47:4, 48:3, 68:24
**purposes** [3] - 7:15, 46:24, 75:3
**pursuant** [6] - 24:23, 32:20, 33:8, 33:22, 72:20, 74:2
**pursued** [1] - 53:9
**put** [18] - 3:21, 4:22, 5:8, 5:18, 14:11, 15:21, 16:2, 23:3, 43:11, 47:6, 58:11, 66:13, 80:18, 83:10, 83:15, 83:24, 83:25, 94:11
**puts** [1] - 40:10
**putting** [2] - 27:24, 58:17

## Q

**qualms** [1] - 19:8
**questions** [4] - 20:5, 62:12, 63:23, 87:4
**quickly** [2] - 10:10, 16:20
**quite** [8] - 23:15, 37:9, 37:22, 42:13, 45:5, 78:20, 87:25
**quoting** [2] - 25:14, 33:13

## R

**radically** [1] - 54:21
**raise** [3] - 7:24, 10:3, 11:18
**raised** [4] - 20:8, 20:9, 23:18, 65:4
**range** [1] - 69:23
**rather** [1] - 38:22

**rationale** [1] - 52:12
**re** [3] - 47:4, 50:7, 50:8
**re-litigate** [1] - 47:4
**re-offending** [2] - 50:7, 50:8
**reached** [2] - 48:18, 78:23
**read** [11] - 9:4, 17:13, 18:22, 18:23, 21:20, 26:6, 37:18, 50:16, 50:17, 53:15, 63:23
**real** [3] - 51:20, 51:22, 89:7
**reality** [1] - 93:8
**realizes** [1] - 40:15
**really** [4] - 16:1, 32:22, 77:23, 98:5
**reason** [8] - 5:18, 9:7, 16:16, 63:18, 64:14, 65:4, 67:7, 67:22
**reasonable** [2] - 25:21, 94:25
**reasonably** [1] - 57:19
**reasoned** [1] - 100:1
**reasons** [2] - 69:1, 69:2
**REBECCA** [1] - 1:21
**Rebecca** [1] - 102:17
**receipt** [3] - 64:3, 69:17, 93:3
**receive** [2] - 57:23, 80:14
**received** [8] - 3:17, 3:23, 6:8, 26:1, 26:2, 36:12, 44:15, 84:23
**receiving** [3] - 80:15, 84:2, 100:11
**recent** [1] - 56:3
**recess** [4] - 63:7, 63:15, 102:9
**Recess** [1] - 63:17
**recidivism** [4] - 27:22, 28:8, 50:5, 57:12
**recite** [1] - 80:9
**recited** [1] - 53:18
**recognition** [1] - 82:9
**recognize** [4] - 11:7, 42:1, 42:2, 102:5
**recognized** [1] - 88:20
**recollection** [1] - 30:12
**recommend** [2] - 80:6, 80:25
**recommendation** [2] - 59:4, 81:21
**recommending** [1] - 41:18
**record** [18] - 14:22, 15:22, 17:20, 27:3, 32:25, 34:21, 44:16,

49:11, 50:22, 52:19, 58:11, 73:7, 80:10, 92:6, 98:7, 102:11, 102:18
**RECORD** [3] - 2:24, 54:12, 85:1
**recorded** [2] - 17:4, 52:16
**recording** [3] - 47:25, 49:12, 53:8
**records** [2] - 16:21, 81:5
**recovery** [1] - 88:8
**reduce** [1] - 94:8
**reducing** [1] - 71:21
**redundant** [2] - 21:2, 24:25
**reenter** [1] - 93:6
**reference** [2] - 49:3, 53:20
**references** [1] - 35:4
**referring** [2] - 13:13, 87:21
**reflect** [1] - 95:20
**reflecting** [2] - 59:3, 66:19
**reflective** [3] - 42:14, 43:2, 69:11
**reflects** [2] - 22:23, 67:21
**refresh** [1] - 30:12
**refrigerated** [2] - 59:9, 83:19
**refusal** [1] - 42:23
**refused** [2] - 18:3, 18:17
**regard** [5] - 37:3, 45:14, 69:7, 71:12, 72:14
**regarding** [4] - 19:19, 32:9, 78:24, 84:15
**regimented** [1] - 83:18
**register** [2] - 51:2, 99:1
**registration** [1] - 99:2
**registry** [2] - 58:22, 83:6
**regular** [2] - 84:11, 84:12
**reiterate** [1] - 7:16
**rejected** [1] - 66:17
**relate** [2] - 23:4, 85:15
**related** [4] - 26:1, 28:21, 58:5, 99:15
**relates** [4] - 12:3, 29:10, 57:10, 62:20
**relating** [1] - 31:3
**relationship** [4] - 17:21, 34:19, 48:5
**relationships** [1] -

34:17
**relative** [1] - 22:23
**release** [17] - 35:15,
35:18, 36:7, 36:8,
43:9, 74:16, 74:17,
74:18, 75:1, 75:8,
75:10, 76:9, 76:11,
80:2, 96:16, 99:20,
99:21
**released** [4] - 77:17,
79:17, 79:23, 94:25
**releases** [6] - 35:4,
35:6, 35:9, 35:23,
36:4, 36:6
**relevance** [1] - 28:6
**relevant** [6] - 14:14,
35:10, 53:7, 55:16,
55:17, 78:6
**relied** [1] - 22:15
**rely** [3] - 16:23, 20:3,
24:1
**relying** [1] - 90:15
**remain** [1] - 78:10
**remaining** [3] - 75:18,
75:20, 88:21
**remand** [1] - 96:25
**remedied** [1] - 4:19
**remember** [10] -
21:13, 31:22, 32:2,
32:4, 52:15, 65:15,
82:6, 95:11, 101:9
**remind** [1] - 100:14
**reminded** [2] - 77:18,
91:11
**remorse** [1] - 41:22
**remorseful** [2] -
59:19, 60:2
**removing** [1] - 12:5
**repeated** [1] - 45:10
**repeatedly** [2] - 53:10,
55:25
**repetitive** [1] - 56:7
**report** [24] - 3:22,
17:12, 17:13, 18:1,
18:4, 18:6, 19:14,
19:17, 19:25, 21:23,
22:15, 25:6, 25:25,
26:6, 26:12, 26:15,
27:5, 35:4, 35:19,
36:8, 36:11, 36:25,
50:18, 84:7
**reported** [1] - 62:6
**REPORTER** [3] - 1:21,
102:15, 102:24
**reports** [2] - 15:10,
20:17
**represent** [1] - 67:18
**requested** [4] - 23:3,
35:13, 78:10, 78:13
**requesting** [4] - 24:6,

38:17, 79:1, 79:2
**requests** [3] - 22:21,
62:14, 62:18
**require** [1] - 81:17
**required** [17] - 16:17,
16:19, 22:22, 34:7,
34:11, 36:24, 58:23,
60:12, 64:18, 64:20,
76:13, 80:13, 88:16,
90:4, 95:17, 97:17
**requirement** [4] -
23:21, 44:22, 55:10,
83:16
**requirements** [1] -
80:11
**requires** [14] - 34:8,
38:21, 64:6, 64:13,
67:21, 68:5, 68:9,
69:3, 72:24, 79:3,
80:24, 83:15, 83:16,
94:9
**research** [2] - 81:14,
82:10
**resiliency** [1] - 94:20
**resilient** [1] - 95:11
**resist** [1] - 67:10
**resolve** [1] - 85:12
**resolved** [1] - 86:6
**resources** [1] - 73:8
**respect** [7] - 14:18,
21:5, 39:11, 41:19,
45:7, 64:21, 70:19
**respects** [1] - 42:21
**respond** [5] - 60:21,
61:16, 72:3, 72:8,
89:19
**response** [1] - 6:2
**rest** [5] - 7:3, 40:20,
60:4, 81:8, 99:19
**restitution** [19] -
22:21, 22:22, 23:2,
62:15, 62:17, 77:22,
78:8, 78:11, 78:13,
78:24, 79:14, 82:17,
91:11, 91:14, 95:18,
96:4, 96:6, 96:14,
96:16
**Reston** [1] - 1:16
**result** [7] - 15:20,
31:7, 34:5, 56:22,
67:16, 89:23, 89:24
**retained** [8] - 4:2, 4:4,
26:20, 27:8, 27:10,
27:11, 64:11, 88:4
**retrieval** [1] - 88:8
**return** [4] - 39:17,
41:5, 85:7, 87:8
**returned** [4] - 23:6,
75:7, 86:16, 87:15
**review** [7] - 17:12,

17:25, 18:4, 20:18,
37:21, 76:13, 88:7
**reviewed** [8] - 4:10,
4:15, 4:16, 4:24, 6:6,
18:18, 29:1, 30:12
**reviewing** [1] - 19:21
**revised** [1] - 18:6
**reworded** [2] - 21:6,
21:11
**risk** [5] - 27:21, 28:8,
50:7, 50:8, 57:12
**risky** [1] - 80:22
**road** [1] - 58:15
**rocks** [1] - 93:17
**role** [4] - 7:12, 11:24,
22:23, 57:15
**room** [4] - 39:13, 47:7,
47:15, 47:16
**rosier** [1] - 95:6
**RPR** [1] - 1:21
**rule** [4] - 20:6, 82:23,
83:1, 89:25
**ruled** [4] - 19:20,
31:20, 36:22, 37:15
**rules** [1] - 86:19
**rulings** [1] - 36:23
**run** [7] - 35:15, 35:19,
36:8, 36:10, 70:23,
74:22, 75:23

---

## S

**Sachs** [1] - 93:20
**sadism** [1] - 34:17
**sadistic** [6] - 32:10,
33:24, 34:1, 34:6,
34:9, 34:11
**sadomasochistic** [5] -
30:18, 42:12, 42:18,
44:25, 62:5
**safe** [1] - 40:4
**safety** [1] - 53:11
**sanction** [1] - 55:14
**SANDERS** [1] - 1:5
**Sanders** [66] - 2:3,
2:12, 2:15, 3:22,
4:11, 8:15, 9:19,
13:14, 17:16, 17:19,
16:20, 35:5, 36:17,
46:9, 47:7, 48:5,
48:10, 48:16, 48:20,
49:11, 49:19, 50:1,
50:9, 52:20, 54:2,
54:3, 54:16, 55:7,
55:14, 56:9, 56:18,
56:20, 57:7, 57:18,
58:16, 59:15, 60:2,
60:8, 63:24, 64:1,
65:17, 66:3, 67:1,
70:18, 71:17, 74:11,

74:23, 75:9, 76:19,
77:5, 78:10, 79:16,
80:7, 80:15, 81:12,
81:16, 83:5, 90:19,
91:4, 93:11, 95:10,
100:6, 101:8, 101:21
**Sanders'** [3] - 7:4,
36:13, 48:2
**sat** [1] - 39:12
**satisfied** [9] - 6:10,
10:13, 15:21, 15:22,
16:9, 19:3, 25:7,
47:5, 99:18
**satisfies** [1] - 15:23
**saw** [4] - 9:18, 41:11,
50:25, 51:6
**scanning** [1] - 88:5
**scar** [2] - 67:14, 67:15
**scars** [4] - 67:13,
67:16, 67:20
**schedule** [1] - 84:11
**Schlessinger** [1] - 2:7
**SCHLESSINGER** [1] -
1:10
**school** [1] - 40:5
**sclerosis** [2] - 17:2,
58:3
**se** [1] - 66:6
**seal** [1] - 3:1
**seat** [1] - 41:5
**seated** [2] - 4:25,
19:12
**second** [3] - 28:16,
54:1, 101:14
**Second** [2] - 88:12,
88:25
**secondly** [1] - 75:5
**section** [1] - 34:7
**Section** [3] - 25:9,
72:21, 77:14
**see** [5] - 9:19, 11:25,
13:1, 17:25, 27:11,
28:20, 29:23, 30:1,
31:3, 32:14, 39:10,
58:8, 89:1, 100:14,
102:4
**seeing** [1] - 42:18
**seek** [4] - 71:18,
74:23, 95:1
**seeking** [3] - 42:3,
48:22, 87:7
**seem** [3] - 7:22, 23:22,
50:23
**sees** [1] - 29:21
**self** [1] - 66:19
**self-destructive** [1] -
66:19
**selling..** [1] - 93:16
**send** [6] - 34:22, 44:3,
44:9, 45:18, 49:13,

62:23
**sending** [3] - 3:13,
65:22
**sends** [1] - 16:24
**sense** [2] - 54:22,
83:10
**sensible** [1] - 23:21
**sensitive** [2] - 56:16,
63:7
**sent** [8] - 11:2, 16:20,
18:12, 22:16, 26:2,
36:9, 54:17, 84:1
**sentence** [65] - 13:6,
16:12, 23:20, 24:5,
24:6, 24:9, 24:12,
24:14, 37:3, 37:11,
37:12, 38:14, 40:21,
40:23, 41:17, 43:8,
43:12, 44:2, 44:11,
44:15, 44:21, 45:3,
45:7, 45:13, 45:18,
49:19, 51:2, 52:12,
53:20, 53:25, 54:19,
55:12, 57:9, 58:11,
60:11, 61:23, 63:19,
64:7, 64:19, 64:20,
64:23, 67:21, 68:5,
68:6, 68:9, 68:10,
68:11, 69:6, 69:10,
69:12, 69:20, 70:16,
72:18, 73:24, 74:2,
74:12, 74:19, 74:23,
75:16, 75:23, 76:8,
80:7, 81:1, 90:20,
93:2
**sentenced** [1] - 82:1
**sentences** [12] - 43:6,
43:22, 51:25, 52:4,
52:5, 52:6, 55:18,
61:18, 62:11, 70:22,
73:3, 74:9
**Sentencing** [3] - 25:6,
25:8, 69:22
**SENTENCING** [1] -
1:7
**sentencing** [29] - 5:7,
5:8, 5:13, 7:1, 7:3,
7:12, 7:15, 8:2, 11:8,
11:24, 16:2, 23:25,
32:23, 33:18, 37:14,
51:6, 52:22, 61:4,
64:14, 69:23, 69:25,
81:14, 88:19, 90:2,
90:4, 90:9, 96:22,
97:6, 100:20
**separate** [3] - 36:6,
52:16, 66:23
**sergeant** [1] - 18:7
**series** [4] - 22:18,
22:20

**serious** [5] - 41:13, 58:2, 64:1, 67:14, 67:22
**seriousness** [2] - 41:20, 67:21
**serve** [2] - 80:7, 81:1
**serves** [1] - 64:22
**service** [1] - 33:2
**services** [3] - 99:5, 99:8, 99:16
**SETH** [1] - 1:10
**Seth** [1] - 2:7
**setting** [1] - 51:21
**seven** [2] - 14:10, 78:3
**several** [7] - 4:5, 4:7, 79:7, 79:11, 98:19, 98:21, 98:22
**severe** [1] - 69:5
**severely** [1] - 93:7
**Sex** [2] - 25:4, 33:14
**sex** [21] - 42:12, 46:19, 51:3, 52:15, 52:17, 53:3, 54:23, 55:21, 55:23, 55:25, 56:4, 58:23, 62:7, 68:19, 76:21, 81:15, 99:1, 99:2, 99:15
**sex-related** [1] - 99:15
**sex-trafficker** [1] - 55:25
**sexual** [15] - 28:22, 29:12, 34:13, 42:8, 42:15, 46:13, 48:12, 50:4, 53:7, 55:7, 58:22, 62:23, 67:2, 67:9, 95:12
**Sexual** [2] - 25:5, 33:14
**sexually** [9] - 30:17, 33:4, 33:6, 42:13, 44:3, 44:9, 44:17, 99:10, 101:15
**shall** [2] - 99:4, 99:12
**share** [2] - 54:4, 54:5
**sharply** [2] - 89:18, 89:21
**shocking** [1] - 42:21
**shorten** [1] - 75:10
**shortened** [2] - 71:19, 76:10
**show** [7] - 42:24, 75:12, 75:13, 79:19, 79:20, 95:1
**shown** [2] - 13:9, 68:24
**shows** [2] - 34:2, 92:6
**shuffle** [2] - 35:8, 36:9
**shuffled** [1] - 80:20
**siblings** [1] - 51:9
**sic** [3] - 17:5, 27:15,

95:20
**Sickler** [1] - 81:12
**sign** [1] - 42:24
**sIGNATURE** [1] - 102:24
**signed** [1] - 36:7
**significant** [7] - 42:9, 42:13, 45:6, 73:8, 87:23, 93:19, 93:20
**similar** [13] - 43:6, 43:22, 44:20, 51:25, 52:4, 61:19, 61:25, 62:11, 68:12, 70:13, 74:5
**simple** [1] - 71:12
**simply** [2] - 45:8, 66:18
**Singer** [2] - 27:15, 27:17
**sit** [1] - 94:3
**sites** [1] - 48:24
**sitting** [1] - 78:9
**situation** [3] - 64:9, 79:21, 94:16
**six** [2] - 71:9, 71:10
**slake** [1] - 76:5
**slapping** [1] - 34:21
**slaves** [2] - 42:3, 49:8
**sleep** [1] - 40:16
**sleeping** [1] - 40:6
**slightly** [1] - 86:18
**small** [1] - 28:17
**smart** [3] - 77:7, 101:11, 102:3
**Smihal** [14] - 12:18, 13:12, 13:15, 14:1, 14:3, 14:18, 15:11, 16:5, 19:18, 21:4, 26:5, 35:6, 35:12, 36:3
**SMIHAL** [18] - 13:16, 14:2, 14:21, 15:12, 15:15, 16:6, 21:6, 21:10, 21:16, 21:21, 21:24, 22:4, 26:13, 35:14, 35:18, 36:5, 97:18, 100:2
**social** [1] - 40:7
**society's** [1] - 28:13
**solely** [1] - 16:23
**solicit** [1] - 33:4
**solution** [1] - 89:23
**someone** [1] - 40:14
**sometimes** [1] - 37:21
**somewhat** [2] - 55:24, 74:5
**somewhere** [2] - 36:9, 84:1
**son** [8] - 39:11, 39:15, 39:18, 39:23, 40:2,

40:8, 40:19
**soon** [1] - 3:22
**sorry** [11] - 33:12, 35:17, 37:5, 46:10, 47:1, 60:3, 60:19, 67:8, 71:10, 83:13, 94:3
**sort** [7] - 21:14, 28:8, 45:15, 45:20, 48:22, 57:16, 92:4
**sorts** [1] - 93:21
**sought** [1] - 51:13
**sound** [1] - 48:15
**speaking** [1] - 86:25
**special** [30] - 9:20, 71:8, 71:12, 71:14, 72:19, 72:20, 72:22, 72:23, 72:24, 73:2, 74:2, 74:14, 76:16, 77:11, 77:12, 77:13, 77:23, 78:1, 80:2, 80:5, 91:8, 91:15, 92:14, 92:19, 92:20, 97:24, 98:4, 98:16, 98:19, 98:22
**specific** [14] - 29:2, 42:7, 42:11, 42:17, 45:12, 66:2, 70:7, 70:8, 70:9, 81:18, 82:8, 82:13, 84:15
**specifically** [7] - 12:3, 25:9, 32:12, 33:15, 44:25, 59:1, 61:5
**specifics** [1] - 87:3
**speculate** [1] - 30:3
**speech** [1] - 67:17
**spell** [2] - 83:11, 83:12
**spelled** [1] - 83:14
**spent** [3] - 27:14, 57:21, 57:24
**Spongebob** [1] - 22:20
**Square** [1] - 1:22
**stand** [4] - 64:1, 64:23, 68:7, 85:11
**standard** [2] - 76:12, 96:9
**stands** [2] - 63:15, 102:9
**start** [1] - 92:17
**state** [2] - 10:7, 58:13
**statement** [3] - 12:25, 35:15, 36:14
**statements** [5] - 12:24, 14:5, 22:21, 35:13, 41:11
**states** [1] - 25:9
**States** [6] - 2:3, 2:8, 13:24, 20:16, 61:1, 61:3

**STATES** [3] - 1:1, 1:3, 1:8
**statute** [10] - 44:22, 47:5, 48:1, 52:23, 79:3, 91:14, 94:3, 94:7, 94:11, 94:17
**stay** [1] - 84:1
**stayed** [2] - 47:16, 54:5
**stems** [1] - 53:2
**STENOGRAPHIC** [1] - 1:25
**steps** [1] - 80:12
**still** [9] - 36:12, 40:6, 40:10, 47:17, 80:13, 80:15, 100:12, 100:13
**STONESTREET** [1] - 1:21
**Stonestreet** [2] - 102:17, 102:23
**stop** [1] - 85:17
**story** [2] - 71:25, 101:10
**Street** [1] - 1:19
**stress** [1] - 92:11
**strong** [1] - 61:21
**strongly** [1] - 60:17
**studied** [1] - 88:13
**stuff** [4] - 18:6, 76:6, 85:14, 100:19
**subject** [1] - 76:12
**subjected** [3] - 30:18, 34:14, 42:18
**submit** [7] - 35:25, 36:1, 36:15, 42:22, 79:3, 96:12, 96:21
**submitted** [7] - 22:21, 26:9, 26:25, 35:25, 41:12, 51:7, 62:14
**substantial** [10] - 24:6, 24:12, 25:21, 41:17, 43:7, 45:7, 45:13, 45:18, 45:20, 62:11
**substantially** [1] - 79:2
**substituting** [1] - 97:11
**succeeded** [1] - 65:18
**successfully** [2] - 59:13, 76:17
**suffered** [1] - 56:21
**suffering** [1] - 34:15
**suffers** [1] - 57:3
**sufficient** [1] - 56:9, 68:21, 88:19
**sufficiently** [1] - 34:24
**suggest** [3] - 50:23, 51:12, 56:8
**suggested** [5] - 21:16,

27:18, 88:1, 88:17, 92:17
**suggesting** [2] - 21:14, 45:25
**suggestion** [3] - 51:10, 56:14, 61:21
**suggests** [1] - 51:22
**Suite** [2] - 1:16, 1:19
**Sunrise** [1] - 1:15
**supervised** [13] - 43:9, 74:16, 74:17, 74:25, 75:8, 75:10, 76:9, 76:11, 80:2, 99:13, 99:20, 99:21
**supervision** [7] - 53:6, 58:22, 71:17, 74:20, 74:21, 75:1, 75:3
**supplemental** [3] - 3:17, 11:18, 20:25
**supplementing** [1] - 35:9
**supplied** [4] - 35:12, 35:14, 35:15, 35:18
**support** [3] - 57:4, 77:24, 96:1
**supporting** [1] - 73:17
**supposed** [1] - 56:19
**Supreme** [1] - 23:19
**surprise** [2] - 3:19, 86:2
**surprising** [1] - 57:16
**survivor** [1] - 39:10
**survivors** [1] - 40:19
**symptoms** [1] - 84:15

**T**

**T.S** [1] - 1:7
**table** [1] - 86:7
**talents** [1] - 72:2
**Tanya..** [1] - 2:23
**taping** [1] - 12:5
**tears** [2] - 75:14, 79:24
**teenager** [2] - 55:2, 55:3
**teenagers** [1] - 44:16
**telephone** [1] - 99:16
**tend** [1] - 63:8
**tendency** [1] - 67:23
**tenets** [1] - 34:18
**term** [8] - 49:3, 49:9, 69:15, 74:7, 74:18, 75:8, 80:1, 80:2
**terminated** [1] - 74:23
**terms** [8] - 15:8, 31:11, 45:12, 49:22, 53:1, 54:1, 73:17, 76:21
**terrible** [1] - 50:9

**testicles** [2] - 48:9, 48:14
**testified** [2] - 38:8, 39:12
**testimony** [2] - 7:22, 12:22
**Texas** [1] - 82:6
**THE** [346] - 1:1, 1:7, 1:10, 1:14, 2:9, 2:14, 2:16, 2:17, 2:22, 2:24, 3:3, 3:7, 3:10, 3:12, 3:16, 3:19, 4:1, 4:4, 4:7, 4:9, 4:15, 4:18, 4:22, 4:24, 5:2, 5:5, 5:11, 5:15, 5:21, 6:1, 6:4, 6:8, 6:10, 6:14, 6:18, 6:20, 6:22, 6:25, 7:9, 7:17, 7:19, 7:24, 8:2, 8:5, 8:10, 8:12, 9:7, 9:13, 9:16, 9:22, 10:3, 10:9, 10:11, 10:13, 10:15, 10:19, 10:22, 11:1, 11:5, 11:10, 11:14, 11:17, 11:20, 11:23, 12:8, 12:12, 12:16, 13:1, 13:5, 13:9, 13:12, 13:17, 14:1, 14:3, 14:9, 14:14, 14:18, 14:22, 15:5, 15:9, 15:14, 15:17, 16:7, 16:9, 16:14, 16:19, 16:23, 17:1, 17:7, 17:10, 17:16, 17:18, 17:19, 17:23, 17:24, 18:2, 18:20, 18:23, 18:24, 19:1, 19:3, 19:5, 19:7, 19:10, 19:11, 19:16, 19:24, 20:6, 21:8, 21:12, 21:19, 21:22, 21:25, 22:5, 22:7, 22:11, 23:10, 23:12, 23:24, 24:3, 24:8, 24:13, 24:18, 24:20, 25:20, 26:5, 26:9, 26:14, 26:23, 26:25, 27:4, 27:14, 27:17, 27:23, 28:3, 28:6, 28:11, 28:16, 29:3, 29:7, 29:12, 29:15, 29:23, 29:25, 30:7, 30:11, 30:15, 30:19, 30:24, 31:8, 31:13, 31:19, 31:25, 32:4, 32:8, 32:14, 32:18, 33:21, 35:12, 35:17, 35:21, 36:3, 36:15, 36:19, 36:21, 37:6, 37:9, 38:18,

38:20, 39:1, 39:4, 39:5, 39:8, 41:2, 41:4, 41:5, 41:8, 43:10, 43:15, 43:18, 43:24, 44:7, 44:14, 44:19, 45:2, 45:21, 46:10, 47:1, 47:13, 48:12, 50:12, 50:16, 51:1, 51:5, 52:2, 52:9, 52:13, 53:15, 53:18, 53:23, 54:8, 54:12, 54:13, 54:17, 54:20, 54:24, 55:2, 55:5, 55:8, 57:23, 58:5, 58:18, 59:20, 59:24, 60:5, 60:8, 60:15, 60:16, 60:17, 60:20, 60:25, 61:6, 61:11, 61:13, 62:13, 62:24, 63:2, 63:6, 63:12, 63:15, 63:18, 63:21, 63:24, 65:8, 65:15, 65:17, 67:6, 67:7, 67:20, 69:10, 70:4, 71:4, 72:24, 73:3, 73:11, 73:14, 73:20, 73:23, 75:19, 75:21, 76:2, 76:16, 77:21, 78:15, 78:25, 79:6, 79:9, 79:13, 80:16, 80:17, 81:11, 81:23, 82:4, 82:19, 82:22, 83:1, 83:9, 83:15, 83:25, 84:6, 84:9, 84:14, 84:18, 85:1, 85:4, 85:7, 85:11, 85:21, 86:2, 86:8, 86:11, 86:14, 86:21, 87:1, 87:5, 87:11, 87:14, 88:10, 89:4, 89:9, 89:15, 90:11, 90:14, 90:19, 91:2, 91:5, 91:10, 91:15, 91:20, 91:23, 92:5, 92:13, 92:20, 92:22, 92:24, 93:9, 93:13, 93:18, 94:2, 94:7, 94:10, 94:23, 95:5, 95:8, 95:15, 95:19, 95:23, 96:5, 96:8, 96:13, 96:20, 96:22, 97:1, 97:4, 97:6, 97:9, 97:13, 97:17, 97:19, 97:22, 98:3, 98:9, 98:18, 98:21, 98:23, 100:3, 100:7, 100:10, 100:18, 100:25, 101:5, 101:8, 101:17, 101:18, 101:22, 101:23

**theatre** [1] - 72:11
**themselves** [13] - 34:5, 34:20, 34:21, 42:8, 44:10, 44:16, 46:8, 46:11, 49:11, 49:12, 57:1, 64:16
**therapy** [3] - 27:22, 40:8, 57:12
**therefore** [2] - 34:10, 34:25
**therein** [1] - 20:11
**they've** [2] - 56:11, 59:11
**thinking** [1] - 21:20
**Third** [1] - 88:11
**thirst** [1] - 76:5
**thoughtful** [1] - 101:13
**thousands** [3] - 30:4
**threatened** [1] - 53:12
**three** [5] - 4:11, 26:17, 26:18, 43:21, 73:25
**Thursday** [2] - 18:19, 36:10
**timely** [2] - 10:7, 17:4
**tired** [1] - 83:1
**Title** [1] - 72:21
**today** [21] - 2:19, 5:12, 5:16, 8:16, 10:20, 28:6, 38:17, 40:12, 41:23, 42:25, 47:2, 56:17, 60:18, 72:18, 77:16, 86:6, 88:19, 89:17, 90:2, 90:22, 90:24
**toddler** [1] - 30:22
**together** [1] - 17:14
**took** [5] - 3:21, 3:23, 4:17, 52:25, 68:18
**top** [1] - 73:8
**topic** [2] - 49:5, 49:21
**torture** [1] - 39:20
**total** [11] - 71:9, 71:13, 74:11, 74:19, 91:20, 91:22, 93:25, 94:1, 95:20, 98:2, 98:3
**totally** [1] - 9:17
**towards** [1] - 51:20
**track** [1] - 56:18
**trafficked** [2] - 55:22, 55:25
**trafficker** [1] - 55:25
**trafficking** [2] - 55:21, 56:2
**TRANSCRIPT** [1] - 1:7
**transcript** [1] - 102:18
**TRANSCRIPTION** [1] - 1:25
**transplant** [1] - 82:1
**trash** [2] - 39:16, 40:9

**Trash** [1] - 56:20
**travel** [1] - 33:3
**treat** [1] - 70:14
**treated** [2] - 58:7, 70:13
**treatment** [7] - 58:23, 81:7, 81:15, 81:16, 82:15, 98:25, 99:11
**treatments** [1] - 17:4
**Trenga** [1] - 55:24
**trial** [10] - 20:13, 20:19, 39:20, 39:21, 42:20, 48:2, 52:7, 64:4, 100:19, 102:10
**triggered** [1] - 61:6
**troll** [1] - 48:17
**true** [5] - 7:22, 12:24, 29:9, 47:13, 77:4
**trusting** [1] - 40:7
**try** [4] - 12:22, 54:6, 81:22, 100:15
**trying** [4] - 29:4, 47:4, 63:10, 72:13
**turn** [2] - 25:4, 74:4
**turns** [2] - 94:24, 96:1
**two** [2] - 12:10, 15:19, 15:25, 22:19, 23:13, 26:20, 28:11, 32:20, 33:15, 36:6, 49:8, 52:5, 57:21, 58:1, 61:10, 62:17, 75:3, 76:16, 78:12, 79:14, 88:13, 101:9
**two-level** [3] - 15:25, 23:13, 32:20
**two-point** [1] - 15:19
**type** [3] - 14:5, 42:9, 64:24
**types** [1] - 30:11
**typically** [2] - 2:19, 29:22

## U

**U.S** [2] - 1:12, 1:22
**Ugly** [1] - 56:20
**ultimately** [2] - 69:12, 70:7
**unadjudicated** [1] - 20:12
**unclear** [1] - 84:20
**under** [16] - 3:1, 20:19, 25:10, 31:20, 32:18, 34:7, 51:10, 53:12, 59:11, 77:13, 80:3, 87:23, 88:19, 91:8, 97:24, 99:11
**underage** [8] - 8:18, 29:16, 46:19, 51:13, 66:11, 67:4, 68:2,

95:12
**underlies** [1] - 22:24
**underlying** [4] - 46:8, 46:10, 46:18, 47:24
**underscore** [2] - 38:2, 75:9
**underscored** [1] - 76:2
**understandable** [1] - 27:8
**understood** [4] - 5:11, 25:13, 30:25, 32:9
**undertake** [1] - 88:9
**undiscovered** [1] - 45:16
**unfortunately** [1] - 62:1
**unique** [8] - 61:22, 62:10, 64:15, 64:16, 68:13, 68:14
**United** [6] - 2:3, 2:8, 13:24, 20:16, 61:1, 61:3
**UNITED** [3] - 1:1, 1:3, 1:8
**University** [1] - 82:6
**university** [1] - 72:10
**unless** [7] - 20:4, 20:22, 62:12, 63:22, 79:18, 90:4, 99:13
**unlike** [2] - 46:5, 65:10
**unmistakably** [1] - 67:4
**unrelated** [1] - 20:8
**unreported** [1] - 45:16
**untimely** [7] - 3:20, 5:2, 5:22, 9:17, 13:3, 19:21
**untoward** [1] - 51:11
**unusual** [2] - 29:21, 57:25
**unusually** [1] - 29:20
**unwarranted** [3] - 43:13, 44:22, 68:10
**up** [21] - 9:10, 10:21, 10:22, 10:25, 13:9, 19:11, 42:6, 43:3, 59:21, 67:7, 69:20, 71:21, 74:7, 75:22, 76:8, 77:14, 83:4, 91:25, 96:7, 97:21, 99:2
**updated** [1] - 18:5
**upload** [1] - 54:3
**uploaded** [1] - 54:10
**uploading** [1] - 53:8
**upset** [1] - 100:11
**urinate** [1] - 8:7
**useful** [2] - 23:22, 38:10

**user** [1] - 56:19
**utilize** [1] - 99:15
**utter** [1] - 41:22

## V

**VA** [3] - 1:13, 1:16, 1:20
**Valley** [1] - 1:15
**variety** [1] - 64:6
**various** [1] - 80:20
**veil** [2] - 75:14, 79:24
**verified** [1] - 48:24
**version** [1] - 53:22
**versus** [2] - 2:3, 58:20
**victim** [14] - 22:21, 22:25, 38:18, 41:11, 47:7, 52:18, 53:3, 54:24, 65:22, 66:16, 68:16, 68:19, 79:2, 79:8
**Victim** [11] - 7:11, 7:20, 8:6, 12:14, 12:20, 13:13, 14:20, 15:10, 15:24, 38:19, 53:8
**Victims** [2] - 34:3, 34:20
**victims** [26] - 11:25, 22:19, 34:17, 38:16, 39:9, 40:16, 40:19, 41:10, 41:25, 45:11, 53:12, 62:1, 62:2, 62:6, 62:14, 62:16, 62:17, 64:5, 67:13, 68:17, 78:11, 78:12, 78:14, 78:17, 79:9, 79:14
**victims'** [1] - 22:24
**video** [3] - 22:18, 47:18, 53:3
**videoed** [2] - 46:20, 49:16
**videoing** [3] - 51:16, 55:21, 56:25
**videos** [7] - 22:14, 22:16, 34:22, 42:7, 46:9, 54:3, 62:23
**view** [13] - 5:13, 8:21, 38:13, 44:21, 45:2, 49:14, 55:17, 67:2, 85:19, 86:15, 90:16, 93:9, 95:13
**viewed** [1] - 31:17
**views** [3] - 26:19, 83:3, 100:21
**violate** [1] - 74:25
**violated** [1] - 53:10
**violates** [1] - 48:1
**violation** [1] - 55:23

**violence** [4] - 33:25, 34:10, 50:5
**violent** [2] - 34:6, 34:7
**Virginia** [1] - 1:23
**VIRGINIA** [1] - 1:1
**virtually** [3] - 46:6, 47:19, 73:18
**visit** [1] - 18:14
**voluntarily** [1] - 48:4
**volunteer** [2] - 99:4, 99:8
**vs** [1] - 61:3
**vulnerable** [1] - 39:16

## W

**W-E-R-N-I-C-K** [1] - 89:5
**waive** [1] - 96:3
**waived** [1] - 96:15
**waiving** [1] - 82:18
**wants** [6] - 10:24, 28:2, 85:15, 85:16, 87:20, 93:19
**warning** [2] - 64:24, 68:7
**warrant** [1] - 41:17
**warranted** [3] - 45:8, 69:5, 70:5
**warrants** [1] - 61:22
**watching** [2] - 47:7, 47:8
**wealth** [2] - 9:4, 92:11
**wealthy** [1] - 92:8
**website** [6] - 21:14, 21:17, 48:19, 56:18, 57:17
**websites** [2] - 48:24, 66:9
**Wednesday** [4] - 18:14, 18:17, 18:18, 36:10
**week** [3] - 9:25, 89:16, 89:19
**weekend** [1] - 18:16
**weeks** [3] - 4:11, 9:22, 87:7
**Wernick** [1] - 89:5
**wherewithal** [1] - 78:3
**Whitney** [1] - 27:3
**whole** [3] - 13:2, 88:15, 93:3
**WILLIAM** [1] - 1:10
**willingly** [2] - 12:1
**wish** [6] - 7:25, 39:7, 41:2, 60:9, 60:12, 60:13
**wishes** [1] - 39:6
**WITNESS** [3] - 39:4, 39:8, 41:4

**woman** [1] - 65:23
**won** [1] - 56:13
**word** [1] - 93:14
**words** [6] - 25:12, 71:25, 74:11, 79:9, 87:16, 87:18
**world** [2] - 51:21, 93:6
**worse** [2] - 39:23
**worth** [3] - 12:21, 36:13, 57:1
**worthless** [1] - 39:15
**write** [2] - 71:25, 101:9
**wrote** [3] - 39:8, 53:20, 87:19

## Y

**year** [1] - 73:23
**years** [36] - 24:18, 51:8, 52:21, 56:1, 56:8, 56:9, 57:1, 57:2, 57:4, 57:21, 58:1, 58:22, 60:6, 63:8, 67:15, 69:16, 69:18, 69:20, 70:1, 70:24, 71:3, 73:24, 74:7, 74:16, 74:21, 75:22, 76:9, 79:22, 83:2, 92:14
**yesterday** [1] - 19:2
**you-all** [3] - 8:24, 26:2, 71:6
**young** [10] - 28:12, 28:22, 65:23, 72:6, 77:7, 93:14, 99:10, 101:11, 102:3
**younger** [2] - 55:5, 62:2
**yourself** [5] - 47:16, 68:3, 77:3, 77:7, 100:18
**youthful** [1] - 66:19

## Z

**Zack** [2] - 50:25, 51:6
**Zackary** [1] - 2:3
**ZACKARY** [1] - 1:5
**Zanobini** [2] - 2:7, 85:9
**ZANOBINI** [1] - 1:11
**zero** [1] - 97:20