UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff | : | Criminal Case |
| v. | : | No. 20-CR-00143-TSE |
| ZACKARY ELLIS SANDERS, Defendant | : | April 1, 2022 8:10 a.m. |
| ............................. | : | ...................... |

TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE T.S. ELLIS, III
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF: WILLIAM CLAYMAN, AUSA
SETH SCHLESSINGER, AUSA
JAY V. PRABHU, AUSA
ANNIE ZANOBINI, AUSA
U.S. ATTORNEY'S OFFICE
2100 Jamieson Avenue
Alexandria, VA 22314
703-299-3700

FOR THE DEFENDANT: CHRISTOPHER BRYAN AMOLSCH, ESQ.
LAW OFFICE OF CHRISTOPHER AMOLSCH
12005 Sunrise Valley Drive
Suite 200
Reston, VA 20191
703-969-2214

NINA J. GINSBERG, ESQ.
DiMURO GINSBERG, P.D.
1101 King Street
Suite 610
Alexandria, VA 22314
703-684-4333

OFFICIAL COURT REPORTER: REBECCA STONESTREET, RPR, CRR
U.S. District Court, 9th Floor
401 Courthouse Square
Alexandria, Virginia 22314
(240) 426-7767

( Pages 1 - 118)

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

DEFENDANT'S EXHIBIT
1

**P R O C E E D I N G S**

COURTROOM CLERK: Court calls criminal case United States of America versus Zackary Ellis Sanders, Case Number 2020-CR-143. May I have appearances, please, first for the Government.

MR. CLAYMAN: Good morning, Your Honor. Bill Clayman, Annie Zanobini, Seth Schlessinger, and Jay Prabhu for the United States.

THE COURT: All right. Good morning to all of you. And who is here for the defendant?

MR. AMOLSCH: Good morning, Your Honor. Christopher Amolsch and Nina Ginsberg for Mr. Sanders, who is present.

THE COURT: All right. Good morning to you and good morning to you, Mr. Sanders.

THE DEFENDANT: Good morning, Your Honor.

THE COURT: At the outset, there have been about eight or nine lawyers that have appeared in this case. I don't typically allow that many lawyers, but today we're going to hear just from you. Is that right, Mr. Amolsch?

MR. AMOLSCH: That's my understanding, Your Honor, yes.

THE COURT: All right. Now, you filed a number of things, and I'm not sure -- let me ask, Tanya...

(OFF THE RECORD.)

MR. AMOLSCH: Your Honor, I have them here to file

under seal this morning with the clerk. I filed them with Your Honor --

THE COURT: You didn't file it with me.

MR. AMOLSCH: No, I haven't filed them yet but they will be filed, Your Honor. I provided them to the Government and I provided them to the Court --

THE COURT: You need to understand. You've been here a long time --

MR. AMOLSCH: Yes, Your Honor.

THE COURT: -- not as long as I have --

MR. AMOLSCH: Yes, Your Honor.

THE COURT: You've been here a long time, and you don't file something by sending it to a deputy clerk or sending it to me. You have to follow a procedure in filing things.

MR. AMOLSCH: Yes, Your Honor.

THE COURT: So at 5 o'clock, or after 5 o'clock last night, I received your supplemental objections to the PSR.

MR. AMOLSCH: Yes, Your Honor.

THE COURT: Now, it won't come as a surprise to you that I think that they're completely untimely.

MR. AMOLSCH: Your Honor, as I put in my motion, I took the amended presentence report to Mr. Sanders as soon as I received it, dropped it off at the jail. It took a long time for the jail to get to it. I then had to have an in-person meeting with him --

THE COURT: When were you first appointed?

MR. AMOLSCH: I wasn't appointed, I was retained, Your Honor.

THE COURT: All right. When were you first retained?

MR. AMOLSCH: I don't know. Several months ago, Your Honor.

THE COURT: Several months ago?

MR. AMOLSCH: Yes, Your Honor.

THE COURT: When was the PSR first issued?

MR. AMOLSCH: The PSR, which I reviewed with Mr. Sanders promptly, was issued probably three weeks before that. But I will tell Your Honor, some of the objections I made were additional information included in the amended PSR that weren't in the original PSR.

THE COURT: And you only reviewed the original PSR?

MR. AMOLSCH: I reviewed both the amended and the original, but it took --

THE COURT: You made some objections that clearly were remedied in the amended PSR.

MR. AMOLSCH: Well, some of them were, Your Honor, and some of them weren't. But I don't --

THE COURT: But you put them both in here.

MR. AMOLSCH: No, I actually didn't, Your Honor.

THE COURT: Actually, you did. I reviewed it very carefully last night. Be seated, please.

MR. AMOLSCH: Yes, Your Honor.

THE COURT: Your objections are untimely, and I find that --

MR. AMOLSCH: Just so Your Honor -- I don't believe --

THE COURT: -- inexplicable.

MR. AMOLSCH: Well, they're not inexplicable. I don't believe they have anything to do with Your Honor's sentencing decisions. As I put in my memo, this isn't about sentencing, this is about the fact that the BOP is going to look at that PSR and make certain decisions based on how he's --

THE COURT: Yes, I understood that.

MR. AMOLSCH: And we don't have to do that today. From a sentencing point of view, I don't think it's germane. But I think it is important --

THE COURT: All right. Well, if it isn't changed today, I'm not going to change it ever.

MR. AMOLSCH: I understand. But just so Your Honor understands, the reason I put them in there is I think there are certain things that will cause BOP concern, that I don't think are accurate, and that's why they need to be corrected.

THE COURT: Well, let me just mention briefly, as I said, it's untimely.

I take it -- Mr. Clayman, have you seen it?

MR. CLAYMAN: We got it last night at the same time as Your Honor.

THE COURT: All right. So you've obviously not had an the opportunity to file your response?

MR. CLAYMAN: That's correct.

THE COURT: All right. In my interest, M. Amolsch, to make sure that I wasn't proceeding with a misunderstanding, I reviewed it last night --

MR. AMOLSCH: Yes, Your Honor.

THE COURT: -- after 5:00, when I received it.

MR. AMOLSCH: Yes, Your Honor.

THE COURT: And I'm satisfied that some of these have already been made. You mention Paragraph 15; that change has already been made. It's a footnote in the PSR.

MR. AMOLSCH: Okay. Thank you, Your Honor.

THE COURT: But I shouldn't have to do this, Mr. Amolsch. That's your job.

MR. AMOLSCH: It is my job, Your Honor. And it's an enormous PSR, and if I'm mistaken on that one, that's on me.

THE COURT: Yes, it is.

MR. AMOLSCH: I agree.

THE COURT: That isn't the only one.

MR. AMOLSCH: I agree.

THE COURT: I'm not going to go through it in some detail, but in the future I expect you to be far more careful.

MR. AMOLSCH: Thank you, Your Honor.

THE COURT: It has nothing to do, also, with my

sentencing decision. And just because I may be irritated to get, at 5 o'clock in the evening before an 8 o'clock in the morning sentencing, a further pleading from you, rest assured, that isn't Mr. Sanders' fault. He's not in any way affected by the behavior of his many lawyers in this case.

MR. AMOLSCH: I understand, Your Honor. That's always been my experience with the Court. But just to make sure Your Honor --

THE COURT: Let's go on for just a minute.

You also objected to Paragraph 22 about the chastity cage. That came from the interview with the Minor Victim 5 with the FBI. That doesn't play any role in my sentencing decision. I don't care about a chastity belt. So it's irrelevant. That objection is irrelevant.

MR. AMOLSCH: It is for the purposes of sentencing, Your Honor. But again, just to reiterate --

THE COURT: I'm not going to make a finding of fact.

MR. AMOLSCH: I understand, Your Honor.

THE COURT: It is -- I did confirm that it was in the interview of Minor Victim 5.

MR. AMOLSCH: But my cites, Your Honor, were to some testimony that made that maybe seem not true. That was my point.

THE COURT: You can raise that with the Bureau of Prisons if you wish to.

MR. AMOLSCH: Thank you, Your Honor.

THE COURT: It's not material to the Court's sentencing decision.

MR. AMOLSCH: I understand.

THE COURT: You talk about a key to a chastity cage. I don't doubt that MV 5, Minor Victim 5, might have had a key. I don't know how he would urinate or otherwise use the facilities if he couldn't.

MR. AMOLSCH: Yes, Your Honor.

THE COURT: So that never interested me or bothered me.

MR. AMOLSCH: I understand, Your Honor.

THE COURT: And I might as well say this at this time, too. Many of your objections - and indeed, many of the positions taken by the attorneys in this case on behalf of Mr. Sanders - belabor the BDSM aspect of this case. Mr. Sanders is not before the Court today, or any day, because of BDSM. BDSM is neither legal or illegal. It's not illegal. It's not a crime. The crime is when you deal with underage people and engage in the kind of conduct that he did. But it isn't before the Court that that's legal or illegal. I don't express any view about it. I frankly don't care.

Now, you would tell me: But you need to understand the BDSM behavior so that you understand why he did what he did, why the defendant did what he did. I do. You-all have explained that in some excruciating detail. Does it make anything he did

 legal? No. Does it make it anything less criminal? No.

MR. AMOLSCH: I understand. And again, my only concern is that the BOP isn't going to have the benefit of Your Honor's wealth of experience on this, and how they may read these things in isolation may impact his classification. That's my only point.

THE COURT: Well, there's no reason why you can't deal directly with the BOP as well.

MR. AMOLSCH: I will do that as well, Your Honor. But I also wanted to bring it up to Your Honor because you have final control over the PSR, and what goes into it and what doesn't.

THE COURT: That's right.

MR. AMOLSCH: And so this is appropriate for me to talk to you about it, even if you discard my objections.

THE COURT: Well, I discard them in the first place because they're untimely, totally untimely.

MR. AMOLSCH: Just so you know, Your Honor, I saw Mr. Sanders as early as the ADC would allow me to see him. I couldn't get in any earlier. I had to make special arrangements with Chief --

THE COURT: How many weeks have you been an attorney in this case?

MR. AMOLSCH: I've been a couple months, but I've only had -- the amended PSR I only had for about a week. So

that's what we're talking about here, the amended PSR, not the original.

THE COURT: No, but then you raise objections in the PSR that were covered in the amended.

MR. AMOLSCH: Your Honor, to the extent I made an error about that, that's on me. But I think that the Court would be -- it's not fair to state that I didn't act timely, when I got in --

THE COURT: I don't think you did.

MR. AMOLSCH: -- as quickly --

THE COURT: I understand your explanation --

MR. AMOLSCH: -- as I could.

THE COURT: -- but I'm not satisfied with it.

MR. AMOLSCH: I understand. Thank you, Your Honor.

THE COURT: The PSR has been out for a long time. There are detailed objections - four of them, as I recall - filed by one of your predecessors.

MR. AMOLSCH: Yes, sir.

THE COURT: And I take it you're prepared to address those today?

MR. AMOLSCH: Yes, sir. If it comes up, I will, yes.

THE COURT: It will come up. You have an objection --

MR. AMOLSCH: I am prepared to deal with it, yes, Your Honor. But I don't know what Your Honor wants to talk about. But yes, if it comes up, I'll be able to deal with it.

THE COURT: All right. Let's finish with what you filed -- well, you didn't file, what you sent to the court at 5 o'clock last night.

MR. AMOLSCH: Yes, sir.

THE COURT: All right. The first thing you brought to my attention is that you object to the characterization in Paragraph 14. As you recognize, that's not material to my sentencing decision --

MR. AMOLSCH: Yes, sir.

THE COURT: -- and, moreover, there is no question that he used -- he persuaded some of these people. And I don't find that inaccurate.

MR. AMOLSCH: Yes, sir.

THE COURT: Then you go to Paragraph 15. That is an objection that was already accommodated in the amended PSR.

MR. AMOLSCH: Yes, sir.

THE COURT: There's a footnote in the amended PSR that says precisely what you raise in your supplemental objection.

MR. AMOLSCH: Yes, sir.

THE COURT: Then we go to Paragraph 22. That's the chastity cage.

MR. AMOLSCH: Yes, sir.

THE COURT: I have no interest -- it doesn't play any role in my sentencing decision. You also consistently point out that these minor victims were not coerced, as you would see it;

that is, they did this willingly. They participated willingly. That's the impression you want the BOP to get.

MR. AMOLSCH: And specifically as it relates to Paragraph 23, if that's what we're talking about next, there's allegations of duct-taping and forcibly removing pants. That I think BOP is going to take some issue with, and I don't think that's --

THE COURT: All right. I will do this. I will just insert that -- because this came from an interview as well. That the defendant denies that he did those two things.

MR. AMOLSCH: Thank you, Your Honor.

THE COURT: On Paragraph 24, I'll also add that; that the defendant denies that he choked and handcuffed Minor Victim 5. You also deny that he masturbated --

MR. AMOLSCH: Yes, sir, all of that.

THE COURT: All right. I'll note that you deny that, and I'll have the probation officer, who is present in the courtroom -- Ms. Smihal, make that change, but make clear that what appears in that paragraph came from an FBI interview of Minor Victim 5.

MR. AMOLSCH: Your Honor, it is worth noting -- not to try the Court's patience, but I believe from the testimony of this particular person, they acknowledged lying to the FBI when they made these statements. So it is true it came from his statement.

THE COURT: Next, Paragraph 41, I don't see any changes necessary there, so any objection there is denied. The whole thing is denied because it's untimely --

MR. AMOLSCH: Yes, sir.

THE COURT: -- but I'm addressing this because I want my -- I want to get it right when I decide what sentence to impose on this defendant.

MR. AMOLSCH: Yes, sir.

THE COURT: So even if you had shown up this morning and handed me this, I would be doing this.

MR. AMOLSCH: I understand, Your Honor. Thank you.

THE COURT: Paragraph 42, again, Ms. Smihal, point out that the defendant denies that Minor Victim 2 is referring to Mr. Sanders in that. He says it must be some other individual.

Again, this comes, Ms. Smihal, from an FBI interview?

MS. SMIHAL: Yes, Your Honor.

THE COURT: All right. Note that.

Let's go to Paragraphs 44 to 49. That's an argument about whether the chats are accurately characterized.

MR. AMOLSCH: Your Honor, not to go back, but just to correct something Your Honor said about the interview in Paragraph 42. I've just been informed it wasn't from an FBI interview, it was from an interview completed by another law enforcement agency outside the United States, to the extent that is important.

THE COURT: All right. Ms. Smihal, is that correct?

MS. SMIHAL: That is correct, Your Honor.

THE COURT: All right. Note that, Ms. Smihal.

Paragraph 45, you say the PSR fails to explain that the statements are part of a BDSM type of dialogue. That's irrelevant. Again, this isn't a case about whether BDSM is legal or illegal.

MR. AMOLSCH: I understand, Your Honor.

THE COURT: And while I appreciate and understand your desire, and the eight or seven other lawyers who have appeared in this case, to explain BDSM to put in context his behavior and to understand his behavior, I understand.

MR. AMOLSCH: Thank you.

THE COURT: It's not relevant in fact, because whatever the behavior, whether it's BDSM or some other kind of behavior, it's criminal.

MR. AMOLSCH: Yes, sir.

THE COURT: Now, Ms. Smihal, add, with respect to Paragraph 45 and Paragraph 51, that the defendant denies that he in any way blackmailed or forced Minor Victim 1 to do anything.

MS. SMIHAL: Yes, Your Honor.

THE COURT: And record how you got that information there as well.

Then we go to Paragraph 55.

MR. AMOLSCH: Your Honor, just for the Court, this is

what was added to the PSR as part of the amended PSR. This is where we begin those objections. These are not objections we could have made earlier because they were added after the fact, as well as -- 55 onward. Just letting the Court --

THE COURT: I'm glad you appreciate, Mr. Amolsch, that there's much you could have done much earlier.

MR. AMOLSCH: I just wanted to let the Court know where we were beginning in terms of the new information.

THE COURT: Let's go to 55. This is where the PSR reports that he asks Minor Victim 6 to delete everything.

Where did you get that from, Ms. Smihal?

MS. SMIHAL: Your Honor, from law enforcement interview.

THE COURT: All right. And that's an FBI interview?

MS. SMIHAL: Yes, I believe so. I'm pretty sure. I have to double check.

THE COURT: All right. Just add that he denies that he asked him to delete everything.

Now, you also object to the two-point enhancement for obstruction, as a result. I'll overrule that objection. I'm satisfied with what's in the PSR. I'm going to put in the PSR that he denies that, but I am satisfied that the record satisfies the Court by a preponderance of the evidence that he did tell Minor Victim 6 to delete everything.

He isn't -- I think the two-level enhancement is

appropriate, but again, it's really immaterial to the Court's sentencing decision. The guidelines in this case put an offense level as high as above 43, which is as high as the guidelines permit an offense level to go.

Is that right, Ms. Smihal?

MS. SMIHAL: Yes, Your Honor.

THE COURT: So it doesn't make any difference.

MR. AMOLSCH: I understand, Your Honor.

THE COURT: I'm satisfied that the obstruction enhancement applies, but it's immaterial, not only to the guideline calculation, it's also immaterial to my decision on an appropriate sentence.

MR. AMOLSCH: I understand, Your Honor. Thank you.

THE COURT: The others about 15 milligrams of Meloxicam, I don't think anything needs to be changed there.

MR. AMOLSCH: Your Honor, the only reason why that's in there is because BOP is going to be required to administer his medication.

THE COURT: Yes, and you're going to be required, when he is sent - and I would do it quickly - to make sure that the BOP has all the medical records.

MR. AMOLSCH: Yes, sir.

THE COURT: And I would not rely solely on whether Alexandria Detention Center sends everything.

MR. AMOLSCH: Yes, sir.

THE COURT: You need to make sure they have everything. And I know he's been diagnosed with multiple sclerosis. I've already dealt with that. I ordered him to have certain treatments in a timely manner that will also be recorded in the Judgment and Conviction [sic] order.

MR. AMOLSCH: Yes, sir.

THE COURT: And I don't think any change needs to be made to Paragraph 130.

MR. AMOLSCH: Yes, sir.

THE COURT: All right. Now, I think I can assume, Mr. Amolsch, that you and your client have had an adequate opportunity to review the presentence report and the amended presentence report, and that you've had an opportunity to read it together?

MR. AMOLSCH: Yes, sir.

THE COURT: All right. Mr. Sanders, good morning again, sir.

THE DEFENDANT: Good morning, Your Honor.

THE COURT: Mr. Sanders, your middle name is Ellis, and I want to record, and I'm sure you want to record, that there's no familial relationship or any blood relationship, so far as I know or you know, between you and me.

THE DEFENDANT: That's correct, Your Honor.

THE COURT: All right. Now, could you confirm that you've had an adequate opportunity to see and review the

presentence report, both the original one and the amended one?

THE DEFENDANT: My attorney dropped it off at the jail; they refused to give it to me. He contacted them multiple times. I only had maybe a day to review the presentence report, I believe, before he filed the updated objections. And I know there was new stuff added to the revised presentence report.

I asked every sergeant, captain that I could find at the jail; they said, we have a new process for legal mail, it takes a few days to get to people. It doesn't matter if your attorney dropped it off, you get it when you get it. I contacted, you know, my family, and they contacted my attorneys; my understanding is they sent more emails to the jail. Days went by, nothing, until he was finally able to get an in-person visit briefly, I believe it was Wednesday morning. And that was the first time I was able to go over -- I was actually given a copy. Even though he had dropped off a copy that weekend, the jail refused to give it to me. I finally got a copy Wednesday morning when we met, and I reviewed it during the day Wednesday, we spoke Thursday.

THE COURT: All right. I'm glad that you've had an opportunity to tell me about those difficulties, but let me confirm. Have you now read it?

THE DEFENDANT: I have read it, yes.

THE COURT: And have you conferred with Mr. Amolsch about it and its contents?

THE DEFENDANT: Yes. We were able to talk about it yesterday.

THE COURT: And are you fully satisfied with the advice and counsel that he has provided to you in this case?

THE DEFENDANT: That Mr. Amolsch has, since he's been on, yes.

THE COURT: Well, that's all I've asked you. If you have any qualms with any of your previous lawyers in this phalanx of lawyers --

THE DEFENDANT: That's why I wanted to be clear, yes.

THE COURT: -- you may take it up with them. All right. You may be seated, sir.

Does the Government have any objections or corrections to the presentence report?

MR. CLAYMAN: No, Your Honor.

THE COURT: All right. I will adopt the findings and conclusions of the presentence investigation report, with the exception of the matters that I've mentioned to Ms. Smihal that she is to make changes regarding that. But I will note that - and this should be there as well - I've ruled that it's untimely, and that I'm only reviewing it as a matter of grace, not as a matter of right.

MR. AMOLSCH: Yes, sir.

THE COURT: All right. Now, Mr. Amolsch, there are other objections to the presentence report that were filed

previously. Am I correct?

MR. AMOLSCH: That's correct, Your Honor. And as to those objections, we're just going to rely on our pleadings on that. I don't have additional arguments unless the Court has questions.

THE COURT: All right. Well, let me rule on those, then. Just a moment.

Well, the first objection raised is not unrelated to what you've raised, Mr. Amolsch. I've addressed a good bit of it. But the objection is that in Paragraphs 8 through 57, the objection is that that information contained therein is irrelevant, unadjudicated, not proven by a preponderance of the evidence at trial, and the objection is that much of it is inaccurate, incomplete, and/or contradicted by other evidence.

The information contained in those paragraphs was obtained from materials that the United States Attorney's Office provided. They include the investigative reports, the affidavits prepared by the case agents, as well as the review of the exhibits presented at trial. And under the guidelines, of course, it's clear that the Court may consider, without limitation, any information concerning the background, character, and conduct of the defendant unless otherwise prohibited by law.

I've looked at 8 through 57, and I looked at it even again, last night, in the face of Mr. Amolsch's supplemental

objections. And I have made some corrections. Some are redundant; that is, some of these objections are the same as were made earlier.

And Ms. Smihal, am I correct, you did make some of those changes with respect to the earlier objections?

MS. SMIHAL: Yes, I made some amendments and reworded some things --

THE COURT: I can't hear you. Why don't you come forward so I can hear you a little better, please. Go ahead.

MS. SMIHAL: I did make some amendments to the paragraphs. I reworded a few paragraphs.

THE COURT: All right. And as I recall, one of those I remember that you made is there was an objection made about some website, suggesting that it was some sort of child website. And you made the correction. Is that right?

MS. SMIHAL: Well, I don't think it suggested that it was a child website, but I did add that it had the disclaimer that it was for people 18 and over.

THE COURT: All right. To the extent that anybody might read it thinking that, you made an addition to it?

MS. SMIHAL: Yes, Your Honor.

THE COURT: All right. And you did that in other cases as well; that is, other instances in this presentence report?

MS. SMIHAL: Yes, Your Honor.

THE COURT: All right. And I have also asked you to

make some additional changes -- not changes, but additions to it, where I've indicated that the defendant denies certain behavior.

MS. SMIHAL: Yes, Your Honor.

THE COURT: All right. Yes?

MR. AMOLSCH: Yes, Your Honor.

THE COURT: I couldn't tell whether you needed to say something.

MR. AMOLSCH: Oh, no, sir. I thought you were going to address me, Your Honor. I apologize.

THE COURT: No, that's all right.

All right. So that takes care of those. Paragraph 60 to 62, I'm not going to make any changes there, and I'll overrule any objections there. The images and videos that the presentence report and the probation officer relied on is the fact that the images and videos were sent to the National Center For Missing and Exploited Children, who identified 32 images and files, and 18 video files from 18 known series of child exploitation material. Of those, victims from two of the known series, a "Spongebob" series and the "8 Kids" series, have submitted victim impact statements and requests for restitution. And I am required -- the Court is required to order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victims' losses, but no less than $3,000 per victim.

So that takes care, I think, of all of those. We'll get to restitution later in this case. And I note, you have requested, Mr. Amolsch, that as you put it, there is material on his devices and memories that relate to his life that has nothing to do with the criminal behavior in this case, and you would like to have that returned.

MR. AMOLSCH: That was actually a pleading filed by Ms. Ginsberg, but yes, I believe that is the essence of the pleading.

THE COURT: Then I'll address that later, not now.

MR. AMOLSCH: Yes, sir.

THE COURT: Then, Paragraphs 71, 79, 86, 93, and 100, this is an objection to the two-level enhancement because the offense involved the use of a computer. That's overruled. I think it's quite clear that that's necessary to impose.

Again, I point out that the guideline calculation in this case leads to a final offense level above 43, which is the highest it could go. And so I proceed only because the Supreme Court has made clear that a District Court must complete the guideline calculation before imposing sentence. And I think that's a sensible requirement. In certain circumstances, it does seem to me to be less useful. This is one of those.

MR. AMOLSCH: Yes, sir.

THE COURT: And I'll hear from you at the time of argument on sentencing. I'm sure you will point out to me that

I shouldn't rely on the guidelines at all in this case.

MR. AMOLSCH: Yes, sir.

THE COURT: We'll come to that. And I don't even think the Government argues that I should impose the guidelines sentence in this case. Am I right, Mr. Clayman?

MR. CLAYMAN: We're requesting a substantial sentence consistent with the guidelines, Your Honor.

THE COURT: What did I ask? I said, you don't even ask for a guidelines sentence in this case, do you? The answer is, no, you don't. Just answer it directly. Do you?

MR. CLAYMAN: No, Your Honor. We're asking for a substantial sentence.

THE COURT: All right. That's all I was asking. Because a guidelines sentence in this case, Mr. Clayman, would be life in prison, would it not?

MR. CLAYMAN: I believe it's 3,480 months, so effectively life, yes.

THE COURT: Yes. Do you know how many years that is?

MR. CLAYMAN: I believe it's 120, but I'm not certain.

THE COURT: Yes. And that's why I said life.

Now, we go on to Paragraph 109, where there's an objection to the application of the five-level enhancement pursuant to 4B1.5(b)(1). And the objection is that the conduct is already covered by 2G2.2(b)(5). In essence, the objection is that it's redundant, that it's double counting.

Well, it isn't. If you look -- the guidelines have actually addressed this very issue, and I will call your attention to where it is addressed if I can find it. If you turn to the "Primmer on Offenses Involving Commercial Sex Act and Sexual Exploitation of Minors" published by the Sentencing Commission, and we look at page 46 of that report. And I won't go through the entire analysis. But I am satisfied that it is correct by the Sentencing Commission, that Section 4b1.5(b)(1) specifically states that the enhancement is to be added to the offense levels determined under Chapters 2 and 3.

In other words, it is not double counting. It's clearly understood to be additive to those, to be in addition to those. Thus, the guidelines -- I'm now quoting: "Thus, the guidelines intend the cumulative application of most enhancements in conjunction with 4B1.5."

And that's why I overruled that objection, and they will both be counted.

MR. AMOLSCH: Thank you, Your Honor.

THE COURT: But I can understand the argument that's made, and I think it is a reasonable substantial argument, but they do cover different behavior, in effect. So that covers that objection as well.

Now let me go to another matter. I want to be sure, Mr. Amolsch, that I attach to the presentence report all of the

material that I have received, including material related to - that you-all have sent to me - awards received by this defendant.

MR. AMOLSCH: Yes. Correct, Your Honor.

THE COURT: I'll make those, Ms. Smihal, part of the presentence report. They can read it all. This will be part of it. So will the letters --

MR. AMOLSCH: Thank you, Your Honor.

THE COURT: -- the letters that have been submitted to me, letters by his parents and letters by a friend, and I want to be sure they're attached to the presentence investigation report.

MS. SMIHAL: Yes, Your Honor.

THE COURT: Finally, I want to make one other addition to the presentence report, and then, Mr. Amolsch, I'll ask you whether you have anything else.

There are three doctors -- I'm not talking about his physical problems. But there are three doctors who have interviewed and provided to the Court their views about Mr. Sanders. Two of them were retained by the defendant, I think Berlin, and what's the name of the other one?

MR. AMOLSCH: Dr. Hendricks, Your Honor.

THE COURT: Hendricks.

MR. AMOLSCH: Yes, sir.

THE COURT: And the Government submitted one,

Mr. Clayman, by whom?

MR. CLAYMAN: Dr. Montalbano. I would just note for the record, there was also Dr. Whitney, who was another --

THE COURT: That's right. I do recall that. I want all of that in the presentence report, all of those. They can have them all.

And you can address this at the appropriate time, Mr. Amolsch, but it is understandable to me doctors retained on behalf of the defendant would minimize or at least explain the conduct as more benign than the doctor retained by the Government. The doctor retained by the Government would see it differently. It's all advocacy.

MR. AMOLSCH: Yes, sir.

THE COURT: I understand that. I spent some time, because I think Dr. Singer [sic] and Dr. --

MR. AMOLSCH: Dr. Berlin and Dr. Hendricks, Your Honor.

THE COURT: Berlin, not Singer. Berlin and Hendricks, they both suggested that he's not a pedophile. Do you recall that?

MR. AMOLSCH: Your Honor, I believe the conclusions were he doesn't have pedophilic interests, and he's a low risk for recidivism and a good candidate for therapy.

THE COURT: That's right. That's a more precise way of putting it.

MR. AMOLSCH: Yes, sir. And I will get to that,

Your Honor. I'm happy to talk about that now, but if Your Honor wants --

THE COURT: No, you can address it later and I'll hear whatever you need to say about that.

MR. AMOLSCH: Yes, sir.

THE COURT: The only relevance of that today is my assessment as to whether he needs to be carefully monitored in the future, and what is the risk of recidivism and that sort of thing.

MR. AMOLSCH: Yes, sir.

THE COURT: And there are two aspects of that. One is actual behavior with young people. I don't care what he does with adults. It's not society's business as long as he doesn't hurt them or they don't hurt him.

MR. AMOLSCH: Yes, sir.

THE COURT: But the second aspect is child pornography. There was a lot of it. It was not a small amount. And I know your position is that he was -- he just collected it, because it's so easy to do on a computer, for examination at some later time so that he could see if there was anything in there that related to him and his BDSM interests, but not because he was interested in, you would argue, sexual exploitation of young people.

MR. AMOLSCH: I think my point, Your Honor, was the number of images were downloaded in bulk, and that there's no

evidence he looked at them or reviewed them. And they're not specific --

THE COURT: There is evidence.

MR. AMOLSCH: And again, Your Honor, I'm not trying to nitpick here, but there is a distinction between the BDSM community and child pornography. And so --

THE COURT: Yes. I don't know if there's a distinction. It depends on who participates in it.

MR. AMOLSCH: That true. But they don't necessarily overlap, I guess is my point. And so as it relates to the possession charges, Your Honor, I don't know if these images --

THE COURT: No sexual activity necessarily overlaps. We're interested in --

MR. AMOLSCH: This case, yes, sir.

THE COURT: -- this case and the fact that it's illegal, it's a crime to do it with underage people. That's why he's here.

MR. AMOLSCH: My point on the images, Your Honor - and this is the last thing I'll say - is I don't think these images -- the number of images are unusually high for what this court sees. So I don't think there's anything unusual about that, given the number of images that are typically seen.

THE COURT: I see a lot of child pornography cases.

MR. AMOLSCH: Yes, sir.

THE COURT: What do you think is the average number of

child pornography images that I see in an average case?

MR. AMOLSCH: I can tell you about my experience, Your Honor. I couldn't speculate on yours. My experience is there are thousands and thousands and thousands all the time; that there is an enormous amount of it because of the ease with which things can be downloaded in bulk. That's my experience.

THE COURT: All right. And, Mr. Clayman, how many images were on his devices?

MR. CLAYMAN: Hundreds, Your Honor, across multiple devices, dating back to 2014.

THE COURT: All right. And what types of activities -- refresh my recollection. I've reviewed this before.

MR. CLAYMAN: That were depicted in the child pornography material?

THE COURT: Yes.

MR. CLAYMAN: It was predominantly, if not exclusively, minor boys and prepubescent minor boys being sexually abused and subjected to sadomasochistic abuse.

THE COURT: Well, there was other material in there, too. You said prepubescent. Am I incorrect? Were there any infants in there?

MR. CLAYMAN: That was infant and toddler age material in there as well.

THE COURT: And I'll hear more from you if you want to address it later, Mr. Amolsch. But I think I understood your

position that -- your position is that he downloaded this in bulk, not because he was interested in any of it, but to look at it later to see if there was anything in there relating to his interest in BDSM activities.

MR. AMOLSCH: I don't think it's my position so much that that's what happened, Your Honor. He downloaded it in bulk, and, as a result, all of these images --

THE COURT: Yes, it is your position that that's why he did it.

MR. AMOLSCH: My position is that's what he did. In terms of why he did it, I think he downloaded it and was going to look at it later and just never did. But there's no doubt --

THE COURT: Well, we don't know if he looked at it then or later. We just know he had the material. He possessed it.

MR. AMOLSCH: My understanding of the evidence presented was that there was no direct evidence that he had looked at it or viewed it, though it certainly was on his computer.

THE COURT: All right. Just a moment.

I believe I ruled on the four-level enhancement under 2B2, did I not, Mr. Amolsch?

MR. AMOLSCH: I don't remember if you did or not, Your Honor, but I'm happy to have Your Honor go over it again, if you want. But I don't believe Your Honor did.

THE COURT: What is that enhancement, Mr. Amolsch?

MR. AMOLSCH: Your Honor, honestly, I apologize. You have the pleading. I don't remember what it is. But I remember Your Honor didn't discuss it in this hearing.

THE COURT: I did, in fact. Remember when I talked about the cumulative aspects between that, and I said 2B1.1.

MR. AMOLSCH: Did you? Okay. Then my correction, Your Honor.

THE COURT: Mr. Clayman?

MR. CLAYMAN: I understood it was regarding the guidelines objection to the application of the sadistic and masochistic enhancement. I don't recall if Your Honor -- I don't believe you specifically addressed that, but it was included in one of the --

THE COURT: Let me see the objection. I did address the double-counting argument.

MR. CLAYMAN: Yes. And the use of a computer argument. You did address those.

THE COURT: Well, there was an objection raised under Paragraphs 71, 79, 86, 93, and 100. Defense counsel objected to the two-level enhancement applied pursuant to 2G1.1(b)6(b) because the offense involved the use of a computer. Again, I'll preface everything I say by noting that it's really immaterial to my sentencing decision, but in the interest of calculating the guidelines correctly, I will overrule that objection. There's adequate evidence in the record to conclude by a

preponderance of the evidence that the defendant did in fact use a computer or interactive computer service to persuade, induce, entice, coerce, or facilitate the travel of a minor to engage in sexually explicit conduct, or otherwise to solicit, participate -- or participation by a minor in such conduct for the purpose of producing sexually explicit material.

And then I addressed also in Paragraph 109 the five-level enhancement pursuant to 4B1.5(b)(1), on the ground that that conduct was already covered by the five-level enhancement applicable to 2G2. -- 2G2.2(b)(5). And I've already addressed that. They're not cumulative, they're not the same. I'm sorry, they are cumulative, but they both are added. The guidelines, as I said, quoting from the "Manual on Offenses Involving Commercial Sex Acts and Sexual Exploitation of Minors," specifically addresses the argument that those two are the same and shouldn't be double counted. They should be.

Again, I will end by saying, it doesn't matter to my sentencing decision because the guidelines in this case are well beyond what I think is appropriate in this case.

MR. AMOLSCH: Thank you, Your Honor.

THE COURT: All right. Then there's an objection to the four-level enhancement pursuant to 2G2.1(b)(4)(a), and this is for the possession of child pornography for the offense involving material that portrays sadistic or masochistic conduct or other depictions of violence. According to defense counsel,

the conduct should not be considered sadistic or masochistic because the evidence shows that although consent is not a defense to the production of child pornography, Minor Victims 1, 2, 3, and 5, nonetheless chose to engage in this conduct when they were by themselves. And as a result, it should not be considered sadistic, masochistic, or violent. Furthermore, none of the images were violent, as required under this section.

I disagree. The application of 2G2.1(b)(4)(a) requires that the material portray sadistic or masochistic conduct or other depictions of violence; therefore, violence is not required if one of the other criteria are met. Sadistic, that means taking pleasure in the infliction of pain, punishment, or humiliation of others. Masochistic is deriving sexual gratification from being subjected to physical pain or humiliation, or gaining pleasure from pain and suffering.

In this case, defendant was engaged in BDSM relationships with each of the minor victims, of which sadism and masochism are part and parcel; indeed, core tenets. As part of the BDSM relationship, the defendant instructed Minor Victims 1, 2, 3, and 5 to inflict pain on themselves by slapping themselves on their genitals, and record themselves doing it and send the videos to the defendant. They did so.

The probation officer, I think, correctly concluded that that conduct is sufficiently covered by 2G2.1(b)(4)(a), and therefore that objection is overruled.

Now, have I missed any objections, Mr. Amolsch?

MR. AMOLSCH: Your Honor, the only thing I will mention to the Court is that, it's not an objection so much, but the presentence report references certain financial releases and information Mr. Sanders was to provide the probation officer. There was some miscommunication with Ms. Smihal. Those releases have been provided. They were provided earlier; I think they just got lost in the shuffle.

So we'll be supplementing the PSR with those releases and the financial affidavit. That's only relevant for any kind of financial penalties that come into play.

THE COURT: All right. Ms. Smihal, were you supplied with the financial statements that you requested?

MS. SMIHAL: I was not supplied with the financial statement. I was supplied with the release forms so I could run his credit.

THE COURT: With what, I'm sorry?

MS. SMIHAL: I was supplied with release forms so I could run his credit report, but I do not have his completed financial affidavit.

THE COURT: All right. And Mr. Amolsch will say now those will be provided?

MR. AMOLSCH: Yeah, the releases were already provided, and we will fill out the financial affidavit, which I believe was already submitted but we'll submit it again. But it

basically says he has no assets. But we will definitely submit that to the probation office.

THE COURT: All right. Ms. Smihal, is that correct? Were you provided with releases?

MS. SMIHAL: I was never provided with -- so the releases and the affidavit are two separate things. Mr. Amolsch, I believe in February, did email me signed release forms, one of which is a release so I can run a credit report. I did miss that email somewhere in the shuffle, and he sent it back to me I believe Wednesday or Thursday. So I have run his credit report.

I did inform Mr. Amolsch that I still have not received Mr. Sanders' financial affidavit, the net worth and cash flow statement.

THE COURT: And that's what you say you will submit, Mr. Amolsch?

MR. AMOLSCH: Yes, sir. Mr. Sanders needs to personally fill that out, so I need to be with him to do that.

THE COURT: All right. Anything else, Mr. Amolsch?

MR. AMOLSCH: No, sir.

THE COURT: All right. Thank you.

So I have ruled on all the objections, I've adopted -- with the exception of the rulings I've made and the additions I've required, I've adopted the findings and conclusions of the presentence investigation report as the Court's findings and

conclusions in this matter.

So we'll proceed now to hear argument on an appropriate sentence for this defendant. In that regard, I'll note that -- I'll get to you.

MR. AMOLSCH: Yes, sir. I'm sorry.

THE COURT: Indeed, the Government is going to go first, Mr. Amolsch.

MR. AMOLSCH: Yes, sir.

THE COURT: I will note that the guidelines are quite high. They're above 43, and they would generally -- if the Court were going to impose a guidelines sentence, it would be a life sentence. I've already indicated that I don't think that is appropriate or necessary in this case to accomplish the goals of sentencing.

So having ruled on the objections, having determined that the PSR is accurate with the additions that I've noted -- and I understand, Mr. Amolsch, that you're concerned with how the Bureau of Prisons will read this. I don't know whether you've ever participated or at least been present when the Bureau of Prisons makes those determinations. I can tell you that sometimes, when they have a mountain of material to review, it takes them quite a while. They do look at everything, and, as you would expect, some material is of greater interest to them than others.

But I am not insensitive to your desire to make sure

that they have as much information as possible. And the J&C will indicate and will underscore to the Bureau of Prisons that this case is not here because of his interest in BDSM. He has not been charged, prosecuted, and convicted because of his interest in BDSM activity. It certainly has been evident in this case, in part because he injected it to explain what he did and why he did it, and I allowed a good bit of that. Indeed, he testified. But, as I indicated then and now, that's not a defense. It's not a justification. But it does help to explain why he did what he did, and that's always important and useful to understand.

But now, Mr. Clayman, I want to hear from the Government what the Government's view is on an appropriate sentence in this case.

MR. CLAYMAN: Before proceeding to argument, Your Honor, one of the mothers of the minor victims is present and she's requesting an opportunity to be heard today.

THE COURT: Which minor victim?

MR. CLAYMAN: It's Minor Victim 1, Your Honor.

THE COURT: Yes, of course you may be heard. The law not only permits it, it requires it. So I will hear her.

Any objection to hearing her now rather than later, Mr. Amolsch?

MR. AMOLSCH: I leave it to the Court's discretion, Your Honor.

THE COURT: Yes, all right. Where is this person? Yes, ma'am, would you come forward, please.

Good morning, ma'am. Is that your husband with you?

THE WITNESS: Yes, sir.

THE COURT: Indeed, I'll hear from him as well if he wishes to be heard.

All right. You may say anything you wish now.

THE WITNESS: I wrote it down. My name is Debbie and I'm the mother of one of your victims, which is well on his way to becoming a survivor. This is the first time I get to see the face of the monster who hurt my son. Out of respect for my son, I did not come into the courtroom when he testified. I sat in a room in the back and paced the floor for hours. He was embarrassed and ashamed of what happened. Because of the things that you did to my son, you made him feel like he was worthless. He called himself trash all the time. You made him vulnerable to other predators like you who in return did much more harm to my son.

Even though you know what you have done was illegal and immoral, you continued to torture to take this to trial. Then, not only did you want to go to trial, but you also kept having it postponed over and over. Every time court was postponed, the anxiety would get worse and worse, not just for my son, but for me and his other family members. Not only would it cause anxiety in everyone, but it also made us angry and madder at

you.

Even though your contact was only with my son, you hurt our family deeply. Because of you and others like you, we moved. We did not feel safe in our home because you knew what school he went to and where we lived. I lived in fear for months. I had a hard time sleeping, and still do some nights.

I am not as trusting or as social as I used to be. My son is now in therapy and will be for a very long time, and is working on himself. We are not hearing him call himself trash as much. He still puts himself down, but not as much as he used to.

Monsters like you feed off fear. Today I will not give you that control. I now hope you have that fear. With the fear you instilled in all of these kids, I pray that someone in jail realizes what you did and then causes you to feel the same fear that you inflicted upon your victims. I hope you cannot sleep because you are afraid of who will come through that cell door for you.

My son and all the victims and survivors of you will have to live with what they have done for the rest of their lives, and I pray you get the same sentence and that you get the maximum time for each charge. I also hope that the judge makes each sentence consecutive so you will have to pay for each crime one at a time, like each one of those children were hurt one at a time.

Thank you, Your Honor.

THE COURT: All right. Does your husband wish to be heard?

THE WITNESS: No, sir.

THE COURT: Thank you. You may return to your seat.

Anyone else, Mr. Clayman?

MR. CLAYMAN: No, Your Honor.

THE COURT: All right. Go ahead, Mr. Clayman.

MR. CLAYMAN: Yes, Your Honor. As you just heard from the mother of one of the minor victims, and as I'm sure Your Honor saw in the victim impact statements that were submitted with the PSR, the defendant's crimes here are incredibly serious and they had a profound impact on those who were affected by them.

The Court is obviously very familiar with the facts of this case, and we think there are a couple of factors here in particular that warrant a substantial sentence consistent with what the guidelines are recommending.

In particular, with respect to the history and characteristics of the defendant and the seriousness of this offense, Your Honor, the Court should take into account the defendant's utter lack of remorse for or even acknowledgement of his crimes. Even today, in his objections to the PSR, he continues to blame everyone but himself, including the minor victims, for why we are here.

And what he fails to recognize, Your Honor, and what I think everyone else can recognize is that he is the individual who posted the ads seeking out boys and slaves; he is the individual who continued to communicate with minors online, despite them telling him how old they were; and he is the individual who came up with the idea and communicated to these minors that they should produce very specific videos of themselves engaging in harmful sexual conduct.

I think equally significant, Your Honor, is the type of conduct that we're talking about here. The defendant persuaded these minors to engage in very specific and often sadomasochistic and degrading sex acts. They were obviously quite significant and sexually appealing to the defendant.

They are also reflective, as we discussed earlier, of the kind of child sexual abuse material that he also possessed. That is, the child pornography that the defendant produced and possessed made clear that he has a very specific, and frankly devoted, interest in seeing minors subjected to sadomasochistic abuse. Your Honor has seen the material that he produced as well as that he possessed - it was displayed during the trial in this case - and I think it's frankly shocking, in many respects.

I would submit, Your Honor, that the defendant's ongoing refusal, and the refusal of those around him, to even acknowledge what has happened, or to show no sign of contrition or to continue making excuses for why we are here today, that is

of grave concern to the Government, Your Honor, and I think it is not reflective of a defendant who is committed to ensuring that he does not end up before this court or another court again.

So based on those factors, Your Honor, as well as the sentences imposed in similar cases that we cited in our position paper, we are asking that the Court impose a substantial sentence here consistent with the guidelines, as well as a lifetime of supervised release.

THE COURT: All right. Let me ask you, Mr. Clayman. You called my attention to other cases to ensure, as you put it, that I don't impose a sentence that is different from or that involves an unwarranted disparity. Is that correct?

MR. CLAYMAN: Yes, Your Honor.

THE COURT: What page was that on yours? Was that on page 22?

MR. CLAYMAN: It's 24, Your Honor.

THE COURT: All right. I'm there.

MR. CLAYMAN: So in the footnote we cited cases from around the country. In the body of the paragraph we cited I believe three cases within this district where between, it looks like 40 to 50-year sentences, were imposed in similar circumstances.

THE COURT: Yes. Now, you didn't indicate there, and I should have looked. I could easily have looked, and I should

have. You cited the *Harris* case, at which there was a 50-year sentence. And that's a defendant who posed as a minor online and had multiple girls send him sexually explicit images. That wasn't a case that I had, was it?

MR. CLAYMAN: No, Your Honor. I don't believe that any of these cases were Your Honor's.

THE COURT: That's what I wanted to double check. The other that you cited was a 24-year-old defendant who posed as a minor online and had four minors create and send sexually explicit images of themselves. And that was a 300-month sentence. Is that right?

MR. CLAYMAN: Yes. I believe that was in front of Judge Lee.

THE COURT: Judge Lee. Then there was a case involving a defendant who received a 40-year sentence. He was in his late 20s, and he groomed multiple teenagers to record themselves engaging in sexually explicit conduct. Is that right?

MR. CLAYMAN: Yes, Your Honor.

THE COURT: All right. I think I understand those. And you think those are essentially similar to this, and for me to impose a different sentence, in your view, would contravene the requirement in the statute to avoid unwarranted disparities?

MR. CLAYMAN: Yes, Your Honor. And I would argue that there are aggravating factors here that were not present in those cases, specifically the sadomasochistic nature of the

abuse here.

THE COURT: And what's the Government's view on the need to deter this defendant and the need to impose a sentence that provides general deterrence?

MR. CLAYMAN: I think those are both obviously quite significant considerations for the Court to have in mind. With respect to this defendant, I think a substantial sentence is warranted, because, as we've discussed, there's been simply no admission or acknowledgement of what happened; there's been repeated efforts to blame law enforcement, the defendant's family, the victims, anyone but the defendant himself for why we are here, for what he did. And so in terms of specific deterrence, I think a substantial sentence is appropriate.

With regard to general deterrence, I think, as we outlined in our position paper, these sort of crimes are very difficult to detect. They often go unreported and undiscovered. And so I think it is equally important for the Court to impose a substantial sentence to send a loud message to other like-minded offenders, that when you are caught, you are going to face substantial consequences for this sort of conduct.

THE COURT: All right. Mr. Amolsch, I'll hear from you now.

MR. AMOLSCH: Thank you, Your Honor. May it please the Court. As an initial matter, I want to be clear that I am not in any way suggesting that consent is a defense to these crimes.

 I'm not saying that. So to the extent the Court might interpret what I'm saying to be the case, it is not a defense and I don't want the Court to interpret it that way.

But I think it is important to understand, Your Honor, that unlike every other case the Government has cited, in virtually any other case I have been involved in, this particular crime of production of child pornography, the underlying acts themselves are not illegal. The behavior of the minors who participated in the videos, if Mr. Sanders --

THE COURT: I'm sorry, what do you mean, the underlying acts themselves are not illegal?

MR. AMOLSCH: The crime of production of child pornography deals with, as Your Honor knows, that the sexual acts were committed for the purpose of producing them. That is the essence of the production charge, as we're well aware. It's why did he do it. Not what did he do, but why did he do it.

In every other case that I've been familiar with, there's always some underlying criminal activity associated with it: Sex with an underage person, an older gentleman having sex with a 14-year-old, you know, that then becomes videoed and then becomes a production-of-child-pornography case.

In this particular case - and I'm not hear to talk about purpose, Your Honor. That will be for another court for another day. But for the purposes of this discussion, the acts the minors committed --

THE COURT: I'm sorry, I don't understand what you mean, purpose is not for today.

MR. AMOLSCH: I'm not going to get into whether the Government proved purpose. I'm not trying to re-litigate whether they satisfied the statute. But it is important for the Court to know - and maybe this is the easiest way I can put it - if Mr. Sanders had been in the room watching the victim, watching the minors do this, there would be no production-of-child-pornography crime. If all the actions had happened in his presence, there would be no production-of-child-pornography crime. There would be no crimes at all.

THE COURT: That's not exactly true, is it? I mean, if he said, "Do this," and they did it, then even if he's in the room, there would be a production of child pornography. If he said, "Take a picture of yourself," and he stayed in the room, there's still production of child pornography.

MR. AMOLSCH: Right. But it's the making of the video, Your Honor, which I think distinguishes this case from virtually every other case; that in those cases of child pornography, the ones described by the Government - especially those described by the Government - there was an actual minor with whom the producer of child pornography in those cases was -- there was an underlying criminal act.

So it's the recording of the acts in this particular

case that violates the statute. But again, as you heard at trial, Mr. Sanders' position was that he did not -- that the acts were committed not for the purpose of filming them, but because these people had voluntarily entered into a BDSM relationship, and Mr. Sanders wanted proof that they were following his orders.

I understand that the jury discarded that. But if you were to take away the filming of this, the beating of the testicles, any of the other activities, those minors can consent to that. There's nothing illegal about that. Mr. Sanders never physically was with --

THE COURT: Minors can consent to sexual activity?

MR. AMOLSCH: They can consent to beating their own testicles. I mean, there was no force or -- however odd that might sound. But this is what makes this case so particularly different, is that Mr. Sanders was never with any of these people. Like, he didn't troll them, he didn't go find them. They came to him and reached out to him after he -- after going to an adult-oriented website and confirming that they were over 18. And there's no question that Mr. Sanders, once he discovered they weren't, should have backed away from it. But there's no evidence that he was seeking out this sort of behavior. All the evidence goes the other way. He only went to adult-oriented websites, he only went to sites that verified age.

The Government makes some issue, takes an issue that he's looking for boys and minors. I hope the Court understands by now that the term "boys" is not a reference to age, not within the context of the lesbian/gay/queer community, and not within the context of the BDSM community. That "boys" topic describes a place in the hierarchy. There are those who are above - those are doms or masters - and there are those who are below - slaves and boys - and the ages of the two are irrelevant to the description. It's a term of art.

So when you look at this and ask, what exactly did Mr. Sanders do, is he had them record themselves. Like, he didn't even do the recording. He had them do it themselves and then send it to him.

From a culpability point of view -- and again, while I understand that consent is not a defense to the fact that they can't consent to being videoed as a defense to the child pornography case, I understand that. But their consent to the behavior I think goes directly to how Your Honor ought to sentence Mr. Sanders. Like, there's no force or coercion or any of the things that you would normally associate with this. Whether he used them, whether he persuaded them may be a topic for another day, but in terms of whether there was force, coercion, abuse of authority, there's just nothing like that here, Your Honor.

I had -- Your Honor, I had Dr. Berlin and Dr. Hendricks

complete psychosexual evaluations of Mr. Sanders. Dr. Berlin concluded that he is not a pedophile. I believe that is also consistent with what Dr. Montalbano concluded, that they did not assign a paraphilic disorder. Dr. Hendricks completed a sexual recidivism and violence kind of analysis, and said basically he doesn't meet any of the factors of anybody who is either a pedophile or is at a high risk of re-offending. In fact, he's at a low risk for re-offending. Everybody, I think -- every expert acknowledges that Mr. Sanders made a terrible error in judgment, that he should not have been engaging in this behavior once he --

THE COURT: What about the Government's expert? What did he conclude?

MR. AMOLSCH: He concluded that -- my understanding, and the Government can answer this --

THE COURT: Well, you haven't read it?

MR. AMOLSCH: I have read it, but I don't want to speak for them. The point is, that report was focused mostly on the autism argument, which Your Honor has discarded. But in the process of doing that, Dr. Montalbano completed an examination and did not diagnose a personality disorder. He didn't diagnose a paraphilic disorder. So there's nothing in the record to suggest that he's a pedophile. All the experts seem to go the other way.

Zack, as Your Honor saw, was in business --

THE COURT: You do know that one consequence of his conviction and my sentence is going to be that he must register as a sex offender.

MR. AMOLSCH: Of course. Of course.

THE COURT: All right. Go on.

MR. AMOLSCH: Zack, as you saw from the sentencing memorandums and the letters submitted, and the pleading itself, has been involved in business for many years. He has employed over 50 people. There are siblings, all -- some of whom are under 18. There's never been any suggestion anywhere, any allegation that he's acted untoward to any of them. There's nothing in the evidence to even suggest that he's actively sought out kids, people who are underage. Like, all the evidence goes the other way.

So when you take all of that into account, that what the minors did, independently of the videoing, is not illegal; that there was no coercion, no force, none of the things you normally associate with the production of child pornography; the fact that there's no evidence that he's ever been -- had -- expressed any pedophilic interest towards people in the real world - setting aside whatever Your Honor might think about what was found on the hard drive - our real life evidence suggests this is not part of who he is. It has never been part of who he is.

The Government asked you about similar sentences, and

Your Honor asked the question about --

THE COURT: The Government didn't ask me. They --

MR. AMOLSCH: I apologize. The Government said something about similar sentences, and Your Honor asked whether these were sentences that you handed out. The last two sentences Your Honor handed out in production of child pornography that went to trial, as far as I can tell, were Logan McCauley and Mr. Hewlett.

THE COURT: Well, in McCauley, I gave the wrong instruction. So that case I never --

MR. AMOLSCH: Okay. I'm talking about Your Honor's rationale for the sentence that you gave Mr. McCauley.

THE COURT: All right. Go on.

MR. AMOLSCH: That's what I'm talking about. As you will remember, in Mr. McCauley's case, he had sex with a 13-year-old or a 14-year-old five separate times, and recorded one of those. There was actual physical sex between the producer of the child pornography and the victim in that case.

Mr. McCauley had no criminal record, and had some mental health issues not identical to Mr. Sanders but not altogether dissimilar either. Your Honor gave him 15 years. My memory is that you said at the sentencing, you might not have even given him that, but you were bound by the statute so you did.

Mr. Hewlett -- I took this from the Government's

pleading in terms of the Hewlett case. According the Government, "The defendant's conviction stems largely from a video he created of himself having sex with a minor victim. But the full picture of the defendant's background is much larger. At the outset, the defendant has a lengthy criminal history which includes a history of noncompliance with supervision. The relevant conduct in the case began with his sexual abuse of Minor Victim 1, recording that, and then uploading it to online. While the investigation of those crimes was ongoing, he pursued another minor. During the case he repeatedly violated court orders and endangered the privacy and safety of the minor victims, lied under oath, and physically threatened his former counsel."

None of those factors are present in this case.

THE COURT: And you read that from the Government's --

MR. AMOLSCH: The Government's -- that was the first paragraph that the --

THE COURT: That isn't something I recited.

MR. AMOLSCH: No, that is something that the Government wrote in reference to what sentence they were asking Your Honor to impose. So that's my understanding of what the Government's version of what happened was.

THE COURT: All right. But it's not -- the point I'm making is, I didn't necessarily accept that.

MR. AMOLSCH: We're going to get to your sentence in

just one second. I wanted to frame it for Your Honor in terms of distinguishing Mr. Sanders from Mr. Hewlett.

Again, Mr. Sanders didn't upload any of these videos. He didn't share them, distribute them, otherwise -- he didn't share them with anybody. They literally stayed on his computer. This wasn't for anybody else's gratification. He didn't try to make money off of this. He wasn't doing any of those things.

THE COURT: I don't recall that Hewlett published them either.

MR. AMOLSCH: He did. He uploaded them to the internet. In that case, Your Honor, Your Honor gave him...

(OFF THE RECORD.)

THE COURT: I don't think -- you're wrong. He distributed it to a minor girl.

MR. AMOLSCH: Okay. He distributed it. There was no distribution from Mr. Sanders.

THE COURT: He sent it to a minor girl.

MR. AMOLSCH: In that case, Your Honor, you gave Mr. Hewlett 228 months, which is a 19-year sentence.

THE COURT: Yes.

MR. AMOLSCH: Again, with facts that are radically different than this case, in the sense that Mr. Hewlett actually had sex with the minor --

THE COURT: How old was the victim in Hewlett?

MR. AMOLSCH: I don't know, Your Honor. I'll let you

tell me. I'm not certain.

THE COURT: Go on. She was a teenager, 16.

MR. AMOLSCH: She was a teenager, about the same ages of the minors here, Your Honor.

THE COURT: Some were younger.

MR. AMOLSCH: Not all that different. But there's no sexual activity between Mr. Sanders --

THE COURT: Well, there was one -- you're right. I don't know that that makes any difference to the production requirement.

MR. AMOLSCH: I don't want to talk about that either. But I want to talk about how that impacts Your Honor's sentence, because I think it is incredibly important from a perspective on how to sanction Mr. Sanders for the behavior the jury found him guilty of -- the acts that the jury found him guilty of committing. I think it's incredibly relevant from a mitigation point of view; it's incredibly relevant to how Your Honor sentences other people consistent with how Your Honor has done it before.

Other cases that have been decided in this court which involve the actual sex trafficking of minors -- not the videoing of them, but them actually being trafficked, meaning people are making money off the sex that minors are having in violation of the law. In 2017, Judge Trenga gave a somewhat -- a sex-trafficker who had sex trafficked a 15-year-old repeatedly

180 months, 15 years. He gave another defendant, also trafficking a 15-year-old girl, 186 months. And in the *Daniels* case, the one that's most recent, where he actually was having the girls brought to him so that he could then have sex with him, was 182 months. Those cases, I think we can all agree - I would hope we could agree - are far more egregious than this.

Again, not to be repetitive, but there's nothing like that in this case. There's nothing to suggest that 15 years, 15 years is not sufficient for Mr. Sanders. And, you know, you've seen letters from his family of describing the person that they've known him to be; you've seen his activities in the community, the charity work he's done, the feeding of the homeless, all of those things, the awards that he's won. He has no criminal history at all. There's never been any suggestion that he's done anything illegal before this.

And I understand, and I certainly am sensitive, to the position of the mother who spoke here today. But I don't want to lose track of the fact that Mr. Sanders was on a website that was supposed to be for adults; that person's user name, prior to Mr. Sanders meeting him, was Ugly Trash. I understand there's some impact that has probably been -- he's probably suffered as a result of this, but I don't want to blow that out of proportion. I'm not minimizing it, but it's important for the Court to have that context.

How much time is videoing somebody else doing something

to themselves worth? 15 years. 15 years is a long time. He's only in his mid 20s. His father is right there. He's 80 years old. His mother, who suffers from breast cancer, is 65. His cousin is here to support him. 15 years is a long time, especially when you consider the fact that Logan McCauley got 15, Mr. Hewlett got 19, all for actions that are well in excess of what Mr. Sanders did.

All of that, Your Honor, needs to be factored in as you factor in a sentence. Again, I'm not saying consent is a defense, but as relates to mitigation, it's incredibly important. Both experts concluded he's not a future -- he's at a low risk of recidivism. He's a good candidate for therapy. Dr. Hendricks talked about the fact that given the nature of these bulletin boards and given the nature of the community itself, there's a lot of role playing that goes on, and it's not surprising that this sort of thing happened, a minor finding his way onto an adult-oriented website. Although he does acknowledge that Mr. Sanders should have backed away once he knew or was able to reasonably assume the person was a minor, and he didn't, so he needs to be punished for that.

But 15 years is a long time. He spent two years in the Alexandria Detention Center already --

THE COURT: He'll receive credit for that.

MR. AMOLSCH: The time he has spent there, Your Honor, has been pretty unusual. It's not designed to hold somebody for

two years. He's been in COVID lockdown, he's been isolated. It's been hard time already. He has serious medical issues. He's got the multiple sclerosis, he's got the optic neuritis, all of which has to be --

THE COURT: Well, those are related.

MR. AMOLSCH: All of which -- but they have to be treated. So he's physically deteriorating.

Again, his parents are elderly. He would like to see them one more time when he comes out.

I understand Your Honor is going to give him a sentence. We have objected, just for the record - I want to put this on - to the fact that I don't believe the mandatory minimums are constitutional. I understand the state of the law. I'm not expecting Your Honor to do anything meaningful with that, but in the event that changes down the road, it's at least important to Mr. Sanders that I've noted an objection. I understand the law, I'm just putting it out there for the Court.

THE COURT: All right. Anything else?

MR. AMOLSCH: When you think about what happened in this case versus the others, and the fact that consent is not a defense but it is definitely a mitigating factor, Your Honor, 15 years, lifetime supervision, sexual offender registry, required sex offender treatment, if that's what Your Honor orders, all of those are incredibly punitive on their own.

We would ask for the Court to designate him

specifically to FCI Butner Low. That's in the pleading, and I understand Your Honor is taking that into consideration and will include something in the Judgment & Commitment order reflecting your recommendation that he go there.

The Alexandria Detention Center has agreed to keep him locally at the ADC so he can be directly designated to his facility when the BOP designates him. The drug he takes, Kesimpta, is a very fragile drug, for his MS. It needs to be refrigerated. It can only be taken out a certain amount of time ahead of time. He needs to take injections of Benadryl. All of that the ADC has under control, and they've got the protocols in place. But if he bounces around from here to Northern Neck to Oklahoma, the odds of the BOP being able to successfully manage his condition are going to be pretty low.

Mr. Sanders -- I know you're going to give Mr. Sanders an opportunity to say something. Given his appeals and the fact that this is an ongoing process, I've advised him to not say anything. That's on me. I can tell you, contrary to what the Government has said, that he's very remorseful --

THE COURT: Well, you're certainly free to tell me what you've advised him, but it's up to him whether he allocutes or not.

MR. AMOLSCH: Yes, sir.

THE COURT: So that's not on you, that's on him.

MR. AMOLSCH: I understand. But I wanted the Court to

know that that's been my advice; that given his appeal -- Mr. Sanders has indicated that he is incredibly remorseful. He's sorry to everybody that this happened, and he's going to be paying for it for the rest of his life in one form or another.

THE COURT: All right.

MR. AMOLSCH: But 15 years is enough, Your Honor, in this case.

THE COURT: Mr. Sanders, you now have an opportunity to address the Court, and to say anything at all you wish to the Court by way of extenuation, mitigation, or indeed anything you think the Court should know before sentence is imposed. You're not required to say anything if you don't wish to, but you do have the opportunity to say something if you do wish to say something. Do you?

THE DEFENDANT: Briefly.

THE COURT: All right. Come to the podium, please.

THE DEFENDANT: My attorneys strongly advised me not to say anything today, but I at minimum I want to say I'm very sorry to everyone involved in this case. Thank you.

THE COURT: All right. I didn't give you an opportunity, Mr. Clayman, to respond to Mr. Amolsch's argument. He went over a great many things you didn't go over. But let me ask Mr. Amolsch -- just a moment.

MR. AMOLSCH: Yes, sir.

THE COURT: Mr. Amolsch, what did you say about

United States against *Battle*?

MR. AMOLSCH: I don't know if I said anything about *United States vs. Battle*, Your Honor. You would have to -- I have my sentencing memorandum. If you could point me to what Your Honor is asking me specifically, I can...

THE COURT: I think what you said that triggered my question -- you didn't say anything about the *Battle* case in your brief or in your argument, but you said that there is no case like this. And --

MR. AMOLSCH: Maybe there's one or two.

THE COURT: Yes.

MR. AMOLSCH: But that doesn't change --

THE COURT: The *Battle* case which was cited is one of those, which seems to me to be very close to this case.

But Mr. Clayman, I'll give you the opportunity now to respond.

MR. AMOLSCH: Your Honor, again, my points are the sentences that are handed out in this court by Your Honor in similar cases.

MR. CLAYMAN: Yes, Your Honor. We would just note our strong disagreement with the defendant's suggestion that this case is somehow unique, or so unique that it warrants a 15-year sentence. As Your Honor noted, we cited the *Battle* case. We've cited multiple cases on page 24 of our position paper that are extremely similar; online production cases, which are

unfortunately becoming more common, involving multiple victims.

Here, the victims are younger. They're, I believe, 13 to 17. There are aggravating factors here that are not present in the other cases we cited, including, like I said previously, the sadomasochistic nature of the abuse. And contrary to what the defense has argued here, some of the minor victims reported that the defendant did have sex with them or did engage in conduct with them in person.

So contrary to what the defense has said, Your Honor, this case is not unique. We have cited multiple cases where substantial sentences were imposed on very, very similar facts.

Unless the Court has any further questions --

THE COURT: Yes, I did. Confirm, if you would, please, that none of the minor victims have submitted requests for restitution in this case.

MR. CLAYMAN: None of the production victims did, Your Honor. The possession victims are the two restitution requests. That's correct.

MR. AMOLSCH: The last thing I will say, Your Honor, and then I'll be done, is that as relates to those cases, in each one of those cases cited by the Government, in those particular instances, the defendants actively deceived the people to send them videos and engage in sexual activity --

THE COURT: So now you know a lot about those cases, but a few minutes ago you didn't know anything.

MR. AMOLSCH: Well, Your Honor --

THE COURT: I'll go look at it myself. I think I will be more comfortable with that.

MR. AMOLSCH: Thank you. Yes, I think that's fair, Your Honor.

THE COURT: I have them here. I'm going to take a recess. I'm very sensitive to lawyers -- I've been here 35 years now, and lawyers tend to not be cabined by what they actually know.

MR. AMOLSCH: Well, Your Honor, I was trying to pick the things that I thought were most important and based --

THE COURT: I understand that. I was a lawyer once. I did what you're doing.

MR. AMOLSCH: Thank you, Your Honor.

THE COURT: All right. Court stands in recess. It will be for 10 minutes.

(Recess taken at 9:35 a.m.)

THE COURT: Any reason why the Court should not now impose sentence, Mr. Clayman?

MR. CLAYMAN: No, Your Honor.

THE COURT: Mr. Amolsch?

MR. AMOLSCH: No, Your Honor. Unless Your Honor has some questions about the cases you read. Other than that, no.

THE COURT: All right. Mr. Sanders, you may come to the podium, sir.

Mr. Sanders, you stand convicted of a number of serious criminal offenses involving production of child pornography, receipt of child pornography, possession of child pornography. I presided over the trial and I heard all of the evidence presented, including evidence from some of the child victims.

The law requires that I consider a variety of factors in imposing an appropriate sentence. First, your personal history and characteristics, about which I know a great deal. I know a great deal about your medical situation, I know a great deal about your -- about the assessment of the experts that you and the Government have retained to provide information. So I do know something -- I do know a good deal about your personal history and characteristics. And the law requires that I take that into account. And the reason for that is, every sentencing is unique because individuals are unique, and individuals present unique circumstances about themselves and the crimes they commit. So I am familiar with your personal history and characteristics, which I'm required by law to take into account in imposing an appropriate sentence.

I'm also required to impose a sentence that promotes respect for the law, that provides just punishment for the offenses, and that serves to deter you from committing crimes in the future. And also, any sentence I impose has to stand as a beacon, as a warning to others not to engage in this type of criminal conduct. And I also have to take into account your

educational background, your personal history. I do all of that.

Now, I have heard argument from counsel. Let me make one comment there. The reason I raised the *Battle* case, Mr. Amolsch, is, it is very close -- I don't expect to hear from you. I just want you to listen.

MR. AMOLSCH: Yes, sir.

THE COURT: Is that that case is very close to this case. You also cited the *McCauley* and *Hewlett* cases. *McCauley* differs from this case because, unlike this defendant, the defendant in *McCauley* did not have the intellectual ability -- he was very limited. His IQ was very low.

Weren't you counsel in that case?

MR. AMOLSCH: I was, Your Honor.

THE COURT: So you remember that.

MR. AMOLSCH: I do, Your Honor.

THE COURT: By contrast, Mr. Sanders has a degree from NYU and has also succeeded as a business person, and I'm sure and hope he will again in the future. So I just point that out as a distinction.

You also cited *Hewlett*. *Hewlett*, there was only one victim, and in *Hewlett*, the distribution there was sending it to that person, that young woman. So I don't think those are the same. *Hewlett* and *McCauley* are not the same as this case.

All right. Let's go on. I think the most important

factor here is just punishment for the offenses involved, and also general deterrence and specific deterrence of Mr. McCauley.

Let me emphasize yet again, Mr. Sanders, you are not here because you have an inclination to participate in BDSM activities. The law does not proscribe or criminalize BDSM per se. What the law says is that -- the law says that you can't abuse minors. You can't engage in this conduct with minors. And you did. Your counsel points out that you didn't know when you went on these websites that there were minors on there. I don't know what you knew, but I do know that you knew that these people were underage when you engaged in this activity.

And I think the Fourth Circuit put it well in the very case that Mr. Amolsch cited, in the *Battle* case. There, there was a First Amendment claim that people could take pictures of child pornography if that's what the victim wanted to do. The Fourth Circuit appropriately rejected that defense and said, simply: "The Government may legitimately protect children from self-destructive decisions reflecting the youthful poor judgment that makes them, in the eyes of the law, beneath the age of consent."

So that's why you're here for the production charges. And for the possession charges, that's separate. I'll come to that.

So I do want to make that clear. I want you to

understand clearly, Mr. Sanders, I'm not interested in and I don't express any view -- I don't care about whatever sexual proclivities you or anyone else has. I don't care. But you can't do it with underage people. I want you to be unmistakably clear about that.

THE DEFENDANT: It's very clear.

THE COURT: And the reason for that is, you got up and allocuted and you said you were sorry. Well, that doesn't say very much. When adults engage in sexual activity with children, no matter how much the children may not resist it or how much it may be argued by lawyers that they consented, the law doesn't permit the consent. And I can tell you that I have heard from many such victims that the scars of those experiences don't go away. It's just like a very serious physical scar.

I have a scar on my hand that I got almost 80 years ago, and it isn't gone. These are lifetime scars that result from these experiences. I made the same speech -- you didn't represent Hewlett, though, did you, Mr. Amolsch?

MR. AMOLSCH: That was Mr. Kiyonaga's case.

THE COURT: These are lifetime scars, so the law requires that I impose a sentence that reflects the seriousness of these offenses. And they are serious for that reason.

There's a tendency that people have -- and it's appropriate for your lawyer to argue as he did, but I don't want you to get the idea that you are here because of BDSM, and I

don't want you to escape from the knowledge that you can't do this with underage people no matter how much you think you persuade yourself that you may be helping them. You aren't. And I want that to be clear to you.

Now, the law also requires that I impose a sentence that deters others generally. So the sentence I impose on you, as I said, has to stand as a beacon, as a warning to others. And I do take that into account.

The law also requires that I impose a sentence that does not involve unwarranted disparities between the sentence I impose on you and the sentence imposed on others that are similar. Well, no case is exactly similar. Every case is distinctive, every defendant is unique, and the crimes in each case are unique.

And I've already alluded to some of the differences. For example, in *Hewlett* and *McCauley*, there was only one victim, not multiple victims, and the production there was a little different. In fact, in *McCauley*, what he did is he took -- in the course of a sex act, he -- as I recall, he asked the victim, "Do you mind if I take a picture of this," and then clicked it. And I erroneously concluded that that was sufficient to constitute production. I was not correct. That was wrong, and the Court of Appeals pointed that out. There has to be more of a purpose shown than just the instantaneous thought that they would take a picture. But my point is, that case was

distinctive for other reasons, distinct from this case for other reasons.

The law also requires that I take into account the guidelines. The guidelines here are, in effect, life. I think that is far too severe and not warranted in this case. And the Government has not argued for a guidelines sentence in that regard.

Am I right, Mr. Clayman?

MR. CLAYMAN: Yes, Your Honor.

THE COURT: But I have to impose a sentence that is reflective of the factors that I've indicated.

And so ultimately, a sentence is a judgment. Now, Congress makes a judgment for each of these offenses to a maximum. For example, for the production cases, the assessment is that there must be a mandatory minimum term of imprisonment of 15 years, and a maximum of 30 years for each of the production counts. And for the receipt counts, it is a mandatory minimum of five years and a maximum of 20 years. For the possession charge, it is no mandatory minimum, but a sentence of up to 20 years imprisonment. That's the judgment that Congress makes.

Then the Sentencing Commission has issued guidelines, and it attempts to indicate what the sentencing range should be if certain factors are taken into account. We've done that. And here, the sentencing guidelines would be a fairly large

number of months that I think goes beyond 100 years. Is that correct, Mr. Amolsch, Mr. Clayman?

MR. AMOLSCH: That's correct, Your Honor.

THE COURT: So it's essentially life, and I think that's excessive. I don't think that's warranted in this case.

So those are the facts that the Court takes into account. But ultimately it's the Court that makes a specific judgment in a specific case about specific defendants having committed specific crimes. But I'm cabined by those maximums and minimums. And so I've taken all of that into account.

But in the end, it's my judgment. And that's why the lawyers have called to my attention other cases that they argue are similar, because similar cases should be treated alike. It's not appropriate to treat different cases differently -- or same cases differently. I beg your pardon.

So in the end, I have to impose a sentence that's my judgment. It is the judgment of the court in this case, Mr. Sanders, that you be committed to the custody of the Bureau of Prisons for a period of -- with respect to Count 1, a period of 216 months; for Count 2, 216 months; for Count 3, 216 months; and for Count 4, 216 months. And for Count 5 and Count 6 each -- no, for Count 5, 216 months. All of those sentences are to run concurrently, not consecutively. 216 months is, I think, 18 years, Mr. Clayman?

MR. AMOLSCH: I was doing the math, Your Honor. I

believe that's correct.

MR. CLAYMAN: It's 17, Your Honor. I apologize, 18 years, Your Honor.

THE COURT: Most lawyers are lawyers because they failed math. I was actually very good at math. And then you-all would say I failed at law.

In any event, we continue. 216 months, and that's all concurrent. You're to pay a $100 special assessment for each of those counts, for a total of $600 for the six counts -- I'm sorry, not six counts. Five counts. So it's $500 for those counts. And don't hesitate to correct me if I err in that regard. This is simple. A special assessment of $100 for each of Counts 1 through Count 5, for a total of $500.

Now, there are other special assessments that I want to come to in a moment, but I want to go on.

I'm also going to impose, for each of those counts, a period of lifetime supervision. Now, Mr. Sanders, let me emphasize that that doesn't mean that you can't seek to have that shortened once you demonstrate a law-abiding habit of life for a while. I would be, if I'm here, or another judge will consider reducing that. It won't be necessary. But it's up to you.

I tell all defendants, life is making choices and living with the consequences of the choices you make. In other words, you write the pages of your own life story. You don't

determine where you're born, to whom you're born, or whether you're born with handicaps or talents, but you do determine how you respond to all of that.

Now, in fact, you were fortunate in your birth and you are fortunate in your abilities. You're an intelligent, capable young man. That doesn't mean you don't have problems physically and you don't have limitations. We all do. But you do determine how you respond to all of that.

Now, you've made good decisions, to some extent, in your life already. You went to university, you graduated; you developed an interest in being a lighting director in theatre and you got a degree in that. You also have made good decisions about being an entrepreneur and trying to earn money. And you've done well in that regard. Those are good decisions, and you have benefitted from those.

Your decision to engage in crime, however, is a bad decision. It's a criminal decision, and there are consequences for that today. I've imposed a sentence for Counts 1 through 5, and I've included everything but the special assessments.

Mr. Clayman, there's also a special assessment pursuant to Section 3014 of Title 18. Is that right? And also 3013?

MR. CLAYMAN: Yes. 3013 is the $100 special assessment; 3014 is a $5,000 special assessment.

THE COURT: Now, that special assessment requires that I make a finding about whether he's able to afford it?

MR. CLAYMAN: If you determine that he is not indigent, then the special assessment has to be imposed.

THE COURT: Just tell me in a couple of sentences whether you think he's indigent or not, and, if so, why or why not.

MR. CLAYMAN: We do not think he is indigent, Your Honor. I think, based on the record in this case, it is clear he has significant resources. On top of that, the case law makes clear you can consider his educational background, his age, and his future earning potential.

THE COURT: So his future earning potential?

MR. CLAYMAN: Yes, Your Honor. Based on those factors, we would say he's not indigent.

THE COURT: Mr. Amolsch, you would say his only asset is his car?

MR. AMOLSCH: And the fact that his parents have been supporting his lifestyle, both in terms of lawyers and things like that. So what he has, Your Honor, is virtually nonexistent.

THE COURT: So your arrangement is with his parents, not with him?

MR. AMOLSCH: That is correct, Your Honor.

THE COURT: It seems to me that I've imposed an 18 year mandatory sentence -- or 18 years. It's 15 mandatory; I enhanced that by three. So it will be a long time before he is

out earning money. I'm going to delay any imposition of a special assessment pursuant to 3014 until I finish the sentence in this case.

Now let's turn to Counts 6 through 12, which are somewhat similar, because Congress has provided there that for Counts 6, 7, 8, and 9 and 10 and 11, there's a mandatory minimum term of five years and up to 20 years. So what I'm going to do is impose the 216 months for each of those counts, but again, that's all concurrent, and it's concurrent with the sentences I imposed on Counts 1 through 6.

In other words, Mr. Sanders, your total custody sentence I intend is 216 months. Nothing consecutive and nothing beyond that.

Now, you'll have to pay a $100 special assessment for each of those counts; that is, Counts 6 through 12. And then, for supervised release I'm going to impose five years of supervised release for each of those counts, but that supervised release term will be concurrent, not consecutive.

So your total custody sentence is going to be the 216 months, and although you have a lifetime of supervision there, the supervision on the other counts is five years, and that is to run concurrently. And again, even with the 5-year sentence, Mr. Sanders, you can seek to have that terminated early if you demonstrate a law-abiding existence consistently - that is, you don't violate the conditions of supervised

release - and you demonstrate that you don't need supervision anymore.

Supervision has two principal purposes. First, it is to help you adjust to a law-abiding existence and life; and secondly, it is to protect the public, to make sure you don't do anything that harms the public, that you don't commit any crimes in the future. And if you do, you could be returned to prison for the full supervised release term.

But my point to you, Mr. Sanders, is to underscore that you can shorten these periods of supervised release, especially the lifetime one, if you demonstrate it isn't needed because you don't need it anymore. But you have to show that. And you'll have to show that to the judge, to a judge. It may well not be me. I won't be in this veil of tears that much longer, but you will be.

Now, I think I have imposed a sentence on each count.

MR. AMOLSCH: Your Honor, if I could, I believe there's the remaining possession count.

THE COURT: Yes. There's what?

MR. AMOLSCH: The remaining possession count.

THE COURT: Yes, that's right. That's Count 12, and there's no mandatory minimum there. That's up to 20 years, and I'm going to impose a 10-year sentence on that, to run concurrently to all of the others. It's pretty hideous, some of the things you collected.

MR. AMOLSCH: Yes, sir.

THE COURT: Now, your counsel has underscored again and again that all you did was punch a button, and boom, you collected it. And you didn't do it to -- or at least he says there's no evidence that you did it to slake any thirst you had for this kind of foul stuff that you collected. We don't know that. We don't know that.

Now, I also imposed a sentence on you, I said up to 10 years, and I'll give you five years of supervised release in that count as well. And that, too, can be shortened.

Now, all of the supervised release counts will be subject to the standard conditions that will be issued, and, Mr. Amolsch, you'll be required to review those with your client.

MR. AMOLSCH: Yes, sir.

THE COURT: I want to impose two special conditions. One is that he participate and successfully complete a program of mental health counseling. I think he would profit from this. We all might. You need to have insight, Mr. Sanders, into why you did what you did; indeed, you need to have insight into what interests you have in terms of sex, and why you have those interests, and how it is you can have them and how it is you ought to find a way not to have them. But that's what the mental health counseling is to help you do, to give you insight into what interests you and why you do certain things, so that

you can take command of your life.

As I told you, life is making choices and living with the consequences. You should say that to yourself every day. Because it's true for all of us in this courtroom. And you've demonstrated in your life, Mr. Sanders, that you have the intelligence, clearly, and the ability to make better choices for yourself. You're a smart young man. You can do better, and you have done better. But you need to understand very clearly that what you did is very wrong. It's criminal, and you can't do it ever again.

Now, we come back to special assessments. I've imposed a $100 special assessment for each count; then there is a special assessment for the certain eligible counts, under Section 3014, of up to $5,000. But that depends on his financial ability, and, as Mr. Clayman correctly points out, not just what he has today, but based on his ability to earn in the future when he's released.

I think that's what you correctly reminded me of, Mr. Clayman, am I right?

MR. CLAYMAN: Yes, Your Honor.

THE COURT: Well, it's a long time off, and I think I want to deal with restitution first and then come back to that. Because special assessments really have a kind of punitive effect. I don't doubt that his parents will continue to support him, but I don't want the punishment to be to his parents. I

don't want to assess a $5,000 special assessment that his parents are going to have to pay. I don't doubt that they have the wherewithal to do it and more. After all, they hired seven or eight different law firms and lawyers to participate in this case. I don't have any doubt at all that they can afford it. But that isn't legally relevant, and they shouldn't have to pay for that.

So let's go to restitution. Mr. Clayman, from where you're sitting - you don't have to go to the podium, I want Mr. Sanders to remain there - who is it who has requested restitution? Which of the victims?

MR. CLAYMAN: There are two victims of the possession of child pornography counts that have requested restitution. The pseudonyms of the victims are Andy and John Doe 4.

THE COURT: Yes, I recall those.

And so that the people in the courtroom understand, these are not any of the minor victims of the production counts, these are individuals whose -- who were abused and their images appear on the internet as child pornography. And some of them are quite awful, quite awful.

Now, is there an agreement as to how much I should order, or is there a disagreement, Mr. Amolsch?

MR. AMOLSCH: I have not reached any agreement with the Government regarding restitution, Your Honor.

THE COURT: How much is claimed, Mr. Clayman?

MR. CLAYMAN: I believe John Doe 4 is requesting at least 3,000, and the other victim is requesting substantially more. We would submit, Your Honor, that the statute requires at least 3,000, and based on what's in the PSR, that amount would be appropriate.

THE COURT: Yes. Now, is it -- 3,000 not joint and several, but 3,000 individually. Right?

MR. CLAYMAN: Per victim, yes.

THE COURT: In other words, those victims may have claims against other defendants in other cases, but it is not joint and several with this one?

MR. CLAYMAN: Correct, Your Honor.

THE COURT: All right. I'm going to impose a $3,000 restitution obligation for each of those two victims. It won't be due -- it is due and payable immediately, but if it isn't, Mr. Sanders, you won't have to begin paying it until you're 60 days released from confinement. And then you'll have to pay it to each at $100 per month, unless at that time, and at that time you can show -- or the Government can show that that amount should be increased or your counsel can show that it should be decreased because of your situation.

Now, that will be some years from now, and I won't be the judge when you're released. In fact, I won't be in this veil of tears. But I want you to know that it can be increased or decreased, and that I am imposing that upon you.

Now, I have imposed a term of incarceration for each count, a term of supervised release for each count, a special assessment for each count, except for the higher amounts under 3014. And I'll come back to that. And I've indicated what a special condition is.

I'm also going to recommend to the Bureau of Prisons that Mr. Sanders be designated to serve his sentence at a facility that is competent, capable of addressing his physical impairments. He has -- I'm not going to recite them here in open court. I know what they are. They're in the record. And he has requirements for medication. Indeed, while he was incarcerated here in Alexandria, I ordered immediate steps to be taken to provide certain medication which he still is required to receive.

And you're still receiving it, aren't you, Mr. Sanders?

THE DEFENDANT: Yes.

THE COURT: And that's very important, and I want the Bureau of Prisons - and I'll put this in the J&C - to be aware of that. And to be aware, as Mr. Amolsch as pointed out, that if he's shuffled here and there in various facilities, as the Bureau of Prisons is entitled to do - they have the discretion to do - that that's risky with him because he has to have this medication and he cannot predict when the onset of the condition that he requires the medication for is going to occur.

So I am going to recommend to the Bureau of Prisons

that he be designated to serve his sentence at a facility, and that he not be moved from the Alexandria Detention Center until that place is designated and he can go directly to that place. And, Mr. Amolsch, you and Ms. Ginsberg can make sure that whatever that place is, they have all the medical records, including his need for this medication and any other medications, and treatment for an ongoing condition that he may well have for the rest of his life.

MR. AMOLSCH: May I be heard on that just briefly, Your Honor?

THE COURT: Yes.

MR. AMOLSCH: The Sanders hired Joshua Sickler, who is an expert in BOP designations. And as part of our preparation for this sentencing, he did research on all the facilities that have the necessary medical treatment, the sex offender treatment, all of the things that Mr. Sanders is going to require.

We, in our pleading, asked for a specific designation to FCI Butner. I don't know if Your Honor would consider lifting that language directly from the pleading as part of your J&C recommendation to BOP, but we've done all the work on the front end to try to identify the appropriate --

THE COURT: Yes, and I think it's appropriate, and I think it's appropriate for you to have done that. It's my experience that these experts don't always get it right. I've

had people that I've sentenced who needed a heart transplant and they got it.

MR. AMOLSCH: Yes, sir.

THE COURT: Now, they didn't get it from where the expert said he should get it. He instead got it from the University of Texas in Houston or Dallas. I don't remember which one.

So I don't want pick a specific one, but I'll include in the J&C the recognition that an expert for the defendant has done research and believes that Butner is the most appropriate place. But I leave that to the discretion of the BOP, pointing out to the BOP that they should leave him in Alexandria Detention Center until they designate him to a specific place so we can be certain about the continuity of his medication and treatment.

MR. AMOLSCH: Thank you, Your Honor. If I could jump back to the $3,000 restitution, would Your Honor consider waiving any interest and penalties?

THE COURT: Yes, I will.

MR. AMOLSCH: Thank you, Your Honor. That's all I have.

THE COURT: One lawyer. Do you want to tell Mr. Amolsch? Ms. Ginsberg, I have a rule that --

MR. AMOLSCH: Yes, Your Honor, I'm getting instructions as we speak.

THE COURT: I have that rule because I got tired, many, many years ago, of listening to a cacophony of lawyers giving me their views. What is it?

MR. AMOLSCH: Ms. Ginsberg wanted me to bring up to the Court, that the Kesimpta, which is the medication Mr. Sanders needs to control his MS, is not yet on the BOP registry. So once he goes there, that's just something we're going to have to deal with in the future --

THE COURT: That's a good point, Ms. Ginsberg. But that's your problem, in the sense that I will put in the J&C -- spell the -- Ms. Ginsberg, you spell the medication.

MR. AMOLSCH: I can spell it. It's in my pleading, Your Honor, but it's K-E-S-I-M-P-T-R-A. Sorry, no R. But it's in my pleading, Your Honor, spelled correctly.

THE COURT: I will put in the J&C that he requires this, and it isn't a requirement for periodic; he requires it when the event occurs.

MR. AMOLSCH: And there's also regimented applications to it. It has to be refrigerated. I think Your Honor understands the fragile nature of it, and I appreciate the consideration.

Ms. Ginsberg has already arranged for the ADC to keep him there so they can follow these protocols. I think this will be okay. But anything put in the J&C will be much appreciated.

THE COURT: Yes, I will put it in the J&C. But, you

know, when your client is sent somewhere, you need to stay with your client and make sure that the receiving institution knows everything you think it should know. It will know everything from the J&C --

MR. AMOLSCH: Yes, sir.

THE COURT: -- and the PSR, because this is in the presentence investigation report --

MR. AMOLSCH: Right.

THE COURT: -- his physical condition.

MR. AMOLSCH: Yes, sir. Again, ADC gives him the Kesimpta 30 days, on schedule. It's a regular administration of it, there's a regular protocol for that. So it's just something I appreciate the Court taking it into consideration.

THE COURT: There is also something he gets if there's an onset of specific symptoms regarding his eyesight.

MR. AMOLSCH: That's right. That's in addition too, Your Honor, as well.

THE COURT: Yes. And they need to know about that, too. And they need to know, as I've ordered -- because he was in pretrial detention, and I ordered it because it was unclear he was going to get it in time to prevent any damage to his eyesight, which I was firm in my instructions to them to do it. And I think he's received it.

MR. AMOLSCH: Yes. And we appreciate that, Your Honor. Thank you.

(OFF THE RECORD.)

MR. AMOLSCH: I think we've covered everything, Your Honor.

THE COURT: I think so. Anything further on behalf of the Government?

MR. CLAYMAN: There are a few issues, Your Honor.

THE COURT: Oh, there's the return of property.

MR. CLAYMAN: Correct. A couple of other, as well as the forfeiture, which Ms. Zanobini can discuss if Your Honor would like to hear from the Government on it.

THE COURT: All right. Let me tell you where I stand on forfeiture. I'm not sure that I'm prepared to resolve everything. Clearly he must forfeit everything, all the equipment he used. The fact that on this equipment he has stuff that he wants back that doesn't relate to criminal conduct, but he wants it because, as I think you pointed out in your brief, it's part of his past life, that doesn't stop the forfeiture of the equipment.

Do you have a different view?

MR. AMOLSCH: Me, Your Honor, or the Government?

THE COURT: You.

MR. AMOLSCH: Me, no. I don't, as an initial -- to the initial answer to Your Honor's question, no. But I think Your Honor's instinct is correct that this is probably something that takes too much time to hash out now, and we probably ought

to have a --

THE COURT: Well, it won't surprise you to know that I've looked into it a bit.

MR. AMOLSCH: I believe that you have, Your Honor. But just given the time constraints, and I don't think it needs to be resolved today. So I think Your Honor's instinct is correct, we should table this to talk about --

THE COURT: Well, I'm going to tell you something so you can focus on it.

MR. AMOLSCH: Yes, sir.

THE COURT: Let me say this much, in the interest of moving on.

MR. AMOLSCH: Yes, sir.

THE COURT: I have looked into this. I think what it comes down to, Mr. Amolsch, is the defendant's view that he should have returned to him those portions of the memory of these devices that are not criminal. Do I have that right?

MR. AMOLSCH: Your Honor, I think there's slightly more to it. And I think the rules say if there's any dispute, I think we have to have a hearing.

THE COURT: Oh, I don't question that. Just answer my question.

MR. AMOLSCH: That is my general understanding of it, Your Honor. But given the Court's admonition against more than one lawyer speaking, that pleading was filed by Ms. Ginsberg.

THE COURT: There's going to be some other lawyer --

MR. AMOLSCH: Well, no, it will just be Ms. Ginsberg, but I am probably ill-equipped to answer the specifics of Your Honor's questions.

THE COURT: All right, Ms. Ginsberg.

MS. GINSBERG: Judge, I'm sure you've heard enough of me over the days and weeks. But that is correct, we are seeking the return of the data -- copies of the data of the noncontraband material on his computers, excluding anything that was used to facilitate any of these offenses.

THE COURT: All right. Now, you understand, of course, that these materials have to be found on these memories.

MS. GINSBERG: That's correct.

THE COURT: And these devices, the memories are not going to be returned to you or the defendant for that exercise. In other words, the Government - probably the FBI - is going to have to, as you would say, go through this and give him back everything that isn't criminal. In other words, if on there is an essay he wrote or a memory that he had about some happy event, he wants all that back because it wasn't criminal. That's what you're referring to.

And the issue is going to come down to, is that necessary under the law because it involves a significant burden on the Government. Isn't that it?

MS. GINSBERG: No, not quite. Because, Your Honor,

we've suggested that we use the same procedure that we used during the discovery phase of this case to identify exculpatory evidence that we believe we were entitled to, which is this. We retained a forensic expert who went to the FBI facility in Manassas, who made this initial scanning of the data, and downloaded that data onto a hard drive, which was then given to the FBI to review.

So the initial recovery and retrieval of the data is something that we are endeavoring to undertake.

THE COURT: All right. Let me cut to the chase. You may not know this, but I do. There's a Third Circuit and a Second Circuit case on this point, and I don't know that it -- because I haven't studied them yet. I don't know that those two decisions cover that. I think they do, and I think both decisions find that you forfeit the whole thing, and the government isn't required to do that.

Now, you've suggested that there's already a procedure. You and Mr. Clayman can discuss this. Look at those cases, and I think it's sufficient under the law that today, at sentencing, I have recognized that he forfeits all of the equipment, and the only question remaining is whether the memories have to be looked at by the government or by some other entity to determine whether there is anything on these memories that is not criminal. And that's where the debate is.

And I think you'll find the Second Circuit -- let me

see if I have those items here for you.

MS. GINSBERG: Judge, I'm aware of those cases. I'm also --

THE COURT: The *Noyes* case at 557 Federal Appendix, and *Wernick* at 673 Federal Appendix, W-E-R-N-I-C-K.

MS. GINSBERG: Yes, Your Honor. And in neither of those cases is there any real analysis of this issue whether the --

THE COURT: So I shouldn't pay attention to them. Okay. You'll get that chance. But you have those cases to overcome.

MS. GINSBERG: I do. And there is at least a Ninth Circuit case and another circuit case that has held to the contrary.

THE COURT: All right. And you'll be able to -- let's do it this way. You can file a brief, and do it a week from today, in which you -- you already filed a brief on forfeiture, so this will be sharply focused. And, Mr. Clayman, you can respond a week later. And then, if I need oral argument, I will ask for it; otherwise, I will decide it on the papers.

So in these briefs, make sure you focus sharply on what the issue is, make sure that you detail in clear fashion what you think the right solution and result is, and then, Mr. Clayman, you can tell me what you think the right result is and why you think I should rule that way. And I will consider

whether I need oral argument.

Anything else in sentencing today on behalf of the Government? Yes. Mr. Clayman, am I correct that forfeiture is required at the time of sentencing, unless I indicate that there are issues yet to be decided. Is that right?

MR. CLAYMAN: I think there's Fourth Circuit precedent, Your Honor, saying that if you notice your intention to enter an order of forfeiture, but then address it later, after sentencing, that that would preserve jurisdiction over the issue for Your Honor.

THE COURT: All right. And what's the case?

MR. CLAYMAN: That is the *Martin* case, the cite is 662 F.3d 301.

THE COURT: Yes, I think that's the same authority I was relying on.

Do you have any different view, Ms. Ginsberg?

MS. GINSBERG: No, Your Honor, I believe that's correct.

THE COURT: All right. Now, finally, Mr. Sanders, you have the right to appeal your conviction and sentence in this case. You may either ask me to note it now or you may do it within 10 days of today.

Mr. Amolsch, which does he prefer to do?

MR. AMOLSCH: If Your Honor can note it today, that would be great. And I will also file a notice of appeal, just

to make sure all issues are covered.

THE COURT: All right. I'll have the clerk note it.

Anything further?

MR. AMOLSCH: Nothing for Mr. Sanders, Your Honor.

THE COURT: Mr. Clayman?

MR. CLAYMAN: There were a few points I wanted to clarify for my understanding. Your Honor does not intend to impose any special assessments under 3014 or 2259(a). Is that correct?

THE COURT: No. Let's come back. I'm glad you reminded me, Mr. Clayman, because I wanted to do restitution first.

MR. CLAYMAN: Correct. So Your Honor is aware, these payments are due after restitution is paid, by the statute.

THE COURT: Yes. And these are a $5,000 special assessment, is that right, Mr. Clayman, for each of the production counts?

MR. CLAYMAN: For 3014, it's 5,000 per all 12 counts, because they all involve child pornography crimes.

THE COURT: So that's the total for all?

MR. CLAYMAN: It would be 60,000. So 5,000 per count, 60,000 total.

THE COURT: But to do that, I have to determine that he's either not indigent now, or that in the future he would be able to come up with $60,000.

MR. CLAYMAN: You have to make a finding as to whether he is indigent now, considering, among other factors, his earning potential, his educational background, his age, that sort of information.

THE COURT: All right. Well, I think I will make the finding that he is indigent now, because the record shows he has only an automobile. And although his parents may well be wealthy, as they apparently are, that doesn't count, does it, Mr. Clayman?

MR. CLAYMAN: Presently, I don't think his parents' wealth can be factored in. Again, though, I would stress, his future earning potential is something the Court can consider.

THE COURT: Yes. So I have to look ahead at 15 or 20 years from now and decide whether he should pay a special assessment then.

MR. CLAYMAN: Yes, Your Honor. If you determine that, as you suggested, he could start another business and he would be able to afford these payments, then Your Honor would be able to find him non-indigent and impose those special assessments.

THE COURT: And the special assessment is 5,000?

MR. CLAYMAN: Per count of conviction.

THE COURT: Right. It isn't less than that.

MR. CLAYMAN: It's a mandatory 5,000, yes.

THE COURT: Mr. Amolsch?

MR. AMOLSCH: Your Honor, I think Your Honor is

correct, he's indigent now. You've given him an 18-year sentence. He will have 12 convictions for possession, distribution, receipt of child pornography. The whole point is, his ability to earn any money when he comes out, I think the Court needs to understand the circumstances into which he's going to reenter the world. So whatever his earning potential may have been prior to this is going to be severely limited when he comes out. That's just the reality.

THE COURT: That's a view that's appropriate for you to bring to my attention, but actually, I know probably more about Mr. Sanders than you do.

MR. AMOLSCH: Yes, Your Honor.

THE COURT: And he is a pretty amazingly inventive and energetic young man. "Enterprising" would be the best word I could use. You know, even as a child, he developed a business selling...

MR. AMOLSCH: Yes, sir, rocks and candy.

THE COURT: That's right. And I have no doubt that while his convictions will be a significant burden if he wants to go out and work for Goldman Sachs, they are not a significant burden if he becomes, as he will, an entrepreneur of sorts. So I'm not moved by that. I think he does have earning potential in the future.

And the problem is, Mr. Clayman, it's $5,000 per count, for a total of how many counts?

MR. CLAYMAN: 12 counts. So 60,000 total, I believe.

THE COURT: That's a chunk of money. And the problem is, the statute doesn't -- I'm sorry, Mr. Amolsch, you can sit down.

MR. AMOLSCH: I apologize. I didn't know if I was going to be asked anything.

THE COURT: The statute doesn't give me the ability to reduce that by any amount?

MR. CLAYMAN: No, Your Honor. It requires $5,000.

THE COURT: So it's asking me -- and I would love to put this to the people who drafted that statute. It's asking me, at my age -- now, I've seen a lot. I've been on this planet for more than eight decades. I'm in my ninth decade. So I've seen a lot. And I do think he has earning potential when he gets out, and I do think -- but I have no idea what the situation is going to be when he gets out, or how much he will be able to earn. And the statute doesn't give me any discretion on whether it should be less than 5,000.

I think the best I can do, Mr. Amolsch -- because I am firmly convinced that your client has a lot more resiliency that you may think.

MR. AMOLSCH: Yes, sir.

THE COURT: I think he will have earning capacity. I think he can pay this. But I believe that if he turns out to be indigent for any reasonable length of time after he is released

from confinement, he can seek to show that and seek to be excused from paying this.

Am I right, Mr. Clayman?

MR. CLAYMAN: I believe that's correct, Your Honor.

THE COURT: So let's let the future speak for itself. I have a rosier picture of the future than you've painted.

MR. AMOLSCH: Yes, sir.

THE COURT: But I understand your argument. I think you're right, that in most cases these convictions would hobble most people. Not you, Mr. Sanders. I think you will be resilient. I just hope you remember that you can't do anything sexual with children, with underage people. And I don't express any view, and I don't care what you do with adults. It's none of my business and I don't care. Do you understand?

THE DEFENDANT: Yes. Thank you.

MR. AMOLSCH: If that's Your Honor's inclination, then, I would ask for the minimum -- whatever minimum required restitution order that Your Honor can order.

THE COURT: Well, it is just that. It's $5,000 per count, for a total of $60 [sic], and the J&C will so reflect that.

MR. AMOLSCH: Again, Your Honor --

THE COURT: But it will also note that it's based not that he's currently indigent, and that it's based on my assessment of his future ability to do it. And if in the future

that turns out to be wrong, I would support excusing him from that obligation.

MR. AMOLSCH: If you could also waive penalties and interest, as you did with the restitution.

THE COURT: Yes, I will. Anything further Mr. Clayman?

MR. CLAYMAN: I do have a copy of the restitution order that I can pass up to the Court.

THE COURT: Yes. Has it been seen by Mr. Amolsch?

MR. CLAYMAN: It has not. It's the standard order with blanks to fill in for the amounts that Your Honor imposed.

MR. AMOLSCH: Let me take a look at this, and we'll submit this to chambers after I've conferred with Mr. Clayman.

THE COURT: All right. Anything further? I think I've already ordered the restitution, I've already said that interest is waived, and I've already said that he has to begin paying the restitution at $100 a month 60 days after his release from confinement, and that amount can be increased or decreased depending on his circumstances.

MR. CLAYMAN: Yes, Your Honor.

THE COURT: Is that what the order provides?

MR. CLAYMAN: Yes, Your Honor. We can submit it.

THE COURT: I've done that at sentencing.

Anything else, Mr. Clayman?

MR. CLAYMAN: To confirm that Your Honor intends to remand the defendant.

THE COURT: Yes. He's in custody and he's committed to the custody of the Bureau of Prisons and he's in their custody.

MR. AMOLSCH: No objection.

THE COURT: I beg your pardon?

MR. AMOLSCH: No objection.

THE COURT: All right. Anything further on sentencing, Mr. Amolsch?

MR. AMOLSCH: No, sir, not from us.

THE COURT: All right. Let me ask -- well, we don't have a probation officer anymore. Have I omitted anything? Oh, yes, you're substituting for her?

PROBATION OFFICER: I am, Your Honor.

THE COURT: Have I omitted anything?

PROBATION OFFICER: The only thing that wasn't addressed was the other assessment, the ADAA, the 2259(a) assessment. That's the maximum of $50,000, but the Court can --

THE COURT: But I'm not required to impose that.

MS. SMIHAL: It just has to be addressed, Your Honor.

THE COURT: I understand that. Mr. Clayman?

MR. CLAYMAN: Yes, that's correct. You can impose zero or up to, I believe, $50,000.

THE COURT: What have I already imposed? I've already imposed $100 per count for all of the counts; I've already imposed a special assessment of $5,000 under 3014. Is that correct?

MR. CLAYMAN: Yes.

MR. AMOLSCH: For a total of $60,000.

THE COURT: For a total of $60,000. Now, why should I impose any more as a special assessment?

MR. CLAYMAN: We haven't really taken a position on that, Your Honor. I believe the probation officer's concern is that you need to make a finding on the record whether or not you intend to impose --

THE COURT: I do not. He's indigent at this time, and I've imposed, in essence, $60,000 on him when he gets out of prison. And that's enough. And that's based on his future earning capacity.

Now let me ask the probation officer, given that, have I omitted anything?

PROBATION OFFICER: Just to confirm, Your Honor, the only special condition you want ordered is mental health counseling?

THE COURT: Yes. He doesn't have a drug problem.

PROBATION OFFICER: There are several other special conditions for cases of this nature.

THE COURT: Several other what?

PROBATION OFFICER: Several other special conditions.

THE COURT: Oh, just a moment here. I've said that he has to participate in a program approved by the probation office for mental health treatment, to include psychosexual evaluation

and sex offender treatment. I've also said he has to register as a sex offender and make that registration or keep it up to date.

And he shall not engage in employment or volunteer services that allow him access to minors without the approval -- the knowing approval of the probation officer. And if there is going to be something, I think a judge at that time can address it. But at the moment, no employment or volunteer services allowing him access to computers or minors. He can't possess any sexually explicit material or images using young juvenile models under 18. That's child pornography.

Let me ask the probation officer, he shall have no contact with minors unless supervised by a competent informed adult; by that, I mean a competent adult who knows about these convictions. And he can't utilize any sex-related adult telephone services or electronic bulletin boards without the knowledge or permission of the probation officer.

All right. I've looked at the others. I'm satisfied none of the others should be imposed at this time. But rest assured that if, in the course of his supervised release -- I won't be here. But if, in the course of his supervised release, it becomes apparent that some of these additional conditions would be necessary, that's the time to address it, and the judge at that time, taking into account the circumstances that then exist, as well as these convictions, will be able to make a

reasoned judgment about it.

MS. SMIHAL: Yes, Your Honor.

THE COURT: Now, let me ask one last time, anything further by any party?

MR. CLAYMAN: Nothing from the Government.

MR. AMOLSCH: Nothing from Mr. Sanders, Your Honor.

THE COURT: And nothing from the probation office, either. Is that correct?

PROBATION OFFICER: No, Your Honor.

THE COURT: I thank counsel for your cooperation.

Mr. Amolsch, I was upset with you because of receiving, at 5 o'clock last night, these filings. I still looked at them, I still considered them, I still engaged them. But I want to remind you, because I hope and expect to see you here frequently - you're a good lawyer - don't do it again. Try anything you can to avoid that.

MR. AMOLSCH: Yes, sir, I understand.

THE COURT: And ask yourself, how would you feel if you got inundated with that stuff, in the midst of a trial, for an 8 o'clock sentencing the next day, when it appears to me - and I know you have views to the contrary - that it could have been done by much earlier, especially given that you have eight or nine lawyers on this case.

MR. AMOLSCH: I understand, Your Honor. Thank you.

THE COURT: All right. But I did want to say that what

you did was helpful to the Court. You as well, Mr. Clayman. And I appreciate it. And Ms. Ginsberg, you've been in this case for a lot longer --

MS. GINSBERG: Yes, sir.

THE COURT: -- and as always, I appreciate your contributions.

MS. GINSBERG: Thank you, Your Honor.

THE COURT: Mr. Sanders, good luck to you. And if nothing else, you should remember two things. You write the pages of your own life story by the decisions you make. You're an intelligent, very smart young man. You are young. You have a lot of life left open to you. You need to be careful and thoughtful about the decisions you make.

And the second thing you should take away is, don't do anything sexually with anyone even close to the age of consent. Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: It's not permitted. And I do think I understand a lot about you. Not everything, but I do think that I understand a good deal about the facts of this case. Good luck to you, Mr. Sanders.

THE DEFENDANT: Thank you.

THE COURT: You don't need luck, you just need to pay attention to what you do in your life. And I hope, to the extent that it's possible - and it isn't possible, to a large

extent - that you make good use of your time. And I think you do have the ability to do that. Because as I said many times, you're a smart young man, in contrast to many of the defendants I see who are limited intellectually. It doesn't mean you don't have problems. We all do. Recognize them. Insight into why you do things is very important. I don't have perfect insight as to why I do things, but I can assure you, I think a lot about them. You should too.

Court stands in recess. It will be a 5-minute recess and we'll go on with the trial.

(Off the record at 10:56 a.m.)

**CERTIFICATE OF OFFICIAL COURT REPORTER**

**I, Rebecca Stonestreet, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.**

**___//Rebecca Stonestreet//___** __________

**SIGNATURE OF COURT REPORTER** **DATE**

## $

**$100** [8] - 71:8, 71:12, 72:22, 74:14, 77:12, 79:18, 96:16, 97:23
**$3,000** [3] - 22:25, 79:13, 82:17
**$5,000** [8] - 72:23, 77:14, 78:1, 91:15, 93:24, 94:9, 95:19, 97:24
**$50,000** [2] - 97:16, 97:21
**$500** [2] - 71:10, 71:13
**$60** [1] - 95:20
**$60,000** [4] - 91:25, 98:2, 98:3, 98:10
**$600** [1] - 71:9

## /

**//Rebecca** [1] - 102:23

## 1

**1** [11] - 1:5, 1:24, 14:20, 34:3, 34:20, 38:19, 53:8, 70:19, 71:13, 72:18, 74:10
**10** [4] - 63:16, 74:6, 76:9, 90:22
**10-year** [1] - 75:23
**100** [3] - 23:12, 32:19, 70:1
**109** [2] - 24:21, 33:7
**10:56** [1] - 102:11
**11** [1] - 74:6
**1101** [1] - 1:19
**12** [6] - 74:4, 74:15, 75:21, 91:18, 93:2, 94:1
**120** [1] - 24:19
**12005** [1] - 1:15
**13** [1] - 62:2
**13-year-old** [1] - 52:16
**130** [1] - 17:8
**14** [1] - 11:7
**14-year-old** [2] - 46:20, 52:16
**15** [17] - 6:11, 11:14, 16:14, 52:21, 56:1, 56:8, 56:9, 57:1, 57:4, 57:6, 57:21, 58:22, 60:6, 69:16, 73:24, 92:13
**15-year** [1] - 61:22
**15-year-old** [2] - 55:25, 56:2
**16** [1] - 55:2
**17** [2] - 62:3, 71:2
**18** [11] - 21:18, 22:18, 48:20, 51:10, 70:24, 71:3, 72:21, 73:23, 73:24, 99:11
**18-year** [1] - 93:1
**180** [1] - 56:1
**182** [1] - 56:5
**186** [1] - 56:2
**19** [1] - 57:6
**19-year** [1] - 54:19

## 2

**2** [5] - 13:13, 25:10, 34:4, 34:20, 70:20
**20** [5] - 69:18, 69:20, 74:7, 75:22, 92:14
**20-CR-00143-TSE** [1] - 1:4
**200** [1] - 1:16
**2014** [1] - 30:10
**2017** [1] - 55:24
**20191** [1] - 1:16
**2020-CR-143** [1] - 2:4
**2022** [1] - 1:5
**20s** [2] - 44:16, 57:2
**2100** [1] - 1:12
**216** [10] - 70:20, 70:21, 70:22, 70:23, 71:7, 74:8, 74:12, 74:20
**22** [3] - 7:10, 11:20, 43:16
**22314** [3] - 1:13, 1:20, 1:23
**2259(a** [1] - 97:15
**2259(a)** [1] - 91:8
**228** [1] - 54:19
**23** [1] - 12:4
**24** [3] - 12:12, 43:17, 61:24
**24-year-old** [1] - 44:8
**240** [1] - 1:23
**2B1.1** [1] - 32:5
**2B2** [1] - 31:21
**2G1.1(b)6(b** [1] - 32:20
**2G2** [1] - 33:10
**2G2.1(b)(4)(a** [3] - 33:22, 34:8, 34:24
**2G2.2(b)(5)** [2] - 24:24, 33:10

## 3

**3** [4] - 25:11, 34:4, 34:20, 70:20
**3,000** [4] - 79:2, 79:4, 79:6, 79:7
**3,480** [1] - 24:16
**30** [2] - 69:16, 84:11
**300-month** [1] - 44:10
**301** [1] - 90:13
**3013** [2] - 72:21, 72:22
**3014** [8] - 72:21, 72:23, 74:2, 77:14, 80:4, 91:8, 91:18, 97:24
**32** [1] - 22:17
**35** [1] - 63:8

## 4

**4** [3] - 70:21, 78:14, 79:1
**40** [1] - 43:22
**40-year** [1] - 44:15
**401** [1] - 1:22
**41** [1] - 13:1
**42** [2] - 13:12, 13:22
**426-7767** [1] - 1:23
**43** [3] - 16:3, 23:17, 37:10
**44** [1] - 13:18
**45** [2] - 14:4, 14:19
**46** [1] - 25:6
**49** [1] - 13:18
**4B1.5** [1] - 25:16
**4b1.5(b)(1** [2] - 25:9, 33:8
**4B1.5(b)(1)** [1] - 24:23

## 5

**5** [17] - 3:16, 7:2, 7:11, 7:20, 8:6, 11:3, 12:14, 12:20, 34:4, 34:20, 70:21, 70:22, 71:13, 72:18, 100:12
**5,000** [5] - 91:18, 91:21, 92:20, 92:23, 94:18
**5-minute** [1] - 102:9
**5-year** [1] - 74:22
**50** [1] - 51:9
**50-year** [2] - 43:22, 44:1
**51** [1] - 14:19
**55** [3] - 14:24, 15:4, 15:9
**557** [1] - 89:4
**57** [2] - 20:10, 20:24
**5:00** [1] - 6:8

## 6

**6** [7] - 15:10, 15:24, 70:21, 74:4, 74:6, 74:10, 74:15
**60** [3] - 22:12, 79:17, 96:16
**60,000** [3] - 91:21, 91:22, 94:1
**610** [1] - 1:19
**62** [1] - 22:13
**65** [1] - 57:3
**662** [1] - 90:13
**673** [1] - 89:5

## 7

**7** [1] - 74:6
**703-299-3700** [1] - 1:13
**703-684-4333** [1] - 1:20
**703-969-2214** [1] - 1:17
**71** [2] - 23:12, 32:19
**79** [2] - 23:12, 32:19

## 8

**8** [6] - 7:2, 20:10, 20:24, 22:20, 74:6, 100:20
**80** [2] - 57:2, 67:15
**86** [2] - 23:12, 32:19
**8:10** [1] - 1:5

## 9

**9** [1] - 74:6
**93** [2] - 23:12, 32:19
**9:35** [1] - 63:17
**9th** [1] - 1:22

## A

**a.m** [3] - 1:5, 63:17, 102:11
**abiding** [3] - 71:19, 74:24, 75:4
**abilities** [1] - 72:5
**ability** [8] - 65:11, 77:6, 77:15, 77:16, 93:4, 94:7, 95:25, 102:2
**able** [13] - 10:25, 18:13, 18:15, 19:1, 57:19, 59:13, 72:25, 89:15, 91:25, 92:18, 94:17, 99:25
**above-entitled** [1] - 102:19
**abuse** [8] - 30:18, 42:15, 42:19, 45:1, 49:23, 53:7, 62:5, 66:7
**abused** [2] - 30:17, 78:18
**accept** [1] - 53:24
**access** [2] - 99:5, 99:9
**accommodated** [1] - 11:15
**accomplish** [1] - 37:13
**according** [2] - 33:25, 53:1
**account** [11] - 41:21, 51:15, 64:14, 64:18, 64:25, 68:8, 69:3, 69:24, 70:7, 70:10, 99:24
**accurate** [2] - 5:20, 37:16
**accurately** [1] - 13:19
**acknowledge** [2] - 42:24, 57:18
**acknowledged** [1] - 12:23
**acknowledgement** [2] - 41:22, 45:9
**acknowledges** [1] - 50:9
**act** [3] - 10:7, 47:24, 68:19
**Act** [1] - 25:4
**acted** [1] - 51:11
**actions** [2] - 47:9, 57:6
**actively** [2] - 51:12, 62:22
**activities** [5] - 30:11, 31:4, 48:9, 56:11, 66:5
**activity** [8] - 29:12, 38:5, 46:18, 48:12, 55:7, 62:23, 66:12, 67:9
**Acts** [1] - 33:14
**acts** [8] - 42:12, 46:8, 46:11, 46:14, 46:24, 47:25, 48:3, 55:15
**actual** [4] - 28:12, 47:22, 52:17, 55:21
**ADAA** [1] - 97:15
**ADC** [5] - 9:19, 59:6, 59:11, 83:22, 84:10
**add** [4] - 12:12, 14:18, 15:17, 21:17
**added** [5] - 15:1, 15:3, 18:6, 25:10, 33:12
**addition** [4] - 21:20, 25:13, 26:14, 84:16
**additional** [4] - 4:13, 20:4, 22:1, 99:22
**additions** [3] - 22:1, 36:23, 37:16
**additive** [1] - 25:13
**address** [12] - 10:19, 22:10, 23:10, 27:7, 28:3, 30:25, 32:14, 32:17, 60:9, 90:8, 99:7, 99:23

**addressed** [8] - 20:9, 25:2, 25:3, 32:12, 33:7, 33:11, 97:15, 97:18
**addresses** [1] - 33:15
**addressing** [2] - 13:5, 80:8
**adequate** [3] - 17:11, 17:25, 32:25
**adjust** [1] - 75:4
**administer** [1] - 16:17
**administration** [1] - 84:11
**admission** [1] - 45:9
**admonition** [1] - 86:24
**adopt** [1] - 19:16
**adopted** [2] - 36:22, 36:24
**ads** [1] - 42:3
**adult** [6] - 48:19, 48:24, 57:17, 99:14, 99:15
**adult-oriented** [3] - 48:19, 48:24, 57:17
**adults** [4] - 28:13, 56:19, 67:9, 95:13
**advice** [2] - 19:3, 60:1
**advised** [3] - 59:17, 59:21, 60:17
**advocacy** [1] - 27:12
**affected** [2] - 7:4, 41:14
**affidavit** [5] - 35:10, 35:20, 35:24, 36:6, 36:13
**affidavits** [1] - 20:18
**afford** [3] - 72:25, 78:5, 92:18
**afraid** [1] - 40:17
**age** [8] - 30:22, 48:25, 49:3, 66:20, 73:10, 92:3, 94:12, 101:15
**agency** [1] - 13:24
**agents** [1] - 20:18
**ages** [2] - 49:8, 55:3
**aggravating** [2] - 44:24, 62:3
**ago** [5] - 4:5, 4:7, 62:25, 67:16, 83:2
**agree** [4] - 6:19, 6:21, 56:5, 56:6
**agreed** [1] - 59:5
**agreement** [2] - 78:21, 78:23
**ahead** [4] - 21:9, 41:8, 59:10, 92:13
**Alexandria** [10] - 1:2, 1:13, 1:20, 1:23, 16:24, 57:22, 59:5, 80:12, 81:2, 82:12
**alike** [1] - 70:13
**allegation** [1] - 51:11
**allegations** [1] - 12:5
**allocuted** [1] - 67:8
**allocutes** [1] - 59:21
**allow** [3] - 2:19, 9:19, 99:5
**allowed** [1] - 38:7
**allowing** [1] - 99:9
**alluded** [1] - 68:15
**almost** [1] - 67:15
**altogether** [1] - 52:21
**amazingly** [1] - 93:13
**amended** [12] - 3:22, 4:13, 4:16, 4:19, 9:25, 10:1, 10:4, 11:15, 11:17, 15:1, 17:12, 18:1
**Amendment** [1] - 66:15
**amendments** [2] - 21:6, 21:10
**America** [1] - 2:3
**AMERICA** [1] - 1:3
**Amolsch** [48] - 2:12, 2:20, 6:4, 6:15, 15:5, 17:11, 18:24, 19:5, 19:24, 20:9, 23:3, 25:25, 26:15, 27:8, 30:25, 31:21, 31:25, 35:1, 35:21, 36:7, 36:12, 36:16, 36:19, 37:7, 37:17, 38:23, 45:21, 60:23, 60:25, 63:21, 65:5, 66:14, 67:18, 70:2, 73:14, 76:13, 78:22, 80:19, 81:4, 82:23, 86:15, 90:23, 92:24, 94:3, 94:19, 96:8, 97:7, 100:11
**AMOLSCH** [213] - 1:14, 1:15, 2:11, 2:21, 2:25, 3:4, 3:9, 3:11, 3:15, 3:18, 3:21, 4:2, 4:5, 4:8, 4:10, 4:16, 4:20, 4:23, 5:1, 5:4, 5:6, 5:12, 5:17, 6:7, 6:9, 6:13, 6:16, 6:19, 6:21, 6:24, 7:6, 7:15, 7:18, 7:21, 8:1, 8:4, 8:9, 8:11, 9:2, 9:9, 9:14, 9:18, 9:24, 10:5, 10:10, 10:12, 10:14, 10:18, 10:21, 10:23, 11:4, 11:9, 11:13, 11:16, 11:19, 11:22, 12:3, 12:11, 12:15, 12:21, 13:4, 13:8, 13:11, 13:20, 14:8, 14:13, 14:17, 14:25, 15:7, 16:8, 16:13, 16:16, 16:22, 16:25, 17:6, 17:9, 17:15, 19:23, 20:2, 22:6, 22:9, 23:7, 23:11, 23:23, 24:2, 25:19, 26:4, 26:8, 26:22, 26:24, 27:13, 27:16, 27:20, 27:25, 28:5, 28:10, 28:15, 28:24, 29:4, 29:9, 29:14, 29:18, 29:24, 30:2, 31:5, 31:10, 31:15, 31:22, 32:1, 32:6, 33:20, 35:2, 35:23, 36:17, 36:20, 37:5, 37:8, 38:24, 45:23, 46:12, 47:3, 47:18, 48:13, 50:14, 50:17, 51:4, 51:6, 52:3, 52:11, 52:14, 53:16, 53:19, 53:25, 54:10, 54:15, 54:18, 54:21, 54:25, 55:3, 55:6, 55:11, 57:24, 58:6, 58:19, 59:23, 59:25, 60:6, 60:24, 61:2, 61:10, 61:12, 61:17, 62:19, 63:1, 63:4, 63:10, 63:14, 63:22, 65:7, 65:14, 65:16, 67:19, 70:3, 70:25, 73:16, 73:22, 75:17, 75:20, 76:1, 76:15, 78:23, 81:9, 81:12, 82:3, 82:16, 82:20, 82:24, 83:4, 83:12, 83:18, 84:5, 84:8, 84:10, 84:16, 84:24, 85:2, 85:20, 85:22, 86:4, 86:10, 86:13, 86:18, 86:23, 87:2, 90:24, 91:4, 92:25, 93:12, 93:17, 94:5, 94:22, 95:7, 95:16, 95:22, 96:3, 96:11, 97:3, 97:5, 97:8, 98:2, 100:6, 100:17, 100:24
**Amolsch's** [2] - 20:25, 60:21
**amount** [8] - 22:23, 28:17, 30:5, 59:9, 79:4, 79:19, 94:8, 96:17
**amounts** [2] - 80:3, 96:10
**analysis** [3] - 25:7, 50:5, 89:7
**Andy** [1] - 78:14
**angry** [1] - 39:25
**Annie** [1] - 2:7
**ANNIE** [1] - 1:11
**answer** [6] - 24:9, 24:10, 50:15, 85:23, 86:21, 87:3
**anxiety** [2] - 39:23, 39:25
**apologize** [5] - 22:10, 32:1, 52:3, 71:2, 94:5
**apparent** [1] - 99:22
**appeal** [3] - 60:1, 90:20, 90:25
**appealing** [1] - 42:13
**Appeals** [1] - 68:23
**appeals** [1] - 59:16
**appear** [1] - 78:19
**APPEARANCES** [1] - 1:9
**appearances** [1] - 2:4
**appeared** [2] - 2:18, 14:10
**Appendix** [2] - 89:4, 89:5
**applicable** [1] - 33:10
**application** [4] - 24:22, 25:15, 32:10, 34:8
**applications** [1] - 83:18
**applied** [1] - 32:20
**applies** [1] - 16:10
**appointed** [2] - 4:1, 4:2
**appreciate** [7] - 14:9, 15:5, 83:20, 84:13, 84:24, 101:2, 101:5
**appreciated** [1] - 83:24
**appropriate** [19] - 9:14, 16:1, 16:12, 27:7, 33:19, 37:2, 37:13, 38:13, 45:13, 64:7, 64:19, 67:24, 70:14, 79:5, 81:22, 81:23, 81:24, 82:10, 93:9
**appropriately** [1] - 66:17
**approval** [2] - 99:5, 99:6
**approved** [1] - 98:24
**April** [1] - 1:5
**argue** [4] - 28:22, 44:23, 67:24, 70:12
**argued** [3] - 62:6, 67:11, 69:6
**argues** [1] - 24:4
**argument** [16] - 13:18, 23:25, 25:20, 25:21, 32:15, 32:16, 33:15, 37:2, 38:15, 50:19, 60:21, 61:8, 65:3, 89:19, 90:1, 95:8
**arguments** [1] - 20:4
**arranged** [1] - 83:22
**arrangement** [1] - 73:20
**arrangements** [1] - 9:20
**art** [1] - 49:9
**ashamed** [1] - 39:14
**aside** [1] - 51:21
**aspect** [2] - 8:15, 28:16
**aspects** [2] - 28:11, 32:5
**assess** [1] - 78:1
**assessment** [24] - 28:7, 64:10, 69:14, 71:8, 71:12, 72:20, 72:23, 72:24, 73:2, 74:2, 74:14, 77:12, 77:13, 78:1, 80:3, 91:16, 92:15, 92:20, 95:25, 97:15, 97:16, 97:24, 98:4
**assessments** [6] - 71:14, 72:19, 77:11, 77:23, 91:8, 92:19
**asset** [1] - 73:14
**assets** [1] - 36:1
**assign** [1] - 50:4
**associate** [2] - 49:20, 51:18
**associated** [1] - 46:18
**assume** [2] - 17:10, 57:19
**assure** [1] - 102:7
**assured** [2] - 7:3, 99:20
**attach** [1] - 25:25
**attached** [1] - 26:11
**attempts** [1] - 69:23
**attention** [7] - 11:6, 25:3, 43:11, 70:12, 89:9, 93:10, 101:24
**attorney** [3] - 9:22, 18:2, 18:10
**Attorney's** [1] - 20:16
**ATTORNEY'S** [1] - 1:12
**attorneys** [3] - 8:14, 18:11, 60:17
**AUSA** [4] - 1:10, 1:10, 1:11, 1:11
**authority** [2] - 49:23, 90:14

**autism** [1] - 50:19
**automobile** [1] - 92:7
**Avenue** [1] - 1:12
**average** [2] - 29:25, 30:1
**avoid** [2] - 44:22, 100:16
**awards** [2] - 26:2, 56:13
**aware** [5] - 46:15, 80:18, 80:19, 89:2, 91:13
**awful** [2] - 78:20

## B

**backed** [2] - 48:21, 57:18
**background** [5] - 20:21, 53:4, 65:1, 73:9, 92:3
**bad** [1] - 72:16
**based** [9] - 5:10, 43:5, 63:11, 73:7, 77:16, 79:4, 95:23, 95:24, 98:11
**Based** [1] - 73:12
**Battle** [6] - 61:1, 61:7, 61:13, 61:23, 65:4, 66:14
**battle** [1] - 61:3
**BDSM** [20] - 8:15, 8:16, 8:17, 8:23, 14:5, 14:6, 14:11, 14:15, 28:21, 29:5, 31:4, 34:16, 34:19, 38:3, 38:5, 48:4, 49:5, 66:4, 66:5, 67:25
**beacon** [2] - 64:24, 68:7
**beating** [2] - 48:8, 48:13
**becomes** [4] - 46:20, 46:21, 93:21, 99:22
**becoming** [2] - 39:10, 62:1
**BEFORE** [1] - 1:7
**beg** [2] - 70:15, 97:4
**began** [1] - 53:7
**begin** [3] - 15:2, 79:16, 96:15
**beginning** [1] - 15:8
**behalf** [4] - 8:14, 27:9, 85:4, 90:2
**behavior** [15] - 7:5, 8:23, 14:11, 14:12, 14:15, 22:3, 23:5, 25:22, 28:12, 46:8, 48:23, 49:18, 50:10, 55:14
**belabor** [1] - 8:15
**believes** [1] - 82:10
**below** [1] - 49:8
**belt** [1] - 7:13
**Benadryl** [1] - 59:10
**beneath** [1] - 66:20
**benefit** [1] - 9:3
**benefitted** [1] - 72:15
**benign** [1] - 27:10
**Berlin** [6] - 26:21, 27:16, 27:17, 49:25, 50:1
**best** [2] - 93:14, 94:19
**better** [4] - 21:9, 77:6, 77:7, 77:8
**between** [7] - 17:22, 29:5, 32:5, 43:21, 52:17, 55:7, 68:10
**beyond** [3] - 33:19, 70:1, 74:13
**Bill** [1] - 2:6
**birth** [1] - 72:4
**bit** [3] - 20:9, 38:7, 86:3
**blackmailed** [1] - 14:20
**blame** [2] - 41:24, 45:10
**blanks** [1] - 96:10
**blood** [1] - 17:21
**blow** [1] - 56:22
**boards** [2] - 57:14, 99:16
**body** [1] - 43:20
**boom** [1] - 76:3
**BOP** [15] - 5:9, 5:19, 9:3, 9:8, 12:2, 12:6, 16:17, 16:21, 59:7, 59:13, 81:13, 81:21, 82:11, 82:12, 83:6
**born** [3] - 72:1, 72:2
**bothered** [1] - 8:10
**bounces** [1] - 59:12
**bound** [1] - 52:23
**boys** [7] - 30:17, 42:3, 49:2, 49:3, 49:5, 49:8
**breast** [1] - 57:3
**brief** [4] - 61:8, 85:16, 89:16, 89:17
**briefly** [4] - 5:21, 18:14, 60:15, 81:9
**briefs** [1] - 89:21
**bring** [3] - 9:10, 83:4, 93:10
**brought** [2] - 11:5, 56:4
**BRYAN** [1] - 1:14
**bulk** [4] - 28:25, 30:6, 31:2, 31:7
**bulletin** [2] - 57:14, 99:16
**burden** [3] - 87:23, 93:19, 93:21
**Bureau** [10] - 7:24, 37:18, 37:20, 38:2, 70:18, 80:6, 80:18, 80:21, 80:25, 97:2
**business** [7] - 28:13, 50:25, 51:8, 65:18, 92:17, 93:15, 95:14
**Butner** [3] - 59:1, 81:19, 82:10
**button** [1] - 76:3

## C

**cabined** [2] - 63:8, 70:9
**cacophony** [1] - 83:2
**cage** [3] - 7:11, 8:5, 11:21
**calculating** [1] - 32:23
**calculation** [3] - 16:11, 23:16, 23:20
**can..** [1] - 61:5
**cancer** [1] - 57:3
**candidate** [2] - 27:22, 57:12
**candy** [1] - 93:17
**cannot** [2] - 40:16, 80:23
**capable** [2] - 72:5, 80:8
**capacity** [2] - 94:23, 98:12
**captain** [1] - 18:7
**car** [1] - 73:15
**care** [9] - 7:13, 8:21, 22:12, 23:1, 28:12, 67:2, 67:3, 95:13, 95:14
**careful** [2] - 6:23, 101:12
**carefully** [2] - 4:25, 28:7
**case** [100] - 2:2, 2:18, 7:5, 8:14, 8:15, 9:23, 14:6, 14:11, 16:2, 19:4, 20:18, 23:2, 23:5, 23:17, 24:1, 24:5, 24:9, 24:14, 29:14, 29:15, 30:1, 33:18, 33:19, 34:16, 37:13, 38:3, 38:6, 38:14, 41:16, 42:21, 44:1, 44:4, 44:14, 46:2, 46:5, 46:6, 46:17, 46:21, 46:22, 47:19, 47:20, 48:1, 48:15, 49:17, 52:10, 52:15, 52:18, 53:1, 53:7, 53:10, 53:14, 54:11, 54:18, 54:22, 56:3, 56:8, 58:20, 60:7, 60:19, 61:7, 61:9, 61:13, 61:14, 61:22, 61:23, 62:10, 62:15, 65:4, 65:8, 65:9, 65:10, 65:13, 65:24, 66:14, 67:19, 68:12, 68:14, 68:25, 69:1, 69:5, 70:5, 70:8, 70:17, 73:7, 73:8, 74:3, 78:5, 88:2, 88:12, 89:4, 89:13, 90:11, 90:12, 90:21, 100:23, 101:2, 101:20
**Case** [2] - 1:3, 2:3
**cases** [34] - 21:22, 29:23, 43:6, 43:11, 43:19, 43:21, 44:6, 44:25, 47:20, 47:23, 55:20, 56:5, 61:19, 61:24, 61:25, 62:4, 62:10, 62:20, 62:21, 62:24, 63:23, 65:9, 69:14, 70:12, 70:13, 70:14, 70:15, 79:10, 88:18, 89:2, 89:7, 89:10, 95:9, 98:20
**cash** [1] - 36:13
**caught** [1] - 45:19
**causal** [1] - 22:24
**causes** [1] - 40:15
**cell** [1] - 40:17
**Center** [6] - 16:24, 22:16, 57:22, 59:5, 81:2, 82:13
**certain** [14] - 5:10, 5:19, 17:3, 22:2, 23:21, 24:19, 35:4, 55:1, 59:9, 69:24, 76:25, 77:13, 80:13, 82:14
**certainly** [4] - 31:17, 38:5, 56:16, 59:20
**CERTIFICATE** [1] - 102:15
**certify** [1] - 102:17
**chambers** [1] - 96:12
**chance** [1] - 89:10
**change** [5] - 5:16, 6:11, 12:18, 17:7, 61:12
**changed** [2] - 5:15, 16:15
**changes** [7] - 13:1, 19:19, 21:5, 22:1, 22:13, 58:15
**Chapters** [1] - 25:10
**character** [1] - 20:22
**characteristics** [4] - 41:20, 64:8, 64:13, 64:18
**characterization** [1] - 11:6
**characterized** [1] - 13:19
**charge** [3] - 40:22, 46:15, 69:19
**charged** [1] - 38:4
**charges** [3] - 29:11, 66:22, 66:23
**charity** [1] - 56:12
**chase** [1] - 88:10
**chastity** [4] - 7:10, 7:13, 8:5, 11:21
**chats** [1] - 13:19
**check** [2] - 15:16, 44:7
**Chief** [1] - 9:21
**child** [36] - 21:14, 21:17, 22:18, 28:16, 29:6, 29:23, 30:1, 30:13, 33:23, 34:3, 42:15, 42:16, 46:7, 46:12, 46:21, 47:9, 47:11, 47:15, 47:17, 47:20, 47:23, 49:16, 51:18, 52:6, 52:18, 64:2, 64:3, 64:5, 66:16, 78:13, 78:19, 91:19, 93:3, 93:15, 99:11
**children** [5] - 40:24, 66:18, 67:9, 67:10, 95:12
**Children** [1] - 22:17
**choices** [4] - 71:23, 71:24, 77:2, 77:6
**choked** [1] - 12:13
**chose** [1] - 34:4
**CHRISTOPHER** [2] - 1:14, 1:15
**Christopher** [1] - 2:12
**chunk** [1] - 94:2
**circuit** [1] - 89:13
**Circuit** [7] - 66:13, 66:17, 88:11, 88:12, 88:25, 89:13, 90:6
**circumstances** [6] - 23:21, 43:23, 64:16, 93:5, 96:18, 99:24
**cite** [1] - 90:12
**cited** [15] - 43:6, 43:19, 43:20, 44:1, 44:8, 46:5, 61:13, 61:23, 61:24, 62:4, 62:10, 62:21, 65:9,

65:21, 66:14
**cites** [1] - 7:21
**claim** [1] - 66:15
**claimed** [1] - 78:25
**claims** [1] - 79:10
**clarify** [1] - 91:7
**classification** [1] - 9:5
**Clayman** [37] - 2:6, 5:23, 24:5, 24:14, 27:1, 30:7, 32:8, 38:12, 41:6, 41:8, 43:10, 60:21, 61:15, 63:19, 69:8, 70:2, 70:24, 72:20, 77:15, 77:19, 78:8, 78:25, 88:18, 89:18, 89:24, 90:3, 91:5, 91:11, 91:16, 92:9, 93:24, 95:3, 96:5, 96:12, 96:23, 97:19, 101:1
**CLAYMAN** [67] - 1:10, 2:6, 5:24, 6:3, 19:15, 24:6, 24:11, 24:16, 24:19, 27:2, 30:9, 30:13, 30:16, 30:22, 32:9, 32:16, 38:15, 38:19, 41:7, 41:9, 43:14, 43:17, 43:19, 44:5, 44:12, 44:18, 44:23, 45:5, 61:20, 62:16, 63:20, 69:9, 71:2, 72:22, 73:1, 73:6, 73:12, 77:20, 78:12, 79:1, 79:8, 79:12, 85:6, 85:8, 90:6, 90:12, 91:6, 91:13, 91:18, 91:21, 92:1, 92:10, 92:16, 92:21, 92:23, 94:1, 94:9, 95:4, 96:6, 96:9, 96:19, 96:21, 96:24, 97:20, 98:1, 98:5, 100:5
**clear** [14] - 12:18, 19:10, 20:20, 23:15, 23:19, 42:17, 45:24, 66:25, 67:5, 67:6, 68:4, 73:8, 73:9, 89:22
**clearly** [6] - 4:18, 25:13, 67:1, 77:6, 77:8, 85:13
**clerk** [3] - 3:1, 3:13, 91:2
**CLERK** [1] - 2:2
**clicked** [1] - 68:20
**client** [5] - 17:11, 76:14, 84:1, 84:2, 94:20
**close** [4] - 61:14, 65:5, 65:8, 101:15
**coerce** [1] - 33:3
**coerced** [1] - 11:25
**coercion** [3] - 49:19, 49:23, 51:17
**collected** [4] - 28:18, 75:25, 76:4, 76:6
**comfortable** [1] - 63:3
**command** [1] - 77:1
**comment** [1] - 65:4
**Commercial** [2] - 25:4, 33:14
**Commission** [3] - 25:6, 25:8, 69:22
**commit** [2] - 64:17, 75:6
**Commitment** [1] - 59:3
**committed** [7] - 43:2, 46:14, 46:25, 48:3, 70:9, 70:18, 97:1
**committing** [2] - 55:16, 64:22
**common** [1] - 62:1
**communicate** [1] - 42:4
**communicated** [1] - 42:6
**community** [5] - 29:6, 49:4, 49:5, 56:12, 57:14
**competent** [3] - 80:8, 99:13, 99:14
**complete** [3] - 23:19, 50:1, 76:17
**completed** [4] - 13:23, 35:19, 50:4, 50:20
**completely** [1] - 3:20
**computer** [8] - 23:14, 28:19, 31:18, 32:16, 32:21, 33:2, 54:5
**COMPUTERIZED** [1] - 1:25
**computers** [2] - 87:9, 99:9
**concern** [4] - 5:19, 9:2, 43:1, 98:6
**concerned** [1] - 37:17
**concerning** [1] - 20:21
**conclude** [2] - 32:25, 50:13
**concluded** [6] - 34:23, 50:2, 50:3, 50:14, 57:11, 68:21
**conclusions** [4] - 19:17, 27:20, 36:24, 37:1
**concurrent** [4] - 71:8, 74:9, 74:18
**concurrently** [3] - 70:23, 74:22, 75:24
**condition** [6] - 59:14, 80:5, 80:23, 81:7, 84:9, 98:16
**conditions** [6] - 74:25, 76:12, 76:16, 98:20, 98:22, 99:22
**conduct** [21] - 8:19, 20:22, 24:23, 27:10, 33:4, 33:5, 33:9, 33:24, 34:1, 34:4, 34:9, 34:24, 42:8, 42:10, 44:17, 45:20, 53:7, 62:8, 64:25, 66:7, 85:15
**conferred** [2] - 18:24, 96:12
**confinement** [3] - 79:17, 95:1, 96:17
**confirm** [6] - 7:19, 17:24, 18:22, 62:13, 96:24, 98:15
**confirming** [1] - 48:19
**Congress** [3] - 69:13, 69:21, 74:5
**conjunction** [1] - 25:16
**consecutive** [3] - 40:23, 74:12, 74:18
**consecutively** [1] - 70:23
**consent** [13] - 34:2, 45:25, 48:9, 48:12, 48:13, 49:15, 49:16, 49:17, 57:9, 58:20, 66:21, 67:12, 101:15
**consented** [1] - 67:11
**consequence** [1] - 51:1
**consequences** [4] - 45:20, 71:24, 72:17, 77:3
**consider** [9] - 20:20, 57:5, 64:6, 71:21, 73:9, 81:19, 82:17, 89:25, 92:12
**consideration** [3] - 59:2, 83:21, 84:13
**considerations** [1] - 45:6
**considered** [3] - 34:1, 34:6, 100:13
**considering** [1] - 92:2
**consistent** [5] - 24:7, 41:17, 43:8, 50:3, 55:18
**consistently** [2] - 11:24, 74:24
**constitute** [1] - 68:22
**constitutional** [1] - 58:13
**constraints** [1] - 86:5
**contact** [2] - 40:2, 99:13
**contacted** [3] - 18:3, 18:11
**contained** [2] - 20:11, 20:15
**contents** [1] - 18:25
**context** [4] - 14:11, 49:4, 49:5, 56:24
**continue** [3] - 42:25, 71:7, 77:24
**continued** [2] - 39:20, 42:4
**continues** [1] - 41:24
**continuity** [1] - 82:14
**contradicted** [1] - 20:14
**contrary** [5] - 59:18, 62:5, 62:9, 89:14, 100:21
**contrast** [2] - 65:17, 102:3
**contravene** [1] - 44:21
**contributions** [1] - 101:6
**contrition** [1] - 42:24
**control** [4] - 9:11, 40:13, 59:11, 83:6
**convicted** [2] - 38:4, 64:1
**conviction** [4] - 51:2, 53:2, 90:20, 92:21
**Conviction** [1] - 17:5
**convictions** [5] - 93:2, 93:19, 95:9, 99:15, 99:25
**convinced** [1] - 94:20
**cooperation** [1] - 100:10
**copies** [1] - 87:8
**copy** [4] - 18:16, 18:17, 96:6
**core** [1] - 34:18
**correct** [35] - 6:3, 13:21, 14:1, 14:2, 17:23, 20:1, 20:2, 21:4, 25:8, 26:4, 36:3, 43:13, 62:18, 68:22, 70:2, 70:3, 71:1, 71:11, 73:22, 79:12, 85:8, 85:24, 86:6, 87:7, 87:13, 90:3, 90:18, 91:9, 91:13, 93:1, 95:4, 97:20, 97:25, 100:8, 102:18
**corrected** [1] - 5:20
**correction** [2] - 21:15, 32:6
**corrections** [2] - 19:13, 21:1
**correctly** [5] - 32:24, 34:23, 77:15, 77:18, 83:14
**counsel** [10] - 19:4, 32:19, 33:25, 53:13, 65:3, 65:13, 66:8, 76:2, 79:20, 100:10
**counseling** [3] - 76:18, 76:24, 98:17
**Count** [9] - 70:19, 70:20, 70:21, 70:22, 71:13, 75:21
**count** [14] - 75:16, 75:18, 75:20, 76:10, 77:12, 80:2, 80:3, 91:21, 92:8, 92:21, 93:24, 95:20, 97:23
**counted** [2] - 25:18, 33:16
**counting** [3] - 24:25, 25:12, 32:15
**country** [1] - 43:20
**counts** [21] - 69:17, 71:9, 71:10, 71:11, 71:16, 74:8, 74:15, 74:17, 74:21, 76:11, 77:13, 78:13, 78:17, 91:17, 91:18, 93:25, 94:1, 97:23
**Counts** [6] - 71:13, 72:18, 74:4, 74:6, 74:10, 74:15
**couple** [4] - 9:24, 41:16, 73:3, 85:8
**course** [8] - 20:20, 38:20, 51:4, 68:19, 87:11, 99:20, 99:21
**Court** [47] - 1:22, 3:6, 7:7, 8:16, 8:20, 10:6, 14:25, 15:4, 15:7, 15:23, 20:4, 20:20, 22:22, 23:19, 26:19, 35:3, 37:11, 41:15, 41:21, 43:7, 45:6, 45:17, 45:24, 46:1, 46:3, 47:6, 49:2, 56:24, 58:17, 58:25, 59:25, 60:9, 60:10, 60:11, 62:12, 63:18, 68:23, 70:6, 70:7, 83:5, 84:13, 92:12, 93:5, 96:7, 97:16, 101:1
**COURT** [325] - 1:1, 1:21, 2:9, 2:14, 2:17, 2:22, 3:3, 3:7, 3:10, 3:12, 3:16, 3:19, 4:1,

4:4, 4:7, 4:9, 4:15, 4:18, 4:22, 4:24, 5:2, 5:5, 5:11, 5:15, 5:21, 6:1, 6:4, 6:8, 6:10, 6:14, 6:18, 6:20, 6:22, 6:25, 7:9, 7:17, 7:19, 7:24, 8:2, 8:5, 8:10, 8:12, 9:7, 9:13, 9:16, 9:22, 10:3, 10:9, 10:11, 10:13, 10:15, 10:19, 10:22, 11:1, 11:5, 11:10, 11:14, 11:17, 11:20, 11:23, 12:8, 12:12, 12:16, 13:1, 13:5, 13:9, 13:12, 13:17, 14:1, 14:3, 14:9, 14:14, 14:18, 14:22, 15:5, 15:9, 15:14, 15:17, 16:7, 16:9, 16:14, 16:19, 16:23, 17:1, 17:7, 17:10, 17:16, 17:19, 17:24, 18:20, 18:24, 19:3, 19:7, 19:11, 19:16, 19:24, 20:6, 21:8, 21:12, 21:19, 21:22, 21:25, 22:5, 22:7, 22:11, 23:10, 23:12, 23:24, 24:3, 24:8, 24:13, 24:18, 24:20, 25:20, 26:5, 26:9, 26:14, 26:23, 26:25, 27:4, 27:14, 27:17, 27:23, 28:3, 28:6, 28:11, 28:16, 29:3, 29:7, 29:12, 29:15, 29:23, 29:25, 30:7, 30:11, 30:15, 30:19, 30:24, 31:8, 31:13, 31:19, 31:25, 32:4, 32:8, 32:14, 32:18, 33:21, 35:12, 35:17, 35:21, 36:3, 36:15, 36:19, 36:21, 37:6, 37:9, 38:18, 38:20, 39:1, 39:5, 41:2, 41:5, 41:8, 43:10, 43:15, 43:18, 43:24, 44:7, 44:14, 44:19, 45:2, 45:21, 46:10, 47:1, 47:13, 48:12, 50:12, 50:16, 51:1, 51:5, 52:2, 52:9, 52:13, 53:15, 53:18, 53:23, 54:8, 54:13, 54:17, 54:20, 54:24, 55:2, 55:5, 55:8, 57:23, 58:5, 58:18, 59:20, 59:24, 60:5, 60:8, 60:16, 60:20, 60:25, 61:6, 61:11, 61:13, 62:13, 62:24, 63:2, 63:6, 63:12, 63:15, 63:18, 63:21, 63:24, 65:8, 65:15, 65:17, 67:7, 67:20, 69:10, 70:4, 71:4, 72:24, 73:3, 73:11, 73:14, 73:20, 73:23, 75:19, 75:21, 76:2, 76:16, 77:21, 78:15, 78:25, 79:6, 79:9, 79:13, 80:17, 81:11, 81:23, 82:4, 82:19, 82:22, 83:1, 83:9, 83:15, 83:25, 84:6, 84:9, 84:14, 84:18, 85:4, 85:7, 85:11, 85:21, 86:2, 86:8, 86:11, 86:14, 86:21, 87:1, 87:5, 87:11, 87:14, 88:10, 89:4, 89:9, 89:15, 90:11, 90:14, 90:19, 91:2, 91:5, 91:10, 91:15, 91:20, 91:23, 92:5, 92:13, 92:20, 92:22, 92:24, 93:9, 93:13, 93:18, 94:2, 94:7, 94:10, 94:23, 95:5, 95:8, 95:19, 95:23, 96:5, 96:8, 96:13, 96:20, 96:22, 97:1, 97:4, 97:6, 97:9, 97:13, 97:17, 97:19, 97:22, 98:3, 98:9, 98:18, 98:21, 98:23, 100:3, 100:7, 100:10, 100:18, 100:25, 101:5, 101:8, 101:18, 101:23, 102:15, 102:24

**court** [14] - 2:2, 11:2, 29:21, 39:22, 43:3, 46:23, 53:10, 55:20, 61:18, 63:15, 70:17, 80:10, 102:9
**Court's** [6] - 8:2, 12:22, 16:1, 36:25, 38:24, 86:24
**Courthouse** [1] - 1:22
**courtroom** [4] - 12:18, 39:12, 77:4, 78:16
**COURTROOM** [1] - 2:2
**cousin** [1] - 57:4
**cover** [2] - 25:22, 88:14
**covered** [6] - 10:4, 24:24, 33:9, 34:24, 85:2, 91:1
**covers** [1] - 25:22
**COVID** [1] - 58:1
**create** [1] - 44:9
**created** [1] - 53:3
**credit** [5] - 35:16, 35:19, 36:8, 36:11, 57:23
**crime** [9] - 8:18, 29:16, 40:23, 46:7, 46:12, 47:9, 47:11, 72:16
**crimes** [12] - 41:12, 41:23, 45:15, 45:25, 47:11, 53:9, 64:16, 64:22, 68:13, 70:9, 75:6, 91:19
**criminal** [18] - 2:2, 9:1, 14:16, 23:5, 46:18, 47:24, 52:19, 53:5, 56:14, 64:2, 64:25, 72:17, 77:9, 85:15, 86:17, 87:18, 87:20, 88:24
**Criminal** [1] - 1:3
**criminalize** [1] - 66:5
**criteria** [1] - 34:11
**CRR** [1] - 1:21
**culpability** [1] - 49:14
**cumulative** [4] - 25:15, 32:5, 33:11, 33:12
**custody** [6] - 70:18, 74:11, 74:19, 97:1, 97:2
**cut** [1] - 88:10

## D

**Dallas** [1] - 82:6
**damage** [1] - 84:21
**Daniels** [1] - 56:2
**data** [5] - 87:8, 88:5, 88:6, 88:8
**date** [1] - 99:3
**DATE** [1] - 102:24
**dating** [1] - 30:10
**days** [7] - 18:9, 18:12, 79:17, 84:11, 87:7, 90:22, 96:16
**deal** [11] - 8:18, 9:7, 10:23, 10:25, 64:8, 64:9, 64:10, 64:12, 77:22, 83:8, 101:20
**deals** [1] - 46:13
**dealt** [1] - 17:3
**debate** [1] - 88:24
**Debbie** [1] - 39:8
**decade** [1] - 94:13
**decades** [1] - 94:13
**deceived** [1] - 62:22
**decide** [3] - 13:6, 89:20, 92:14
**decided** [2] - 55:20, 90:5
**decision** [12] - 7:1, 7:12, 8:3, 11:8, 11:24, 16:2, 16:11, 32:23, 33:18, 72:16, 72:17
**decisions** [10] - 5:8, 5:10, 66:19, 72:9, 72:12, 72:14, 88:14, 88:15, 101:10, 101:13
**decreased** [3] - 79:21, 79:25, 96:17
**deeply** [1] - 40:3
**defendant** [37] - 2:10, 8:24, 12:10, 12:13, 13:7, 13:13, 14:19, 20:22, 22:2, 26:3, 26:20, 27:9, 33:1, 34:16, 34:19, 34:22, 37:3, 41:20, 42:10, 42:13, 42:16, 43:2, 44:2, 44:8, 44:15, 45:3, 45:7, 45:11, 53:5, 56:1, 62:7, 65:10, 65:11, 68:13, 82:9, 87:15, 96:25
**Defendant** [1] - 1:5
**DEFENDANT** [16] - 1:14, 2:16, 17:18, 17:23, 18:2, 18:23, 19:1, 19:5, 19:10, 60:15, 60:17, 67:6, 80:16, 95:15, 101:17, 101:22
**defendant's** [9] - 22:23, 41:12, 41:22, 42:22, 45:10, 53:2, 53:4, 61:21, 86:15
**defendants** [5] - 62:22, 70:8, 71:23, 79:10, 102:3
**defense** [13] - 32:19, 33:25, 34:3, 38:9, 45:25, 46:2, 49:15, 49:16, 57:10, 58:21, 62:6, 62:9, 66:17
**definitely** [2] - 36:1, 58:21
**degrading** [1] - 42:12
**degree** [2] - 65:17, 72:12
**delay** [1] - 74:1
**delete** [3] - 15:10, 15:18, 15:24
**demonstrate** [4] - 71:19, 74:24, 75:1, 75:11
**demonstrated** [1] - 77:5
**denied** [2] - 13:2, 13:3
**denies** [7] - 12:10, 12:13, 13:13, 14:19, 15:17, 15:22, 22:2
**deny** [2] - 12:14, 12:16
**depicted** [1] - 30:13
**depictions** [2] - 33:25, 34:10
**deputy** [1] - 3:13
**deriving** [1] - 34:13
**described** [2] - 47:21
**describes** [1] - 49:6
**describing** [1] - 56:10
**description** [1] - 49:9
**designate** [2] - 58:25, 82:13
**designated** [4] - 59:6, 80:7, 81:1, 81:3
**designates** [1] - 59:7
**designation** [1] - 81:18
**designations** [1] - 81:13
**designed** [1] - 57:25
**desire** [2] - 14:10, 37:25
**despite** [1] - 42:5
**destructive** [1] - 66:19
**detail** [3] - 6:23, 8:25, 89:22
**detailed** [1] - 10:16
**detect** [1] - 45:16
**detention** [1] - 84:20
**Detention** [5] - 16:24, 57:22, 59:5, 81:2, 82:13
**deter** [2] - 45:3, 64:22
**deteriorating** [1] - 58:7
**determinations** [1] - 37:20
**determine** [7] - 72:1, 72:2, 72:8, 73:1, 88:22, 91:23, 92:16
**determined** [2] - 25:10, 37:15
**deterrence** [5] - 45:4, 45:13, 45:14, 66:2
**deters** [1] - 68:6
**developed** [2] - 72:11, 93:15
**devices** [5] - 23:4, 30:8, 30:10, 86:17, 87:14
**devoted** [1] - 42:18

**diagnose** [2] - 50:21
**diagnosed** [1] - 17:2
**dialogue** [1] - 14:5
**difference** [2] - 16:7, 55:9
**differences** [1] - 68:15
**different** [11] - 25:22, 43:12, 44:21, 48:16, 54:22, 55:6, 68:18, 70:14, 78:4, 85:19, 90:16
**differently** [3] - 27:12, 70:14, 70:15
**differs** [1] - 65:10
**difficult** [1] - 45:16
**difficulties** [1] - 18:21
**DiMURO** [1] - 1:18
**direct** [1] - 31:16
**directly** [6] - 9:8, 24:10, 49:18, 59:6, 81:3, 81:20
**director** [1] - 72:11
**disagree** [1] - 34:8
**disagreement** [2] - 61:21, 78:22
**discard** [2] - 9:15, 9:16
**discarded** [2] - 48:7, 50:19
**disclaimer** [1] - 21:17
**discovered** [1] - 48:21
**discovery** [1] - 88:2
**discretion** [4] - 38:24, 80:21, 82:11, 94:17
**discuss** [3] - 32:3, 85:9, 88:18
**discussed** [2] - 42:14, 45:8
**discussion** [1] - 46:24
**disorder** [3] - 50:4, 50:21, 50:22
**disparities** [2] - 44:22, 68:10
**disparity** [1] - 43:13
**displayed** [1] - 42:20
**dispute** [1] - 86:19
**dissimilar** [1] - 52:21
**distinct** [1] - 69:1
**distinction** [3] - 29:5, 29:8, 65:20
**distinctive** [2] - 68:13, 69:1
**distinguishes** [1] - 47:19
**distinguishing** [1] - 54:2
**distribute** [1] - 54:4
**distributed** [2] - 54:14, 54:15
**distribution** [3] - 54:16, 65:22, 93:3
**district** [1] - 43:21
**DISTRICT** [3] - 1:1, 1:1, 1:8
**District** [2] - 1:22, 23:19
**Division** [1] - 1:2
**doctor** [2] - 27:10, 27:11
**doctors** [3] - 26:17, 26:18, 27:8
**Doe** [2] - 78:14, 79:1
**doms** [1] - 49:7
**done** [15] - 15:6, 39:19, 40:20, 55:18, 56:12, 56:15, 62:20, 69:24, 72:14, 77:8, 81:21, 81:24, 82:10, 96:22, 100:22
**door** [1] - 40:17
**double** [6] - 15:16, 24:25, 25:12, 32:15, 33:16, 44:7
**double-counting** [1] - 32:15
**doubt** [6] - 8:6, 31:12, 77:24, 78:2, 78:5, 93:18
**down** [6] - 39:8, 40:10, 58:15, 86:15, 87:22, 94:4
**downloaded** [6] - 28:25, 30:6, 31:1, 31:6, 31:11, 88:6
**Dr** [14] - 26:22, 27:2, 27:3, 27:15, 27:16, 49:25, 50:1, 50:3, 50:4, 50:20, 57:13
**drafted** [1] - 94:11
**drive** [2] - 51:22, 88:6
**Drive** [1] - 1:15
**dropped** [4] - 3:23, 18:2, 18:10, 18:16
**drug** [3] - 59:7, 59:8, 98:18
**duct** [1] - 12:5
**duct-taping** [1] - 12:5
**due** [3] - 79:15, 91:14
**during** [4] - 18:18, 42:20, 53:10, 88:2

**E**

**early** [2] - 9:19, 74:24
**earn** [4] - 72:13, 77:16, 93:4, 94:17
**earning** [10] - 73:10, 73:11, 74:1, 92:3, 92:12, 93:6, 93:22, 94:14, 94:23, 98:12
**ease** [1] - 30:5
**easiest** [1] - 47:6
**easily** [1] - 43:25
**EASTERN** [1] - 1:1
**easy** [1] - 28:19
**educational** [3] - 65:1, 73:9, 92:3
**effect** [3] - 25:22, 69:4, 77:24
**effectively** [1] - 24:17
**efforts** [1] - 45:10
**egregious** [1] - 56:6
**eight** [5] - 2:17, 14:10, 78:4, 94:13, 100:22
**either** [7] - 50:6, 52:21, 54:9, 55:11, 90:21, 91:24, 100:8
**elderly** [1] - 58:8
**electronic** [1] - 99:16
**eligible** [1] - 77:13
**ELLIS** [2] - 1:5, 1:7
**Ellis** [2] - 2:3, 17:19
**email** [2] - 36:7, 36:9
**emails** [1] - 18:12
**embarrassed** [1] - 39:14
**emphasize** [2] - 66:3, 71:18
**employed** [1] - 51:8
**employment** [2] - 99:4, 99:8
**end** [5] - 33:17, 43:3, 70:11, 70:16, 81:22
**endangered** [1] - 53:11
**endeavoring** [1] - 88:9
**energetic** [1] - 93:14
**enforcement** [3] - 13:24, 15:12, 45:10
**engage** [11] - 8:19, 33:3, 34:4, 42:11, 62:7, 62:23, 64:24, 66:7, 67:9, 72:16, 99:4
**engaged** [3] - 34:16, 66:11, 100:13
**engaging** [3] - 42:8, 44:17, 50:10
**enhanced** [1] - 73:25
**enhancement** [13] - 15:19, 15:25, 16:10, 23:13, 24:22, 25:9, 31:20, 31:25, 32:11, 32:20, 33:8, 33:10, 33:22
**enhancements** [1] - 25:16
**enormous** [2] - 6:17, 30:5
**ensure** [1] - 43:11
**ensuring** [1] - 43:2
**enter** [1] - 90:7
**entered** [1] - 48:4
**enterprising** [1] - 93:14
**entice** [1] - 33:3
**entire** [1] - 25:7
**entitled** [3] - 80:21, 88:3, 102:19
**entity** [1] - 88:22
**entrepreneur** [2] - 72:13, 93:21
**equally** [2] - 42:9, 45:17
**equipment** [4] - 85:14, 85:18, 88:20
**equipped** [1] - 87:3
**err** [1] - 71:11
**erroneously** [1] - 68:21
**error** [2] - 10:5, 50:9
**escape** [1] - 68:1
**especially** [4] - 47:21, 57:5, 75:10, 100:22
**ESQ** [2] - 1:14, 1:18
**essay** [1] - 87:19
**essence** [4] - 23:8, 24:24, 46:15, 98:10
**essentially** [2] - 44:20, 70:4
**evaluation** [1] - 98:25
**evaluations** [1] - 50:1
**evening** [1] - 7:2
**event** [4] - 58:15, 71:7, 83:17, 87:20
**evidence** [20] - 15:23, 20:13, 20:14, 29:1, 29:3, 31:15, 31:16, 32:25, 33:1, 34:2, 48:22, 48:23, 51:12, 51:14, 51:19, 51:22, 64:4, 64:5, 76:5, 88:3
**evident** [1] - 38:5
**exactly** [3] - 47:13, 49:10, 68:12
**examination** [2] - 28:19, 50:20
**example** [2] - 68:16, 69:14
**except** [1] - 80:3
**exception** [2] - 19:18, 36:23
**excess** [1] - 57:6
**excessive** [1] - 70:5
**excluding** [1] - 87:9
**exclusively** [1] - 30:16
**excruciating** [1] - 8:25
**exculpatory** [1] - 88:2
**excused** [1] - 95:2
**excuses** [1] - 42:25
**excusing** [1] - 96:1
**exercise** [1] - 87:15
**exhibits** [1] - 20:19
**exist** [1] - 99:25
**existence** [2] - 74:24, 75:4
**expect** [4] - 6:23, 37:23, 65:5, 100:14
**expecting** [1] - 58:14
**experience** [6] - 7:7, 9:4, 30:2, 30:3, 30:6, 81:25
**experiences** [2] - 67:13, 67:17
**expert** [6] - 50:9, 50:12, 81:13, 82:5, 82:9, 88:4
**experts** [4] - 50:23, 57:11, 64:10, 81:25
**explain** [5] - 14:4, 14:11, 27:9, 38:6, 38:9
**explained** [1] - 8:24
**explanation** [1] - 10:11
**explicit** [6] - 33:4, 33:6, 44:3, 44:10, 44:17, 99:10
**exploitation** [2] - 22:19, 28:22
**Exploitation** [2] - 25:5, 33:14
**Exploited** [1] - 22:17
**express** [3] - 8:20, 67:2, 95:12
**expressed** [1] - 51:20
**extent** [7] - 10:5, 13:24, 21:19, 46:1, 72:9, 101:25, 102:1
**extenuation** [1] - 60:10
**extremely** [1] - 61:25
**eyes** [1] - 66:20
**eyesight** [2] - 84:15, 84:22

**F**

**F.3d** [1] - 90:13
**face** [3] - 20:25, 39:11, 45:19
**facilitate** [2] - 33:3, 87:10
**facilities** [3] - 8:7, 80:20, 81:14
**facility** [4] - 59:7, 80:8, 81:1, 88:4
**fact** [22] - 5:9, 7:17, 14:14, 15:3, 22:16,

29:15, 32:4, 33:1, 49:15, 50:7, 51:19, 56:18, 57:5, 57:13, 58:12, 58:20, 59:16, 68:18, 72:4, 73:16, 79:23, 85:14
**factor** [3] - 57:9, 58:21, 66:1
**factored** [2] - 57:8, 92:11
**factors** [11] - 41:16, 43:5, 44:24, 50:6, 53:14, 62:3, 64:6, 69:11, 69:24, 73:12, 92:2
**facts** [5] - 41:15, 54:21, 62:11, 70:6, 101:20
**failed** [2] - 71:5, 71:6
**fails** [2] - 14:4, 42:1
**fair** [2] - 10:7, 63:4
**fairly** [1] - 69:25
**familial** [1] - 17:21
**familiar** [3] - 41:15, 46:17, 64:17
**family** [5] - 18:11, 39:24, 40:3, 45:11, 56:10
**far** [5] - 6:23, 17:21, 52:7, 56:6, 69:5
**fashion** [1] - 89:22
**father** [1] - 57:2
**fault** [1] - 7:4
**FBI** [9] - 7:12, 12:19, 12:23, 13:15, 13:22, 15:14, 87:16, 88:4, 88:7
**FCI** [2] - 59:1, 81:19
**fear** [5] - 40:5, 40:12, 40:13, 40:15
**February** [1] - 36:7
**Federal** [2] - 89:4, 89:5
**feed** [1] - 40:12
**feeding** [1] - 56:12
**few** [5] - 18:9, 21:11, 62:25, 85:6, 91:6
**file** [7] - 2:25, 3:3, 3:13, 6:2, 11:2, 89:16, 90:25
**filed** [11] - 2:22, 3:1, 3:4, 3:5, 10:17, 11:2, 18:5, 19:25, 23:7, 86:25, 89:17
**files** [2] - 22:18
**filing** [1] - 3:14
**filings** [1] - 100:12
**fill** [3] - 35:24, 36:18, 96:10
**filming** [2] - 48:3, 48:8
**final** [2] - 9:11, 23:17
**finally** [4] - 18:13, 18:17, 26:14, 90:19
**financial** [9] - 35:4, 35:10, 35:11, 35:13, 35:14, 35:20, 35:24, 36:13, 77:15
**findings** [3] - 19:16, 36:24, 36:25
**finish** [2] - 11:1, 74:2
**firm** [1] - 84:22
**firmly** [1] - 94:20
**firms** [1] - 78:4
**First** [1] - 66:15
**first** [15] - 2:4, 4:1, 4:4, 4:9, 9:16, 11:5, 18:15, 20:8, 37:7, 39:10, 53:16, 64:7, 75:3, 77:22, 91:12
**five** [10] - 24:22, 33:8, 33:9, 52:16, 69:18, 71:10, 74:7, 74:16, 74:21, 76:9
**five-level** [3] - 24:22, 33:8, 33:9
**floor** [1] - 39:13
**Floor** [1] - 1:22
**flow** [1] - 36:13
**focus** [2] - 86:9, 89:21
**focused** [2] - 50:18, 89:18
**follow** [2] - 3:14, 83:23
**following** [1] - 48:6
**footnote** [3] - 6:12, 11:17, 43:19
**FOR** [3] - 1:1, 1:10, 1:14
**force** [4] - 48:14, 49:19, 49:22, 51:17
**forced** [1] - 14:20
**forcibly** [1] - 12:5
**foregoing** [1] - 102:17
**forensic** [1] - 88:4
**forfeit** [2] - 85:13, 88:15
**forfeits** [1] - 88:20
**forfeiture** [6] - 85:9, 85:12, 85:17, 89:17, 90:3, 90:8
**form** [1] - 60:4
**former** [1] - 53:12
**forms** [3] - 35:15, 35:18, 36:8
**fortunate** [2] - 72:4, 72:5
**forward** [2] - 21:9, 39:2
**foul** [1] - 76:6
**four** [4] - 10:16, 31:20, 33:22, 44:9
**four-level** [2] - 31:20, 33:22
**Fourth** [3] - 66:13, 66:17, 90:6
**fragile** [2] - 59:8, 83:20
**frame** [1] - 54:1
**frankly** [3] - 8:21, 42:17, 42:21
**free** [1] - 59:20
**frequently** [1] - 100:15
**friend** [1] - 26:10
**front** [2] - 44:12, 81:22
**full** [2] - 53:4, 75:8
**fully** [1] - 19:3
**furthermore** [1] - 34:6
**future** [18] - 6:23, 28:8, 57:11, 64:23, 65:19, 73:10, 73:11, 75:7, 77:17, 83:8, 91:24, 92:12, 93:23, 95:5, 95:6, 95:25, 98:11

## G

**gaining** [1] - 34:15
**general** [4] - 45:4, 45:14, 66:2, 86:23
**generally** [2] - 37:10, 68:6
**genitals** [1] - 34:21
**gentleman** [1] - 46:19
**germane** [1] - 5:13
**Ginsberg** [13] - 2:12, 23:8, 81:4, 82:23, 83:4, 83:9, 83:11, 83:22, 86:25, 87:2, 87:5, 90:16, 101:2
**GINSBERG** [11] - 1:18, 1:18, 87:6, 87:13, 87:25, 89:2, 89:6, 89:12, 90:17, 101:4, 101:7
**girl** [3] - 54:14, 54:17, 56:2
**girls** [2] - 44:3, 56:4
**given** [13] - 18:15, 29:22, 52:23, 57:13, 57:14, 59:16, 60:1, 86:5, 86:24, 88:6, 93:1, 98:13, 100:22
**glad** [3] - 15:5, 18:20, 91:10
**goals** [1] - 37:13
**Goldman** [1] - 93:20
**Government** [35] - 2:5, 3:5, 19:13, 24:4, 26:25, 27:11, 37:6, 38:13, 43:1, 46:5, 47:4, 47:21, 47:22, 49:1, 50:15, 51:25, 52:2, 52:3, 53:2, 53:19, 59:19, 62:21, 64:11, 66:18, 69:6, 78:24, 79:19, 85:5, 85:10, 85:20, 87:16, 87:24, 90:3, 100:5
**government** [2] - 88:16, 88:22
**Government's** [7] - 38:13, 45:2, 50:12, 52:25, 53:15, 53:16, 53:21
**grace** [1] - 19:21
**graduated** [1] - 72:10
**gratification** [2] - 34:14, 54:6
**grave** [1] - 43:1
**great** [5] - 60:22, 64:8, 64:9, 90:25
**greater** [1] - 37:23
**groomed** [1] - 44:16
**ground** [1] - 33:8
**guess** [1] - 29:10
**guideline** [3] - 16:11, 23:16, 23:20
**guidelines** [24] - 16:2, 16:3, 20:19, 24:1, 24:4, 24:7, 24:9, 24:14, 25:1, 25:14, 25:15, 32:10, 32:24, 33:13, 33:18, 37:9, 37:11, 41:18, 43:8, 69:4, 69:6, 69:22, 69:25
**guilty** [2] - 55:15

## H

**habit** [1] - 71:19
**hand** [1] - 67:15
**handcuffed** [1] - 12:13
**handed** [4] - 13:10, 52:5, 52:6, 61:18
**handicaps** [1] - 72:2
**happy** [3] - 28:1, 31:23, 87:19
**hard** [4] - 40:6, 51:22, 58:2, 88:6
**harm** [1] - 39:17
**harmful** [1] - 42:8
**harms** [1] - 75:6
**Harris** [1] - 44:1
**hash** [1] - 85:25
**health** [5] - 52:20, 76:18, 76:24, 98:16, 98:25
**hear** [14] - 2:19, 21:8, 21:9, 23:24, 28:3, 30:24, 37:2, 38:12, 38:21, 39:5, 45:21, 46:22, 65:5, 85:10
**heard** [11] - 38:17, 38:20, 39:6, 41:3, 41:9, 48:1, 64:4, 65:3, 67:12, 81:9, 87:6
**HEARING** [1] - 1:7
**hearing** [4] - 32:3, 38:22, 40:9, 86:20
**heart** [1] - 82:1
**held** [1] - 89:13
**help** [3] - 38:9, 75:4, 76:24
**helpful** [1] - 101:1
**helping** [1] - 68:3
**Hendricks** [7] - 26:22, 26:23, 27:16, 27:17, 49:25, 50:4, 57:13
**hesitate** [1] - 71:11
**Hewlett** [16] - 52:8, 52:25, 53:1, 54:2, 54:8, 54:19, 54:22, 54:24, 57:6, 65:9, 65:21, 65:22, 65:24, 67:18, 68:16
**hideous** [1] - 75:24
**hierarchy** [1] - 49:6
**high** [5] - 16:3, 29:20, 37:10, 50:7
**higher** [1] - 80:3
**highest** [1] - 23:18
**him..** [1] - 54:11
**himself** [7] - 39:16, 40:9, 40:10, 41:24, 45:11, 53:3
**hired** [2] - 78:3, 81:12
**history** [8] - 41:19, 53:5, 53:6, 56:14, 64:8, 64:13, 64:17, 65:1
**hobble** [1] - 95:9
**hold** [1] - 57:25
**home** [1] - 40:4
**homeless** [1] - 56:13
**honestly** [1] - 32:1
**Honor** [226] - 2:6, 2:11, 2:16, 2:21, 2:25, 3:2, 3:5, 3:9, 3:11, 3:15, 3:18, 3:21, 4:3, 4:6, 4:8, 4:12, 4:20, 4:23, 5:1, 5:4, 5:17, 5:25, 6:7, 6:9, 6:13, 6:16, 6:24, 7:6, 7:8, 7:16, 7:18, 7:21, 8:1, 8:9, 8:11, 9:9, 9:10, 9:18, 10:5, 10:14, 10:24, 12:11, 12:21, 13:11, 13:16,

13:20, 13:21, 14:2, 14:8, 14:21, 14:25, 15:12, 16:6, 16:8, 16:13, 16:16, 17:18, 17:23, 19:15, 20:2, 21:21, 21:24, 22:4, 22:6, 22:10, 24:7, 24:11, 25:19, 26:4, 26:8, 26:13, 26:22, 27:16, 27:20, 28:1, 28:2, 28:24, 29:4, 29:11, 29:18, 30:3, 30:9, 31:6, 31:23, 31:24, 32:1, 32:3, 32:7, 32:11, 33:20, 35:2, 38:16, 38:19, 38:25, 41:1, 41:7, 41:9, 41:11, 41:21, 42:1, 42:9, 42:19, 42:22, 43:1, 43:5, 43:14, 43:17, 44:5, 44:18, 44:23, 45:23, 46:4, 46:13, 46:23, 47:19, 49:18, 49:24, 49:25, 50:19, 50:25, 51:21, 52:1, 52:4, 52:6, 52:21, 53:20, 54:1, 54:11, 54:18, 54:25, 55:4, 55:17, 55:18, 57:8, 57:24, 58:10, 58:14, 58:21, 58:23, 59:2, 60:6, 61:3, 61:5, 61:17, 61:18, 61:20, 61:23, 62:9, 62:17, 62:19, 63:1, 63:5, 63:10, 63:14, 63:20, 63:22, 65:14, 65:16, 69:9, 70:3, 70:25, 71:2, 71:3, 73:7, 73:12, 73:18, 73:22, 75:17, 77:20, 78:24, 79:3, 79:12, 81:10, 81:19, 82:16, 82:17, 82:20, 82:24, 83:13, 83:14, 83:19, 84:17, 84:24, 85:3, 85:6, 85:9, 85:20, 86:4, 86:18, 86:24, 87:25, 89:6, 90:7, 90:10, 90:17, 90:24, 91:4, 91:7, 91:13, 92:16, 92:18, 92:25, 93:12, 94:9, 95:4, 95:18, 95:22, 96:10, 96:19, 96:21, 96:24, 97:12, 97:18, 98:6, 98:15, 100:2, 100:6, 100:9, 100:24, 101:7, 101:17

**Honor's** [10] - 5:7, 9:3, 44:6, 52:11, 55:12, 85:23, 85:24, 86:6, 87:4, 95:16
**HONORABLE** [1] - 1:7
**hope** [9] - 40:13, 40:16, 40:22, 49:2, 56:6, 65:19, 95:11, 100:14, 101:24
**hours** [1] - 39:13
**Houston** [1] - 82:6
**humiliation** [2] - 34:13, 34:15
**hundreds** [1] - 30:9
**hurt** [5] - 28:14, 39:11, 40:2, 40:24
**husband** [2] - 39:3, 41:2

**I**

**idea** [3] - 42:6, 67:25, 94:15
**identical** [1] - 52:20
**identified** [1] - 22:17
**identify** [2] - 81:22, 88:2
**III** [1] - 1:7
**ill** [1] - 87:3
**ill-equipped** [1] - 87:3
**illegal** [11] - 8:17, 8:20, 14:7, 29:16, 39:19, 46:8, 46:11, 48:10, 51:16, 56:15
**images** [17] - 22:14, 22:16, 22:17, 28:25, 29:11, 29:18, 29:20, 29:22, 30:1, 30:8, 31:7, 34:7, 44:3, 44:10, 78:18, 99:10
**immaterial** [4] - 16:1, 16:10, 16:11, 32:22
**immediate** [1] - 80:12
**immediately** [1] - 79:15
**immoral** [1] - 39:20
**impact** [5] - 9:5, 22:21, 41:11, 41:13, 56:21
**impacts** [1] - 55:12
**impairments** [1] - 80:9
**important** [14] - 5:14, 13:25, 38:10, 45:17, 46:4, 47:5, 55:13, 56:23, 57:11, 58:16, 63:11, 65:25, 80:17, 102:6
**impose** [32] - 13:7, 23:15, 24:4, 37:11, 43:7, 43:12, 44:21, 45:3, 45:17, 53:21, 63:19, 64:20, 64:23, 67:21, 68:5, 68:6, 68:9, 68:11, 69:10, 70:16, 71:16, 74:8, 74:16, 75:23, 76:16, 79:13, 91:8, 92:19, 97:17, 97:20, 98:4, 98:8
**imposed** [19] - 43:6, 43:22, 60:11, 62:11, 68:11, 72:18, 73:2, 73:23, 74:10, 75:16, 76:8, 77:11, 80:1, 96:10, 97:22, 97:23, 97:24, 98:10, 99:19
**imposing** [4] - 23:20, 64:7, 64:19, 79:25
**imposition** [1] - 74:1
**impression** [1] - 12:2
**imprisonment** [2] - 69:15, 69:20
**in-person** [2] - 3:24, 18:13
**inaccurate** [2] - 11:12, 20:14
**incarcerated** [1] - 80:12
**incarceration** [1] - 80:1
**inclination** [2] - 66:4, 95:16
**include** [4] - 20:17, 59:3, 82:8, 98:25
**included** [3] - 4:13, 32:13, 72:19
**includes** [1] - 53:6
**including** [5] - 26:1, 41:24, 62:4, 64:5, 81:6
**incomplete** [1] - 20:14
**incorrect** [1] - 30:20
**increased** [3] - 79:20, 79:24, 96:17
**incredibly** [7] - 41:13, 55:13, 55:16, 55:17, 57:10, 58:24, 60:2
**indeed** [8] - 8:13, 34:18, 37:6, 38:7, 39:5, 60:10, 76:20, 80:11
**independently** [1] - 51:16
**indicate** [4] - 38:2, 43:24, 69:23, 90:4
**indicated** [6] - 22:2, 37:12, 38:8, 60:2, 69:11, 80:4
**indigent** [12] - 73:1, 73:4, 73:6, 73:13, 91:24, 92:2, 92:6, 92:19, 93:1, 94:25, 95:24, 98:9
**individual** [4] - 13:14, 42:2, 42:4, 42:6
**individually** [1] - 79:7
**individuals** [3] - 64:15, 78:18
**induce** [1] - 33:2
**inexplicable** [2] - 5:5, 5:6
**infant** [1] - 30:22
**infants** [1] - 30:21
**inflict** [1] - 34:20
**inflicted** [1] - 40:16
**infliction** [1] - 34:12
**inform** [1] - 36:12
**information** [10] - 4:13, 14:22, 15:8, 20:11, 20:15, 20:21, 35:5, 38:1, 64:11, 92:4
**informed** [2] - 13:22, 99:13
**initial** [5] - 45:24, 85:22, 85:23, 88:5, 88:8
**injected** [1] - 38:6
**injections** [1] - 59:10
**insensitive** [1] - 37:25
**insert** [1] - 12:9
**insight** [5] - 76:19, 76:20, 76:24, 102:5, 102:6
**instances** [2] - 21:23, 62:22
**instantaneous** [1] - 68:24
**instead** [1] - 82:5
**instilled** [1] - 40:14
**instinct** [2] - 85:24, 86:6
**institution** [1] - 84:2
**instructed** [1] - 34:19
**instruction** [1] - 52:10
**instructions** [2] - 82:24, 84:22
**intellectual** [1] - 65:11
**intellectually** [1] - 102:4
**intelligence** [1] - 77:6
**intelligent** [2] - 72:5, 101:11
**intend** [4] - 25:15, 74:12, 91:7, 98:8
**intends** [1] - 96:24
**intention** [1] - 90:7
**interactive** [1] - 33:2
**interest** [14] - 6:4, 11:23, 31:4, 32:23, 37:23, 38:3, 38:5, 42:18, 51:20, 72:11, 82:18, 86:11, 96:4, 96:14
**interested** [5] - 8:10, 28:22, 29:13, 31:2, 67:1
**interests** [5] - 27:21, 28:21, 76:21, 76:22, 76:25
**internet** [2] - 54:11, 78:19
**interpret** [2] - 46:1, 46:3
**interview** [10] - 7:11, 7:20, 12:9, 12:19, 13:15, 13:21, 13:23, 15:13, 15:14
**interviewed** [1] - 26:19
**inundated** [1] - 100:19
**inventive** [1] - 93:13
**investigation** [5] - 19:17, 26:11, 36:25, 53:9, 84:7
**investigative** [1] - 20:17
**involve** [3] - 55:21, 68:10, 91:19
**involved** [6] - 23:14, 32:21, 46:6, 51:8, 60:19, 66:1
**involves** [2] - 43:13, 87:23
**involving** [4] - 33:24, 44:14, 62:1, 64:2
**Involving** [2] - 25:4, 33:14
**IQ** [1] - 65:12
**irrelevant** [5] - 7:13, 7:14, 14:6, 20:12, 49:8
**irritated** [1] - 7:1
**isolated** [1] - 58:1
**isolation** [1] - 9:5
**issue** [8] - 12:6, 25:2, 49:1, 87:22, 89:7, 89:22, 90:9
**issued** [4] - 4:9, 4:11, 69:22, 76:12
**issues** [5] - 52:20, 58:2, 85:6, 90:5, 91:1
**items** [1] - 89:1
**itself** [3] - 51:7, 57:15, 95:5

**J**

**J&C** [10] - 38:1, 80:18, 81:21, 82:9, 83:10,

83:15, 83:24, 83:25, 84:4, 95:20
**jail** [7] - 3:23, 3:24, 18:2, 18:8, 18:12, 18:17, 40:14
**Jamieson** [1] - 1:12
**Jay** [1] - 2:7
**JAY** [1] - 1:11
**job** [2] - 6:15, 6:16
**John** [2] - 78:14, 79:1
**joint** [2] - 79:6, 79:11
**Joshua** [1] - 81:12
**judge** [9] - 40:22, 71:20, 75:13, 79:23, 87:6, 89:2, 99:7, 99:23
**Judge** [3] - 44:13, 44:14, 55:24
**JUDGE** [1] - 1:8
**judgment** [10] - 50:10, 66:19, 69:12, 69:13, 69:20, 70:8, 70:11, 70:17, 100:1
**Judgment** [2] - 17:5, 59:3
**jump** [1] - 82:16
**jurisdiction** [1] - 90:9
**jury** [3] - 48:7, 55:14, 55:15
**justification** [1] - 38:9
**juvenile** [1] - 99:10

**K**

**K-E-S-I-M-P-T-R-A** [1] - 83:13
**keep** [3] - 59:5, 83:22, 99:2
**kept** [1] - 39:21
**Kesimpta** [3] - 59:8, 83:5, 84:11
**key** [2] - 8:5, 8:6
**Kids** [1] - 22:20
**kids** [2] - 40:14, 51:13
**kind** [7] - 8:19, 14:15, 35:10, 42:15, 50:5, 76:6, 77:23
**King** [1] - 1:19
**Kiyonaga's** [1] - 67:19
**knowing** [1] - 99:6
**knowledge** [2] - 68:1, 99:17
**known** [3] - 22:18, 22:19, 56:11
**knows** [3] - 46:13, 84:2, 99:14

**L**

**lack** [1] - 41:22
**language** [1] - 81:20
**large** [2] - 69:25, 101:25
**largely** [1] - 53:2
**larger** [1] - 53:4
**last** [11] - 3:16, 4:25, 5:24, 6:6, 11:3, 20:25, 29:19, 52:5, 62:19, 100:3, 100:12
**late** [1] - 44:15
**LAW** [1] - 1:15
**law** [29] - 13:24, 15:12, 20:23, 38:20, 45:10, 55:24, 58:13, 58:17, 64:6, 64:13, 64:18, 64:21, 66:5, 66:6, 66:20, 67:11, 67:20, 68:5, 68:9, 69:3, 71:6, 71:19, 73:9, 74:24, 75:4, 78:4, 87:23, 88:19
**law-abiding** [3] - 71:19, 74:24, 75:4
**lawyer** [6] - 63:12, 67:24, 82:22, 86:25, 87:1, 100:15
**lawyers** [16] - 2:18, 2:19, 7:5, 14:10, 19:8, 19:9, 63:7, 63:8, 67:11, 70:12, 71:4, 73:17, 78:4, 83:2, 100:23
**leads** [1] - 23:17
**least** [7] - 27:9, 37:19, 58:15, 76:4, 79:2, 79:4, 89:12
**leave** [3] - 38:24, 82:11, 82:12
**Lee** [2] - 44:13, 44:14
**left** [1] - 101:12
**legal** [5] - 8:17, 8:20, 9:1, 14:7, 18:8
**legally** [1] - 78:6
**legitimately** [1] - 66:18
**length** [1] - 94:25
**lengthy** [1] - 53:5
**lesbian/gay/queer** [1] - 49:4
**less** [5] - 9:1, 22:24, 23:22, 92:22, 94:18
**letters** [6] - 26:7, 26:9, 26:10, 51:7, 56:10
**letting** [1] - 15:4
**level** [11] - 15:25, 16:3, 16:4, 23:13, 23:17, 24:22, 31:20, 32:20, 33:8, 33:9, 33:22
**levels** [1] - 25:10
**lied** [1] - 53:12
**life** [22] - 23:4, 24:15, 24:17, 24:20, 37:12, 51:22, 60:4, 69:4, 70:4, 71:19, 71:23, 71:25, 72:10, 75:4, 77:1, 77:2, 77:5, 81:8, 85:17, 101:10, 101:12, 101:24
**lifestyle** [1] - 73:17
**lifetime** [7] - 43:9, 58:22, 67:16, 67:20, 71:17, 74:20, 75:11
**lifting** [1] - 81:20
**lighting** [1] - 72:11
**like-minded** [1] - 45:18
**limitation** [1] - 20:21
**limitations** [1] - 72:7
**limited** [3] - 65:12, 93:7, 102:4
**listen** [1] - 65:6
**listening** [1] - 83:2
**literally** [1] - 54:5
**litigate** [1] - 47:4
**live** [1] - 40:20
**lived** [2] - 40:5
**lives** [1] - 40:21
**living** [2] - 71:24, 77:2
**locally** [1] - 59:6
**lockdown** [1] - 58:1
**Logan** [2] - 52:8, 57:5
**look** [11] - 5:9, 25:1, 25:6, 31:2, 31:12, 37:22, 49:10, 63:2, 88:18, 92:13, 96:11
**looked** [12] - 20:24, 29:1, 31:13, 31:17, 43:25, 86:3, 86:14, 88:22, 99:18, 100:12
**looking** [1] - 49:2
**looks** [1] - 43:21
**lose** [1] - 56:18
**losses** [1] - 22:24
**lost** [1] - 35:8
**loud** [1] - 45:18
**love** [1] - 94:10
**low** [5] - 27:21, 50:8, 57:12, 59:14, 65:12
**Low** [1] - 59:1
**luck** [3] - 101:8, 101:21, 101:23
**lying** [1] - 12:23

**M**

**ma'am** [2] - 39:2, 39:3
**madder** [1] - 39:25
**mail** [1] - 18:8
**man** [5] - 72:6, 77:7, 93:14, 101:11, 102:3
**manage** [1] - 59:13
**Manassas** [1] - 88:5
**mandatory** [9] - 58:12, 69:15, 69:18, 69:19, 73:24, 74:6, 75:22, 92:23
**manner** [1] - 17:4
**Manual** [1] - 33:13
**Martin** [1] - 90:12
**masochism** [1] - 34:18
**masochistic** [6] - 32:11, 33:24, 34:1, 34:6, 34:9, 34:13
**masters** [1] - 49:7
**masturbated** [1] - 12:14
**material** [19] - 8:2, 11:7, 22:19, 23:3, 26:1, 30:14, 30:19, 30:22, 31:14, 33:6, 33:24, 34:9, 37:21, 37:23, 42:15, 42:19, 87:9, 99:10
**materials** [2] - 20:16, 87:12
**math** [3] - 70:25, 71:5
**matter** [10] - 18:9, 19:21, 19:22, 25:24, 33:17, 37:1, 45:24, 67:10, 68:2, 102:19
**matters** [1] - 19:18
**maximum** [5] - 40:22, 69:14, 69:16, 69:18, 97:16
**maximums** [1] - 70:9
**McCauley** [12] - 52:8, 52:9, 52:12, 52:19, 57:5, 65:9, 65:11, 65:24, 66:2, 68:16, 68:18
**McCauley's** [1] - 52:15
**mean** [8] - 46:10, 47:2, 47:13, 48:14, 71:18, 72:6, 99:14, 102:4
**meaning** [1] - 55:22
**meaningful** [1] - 58:14
**means** [1] - 34:12
**medical** [5] - 16:21, 58:2, 64:9, 81:5, 81:15
**medication** [9] - 16:18, 80:11, 80:13, 80:23, 80:24, 81:6, 82:14, 83:5, 83:11
**medications** [1] - 81:7
**meet** [1] - 50:6
**meeting** [2] - 3:25, 56:20
**Meloxicam** [1] - 16:15
**members** [1] - 39:24
**memo** [1] - 5:8
**memorandum** [1] - 61:4
**memorandums** [1] - 51:7
**memories** [5] - 23:4, 87:12, 87:14, 88:21, 88:23
**memory** [3] - 52:22, 86:16, 87:19
**mental** [5] - 52:20, 76:18, 76:24, 98:16, 98:25
**mention** [3] - 5:21, 6:11, 35:2
**mentioned** [1] - 19:18
**message** [1] - 45:18
**met** [2] - 18:18, 34:11
**mid** [1] - 57:2
**middle** [1] - 17:19
**midst** [1] - 100:19
**might** [8] - 8:6, 8:12, 21:20, 46:1, 48:15, 51:21, 52:22, 76:19
**milligrams** [1] - 16:14
**mind** [2] - 45:6, 68:20
**minded** [1] - 45:18
**minimize** [1] - 27:9
**minimizing** [1] - 56:23
**minimum** [8] - 60:18, 69:15, 69:18, 69:19, 74:6, 75:22, 95:17
**minimums** [2] - 58:13, 70:10
**Minor** [13] - 7:11, 7:20, 8:6, 12:14, 12:20, 13:13, 14:20, 15:10, 15:24, 34:3, 34:20, 38:19, 53:8
**minor** [24] - 11:25, 30:17, 33:3, 33:5, 34:17, 38:16, 38:18, 41:10, 41:24, 44:2, 44:9, 47:22, 53:3, 53:10, 53:11, 54:14, 54:17, 54:23, 57:16, 57:19, 62:6, 62:14, 78:17
**minors** [21] - 42:4, 42:7, 42:11, 42:18, 44:9, 46:9, 46:25, 47:8, 48:9, 48:12, 49:2, 51:16, 55:4, 55:21, 55:23, 66:7, 66:8, 66:9, 99:5, 99:9, 99:13
**Minors** [2] - 25:5, 33:15
**minute** [1] - 7:9

**minutes** [2] - 62:25, 63:16
**miscommunication** [1] - 35:6
**miss** [1] - 36:9
**missed** [1] - 35:1
**Missing** [1] - 22:17
**mistaken** [1] - 6:17
**misunderstanding** [1] - 6:5
**mitigating** [1] - 58:21
**mitigation** [3] - 55:16, 57:10, 60:10
**models** [1] - 99:11
**moment** [6] - 20:7, 31:19, 60:23, 71:15, 98:23, 99:8
**money** [6] - 54:7, 55:23, 72:13, 74:1, 93:4, 94:2
**monitored** [1] - 28:7
**monster** [1] - 39:11
**monsters** [1] - 40:12
**Montalbano** [3] - 27:2, 50:3, 50:20
**month** [2] - 79:18, 96:16
**months** [20] - 4:5, 4:7, 9:24, 24:16, 40:6, 54:19, 56:1, 56:2, 56:5, 70:1, 70:20, 70:21, 70:22, 70:23, 71:7, 74:8, 74:12, 74:20
**moreover** [1] - 11:10
**morning** [14] - 2:6, 2:9, 2:11, 2:14, 2:15, 2:16, 3:1, 7:3, 13:9, 17:16, 17:18, 18:14, 18:18, 39:3
**most** [8] - 25:15, 56:3, 63:11, 65:25, 71:4, 82:10, 95:9, 95:10
**mostly** [1] - 50:18
**mother** [4] - 39:9, 41:10, 56:17, 57:3
**mothers** [1] - 38:16
**motion** [1] - 3:21
**mountain** [1] - 37:21
**moved** [3] - 40:4, 81:2, 93:22
**moving** [1] - 86:12
**MR** [277] - 2:6, 2:11, 2:21, 2:25, 3:4, 3:9, 3:11, 3:15, 3:18, 3:21, 4:2, 4:5, 4:8, 4:10, 4:16, 4:20, 4:23, 5:1, 5:4, 5:6, 5:12, 5:17, 5:24, 6:3, 6:7, 6:9, 6:13, 6:16,

6:19, 6:21, 6:24, 7:6, 7:15, 7:18, 7:21, 8:1, 8:4, 8:9, 8:11, 9:2, 9:9, 9:14, 9:18, 9:24, 10:5, 10:10, 10:12, 10:14, 10:18, 10:21, 10:23, 11:4, 11:9, 11:13, 11:16, 11:19, 11:22, 12:3, 12:11, 12:15, 12:21, 13:4, 13:8, 13:11, 13:20, 14:8, 14:13, 14:17, 14:25, 15:7, 16:8, 16:13, 16:16, 16:22, 16:25, 17:6, 17:9, 17:15, 19:15, 19:23, 20:2, 22:6, 22:9, 23:7, 23:11, 23:23, 24:2, 24:6, 24:11, 24:16, 24:19, 25:19, 26:4, 26:8, 26:22, 26:24, 27:2, 27:13, 27:16, 27:20, 27:25, 28:5, 28:10, 28:15, 28:24, 29:4, 29:9, 29:14, 29:18, 29:24, 30:2, 30:9, 30:13, 30:16, 30:22, 31:5, 31:10, 31:15, 31:22, 32:1, 32:6, 32:9, 32:16, 33:20, 35:2, 35:23, 36:17, 36:20, 37:5, 37:8, 38:15, 38:19, 38:24, 41:7, 41:9, 43:14, 43:17, 43:19, 44:5, 44:12, 44:18, 44:23, 45:5, 45:23, 46:12, 47:3, 47:18, 48:13, 50:14, 50:17, 51:4, 51:6, 52:3, 52:11, 52:14, 53:16, 53:19, 53:25, 54:10, 54:15, 54:18, 54:21, 54:25, 55:3, 55:6, 55:11, 57:24, 58:6, 58:19, 59:23, 59:25, 60:6, 60:24, 61:2, 61:10, 61:12, 61:17, 61:20, 62:16, 62:19, 63:1, 63:4, 63:10, 63:14, 63:20, 63:22, 65:7, 65:14, 65:16, 67:19, 69:9, 70:3, 70:25, 71:2, 72:22, 73:1, 73:6, 73:12, 73:16, 73:22, 75:17, 75:20, 76:1, 76:15, 77:20, 78:12, 78:23, 79:1, 79:8, 79:12, 81:9, 81:12, 82:3, 82:16, 82:20,

82:24, 83:4, 83:12, 83:18, 84:5, 84:8, 84:10, 84:16, 84:24, 85:2, 85:6, 85:8, 85:20, 85:22, 86:4, 86:10, 86:13, 86:18, 86:23, 87:2, 90:6, 90:12, 90:24, 91:4, 91:6, 91:13, 91:18, 91:21, 92:1, 92:10, 92:16, 92:21, 92:23, 92:25, 93:12, 93:17, 94:1, 94:5, 94:9, 94:22, 95:4, 95:7, 95:16, 95:22, 96:3, 96:6, 96:9, 96:11, 96:19, 96:21, 96:24, 97:3, 97:5, 97:8, 97:20, 98:1, 98:2, 98:5, 100:5, 100:6, 100:17, 100:24
**MS** [29] - 13:16, 14:2, 14:21, 15:12, 15:15, 16:6, 21:6, 21:10, 21:16, 21:21, 21:24, 22:4, 26:13, 35:14, 35:18, 36:5, 59:8, 83:6, 87:6, 87:13, 87:25, 89:2, 89:6, 89:12, 90:17, 97:18, 100:2, 101:4, 101:7
**multiple** [10] - 17:2, 18:3, 30:9, 44:3, 44:16, 58:3, 61:24, 62:1, 62:10, 68:17
**must** [5] - 13:14, 23:19, 51:2, 69:15, 85:13
**MV** [1] - 8:6

## N

**name** [4] - 17:19, 26:21, 39:8, 56:19
**National** [1] - 22:16
**nature** [6] - 44:25, 57:13, 57:14, 62:5, 83:20, 98:20
**necessarily** [3] - 29:9, 29:12, 53:24
**necessary** [7] - 13:2, 23:15, 37:13, 71:21, 81:15, 87:23, 99:23
**Neck** [1] - 59:12
**need** [23] - 3:7, 5:20, 8:22, 17:1, 28:4, 36:18, 45:3, 75:1, 75:12, 76:19, 76:20, 77:8, 81:6, 84:1, 84:18, 84:19, 89:19, 90:1, 98:7, 101:12,

101:23
**needed** [3] - 22:7, 75:11, 82:1
**needs** [11] - 16:15, 17:7, 28:7, 36:17, 57:8, 57:20, 59:8, 59:10, 83:6, 86:5, 93:5
**net** [1] - 36:13
**neuritis** [1] - 58:3
**never** [9] - 8:10, 31:12, 36:5, 48:10, 48:16, 51:10, 51:23, 52:10, 56:14
**new** [3] - 15:8, 18:6, 18:8
**next** [3] - 12:4, 13:1, 100:20
**night** [7] - 3:17, 4:25, 5:24, 6:6, 11:3, 20:25, 100:12
**nights** [1] - 40:6
**NINA** [1] - 1:18
**Nina** [1] - 2:12
**nine** [2] - 2:18, 100:23
**ninth** [1] - 94:13
**Ninth** [1] - 89:13
**nitpick** [1] - 29:5
**non** [1] - 92:19
**non-indigent** [1] - 92:19
**noncompliance** [1] - 53:6
**noncontraband** [1] - 87:9
**none** [7] - 34:6, 51:17, 53:14, 62:14, 62:16, 95:13, 99:19
**nonetheless** [1] - 34:4
**nonexistent** [1] - 73:19
**normally** [2] - 49:20, 51:18
**Northern** [1] - 59:12
**note** [13] - 12:16, 13:17, 14:3, 19:19, 23:2, 27:2, 37:3, 37:9, 61:20, 90:21, 90:24, 91:2, 95:23
**noted** [3] - 37:16, 58:16, 61:23
**NOTES** [1] - 1:25
**nothing** [16] - 6:25, 18:13, 23:5, 48:10, 49:23, 50:22, 51:12, 56:7, 56:8, 74:12, 74:13, 91:4, 100:5, 100:6, 100:7, 101:9
**notice** [2] - 90:7, 90:25

**noting** [2] - 12:21, 32:22
**Noyes** [1] - 89:4
**Number** [1] - 2:4
**number** [7] - 2:22, 28:25, 29:20, 29:22, 29:25, 64:1, 70:1
**NYU** [1] - 65:18

## O

**o'clock** [7] - 3:16, 7:2, 11:3, 100:12, 100:20
**oath** [1] - 53:12
**object** [2] - 11:6, 15:19
**objected** [3] - 7:10, 32:19, 58:11
**objection** [28] - 7:14, 10:22, 11:15, 11:18, 13:2, 15:20, 20:8, 20:10, 20:11, 20:13, 21:13, 23:13, 24:22, 24:23, 24:24, 25:17, 25:23, 32:10, 32:14, 32:18, 32:24, 33:21, 34:25, 35:3, 38:22, 58:16, 97:3, 97:5
**objections** [22] - 3:17, 4:12, 4:18, 5:2, 8:13, 9:15, 10:3, 10:16, 15:2, 18:5, 19:13, 19:25, 20:3, 21:1, 21:2, 21:5, 22:14, 35:1, 36:22, 37:15, 41:23
**obligation** [2] - 79:14, 96:2
**obstruction** [2] - 15:20, 16:9
**obtained** [1] - 20:16
**obviously** [4] - 6:1, 41:15, 42:12, 45:5
**occur** [1] - 80:24
**occurs** [1] - 83:17
**odd** [1] - 48:14
**odds** [1] - 59:13
**OF** [7] - 1:1, 1:3, 1:7, 1:15, 1:25, 102:15, 102:24
**OFF** [3] - 2:24, 54:12, 85:1
**offender** [6] - 51:3, 58:22, 58:23, 81:15, 99:1, 99:2
**offenders** [1] - 45:19
**offending** [2] - 50:7, 50:8
**offense** [8] - 16:2, 16:4, 23:14, 23:17,

25:10, 32:21, 33:23, 41:21
**Offenses** [2] - 25:4, 33:13
**offenses** [6] - 64:2, 64:22, 66:1, 67:22, 69:13, 87:10
**OFFICE** [2] - 1:12, 1:15
**office** [3] - 36:2, 98:24, 100:7
**Office** [1] - 20:16
**officer** [9] - 12:17, 22:15, 34:23, 35:5, 97:10, 98:13, 99:6, 99:12, 99:17
**OFFICER** [6] - 97:12, 97:14, 98:15, 98:19, 98:22, 100:9
**officer's** [1] - 98:6
**OFFICIAL** [2] - 1:21, 102:15
**often** [2] - 42:11, 45:16
**Oklahoma** [1] - 59:13
**old** [3] - 42:5, 54:24, 57:3
**older** [1] - 46:19
**omitted** [3] - 97:10, 97:13, 98:14
**once** [6] - 48:20, 50:11, 57:18, 63:12, 71:19, 83:7
**one** [41] - 6:17, 6:20, 10:17, 18:1, 21:12, 23:22, 26:14, 26:21, 26:25, 28:11, 32:13, 34:11, 36:8, 38:16, 39:9, 40:24, 41:10, 51:1, 52:17, 54:1, 55:8, 56:3, 58:9, 60:4, 61:10, 61:13, 62:21, 65:4, 65:21, 68:16, 75:11, 76:17, 79:11, 82:7, 82:8, 82:22, 86:25, 100:3
**ones** [1] - 47:21
**ongoing** [4] - 42:23, 53:9, 59:17, 81:7
**online** [5] - 42:4, 44:2, 44:9, 53:8, 61:25
**onset** [2] - 80:23, 84:15
**onward** [1] - 15:4
**open** [2] - 80:10, 101:12
**opportunity** [11] - 6:2, 17:12, 17:13, 17:25, 18:21, 38:17, 59:16, 60:8, 60:13, 60:21, 61:15
**optic** [1] - 58:3
**oral** [2] - 89:19, 90:1
**order** [10] - 17:5, 22:22, 59:3, 78:22, 90:8, 95:18, 96:6, 96:9, 96:20
**ordered** [6] - 17:3, 80:12, 84:19, 84:20, 96:14, 98:16
**orders** [3] - 48:6, 53:11, 58:24
**oriented** [3] - 48:19, 48:24, 57:17
**original** [5] - 4:14, 4:15, 4:17, 10:2, 18:1
**otherwise** [5] - 8:7, 20:22, 33:4, 54:4, 89:20
**ought** [3] - 49:18, 76:23, 85:25
**outlined** [1] - 45:15
**outset** [2] - 2:17, 53:5
**outside** [1] - 13:24
**overcome** [1] - 89:11
**overlap** [1] - 29:10
**overlaps** [1] - 29:12
**overrule** [3] - 15:20, 22:14, 32:24
**overruled** [3] - 23:14, 25:17, 34:25
**own** [4] - 48:13, 58:24, 71:25, 101:10

**P**

**P.D** [1] - 1:18
**paced** [1] - 39:13
**page** [4] - 25:6, 43:15, 43:16, 61:24
**pages** [3] - 1:24, 71:25, 101:10
**paid** [1] - 91:14
**pain** [4] - 34:12, 34:14, 34:15, 34:20
**painted** [1] - 95:6
**pants** [1] - 12:5
**paper** [3] - 43:7, 45:15, 61:24
**papers** [1] - 89:20
**paragraph** [3] - 12:19, 43:20, 53:17
**Paragraph** [18] - 6:11, 7:10, 11:7, 11:14, 11:20, 12:4, 12:12, 13:1, 13:12, 13:22, 14:4, 14:19, 14:24, 17:8, 22:12, 24:21, 33:7
**paragraphs** [3] - 20:15, 21:11
**Paragraphs** [4] - 13:18, 20:10, 23:12, 32:19
**paraphilic** [2] - 50:4, 50:22
**parcel** [1] - 34:18
**pardon** [2] - 70:15, 97:4
**parents** [8] - 26:10, 58:8, 73:16, 73:20, 77:24, 77:25, 78:2, 92:7
**parents'** [1] - 92:10
**part** [12] - 14:5, 15:1, 26:5, 26:6, 34:18, 38:6, 51:23, 81:13, 81:20, 85:17
**participate** [5] - 33:5, 66:4, 76:17, 78:4, 98:24
**participated** [3] - 12:1, 37:19, 46:9
**participates** [1] - 29:8
**participation** [1] - 33:5
**particular** [7] - 12:23, 41:17, 41:19, 46:7, 46:22, 47:25, 62:22
**particularly** [1] - 48:15
**party** [1] - 100:4
**pass** [1] - 96:7
**past** [1] - 85:17
**patience** [1] - 12:22
**pay** [10] - 40:23, 71:8, 74:14, 78:2, 78:6, 79:17, 89:9, 92:14, 94:24, 101:23
**payable** [1] - 79:15
**paying** [4] - 60:4, 79:16, 95:2, 96:15
**payments** [2] - 91:14, 92:18
**pedophile** [4] - 27:18, 50:2, 50:7, 50:23
**pedophilic** [2] - 27:21, 51:20
**penalties** [3] - 35:11, 82:18, 96:3
**people** [25] - 8:18, 11:11, 18:9, 21:18, 28:12, 28:23, 29:16, 48:4, 48:17, 51:9, 51:13, 51:20, 55:18, 55:22, 62:23, 66:11, 66:15, 67:4, 67:23, 68:2, 78:16, 82:1, 94:11, 95:10, 95:12
**per** [10] - 22:25, 66:6, 79:8, 79:18, 91:18, 91:21, 92:21, 93:24, 95:19, 97:23
**perfect** [1] - 102:6
**period** [3] - 70:19, 71:17
**periodic** [1] - 83:16
**periods** [1] - 75:10
**permission** [1] - 99:17
**permit** [2] - 16:4, 67:12
**permits** [1] - 38:21
**permitted** [1] - 101:18
**person** [10] - 3:24, 12:23, 18:13, 39:1, 46:19, 56:10, 57:19, 62:8, 65:18, 65:23
**person's** [1] - 56:19
**personal** [4] - 64:7, 64:12, 64:17, 65:1
**personality** [1] - 50:21
**personally** [1] - 36:18
**perspective** [1] - 55:13
**persuade** [2] - 33:2, 68:3
**persuaded** [3] - 11:11, 42:10, 49:21
**phalanx** [1] - 19:9
**phase** [1] - 88:2
**physical** [6] - 26:18, 34:14, 52:17, 67:14, 80:8, 84:9
**physically** [4] - 48:11, 53:12, 58:7, 72:6
**pick** [2] - 63:10, 82:8
**picture** [5] - 47:16, 53:4, 68:20, 68:25, 95:6
**pictures** [1] - 66:15
**place** [8] - 9:16, 49:6, 59:12, 81:3, 81:5, 82:11, 82:13
**plaintiff** [1] - 1:3
**PLAINTIFF** [1] - 1:10
**planet** [1] - 94:12
**play** [3] - 7:12, 11:23, 35:11
**playing** [1] - 57:15
**pleading** [12] - 7:3, 23:7, 23:9, 32:2, 51:7, 53:1, 59:1, 81:18, 81:20, 83:12, 83:14, 86:25
**pleadings** [1] - 20:3
**pleasure** [2] - 34:12, 34:15
**podium** [3] - 60:16, 63:25, 78:9
**point** [22] - 5:13, 7:23, 9:6, 11:24, 13:12, 15:19, 23:16, 23:25, 28:24, 29:10, 29:18, 49:14, 50:18, 53:23, 55:17, 61:4, 65:19, 68:25, 75:9, 83:9, 88:12, 93:3
**pointed** [3] - 68:23, 80:19, 85:16
**pointing** [1] - 82:11
**points** [4] - 61:17, 66:8, 77:15, 91:6
**poor** [1] - 66:19
**pornography** [30] - 28:16, 29:6, 29:23, 30:1, 30:14, 33:23, 34:3, 42:16, 46:7, 46:13, 46:21, 47:9, 47:11, 47:15, 47:17, 47:20, 47:23, 49:17, 51:18, 52:7, 52:18, 64:2, 64:3, 66:16, 78:13, 78:19, 91:19, 93:3, 99:11
**portions** [1] - 86:16
**portray** [1] - 34:9
**portrays** [1] - 33:24
**posed** [2] - 44:2, 44:8
**position** [12] - 28:18, 31:1, 31:5, 31:8, 31:10, 43:6, 45:15, 48:2, 56:17, 61:24, 98:5
**positions** [1] - 8:14
**possess** [1] - 99:9
**possessed** [4] - 31:14, 42:15, 42:17, 42:20
**possession** [10] - 29:11, 33:23, 62:17, 64:3, 66:23, 69:19, 75:18, 75:20, 78:12, 93:2
**possible** [3] - 38:1, 101:25
**posted** [1] - 42:3
**postponed** [2] - 39:22
**potential** [7] - 73:10, 73:11, 92:3, 92:12, 93:6, 93:22, 94:14
**PRABHU** [1] - 1:11
**Prabhu** [1] - 2:7
**pray** [2] - 40:14, 40:21
**precedent** [1] - 90:6
**precise** [1] - 27:23
**precisely** [1] - 11:18
**predators** [1] - 39:17
**predecessors** [1] - 10:17
**predict** [1] - 80:23

**predominantly** [1] - 30:16
**preface** [1] - 32:22
**prefer** [1] - 90:23
**preparation** [1] - 81:13
**prepared** [4] - 10:19, 10:23, 20:18, 85:12
**preponderance** [3] - 15:23, 20:12, 33:1
**prepubescent** [2] - 30:17, 30:20
**presence** [1] - 47:10
**present** [8] - 2:13, 12:17, 37:19, 38:16, 44:24, 53:14, 62:3, 64:16
**presented** [3] - 20:19, 31:16, 64:5
**presentence** [19] - 3:22, 17:12, 17:13, 18:1, 18:4, 18:6, 19:14, 19:17, 19:25, 21:23, 22:15, 25:25, 26:6, 26:11, 26:15, 27:5, 35:4, 36:25, 84:7
**presently** [1] - 92:10
**preserve** [1] - 90:9
**presided** [1] - 64:4
**pretrial** [1] - 84:20
**pretty** [5] - 15:15, 57:25, 59:14, 75:24, 93:13
**prevent** [1] - 84:21
**previous** [1] - 19:8
**previously** [2] - 20:1, 62:4
**Primmer** [1] - 25:4
**principal** [1] - 75:3
**prison** [3] - 24:15, 75:7, 98:11
**Prisons** [10] - 7:25, 37:18, 37:20, 38:2, 70:19, 80:6, 80:18, 80:21, 80:25, 97:2
**privacy** [1] - 53:11
**probation** [13] - 12:17, 22:15, 34:23, 35:5, 36:2, 97:10, 98:6, 98:13, 98:24, 99:6, 99:12, 99:17, 100:7
**PROBATION** [6] - 97:12, 97:14, 98:15, 98:19, 98:22, 100:9
**problem** [4] - 83:10, 93:24, 94:2, 98:18
**problems** [3] - 26:18, 72:6, 102:5
**procedure** [3] - 3:14, 88:1, 88:17
**proceed** [2] - 23:18, 37:2
**proceeding** [2] - 6:5, 38:15
**proceedings** [1] - 102:18
**process** [4] - 18:8, 22:24, 50:20, 59:17
**proclivities** [1] - 67:3
**produce** [1] - 42:7
**produced** [2] - 42:16, 42:19
**producer** [2] - 47:23, 52:18
**producing** [2] - 33:6, 46:14
**production** [22] - 34:3, 46:7, 46:12, 46:15, 46:21, 47:9, 47:11, 47:15, 47:17, 51:18, 52:6, 55:9, 61:25, 62:16, 64:2, 66:22, 68:17, 68:22, 69:14, 69:17, 78:17, 91:17
**production-of-child-pornography** [3] - 46:21, 47:9, 47:11
**profit** [1] - 76:18
**profound** [1] - 41:13
**program** [2] - 76:17, 98:24
**prohibited** [1] - 20:23
**promotes** [1] - 64:20
**promptly** [1] - 4:11
**proof** [1] - 48:5
**property** [1] - 85:7
**proportion** [1] - 56:23
**proscribe** [1] - 66:5
**prosecuted** [1] - 38:4
**protect** [2] - 66:18, 75:5
**protocol** [1] - 84:12
**protocols** [2] - 59:11, 83:23
**proved** [1] - 47:4
**proven** [1] - 20:12
**provide** [3] - 35:5, 64:11, 80:13
**provided** [12] - 3:5, 3:6, 19:4, 20:17, 26:19, 35:7, 35:22, 35:23, 36:4, 36:5, 74:5
**provides** [3] - 45:4, 64:21, 96:20
**pseudonyms** [1] - 78:14
**PSR** [29] - 3:17, 4:9, 4:10, 4:13, 4:14, 4:15, 4:19, 5:9, 6:12, 6:17, 9:11, 9:25, 10:1, 10:4, 10:15, 11:15, 11:17, 14:4, 15:1, 15:9, 15:21, 35:9, 37:16, 41:12, 41:23, 79:4, 84:6
**psychosexual** [2] - 50:1, 98:25
**public** [2] - 75:5, 75:6
**published** [2] - 25:5, 54:8
**punch** [1] - 76:3
**punished** [1] - 57:20
**punishment** [4] - 34:12, 64:21, 66:1, 77:25
**punitive** [2] - 58:24, 77:23
**purpose** [7] - 33:6, 46:14, 46:23, 47:2, 47:4, 48:3, 68:24
**purposes** [3] - 7:15, 46:24, 75:3
**pursuant** [6] - 24:23, 32:20, 33:8, 33:22, 72:20, 74:2
**pursued** [1] - 53:9
**put** [18] - 3:21, 4:22, 5:8, 5:18, 14:11, 15:21, 16:2, 23:3, 43:11, 47:6, 58:11, 66:13, 80:18, 83:10, 83:15, 83:24, 83:25, 94:11
**puts** [1] - 40:10
**putting** [2] - 27:24, 58:17

## Q

**qualms** [1] - 19:8
**questions** [4] - 20:5, 62:12, 63:23, 87:4
**quickly** [2] - 10:10, 16:20
**quite** [8] - 23:15, 37:9, 37:22, 42:13, 45:5, 78:20, 87:25
**quoting** [2] - 25:14, 33:13

## R

**radically** [1] - 54:21
**raise** [3] - 7:24, 10:3, 11:18
**raised** [4] - 20:8, 20:9, 32:18, 65:4
**range** [1] - 69:23
**rather** [1] - 38:22
**rationale** [1] - 52:12
**re** [3] - 47:4, 50:7, 50:8
**re-litigate** [1] - 47:4
**re-offending** [2] - 50:7, 50:8
**reached** [2] - 48:18, 78:23
**read** [11] - 9:4, 17:13, 18:22, 18:23, 21:20, 26:6, 37:18, 50:16, 50:17, 53:15, 63:23
**real** [3] - 51:20, 51:22, 89:7
**reality** [1] - 93:8
**realizes** [1] - 40:15
**really** [4] - 16:1, 32:22, 77:23, 98:5
**reason** [8] - 5:18, 9:7, 16:16, 63:18, 64:14, 65:4, 67:7, 67:22
**reasonable** [2] - 25:21, 94:25
**reasonably** [1] - 57:19
**reasoned** [1] - 100:1
**reasons** [2] - 69:1, 69:2
**REBECCA** [1] - 1:21
**Rebecca** [1] - 102:17
**receipt** [3] - 64:3, 69:17, 93:3
**receive** [2] - 57:23, 80:14
**received** [8] - 3:17, 3:23, 6:8, 26:1, 26:2, 36:12, 44:15, 84:23
**receiving** [3] - 80:15, 84:2, 100:11
**recent** [1] - 56:3
**recess** [4] - 63:7, 63:15, 102:9
**Recess** [1] - 63:17
**recidivism** [4] - 27:22, 28:8, 50:5, 57:12
**recite** [1] - 80:9
**recited** [1] - 53:18
**recognition** [1] - 82:9
**recognize** [4] - 11:7, 42:1, 42:2, 102:5
**recognized** [1] - 88:20
**recollection** [1] - 30:12
**recommend** [2] - 80:6, 80:25
**recommendation** [2] - 59:4, 81:21
**recommending** [1] - 41:18
**record** [18] - 14:22, 15:22, 17:20, 27:3, 32:25, 34:21, 44:16, 49:11, 50:22, 52:19, 58:11, 73:7, 80:10, 92:6, 98:7, 102:11, 102:18
**RECORD** [3] - 2:24, 54:12, 85:1
**recorded** [2] - 17:4, 52:16
**recording** [3] - 47:25, 49:12, 53:8
**records** [2] - 16:21, 81:5
**recovery** [1] - 88:8
**reduce** [1] - 94:8
**reducing** [1] - 71:21
**redundant** [2] - 21:2, 24:25
**reenter** [1] - 93:6
**reference** [2] - 49:3, 53:20
**references** [1] - 35:4
**referring** [2] - 13:13, 87:21
**reflect** [1] - 95:20
**reflecting** [2] - 59:3, 66:19
**reflective** [3] - 42:14, 43:2, 69:11
**reflects** [2] - 22:23, 67:21
**refresh** [1] - 30:12
**refrigerated** [2] - 59:9, 83:19
**refusal** [2] - 42:23
**refused** [2] - 18:3, 18:17
**regard** [5] - 37:3, 45:14, 69:7, 71:12, 72:14
**regarding** [4] - 19:19, 32:9, 78:24, 84:15
**regimented** [1] - 83:18
**register** [2] - 51:2, 99:1
**registration** [1] - 99:2
**registry** [2] - 58:22, 83:6
**regular** [2] - 84:11, 84:12
**reiterate** [1] - 7:16
**rejected** [1] - 66:17
**relate** [2] - 23:4, 85:15
**related** [4] - 26:1, 28:21, 58:5, 99:15
**relates** [4] - 12:3, 29:10, 57:10, 62:20
**relating** [1] - 31:3
**relationship** [4] - 17:21, 34:19, 48:5
**relationships** [1] -

34:17
**relative** [1] - 22:23
**release** [17] - 35:15, 35:18, 36:7, 36:8, 43:9, 74:16, 74:17, 74:18, 75:1, 75:8, 75:10, 76:9, 76:11, 80:2, 96:16, 99:20, 99:21
**released** [4] - 77:17, 79:17, 79:23, 94:25
**releases** [6] - 35:4, 35:6, 35:9, 35:23, 36:4, 36:6
**relevance** [1] - 28:6
**relevant** [6] - 14:14, 35:10, 53:7, 55:16, 55:17, 78:6
**relied** [1] - 22:15
**rely** [3] - 16:23, 20:3, 24:1
**relying** [1] - 90:15
**remain** [1] - 78:10
**remaining** [3] - 75:18, 75:20, 88:21
**remand** [1] - 96:25
**remedied** [1] - 4:19
**remember** [10] - 21:13, 31:22, 32:2, 32:4, 52:15, 65:15, 82:6, 95:11, 101:9
**remind** [1] - 100:14
**reminded** [2] - 77:18, 91:11
**remorse** [1] - 41:22
**remorseful** [2] - 59:19, 60:2
**removing** [1] - 12:5
**repeated** [1] - 45:10
**repeatedly** [2] - 53:10, 55:25
**repetitive** [1] - 56:7
**report** [24] - 3:22, 17:12, 17:13, 18:1, 18:4, 18:6, 19:14, 19:17, 19:25, 21:23, 22:15, 25:6, 25:25, 26:6, 26:12, 26:15, 27:5, 35:4, 35:19, 36:8, 36:11, 36:25, 50:18, 84:7
**reported** [1] - 62:6
**REPORTER** [3] - 1:21, 102:15, 102:24
**reports** [2] - 15:10, 20:17
**represent** [1] - 67:18
**requested** [4] - 23:3, 35:13, 78:10, 78:13
**requesting** [4] - 24:6, 38:17, 79:1, 79:2
**requests** [3] - 22:21, 62:14, 62:18
**require** [1] - 81:17
**required** [17] - 16:17, 16:19, 22:22, 34:7, 34:11, 36:24, 58:23, 60:12, 64:18, 64:20, 76:13, 80:13, 88:16, 90:4, 95:17, 97:17
**requirement** [4] - 23:21, 44:22, 55:10, 83:16
**requirements** [1] - 80:11
**requires** [14] - 34:8, 38:21, 64:6, 64:13, 67:21, 68:5, 68:9, 69:3, 72:24, 79:3, 80:24, 83:15, 83:16, 94:9
**research** [2] - 81:14, 82:10
**resiliency** [1] - 94:20
**resilient** [1] - 95:11
**resist** [1] - 67:10
**resolve** [1] - 85:12
**resolved** [1] - 86:6
**resources** [1] - 73:8
**respect** [7] - 14:18, 21:5, 39:11, 41:19, 45:7, 64:21, 70:19
**respects** [1] - 42:21
**respond** [5] - 60:21, 61:16, 72:3, 72:8, 89:19
**response** [1] - 6:2
**rest** [5] - 7:3, 40:20, 60:4, 81:8, 99:19
**restitution** [19] - 22:21, 22:22, 23:2, 62:15, 62:17, 77:22, 78:8, 78:11, 78:13, 78:24, 79:14, 82:17, 91:11, 91:14, 95:18, 96:4, 96:6, 96:14, 96:16
**Reston** [1] - 1:16
**result** [7] - 15:20, 31:7, 34:5, 56:22, 67:16, 89:23, 89:24
**retained** [8] - 4:2, 4:4, 26:20, 27:8, 27:10, 27:11, 64:11, 88:4
**retrieval** [1] - 88:8
**return** [4] - 39:17, 41:5, 85:7, 87:8
**returned** [4] - 23:6, 75:7, 86:16, 87:15
**review** [7] - 17:12, 17:25, 18:4, 20:18, 37:21, 76:13, 88:7
**reviewed** [8] - 4:10, 4:15, 4:16, 4:24, 6:6, 18:18, 29:1, 30:12
**reviewing** [1] - 19:21
**revised** [1] - 18:6
**reworded** [2] - 21:6, 21:11
**risk** [5] - 27:21, 28:8, 50:7, 50:8, 57:12
**risky** [1] - 80:22
**road** [1] - 58:15
**rocks** [1] - 93:17
**role** [4] - 7:12, 11:24, 22:23, 57:15
**room** [4] - 39:13, 47:7, 47:15, 47:16
**rosier** [1] - 95:6
**RPR** [1] - 1:21
**rule** [4] - 20:6, 82:23, 83:1, 89:25
**ruled** [4] - 19:20, 31:20, 36:22, 37:15
**rules** [1] - 86:19
**rulings** [1] - 36:23
**run** [7] - 35:15, 35:19, 36:8, 36:10, 70:23, 74:22, 75:23

## S

**Sachs** [1] - 93:20
**sadism** [1] - 34:17
**sadistic** [6] - 32:10, 33:24, 34:1, 34:6, 34:9, 34:11
**sadomasochistic** [5] - 30:18, 42:12, 42:18, 44:25, 62:5
**safe** [1] - 40:4
**safety** [1] - 53:11
**sanction** [1] - 55:14
**SANDERS** [1] - 1:5
**Sanders** [66] - 2:3, 2:12, 2:15, 3:22, 4:11, 8:15, 9:19, 13:14, 17:16, 17:19, 26:20, 35:5, 36:17, 46:9, 47:7, 48:5, 48:10, 48:16, 48:20, 49:11, 49:19, 50:1, 50:9, 52:20, 54:2, 54:3, 54:16, 55:7, 55:14, 56:9, 56:18, 56:20, 57:7, 57:18, 58:16, 59:15, 60:2, 60:8, 63:24, 64:1, 65:17, 66:3, 67:1, 70:18, 71:17, 74:11, 74:23, 75:9, 76:19, 77:5, 78:10, 79:16, 80:7, 80:15, 81:12, 81:16, 83:5, 90:19, 91:4, 93:11, 95:10, 100:6, 101:8, 101:21
**Sanders'** [3] - 7:4, 36:13, 48:2
**sat** [1] - 39:12
**satisfied** [9] - 6:10, 10:13, 15:21, 15:22, 16:9, 19:3, 25:7, 47:5, 99:18
**satisfies** [1] - 15:23
**saw** [4] - 9:18, 41:11, 50:25, 51:6
**scanning** [1] - 88:5
**scar** [2] - 67:14, 67:15
**scars** [3] - 67:13, 67:16, 67:20
**schedule** [1] - 84:11
**Schlessinger** [1] - 2:7
**SCHLESSINGER** [1] - 1:10
**school** [1] - 40:5
**sclerosis** [2] - 17:2, 58:3
**se** [1] - 66:6
**seal** [1] - 3:1
**seat** [1] - 41:5
**seated** [2] - 4:25, 19:12
**second** [3] - 28:16, 54:1, 101:14
**Second** [2] - 88:12, 88:25
**secondly** [1] - 75:5
**section** [1] - 34:7
**Section** [3] - 25:9, 72:21, 77:14
**see** [15] - 9:19, 11:25, 13:1, 17:25, 27:11, 28:20, 29:23, 30:1, 31:3, 32:14, 39:10, 58:8, 89:1, 100:14, 102:4
**seeing** [1] - 42:18
**seek** [4] - 71:18, 74:23, 95:1
**seeking** [3] - 42:3, 48:22, 87:7
**seem** [3] - 7:22, 23:22, 50:23
**sees** [1] - 29:21
**self** [1] - 66:19
**self-destructive** [1] - 66:19
**selling..** [1] - 93:16
**send** [6] - 34:22, 44:3, 44:9, 45:18, 49:13, 62:23
**sending** [3] - 3:13, 65:22
**sends** [1] - 16:24
**sense** [2] - 54:22, 83:10
**sensible** [1] - 23:21
**sensitive** [2] - 56:16, 63:7
**sent** [8] - 11:2, 16:20, 18:12, 22:16, 26:2, 36:9, 54:17, 84:1
**sentence** [65] - 13:6, 16:12, 23:20, 24:5, 24:6, 24:9, 24:12, 24:14, 37:3, 37:11, 37:12, 38:14, 40:21, 40:23, 41:17, 43:8, 43:12, 44:2, 44:11, 44:15, 44:21, 45:3, 45:7, 45:13, 45:18, 49:19, 51:2, 52:12, 53:20, 53:25, 54:19, 55:12, 57:9, 58:11, 60:11, 61:23, 63:19, 64:7, 64:19, 64:20, 64:23, 67:21, 68:5, 68:6, 68:9, 68:10, 68:11, 69:6, 69:10, 69:12, 69:20, 70:16, 72:18, 73:24, 74:2, 74:12, 74:19, 74:23, 75:16, 75:23, 76:8, 80:7, 81:1, 90:20, 93:2
**sentenced** [1] - 82:1
**sentences** [12] - 43:6, 43:22, 51:25, 52:4, 52:5, 52:6, 55:18, 61:18, 62:11, 70:22, 73:3, 74:9
**Sentencing** [3] - 25:6, 25:8, 69:22
**SENTENCING** [1] - 1:7
**sentencing** [29] - 5:7, 5:8, 5:13, 7:1, 7:3, 7:12, 7:15, 8:2, 11:8, 11:24, 16:2, 23:25, 32:23, 33:18, 37:14, 51:6, 52:22, 61:4, 64:14, 69:23, 69:25, 81:14, 88:19, 90:2, 90:4, 90:9, 96:22, 97:6, 100:20
**separate** [3] - 36:6, 52:16, 66:23
**sergeant** [1] - 18:7
**series** [4] - 22:18, 22:20

**serious** [5] - 41:13, 58:2, 64:1, 67:14, 67:22
**seriousness** [2] - 41:20, 67:21
**serve** [2] - 80:7, 81:1
**serves** [1] - 64:22
**service** [1] - 33:2
**services** [3] - 99:5, 99:8, 99:16
**SETH** [1] - 1:10
**Seth** [1] - 2:7
**setting** [1] - 51:21
**seven** [2] - 14:10, 78:3
**several** [7] - 4:5, 4:7, 79:7, 79:11, 98:19, 98:21, 98:22
**severe** [1] - 69:5
**severely** [1] - 93:7
**Sex** [2] - 25:4, 33:14
**sex** [21] - 42:12, 46:19, 51:3, 52:15, 52:17, 53:3, 54:23, 55:21, 55:23, 55:25, 56:4, 58:23, 62:7, 68:19, 76:21, 81:15, 99:1, 99:2, 99:15
**sex-related** [1] - 99:15
**sex-trafficker** [1] - 55:25
**sexual** [15] - 28:22, 29:12, 34:13, 42:8, 42:15, 46:13, 48:12, 50:4, 53:7, 55:7, 58:22, 62:23, 67:2, 67:9, 95:12
**Sexual** [2] - 25:5, 33:14
**sexually** [9] - 30:17, 33:4, 33:6, 42:13, 44:3, 44:9, 44:17, 99:10, 101:15
**shall** [2] - 99:4, 99:12
**share** [2] - 54:4, 54:5
**sharply** [2] - 89:18, 89:21
**shocking** [1] - 42:21
**shorten** [1] - 75:10
**shortened** [2] - 71:19, 76:10
**show** [7] - 42:24, 75:12, 75:13, 79:19, 79:20, 95:1
**shown** [2] - 13:9, 68:24
**shows** [2] - 34:2, 92:6
**shuffle** [2] - 35:8, 36:9
**shuffled** [1] - 80:20
**siblings** [1] - 51:9
**sic** [3] - 17:5, 27:15, 95:20
**Sickler** [1] - 81:12
**sign** [1] - 42:24
**sIGNATURE** [1] - 102:24
**signed** [1] - 36:7
**significant** [7] - 42:9, 42:13, 45:6, 73:8, 87:23, 93:19, 93:20
**similar** [13] - 43:6, 43:22, 44:20, 51:25, 52:4, 61:19, 61:25, 62:11, 68:12, 70:13, 74:5
**simple** [1] - 71:12
**simply** [2] - 45:8, 66:18
**Singer** [2] - 27:15, 27:17
**sit** [1] - 94:3
**sites** [1] - 48:24
**sitting** [1] - 78:9
**situation** [3] - 64:9, 79:21, 94:16
**six** [2] - 71:9, 71:10
**slake** [1] - 76:5
**slapping** [1] - 34:21
**slaves** [2] - 42:3, 49:8
**sleep** [1] - 40:16
**sleeping** [1] - 40:6
**slightly** [1] - 86:18
**small** [1] - 28:17
**smart** [3] - 77:7, 101:11, 102:3
**Smihal** [14] - 12:18, 13:12, 13:15, 14:1, 14:3, 14:18, 15:11, 16:5, 19:18, 21:4, 26:5, 35:6, 35:12, 36:3
**SMIHAL** [18] - 13:16, 14:2, 14:21, 15:12, 15:15, 16:6, 21:6, 21:10, 21:16, 21:21, 21:24, 22:4, 26:13, 35:14, 35:18, 36:5, 97:18, 100:2
**social** [1] - 40:7
**society's** [1] - 28:13
**solely** [1] - 16:23
**solicit** [1] - 33:4
**solution** [1] - 89:23
**someone** [1] - 40:14
**sometimes** [1] - 37:21
**somewhat** [2] - 55:24, 74:5
**somewhere** [2] - 36:9, 84:1
**son** [8] - 39:11, 39:15, 39:18, 39:23, 40:2, 40:8, 40:19
**soon** [1] - 3:22
**sorry** [11] - 33:12, 35:17, 37:5, 46:10, 47:1, 60:3, 60:19, 67:8, 71:10, 83:13, 94:3
**sort** [7] - 21:14, 28:8, 45:15, 45:20, 48:22, 57:16, 92:4
**sorts** [1] - 93:21
**sought** [1] - 51:13
**sound** [1] - 48:15
**speaking** [1] - 86:25
**special** [30] - 9:20, 71:8, 71:12, 71:14, 72:19, 72:20, 72:22, 72:23, 72:24, 73:2, 74:2, 74:14, 76:16, 77:11, 77:12, 77:13, 77:23, 78:1, 80:2, 80:5, 91:8, 91:15, 92:14, 92:19, 92:20, 97:24, 98:4, 98:16, 98:19, 98:22
**specific** [14] - 29:2, 42:7, 42:11, 42:17, 45:12, 66:2, 70:7, 70:8, 70:9, 81:18, 82:8, 82:13, 84:15
**specifically** [7] - 12:3, 25:9, 32:12, 33:15, 44:25, 59:1, 61:5
**specifics** [1] - 87:3
**speculate** [1] - 30:3
**speech** [1] - 67:17
**spell** [3] - 83:11, 83:12
**spelled** [1] - 83:14
**spent** [3] - 27:14, 57:21, 57:24
**Spongebob** [1] - 22:20
**Square** [1] - 1:22
**stand** [4] - 64:1, 64:23, 68:7, 85:11
**standard** [2] - 76:12, 96:9
**stands** [2] - 63:15, 102:9
**start** [1] - 92:17
**state** [2] - 10:7, 58:13
**statement** [3] - 12:25, 35:15, 36:14
**statements** [5] - 12:24, 14:5, 22:21, 35:13, 41:11
**states** [1] - 25:9
**States** [6] - 2:3, 2:8, 13:24, 20:16, 61:1, 61:3
**STATES** [3] - 1:1, 1:3, 1:8
**statute** [10] - 44:22, 47:5, 48:1, 52:23, 79:3, 91:14, 94:3, 94:7, 94:11, 94:17
**stay** [1] - 84:1
**stayed** [2] - 47:16, 54:5
**stems** [1] - 53:2
**STENOGRAPHIC** [1] - 1:25
**steps** [1] - 80:12
**still** [9] - 36:12, 40:6, 40:10, 47:17, 80:13, 80:15, 100:12, 100:13
**STONESTREET** [1] - 1:21
**Stonestreet** [2] - 102:17, 102:23
**stop** [1] - 85:17
**story** [2] - 71:25, 101:10
**Street** [1] - 1:19
**stress** [1] - 92:11
**strong** [1] - 61:21
**strongly** [1] - 60:17
**studied** [1] - 88:13
**stuff** [4] - 18:6, 76:6, 85:14, 100:19
**subject** [1] - 76:12
**subjected** [3] - 30:18, 34:14, 42:18
**submit** [7] - 35:25, 36:1, 36:15, 42:22, 79:3, 96:12, 96:21
**submitted** [7] - 22:21, 26:9, 26:25, 35:25, 41:12, 51:7, 62:14
**substantial** [10] - 24:6, 24:12, 25:21, 41:17, 43:7, 45:7, 45:13, 45:18, 45:20, 62:11
**substantially** [1] - 79:2
**substituting** [1] - 97:11
**succeeded** [1] - 65:18
**successfully** [2] - 59:13, 76:17
**suffered** [1] - 56:21
**suffering** [1] - 34:15
**suffers** [1] - 57:3
**sufficient** [3] - 56:9, 68:21, 88:19
**sufficiently** [1] - 34:24
**suggest** [3] - 50:23, 51:12, 56:8
**suggested** [5] - 21:16, 27:18, 88:1, 88:17, 92:17
**suggesting** [2] - 21:14, 45:25
**suggestion** [3] - 51:10, 56:14, 61:21
**suggests** [1] - 51:22
**Suite** [2] - 1:16, 1:19
**Sunrise** [1] - 1:15
**supervised** [13] - 43:9, 74:16, 74:17, 74:25, 75:8, 75:10, 76:9, 76:11, 80:2, 99:13, 99:20, 99:21
**supervision** [7] - 53:6, 58:22, 71:17, 74:20, 74:21, 75:1, 75:3
**supplemental** [3] - 3:17, 11:18, 20:25
**supplementing** [1] - 35:9
**supplied** [4] - 35:12, 35:14, 35:15, 35:18
**support** [3] - 57:4, 77:24, 96:1
**supporting** [1] - 73:17
**supposed** [1] - 56:19
**Supreme** [1] - 23:19
**surprise** [2] - 3:19, 86:2
**surprising** [1] - 57:16
**survivor** [1] - 39:10
**survivors** [1] - 40:19
**symptoms** [1] - 84:15

## T

**T.S** [1] - 1:7
**table** [1] - 86:7
**talents** [1] - 72:2
**Tanya..** [1] - 2:23
**taping** [1] - 12:5
**tears** [2] - 75:14, 79:24
**teenager** [2] - 55:2, 55:3
**teenagers** [1] - 44:16
**telephone** [1] - 99:16
**tend** [1] - 63:8
**tendency** [1] - 67:23
**tenets** [1] - 34:18
**term** [8] - 49:3, 49:9, 69:15, 74:7, 74:18, 75:8, 80:1, 80:2
**terminated** [1] - 74:23
**terms** [8] - 15:8, 31:11, 45:12, 49:22, 53:1, 54:1, 73:17, 76:21
**terrible** [1] - 50:9

**testicles** [2] - 48:9, 48:14
**testified** [2] - 38:8, 39:12
**testimony** [2] - 7:22, 12:22
**Texas** [1] - 82:6
**THE** [346] - 1:1, 1:7, 1:10, 1:14, 2:9, 2:14, 2:16, 2:17, 2:22, 2:24, 3:3, 3:7, 3:10, 3:12, 3:16, 3:19, 4:1, 4:4, 4:7, 4:9, 4:15, 4:18, 4:22, 4:24, 5:2, 5:5, 5:11, 5:15, 5:21, 6:1, 6:4, 6:8, 6:10, 6:14, 6:18, 6:20, 6:22, 6:25, 7:9, 7:17, 7:19, 7:24, 8:2, 8:5, 8:10, 8:12, 9:7, 9:13, 9:16, 9:22, 10:3, 10:9, 10:11, 10:13, 10:15, 10:19, 10:22, 11:1, 11:5, 11:10, 11:14, 11:17, 11:20, 11:23, 12:8, 12:12, 12:16, 13:1, 13:5, 13:9, 13:12, 13:17, 14:1, 14:3, 14:9, 14:14, 14:18, 14:22, 15:5, 15:9, 15:14, 15:17, 16:7, 16:9, 16:14, 16:19, 16:23, 17:1, 17:7, 17:10, 17:16, 17:18, 17:19, 17:23, 17:24, 18:2, 18:20, 18:23, 18:24, 19:1, 19:3, 19:5, 19:7, 19:10, 19:11, 19:16, 19:24, 20:6, 21:8, 21:12, 21:19, 21:22, 21:25, 22:5, 22:7, 22:11, 23:10, 23:12, 23:24, 24:3, 24:8, 24:13, 24:18, 24:20, 25:20, 26:5, 26:9, 26:14, 26:23, 26:25, 27:4, 27:14, 27:17, 27:23, 28:3, 28:6, 28:11, 28:16, 29:3, 29:7, 29:12, 29:15, 29:23, 29:25, 30:7, 30:11, 30:15, 30:19, 30:24, 31:8, 31:13, 31:19, 31:25, 32:4, 32:8, 32:14, 32:18, 33:21, 35:12, 35:17, 35:21, 36:3, 36:15, 36:19, 36:21, 37:6, 37:9, 38:18,

38:20, 39:1, 39:4, 39:5, 39:8, 41:2, 41:4, 41:5, 41:8, 43:10, 43:15, 43:18, 43:24, 44:7, 44:14, 44:19, 45:2, 45:21, 46:10, 47:1, 47:13, 48:12, 50:12, 50:16, 51:1, 51:5, 52:2, 52:9, 52:13, 53:15, 53:18, 53:23, 54:8, 54:12, 54:13, 54:17, 54:20, 54:24, 55:2, 55:5, 55:8, 57:23, 58:5, 58:18, 59:20, 59:24, 60:5, 60:8, 60:15, 60:16, 60:17, 60:20, 60:25, 61:6, 61:11, 61:13, 62:13, 62:24, 63:2, 63:6, 63:12, 63:15, 63:18, 63:21, 63:24, 65:8, 65:15, 65:17, 67:6, 67:7, 67:20, 69:10, 70:4, 71:4, 72:24, 73:3, 73:11, 73:14, 73:20, 73:23, 75:19, 75:21, 76:2, 76:16, 77:21, 78:15, 78:25, 79:6, 79:9, 79:13, 80:16, 80:17, 81:11, 81:23, 82:4, 82:19, 82:22, 83:1, 83:9, 83:15, 83:25, 84:6, 84:9, 84:14, 84:18, 85:1, 85:4, 85:7, 85:11, 85:21, 86:2, 86:8, 86:11, 86:14, 86:21, 87:1, 87:5, 87:11, 87:14, 88:10, 89:4, 89:9, 89:15, 90:11, 90:14, 90:19, 91:2, 91:5, 91:10, 91:15, 91:20, 91:23, 92:5, 92:13, 92:20, 92:22, 92:24, 93:9, 93:13, 93:18, 94:2, 94:7, 94:10, 94:23, 95:5, 95:8, 95:15, 95:19, 95:23, 96:5, 96:8, 96:13, 96:20, 96:22, 97:1, 97:4, 97:6, 97:9, 97:13, 97:17, 97:19, 97:22, 98:3, 98:9, 98:18, 98:21, 98:23, 100:3, 100:7, 100:10, 100:18, 100:25, 101:5, 101:8, 101:17, 101:18, 101:22, 101:23

**theatre** [1] - 72:11
**themselves** [13] - 34:5, 34:20, 34:21, 42:8, 44:10, 44:16, 46:8, 46:11, 49:11, 49:12, 57:1, 64:16
**therapy** [3] - 27:22, 40:8, 57:12
**therefore** [2] - 34:10, 34:25
**therein** [1] - 20:11
**they've** [2] - 56:11, 59:11
**thinking** [1] - 21:20
**Third** [1] - 88:11
**thirst** [1] - 76:5
**thoughtful** [1] - 101:13
**thousands** [3] - 30:4
**threatened** [1] - 53:12
**three** [5] - 4:11, 26:17, 26:18, 43:21, 73:25
**Thursday** [2] - 18:19, 36:10
**timely** [2] - 10:7, 17:4
**tired** [1] - 83:1
**Title** [1] - 72:21
**today** [21] - 2:19, 5:12, 5:16, 8:16, 10:20, 28:6, 38:17, 40:12, 41:23, 42:25, 47:2, 56:17, 60:18, 72:18, 77:16, 86:6, 88:19, 89:17, 90:2, 90:22, 90:24
**toddler** [1] - 30:22
**together** [1] - 17:14
**took** [5] - 3:21, 3:23, 4:17, 52:25, 68:18
**top** [1] - 73:8
**topic** [2] - 49:5, 49:21
**torture** [1] - 39:20
**total** [11] - 71:9, 71:13, 74:11, 74:19, 91:20, 91:22, 93:25, 94:1, 95:20, 98:2, 98:3
**totally** [1] - 9:17
**towards** [1] - 51:20
**track** [1] - 56:18
**trafficked** [2] - 55:22, 55:25
**trafficker** [1] - 55:25
**trafficking** [2] - 55:21, 56:2
**TRANSCRIPT** [1] - 1:7
**transcript** [1] - 102:18
**TRANSCRIPTION** [1] - 1:25
**transplant** [1] - 82:1
**trash** [2] - 39:16, 40:9

**Trash** [1] - 56:20
**travel** [1] - 33:3
**treat** [1] - 70:14
**treated** [2] - 58:7, 70:13
**treatment** [7] - 58:23, 81:7, 81:15, 81:16, 82:15, 98:25, 99:1
**treatments** [1] - 17:4
**Trenga** [1] - 55:24
**trial** [10] - 20:13, 20:19, 39:20, 39:21, 42:20, 48:2, 52:7, 64:4, 100:19, 102:10
**triggered** [1] - 61:6
**troll** [1] - 48:17
**true** [5] - 7:22, 12:24, 29:9, 47:13, 77:4
**trusting** [1] - 40:7
**try** [4] - 12:22, 54:6, 81:22, 100:15
**trying** [4] - 29:4, 47:4, 63:10, 72:13
**turn** [2] - 25:4, 74:4
**turns** [2] - 94:24, 96:1
**two** [22] - 12:10, 15:19, 15:25, 22:19, 23:13, 26:20, 28:11, 32:20, 33:15, 36:6, 49:8, 52:5, 57:21, 58:1, 61:10, 62:17, 75:3, 76:16, 78:12, 79:14, 88:13, 101:9
**two-level** [3] - 15:25, 23:13, 32:20
**two-point** [1] - 15:19
**type** [3] - 14:5, 42:9, 64:24
**types** [1] - 30:11
**typically** [2] - 2:19, 29:22

## U

**U.S** [2] - 1:12, 1:22
**Ugly** [1] - 56:20
**ultimately** [2] - 69:12, 70:7
**unadjudicated** [1] - 20:12
**unclear** [1] - 84:20
**under** [16] - 3:1, 20:19, 25:10, 31:20, 32:18, 34:7, 51:10, 53:12, 59:11, 77:13, 80:3, 87:23, 88:19, 91:8, 97:24, 99:11
**underage** [8] - 8:18, 29:16, 46:19, 51:13, 66:11, 67:4, 68:2,

95:12
**underlies** [1] - 22:24
**underlying** [4] - 46:8, 46:10, 46:18, 47:24
**underscore** [2] - 38:2, 75:9
**underscored** [1] - 76:2
**understandable** [1] - 27:8
**understood** [4] - 5:11, 25:13, 30:25, 32:9
**undertake** [1] - 88:9
**undiscovered** [1] - 45:16
**unfortunately** [1] - 62:1
**unique** [8] - 61:22, 62:10, 64:15, 64:16, 68:13, 68:14
**United** [6] - 2:3, 2:8, 13:24, 20:16, 61:1, 61:3
**UNITED** [3] - 1:1, 1:3, 1:8
**University** [1] - 82:6
**university** [1] - 72:10
**unless** [7] - 20:4, 20:22, 62:12, 63:22, 79:18, 90:4, 99:13
**unlike** [2] - 46:5, 65:10
**unmistakably** [1] - 67:4
**unrelated** [1] - 20:8
**unreported** [1] - 45:16
**untimely** [7] - 3:20, 5:2, 5:22, 9:17, 13:3, 19:21
**untoward** [1] - 51:11
**unusual** [2] - 29:21, 57:25
**unusually** [1] - 29:20
**unwarranted** [3] - 43:13, 44:22, 68:10
**up** [21] - 9:10, 10:21, 10:22, 10:25, 13:9, 19:11, 42:6, 43:3, 59:21, 67:7, 69:20, 71:21, 74:7, 75:22, 76:8, 77:14, 83:4, 91:25, 96:7, 97:21, 99:2
**updated** [1] - 18:5
**upload** [1] - 54:3
**uploaded** [1] - 54:10
**uploading** [1] - 53:8
**upset** [1] - 100:11
**urinate** [1] - 8:7
**useful** [2] - 23:22, 38:10

**user** [1] - 56:19
**utilize** [1] - 99:15
**utter** [1] - 41:22

**V**

**VA** [3] - 1:13, 1:16, 1:20
**Valley** [1] - 1:15
**variety** [1] - 64:6
**various** [1] - 80:20
**veil** [2] - 75:14, 79:24
**verified** [1] - 48:24
**version** [1] - 53:22
**versus** [2] - 2:3, 58:20
**victim** [14] - 22:21, 22:25, 38:18, 41:11, 47:7, 52:18, 53:3, 54:24, 65:22, 66:16, 68:16, 68:19, 79:2, 79:8
**Victim** [11] - 7:11, 7:20, 8:6, 12:14, 12:20, 13:13, 14:20, 15:10, 15:24, 38:19, 53:8
**Victims** [2] - 34:3, 34:20
**victims** [26] - 11:25, 22:19, 34:17, 38:16, 39:9, 40:16, 40:19, 41:10, 41:25, 45:11, 53:12, 62:1, 62:2, 62:6, 62:14, 62:16, 62:17, 64:5, 67:13, 68:17, 78:11, 78:12, 78:14, 78:17, 79:9, 79:14
**victims'** [1] - 22:24
**video** [3] - 22:18, 47:18, 53:3
**videoed** [2] - 46:20, 49:16
**videoing** [3] - 51:16, 55:21, 56:25
**videos** [7] - 22:14, 22:16, 34:22, 42:7, 46:9, 54:3, 62:23
**view** [13] - 5:13, 8:21, 38:13, 44:21, 45:2, 49:14, 55:17, 67:2, 85:19, 86:15, 90:16, 93:9, 95:13
**viewed** [1] - 31:17
**views** [3] - 26:19, 83:3, 100:21
**violate** [1] - 74:25
**violated** [1] - 53:10
**violates** [1] - 48:1
**violation** [1] - 55:23
**violence** [4] - 33:25, 34:10, 50:5
**violent** [2] - 34:6, 34:7
**Virginia** [1] - 1:23
**VIRGINIA** [1] - 1:1
**virtually** [3] - 46:6, 47:19, 73:18
**visit** [1] - 18:14
**voluntarily** [1] - 48:4
**volunteer** [2] - 99:4, 99:8
**vs** [1] - 61:3
**vulnerable** [1] - 39:16

**W**

**W-E-R-N-I-C-K** [1] - 89:5
**waive** [1] - 96:3
**waived** [1] - 96:15
**waiving** [1] - 82:18
**wants** [6] - 10:24, 28:2, 85:15, 85:16, 87:20, 93:19
**warning** [2] - 64:24, 68:7
**warrant** [1] - 41:17
**warranted** [3] - 45:8, 69:5, 70:5
**warrants** [1] - 61:22
**watching** [2] - 47:7, 47:8
**wealth** [2] - 9:4, 92:11
**wealthy** [1] - 92:8
**website** [6] - 21:14, 21:17, 48:19, 56:18, 57:17
**websites** [2] - 48:24, 66:9
**Wednesday** [4] - 18:14, 18:17, 18:18, 36:10
**week** [3] - 9:25, 89:16, 89:19
**weekend** [1] - 18:16
**weeks** [3] - 4:11, 9:22, 87:7
**Wernick** [1] - 89:5
**wherewithal** [1] - 78:3
**Whitney** [1] - 27:3
**whole** [3] - 13:2, 88:15, 93:3
**WILLIAM** [1] - 1:10
**willingly** [2] - 12:1
**wish** [6] - 7:25, 39:7, 41:2, 60:9, 60:12, 60:13
**wishes** [1] - 39:6
**WITNESS** [3] - 39:4, 39:8, 41:4
**woman** [1] - 65:23
**won** [1] - 56:13
**word** [1] - 93:14
**words** [6] - 25:12, 71:25, 74:11, 79:9, 87:16, 87:18
**world** [2] - 51:21, 93:6
**worse** [2] - 39:23
**worth** [3] - 12:21, 36:13, 57:1
**worthless** [1] - 39:15
**write** [2] - 71:25, 101:9
**wrote** [3] - 39:8, 53:20, 87:19

**Y**

**year** [1] - 73:23
**years** [36] - 24:18, 51:8, 52:21, 56:1, 56:8, 56:9, 57:1, 57:2, 57:4, 57:21, 58:1, 58:22, 60:6, 63:8, 67:15, 69:16, 69:18, 69:20, 70:1, 70:24, 71:3, 73:24, 74:7, 74:16, 74:21, 75:22, 76:9, 79:22, 83:2, 92:14
**yesterday** [1] - 19:2
**you-all** [3] - 8:24, 26:2, 71:6
**young** [10] - 28:12, 28:22, 65:23, 72:6, 77:7, 93:14, 99:10, 101:11, 102:3
**younger** [2] - 55:5, 62:2
**yourself** [5] - 47:16, 68:3, 77:3, 77:7, 100:18
**youthful** [1] - 66:19

**Z**

**Zack** [2] - 50:25, 51:6
**Zackary** [1] - 2:3
**ZACKARY** [1] - 1:5
**Zanobini** [2] - 2:7, 85:9
**ZANOBINI** [1] - 1:11
**zero** [1] - 97:20