```
                        UNITED STATES DISTRICT COURT
                     FOR THE EASTERN DISTRICT OF VIRGINIA
                             Alexandria Division

   UNITED STATES OF AMERICA,          :
                                      :       Criminal Case
                   Plaintiff          :       No. 1:20-CR-00143-TSE
                                      :
          v.                          :
                                      :
   ZACKARY ELLIS SANDERS,             :       April 29, 2022
                                      :       2:30 p.m.
                   Defendant          :
   ...........................        :       .....................

                     TRANSCRIPT OF FORFEITURE HEARING
                  BEFORE THE HONORABLE T.S. ELLIS, III
                      UNITED STATES DISTRICT JUDGE


   APPEARANCES:

    FOR THE PLAINTIFF:          ANNIE ZANOBINI
                                SETH SCHLESSINGER
                                U.S. ATTORNEY'S OFFICE
                                2100 Jamieson Avenue
                                Alexandria, VA  22314
                                (703) 299-3700

    FOR THE DEFENDANT:          NINA J. GINSBERG, ESQ.
                                DiMURO GINSBERG, P.C.
                                1101 King Street
                                Suite 610
                                Alexandria, VA  22314
                                (703) 684-4333


   OFFICIAL COURT REPORTER:     REBECCA STONESTREET, RPR, CRR
                                U.S. District Court, 9th Floor
                                401 Courthouse Square
                                Alexandria, Virginia  22314
                                (240) 426-7767


                             ( Pages 1 - 44)



              COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
```

2

```
 1                        P R O C E E D I N G S
 2              THE COURT:  The record will reflect this is
 3    United States against Sanders, and that Mr. Sanders is now
 4    present in the courtroom in the custody of the marshals.
 5              Good afternoon, Mr. Sanders.
 6              THE DEFENDANT:  Good afternoon, Your Honor.
 7              THE COURT:  All right.  Who is here on behalf of the
 8    government?
 9              MS. ZANOBINI:  Good afternoon, Your Honor.
10    Annie Zanobini and Seth Schlessinger on behalf of the
11    United States.
12              THE COURT:  Ms. Zanobini, will you argue today?
13              MS. ZANOBINI:  Yes, Your Honor.
14              THE COURT:  All right.  And Ms. Ginsberg, you'll argue
15    for the defendant?
16              MS. GINSBERG:  That's correct, Your Honor.
17              THE COURT:  All right.  Let me see if I can frame this.
18    But I want you to listen carefully to what I say, because I may
19    not get it right, and if I don't get it right, I'll rely on
20    you-all to correct me.
21              This is a child pornography prosecution which resulted
22    in a verdict of guilty by the jury, and it is before the Court
23    on two motions, the government's motion for a preliminary order
24    of forfeiture, and the defendant's motion for return of
25    noncontraband seized property; in essence, material on the
```

1    memories of these devices that, in his view, are unrelated to

2    child pornography.

3            The government seeks forfeiture of nine electronic

4    devices which contain in their memories visual depictions of

5    child pornography, and which FBI agents seized from defendant on

6    February 12, 2020, when the government executed a search warrant

7    of defendant's home.

8            Defendant concedes that certain electronic devices

9    themselves are subject to mandatory forfeiture, but defendant

10   seeks return of certain files contained on the -- in the

11   memories of these devices, including personal and business

12   records that defendant contends are not child pornography.  And

13   he seeks an order directing the government to preserve and

14   return copies of the noncontraband contents on the devices.

15           So that's where we are.  I think the devices, the way

16   they're identified is 1B something, and a number.  What's the 1B

17   number from?  Is that an exhibit number?

18           Ms. Zanobini or Ms. Ginsberg, do you know?

19           MS. ZANOBINI:  Yes, Your Honor.  It's not an exhibit

20   number, it's the FBI's number.

21           THE COURT:  All right.  The ones I have that are at

22   issue are 1B2 and 1B22 and 1B27.  Those are the ones that I

23   think Mr. Sanders contends have non-child-pornography related

24   stuff on them.  Is that your --

25           MS. ZANOBINI:  Your Honor, it's my understanding that

4

1    it's 1B19 and not 1B22, as 1B19 is the iPad Pro.

2              THE COURT:  All right.  What's your view, Ms. Ginsberg?

3              MS. GINSBERG:  Your Honor, I don't recall what the FBI

4    number is, but the IPad Pro is the device that is at issue.  So

5    that apparently is 1B19.

6              THE COURT:  Is that the main one?  I had two others.

7              MS. GINSBERG:  Yes, Your Honor was correct, 1B2,

8    1B19 - as opposed to 1B22 - and, as Your Honor said before,

9    1B27.

10             THE COURT:  That's right.  Now, I wanted to frame this,

11   so let me continue and see if I have everything.  And then we

12   can hear argument.

13             The government claims that trial testimony and admitted

14   evidence established that these devices contain child

15   pornography and were used in the commission of the convicted

16   crimes.  Special Agent Christopher Ford testified that he imaged

17   and examined 1B1, 1B2, 1B3, 1B5, and that each of those devices

18   contained images of child pornography.  Well, they're not really

19   at issue today.

20             Special Agent Ford also testified that he examined

21   1B19, and that that device - and that one is at issue - was used

22   to chat online with minors to produce and receive child

23   pornography.  And Special Agent Ford also testified that he

24   examined 1B22, which isn't at issue, and that that device was

25   used online with minors -- to chat online with minors to produce

1    and receive child pornography.  Special Agent Ford testified

2    that 1B27, which is at issue, that he examined that, and that

3    that device was used to receive child pornography.

4           Now, the government has also submitted, or asked me to

5    consider, Special Agent Eckert's trial testimony -- no, I'm

6    sorry, her declaration which has been submitted in support of

7    the motion, the government's motion, in which Eckert explained

8    that a forensic examination of the devices discovered images, or

9    disclosed that these memories on these devices had images and

10   videos of child pornography.

11          And Special Agent Kochy also submitted a declaration in

12   which Kochy elaborated on the government's burden that the

13   government would bear if it had to review files on these devices

14   and segregate contraband from noncontraband files.  And

15   Special Agent Kochy stated that the FBI agent would still be

16   required visually to inspect every picture and file and document

17   that the defendant seeks to extract from these devices.  That's

18   what the declaration shows.

19          And the only other thing I would mention to frame it

20   is, it seems to me that the issue comes down to the fact that

21   the defendant does not contest that these devices are all

22   forfeited.  What the defendant says is that some of the

23   information on 1B19 and 1B27 and 1B2 is noncontraband, non-child

24   pornography.

25          And by the way, contraband refers to all property -- it

1    encompasses more than just images of child pornography; it

2    includes any files used in the commission of the convicted

3    offenses, as well as any information identifying or relating to

4    the minor victims in the case.

5          But anyway, we're focusing, I think, today on 1B2 and

6    1B19 and 1B27.  And the essential argument is, the government

7    says they're forfeited and it doesn't have to go through there

8    and separate out some stuff that may be noncontraband, and it

9    says that on the basis of the plain language argument.  And the

10   defendant says, no, the material on those three devices includes

11   some material that isn't contraband, that isn't child

12   pornography.  And that should be returned, family records or

13   business records of his ventures or whatever.  And the issue is

14   whether the government is required to pull that stuff out and

15   give it back to him.

16         Now, there are, so far as I'm aware, only three --

17   there's no Fourth Circuit decision in point.  There's the

18   statute, which, of course, the government contends the plain

19   language is broad enough to -- should be construed to apply to

20   all of these devices, including the noncontraband material that

21   may be on them.

22         And, in support, the government cites a

23   Seventh Circuit case, *Noyes*, which is an unpublished

24   Seventh Circuit case, in which the Seventh Circuit decided

25   specifically that a defendant's request to have noncontraband

7

1    electronic files stored on those devices returned to him; the

2    Seventh Circuit denied that request, observing that the

3    forfeiture statute required defendants to forfeit all of that,

4    including noncontraband.  The *Noyes* court explained that there

5    is nothing in the statute that indicates that only a portion of

6    the property can be forfeited.

7         The Second Circuit, the government says, reached a

8    similar conclusion in *Wernick*, which is also in

9    Federal Appendix.  And there, as in the Seventh Circuit case,

10   the Second Circuit denied a request for return of noncontraband

11   files stored on an electronic device subject to mandatory

12   forfeiture.  And the Second Circuit said property traceable to

13   an offense is still forfeitable, even if commingled with

14   legitimate property.  It is impossible confidently to conclude

15   that none of the data requested was used to facilitate offenses

16   of conviction.

17        Now, those are the only two cases I found that were

18   directly in point.  The defendant cites the *Gladding* case from

19   the Ninth Circuit, and argues that the *Gladding* court reached

20   the opposite result.

21        Well, I'll hear from you, Ms. Ginsberg, on that.  It

22   seems to me that the *Gladding* court did not reach the opposite

23   result.  It's distinguishable.  Essentially, in *Gladding*, the

24   District Court's forfeiture order explicitly did not cover

25   noncontraband files.  Could have, but it didn't.  And so the

8

1     government, in *Gladding*, never argued that the forfeiture order

2     should be amended to cover all the files on the electronic

3     devices, and there's really no indication that the *Gladding*

4     court considered that question and the question that's presented

5     in this case.

6            As the *Gladding* court said, in the Ninth Circuit:

7     "This type of forfeiture order is uncommon" - I'll say -

8     "because in the normal course, a defendant forfeits all the

9     files on an electronic storage device when it forfeits the

10    device itself, whether those files are contraband or not.

11           So in dicta, the Ninth Circuit seems to agree with the

12    Seventh and the Second Circuits, but it wasn't the question

13    presented to the Ninth Circuit.

14           So that's where we are.  And I think the place to begin

15    probably, Ms. Zanobini, is to be sure that -- you're the movant

16    for the forfeiture order, so tell me if I have accurately

17    described the case and the issues that are before the Court

18    today, and whether that's the issue that's presented.

19           MS. GINSBERG:  Judge, I hate to interrupt, but before

20    we get to the legal issue, I think that there is at least some

21    confusion, and I think a mistake on the government's part --

22           THE COURT:  All right.  What is it?

23           MS. GINSBERG:  -- as to the actual devices which it's

24    seeking to forfeit.  I'm looking at the government's motion for

25    preliminary order of forfeiture, and Agent, I think it's

1    Eckert's --

2         THE COURT:  I said 1B1, 1B2, 1B3, 1B5, 1B6, 1B19, 1B22,

3    1B24, and 1B27.

4         MS. GINSBERG:  That's correct.  And that's what's

5    listed here.  But, Your Honor, 1B24, on the front page of the

6    motion for the preliminary order of forfeiture, identifies an

7    Apple iPad, and is one of three iPads listed.

8         My recollection from the trial testimony was that there

9    were only two iPads, and that there were actually two iPhones

10   that were seized.  And if you look at Agent Eckert's affidavit,

11   page 2 of her affidavit, she has identified, Item 1B24 as an

12   Apple iPhone, not as an Apple iPad, as the preliminary --

13        THE COURT:  But that's not one of the devices you claim

14   has noncontraband on it.

15        MS. GINSBERG:  Your Honor, I think one of the -- the

16   only one of these declarations which referred to this iPad --

17        THE COURT:  I'm sorry, what was the answer to my

18   question?  Do you contend that 1B24 has noncontraband material?

19        MS. GINSBERG:  I don't know.  One of these declarations

20   say that it was reviewed and there was suspected contraband, but

21   I'm not --

22        THE COURT:  I see.

23        MS. GINSBERG:  The core issue is not -- the core issue

24   is the one that the Court has identified, but I think it would

25   be improper for the Court to forfeit an item that is either

1    nonexistent or that is not actually an item that contains

2    contraband.

3              THE COURT:  All right.  Let me see if Ms. Zanobini,

4    then, can clarify this.

5              MS. ZANOBINI:  Yes, Your Honor.  I sent an email to

6    defense on April 22nd just to clarify to them that the agent's

7    declaration refers to 1B24 as an iPhone.  That is correct.  My

8    motion mistakenly lists it as an iPad, but it is, in fact, an

9    iPhone 4S.

10             THE COURT:  1B24 is an iPhone?

11             MS. ZANOBINI:  That's correct.  So it is listed as an

12   iPhone in the agent's declarations, but in my motion I

13   mistakenly listed it as an iPad.  And I sent defense an email to

14   clarify that device, but that device does still contain

15   contraband.

16             THE COURT:  Ms. Ginsberg?

17             MS. GINSBERG:  Your Honor, if the agent has signed an

18   affidavit or declaration saying it contains contraband, we have

19   no evidence to the contrary.  But it was not an exhibit admitted

20   at trial, as far as I recall.

21             THE COURT:  All right.  That really doesn't matter for

22   purposes of forfeiture, whether it was admitted at trial or not.

23   And I don't know -- I thought these numbers were numbers that

24   had some exhibit meaning, but they don't.  They're what the FBI

25   put on them.

11

1             Is that right, Ms. Zanobini?

2             MS. ZANOBINI:  That's correct, Your Honor.

3             THE COURT:  But it doesn't matter whether it was an

4   exhibit at trial, does it, Ms. Zanobini?

5             MS. ZANOBINI:  No, Your Honor.

6             THE COURT:  Ms. Ginsberg?

7             MS. GINSBERG:  No.  As long as there is evidence that

8   there is actually contraband on that device, we can't object to

9   its forfeiture.

10             THE COURT:  All right.  So, Ms. Ginsberg, am I correct,

11   then, that what we're focused on sharply today is whether, for

12   1B2 and 1B19 and 1B27, where there appears to be noncontraband

13   material on there, whether the device should be forfeited both

14   with and without the contraband material, or, as you argue, that

15   the noncontraband portions of those memories should be returned

16   to the defendant?

17             MS. GINSBERG:  Essentially, yes, Your Honor.  Two

18   things.  One, the digital information on these devices is not

19   technically part of the device's memory.  It is a digital file

20   that is stored on the device, but can be removed from the device

21   without altering anything about the device itself.

22             THE COURT:  All right.

23             MS. GINSBERG:  So it's not an integral part of the

24   device.

25             THE COURT:  When you say stored in the memory, I'm not

1    an expert on computers, but obviously if something is in a

2    memory, you can get it out of the memory without altering the

3    device.

4            MS. GINSBERG:  I just wanted to make sure that the

5    Court is clear that we're not even asking to remove these --

6    this information.  What we're asking to do is make copies of it,

7    essentially.

8            THE COURT:  Yes, all right.  I did understand that, and

9    I'm glad you clarified that.

10           MS. GINSBERG:  And we're also not asking to receive

11   copies of all of the noncontraband information on these devices.

12   We're asking to be allowed to have a forensic examiner accompany

13   a lawyer to review these three separate devices, make a

14   selection, a very limited selection, of files to have copies

15   made of, and to have those copies preserved and returned to the

16   Sanders family.

17           THE COURT:  And who is it that you say would do this?

18           MS. GINSBERG:  A forensic examiner that we would hire.

19   We had a forensic examiner from a reputable company who already

20   assisted us in this type of process during the discovery

21   process.

22           THE COURT:  All right.  Can you confirm to me that you

23   don't know of any decisions that would approve or bless that

24   procedure?

25           MS. GINSBERG:  Well, Your Honor, we did attach, in

13

1    the --

2         THE COURT:  *Gladding*?

3         MS. GINSBERG:  Not the *Gladding* decision.

4         THE COURT:  Is it in your brief?

5         MS. GINSBERG:  It's in the last -- in the last brief

6    that we filed, there were two unreported -- one was a report and

7    recommendation from a magistrate, and one is a North Dakota

8    unreported case where the court sanctioned this process.

9         But we would -- I guess -- I know Your Honor wanted to

10   hear from the government first, but I do think that the

11   government's pleadings in general have mischaracterized what

12   we're requesting.  We are not requesting a review of all of the

13   material -- a return of all of the material on these three

14   devices.  We are not asking that the government have an agent --

15   a forensic analyst actually go through and segregate contraband

16   from noncontraband material.  We are asking to have the

17   opportunity to have a forensic examiner, accompanied by one of

18   the lawyers who is familiar with the data, look at these three

19   devices, identify --

20        THE COURT:  One of the lawyers, meaning you?

21        MS. GINSBERG:  Me or --

22        THE COURT:  All right.

23        MS. GINSBERG:  -- Mr. Deubler or one of us.  To

24   accompany this forensic examiner, say these are the type of

25   documents we're looking for:  School records, professional

1    lighting programs that Mr. Sanders designed, photographs of

2    family trips and family events.  And identify those specific

3    limited number of files, then present to the government, however

4    they want us to do it, either to copy them onto a hard drive

5    ourselves or just identify the file by name and say, here is

6    this very limited list of files that we would like to have

7    copied.  And then have the government digital examiner review

8    those limited number of files to make sure that they don't

9    contain contraband or any private information that relates to

10   the victims, and then allow us to have copies made.

11          We are not asking for information about any of the

12   victims --

13          THE COURT:  But, you see, your person would have

14   exclusive, for some period of time, access to the --

15          MS. GINSBERG:  No, not at all.  We would go to the FBI

16   facility where these devices were previously made available --

17          THE COURT:  And somebody from the FBI would have to be

18   there and look over your shoulder.

19          MS. GINSBERG:  Well, I think what happened last

20   time was they put him in a -- I didn't go with him.  Mr. Deubler

21   did.  He was there for three days, and I think they put him in a

22   room with the devices and let him go through the devices.

23          And it's not the actual original devices.  These are

24   forensic copies of the devices.

25          THE COURT:  All right.

1            MS. GINSBERG:  So we are asking for a much smaller

2    universe of information, and we're offering, at our expense, to

3    take on what I think is the real bulk of the work, understanding

4    that an agent or digital examiner will have to examine them.  If

5    that is an additional expense to the government, if the Court

6    thinks it's appropriate, we will pay for the time that it takes,

7    for the salary of that agent.

8            THE COURT:  Well, this particular defendant can afford

9    to do it --

10           MS. GINSBERG:  His family can.

11           THE COURT:  -- but you know, of course, that many

12   defendants could not afford to do that.

13           MS. GINSBERG:  That's certainly the case, Your Honor.

14   But we are offering to compensate the FBI for the time that it

15   takes its examiner to do this work.  But I think we are

16   talking -- the government's pleading talks about thousands and

17   thousands of hours and days and days of work.  We are not

18   intending that.  We are not asking that.  In fact, that would be

19   prohibitive even for the ability of Mr. Sanders' family to pay.

20           THE COURT:  I doubt that.  How many lawyers has he

21   hired in this case?

22           MS. GINSBERG:  Quite a few.

23           THE COURT:  Seven or eight or nine.

24           MS. GINSBERG:  At any rate, we are not asking --

25           THE COURT:  All right.  I understand your argument.

1    You've put it much more sharply than is in the briefs thus far.

2         So let's let, now, the government proceed.

3         MS. ZANOBINI:  Your Honor, if you want me to just

4    address that specific point...

5         THE COURT:  No, I want you to address the argument.

6    Your argument, I think, from reading this, begins, first of all,

7    that the statute says you don't do that, you get the whole

8    device.

9         MS. ZANOBINI:  That's correct, Your Honor.

10        THE COURT:  All right.  You can make that argument and

11   why you think that's a good argument.  Then you can go to

12   addressing that Ms. Ginsberg says, look, we don't want agents to

13   spent a thousand hours on this; we want to do it very briefly

14   and cleanly on three specific devices for specific kinds of

15   family mementos and business records and pictures.

16        MS. ZANOBINI:  That's right, Your Honor.  It's the

17   government's position that the devices are forfeitable in their

18   entirety, meaning all hardware, software, and data on the

19   device.

20        THE COURT:  Whether it's contraband or not?

21        MS. ZANOBINI:  That's correct, Your Honor.

22        THE COURT:  Yes.  Now, you articulate, please, for me

23   how the statute leads to that conclusion.

24        MS. ZANOBINI:  Right.  I think this position is

25   supported in Section 2253 itself, as well as the case law,

1   starting, as Your Honor has stated, with the actual statutory

2   interpretation.  That Section 2253 states, in part:  "The

3   defendants convicted of an offense involving a visual depiction

4   described in 2252 shall forfeit any book, magazine, periodical,

5   film, videotape, or other matter which contains a visual

6   depiction."

7        Thus, the language makes clear that it is not just the

8   visual depiction itself that is forfeitable; rather, the statute

9   makes clear that it includes the matter on which it is stored.

10  In this case, an iPhone, an iPad, a laptop.

11       This position is supported by the case law that the

12  government cites in its motion.  For instance, the defendant in

13  *Noyes* was convicted of receipt and possession of child

14  pornography, and requested that the government return certain

15  files and programs contained in the forfeited computers.  The

16  Third Circuit pointed to the child pornography forfeiture

17  statute, the same statute that's at issue in this case, and

18  noted that nothing in this statute indicated that only a portion

19  of the computer can be forfeited.

20       The court in the Eastern District of New York, in

21  *Wernick,* came to the same conclusion.  Specifically, in *Wernick*,

22  the District Court rejected the defendant's argument that the

23  noncontraband data is a separate and distinct asset from the

24  property used to commit the crime.  It was not like a family

25  dog, when the government forfeits a house; rather, the

1     noncontraband data is intertwined with the contraband data, and

2     the defendant's effort to limit the scope of the forfeiture

3     order would be inconsistent with the terms of 2253(a) and the

4     rationale in *Noyes*.

5             On appeal, the Second Circuit affirmed, and also

6     expressed concern, regarding the difficulty of disentangling the

7     data, and noted an additional concern that Your Honor stated

8     earlier, that some of the data was used to facilitate the

9     offense of conviction, like contact information or parties to

10    the crimes and internet chats concerning criminal activity,

11    concerns that are present here.

12            The defense has cited the Ninth Circuit opinion in

13    *Gladding*.  However, as Your Honor previously stated, the court

14    in that -- the court there never directly ruled on the question

15    now facing this court.  And I think the circumstances of

16    *Gladding* are very, very different from what we're facing here.

17            There, the government agreed to give back noncontraband

18    data.  Second, the forfeiture order itself, as you stated, was

19    limited to the contraband data.  Therefore, the government was

20    left with an alternative argument that the difficulty and cost

21    of separating the files was a legitimate reason to retain

22    *Gladding*'s property - which the court noted it could make that

23    argument - however, the court in *Gladding* noted that the

24    government did not submit any evidence of the difficulty of

25    separating the data.

1          Here, the government has not agreed to return these

2     files.  There is no specific forfeiture order limited only to

3     the contraband; rather, the statute, in its entirety, permits

4     the forfeiture of the entire device.  And the government has

5     submitted evidence on the record of the burden of separating the

6     files.

7          And as we already stated, *Gladding* remanded to the

8     District Court and never ruled on the issue facing the Court

9     here.  But the courts that have squarely confronted and ruled on

10    this issue have held that the whole device must be forfeited

11    under 2253, based on the terms of the statute itself.

12         Furthermore, given the number of devices and the amount

13    of data on the electronic devices, the undertaking of separating

14    contraband as the defense --

15         THE COURT:  Well, now there are only three devices at

16    issue.

17         MS. ZANOBINI:  That's correct, Your Honor.

18         THE COURT:  And there's only certain material that

19    Ms. Ginsberg says can be identified, with fairly good precision,

20    that they really want.  They're not asking for all

21    noncontraband, which would be a difficult -- it would be an

22    assessment, legal assessment, that would have to be made that

23    would have to be contextual.  You would have to know, well,

24    that's a call, "Would you like to have a donut or go out and

25    have a Coke."  Well, I don't know.  That may well be contraband.

20

 1    If it's contact with an underaged minor involved in this BDSM,

 2    it would be contraband.

 3         But Ms. Ginsberg wants to focus very sharply on some

 4    things that they want, family pictures and business records.  I

 5    don't know what else she said.  I've forgotten now.  What about

 6    that, Ms. Zanobini?

 7         MS. ZANOBINI:  Well, to be clear, Your Honor, it's

 8    unclear exactly to me what defense is asking for, as defense has

 9    stated to me that they want "all noncontraband personal and

10    business digital data, records, and photographs."  That is a

11    significant amount of data.

12         And regardless, the government is not required to do

13    that.  And two, even if -- regardless of whether or not we're

14    talking about giving them the device or making a copy, that is

15    still going to require the FBI to review the information, which

16    is going to take a significant amount of time, even if it's only

17    three devices.

18         And, Your Honor, it's my understanding, this protocol

19    is the same protocol that was used to make copies of evidence.

20    And when defense went to the FBI to make copies of evidence in

21    this case using a similar protocol, they also, when the FBI

22    reviewed the devices, found contraband on the devices.  And

23    that --

24         THE COURT:  I'm not sure I understand what you're

25    saying.

1          MS. ZANOBINI:  My point, Your Honor, is that it's not

2     as easy as saying simply saying, "I want these files, I'm going

3     to take these files."  The data is so intertwined that it is

4     difficult to make sure that you don't actually have contraband

5     in the copy that you're taking out of the FBI, which, in fact,

6     happened here when defense went to make copies of evidence in

7     the case.

8          THE COURT:  All right.  I understand now what you're

9     saying.  Are you familiar with this magistrate recommendation?

10         MS. ZANOBINI:  I believe that's -- I am not off the top

11    of my head.  But from what I recall - and I can take a look at

12    it - I think the magistrate judge in that case - and I can take

13    a look at it; this is the case cited in the reply - I think

14    talks about, on a motion for return of property too, that a

15    Rule 41(g) is also -- that under a Rule 41(g) motion, the court

16    can consider whether or not the ask from the defendant is

17    reasonable.

18         And here, I would state that the defense's request is

19    not reasonable --

20         THE COURT:  Wait a moment.  Was that a forfeiture

21    issue?

22         MS. ZANOBINI:  I'm sorry?

23         THE COURT:  Was the magistrate judge's recommendation a

24    forfeiture issue, or was he just deciding whether to return

25    something under Rule 41?  That's very different.

1           MS. ZANOBINI:  Yes, Your Honor, I believe that

2   recommendation was under a Rule 41(g) analysis, although I don't

3   recall all the circumstances off the top of my head.

4           But, Your Honor, you could --

5           THE COURT:  But, you know, return of merchandise under

6   41(g) doesn't involve, necessarily, forfeiture.

7           MS. ZANOBINI:  Well, I think, Your Honor, that I view

8   the issue in front of you whether or not this device is

9   forfeitable, and --

10          THE COURT:  I understand that.  I've just thrown you a

11  softball and you need to hit it, if it's true.  I'm not sure

12  it's true.  I'm going to give Ms. Ginsberg an opportunity to

13  tell me.

14          If the magistrate judge's decision dealt with Rule 41

15  and didn't involve forfeiture, that's distinguishable.  It's not

16  helpful.

17          MS. ZANOBINI:  Yes, Your Honor.

18          THE COURT:  Now, did it involve forfeiture or not?

19          MS. ZANOBINI:  I do not believe that it did, no.

20          MS. GINSBERG:  Judge, the case that I'm referring to

21  appears on page -- the reference to it -- and it is attached to

22  the pleading that is Document 643.  The case is

23  *United States vs. Michael Allen Reaid*, R-E-A-I-D.  It's a North

24  Dakota District Court case.  And it is --

25          THE COURT:  Well, it's not a decision.  You told me it

1    was the court's recommendation.

2         MS. GINSBERG:  We attached two cases, and I believe

3    this was -- it is an order of the District Court from the

4    Northern District of Florida ordering -- directing --

5         THE COURT:  Now we're in Florida, not North Dakota?

6         MS. GINSBERG:  This is the Rule 41 --

7         THE COURT:  Is that in your brief?

8         MS. GINSBERG:  Yes, it is, Your Honor.

9         THE COURT:  Let me take a recess and I'll look at it.

10        MS. GINSBERG:  But if I could just clarify, Your Honor.

11        THE COURT:  Yes, you can clarify after I look at it.

12   I'm going to do it myself.  That way I'll have confidence about

13   what is there.  We started out with North Dakota; now we're in

14   Florida.  But it's in your brief.

15        MS. GINSBERG:  Yes.  But you asked about the Rule 41

16   analysis, which is part of this Florida case, and it was in the

17   context of a forfeiture action.

18        THE COURT:  Was the North Dakota one forfeiture?

19        MS. GINSBERG:  Yes, it was, Your Honor.

20        THE COURT:  I will look.  Court stands in recess for

21   15 minutes.

22        (Recess taken at 3:04 p.m.)

23        THE COURT:  That was productive.  I'm going to tell you

24   briefly what I found and then I'm going to give you an

25   opportunity to argue.  I'll take the matter and consider it.

1          First, on the *Reid* case, if you look at the order, at

2    the end of the order, no result is reached.  And in the *Reid*

3    case there wasn't any forfeiture order at issue.  The time for

4    forfeiture had passed.  And so it's really not a case -- you

5    don't get to Rule 41 if there's forfeiture.  If there's

6    forfeiture, Rule 41 has no traction.  If you think otherwise,

7    you can -- if you do something very quickly, I'll decide it.

8          But then we go to -- as I said, the end of the order in

9    *Reid* concludes by saying:  "Defendant's motion remains under

10   advisement."  In other words, no decision is reached there.

11         As far as the *Conrad* case, the report and

12   recommendation, again, they're talking about an agreement that

13   the government entered into.  And there, there was no forfeiture

14   order.  Again, no forfeiture at all.  That's a Rule 41 return.

15         So what I'm going to do, in the interests of getting

16   the matter done, I'm going to look at it carefully.  But I do

17   want to have your views.  So I'm going to give you each five to

18   10 minutes to tell me anything further you want to tell me, and

19   I'll take it under advisement, think about it, and I'll issue a

20   decision.

21         All right.  You would have the burden on your motion

22   for forfeiture order, and the defendant would have the burden on

23   the motion that the defendant has filed.  So it doesn't really

24   matter.

25         Ms. Ginsberg, you may go first if you want to, or I'll

1    have Ms. Zanobini go first.

2              MS. GINSBERG:  Whatever Your Honor thinks.

3              THE COURT:  I don't think it makes any difference.  I

4    want to hear both of you fully, so even after both of you have

5    argued, I may say to each of you, do you have anything further,

6    having heard what the other lawyer has said.

7              Proceed.

8              MS. GINSBERG:  Your Honor, I think the fundamental

9    question, and the context in which, at least, we view this

10   issue, is whether the separate -- the information, this digital

11   information which is stored on these devices, is separate

12   property in which Mr. Sanders - or any defendant in his

13   position - has a separate property interest.

14             And we believe that the cases -- that there are a

15   number of cases, certainly in different contexts - in the

16   bankruptcy context, in the intellectual property context, and in

17   Rule 41 - that recognize that intellectual property is a

18   separate species of property, regardless of the device on which

19   it is temporarily or even permanently stored.

20             THE COURT:  You realize everything you've said has

21   nothing to do with forfeiture.

22             MS. GINSBERG:  Well, it does -- if the property is

23   separate property from the device on which it is stored, then it

24   is not forfeitable unless that separate property falls within

25   the parameters of the forfeiture statute.  Meaning that the

26

1   separate property, the material, the information in those files,

2   those digital files, is either contraband, or was part of a chat

3   that contained a contraband image, or was used -- or the

4   particular information in a file was used to facilitate the

5   criminal offense.

6          So if there's a chat that was used to lure a victim,

7   but that doesn't contain a visual depiction of child

8   pornography, we would agree that that chat, the text in that

9   chat, is still forfeitable.  But we would not agree that a

10  school record or Mr. Sanders' work records or family photographs

11  which were not shared with any of the victims, were not used in

12  any way to facilitate the crime, and which certainly don't, in

13  themselves, constitute child pornography or any other form of

14  contraband, that those would not be forfeitable.

15         And certainly if they were separate pieces of property,

16  and if they were stored in a box in a room in a house that had

17  been used to store drugs, they wouldn't have been forfeited.

18  But they happen to reside --

19         THE COURT:  You do understand that there are cases that

20  if you store drugs in a house, the house is forfeited?

21         MS. GINSBERG:  The house is forfeited, but the

22  furniture is not, necessarily.  And I've had numerous forfeiture

23  cases where the house was forfeited, but the furniture, the food

24  in the kitchen, the children's clothing, all of the removable

25  items, as long as it wasn't permanently affixed to the house,

27

1    those items were not forfeited.

2         The same with the *Hull* case -- well, the *Hull* case is a

3    different case.  But there's also a case which we cited in one

4    of our briefs that talks about the forfeiture of commingled

5    funds in a money-laundering case.  And that's

6    *United States vs. King.*  And that case held that, "The mere

7    pooling or commingling of tainted and untainted funds in an

8    account does not, without more, render the entire contents of

9    the account subject to forfeiture."  It's not the same, but it's

10   analogous.

11        And the court went on to say, "Once we distinguish the

12   money from its container, it also follows that the presence of

13   one illegal dollar in an account does not taint the rest, as if

14   the dollar obtained from fraud were like a drop of ink falling

15   into a glass of water."  So what we believe --

16        THE COURT:  What case did you just read from?

17        MS. GINSBERG:  It's *United States vs. King*,

18   231 F.Supp 3d. 872, the Western District of Oklahoma 2017.

19        And the other case which the government has relied on

20   and the Court has referred to at some length, the *Wernick* case,

21   the Second Circuit case, the *Wernick* case, it's the

22   District Court case which entered the forfeiture order and then

23   the Second Circuit appeal of that case.  And the District Court

24   case said that this was all indistinguishable and that the

25   entire device was forfeitable.  The Second Circuit said the

1    District Court did not abuse its discretion in forfeiting the

2    entire device, but the court specifically said:  "We do not

3    decide whether defendants in some cases may retain interest in

4    data unconnected to criminal activity that is stored on the hard

5    drive, that is forfeitable because it was used to commit or to

6    promote the commission of a child pornography offense."

7              And the court upheld the District Court's decision,

8    finding that it was not an abuse of discretion, because, in the

9    District Court, the defendant did not distinguish in any way

10   which information it wanted to -- it essentially said what the

11   government is saying here:  They want everything, and they're

12   not identifying anything, and it's impossible to figure out what

13   they're asking for and it's impossible to calculate the amount

14   of time and expense it would take to retrieve that information.

15             So the Second Circuit said:  In this instance, where

16   the defendant does not specify the information he's requesting,

17   and was, in fact, asking, among other things, for the metadata

18   for everything on -- for all the information on the device, in

19   that case the District Court did not abuse its discretion in

20   forfeiting not only the device or devices themselves, but all of

21   the contents.  But specifically reserved the question of whether

22   the defendant had a separate interest in the --

23             THE COURT:  Didn't the Second Circuit also say, in

24   denying the request, that property that is traceable to an

25   offense is still forfeitable, even if commingled with legitimate

1    property?

2              MS. GINSBERG:  It did say that.

3              THE COURT:  I know it did.  I quoted it.

4              MS. GINSBERG:  But the question is, what is commingled?

5    And what does that mean, when the court also says that there are

6    instances, or there may be instances, where the defendant may

7    retain an interest in data that is unconnected to the criminal

8    activity that's stored on the device?  Which is exactly the data

9    that we're asking for here.

10             THE COURT:  All right.

11             MS. GINSBERG:  So there is this *Noyes* case that is the

12   only Court of Appeals case that appears to have fully considered

13   this issue, and I would say -- actually, saying "fully

14   considered" is not -- I'm shooting myself in the foot when I say

15   that.  It was a case that was brought by a *pro se* defendant who

16   did not raise the issue of whether the information contained on

17   the computer was separate property which could be -- in which he

18   could have a separate interest, which could be returned to him

19   if it was not contraband.

20             It was not litigated the way lawyers would litigate it.

21   It was a *pro se* case.  The court did make the ruling it made on

22   what was probably a less developed record than what we have in

23   this case.  It is what it is.  But it was also a case where the

24   defendant had previously agreed to what essentially here would

25   be the preliminary order of forfeiture.

1           Mr. Sanders is disputing that.  He doesn't agree that

2     it's all forfeitable.  And this was a defendant, in *Noyes*, who

3     was coming back and saying, yeah, you know, I essentially

4     changed my mind.  And that is the context in which that case

5     occurred.

6           THE COURT:  All right.

7           MS. GINSBERG:  One other thing I would say, and I think

8     courts recognize this, certainly not in every case where there's

9     a search warrant for a computer, but there are many cases - I'm

10    sure Your Honor has had many - where the government seeks a

11    search warrant for a cell phone or a computer --

12          THE COURT:  Yes, but that's very different.  This is a

13    conviction with a forfeiture that I'm deciding.  It's not a

14    return of property.  It's not a Rule 41 where, look, you took

15    this stuff in your search warrant but I want it back under

16    Rule 41.  It's not the same thing.

17          MS. GINSBERG:  It isn't the same thing.  But Rule 41

18    does itself recognize that the information -- even though it is

19    a different context -- as Your Honor is correctly pointing out,

20    it is a different context, but Rule 41 does recognize that there

21    is a difference between the device itself and the information

22    that's stored on it.

23          THE COURT:  All right.

24          MS. GINSBERG:  Thank you.

25          THE COURT:  Ms. Zanobini?

1          MS. ZANOBINI:  Your Honor, the issue before the Court

2     is whether or not the criminal statute governing forfeiture in

3     child pornography cases, 18 United States Code

4     Section 2253(a)(1) and (a)(3), requires the forfeiture of the

5     electronic devices in their entirety.  And based on a reading of

6     the statute and the case law, the answer to that question is

7     yes.

8          THE COURT:  Even if there's noncontraband on there?

9          MS. ZANOBINI:  Correct.

10         THE COURT:  All right.  Go on.  Why?

11         MS. ZANOBINI:  Because the statute states that you

12    are -- the statute permits you to forfeit the device in its

13    entirety.

14         And, Your Honor, in terms of a Rule --

15         THE COURT:  Of course the defendant could easily avoid

16    anything like that by putting it on a nonforfeitable device.

17         MS. ZANOBINI:  Correct, Your Honor.  Actually, that was

18    one of the other points I was going to make.  I was going to

19    first state that under a Rule 41(g) motion, that can be denied

20    if the devices are forfeitable.  The devices here are

21    forfeitable in their entirety.

22         Forfeiture is the correct context to look at the issue

23    in front of the Court.  And, as Your Honor stated, if every

24    defendant in a CP case could force law enforcement agencies to

25    engage in separating these files, it would be an enormous strain

1    on the government resources, especially when it was the

2    defendant who chose to store contraband on the same media along

3    with the noncontraband data, something he could have avoided had

4    he not commingled the data in the first place.

5         So, in conclusion, as these devices contain child

6    pornography, they are subject to forfeiture pursuant to

7    2253(a)(1) and (3).  The government requests that the Court

8    enter a preliminary order of forfeiture forfeiting the

9    electronic devices sought by the government.  As the devices are

10   forfeitable in their entirety, the Court should deny the

11   defendant's motion for return of property.

12        THE COURT:  Having heard that, Ms. Ginsberg, do you

13   have anything else you want to tell me?

14        MS. GINSBERG:  Your Honor, we don't dispute that the

15   Court has the authority to forfeit these devices in their

16   entirety.  And we are not asking the government -- the Court not

17   to forfeit them and not to -- if they choose to destroy the data

18   at some future point, that's their decision.

19        What we're asking the Court to do is permit a very

20   limited amount of information to be copied from those devices

21   and returned to Mr. Sanders' family.

22        THE COURT:  All right.  Thank you.

23        MS. GINSBERG:  It's separate property, separate from

24   the devices.

25        THE COURT:  Thank you.  All right.  I'll take the

33

1    matter under advisement.  It may take me a week or so, but I

2    will get to the bottom of it and issue a decision on this.

3           Now, Mr. Sanders was taken to Butner.  He shouldn't

4    have been.  And I had him returned.  Are you standing for some

5    reason?

6           MS. GINSBERG:  No, Your Honor.

7           THE COURT:  All right.  Thank you.  He was taken to

8    Butner and he shouldn't have been.  He should have been kept

9    here, because he has a right to be at this hearing, which was

10   scheduled two weeks ago.  So a mistake was made, and through the

11   efforts of the marshals - heroic efforts, I may say - he's back

12   here.

13          I don't see any reason to keep him here, now that I've

14   had this hearing.  I have to decide this matter, issue my

15   decision, but -- and it's regrettable that the government didn't

16   issue a writ to keep him here, knowing that the hearing was

17   coming up and the defendant has a right to be present at a

18   forfeiture hearing.  But it didn't happen.  I'll let the

19   U.S. Attorney's Office and the U.S. Marshals Office quarrel over

20   whose budget gets charged for this extra trip.

21          But what I want to be clear about, does the government

22   see any reason why he should be kept here?  And then I'll ask

23   you the same question.

24          MS. ZANOBINI:  No, Your Honor.

25          THE COURT:  Seems to me that the Bureau of Prisons now

 1    can do what they typically do.

 2            Ms. Ginsberg, what's your view?

 3            MS. GINSBERG:  Your Honor, we agree.  We would ask

 4    that -- I don't know how the marshals schedule these trips, but

 5    we would ask that Mr. Sanders be returned to Butner as directly

 6    as possible, and as quickly as possible.  In fact, he was

 7    transferred from Alexandria to the Northern Neck, and then taken

 8    to Butner, and then brought back to the Northern Neck and here.

 9            THE COURT:  Well, the reason for that, Ms. Ginsberg --

10    let me explain.  It's the folks at Northern Neck who do the

11    driving under contract from the marshals, I believe.

12            Do I have that right?

13            DEPUTY MARSHAL:  Yes, Your Honor.

14            THE COURT:  That's the reason it went that way.

15            MS. GINSBERG:  Well, I understand that they are going

16    to do what they did.  Mr. Sanders did have two days where he was

17    not -- while he was at the Northern Neck, did not receive any

18    medication, he did not have food that he could eat.  There was a

19    day or two that he did not eat.  They don't seem --

20            THE COURT:  That's definitely not appropriate, and we

21    need to take steps to repair that.

22            So what you're saying is, you don't have -- there's no

23    way that you have any basis for objecting, but you want to make

24    clear that it ought to be done expeditiously so that he gets the

25    medical and other care that he needs at Butner.  And, by the

1    way, Butner is a good facility for that.

2         MS. GINSBERG:  Yes.  And apparently they handled his

3    intake in a very expeditious and effective manner.

4         THE COURT:  Yes.  And they're a good medical facility,

5    too, to deal with his problems, whatever they may be.

6         MS. GINSBERG:  But he was -- while he was at the

7    Northern Neck as opposed to Alexandria, he was not given the

8    type of food he can digest, and he was two days without any

9    medication at all.

10        THE COURT:  Let me ask the marshals, you still use

11   drivers from Northern Neck, don't you?

12        DEPUTY MARSHAL:  We do, Your Honor.

13        THE COURT:  Well, can we arrange to be sure that when

14   those drivers come here to pick up Mr. Sanders, they go from

15   here to Butner, and not by way of Northern Neck?

16        DEPUTY MARSHAL:  I would have to check with my

17   supervisor and see what the actual itinerary was and the

18   timeline to get him back to Butner.  I'm unsure of what that

19   actual schedule is.

20        THE COURT:  Well, I'll tell you, I can enter an order

21   that says he goes from here to Butner directly.

22        DEPUTY MARSHAL:  Yes, sir.

23        THE COURT:  I don't want to go to that trouble, and I'm

24   not going to get involved in the arrangements the marshals have

25   with Northern Neck to do the driving.  I know that the marshals

```
 1    are pressed, and you have a lot of other duties, and I'm aware
 2    that you can't be in two places at one time.
 3              Would it be useful if I entered that order?  Would that
 4    be helpful to you?
 5              DEPUTY MARSHAL:  It would expedite everything, yes,
 6    Your Honor.
 7              THE COURT:  All right.  I will enter an order saying
 8    that he's to be returned to Butner promptly, but directly, not
 9    by way of Northern Neck or anywhere else.
10              DEPUTY MARSHAL:  I understand, Your Honor.
11              THE COURT:  I will do that now, before I leave.
12              Anything else today on behalf of the government?
13              MS. ZANOBINI:  No, Your Honor.
14              THE COURT:  On behalf of the defendant, Ms. Ginsberg?
15              MS. GINSBERG:  No, Your Honor.  Thank you.
16              THE COURT:  All right.  Court stands in recess.
17              (OFF THE RECORD.)
18              THE COURT:  I hope he fairs well and gets medical
19    treatment.  Of course, Ms. Ginsberg can watch for that.
20              MS. GINSBERG:  We will, Your Honor.  Thank you for your
21    concern.
22              THE COURT:  You started out with a good lawyer.  You
23    might as well keep that.
24              THE DEFENDANT:  She wasn't the first, but --
25              THE COURT:  She should have been the only one.
```

1          THE DEFENDANT:  -- she was the better of the group.

2          THE COURT:  Court stands in recess.

3          (Off the record at 3:44 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16          **CERTIFICATE OF OFFICIAL COURT REPORTER**

17

18          **I, Rebecca Stonestreet, certify that the foregoing is a**

19    **correct transcript from the record of proceedings in the**

20    **above-entitled matter.**

21

22

23

24    **___//Rebecca Stonestreet//___          _____**

25    **SIGNATURE OF COURT REPORTER                    DATE**

## /

**//Rebecca** [1] - 37:24

## 1

**1** [1] - 1:23
**10** [1] - 24:18
**1101** [1] - 1:16
**12** [1] - 3:6
**15** [1] - 23:21
**18** [1] - 31:3
**1:20-CR-00143-TSE** [1] - 1:4
**1B** [2] - 3:16
**1B19** [9] - 4:1, 4:5, 4:8, 4:21, 5:23, 6:6, 9:2, 11:12
**1B2** [7] - 3:22, 4:7, 4:17, 5:23, 6:5, 9:2, 11:12
**1B22** [5] - 3:22, 4:1, 4:8, 4:24, 9:2
**1B24** [6] - 9:3, 9:5, 9:11, 9:18, 10:7, 10:10
**1B27** [7] - 3:22, 4:9, 5:2, 5:23, 6:6, 9:3, 11:12
**1B3** [2] - 4:17, 9:2
**1B5** [2] - 4:17, 9:2
**1B6** [1] - 9:2

## 2

**2** [1] - 9:11
**2017** [1] - 27:18
**2020** [1] - 3:6
**2022** [1] - 1:6
**2100** [1] - 1:13
**22314** [3] - 1:14, 1:17, 1:21
**2252** [1] - 17:4
**2253** [3] - 16:25, 17:2, 19:11
**2253(a** [1] - 18:3
**2253(a)(1** [2] - 31:4, 32:7
**22nd** [1] - 10:6
**231** [1] - 27:18
**240** [1] - 1:21
**29** [1] - 1:6
**299-3700** [1] - 1:14

## 3

**3)** [1] - 32:7
**3:04** [1] - 23:22
**3:30** [1] - 1:6
**3:44** [1] - 37:3
**3d** [1] - 27:18

## 4

**401** [1] - 1:20
**41** [12] - 21:25, 22:14, 23:6, 23:15, 24:5, 24:6, 24:14, 25:17, 30:14, 30:16, 30:17, 30:20
**41(g** [5] - 21:15, 22:2, 22:6, 31:19
**426-7767** [1] - 1:21
**4S** [1] - 10:9

## 6

**610** [1] - 1:17
**643** [1] - 22:22
**684-4333** [1] - 1:18

## 7

**703** [2] - 1:14, 1:18

## 8

**872** [1] - 27:18

## 9

**9th** [1] - 1:20

## A

**a)(3** [1] - 31:4
**ability** [1] - 15:19
**above-entitled** [1] - 37:20
**abuse** [3] - 28:1, 28:8, 28:19
**access** [1] - 14:14
**accompanied** [1] - 13:17
**accompany** [2] - 12:12, 13:24
**account** [3] - 27:8, 27:9, 27:13
**accurately** [1] - 8:16
**action** [1] - 23:17
**activity** [3] - 18:10, 28:4, 29:8
**actual** [5] - 8:23, 14:23, 17:1, 35:17, 35:19
**additional** [2] - 15:5, 18:7
**address** [2] - 16:4, 16:5
**addressing** [1] - 16:12
**admitted** [3] - 4:13, 10:19, 10:22
**advisement** [3] - 24:10, 24:19, 33:1
**affidavit** [3] - 9:10,

9:11, 10:18
**affirmed** [1] - 18:5
**affixed** [1] - 26:25
**afford** [2] - 15:8, 15:12
**afternoon** [3] - 2:5, 2:6, 2:9
**agencies** [1] - 31:24
**Agent** [9] - 4:16, 4:20, 4:23, 5:1, 5:5, 5:11, 5:15, 8:25, 9:10
**agent** [5] - 5:15, 10:17, 13:14, 15:4, 15:7
**agent's** [2] - 10:6, 10:12
**agents** [2] - 3:5, 16:12
**ago** [1] - 33:10
**agree** [5] - 8:11, 26:8, 26:9, 30:1, 34:3
**agreed** [3] - 18:17, 19:1, 29:24
**agreement** [1] - 24:12
**Alexandria** [6] - 1:2, 1:14, 1:17, 1:21, 34:7, 35:7
**Allen** [1] - 22:23
**allow** [1] - 14:10
**allowed** [1] - 12:12
**altering** [2] - 11:21, 12:2
**alternative** [1] - 18:20
**amended** [1] - 8:2
**AMERICA** [1] - 1:3
**amount** [5] - 19:12, 20:11, 20:16, 28:13, 32:20
**analogous** [1] - 27:10
**analysis** [2] - 22:2, 23:16
**analyst** [1] - 13:15
**Annie** [1] - 2:10
**ANNIE** [1] - 1:12
**answer** [2] - 9:17, 31:6
**anyway** [1] - 6:5
**appeal** [2] - 18:5, 27:23
**Appeals** [1] - 29:12
**APPEARANCES** [1] - 1:11
**Appendix** [1] - 7:9
**Apple** [3] - 9:7, 9:12
**apply** [1] - 6:19
**appropriate** [2] - 15:6, 34:20
**approve** [1] - 12:23
**April** [2] - 1:6, 10:6
**argue** [4] - 2:12, 2:14, 11:14, 23:25
**argued** [2] - 8:1, 25:5

**argues** [1] - 7:19
**argument** [11] - 4:12, 6:6, 6:9, 15:25, 16:5, 16:6, 16:10, 16:11, 17:22, 18:20, 18:23
**arrange** [1] - 35:13
**arrangements** [1] - 35:24
**articulate** [1] - 16:22
**assessment** [2] - 19:22
**asset** [1] - 17:23
**assisted** [1] - 12:20
**attach** [1] - 12:25
**attached** [2] - 22:21, 23:2
**ATTORNEY'S** [1] - 1:13
**Attorney's** [1] - 33:19
**authority** [1] - 32:15
**available** [1] - 14:16
**Avenue** [1] - 1:13
**avoid** [1] - 31:15
**avoided** [1] - 32:3
**aware** [2] - 6:16, 36:1

## B

**bankruptcy** [1] - 25:16
**based** [2] - 19:11, 31:5
**basis** [2] - 6:9, 34:23
**BDSM** [1] - 20:1
**bear** [1] - 5:13
**BEFORE** [1] - 1:9
**begin** [1] - 8:14
**begins** [1] - 16:6
**behalf** [4] - 2:7, 2:10, 36:12, 36:14
**better** [1] - 37:1
**between** [1] - 30:21
**bless** [1] - 12:23
**book** [1] - 17:4
**bottom** [1] - 33:2
**box** [1] - 26:16
**brief** [4] - 13:4, 13:5, 23:7, 23:14
**briefly** [2] - 16:13, 23:24
**briefs** [2] - 16:1, 27:4
**broad** [1] - 6:19
**brought** [2] - 29:15, 34:8
**budget** [1] - 33:20
**bulk** [1] - 15:3
**burden** [4] - 5:12, 19:5, 24:21, 24:22
**Bureau** [1] - 33:25
**business** [5] - 3:11, 6:13, 16:15, 20:4, 20:10

**Butner** [10] - 33:3, 33:8, 34:5, 34:8, 34:25, 35:1, 35:15, 35:18, 35:21, 36:8

## C

**calculate** [1] - 28:13
**care** [1] - 34:25
**carefully** [2] - 2:18, 24:16
**Case** [1] - 1:3
**case** [51] - 6:4, 6:23, 6:24, 7:9, 7:18, 8:5, 8:17, 13:8, 15:13, 15:21, 16:25, 17:10, 17:11, 17:10, 20:21, 21:7, 21:12, 21:13, 22:20, 22:22, 22:24, 23:16, 24:1, 24:3, 24:4, 24:11, 27:2, 27:3, 27:5, 27:6, 27:16, 27:19, 27:20, 27:21, 27:22, 27:23, 27:24, 28:19, 29:11, 29:12, 29:15, 29:21, 29:23, 30:4, 30:8, 31:6, 31:24
**cases** [9] - 7:17, 23:2, 25:14, 25:15, 26:19, 26:23, 28:3, 30:9, 31:3
**cell** [1] - 30:11
**certain** [4] - 3:8, 3:10, 17:14, 19:18
**certainly** [5] - 15:13, 25:15, 26:12, 26:15, 30:8
**CERTIFICATE** [1] - 37:16
**certify** [1] - 37:18
**changed** [1] - 30:4
**charged** [1] - 33:20
**chat** [6] - 4:22, 4:25, 26:2, 26:6, 26:8, 26:9
**chats** [1] - 18:10
**check** [1] - 35:16
**child** [21] - 2:21, 3:2, 3:5, 3:12, 3:23, 4:14, 4:18, 4:22, 5:1, 5:3, 5:10, 5:23, 6:1, 6:11, 17:13, 17:16, 26:7, 26:13, 28:6, 31:3, 32:5
**children's** [1] - 26:24
**choose** [1] - 32:17
**chose** [1] - 32:2
**Christopher** [1] - 4:16
**Circuit** [21] - 6:17, 6:23, 6:24, 7:2, 7:7,

7:9, 7:10, 7:12, 7:19,
8:6, 8:11, 8:13,
17:16, 18:5, 18:12,
27:21, 27:23, 27:25,
28:15, 28:23
**Circuits** [1] - 8:12
**circumstances** [2] -
18:15, 22:3
**cited** [3] - 18:12,
21:13, 27:3
**cites** [3] - 6:22, 7:18,
17:12
**claim** [1] - 9:13
**claims** [1] - 4:13
**clarified** [1] - 12:9
**clarify** [5] - 10:4, 10:6,
10:14, 23:10, 23:11
**cleanly** [1] - 16:14
**clear** [6] - 12:5, 17:7,
17:9, 20:7, 33:21,
34:24
**clothing** [1] - 26:24
**Code** [1] - 31:3
**Coke** [1] - 19:25
**coming** [2] - 30:3,
33:17
**commingled** [5] -
7:13, 27:4, 28:25,
29:4, 32:4
**commingling** [1] -
27:7
**commission** [3] -
4:15, 6:2, 28:6
**commit** [2] - 17:24,
28:5
**company** [1] - 12:19
**compensate** [1] -
15:14
**computer** [4] - 17:19,
29:17, 30:9, 30:11
**COMPUTERIZED** [1] -
1:25
**computers** [2] - 12:1,
17:15
**concedes** [1] - 3:8
**concern** [3] - 18:6,
18:7, 36:21
**concerning** [1] - 18:10
**concerns** [1] - 18:11
**conclude** [1] - 7:14
**concludes** [1] - 24:9
**conclusion** [4] - 7:8,
16:23, 17:21, 32:5
**confidence** [1] - 23:12
**confidently** [1] - 7:14
**confirm** [1] - 12:22
**confronted** [1] - 19:9
**confusion** [1] - 8:21
**Conrad** [1] - 24:11
**consider** [3] - 5:5,

21:16, 23:25
**considered** [3] - 8:4,
29:12, 29:14
**constitute** [1] - 26:13
**construed** [1] - 6:19
**contact** [2] - 18:9,
20:1
**contain** [6] - 3:4, 4:14,
10:14, 14:9, 26:7,
32:5
**contained** [5] - 3:10,
4:18, 17:15, 26:3,
29:16
**container** [1] - 27:12
**contains** [3] - 10:1,
10:18, 17:5
**contend** [1] - 9:18
**contends** [3] - 3:12,
3:23, 6:18
**contents** [3] - 3:14,
27:8, 28:21
**contest** [1] - 5:21
**context** [8] - 23:17,
25:9, 25:16, 30:4,
30:19, 30:20, 31:22
**contexts** [1] - 25:15
**contextual** [1] - 19:23
**continue** [1] - 4:11
**contraband** [26] -
5:14, 5:25, 6:11,
8:10, 9:20, 10:2,
10:15, 10:18, 11:8,
11:14, 13:15, 14:9,
16:20, 18:1, 18:19,
19:3, 19:14, 19:25,
20:2, 20:22, 21:4,
26:2, 26:3, 26:14,
29:19, 32:2
**contract** [1] - 34:11
**contrary** [1] - 10:19
**convicted** [4] - 4:15,
6:2, 17:3, 17:13
**conviction** [3] - 7:16,
18:9, 30:13
**copied** [2] - 14:7,
32:20
**copies** [10] - 3:14,
12:6, 12:11, 12:14,
12:15, 14:10, 14:24,
20:19, 20:20, 21:6
**copy** [3] - 14:4, 20:14,
21:5
**core** [2] - 9:23
**correct** [15] - 2:16,
2:20, 4:7, 9:4, 10:7,
10:11, 11:2, 11:10,
16:9, 16:21, 19:17,
31:9, 31:17, 31:22,
37:19
**correctly** [1] - 30:19

**cost** [1] - 18:20
**course** [5] - 6:18, 8:8,
15:11, 31:15, 36:19
**COURT** [98] - 1:1,
1:19, 2:2, 2:7, 2:12,
2:14, 2:17, 3:21, 4:2,
4:6, 4:10, 8:22, 9:2,
9:13, 9:17, 9:22,
10:3, 10:10, 10:16,
10:21, 11:3, 11:6,
11:10, 11:22, 11:25,
12:8, 12:17, 12:22,
13:2, 13:4, 13:20,
13:22, 14:13, 14:17,
14:25, 15:8, 15:11,
15:20, 15:23, 15:25,
16:5, 16:10, 16:20,
16:22, 19:15, 19:18,
20:24, 21:8, 21:20,
21:23, 22:5, 22:10,
22:18, 22:25, 23:5,
23:7, 23:9, 23:11,
23:18, 23:20, 23:23,
25:3, 25:20, 26:19,
27:16, 28:23, 29:3,
29:10, 30:6, 30:12,
30:23, 30:25, 31:8,
31:10, 31:15, 32:12,
32:22, 32:25, 33:7,
33:25, 34:9, 34:14,
34:20, 35:4, 35:10,
35:13, 35:20, 35:23,
36:7, 36:11, 36:14,
36:16, 36:18, 36:22,
36:25, 37:2, 37:16,
37:25
**Court** [26] - 1:20, 2:22,
8:17, 9:24, 9:25,
12:5, 15:5, 17:22,
19:8, 22:24, 23:3,
27:20, 27:22, 27:23,
28:1, 28:9, 28:19,
29:12, 31:1, 31:23,
32:7, 32:10, 32:15,
32:16, 32:19
**court** [21] - 7:4, 7:19,
7:22, 8:4, 8:6, 13:8,
17:20, 18:13, 18:14,
18:15, 18:22, 18:23,
21:15, 23:20, 27:11,
28:2, 28:7, 29:5,
29:21, 36:16, 37:2
**court's** [1] - 23:1
**Court's** [2] - 7:24, 28:7
**Courthouse** [1] - 1:20
**courtroom** [1] - 2:4
**courts** [2] - 19:9, 30:8
**cover** [2] - 7:24, 8:2
**CP** [1] - 31:24
**crime** [2] - 17:24,

26:12
**crimes** [2] - 4:16,
18:10
**Criminal** [1] - 1:3
**criminal** [5] - 18:10,
26:5, 28:4, 29:7,
31:2
**CRR** [1] - 1:19
**custody** [1] - 2:4

**D**

**Dakota** [1] - 13:7,
22:24, 23:5, 23:13,
23:18
**data** [21] - 7:15, 13:18,
16:18, 17:23, 18:1,
18:7, 18:8, 18:18,
18:19, 18:25, 19:13,
20:10, 20:11, 21:3,
28:4, 29:7, 29:8,
32:3, 32:4, 32:17
**DATE** [1] - 37:25
**days** [5] - 14:21,
15:17, 34:16, 35:8
**deal** [1] - 35:5
**dealt** [1] - 22:14
**decide** [3] - 24:7, 28:3,
33:14
**decided** [1] - 6:24
**deciding** [2] - 21:24,
30:13
**decision** [10] - 6:17,
13:3, 22:14, 22:25,
24:10, 24:20, 28:7,
32:18, 33:2, 33:15
**decisions** [1] - 12:23
**declaration** [5] - 5:6,
5:11, 5:18, 10:7,
10:18
**declarations** [3] -
9:16, 9:19, 10:12
**defendant** [30] - 2:15,
3:5, 3:8, 3:9, 3:12,
5:17, 5:21, 5:22,
6:10, 7:18, 8:8,
11:16, 15:8, 17:12,
21:16, 24:22, 24:23,
25:12, 28:9, 28:16,
28:22, 29:6, 29:15,
29:24, 30:2, 31:15,
31:24, 32:2, 33:17,
36:14
**Defendant** [1] - 1:7
**DEFENDANT** [4] -
1:15, 2:6, 36:24,
37:1
**defendant's** [7] - 2:24,
3:7, 6:25, 17:22,
18:2, 24:9, 32:11
**defendants** [4] - 7:3,

15:12, 17:3, 28:3
**defense** [8] - 10:6,
10:13, 18:12, 19:14,
20:8, 20:20, 21:6
**defense's** [1] - 21:18
**definitely** [1] - 34:20
**denied** [3] - 7:2, 7:10,
31:19
**deny** [1] - 32:10
**denying** [1] - 28:24
**depiction** [4] - 17:3,
17:6, 17:8, 26:7
**depictions** [1] - 3:4
**DEPUTY** [6] - 34:13,
35:12, 35:16, 35:22,
36:5, 36:10
**described** [2] - 8:17,
17:4
**designed** [1] - 14:1
**destroy** [1] - 32:17
**Deubler** [2] - 13:23,
14:20
**developed** [1] - 29:22
**device** [32] - 4:4, 4:21,
4:24, 5:3, 7:11, 8:9,
8:10, 10:14, 11:8,
11:13, 11:20, 11:21,
11:24, 12:3, 16:8,
16:19, 19:4, 19:10,
20:14, 22:8, 25:18,
25:23, 27:25, 28:2,
28:18, 28:20, 29:8,
30:21, 31:12, 31:16
**device's** [1] - 11:19
**devices** [48] - 3:1, 3:4,
3:8, 3:11, 3:14, 3:15,
4:14, 4:17, 5:8, 5:9,
5:13, 5:17, 5:21,
6:10, 6:20, 7:1, 8:3,
8:23, 9:13, 11:18,
12:11, 12:13, 13:14,
13:19, 14:16, 14:22,
14:23, 14:24, 16:14,
16:17, 19:12, 19:13,
19:15, 20:17, 20:22,
25:11, 28:20, 31:5,
31:20, 32:5, 32:9,
32:15, 32:20, 32:24
**dicta** [1] - 8:11
**difference** [2] - 25:3,
30:21
**different** [7] - 18:16,
21:25, 25:15, 27:3,
30:12, 30:19, 30:20
**difficult** [2] - 19:21,
21:4
**difficulty** [3] - 18:6,
18:20, 18:24
**digest** [1] - 35:8
**digital** [7] - 11:18,

11:19, 14:7, 15:4, 20:10, 25:10, 26:2
**DiMURO** [1] - 1:16
**directing** [2] - 3:13, 23:4
**directly** [5] - 7:18, 18:14, 34:5, 35:21, 36:8
**disclosed** [1] - 5:9
**discovered** [1] - 5:8
**discovery** [1] - 12:20
**discretion** [3] - 28:1, 28:8, 28:19
**disentangling** [1] - 18:6
**dispute** [1] - 32:14
**disputing** [1] - 30:1
**distinct** [1] - 17:23
**distinguish** [2] - 27:11, 28:9
**distinguishable** [2] - 7:23, 22:15
**DISTRICT** [3] - 1:1, 1:1, 1:9
**District** [15] - 1:20, 7:24, 17:20, 17:22, 19:8, 22:24, 23:3, 23:4, 27:18, 27:22, 27:23, 28:1, 28:7, 28:9, 28:19
**Division** [1] - 1:2
**document** [1] - 5:16
**Document** [1] - 22:22
**documents** [1] - 13:25
**dog** [1] - 17:25
**dollar** [2] - 27:13, 27:14
**done** [2] - 24:16, 34:24
**donut** [1] - 19:24
**doubt** [1] - 15:20
**down** [1] - 5:20
**drive** [2] - 14:4, 28:5
**drivers** [2] - 35:11, 35:14
**driving** [2] - 34:11, 35:25
**drop** [1] - 27:14
**drugs** [2] - 26:17, 26:20
**during** [1] - 12:20
**duties** [1] - 36:1

---

### E

**easily** [1] - 31:15
**Eastern** [1] - 17:20
**EASTERN** [1] - 1:1
**easy** [1] - 21:2
**eat** [2] - 34:18, 34:19

---

**Eckert** [1] - 5:7
**Eckert's** [3] - 5:5, 9:1, 9:10
**effective** [1] - 35:3
**effort** [1] - 18:2
**efforts** [2] - 33:11
**eight** [1] - 15:23
**either** [3] - 9:25, 14:4, 26:2
**elaborated** [1] - 5:12
**electronic** [9] - 3:3, 3:8, 7:1, 7:11, 8:2, 8:9, 19:13, 31:5, 32:9
**ELLIS** [2] - 1:6, 1:9
**email** [2] - 10:5, 10:13
**encompasses** [1] - 6:1
**end** [2] - 24:2, 24:8
**enforcement** [1] - 31:24
**engage** [1] - 31:25
**enormous** [1] - 31:25
**enter** [3] - 32:8, 35:20, 36:7
**entered** [3] - 24:13, 27:22, 36:3
**entire** [4] - 19:4, 27:8, 27:25, 28:2
**entirety** [7] - 16:18, 19:3, 31:5, 31:13, 31:21, 32:10, 32:16
**entitled** [1] - 37:20
**especially** [1] - 32:1
**ESQ** [1] - 1:15
**essence** [1] - 2:25
**essential** [1] - 6:6
**essentially** [6] - 7:23, 11:17, 12:7, 28:10, 29:24, 30:3
**established** [1] - 4:14
**events** [1] - 14:2
**evidence** [8] - 4:14, 10:19, 11:7, 18:24, 19:5, 20:19, 20:20, 21:6
**exactly** [2] - 20:8, 29:8
**examination** [1] - 5:8
**examine** [1] - 15:4
**examined** [4] - 4:17, 4:20, 4:24, 5:2
**examiner** [8] - 12:12, 12:18, 12:19, 13:17, 13:24, 14:7, 15:4, 15:15
**exclusive** [1] - 14:14
**executed** [1] - 3:6
**exhibit** [5] - 3:17, 3:19, 10:19, 10:24, 11:4

---

**expedite** [1] - 36:5
**expeditious** [1] - 35:3
**expeditiously** [1] - 34:24
**expense** [3] - 15:2, 15:5, 28:14
**expert** [1] - 12:1
**explain** [1] - 34:10
**explained** [2] - 5:7, 7:4
**explicitly** [1] - 7:24
**expressed** [1] - 18:6
**extra** [1] - 33:20
**extract** [1] - 5:17

---

### F

**F.Supp** [1] - 27:18
**facilitate** [4] - 7:15, 18:8, 26:4, 26:12
**facility** [3] - 14:16, 35:1, 35:4
**facing** [3] - 18:15, 18:16, 19:8
**fact** [6] - 5:20, 10:8, 15:18, 21:5, 28:17, 34:6
**fairly** [1] - 19:19
**fairs** [1] - 36:18
**falling** [1] - 27:14
**falls** [1] - 25:24
**familiar** [2] - 13:18, 21:9
**family** [11] - 6:12, 12:16, 14:2, 15:10, 15:19, 16:15, 17:24, 20:4, 26:10, 32:21
**far** [4] - 6:16, 10:20, 16:1, 24:11
**FBI** [11] - 3:5, 4:3, 5:15, 10:24, 14:15, 14:17, 15:14, 20:15, 20:20, 20:21, 21:5
**FBI's** [1] - 3:20
**February** [1] - 3:6
**Federal** [1] - 7:9
**few** [1] - 15:22
**figure** [1] - 28:12
**file** [5] - 5:16, 11:19, 14:5, 26:4
**filed** [2] - 13:6, 24:23
**files** [23] - 3:10, 5:13, 5:14, 6:2, 7:1, 7:11, 7:25, 8:2, 8:9, 8:10, 12:14, 14:3, 14:6, 14:8, 17:15, 18:21, 19:2, 19:6, 21:2, 21:3, 26:1, 26:2, 31:25
**film** [1] - 17:5

---

**first** [8] - 13:10, 16:6, 24:1, 24:25, 25:1, 31:19, 32:4, 36:24
**five** [1] - 24:17
**Floor** [1] - 1:20
**Florida** [4] - 23:4, 23:5, 23:14, 23:16
**focus** [1] - 20:3
**focused** [1] - 11:11
**focusing** [1] - 6:5
**folks** [1] - 34:10
**follows** [1] - 27:12
**food** [3] - 26:23, 34:18, 35:8
**foot** [1] - 29:14
**FOR** [3] - 1:1, 1:12, 1:15
**force** [1] - 31:24
**Ford** [4] - 4:16, 4:20, 4:23, 5:1
**foregoing** [1] - 37:18
**forensic** [8] - 5:8, 12:12, 12:18, 12:19, 13:15, 13:17, 13:24, 14:24
**forfeit** [7] - 7:3, 8:24, 9:25, 17:4, 31:12, 32:15, 32:17
**forfeitable** [14] - 7:13, 16:17, 17:8, 22:9, 25:24, 26:9, 26:14, 27:25, 28:5, 28:25, 30:2, 31:20, 31:21, 32:10
**forfeited** [12] - 5:22, 6:7, 7:6, 11:13, 17:15, 17:19, 19:10, 26:17, 26:20, 26:21, 26:23, 27:1
**forfeiting** [3] - 28:1, 28:20, 32:8
**forfeits** [3] - 8:8, 8:9, 17:25
**FORFEITURE** [1] - 1:8
**forfeiture** [46] - 2:24, 3:3, 3:9, 7:3, 7:12, 7:24, 8:1, 8:7, 8:16, 8:25, 9:6, 10:22, 11:9, 17:16, 18:2, 18:18, 19:2, 19:4, 21:20, 21:24, 22:6, 22:15, 22:18, 23:17, 23:18, 24:3, 24:4, 24:5, 24:6, 24:13, 24:14, 24:22, 25:21, 25:25, 26:22, 27:4, 27:9, 27:22, 29:25, 30:13, 31:2, 31:4, 31:22, 32:6, 32:8, 33:18

---

**forgotten** [1] - 20:5
**form** [1] - 26:13
**Fourth** [1] - 6:17
**frame** [3] - 2:17, 4:10, 5:19
**fraud** [1] - 27:14
**front** [3] - 9:5, 22:8, 31:23
**fully** [3] - 25:4, 29:12, 29:13
**fundamental** [1] - 25:8
**funds** [2] - 27:5, 27:7
**furniture** [2] - 26:22, 26:23
**furthermore** [1] - 19:12
**future** [1] - 32:18

---

### G

**general** [1] - 13:11
**Ginsberg** [17] - 2:14, 3:18, 4:2, 7:21, 10:16, 11:6, 11:10, 16:12, 19:19, 20:3, 22:12, 24:25, 32:12, 34:2, 34:9, 36:14, 36:19
**GINSBERG** [57] - 1:15, 1:16, 2:16, 4:3, 4:7, 8:19, 8:23, 9:4, 9:15, 9:19, 9:23, 10:17, 11:7, 11:17, 11:23, 12:4, 12:10, 12:18, 12:25, 13:3, 13:5, 13:21, 13:23, 14:15, 14:19, 15:1, 15:10, 15:13, 15:22, 15:24, 22:20, 23:2, 23:6, 23:8, 23:10, 23:15, 23:19, 25:2, 25:8, 25:22, 26:21, 27:17, 29:2, 29:4, 29:11, 30:7, 30:17, 30:24, 32:14, 32:23, 33:6, 34:3, 34:15, 35:2, 35:6, 36:15, 36:20
**given** [2] - 19:12, 35:7
**glad** [1] - 12:9
**Gladding** [13] - 7:18, 7:19, 7:22, 7:23, 8:1, 8:3, 8:6, 13:2, 13:3, 18:13, 18:16, 18:23, 19:7
**Gladding's** [1] - 18:22
**glass** [1] - 27:15
**governing** [1] - 31:2
**government** [39] - 2:8, 3:3, 3:6, 3:13, 4:13, 5:4, 5:13, 6:6, 6:14,

6:18, 6:22, 7:7, 8:1,
13:10, 13:14, 14:3,
14:7, 15:5, 16:2,
17:12, 17:14, 17:25,
18:17, 18:19, 18:24,
19:1, 19:4, 20:12,
24:13, 27:19, 28:11,
30:10, 32:1, 32:7,
32:9, 32:16, 33:15,
33:21, 36:12
**government's** [8] -
2:23, 5:7, 5:12, 8:21,
8:24, 13:11, 15:16,
16:17
**group** [1] - 37:1
**guess** [1] - 13:9
**guilty** [1] - 2:22

## H

**handled** [1] - 35:2
**hard** [2] - 14:4, 28:4
**hardware** [1] - 16:18
**hate** [1] - 8:19
**head** [2] - 21:11, 22:3
**hear** [4] - 4:12, 7:21,
13:10, 25:4
**heard** [2] - 25:6, 32:12
**HEARING** [1] - 1:8
**hearing** [4] - 33:9,
33:14, 33:16, 33:18
**held** [2] - 19:10, 27:6
**helpful** [2] - 22:16,
36:4
**heroic** [1] - 33:11
**hire** [1] - 12:18
**hired** [1] - 15:21
**hit** [1] - 22:11
**home** [1] - 3:7
**Honor** [56] - 2:6, 2:9,
2:13, 2:16, 3:19,
3:25, 4:3, 4:7, 4:8,
9:5, 9:15, 10:5,
10:17, 11:2, 11:5,
11:17, 12:25, 13:9,
15:13, 16:3, 16:9,
16:16, 16:21, 17:1,
18:7, 18:13, 19:17,
20:7, 20:18, 21:1,
22:1, 22:4, 22:7,
22:17, 23:8, 23:10,
23:19, 25:2, 25:8,
30:10, 30:19, 31:1,
31:14, 31:17, 31:23,
32:14, 33:6, 33:24,
34:3, 34:13, 35:12,
36:6, 36:10, 36:13,
36:15, 36:20
**HONORABLE** [1] - 1:9
**hope** [1] - 36:18
**hours** [2] - 15:17,

16:13
**house** [7] - 17:25,
26:16, 26:20, 26:21,
26:23, 26:25
**Hull** [2] - 27:2

## I

**identified** [4] - 3:16,
9:11, 9:24, 19:19
**identifies** [1] - 9:6
**identify** [3] - 13:19,
14:2, 14:5
**identifying** [2] - 6:3,
28:12
**Ill** [1] - 1:9
**illegal** [1] - 27:13
**image** [1] - 26:3
**imaged** [1] - 4:16
**images** [4] - 4:18, 5:8,
5:9, 6:1
**impossible** [3] - 7:14,
28:12, 28:13
**improper** [1] - 9:25
**includes** [3] - 6:2,
6:10, 17:9
**including** [3] - 3:11,
6:20, 7:4
**inconsistent** [1] - 18:3
**indicated** [1] - 17:18
**indicates** [1] - 7:5
**indication** [1] - 8:3
**indistinguishable** [1] -
27:24
**information** [22] -
5:23, 6:3, 11:18,
12:6, 12:11, 14:9,
14:11, 15:2, 18:9,
20:15, 25:10, 25:11,
26:1, 26:4, 28:10,
28:14, 28:16, 28:18,
29:16, 30:18, 30:21,
32:20
**ink** [1] - 27:14
**inspect** [1] - 5:16
**instance** [2] - 17:12,
28:15
**instances** [2] - 29:6
**intake** [1] - 35:3
**integral** [1] - 11:23
**intellectual** [2] -
25:16, 25:17
**intending** [1] - 15:18
**interest** [5] - 25:13,
28:3, 28:22, 29:7,
29:18
**interests** [1] - 24:15
**internet** [1] - 18:10
**interpretation** [1] -
17:2

**interrupt** [1] - 8:19
**intertwined** [2] - 18:1,
21:3
**involve** [3] - 22:6,
22:15, 22:18
**involved** [2] - 20:1,
35:24
**involving** [1] - 17:3
**iPad** [7] - 4:1, 9:7,
9:12, 9:16, 10:8,
10:13, 17:10
**IPad** [1] - 4:4
**iPads** [2] - 9:7, 9:9
**iPhone** [6] - 9:12,
10:7, 10:9, 10:10,
10:12, 17:10
**iPhones** [1] - 9:9
**issue** [29] - 3:22, 4:4,
4:19, 4:21, 4:24, 5:2,
5:20, 6:13, 8:18,
8:20, 9:23, 17:17,
19:8, 19:10, 19:16,
21:21, 21:24, 22:8,
24:3, 24:19, 25:10,
29:13, 29:16, 31:1,
31:22, 33:2, 33:14,
33:16
**issues** [1] - 8:17
**item** [2] - 9:25, 10:1
**Item** [1] - 9:11
**items** [2] - 26:25, 27:1
**itinerary** [1] - 35:17
**itself** [8] - 8:10, 11:21,
16:25, 17:8, 18:18,
19:11, 30:18, 30:21

## J

**Jamieson** [1] - 1:13
**judge** [3] - 8:19,
21:12, 22:20
**JUDGE** [1] - 1:9
**judge's** [2] - 21:23,
22:14
**jury** [1] - 2:22

## K

**keep** [3] - 33:13,
33:16, 36:23
**kept** [2] - 33:8, 33:22
**kinds** [1] - 16:14
**King** [1] - 1:16
**king** [2] - 27:6, 27:17
**kitchen** [1] - 26:24
**knowing** [1] - 33:16
**Kochy** [3] - 5:11, 5:12,
5:15

## L

**language** [3] - 6:9,
6:19, 17:7
**laptop** [1] - 17:10
**last** [3] - 13:5, 14:19
**laundering** [1] - 27:5
**law** [4] - 16:25, 17:11,
31:6, 31:24
**lawyer** [3] - 12:13,
25:6, 36:22
**lawyers** [4] - 13:18,
13:20, 15:20, 29:20
**leads** [1] - 16:23
**least** [2] - 8:20, 25:9
**leave** [1] - 36:11
**left** [1] - 18:20
**legal** [2] - 8:20, 19:22
**legitimate** [3] - 7:14,
18:21, 28:25
**length** [1] - 27:20
**less** [1] - 29:22
**lighting** [1] - 14:1
**limit** [1] - 18:2
**limited** [7] - 12:14,
14:3, 14:6, 14:8,
18:19, 19:2, 32:20
**list** [1] - 14:6
**listed** [4] - 9:5, 9:7,
10:11, 10:13
**listen** [1] - 2:18
**lists** [1] - 10:8
**litigate** [1] - 29:20
**litigated** [1] - 29:20
**look** [13] - 9:10, 13:18,
14:18, 16:12, 21:11,
21:13, 23:9, 23:11,
23:20, 24:1, 24:16,
30:14, 31:22
**looking** [2] - 8:24,
13:25
**lure** [1] - 26:6

## M

**magazine** [1] - 17:4
**magistrate** [5] - 13:7,
21:9, 21:12, 21:23,
22:14
**main** [1] - 4:6
**mandatory** [2] - 3:9,
7:11
**manner** [1] - 35:3
**MARSHAL** [6] - 34:13,
35:12, 35:16, 35:22,
36:5, 36:10
**marshals** [2] - 2:4,
33:11, 34:4, 34:11,
35:10, 35:24, 35:25
**Marshals** [1] - 33:19
**material** [12] - 2:25,

6:10, 6:11, 6:20,
9:18, 11:13, 11:14,
13:13, 13:16, 19:18,
26:1
**matter** [10] - 10:21,
11:3, 17:5, 17:9,
23:25, 24:16, 24:24,
33:1, 33:14, 37:20
**mean** [1] - 29:5
**meaning** [4] - 10:24,
13:20, 16:18, 25:25
**media** [1] - 32:2
**medical** [3] - 34:25,
35:4, 36:18
**medication** [2] -
34:18, 35:9
**mementos** [1] - 16:15
**memories** [5] - 3:1,
3:4, 3:11, 5:9, 11:15
**memory** [4] - 11:19,
11:25, 12:2
**mention** [1] - 5:19
**merchandise** [1] -
22:5
**mere** [1] - 27:6
**metadata** [1] - 28:17
**Michael** [1] - 22:23
**might** [1] - 36:23
**mind** [1] - 30:4
**minor** [2] - 6:4, 20:1
**minors** [3] - 4:22, 4:25
**minutes** [2] - 23:21,
24:18
**mischaracterized** [1] -
13:11
**mistake** [2] - 8:21,
33:10
**mistakenly** [2] - 10:8,
10:13
**moment** [1] - 21:20
**money** [2] - 27:5,
27:12
**money-laundering** [1]
- 27:5
**motion** [16] - 2:23,
2:24, 5:7, 8:24, 9:6,
10:8, 10:12, 17:12,
21:14, 21:15, 24:9,
24:21, 24:23, 31:19,
32:11
**motions** [1] - 2:23
**movant** [1] - 8:15
**MS** [83] - 2:9, 2:13,
2:16, 3:19, 3:25, 4:3,
4:7, 8:19, 8:23, 9:4,
9:15, 9:19, 9:23,
10:5, 10:11, 10:17,
11:2, 11:5, 11:7,
11:17, 11:23, 12:4,
12:10, 12:18, 12:25,

13:3, 13:5, 13:21, 13:23, 14:15, 14:19, 15:1, 15:10, 15:13, 15:22, 15:24, 16:3, 16:9, 16:16, 16:21, 16:24, 19:17, 20:7, 21:1, 21:10, 21:22, 22:1, 22:7, 22:17, 22:19, 22:20, 23:2, 23:6, 23:8, 23:10, 23:15, 23:19, 25:2, 25:8, 25:22, 26:21, 27:17, 29:2, 29:4, 29:11, 30:7, 30:17, 30:24, 31:1, 31:9, 31:11, 31:17, 32:14, 32:23, 33:6, 33:24, 34:3, 34:15, 35:2, 35:6, 36:13, 36:15, 36:20
**must** [1] - 19:10

## N

**name** [1] - 14:5
**necessarily** [2] - 22:6, 26:22
**Neck** [9] - 34:7, 34:8, 34:10, 34:17, 35:7, 35:11, 35:15, 35:25, 36:9
**need** [2] - 22:11, 34:21
**needs** [1] - 34:25
**never** [3] - 8:1, 18:14, 19:8
**New** [1] - 17:20
**NINA** [1] - 1:15
**nine** [2] - 3:3, 15:23
**Ninth** [5] - 7:19, 8:6, 8:11, 8:13, 18:12
**non** [2] - 3:23, 5:23
**non-child** [1] - 5:23
**non-child-pornography** [1] - 3:23
**noncontraband** [23] - 2:25, 3:14, 5:14, 5:23, 6:8, 6:20, 6:25, 7:4, 7:10, 7:25, 9:14, 9:18, 11:12, 11:15, 12:11, 13:16, 17:23, 18:1, 18:17, 19:21, 20:9, 31:8, 32:3
**none** [1] - 7:15
**nonexistent** [1] - 10:1
**nonforfeitable** [1] - 31:16
**normal** [1] - 8:8
**North** [5] - 13:7, 22:23, 23:5, 23:13, 23:18

**Northern** [10] - 23:4, 34:7, 34:8, 34:10, 34:17, 35:7, 35:11, 35:15, 35:25, 36:9
**noted** [4] - 17:18, 18:7, 18:22, 18:23
**NOTES** [1] - 1:25
**nothing** [3] - 7:5, 17:18, 25:21
**Noyes** [6] - 6:23, 7:4, 17:13, 18:4, 29:11, 30:2
**number** [10] - 3:16, 3:17, 3:20, 4:4, 14:3, 14:8, 19:12, 25:15
**numbers** [2] - 10:23
**numerous** [1] - 26:22

## O

**object** [1] - 11:8
**objecting** [1] - 34:23
**observing** [1] - 7:2
**obtained** [1] - 27:14
**obviously** [1] - 12:1
**occurred** [1] - 30:5
**OF** [6] - 1:1, 1:3, 1:8, 1:25, 37:16, 37:25
**OFF** [1] - 36:17
**offense** [6] - 7:13, 17:3, 18:9, 26:5, 28:6, 28:25
**offenses** [2] - 6:3, 7:15
**offering** [2] - 15:2, 15:14
**Office** [1] - 33:19
**OFFICE** [1] - 1:13
**OFFICIAL** [2] - 1:19, 37:16
**Oklahoma** [1] - 27:18
**Once** [1] - 27:11
**one** [21] - 4:6, 4:21, 9:7, 9:13, 9:15, 9:16, 9:19, 9:24, 11:18, 13:6, 13:7, 13:17, 13:20, 13:23, 23:18, 27:3, 27:13, 30:7, 31:18, 36:2, 36:25
**ones** [2] - 3:21, 3:22
**online** [3] - 4:22, 4:25
**opinion** [1] - 18:12
**opportunity** [3] - 13:17, 22:12, 23:25
**opposed** [2] - 4:8, 35:7
**opposite** [2] - 7:20, 7:22
**order** [24] - 2:23, 3:13, 7:24, 8:1, 8:7, 8:16,

8:25, 9:6, 18:3, 18:18, 19:2, 23:3, 24:1, 24:2, 24:3, 24:8, 24:14, 24:22, 27:22, 29:25, 32:8, 35:20, 36:3, 36:7
**ordering** [1] - 23:4
**original** [1] - 14:23
**otherwise** [1] - 24:6
**ought** [1] - 34:24
**ourselves** [1] - 14:5

## P

**P.C** [1] - 1:16
**p.m** [3] - 1:6, 23:22, 37:3
**page** [3] - 9:5, 9:11, 22:21
**pages** [1] - 1:23
**parameters** [1] - 25:25
**part** [6] - 8:21, 11:19, 11:23, 17:2, 23:16, 26:2
**particular** [2] - 15:8, 26:4
**parties** [1] - 18:9
**passed** [1] - 24:4
**pay** [2] - 15:6, 15:19
**period** [1] - 14:14
**periodical** [1] - 17:4
**permanently** [2] - 25:19, 26:25
**permit** [1] - 32:19
**permits** [2] - 19:3, 31:12
**person** [1] - 14:13
**personal** [2] - 3:11, 20:9
**phone** [1] - 30:11
**photographs** [3] - 14:1, 20:10, 26:10
**pick** [1] - 35:14
**picture** [1] - 5:16
**pictures** [2] - 16:15, 20:4
**pieces** [1] - 26:15
**place** [2] - 8:14, 32:4
**places** [1] - 36:2
**plain** [2] - 6:9, 6:18
**plaintiff** [1] - 1:4
**PLAINTIFF** [1] - 1:12
**pleading** [2] - 15:16, 22:22
**pleadings** [1] - 13:11
**point** [6] - 6:17, 7:18, 21:1, 32:18
**point..** [1] - 16:4
**pointed** [1] - 17:16
**pointing** [1] - 30:19

**points** [1] - 31:18
**pooling** [1] - 27:7
**pornography** [21] - 2:21, 3:2, 3:5, 3:12, 3:23, 4:15, 4:18, 4:23, 5:1, 5:3, 5:10, 5:24, 6:1, 6:12, 17:14, 17:16, 26:8, 26:13, 28:6, 31:3, 32:6
**portion** [2] - 7:5, 17:18
**portions** [1] - 11:15
**position** [4] - 16:17, 16:24, 17:11, 25:13
**possession** [1] - 17:13
**possible** [1] - 34:6
**precision** [1] - 19:19
**preliminary** [6] - 2:23, 8:25, 9:6, 9:12, 29:25, 32:8
**presence** [1] - 27:12
**present** [4] - 2:4, 14:3, 18:11, 33:17
**presented** [3] - 8:4, 8:13, 8:18
**preserve** [1] - 3:13
**preserved** [1] - 12:15
**pressed** [1] - 36:1
**previously** [3] - 14:16, 18:13, 29:24
**Prisons** [1] - 33:25
**private** [1] - 14:9
**pro** [2] - 29:15, 29:21
**Pro** [2] - 4:1, 4:4
**problems** [1] - 35:5
**procedure** [1] - 12:24
**proceed** [2] - 16:2, 25:7
**proceedings** [1] - 37:19
**process** [3] - 12:20, 12:21, 13:8
**produce** [2] - 4:22, 4:25
**productive** [1] - 23:23
**professional** [1] - 13:25
**programs** [2] - 14:1, 17:15
**prohibitive** [1] - 15:19
**promote** [1] - 28:6
**promptly** [1] - 36:8
**property** [24] - 2:25, 5:25, 7:6, 7:12, 7:14, 17:24, 18:22, 21:14, 25:12, 25:13, 25:16, 25:17, 25:18, 25:22, 25:23, 25:24, 26:1, 26:15, 28:24, 29:1,

29:17, 30:14, 32:11, 32:23
**prosecution** [1] - 2:21
**protocol** [3] - 20:18, 20:19, 20:21
**pull** [1] - 6:14
**purposes** [1] - 10:22
**pursuant** [1] - 32:6
**put** [4] - 10:25, 14:20, 14:21, 16:1
**putting** [1] - 31:16

## Q

**quarrel** [1] - 33:19
**quickly** [2] - 24:7, 34:6
**quite** [1] - 15:22
**quoted** [1] - 29:3

## R

**R-E-A-I-D** [1] - 22:23
**raise** [1] - 29:16
**rate** [1] - 15:24
**rather** [3] - 17:8, 17:25, 19:3
**rationale** [1] - 18:4
**reach** [1] - 7:22
**reached** [4] - 7:7, 7:19, 24:2, 24:10
**read** [1] - 27:16
**reading** [2] - 16:6, 31:5
**Reaid** [4] - 22:23, 24:1, 24:2, 24:9
**real** [1] - 15:3
**realize** [1] - 25:20
**really** [6] - 4:18, 8:3, 10:21, 19:20, 24:4, 24:23
**reason** [6] - 18:21, 33:5, 33:13, 33:22, 34:9, 34:14
**reasonable** [2] - 21:17, 21:19
**REBECCA** [1] - 1:19
**Rebecca** [1] - 37:18
**receipt** [1] - 17:13
**receive** [5] - 4:22, 5:1, 5:3, 12:10, 34:17
**recess** [4] - 23:9, 23:20, 36:16, 37:2
**Recess** [1] - 23:22
**recognize** [4] - 25:17, 30:8, 30:18, 30:20
**recollection** [1] - 9:8
**recommendation** [6] - 13:7, 21:9, 21:23, 22:2, 23:1, 24:12
**record** [6] - 2:2, 19:5, 26:10, 29:22, 37:3,

37:19
**RECORD** [1] - 36:17
**records** [8] - 3:12,
6:12, 6:13, 13:25,
16:15, 20:4, 20:10,
26:10
**reference** [1] - 22:21
**referred** [2] - 9:16,
27:20
**referring** [1] - 22:20
**refers** [2] - 5:25, 10:7
**reflect** [1] - 2:2
**regarding** [1] - 18:6
**regardless** [3] - 20:12,
20:13, 25:18
**regrettable** [1] - 33:15
**rejected** [1] - 17:22
**related** [1] - 3:23
**relates** [1] - 14:9
**relating** [1] - 6:3
**relied** [1] - 27:19
**rely** [1] - 2:19
**remains** [1] - 24:9
**remanded** [1] - 19:7
**removable** [1] - 26:24
**remove** [1] - 12:5
**removed** [1] - 11:20
**render** [1] - 27:8
**repair** [1] - 34:21
**reply** [1] - 21:13
**report** [2] - 13:6, 24:11
**REPORTER** [3] - 1:19,
37:16, 37:25
**reputable** [1] - 12:19
**request** [5] - 6:25, 7:2,
7:10, 21:18, 28:24
**requested** [2] - 7:15,
17:14
**requesting** [3] - 13:12,
28:16
**requests** [1] - 32:7
**require** [1] - 20:15
**required** [4] - 5:16,
6:14, 7:3, 20:12
**requires** [1] - 31:4
**reserved** [1] - 28:21
**reside** [1] - 26:18
**resources** [1] - 32:1
**rest** [1] - 27:13
**result** [3] - 7:20, 7:23,
24:2
**resulted** [1] - 2:21
**retain** [3] - 18:21,
28:3, 29:7
**retrieve** [1] - 28:14
**return** [13] - 2:24,
3:10, 3:14, 7:10,
13:13, 17:14, 19:1,
21:14, 21:24, 22:5,

24:14, 30:14, 32:11
**returned** [9] - 6:12,
7:1, 11:15, 12:15,
29:18, 32:21, 33:4,
34:5, 36:8
**review** [5] - 5:13,
12:13, 13:12, 14:7,
20:15
**reviewed** [1] - 9:20,
20:22
**room** [2] - 14:22,
26:16
**RPR** [1] - 1:19
**Rule** [17] - 21:15,
21:25, 22:2, 22:14,
23:6, 23:15, 24:5,
24:6, 24:14, 25:17,
30:14, 30:16, 30:17,
30:20, 31:14, 31:19
**ruled** [3] - 18:14, 19:8,
19:9
**ruling** [1] - 29:21

**S**

**salary** [1] - 15:7
**sanctioned** [1] - 13:8
**Sanders** [12] - 2:3,
2:5, 3:23, 12:16,
14:1, 25:12, 30:1,
33:3, 34:5, 34:16,
35:14
**SANDERS** [1] - 1:6
**Sanders'** [3] - 15:19,
26:10, 32:21
**schedule** [2] - 34:4,
35:19
**scheduled** [1] - 33:10
**Schlessinger** [1] -
2:10
**SCHLESSINGER** [1] -
1:12
**school** [2] - 13:25,
26:10
**scope** [1] - 18:2
**se** [2] - 29:15, 29:21
**search** [4] - 3:6, 30:9,
30:11, 30:15
**Second** [10] - 7:7,
7:10, 7:12, 8:12,
18:5, 27:21, 27:23,
27:25, 28:15, 28:23
**second** [1] - 18:18
**Section** [3] - 16:25,
17:2, 31:4
**see** [8] - 2:17, 4:11,
9:22, 10:3, 14:13,
33:13, 33:22, 35:17
**seeking** [1] - 8:24
**seeks** [5] - 3:3, 3:10,

3:13, 5:17, 30:10
**seem** [1] - 34:19
**segregate** [2] - 5:14,
13:15
**seized** [3] - 2:25, 3:5,
9:10
**selection** [2] - 12:14
**sent** [2] - 10:5, 10:13
**separate** [16] - 6:8,
12:13, 17:23, 25:10,
25:11, 25:13, 25:18,
25:23, 25:24, 26:1,
26:15, 28:22, 29:17,
29:18, 32:23
**separating** [5] - 18:21,
18:25, 19:5, 19:13,
31:25
**SETH** [1] - 1:12
**Seth** [1] - 2:10
**seven** [1] - 15:23
**Seventh** [6] - 6:23,
6:24, 7:2, 7:9, 8:12
**shall** [1] - 17:4
**shared** [1] - 26:11
**sharply** [3] - 11:11,
16:1, 20:3
**shooting** [1] - 29:14
**shoulder** [1] - 14:18
**shows** [1] - 5:18
**sIGNATURE** [1] -
37:25
**signed** [1] - 10:17
**significant** [2] - 20:11,
20:16
**similar** [2] - 7:8, 20:21
**simply** [1] - 21:2
**smaller** [1] - 15:1
**softball** [1] - 22:11
**software** [1] - 16:18
**sorry** [3] - 5:6, 9:17,
21:22
**sought** [1] - 32:9
**Special** [7] - 4:16,
4:20, 4:23, 5:1, 5:5,
5:11, 5:15
**species** [1] - 25:18
**specific** [5] - 14:2,
16:4, 16:14, 19:2
**specifically** [4] - 6:25,
17:21, 28:2, 28:21
**specify** [1] - 28:16
**spent** [1] - 16:13
**Square** [1] - 1:20
**squarely** [1] - 19:9
**standing** [1] - 33:4
**stands** [3] - 23:20,
36:16, 37:2
**started** [2] - 23:13,
36:22
**starting** [1] - 17:1

**state** [2] - 21:18, 31:19
**States** [6] - 2:3, 2:11,
22:23, 27:6, 27:17,
31:3
**STATES** [3] - 1:1, 1:3,
1:9
**states** [2] - 17:2, 31:11
**statute** [16] - 6:18, 7:3,
7:5, 16:7, 16:23,
17:8, 17:17, 17:18,
19:3, 19:11, 25:25,
31:2, 31:6, 31:11,
31:12
**statutory** [1] - 17:1
**STENOGRAPHIC** [1] -
1:25
**steps** [1] - 34:21
**still** [7] - 5:15, 7:13,
10:14, 20:15, 26:9,
28:25, 35:10
**STONESTREET** [1] -
1:19
**Stonestreet** [2] -
37:18, 37:24
**storage** [1] - 8:9
**store** [3] - 26:17,
26:20, 32:2
**stored** [12] - 7:1, 7:11,
11:20, 11:25, 17:9,
25:11, 25:19, 25:23,
26:16, 28:4, 29:8,
30:22
**strain** [1] - 31:25
**Street** [1] - 1:16
**stuff** [4] - 3:24, 6:8,
6:14, 30:15
**subject** [4] - 3:9, 7:11,
27:9, 32:6
**submit** [1] - 18:24
**submitted** [4] - 5:4,
5:6, 5:11, 19:5
**Suite** [1] - 1:17
**supervisor** [1] - 35:17
**support** [2] - 5:6, 6:22
**supported** [2] - 16:25,
17:11
**suspected** [1] - 9:20

**T**

**T.S** [1] - 1:9
**taint** [1] - 27:13
**tainted** [1] - 27:7
**talks** [3] - 15:16,
21:14, 27:4
**technically** [1] - 11:19
**temporarily** [1] -
25:19
**terms** [3] - 18:3,
19:11, 31:14

**testified** [4] - 4:16,
4:20, 4:23, 5:1
**testimony** [3] - 4:13,
5:5, 9:8
**text** [1] - 26:8
**THE** [102] - 1:1, 1:9,
1:12, 1:15, 2:2, 2:6,
2:7, 2:12, 2:14, 2:17,
3:21, 4:2, 4:6, 4:10,
8:22, 9:2, 9:13, 9:17,
9:22, 10:3, 10:10,
10:16, 10:21, 11:3,
11:6, 11:10, 11:22,
11:25, 12:8, 12:17,
12:22, 13:2, 13:4,
13:20, 13:22, 14:13,
14:17, 14:25, 15:8,
15:11, 15:20, 15:23,
15:25, 16:5, 16:10,
16:20, 16:22, 19:15,
19:18, 20:24, 21:8,
21:20, 21:23, 22:5,
22:10, 22:18, 22:25,
23:5, 23:7, 23:9,
23:11, 23:18, 23:20,
23:23, 25:3, 25:20,
26:19, 27:16, 28:23,
29:3, 29:10, 30:6,
30:12, 30:23, 30:25,
31:8, 31:10, 31:15,
32:12, 32:22, 32:25,
33:7, 33:25, 34:9,
34:14, 34:20, 35:4,
35:10, 35:13, 35:20,
35:23, 36:7, 36:11,
36:14, 36:16, 36:17,
36:18, 36:22, 36:24,
36:25, 37:1, 37:2
**themselves** [3] - 3:9,
26:13, 28:20
**therefore** [1] - 18:19
**thinks** [2] - 15:6, 25:2
**Third** [1] - 17:16
**thousand** [1] - 16:13
**thousands** [2] - 15:16,
15:17
**three** [10] - 6:10, 6:16,
9:7, 12:13, 13:13,
13:18, 14:21, 16:14,
19:15, 20:17
**thrown** [1] - 22:10
**timeline** [1] - 35:18
**today** [6] - 2:12, 4:19,
6:5, 8:18, 11:11,
36:12
**took** [1] - 30:14
**top** [2] - 21:10, 22:3
**traceable** [1] - 7:12,
28:24
**traction** [1] - 24:6

transcript [1] - 37:19
TRANSCRIPT [1] - 1:8
TRANSCRIPTION [1] - 1:25
transferred [1] - 34:7
treatment [1] - 36:19
trial [6] - 4:13, 5:5, 9:8, 10:20, 10:22, 11:4
trip [1] - 33:20
trips [2] - 14:2, 34:4
trouble [1] - 35:23
true [2] - 22:11, 22:12
two [14] - 2:23, 4:6, 7:17, 9:9, 11:17, 13:6, 20:13, 23:2, 33:10, 34:16, 34:19, 35:8, 36:2
type [4] - 8:7, 12:20, 13:24, 35:8
typically [1] - 34:1

**U**

U.S [4] - 1:13, 1:20, 33:19
unclear [1] - 20:8
uncommon [1] - 8:7
unconnected [2] - 28:4, 29:7
under [11] - 19:11, 21:15, 21:25, 22:2, 22:5, 24:9, 24:19, 30:15, 31:19, 33:1, 34:11
underaged [1] - 20:1
undertaking [1] - 19:13
United [6] - 2:3, 2:11, 22:23, 27:6, 27:17, 31:3
UNITED [3] - 1:1, 1:3, 1:9
universe [1] - 15:2
unless [1] - 25:24
unpublished [1] - 6:23
unrelated [1] - 3:1
unreported [2] - 13:6, 13:8
unsure [1] - 35:18
untainted [1] - 27:7
up [2] - 33:17, 35:14
upheld [1] - 28:7
useful [1] - 36:3

**V**

VA [2] - 1:14, 1:17
ventures [1] - 6:13
verdict [1] - 2:22
victim [1] - 26:6

victims [4] - 6:4, 14:10, 14:12, 26:11
videos [1] - 5:10
videotape [1] - 17:5
view [5] - 3:1, 4:2, 22:7, 25:9, 34:2
views [1] - 24:17
Virginia [1] - 1:21
VIRGINIA [1] - 1:1
visual [5] - 3:4, 17:3, 17:5, 17:8, 26:7
visually [1] - 5:16
vs [3] - 22:23, 27:6, 27:17

**W**

wait [1] - 21:20
wants [1] - 20:3
warrant [4] - 3:6, 30:9, 30:11, 30:15
watch [1] - 36:19
water [1] - 27:15
week [1] - 33:1
weeks [1] - 33:10
Wernick [5] - 7:8, 17:21, 27:20, 27:21
Western [1] - 27:18
whole [2] - 16:7, 19:10
words [1] - 24:10
writ [1] - 33:16

**Y**

York [1] - 17:20
you-all [1] - 2:20

**Z**

ZACKARY [1] - 1:6
Zanobini [10] - 2:10, 2:12, 3:18, 8:15, 10:3, 11:1, 11:4, 20:6, 25:1, 30:25
ZANOBINI [29] - 1:12, 2:9, 2:13, 3:19, 3:25, 10:5, 10:11, 11:2, 11:5, 16:3, 16:9, 16:16, 16:21, 16:24, 19:17, 20:7, 21:1, 21:10, 21:22, 22:1, 22:7, 22:17, 22:19, 31:1, 31:9, 31:11, 31:17, 33:24, 36:13