**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-7054

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

  v.

ZACKARY ELLIS SANDERS,

        Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T.S. Ellis, III, Senior District Judge. (1:20-cr-00143-TSE-1)

Argued: March 22, 2024                                                      Decided: July 9, 2024

Amended: July 10, 2024

Before NIEMEYER, KING, and BENJAMIN, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge King and Judge Benjamin joined.

**ARGUED:** Jonathan Shapiro, WASHINGTON & LEE UNIVERSITY SCHOOL OF LAW, Lexington, Virginia, for Appellant. Joseph Attias, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Nina J. Ginsberg, DIMUROGINSBERG, PC, Alexandria, Virginia, for Appellant. Jessica D. Aber, United States Attorney, Aidan Taft Grano-Mickelsen, Assistant United States Attorney, Richmond, Virginia, William Clayman, Trial Attorney, Annie Zanobini, Assistant United States Attorney, Seth Schlessinger, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

NIEMEYER, Circuit Judge:

Following Zackary Sanders's convictions for violating federal child pornography laws, the district court ordered the forfeiture, pursuant to 18 U.S.C. § 2253(a), of nine electronic devices on which Sanders stored child pornography and with which he committed the crimes. Objecting to the forfeiture, Sanders contended that § 2253(a) is not so broad as to require the forfeiture of non-contraband items contained on the nine electronic devices, such as personal photographs, personal business records, and the like. Accordingly, he requested that the district court order the government "to allow his forensic expert to segregate and make digital copies of non-contraband" items. The district court refused his request, concluding that "nowhere does [§ 2253(a)] provide that only some portion of the property containing child pornography should be subject to forfeiture. Nor does the statute provide that non-contraband material on the devices should be separated from contraband materials on the devices and returned to a defendant."

On appeal from the district court's order, Sanders challenges the court's reading of § 2253(a). He also claims, for the first time on appeal, that the forfeiture order's inclusion of his non-contraband items was "plainly excessive under the Eighth Amendment."

For the reasons that follow, we affirm.

I

Following an investigation, the FBI uncovered evidence that Sanders had, for over two years, engaged in communications with underage boys, some as young as 13 years old, through various social media and communication applications. In these communications,

Sanders had the minors send him videos and pictures of themselves naked and in compromising positions — writing degrading words across their bodies, masturbating, or slapping their testicles repeatedly — some of which he later used as blackmail when one of the minors threatened to disclose Sanders's conduct.  Sanders stored these videos and photos, as well as other depictions of child pornography downloaded from the Internet, on the same electronic devices that he used to communicate with the minors.

Sanders was indicted in 12 counts for the production, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e), 2252(a) and (b).  The indictment also provided Sanders with notice that "all matters that contain visual depictions" of child pornography and "any property . . . used or intended to be used to commit" the child pornography offenses, including his various electronic devices, would be forfeited as part of his sentence upon conviction.

Following a seven-day trial, a jury convicted Sanders on all 12 counts.

Prior to sentencing, the government filed a motion, pursuant to 18 U.S.C. § 2253(a), for the forfeiture of nine devices — three laptops, two Apple iPads, two Apple iPhones, and two thumb drives — that it had seized from Sanders and that Sanders had used to produce, receive, and possess child pornography.  Simultaneously, it opposed Sanders's contemporaneous motion under Federal Rule of Criminal Procedure 41(g) for return of the non-contraband files stored on the devices.  In his Rule 41(g) motion, Sanders also objected to the entry of the proposed order of forfeiture.  While Sanders acknowledged that he was not entitled to the return of any property subject to forfeiture, he argued that the forfeiture statute did not reach so broadly as to require the forfeiture of non-contraband items that

3

were also stored on the electronic devices. He claimed that they represented "more than a decade of [his] life, including personal photographs, personal and business records, educational records, records of theater performances, contact information and emails." He requested that the court "direct the government to allow his forensic expert to segregate and make digital copies of non-contraband data and image files that are stored on the electronic devices subject to forfeiture using a protocol that was previously approved by the FBI and the prosecution team for producing discovery."

Following additional briefing on the issue, the district court ordered the forfeiture of the nine electronic devices in their entirety and denied Sanders's request to copy non-contraband items. The court observed that, as a textual matter, § 2253(a) made no exception for "non-contraband material" or "non-contraband portions of property," and it therefore concluded that "there [was] no doubt that the plain and unambiguous text of 18 U.S.C. § 2253(a) require[d] the forfeiture of the electronic devices in their entirety." The district court also observed that the process of distinguishing contraband and non-contraband material in this case would have been "more complicated than merely separating pornographic images from non-pornographic ones" because evidence at trial had "demonstrated that [Sanders] offered employment in his businesses to several of the minor victims." As such, "some of the business files [Sanders] [sought] to be returned may [have] contain[ed] information identifying [Sanders's] minor victims," requiring a "detailed review of each file to ensure that no contraband material was inadvertently disclosed to the defendant," which would have been "entirely unworkable given finite government resources." Finally, the court observed that any burden on Sanders from the

4

loss of access to non-contraband files was "a result of [his] own wrongdoing," as he was "the one who decided to commingle family photographs and business records with images of child pornography."

From the district court's order, dated August 19, 2022, Sanders filed this appeal. And for the first time on appeal, he also challenges the district court's forfeiture order as an "excessive fine" under the Eighth Amendment.

II

The criminal forfeiture statute at issue and as relevant provides:

A person who is convicted of an offense . . . involving a visual depiction [of child pornography] . . . shall forfeit to the United States such person's interest in —

(1) any visual depiction . . . or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction . . . ; [and]

\*   \*   \*

(3) any property, real or personal, used . . . to commit . . . such [child pornography] offense . . . .

18 U.S.C. § 2253(a). Thus, these provisions require the forfeiture, following convictions involving child pornography, of (1) *all depictions* of child pornography, (2) *any matter containing* such depictions, and (3) *any property used* to commit the crimes involving depictions of child pornography.

In this case, the district court found that all nine of the electronic devices at issue *contained* visual depictions of child pornography and that all nine devices were *used* to

5

commit the child pornography offenses of conviction. Accordingly, it ordered the forfeiture of all nine devices "in their entirety" to the government.

While Sanders agrees that the nine devices were used to commit the crimes and therefore were forfeitable, he contends that the scope of the forfeiture must be limited to the devices themselves and the actual depictions of child pornography in the devices and may not include non-contraband items, such as family pictures and business documents that he had stored on them. To make his argument, he focuses on the definitional scope of two terms — "other matter," as used in § 2253(a)(1), and "property," as used in § 2253(a)(3). He argues that "other matter" refers to "any computer file," not the entire electronic device, and similarly that "property" refers to the devices themselves and only the *contraband* computer files, but not the *non-contraband* computer files. Accordingly, he contends that the district court erred in refusing to order the government to return to him non-contraband files contained on the nine electronic devices.

Before addressing the reasoning underpinning each of Sanders's arguments, we will begin with the text of the forfeiture statute, *see Taylor v. Grubbs*, 930 F.3d 611, 616 (4th Cir. 2019), and, in light of Sanders's arguments, specifically with the text of the two subsections at issue, § 2253(a)(1) and § 2253(a)(3).

A

As to § 2253(a)(1), the text provides that a defendant convicted of a crime involving child pornography forfeits two classes of things: (1) "any visual depiction" of child pornography and (2) "any book, magazine, periodical, film, videotape, or other matter

6

which *contains* any such visual depiction" of child pornography. 18 U.S.C. § 2253(a)(1) (emphasis added). While the forfeiture of any "depiction" does not give rise to any argument here, the second portion, forfeiting any "matter" that contains such a depiction, does.

To be sure, standing alone, "any . . . other matter" is a broad term. But "[t]o strip a word from its context is to strip that word of its meaning." *Biden v. Nebraska*, 143 S. Ct. 2355, 2378 (2023) (Barrett, J., concurring). In context, "matter" is given meaningful definition from at least three separate textual sources. *First*, its context with "any book, magazine, periodical, film, [or] videotape" suggests that "matter" shares meaning with those neighboring words, giving it a more precise meaning under the interpretive canon of *noscitur a sociis*. *See United States v. Williams*, 553 U.S. 288, 294 (2008) (recognizing the canon to "counsel[] that a word is given more precise content by the neighboring words with which it is associated"). Thus, "matter" cannot be read, by force of that canon, to refer to earth, rock, air, or water; rather, it would refer to any medium, like a "videotape" or a "film," that could contain a recording of visual depictions, such as electronic devices.

*Second*, "any other matter" is restricted to things that can *contain* visual depictions, inasmuch as the term "matter" is followed in the text by the modifying clause, "which contains any such visual depictions." While trees, bushes, and grass are matter, they cannot contain visual depictions; but electronic devices can. Thus, the latter, but not the former, falls within the statute's scope.

*Third*, the statute limits "any other matter" to something that can contain *visual depictions* of child pornography, and "visual depictions" is a term defined to include "data

7

stored on [a] computer disk." 18 U.S.C. § 2256(2)(B)(5). Thus, because matters containing visual depictions include matters that can contain *data stored on a computer disk*, the nine devices at issue in this case would qualify as "matter."

Moreover, the forfeiture statute's inclusion of "any other matter" was deliberately broad so as to serve as a catchall to encompass devices or media that could hold or contain visual depictions of child pornography. This is evidenced by Congress's direction that the scope of forfeiture be liberally construed. *See* 18 U.S.C. § 2253(b) (incorporating provisions of the Controlled Substances Act, 21 U.S.C. § 853 (addressing the criminal forfeiture of property)); 21 U.S.C. § 853(o) (providing for the liberal construction of forfeiture "to effectuate its remedial purposes").

We thus readily conclude that § 2253(a)(1) requires the forfeiture of electronic devices that contain visual depictions of child pornography.

Sanders argues to the contrary that "any other matter" refers only to contraband computer files, not the entire electronic device. We find, however, that this reading is textually unsupportable. Sanders argues that books, magazines, periodicals, films, and videotapes, unlike electronic storage devices, are items that can be "separately viewed, copied, and transmitted, and from which content cannot be removed without destroying the original form." He maintains that the devices themselves, unlike the files stored within them, "share none of these features." He explains,

> Nor does child pornography often appear in books, magazines, periodicals, films, and videotapes that are not also dedicated to that content further distinguishing them from storage devices like computers and cellphones which rarely store information solely devoted to child pornography. Because the focus of § 2253(a)(1) is to remove depictions of child pornography from

8

> circulation, forfeiting physical devices storing large quantities of personal information unrelated to any child pornography offense does not advance the purposes of subsection (a)(1) or reduce the amount of child pornography in circulation and was not a proper basis upon which to forfeit Sanders's legally possessed file[s].

Yet, Sanders overlooks that the criminal forfeiture of *matters containing* child pornography does not simply serve the function of removing the visual depictions of child pornography themselves. That is covered by the first portion of § 2253(a)(1) (providing for the forfeiture of all visual depictions). Rather, the purpose of the entire forfeiture provision is also to serve as punishment and deterrence. *See Kaley v. United States*, 571 U.S. 320, 323 (2014).

Sanders does, however, raise a legitimate policy argument based on the fact that today computers and cellphones regularly store large quantities of personal information, even though they may also contain contraband. And this argument has gained traction in the context of Fourth Amendment searches and seizures. *See Riley v. California*, 573 U.S. 373, 396–97 (2014) (noting the special considerations at play with searches of cellphones under the Fourth Amendment because "[a] phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form"). But this argument fails to recognize the distinction between Fourth Amendment searches and statutory criminal forfeitures. In requiring the forfeiture of devices "containing" contraband, Congress imposed a penalty both to punish and to discourage the production, receipt, and possession of child pornography. *Kaley*, 571 U.S. at 323. Necessary to the imposition of that punishment, which comes at the end of process, is the prior adjudication of guilt with the attendant procedural protections afforded by the Constitution. *See, e.g.*, 18 U.S.C. § 2253(a) ("A

9

person who is convicted of an offense under this chapter . . . ."). In contrast, the Fourth Amendment provides on the front end safeguards that ensure that searches and seizures conducted to collect evidence to prosecute crimes reflect certain property and privacy interests. *See Carpenter v. United States*, 585 U.S. 296, 304 (2018). As such, Sanders's argument compares apples to oranges. Moreover, any such policy argument designed to modify the punishment of forfeiture must be addressed to Congress. *See Nickey Gregory Co., LLC v. AgriCap LLC*, 597 F.3d 591, 608 (4th Cir. 2010) ("The judiciary . . . should not insert itself in these policy matters by questioning or debating legislative judgments, as it is constituted only to comprehend, interpret, and apply what Congress has duly provided").

We hold that by the clear text, § 2253(a)(1) provides for the forfeiture of electronic devices containing child pornography.

B

As to § 2253(a)(3), the second provision placed at issue by Sanders, the text provides for the forfeiture of "any property . . . used . . . to commit" crimes involving child pornography. Again, "property" is restricted by the text to refer to property *used to commit* the offense of conviction. We conclude that "property" as used in § 2253(a)(3) is not ambiguous and includes the nine electronic devices that were concededly used to commit the crimes of which Sanders was convicted.

In this case, the forfeited electronic devices were made up of mechanisms and components such as central processing units, memories, hard drives, and other items

allowing for communication with the Internet, all of which enabled Sanders *to communicate* with the underage boys, *to produce* visual depictions of child pornography, *to receive* images of child pornography both from the boys and from the Internet, or *to store and possess* the images on his devices. While the images themselves were certainly contraband and therefore forfeitable, they were not themselves the property *used* to commit the relevant crimes. The entire devices were, and therefore they were subject to forfeiture.

Sanders acknowledges that the electronic devices are forfeitable as property used to commit the child pornography offenses but argues that the non-contraband files contained on them are not. More specifically, relying on the statutory definition of property, which includes both tangible and intangible property, *see* 18 U.S.C. § 2253(b); 21 U.S.C. § 853(b) (defining property to include "tangible and intangible property"), Sanders argues that § 2253(a)(3)'s authorization to forfeit "property" applies only to the electronic devices and does not reach non-contraband property contained within them. He reasons that while the definition of property includes two forms — tangible and intangible — the district court treated them as the same. If they were treated as separate property, he argues, the court would have been required to order the government to return the *separate* non-contraband property, as "numerous other courts have previously held," citing Fourth Amendment cases, such as *Trulock v. Freeh*, 275 F.3d 391 (4th Cir. 2001), *United States v. Williams*, 592 F.3d 511 (4th Cir. 2010), and *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th Cir. 2019). Sanders explains further that "[n]either case law nor common sense suggests any reason to distinguish a computer from an analogous file cabinet containing a large number of documents when determining whether property was improperly seized."

11

He argues that the same, by analogy, should apply to forfeitures of electronic devices and their contents.

Sanders's argument, however, faces several barriers that he has not hurdled. First, the cases to which he cites are Fourth Amendment cases, and not forfeiture cases. As noted, forfeiture is a punishment created by Congress that is circumscribed by the requirements of the Eighth Amendment and not by the scope of seizures regulated by the Fourth Amendment.

But more importantly, § 2253(a)(3) does not so limit the term "property" when requiring that any property used to commit a child pornography offense must be forfeited. If property referred separately to electronic devices and the files on them, as Sanders contends, such that files on the devices could be sorted into contraband and non-contraband files, then the files themselves, whether contraband or not, would have to fit the definition of property in § 2253(a)(3). Yet they do not do so. Property as used in § 2253(a)(3), is defined to be property "*used to commit*" the child pornography offense. 18 U.S.C. § 2253(a)(3) (emphasis added). But the files in the electronic devices here — whether pornographic or not — were not used to commit the offenses. They did not enable Sanders to communicate with underage boys; they did not enable Sanders to instruct the boys about how to create sexual images; they did not enable Sanders to receive images; they did not enable Sanders to store them. They were themselves the product of the electronic devices' various mechanisms and components and Sanders's use of them. Thus, property, as used in § 2253(a)(3), could not refer simply to the files to which Sanders refers.

Moreover, Sanders points to no court precedent, and we have found none, that interprets "property" in § 2253(a)(3) to refer to electronic devices as distinct from the files contained on them. Indeed, courts have rejected that "the text of § 2253(a)(3) allows for subdivision of the property" at issue. *United States v. Hull*, 606 F.3d 524, 528 (8th Cir. 2010).

Sanders's argument that computer files are "property" that can be distinguished from the device itself also fails to acknowledge the physical reality of electronic devices. Computer files representing "images" are simply data contained as electronic pulses stored on magnetic fields in hard drives and other computer memory, which can be accessed with instructions from a central processing unit, programs, and applications also functioning with electronic pulses. *See AOL, Inc. v. St. Paul Mercury Ins. Co.*, 347 F.3d 89, 94–95 (4th Cir. 2003). In physical terms, thus, the recorded electronic pulses are incorporated by magnetism into the physical mechanisms of the devices, such that they are one.

In that vein, Sanders has thus not explained how the government would give him such files as "property" and how he would receive them. Computer files are not like photographs in a box, some of which could simply be selected, removed, and physically returned. Rather, they are nothing but invisible electronic pulses stored in computer memory. As such, they can be erased or copied, but they cannot, as electronic matter, be extracted *as is* and delivered. *See AOL*, 347 F.3d at 95 ("All data, information, and instructions used in a computer are codified into a binary language, and the binary language is processed by the computer by the operation of switches that are . . . configured on or off by electricity"). Yet, even as Sanders argues that computer files are distinct property that

13

can be "returned" to him, he seeks relief that belies the argument. He does not seek the extraction and return of the electronic data representing non-contraband files, even if that were possible. Rather, he seeks a court order "direct[ing] the government to allow his forensic expert to segregate and *make digital copies* of non-contraband data and image files that [were] stored on the electronic devices subject to forfeiture." (Emphasis added). As such, he does not argue that the government unlawfully possesses the non-contraband files, but rather that he, as well as the government, should have access to them. Such a right to access, however, must, in the first instance, be authorized by Congress.

We conclude that in the context of § 2253(a)(3), "property" can only mean the entire device used to commit the offense, including the image files stored on it. *See United States v. Noyes*, 557 Fed. App'x 125, 127 (3d Cir. 2014) ("There is nothing in [§ 2253(a)(3)] which indicates that only a portion of the 'property' can be forfeited").

At bottom, in enacting § 2253(a)(3), Congress made clear that it requires the forfeiture of any property used to commit an offense involving child pornography, and therefore, we conclude that the district court did not err in ordering forfeiture of the nine electronic devices in their entirety as property that Sanders used in committing the offenses of conviction.

III

Sanders also contends, for the first time on appeal, that the "district court's forfeiture of non-contraband files . . . was unconstitutionally excessive under the Eighth Amendment's Excessive Fines Clause." He acknowledges that because he failed to present

14

the argument to the district court, it is "reviewable for plain error." *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731 (1993).

Sanders argues that the forfeiture of "personal, family and business" files was "unconstitutionally excessive," because such property had "incalculable value" — some were "one-of-a-kind." Thus, their forfeiture was a "disproportional" penalty. Other than making that claim in his briefing, however, he provides no further detail or evidentiary support of the claim. Nor does he provide nor attempt to provide any monetary value of the non-contraband files stored on those devices. Indeed, he does not even purport to provide the value of the nine electronic devices forfeited. Rather, citing *Riley*'s recognition that cellphones for many Americans hold "the privacies of life," 573 U.S. at 403 (cleaned up), he claims that because the non-contraband contents of his electronic devices were important to him, their forfeiture was excessive punishment.

It is now well-established that criminal forfeiture is punishment subject to the Excessive Fines Clause of the Eighth Amendment. *See United States v. Bajakajian*, 524 U.S. 321, 334 (1998); *United States v. Jalaram, Inc.*, 599 F.3d 347, 351 (4th Cir. 2010). And "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *Bajakajian*, 524 U.S. at 334. "[I]f it is *grossly disproportional* to the gravity of a defendant's offense," a criminal forfeiture violates the Eighth Amendment. *Id*. (emphasis added).

To make the determination of whether a forfeiture is "grossly disproportional," we consider four factors: "(1) the amount of the forfeiture and its relationship to the authorized

15

penalty; (2) the nature and extent of the criminal activity; (3) the relationship between the charged crime and other crimes; and (4) the harm caused by the charged crime." *United States v. Bennett*, 986 F.3d 389, 399 (4th Cir. 2021); *see also Jalaram*, 599 F.3d at 355–56. And the party challenging the constitutionality of the forfeiture under the Eighth Amendment must carry the burden of demonstrating gross disproportionality by addressing the relevant factors. *See United States v. Ahmad*, 213 F.3d 805, 816 (4th Cir. 2000).

In this case, Sanders has failed to satisfy, by any measure, any relevant factor. First, he has produced no evidence to value the forfeited information or even to support his bald assertion that the files he seeks — "personal photographs, personal and business records, educational records, records of theater performances, contact information and emails" — are unavailable anywhere else. This failure alone is particularly stark given that the authorized penalty for his twelve counts of conviction was $250,000 per count, plus other special assessments, for potential liability of over $3 million. *See* 18 U.S.C. § 3571(b). Moreover, he has failed even to show or claim the value of the nine forfeited electronic devices, which surely could not have exceeded even $25,000, as two of the devices were thumb drives, two were Apple iPhones, and two were Apple iPads. While he has, to be sure, asserted a genuine interest in having non-contraband files returned — or copied, as he requests — he has provided no authority that would justify evaluating non-contraband files on the basis of his subjective interest. Thus, Sanders has provided no evidence to establish that the value of the forfeited data nears, much less exceeds, the authorized fines for the conduct. *See Jalaram*, 599 F.3d at 356–57 (concluding that a $385,000 forfeiture was not grossly disproportionate in light of the offense's $350,000 maximum fine).

Sanders also fails to address the second and fourth factors relating to the nature and extent of his criminal activity and the harm that it caused — generally, the "gravity" of his criminal conduct. But the record shows that Sanders was convicted of five counts of *production* of child pornography, six counts of *receipt* of child pornography, and one count of *possession* of child pornography. It also shows that for a period of over two years, Sanders communicated with minor boys and had them record videos of themselves engaged in sexualized conduct. His offenses occurred over a period of years and caused substantial harm and indeed life-long trauma to several minors and their families. Courts have consistently recognized that child pornography offenses of this type are serious offenses that cause substantial harm. *See Hull*, 606 F.3d at 530; *see also New York v. Ferber*, 458 U.S. 747, 758 n.9 (1982) (recognizing scientific literature showing that many "sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults"). At bottom, the nature and extent of Sanders's criminal activity was extensive, and the harm that his activity caused was serious.

Finally, the third factor — the relationship between the charged crime and other crimes — also does not weigh in Sanders's favor. Though the child pornography crimes here were not necessarily "connected with other offenses," *Jalaram*, 599 F.3d at 356, Sanders clearly "fit[s] into the class of persons for whom the statute was principally designed," *Bajakajian*, 524 U.S. at 338. He has thus not been punished pursuant to a prophylactic measure without having committed the underlying *malum in se* crime, a circumstance about which the *Bajakajian* Court was concerned. 524 U.S. at 338.

17

Under the plain error standard, Sanders was required to show at least (1) that there was an error; (2) that the error was plain; and (3) that the error affected his substantial rights. *See Olano*, 507 U.S. at 734. In this case, however, he has not carried his burden of even showing error. The forfeiture of the nine electronic devices, with the data contained on them at the time of forfeiture, was clearly authorized by statute and was not grossly disproportional to the gravity of the offenses for which Sanders was convicted. Accordingly, we reject his Eighth Amendment argument.

*   *   *

The judgment of the district court is

AFFIRMED.