# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

ZACKARY ELLIS SANDERS,

                Petitioner,

v.

UNITED STATES,

                Respondent.

Case No. 1:20-CR-00143 (AJT)

Honorable Anthony J. Trenga

### <u>DECLARATION OF ZACKARY SANDERS</u>

I, ZACKARY SANDERS, declare as follows:

1. I am the defendant in the above-captioned action.

2. I submit this declaration in support of my motion to vacate my convictions pursuant to 28 U.S.C. § 2255 based on my personal knowledge and to the best of my recollection.

3. I have reviewed the affidavit of Jonathan S. Jeffress filed on June 18, 2026. Several assertions he makes in that affidavit are factually incorrect.

4. Mr. Jeffress represented me shortly after my arrest through trial. Mr. Jeffress was the partner on the case and was responsible for recommending and implementing case strategy, including decisions about what pretrial motions to file and when to file them.

5. Although other attorneys were brought in to help with discrete issues or certain aspects of the case well after the filing deadline for pretrial motions, Mr. Jeffress's firm remained lead counsel and my primary representation. I understood that Mr. Jeffress remained in charge of case strategy.

6. Nina Jean Ginsberg, the first attorney from a firm other than Mr. Jeffress's added to the case, was not brought into the case until months after the pretrial motion deadline had passed.

When she was brought in, it was my understanding that she did not have capacity to take on primary representation in my matter, and her role was limited. Henry Louis Sirkin, the attorney brought into the case after Ms. Ginsberg, similarly had a limited role, advising and assisting with First Amendment issues.

7.      Before engaging Mr. Jeffress, I inquired regarding his trial experience and made clear that I expected to go to trial.

8.      I communicated to Mr. Jeffress that unless he could obtain a plea that would result in minimal incarceration and would not require registration as a sex offender, I was going to trial. This was my consistent position in every discussion about case strategy. No such offer (or anything close) was ever conveyed to me. Accordingly, I never changed my position with Mr. Jeffress that I wanted him to do everything possible, including pretrial motion practice, to defend me.

9.      Around the time of the pretrial motion deadline, it was my understanding that the best disposition Mr. Jeffress was discussing with the government was a plea to one count of production—not possession—which would have a 15-year mandatory minimum. I made it clear to Mr. Jeffress that I would reject any such offer.

10.      It was never our agreed strategy to challenge the case exclusively on Fourth Amendment grounds. I also never agreed to limit the defense to a single theory. I wanted counsel to pursue every viable ground for my defense, including every possible ground for suppression of evidence.

11.      Although Mr. Jeffress told me that the Fourth Amendment suppression issues were the priority, he never told me that he was going to pursue the Fourth Amendment challenge and not pursue other issues. We did not have any discussion in which he stated he would forgo a motion to suppress my statements to the FBI, and I never agreed to forgo any such motion.

2

12.     Mr. Jeffress never explained that he had decided not to file a motion to suppress my statements to the FBI by the motions deadline, that filing such a motion could harm a later Fourth Amendment appeal, or that waiting to file could result in the motion to suppress statements being deemed untimely.

13.     Prior to the pretrial motion deadline, Mr. Jeffress expressed confidence that the Fourth Amendment motion would be successful and communicated to me that suppression was very likely. Indeed, after the Court denied the suppression motions, Mr. Jeffress told me that the Court's rulings were wrong and recommended filing motions for reconsideration and additional discovery. He also discussed the possibility of seeking a writ of mandamus. It was in this context that I first remember discussions of a conditional plea, which I understood to be that Mr. Jeffress would ask the government to extend a plea offer that would allow an appeal of the Fourth Amendment issue. It was never communicated to me that any such offer was ever extended, and I remained adamant I would not accept such an offer unless it resulted in minimal incarceration and without a requirement for sex offender registration.

14.     Mr. Jeffress did not advise me against trial before the pretrial motion deadline, nor did he tell me, prior to the pretrial motion deadline, that I could not or should not go to trial based on the strength of the evidence.

15.     Mr. Jeffress ultimately filed a motion to suppress my statements shortly after the government indicated it intended to introduce those statements at trial. The motion was not filed earlier because of any strategy I agreed to, and it was not tied to me changing my mind about trial, because my position regarding trial never changed. After the government indicated it was intending to introduce my statements and Mr. Jeffress filed a motion to suppress those statements,

3

he did not tell me the motion might be denied as being untimely. Rather, he expressed confidence that the judge would decide the motion.

16.     Finally, I recall Mr. Jeffress comparing the facts of my FBI interview to a case he believed supported suppression. He indicated the statements would be suppressible based on that precedent. At no time did he tell me that he thought the motion to suppress the statements was not a viable motion or that the introduction of those statements would be harmless.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 31st day of July, 2026.

Zackary Sanders

4